UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
UNITED STATES OF AMERICA : Case No.: 16-MJ-4117 (MBB)
:
       Plaintiff, :
   v. :
:
MARTIN GOTTESFELD, :
:
       Defendant. :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MARTIN GOTTESFELD'S MOTION FOR RELEASE ON CONDITIONS

Martin Gottesfeld, through counsel, requests this Court release him on the proposed conditions below which will reasonably assure his appearance in court. *See* 18 U.S.C. § 3142(f). The charge Mr. Gottesfeld faces carries no rebuttable presumption of detention. *See* 18 U.S.C. § 3142(e). Mr. Gottesfeld poses no danger to the community, nor did the government argue that he poses one at the April 27, 2016 detention hearing in this matter. The only question is whether Mr. Gottesfeld is a serious flight risk such that there is no condition, or set of conditions, that could reasonably assure Mr. Gottesfeld's appearance in court. The release conditions proposed below, in conjunction with the application of the factors articulated in 18 U.S.C. §3142(g) and well established 1st Circuit case law, establish that release is appropriate.

## FACTS

Mr. Gottesfeld was charged in a criminal complaint of violating federal conspiracy law under 18 U.S.C. § 371, with underlying allegations he conspired to violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). The Court detained Mr. Gottesfeld on or about

February 17, 2016. On April 27, 2016 the Court held a detention hearing at which both sides presented arguments and submitted evidence. At the close of the hearing, Magistrate Judge Bowler took the matter under consideration. It is now over two months later and no decision has been forthcoming. This motion follows.

## NATURE OF ALLEGED OFFENSE

Mr. Gottesfeld is charged with a single count of conspiracy for allegedly conspiring to cause unauthorized damage to protected computers. *See* 18 U.S.C. § 1030(a)(5)(A); Aff. of Michael Tunick (ECF 3-2) ("Tunick Affidavit") at p. 1 (Attached as Ex. A). The Tunick Affidavit alleges that Mr. Gottesfeld was the user behind an IP address[1] that posted a YouTube video. That video provided publicly available information that unknown others may have used to begin two distributed denial of service ("DDoS")[2] floods. One directed to the servers hosting the Wayside Youth and Family Center in Framingham, Massachusetts ("Wayside") beginning on March 25, 2014, and another directed at servers hosting the Boston Children's Hospital's

---

[1] An IP or "Internet Protocol" address is an address used to identify a computer on a network that uses the Internet Protocol to communicate. These addresses identify the last end-point of a user's connection to a given site or server. In some cases, it identifies an individual computer user. In others, such as when using a proxy or virtual private network ("VPN"), it merely identifies another server used by an unknown user. Unless advanced filtering and detection methods are used, it is trivially easy to "spoof" an IP address, i.e. to send a false address to a server. *See* Spoofing Attack: IP, DNS, & ARP, VERACODE, http://www.veracode.com/security/spoofing-attack (last visited July 1, 2016) (describing IP address spoofing generally).

[2] A DDoS is a method by which multiple computers send a large volume of network traffic to one or more servers. The goal of a DDoS may be to test the servers' traffic capacity or to render those servers unavailable for the time period during which the traffic exceeds the servers' capacity. DDoS floods may be executed by a variety of methods and tools. They may also be executed for a variety of purposes, from standard network testing to political activism to malicious extortion. *See* Denial of Service Attack – Distributed Attack, WIKIPEDIA, https://en.wikipedia.org/wiki/Denial-of-service_attack#Distributed_attack (last visited July 1, 2016).

