UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 16-10305-NMG |
| | ) | |
| MARTIN GOTTESFELD, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT
FOR VIOLATION OF THE SPEEDY TRIAL ACT**

Defendant Martin Gottesfeld ("Gottesfeld") hereby moves this Honorable Court for an

order dismissing the indictment herein with prejudice for violation of The Speedy Trial Act, 18

U.S.C. §1861(b).

**Background**

Mr. Gottesfeld was arrested on February 17, 2016 in the Southern District of Florida on a

warrant based on a criminal complaint from this district charging him with conspiracy (18 U.S.C.

§ 371) to intentionally cause damage to protected computers, 18 U.S.C. §§ 1030(a)(5)(A) and

1030(c)(4)(B). Affidavit in Support of Complaint ¶ 3 ("Affidavit").  D-3. The Affidavit further

alleges that a "Massachusetts Treatment Center" was attacked on March 25, 2014 and a

"Massachusetts Hospital" was attacked on April 19, 2014.  Id. ¶¶ 8 and 13, respectively.  Mr.

Gottesfeld was accused of participating in the attacks. He was held in various places of detention

outside the district for a total of 47 days before his initial appearance in this court on April 6,

2014.  His interim stops included a Federal Detention Center in Florida for approximately two

weeks, one week in Oklahoma, two days in the Metropolitan Detention Center in Brooklyn, New

York and approximately five weeks at the Wyatt Detention Center in Central Falls, Rhode Island.[1]

At the April 6 initial appearance before Magistrate Judge Bowler the defendant waived a probable cause hearing and the parties agreed on an April 27, 2016 date for a detention hearing. D-13.  The docket does not show any indication of exclusion of time till that date.

The detention hearing was held on April 27.  (D-15).  An FBI agent testified on direct and cross-examination.  Exhibits were admitted.  Argument was heard and the court took the matter under advisement.  Id.  A transcript of the detention hearing was filed with the court on May 23, 2016.  (D-19).  Counsel for defendant filed a motion for his release on conditions on July 18, (D-23), and a supplement to the motion on July 18.  (D-24)  The court entered an order of detention on July 27, 2016.  (D-25)  Nothing appears on the docket from July 28 until October 19, 2016 [2] except a motion for a New York attorney to appear *pro hac vice* and the court's allowance of same on August 16, docket entries 25 and 26, respectively.  (D-25, D-26).

The indictment in this case was returned on October 19, 2016.  (D-28).

## Argument

### I.   The Speedy Trial Act Has Been Violated in this Case.

### A.  The 30 Day Rule of §1861(b) for the Return of Indictment was Violated.

The Speedy Trial Act, 18 U.S.C. §§ 3161 – 3174, ("STA") requires that an "indictment Charging an individual with the commission of an offense shall be filed within thirty days from

---

[1]  The individual time periods are approximate but the overall delay prior to initial appearance is exact at 47 days.  All detention location and interval time was received during an interview of the defendant on November 27, 2017.

[2]  Defendant only learned on March 19 of the existence of a sealed docket which contains orders purportedly excluding sufficient time to nullify this motion.  The government should produce the documents and the defendant will respond.

the date on which such individual was arrested…" Id. § 3161(b). The total time elapsed between arrest on February 17 and the filing of the indictment on October 19, 2016 was 243 days. But the STA provides for certain periods of "excludable time". See 18 U.S.C. §1861(h). The relevant exclusions in this case are found at §§ (h)(1)(D), (E), (F) and (H).

Subsection (D) provides for the exclusion of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;". §1861(h)(1)(D). Although no formal motion was filed by the government for the defendant's detention, defendant assumes, without waiving the issue, that a transcript of his initial appearance on April 6 would indicate the government's express request for his detention on the record as of that date and assent by the defendant to the continuance of the detention hearing to April 27. That accounts for 22 excludable days.

Under the travel odyssey defendant endured before his initial appearance in this district, as described supra, subsections 1861(h)(1)(E) (delay resulting from proceedings for transfer or removal of case from another district) and (h)(1)(F) (delay resulting transportation from another district) must be considered together. Because the record at this time is incomplete as to how many days are excludable from the time he was removed from the Southern District in Florida on or about March 1, 2016 until he arrived in this district on April 6, defendant conservatively allots fourteen (14) days for removal under the former and the maximum ten (10) days allowable under (h)(1)(F). That adds 24 additional excludable days.

Finally, subsection (h)(1)(H) provides for the exclusion for "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." The motion for detention was under advisement with Magistrate Judge Bowler from April 27 until her allowance of the government's motion for detention on July 27. (D-25) That period encompasses 91 days but only 30 are excludable.

Based on the above calculations, 24 days are excluded between the arrest on February 17 and defendant's initial appearance on April 6. That results in 21 countable days on the 30 day speedy trial clock for the return of the indictment and only 9 permissible days remaining. Assuming, as noted earlier, that all the time between the initial appearance on April 6 and the detention hearing is excludable that brings the focus to the period between April 27, the date of the detention hearing, and July 27, the date the motion for detention was allowed. That encompasses 91 days and only 30 are excluded as the permissible time the motion was under advisement under subsection (h)(1)(H). That starts the clock again on May 27 and time expires nine days later, no later than June 5, 2016. The above analysis may not be exact but it does not need to be. Even if the math is off by two weeks, for example, there would still be a violation of the 30 day rule for the indictment because in this case it still was not filed until October 19, 2016 and there were no apparently excludable dates in between.

