Dear Honorable Judge Gorton,

FILED IN CLERKS OFFICE
2018 APR -5 AM 8:32
U.S. DISTRICT COURT
DISTRICT OF MASS.

Once again, I hope that this letter (and motion) finds Your Honor well and I thank you for taking the time to read it.

In regards to the government's demonstrably false assertions in its motion in limine (D.E. 116), I wish to share the enclosed with The Honorable Court and to place them on the public record of this case:

- Attachment A is a letter written to a Massachusetts Family Court Judge by a very gifted young lady named Chelsey Cruz. It details her suffering at the insistence of Boston Children's Hospital as well as her desire to try other treatments under another doctor she specifies by name. Most of all though, Chelsey wanted to return to her family. Her letter helps establish the reasonableness of the belief that children are tortured by Boston Children's Hospital. It also helps establish the long and well known track record which the government denies exists.

- Attachment B is an article from The Hartford Courant which ran following Chelsey's death. It records that she attended a magnet school, but not that she was in its honors program despite years of battling a debilitating illness. It also records the use of force or the threat of force used by Boston Children's when it posted a uniformed guard outside of Chelsey's room, echoing Chelsey's statement about treatments being forced upon her in Attachment A.

— Page 1

DOCKETED  142

- Attachment C is a 3-page section of a civil claim filed in U.S. District Court in a similar case. As the attorney who filed it is a veteran federal prosecutor with a substantial amount of experience in such matters who in fact successfully petitioned the 1st Circuit Court of Appeals to reverse a U.S. District Court and then prevailed in a federal trial to return a child who had been taken by the hospital in yet another district matter, I know that he can do and did do a much better job than I possibly could in reciting the relevant Constitutional issues. Although, in the appeal and trial of which I speak it was not domestic Constitutional law at controversy but the Hague Convention On The Civil Aspects Of International Child Abduction. Paragraph 7 helps to establish the long and well known track record. Paragraphs 9-10 and 14 argue the unlawful nature of what happens in these cases.

- Attachment D is a 5-page section of the Suffolk Superior Court Civil Action No. 2016-0474D mentioned by the government in its footnote on page 12 of D.E. 116. While the government attempts to assert that this lawsuit does not allege that Justina was tortured while also electing not to exhibit the lawsuit, the section "Justina's Care and Treatment on Bader 5" and especially paragraphs 90, 89, 94, 96, 104 and 84 stand in stark contrast. While the government notes that the family seeks damages for negligence, gross negligence, civil rights violations and loss of familial consortium, it seems to imply that there is a general civil

- Page 2

"torture" statute under which they could have sought damages but chose not to pursue. Obviously though, there is not a statute with such a name and in a large number of U.S. cases where excessive or otherwise unlawful force causes extreme suffering the likes of which a reasonable member of the public would call "torture," the available civil actions for such damages come under the heading of civil rights violations, for which the family did in fact file.

This obvious reality, of which the government almost surely knew that any Honorable Court would be aware, begs the question as to what lay audiences the government is hoping to reach through its dishonest and misleading filings.

Further, that the government calls these well-documented facts "wholly unsupported," "absurd," etc. despite the government's own sworn admissions in D.E. 19 page 52 line 22 through page 53 line 4 as well as page 48 lines 4 through 9 that the FBI was unaware of any investigation into known allegations of abuse of Justine by these institutions, is in fact absurd. How can the government honestly and ethically ~~was call absurd~~ repeated, credible allegations, including those made by one of its own former prosecutors, "wholly unsupported" or "absurd" without actually investigating those allegations?

I should also like to note, in regard to the footnote on D.E. 116 page 12, that on the very website whose existence the government laments there is a frequently asked questions

- Page 3

section which specifically details the situation with Justine's wheelchair. That particular text on the site has not changed in over a year.

While it is true that Justine, who has now reached the age of majority and who is referred to by full name in her family's lawsuit and not by a dehumanizing moniker such as "Patient A," was reported to have arrived at BCH by ambulance in serious distress, there is a big difference between having some difficulty walking during an acute period of distress caused by an influenza infection, which is known to cause exactly such complications for mito patients like her, and the severe long-term crippling she endures not because of the conditions with which she entered BCH but rather because of the long-term deprivation of her previously and validly prescribed medications, which was forced upon her by BCH.

I additionally note such in my report to the United Nations, copies of which have been mailed to the Justice Department and electronically to U.S. U.N. Ambassador Nikki Haley's office by multiple journalists. That report is also featured prominently on the website which the government bemoans in D.E. 146. Further, on or about March 6th, 2014, Justine's father noted the effects of the then-13-month period she had been forced off of her medications in an interview conducted on the WGBH program Greater Boston with host Emily Rooney. Though I obviously cannot docket video from pre-trial detention, that interview shall be

- Page 4

available online at the following URL:
https://www.youtube.com/watch?v=1-JEJIIMmg

Finally, I wish to note that all of this clearly shows that it is not I who ignores facts when they do not fit my narrative. It was not I who swore to false or misleading information on ex parte affidavits. Nor was it I who should have recused from such warrant proceedings but yet failed to do so. Just like it was not I who heard of an innocent child with a potentially deadly condition who was reportedly being seriously abused, but chose not to investigate those reports; and now, still not having investigated those allegations, trying, in vain, to call a long line of such uninvestigated reports "wholly unsupported."

Respectfully Mailed On March 30th, 2018,

Martin Gottesfeld, ID 71225
PCCF, Unit #1, Cell 224
26 Long Pond Road
Plymouth, MA 02360

P.S. Please kindly ignore the stray marks on the enclosed attachments which are left over from previous projects.

— Page 5