2

public-facing website beginning on April 19, 2014. *See* Tunick Aff. at pp. 2-5; *see also* Detention Hr'g Tr. at 8:3-5 (identifying the servers as "Boston Children's Hospital computers"). The facts Mr. Tunick alleges to support Mr. Gottesfeld's membership in this conspiracy include:

1) A computer in Mr. Gottesfeld's apartment contained internet browser logs suggesting it was used to create an email address, digitaldruid@riseup.net, (*see* Tunick Aff. at pp. 6-7);

2) A Twitter[3] account, @AnonMercurial2, included the digitaldruid@riseup.net email address in its registration information, (*see id*. at p. 6);

3) The @AnonMercurial2 twitter account called for "attacks on [Wayside]'s website" on March 25, 2014, (*id*.);

4) Also on March 25, 2014, Wayside was the target of a DDoS flood. *(see id* at p. 2; *see also* Detention Hr'g Tr. at 41:17-20 (identifying the "treatment center" as Wayside);

5) Two days earlier, a Twitter account controlled by Mr. Gottesfeld, @stoploganriver, exchanged direct messages with another account, @Digitaghost, where @Digitaghost "told [@stoploganriver] that [@Digitaghost] would be able to successfully attack the [Boston Children's Hospital] servers." (Tunick Aff. at p. 6).

---

[3] Twitter is a social media platform. Users may post up to 140 character public or semi-public posts, or may send private "direct messages" to one another in a one-on-one chat-like feature. As with other social media platforms, messages and public posts vary widely in their seriousness. Posts may be public, or users may "lock" their accounts so that only other accounts they select can read their posts. *See generally* New User FAQs, TWITTER, https://support.twitter.com/articles/13920# (last visited July 1, 2016).

## MR. GOTTESFELD'S BACKGROUND

Mr. Gottesfeld is 31 years old, married, and has lived in the Boston area his entire adult life. He has no criminal convictions. Prior to his arrest in this matter, Mr. Gottesfeld worked as a computer security professional at several Boston-area companies. He has, until his arrest and ongoing detention, had a successful career and a stable, supportive family. Before his April 27, 2016 detention hearing, many former employers and family members submitted letters of support to evidence this stable and successful history. (*See* Ex. B). On information and belief, if released, he has a pending employment offer in his area of expertise, namely that his landlord will hire him for website design and software development. He would return to a stable home, living with his wife in Somerville. He is willing to submit to electronic ankle monitoring or the equivalent, and regular check ins with Pretrial and Probation Services. His nephew Greg Brown is prepared to serve as custodian if needed. Other family members are willing to provide bail of $55,000, if the Court requires.

## ARGUMENT

There is no good reason to detain Mr. Gottesfeld for a potentially extended period of time pretrial. This is not an alleged crime of violence. This was, if the allegations are true, a political protest in a matter of national interest over the abusive treatment of a young woman detained by Boston Children's Hospital and Wayside against her and her parents will, a young woman who is now suing Boston Children's Hospital. (*See* Detention Hr'g Tr. 41-53; *see also* Michael Levinson, "Parents of Justina Pelletier sue Boston Children's Hospital," BOSTON GLOBE, Feb. 25, 2016, https://www.bostonglobe.com/metro/2016/02/25/parents-justina-pelletier-sue-boston-children-hospital-for-negligence/jCrlgTQBVikJtokEnlFBmN/story.html (last visited July 7, 2016). The government admits this was not "a cyber 9[/]11". (Detention Hr'g Tr. 55:23). The

4

only real harms alleged, as opposed to breathless speculation, are monetary. (*See* Detention Hr'g Tr. 56:7).

This is a complex CFAA case involving multiple alleged co-conspirators, a large volume of digital forensic evidence, and computers spread across the globe. The volume of evidence will likely take a significant time to analyze in order to properly prepare a defense. The weight of this evidence against Mr. Gottesfeld is unknown at this time as there has been little discovery in this matter. However, based on other CFAA cases, his case will likely require multiple, complex pretrial motions, including motions to suppress and dismiss, should this matter go to trial. During this time, there is no reason that Mr. Gottesfeld should be not be released under appropriate conditions. Otherwise he risks languishing in jail longer than a potential sentence, or needlessly if acquitted. Conditional release under the close supervision of Probation and Pretrial Services eliminates these issues and will reasonably assure Mr. Gottesfeld's appearance in front of the Court.