The act is unequivocal: §3162(a)(1) plainly states that, " If…no indictment or information is filed within the time limit required by section 3161(b) as extended by 3161(h) of this chapter, such charge against that individual contained in such complaint *shall be dismissed* or otherwise dropped." Id. (*italics supplied).* The only question for this court is, should the dismissal be with or without prejudice?

### B.   The Indictment Should be Dismissed with Prejudice.

18 U.S.C. § 3162(a)(2) states:

"In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors:  the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."

4

*Seriousness of the Offense*:  there is no doubt that the present case is a high profile, very controversial case in an offense category, computer hacking, which is not seen frequently in a federal court.  But that fact does not increase its seriousness.  The dollar amount in damages, allegedly somewhere between $425,000 and $725,000, is not unusually high given the near stratospheric amounts involved in many cases of financial fraud in the federal courts. Although it may or may not be admissible at trial, the facts and circumstances of the case are very unusual and very controversial. It has been highly publicized. Some portray the defendant's alleged actions as selfless heroism at great personal risk; others deplore his misguided idealism recklessly employed to the significant damage of a respected charitable institution. Doubtlessly the often questionable institutional treatment of so-called 'troubled teens' has been a kind of national scandal for a number a years now.  Congressional hearings, public protests and high profile tragic individual cases have attested to that fact.  But these emotional factors should not affect the Court's decision on this motion.

*The Facts and Circumstances of the Case that led to the Dismissal:*  the procedural history of the case bolsters the argument for dismissal with prejudice. The magistrate judge who drew this case should have promptly recused herself at the beginning.  Judge Bowler's husband teaches at Harvard Medical School which is affiliated with the Boston Childrens' Hospital as its teaching hospital for many years. The judge herself worked as a researcher at Harvard Medical School prior to launching her legal career. She was also for some time the chairman of the board of The Boston Foundation, a charitable foundation which has made substantial financial donations to the Hospital over the years, including quite recently. Most significantly, Judge Bowler has promptly and without reservation recused herself from other cases where Boston

Children's Hospital was involved.  See e.g. Cabi, et al. v. Boston Children's Hospital, et al.

Exh. G, to Defendant's Supplemental Motion to Suppress Evidence, etc., D-128 , filed March 20,

2018.

The delay between arrest and indictment was unusually long, 243 days with excludable

days expiring as of approximately June 5, 2016.  There are no indications of waiver or assent in

writing by the defendant or counsel on the docket itself.  There is no reference to excludable

delay based on the interests of justice, 18 U.S.C. § 3161 (h)(7)(A).

*The Impact of a Reprosecution on the Administration of this Chapter and on the*

*Administration of Justice:* the delay documented in this motion between arrest and indictment is

inexcusably long and not explained by any extenuating circumstances.  It almost appears that it

was intentional, although to what end is not readily inferable. A reprosecution is not necessary to

reach any kind of approximate justice.  The prosecutor assessed defendant's guideline at a high

end of approximately four years during the detention hearing. ("We're talking three, four years

would be the Guideline range."  Det. Tr. 59, D-19).   That was without any acceptance of

responsibility. With the latter the top would be less and the low end considerably so.  Defendant

has already been incarcerated for two years and about a month as of the date hereof.  That

appears similar to one of the salient factors resulting in dismissal with prejudice for the same

violation of the STA's 30 day rule in a recent case from the District of Puerto Rico. See  United

States v. Reina-Del Rosario, Crim. No. 17-cr-534 (GAG), Dec. 21, 2017 (delay of 48 days  time

in detention approximately 60% of likely high end of sentencing range) [Attached, Exh. 1] See

also, Docket # 23. Motion to Dismiss, p. 6 (Sentencing Range of 0-6 months for illegal re-entry

after deportation).  Again, as in <u>Reina-Del Rosario</u>, the delay in the present case was not at all attributed to the defendant or his counsel.  Exh.1, p. 2. ("The reasons for the delay rest squarely on the shoulders of the government.").[3]

For the reasons stated above, defendant requests that the indictment be dismissed with prejudice.

Respectfully submitted,

**Martin Gottesfeld,**

By his attorney,

/s/ Raymond E. Gillespie
Raymond E. Gillespie
BBO #192300
875 Massachusetts Avenue Suite 32
Cambridge, MA 02139
(617) 661-3222
rgillespie1@prodigy.net

<u>CERTIFICATE  OF  SERVICE</u>

I hereby certify that on  March 20, 2018 the foregoing document has been served upon all persons listed in the Notice of Electronic Filing entered in the CM/ECF system in connection

/s/ Raymond E. Gillespie
Raymond E. Gillespie

sta032018

_____

3  This statement may be qualified by what evidence the government should produce from the sealed docket.  <u>See</u> n. 2, <u>supra</u>.