With the experienced supervision of Probation and Pretrial Services, he will be closely monitored. Given his strong ties to the community, his history of gainful employment, open offers for future employment, and his willingness and ability to engage with Probation and Pretrial Services to comply with his release conditions including electronic ankle monitoring, detention is inappropriate. He poses no danger to the community, and the Government has not disputed this fact.

**Conditions Exist That Will Reasonably Assure Mr. Gottesfeld's Appearance in Court**

To justify pretrial detention on the basis that Mr. Gottesfeld is a serious flight risk, the government must prove by a preponderance of the evidence that no condition, or combination of conditions, will reasonably assure the defendant's appearance in Court. *See* 18 U.S.C. § 3142 (e);

*United States v. Phillips*, 732 F. Supp. 255, 259 (D. Mass. 1990); *U.S. v. Martorano*, No. 92-26-J, 1992 WL 73558, at *6 (D. Mass. Mar. 23, 1992). They cannot meet this burden.

To the extent the Government argues Mr. Gottesfeld poses a serious flight risk, their arguments are based Mr. Gottesfeld's actions while his constitutional right to travel was in no way limited or subject to any conditions. *See Shapiro v. Thompson, 394 U.S. 618, 669-70 (1969)* (quoting *Kent v. Dulles*, 357 U.S. 116, 125-26 (1958)) (overruled on other grounds by *Edelman v. Jordan*, 415 U.S. 651, 671 (1974)). This does not show that no release conditions exist that could reasonably assure Mr. Gottesfeld's appearance in court. The First Circuit has recognized for over twenty five years that electronic ankle monitoring, which Mr. Gottesfeld is willing to accept, is an effective means of reasonably assuring a defendant's appearance in court when combined with other conditions, even where that defendant is a serious flight risk. *See United States v. O'Brien*, 895 F.2d 810, 815-16 (1st Cir. 1990).

The government makes no argument that Mr. Gottesfeld poses any danger to the community. As such, electronic ankle monitoring, or the equivalent, combined with the conditions listed below, will reasonably assure Mr. Gottesfeld's appearance in Court.

## CONCLUSION

The proposed conditions below are more than sufficient to assure Mr. Gottesfeld's attendance at future appearances and at trial. "In our society liberty is the norm, and detention prior to trial … is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 2105, 95 L. Ed. 2d 697 (1987). Mr. Gottesfeld should be released into the care and support of his family and community, subject to appropriate conditions.

**PROPOSAL FOR RELEASE**

Mr. Gottesfeld proposes that he be released under the following conditions:

1. Electronic ankle monitoring or the equivalent;

2. Execution of an unsecured appearance bond in the amount of $55,000, signed by Mr. Gottesfeld's family members who have offered to contribute: Greg Brown (nephew), Lisa Brown (sister), and Ben Brown (nephew).

3. Release with custodial supervision by Greg Brown, Mr. Gottesfeld's nephew.

4. Maintaining residence with his wife at 29 Albion Street, Somerville, Massachusetts;

5. Regular telephone check-ins with Pretrial and Probation Services;

6. Reasonable travel restrictions allowing for exceptions with the Court's prior written approval;

7. A no contact order with any alleged victim of the crime and with potential witnesses who may testify concerning the offense;

8. Any other conditions the Court deems appropriate.

|  |  |
|---|---|
| | Respectfully Submitted, |
| Dated: July 8, 2016 | _/s/Tor Ekeland_____ |
| | Tor Ekeland (PHV) |
| | Tor Ekeland, PC |
| | 195 Plymouth Street, 5th Floor |
| | Brooklyn, NY 11201 |
| | 718-737-7264 |
| | tor@torekeland.com |
| | |
| | *Attorney for Defendant Martin Gottesfeld* |