UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA            )
                                    )
v.                                  )            No.: 16-cr-10305-NMG
                                    )
MARTIN GOTTESFELD                   )

<u>MOTION TO DISMISS</u>

The defendant Martin Gottesfeld ("Mr. Gottesfeld") moves this Honorable Court to

dismiss the indictment with prejudice for violations of the Speedy Trial Act, 18 U.S.C. §3161 *et.*

*seq.*, and the speedy trial provisions of FRCP 48(b)(1).

SUMMARY OF RELEVANT FACTS

1.   <u>The indictment and allegations</u>

In a two-count indictment, the government charges Mr. Gottesfeld with (1) Conspiracy,

18 U.S.C. §371, and (2) Intentional Damage to a Protected Computer, 18 U.S.C. §1030(a)(5)(A).

The indictment also makes a Conspiracy Forfeiture Allegation, 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. §2461, and an Intentional Damage to a Protected Computer Forfeiture Allegation, 18

U.S.C. §982(a)(2)(B) and 18 U.S.C. §1030(i).

The government alleges that, in response to the highly-publicized and controversial

alleged mistreatment and/or abuse of then-teenager J.P.[1] and her family by Boston Children's

Hospital ("BCH"), Wayside Youth and Family Support Network ("Wayside"), and others, Mr.

Gottesfeld conspired to and committed Distributed Denial of Service ("DDOS") attacks on

Wayside on March 25, 2014 and on BCH on April 19, 2014.  The indictment alleges that "DDOS

---

[1] News articles regularly used this individual's true name with the express or implied consent of her and her parents. Further, the individual is now an adult.  However, in an abundance of caution, this motion will utilize initials in its narrative text.

attacks direct an enormous amount of network traffic at the target computer server, with the intent to overwhelm that server and disrupt online services."

Around the same time as the DDOS attack, BCH also "received emails that contained malicious code that if opened would allow the attackers another avenue into the network." (D-19 at 8) However, Mr. Gottesfeld is not charged with sending these "fishing" emails and the government has acknowledged through Agent Jeffrey Williams that it does not possess any evidence that Mr. Gottesfeld sent those emails. (D-19 at 49). The government knows that others were interested in disrupting BCH and Wayside services over the J.P. controversy, including but not limited to an individual using the online codename "DigitaGhost." (D-3-2 at ¶¶ 26-28)

As to Wayside, the indictment claims the "attack lasted for more than a week, crippled Wayside's website during that time, and caused it to spend more than $18,000 on response and mitigation efforts." As to BCH, the indictment alleges a disruption in work and that "Responding to, and mitigating, the damage from this DDOS attack cost more than $300,000. [BCH] also lost more than an estimated $300,000 in donations because the DDOS attack disabled the Hospital's fundraising portal."

In his Affidavit, Agent Michael W. Tunick's averred that "In an effort to ensure the attack did not compromise patient information, the Hospital decided to shut down the portions of its network that communicated with the internet and its email servers… This shutdown of the Hospital's website, external internet portal, and e-mail servers, however, impacted the entire Hospital community and particularly the ability of physicians outside of the Hospital to obtain medical records and of patients to communicate with physicians. It also disrupted an important fundraising period for the Hospital by disabling the Hospital's fundraising portal." (D-3-2 at ¶¶ 15-16)

2. <u>Procedural History</u>

For almost two years after the 2014 DDOS disruptions, the government elected not to charge Mr. Gottesfeld.  Instead, the government slowly investigated the case and attempted to negotiate a pre-indictment plea to an information. (D-19 at 16-18) Mr. Gottesfeld did not plea.

On February 16, 2016, the government filed a Criminal Complaint against Mr. Gottesfeld, 16-mj-4117-MBB, alleging a single count of Conspiracy, 18.U.S.C. §371. (D-3)  On the same day, the Court (Hennessey, M.J.) issued an Arrest Warrant for him on that Complaint. (D-4)  The government filed the Complaint and requested the warrant only after Mr. Gottesfeld and his wife were rescued by a Disney cruise ship after their own boat experienced difficulties off the Florida coast. (D-3-2 at ¶35)  There were no travel restrictions on the Gottesfelds.  (D-19 at 36)

On February 17, 2016, 16-mj-4117-MBB was assigned to Magistrate Judge David Hennessey.  (D-5)  On that same day, federal agents arrested Mr. Gottesfeld at the port of Miami and brought him to the Southern District of Florida on Docket 16-mj-02190-AOR. (A true copy of the docket is attached as Ex. 1)  In the Southern District, the government was represented by AUSA Robert Emery.  (<u>Id</u>.)  Mr. Gottesfeld was not afforded counsel, though an Assistant Federal Public Defender acted as *amicus curiae*.  (<u>Id</u>.)  Seeking his soonest possible appearance in the District of Massachusetts, Mr. Gottesfeld stipulated to probable cause and waived removal proccedings.  (<u>Id</u>.) The Magistrate Judge in the Southern District issued a Warrant of Removal to the District of Massachusetts that same day.  (<u>Id</u>.)  Also that same day, the District of Massachusetts unsealed docket 16-mj-4117-MBB.  (D-5)

From February 17 through April 6, 2016, a period of fifty (50) days, inclusive, Mr. Gottesfeld was held in custody outside the District of Massachusetts in locations including

Florida, Oklahoma, New York, and Rhode Island.  Undersigned counsel has spoken with Kevin Neal of the U.S. Marshal's Service who confirmed that Mr. Gottesfeld arrived at Wyatt Detention Facility in Central Falls, RI on March 10, 2016.  (Affidavit of Counsel attached as Ex. 2)  He would remain in custody at Wyatt for two-hundred and forty-nine (249) days before being transferred to other facilities.  Id.

On February 29, 2016, on docket 16-mj-4117-MBB, the Court issued a Notice reassigning the case from Magistrate Judge Hennessey to Magistrate Judge Bowler.  (D-6)

On March 1, 2016, the Court issued an Electronic Notice of Hearing on docket 16-mj-4117-MBB scheduling Mr. Gottesfeld's initial appearance for March 30, 2016.  (D-7).  On March 15, 2016, the Court issued an Electronic Notice of Rescheduling of the Initial Appearance to April 6, 2016. (D-8)

On April 1, 2016, local attorney Jessica Hedges filed a Motion for Admission *Pro Hac Vice* in docket 16-mj-4117-MBB requesting the admission of Tor Ekeland, a member of the bar in the state of New York, for the purpose of representing the defendant in that particular matter.  (D-9)  The motion states the prosecutor at that time, Adam Bookbinder, had no objection to Mr. Ekeland's admission.  That same day, attorney Hedges and attorney James Haynes, both of the Boston firm Hedges & Tumposky, filed appearances in the case, indicating they were local counsel.  (D-10 and D-11)

On April 5, 2016, Magistrate Judge Bowler issued an Electronic Order granting the Motion for Leave to Appear *Pro Hac Vice* for Tor Ekeland.  (D-12)

On April 6, 2016, Mr. Gottesfeld was brought in custody to the District of Massachusetts for his Initial Appearance on 16-mj-4117-MBB.  (D-13)

On April 27, 2016, a detention hearing was held before Magistrate Judge Bowler.  (D-15)  Not receiving a decision for several months, on July 8, 2017 defense counsel filed a Motion for Release from Custody on Conditions. (D-23)  A decision on the matter, an Order of Detention, was not entered until July 27, 2016. (D-25)  Ninety-two (92) days, inclusive, elapsed from the Detention Hearing to the Order of Detention.

On October 16, 2016, attorney Hedges filed a separate Motion for Admission *Pro Hac Vice* for Frederic Jennings, Tor Ekeland's associate, in 16-mj-4117-MBB.  (D-26)  That motion was allowed the same day.  (D-27)

On October 19, 2016, Mr. Gottesfield was indicted in the present action.  (D-28).  The period from Mr. Gottesfeld's arrest on February 17, 2016 to his indictment on October 19, 2016 was two hundred and forty-six (246) days, inclusive.

On October 25, 2016, District Judge Patti Saris entered an Order of Recusal in the case *sua sponte*, citing a 2013 alleged cyber attack on the Sentencing Commission by a group calling itself Anonymous. (D-33)  Judge Saris "conclude[d] that her impartiality might reasonably be questioned." Id.

On October 26, 2016, Mr. Gottefeld was arraigned on the indictment before Magistrate Judge Bowler.  (D-35).

On November 14, 2016, District Judge Dennis Saylor entered an Order of Recusal in the case *sua sponte*, citing a professional and personal relationship with one of the prosecutors.  (D-40).  Judge Saylor concluded his "impartiality might reasonably be questioned." Id.  That same day, District Judge Nathaniel Gorton was assigned the case.  (D-41)

No other District Judge was ever assigned this criminal case.

On November 28, 2016, Tor Ekeland and Frederic Jennings filed a Motion to Withdraw (D-45).  On that same date, the Court allowed the motion to withdraw and new counsel was appointed.  (D-46)

On March 8, 2018, when represented by attorney Raymond Gillespie, Mr. Gottesfeld filed a *pro se* Motion to Dismiss alleging various violations of the Speedy Trial Act, 18 U.S.C. §3161 and 3162, and the Speedy Trial clause of the Sixth Amendment to the Constitution. (D-122).  On March 20, 2018, attorney Gillespie filed a Motion to Dismiss alleging Speedy Trial violations.  (D-131).

On March 21, 2018, in a previously sealed civil docket, 16-mc-90164-ADB, before a different judge, District Judge Allison Burroughs, the government filed a Motion to Unseal.  (A true copy of this docket with all its filings and orders is attached at Ex. 3)(Ex. 3 at D-16)  In an electronic order that same day, Judge Burroughs allowed the government's motion to unseal. (Ex. 3 at D-17)  In sum, this recently unsealed civil docket reveals that from March 1, 2016 through September 23, 2016, the government filed six (6) "assented-to" motions to exclude time from the pre-indictment speedy trial clock.

Specifically, the motion filed on March 1, 2016 (Ex. 3 at D-1) and granted that same day (Ex. 3 at D-3) purported to exclude "the period from March 18, 2016 through April 22, 2016."

The motion filed on April 11, 2016 (Ex. 3 at D-4) and granted on May 5, 2016 (Ex. 3 at D-5) purported to exclude "the period from April 22, 2016, through May 27, 2016."  On this motion, the Court acted fourteen (14) days, inclusive, *within* the requested exclusion period.

The motion filed on May 20, 2016 (Ex. 3 at D-6) and granted on May 25, 2016 (Ex. 3 at D-7) purported to exclude "the period from May 27 through July 1, 2016."

The motion filed on June 30, 2016 (Ex. 3 at D-8) and granted that same day (Ex. 3 at D-9) purported to exclude "the period from July 1, 2016 to August 1, 2016."

The motion filed on July 22, 2016 (Ex. 3at D-10) and granted on August 2, 2016 (Ex. 3 at D-11 and D-12) purported to exclude "the period from August 1 to September 9, 2016."  On this motion, the Court acted two (2) days, inclusive, *within* the requested exclusion period.

The motion filed on August 26, 2016 (Ex. 3 at D-13) and granted on August 29, 2016 (Ex. 3 at D-14) purported to exclude "the period from September 9 to October 10, 2016."

In several of these "assented-to" motions, the government suggested than a detention order would assist them in achieving a plea.  The government wrote: "Magistrate Judge Bowler has not yet issued a detention decision.  While that decision is pending, the parties have not been able to conclude their discussions of a possible plea agreement and information.  Once the Magistrate Judge issues her decision, the parties will resume their discussions…"  (Ex. 3 at D-6, D-8, and D-10)

On September 23, 2016, the government filed a "Joint Notice Regarding Excluded Time Under the Speedy Trial Act" (Ex. 3 at D-15) which cited 18 U.S.C. §3161(h)(1)(F) to claim "10 days" during Mr. Gottesfeld's transport from Florida to Massachusetts that was "excluded from the time by which an Information or Indictment had to be filed."  The government claimed no additional prior exclusion time beyond these "10 days;" further, the government neither requested nor received action on the notice.

In their motion to unseal civil docket 16-mc-90164-ADB, the government claims "the pleadings in this miscellaneous case, which are all either assented-to motions to toll the pre-indictment Speedy Trial Act clock or the Court's rulings on those motions, are relevant to the government's opposition to defendant Gottesfeld's motion [to dismiss]."  (Ex. 3 at D-16)

Notably, the government did not file a motion concerning, and the Court did not exclude, the period from Mr. Gottesfeld's arrest on February 17, 2016 to March 17, 2016, a period of thirty (30) days, inclusive.  Indeed, the first "assented-to" motion granted by the Court purported to exclude only "the period from March 18, 2016 through April 22, 2016." (Ex. 3 at D-1 and D-3)

Further, as explained *infra*, the Court did not "set forth, in the record of the case, orally or in writing, its reasons finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial" in any of the orders in 16-mc-90164-ADB, as required by 18 U.S.C. §3161(h)(7)(A); see also Zedner v. United States, 126 S.Ct. 1976 (2006).

 Moreover, in all of these "assented-to" motions in 16-mc-90164-ADB, the only named counsel for the defendant was Tor Ekeland.  Mr. Ekeland is neither a member of the Massachusetts Bar nor admitted to practice in District of Massachusetts.  No lawyer ever filed a motion for leave to practice *pro hac vice* in 16-mc-90164-ADB on behalf of Mr. Ekeland.  He never filed an appearance (as he could not) or otherwise appeared (as he could not) on 16-mc-90164-ADB.  Further, the motion for leave to practice *pro hac vice* on 16-mj-4117-MBB, a separate criminal case, was only allowed by Magistrate Judge Bowler on April 5, 2016.  Thus, at the time the government filed *at least* its first "assented-to" motion in 16-mc-90164-ADB on March 1, 2016, and probably all of the "assented-to" motions, Tor Ekeland was neither a member of the Massachusetts Bar nor licensed to practice in the District of Massachusetts on civil docket 16-mc-90164-ADB.

On April 6, 2018, undersigned counsel spoke with attorney Jessica Hedges.  (Ex. 2) Attorney Hedges confirmed that neither she nor her associate James Haynes conferred with the

government about excluding time under the Speedy Trial Act prior to the government's filing of any of the six (6) "assented-to" motions in 16-mc-90164-ADB.  Id.  Indeed, attorney Hedges informed undersigned counsel that Tor Ekeland sent his first email communication to attorney Hedges requesting that she act as local counsel in the criminal case on March 31, 2016.  Id.  As stated, no motion for leave to practice *pro hac vice* was ever filed before Judge Burroughs on civil docket 16-mc-90164-ADB; further, the motion for leave to practice *pro hac vice* on criminal docket 16-mj-4117-MBB was only allowed by Magistrate Judge Bowler on April 5, 2016.  (D-12)

As to the "assented-to" motions in 16-mc-90164-ADB, there are differences as to who purportedly assented.  In both the first "assented-to" motion from March 1, 2016 (Ex. 3 at D-1) and the second "assented-to" motion from April 11, 2016 (Ex. 3 at D-4), the government wrote that "Undersigned counsel has conferred with counsel for the defendant, Tor Ekeland, who assents to this motion."  There is no mention of assent by the defendant.  In the subsequent four (4) "assented-to" filings, however, the government added language to include an assent from the defendant: "Undersigned counsel has conferred with counsel for the defendant, Tor Ekeland, who has stated that he *and the defendant* assent to this motion." (emphasis supplied). (Ex. 3 at D-6, D-8, D-10, and D-13)  Thus, by the government's own accounting, the defendant never assented to *at least* the March 1, 2016 and April 11, 2016 motions.

On criminal docket 16-mj-4117-MBB, there is no discussion concerning the exclusion of time until Mr. Gottesfeld's arraignment on the indictment on October 26, 2016. (D-35)  The government filed its first motion to exclude time before Magistrate Judge Bowler on October 27, 2016. (D-36).

<u>LAW AND ARGUMENT</u>

1. <u>The relevant dismissal provisions of the Speedy Trial Act and the issues before the Court</u>

18 U.S.C. §3161(b) states in pertinent part: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."

As discussed *infra*,18 U.S.C. §3161(h) provides for certain enumerated excludable periods from the rules requiring an indictment within thirty (30) days of a person's arrest.

By its express terms, a violation of the Speedy Trial Act requires dismissal.  18 U.S.C. §3162(a)(1) states: "If… no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against the individual shall be dismissed or otherwise dropped."

The period of time from Mr. Gottesfeld's arrest on February 17, 2016 in the Southern District of Florida to his indictment on October 19, 2016 in the District of Massachusetts was two hundred and forty-six (246) days, inclusive.  Thus, a central issue raised in this motion is whether more than thirty (30) non-excludable days elapsed during those two hundred and forty-six (246) days before the indictment.  If that question is answered in the affirmative, dismissal is required.

2. <u>Judge Burroughs's orders to exclude time under the Speedy Trial Act on civil docket 16-mc-90164-ADB failed to meet the circumstances and requirements set forth in 18 U.S.C. §3161(h) and therefore the orders did not toll the speedy trial clock.</u>

   a. 18 U.S.C. §3161(h)(1)(E) concerning delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure

The provisions of 18 U.S.C. §3161(h)(1)(E) do not apply to Mr. Gottesfeld's case.  Mr. Gottesfeld did not have a "proceeding" in the Southern District of Florida on transfer or removal. On the single day he was brought before the court, February 17, 2016, Mr. Gottesfeld stipulated

to probable cause and waived removal proceedings; the Court issued its orders that very day. (Ex. 1). Indeed, Mr. Gottesfeld was not even represented by counsel in the Southern District of Florida and there was no waiver of counsel; no proceeding in the sense contemplated by the statute took place. Id. 18 U.S.C. §3161(h)(1)(E) is inapplicable to Mr. Gottesfeld's case.

> b. 18 U.S.C. §3161(h)(1)(F) concerning delay resulting from transportation of a defendant from another district

The provisions of 18 U.S.C. §3161(h)(1)(F) may apply to Mr. Gottesfeld's case, though the number of excludable days would be limited to ten (10). The statute clearly states that any time in excess of ten (10) days "shall be presumed to be unreasonable." Further, even the government limited its claim to the statutory ten (10) days in the September 23, 2016 notice filed in civil docket 16-mc-90164-ADB. (Ex. 3 at D-15). No more than ten (10) days may be excluded under this provision.

> c. 18 U.S.C. §3161(h)(7)(A) concerning continuances in the ends of justice

18 U.S.C. §3161(h)(7)(A) allows for exclusion of time where the court "granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." However, 18 U.S.C. §3161(h)(7)(A) clearly states that "No such period of delay… shall be excludable under this subsection unless the court sets forth, *in the record of the case, either orally or in writing, its reasons* finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." (emphasis supplied)

18 U.S.C. §3161(h)(7)(B)(i)-(iv) describes "The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph A." In Zedner v. United States, the Supreme Court held that "without on-the-record findings, there can be no

exclusion" for continuances under §3161(h)(7)(A).  126 S.Ct. at 1989.  Further, the Court ruled

that on appeal "harmless error review is not appropriate."  Id. at 1990.

These provisions of the Speedy Trial Act must be strictly enforced.  In United States v.

Bloute, a case concerning the Speedy Trial Act, the Supreme Court affirmed that "[A] statute

ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or

word shall be superfluous, void, or insignificant."  United States v. Bloute, 559 U.S. 196, 209

(2010) (citations omitted).

Judge Burroughs's orders were not "in the record of the case."  All of her orders were in

a sealed civil docket; the case at issue is an unsealed criminal docket before a different judge.

These matters are *not* the same case.  The requirement of 18 U.S.C. §3161(h)(7)(A) that the

Court's findings be "in the record *of the case*" was unmet.  See also Bloute, supra at 209; Zedner,

supra at 1989. (emphasis supplied)

Further, the Court did not "set forth… orally or in writing, its reasons finding that the

ends of justice served by the granting of such continuance outweigh the best interests of the

public and the defendant in a speedy trial" in any of the orders in 16-mc-90164-ADB, as required

by 18 U.S.C. §3161(h)(7)(A); see also Zedner v. United States, 126 S.Ct. 1976 (2006).

The first "assented-to" motion granted by the Court purported to exclude "the period

from March 18, 2016 through April 22, 2016." (Ex. 3 at D-1 and D-3).  However, the judge did

not issue any oral or written findings on the record.  Instead, the judge simply signed a prepared

line in the motion stating "The above motion is GRANTED, and the period of March 18, 2016

through April 22, 2016 is excluded from all Speedy Trial Act calculations."  A Grant, by itself, is

not a Statement of Reasons for the order.   It is dispositive that the judge did not identify any

factor from 18 U.S.C. §3161(h)(7)(B)(i)-(iv), or any other factor.  Zedner, supra at 1989.

Even if this Court were to consider Judge Burroughs's March 1, 2016 grant effective, the Court granted several other alleged "assented-to" motions without setting forth its reasons "in the record of the case."  A review of the docket for 16-mc-90164-ADB reveals that the following grants of continuance, issued by "Electronic Order" only, were followed *without any oral or written statement of reasons on the record whatsoever*: (1) the April 11, 2016 motion (Ex. 3 at D-4 and D-5); (2) the May 20, 2016 motion (Ex. 3 at D-6 and D-7); (3) the June 30, 2016 motion (Ex. 3 at D-8 and D-9); (4) the July 22, 2016 motion (Ex. 3 at D-10 and D-11); and (5) the August 26, 2016 motion.  (Ex. 3 at D-13 and D-14)

Further, while the July 22, 2016 motion was accompanied by a written "Order of Excludable Delay" on August 2, 2016*, a document that followed none of the other motions*, this order also failed to state the reasons why the ends of justice were served by the continuance. (Ex. 3 at D-10, D-11, and D-12).  Thus, even the August 2, 2016 order was defective.

In addition to these dispositive errors, on two occasions Judge Burroughs purported to exclude time through improper backdating.  The motion filed on April 11, 2016 (Ex. 3 at D-4) requested exclusion of "the period from April 22, 2016, through May 27, 2016."  However, Judge Burroughs only granted the motion on May 5, 2016 (Ex. 3 at D-5)  Similarly, the motion filed on July 22, 2016 (Ex. 3 at D-10) requested exclusion from "the period from August 1 to September 9, 2016."  However, Judge Burroughs only granted the motion on August 2, 2016 (Ex. 3 at D-10 and D-11)  This backdating was error.  "[T]he continuance itself must be granted before the period sought to be excluded begins to run."  United States v. Janik, 723 F. 2d 537, 545 (7th Cir. 1983); see also United States v. Suarez-Perez, 484 F.3d 537, 542 (8th Cir. 2007) ("The Speedy Trial Act does not provide for retroactive continuances"); United States v. Shanahan, Dkt. 04-cr-126-04-PB (Dist. of NH) (holding same).

The first instance of backdating from April 22 through May 4, 2016 is thirteen (13) days, inclusive.  The second instance of backdating is for August 1, 2016, one (1) day.

After these fourteen (14) days of improper backdating are added to the twenty (20) days of non-excludable time from February 17 to March 17, 2016 in which no motion was filed or order entered, there are thirty-four (34) days of non-excludable time – justification alone to dismiss the indictment.  However, the Court should also consider the entire two-hundred forty-six (246) days between Mr. Gottesfeld's arrest on February 17, 2016 and his indictment on October 19, 2016 because none of the judge's orders on civil docket 16-mc-90164-ADB met the record-making requirements set forth in 18 U.S.C. §3161(h)(7)(A), and the circumstances are relevant to Mr. Gottesfeld's request for dismissal with prejudice.

3. Tor Ekeland's purported "assents" to exclude time under the Speedy Trial Act on civil docket 16-mc-90164-ADB were a legal nullity and the orders concerning the "assented-to" motions did not toll the speedy trial clock.

The Speedy Trial Act authorizes courts to grant continuances in the ends of justice "at the request of the defendant or his counsel" in certain delineated circumstances.  18 U.S.C. § 3161(h)(7)(A); United States v. Gates, 709 F.3d. 58, 65 (1st Cir. 2013).  Those circumstances are unmet here.

As a matter of law, Mr. Ekeland was not and could not be "counsel for the defendant" in connection with 16-mc-90164-ADB.  Mr. Ekeland was neither a member of the Massachusetts Bar nor licensed to practice in the District of Massachusetts on the civil docket.  No lawyer ever filed a motion for leave to practice *pro hac vice* in 16-mc-90164-ADB on behalf of Mr. Ekeland.  Mr. Ekeland never filed an appearance on the docket (as he could not) or otherwise appeared (as he could not) on 16-mc-90164-ADB.  He did not sign any of the "assented-to" waivers on the civil docket because he would be barred from doing so.  It is axiomatic that in such

circumstances Mr. Ekeland could not act as counsel for Mr. Gottesfeld's in the District of Massachusetts on 16-mc-90164-ADB.  Thus, every "assented-to" motion is, at best, a legal nullity and an ineffective attempt to toll the speedy trial clock.

Further, the government never informed Judge Burroughs that Mr. Ekeland was unlicensed and unadmitted in the District of Massachusetts.  Had it informed the Court, Judge Burroughs may have denied the "assented-to" motions or contacted the local CJA Panel to assign a lawyer to Mr. Gottesfeld pending Mr. Ekeland's admission.  Judge Burroughs was deprived of both opportunities by the government's failure to inform the Court regarding Mr. Ekeland's unadmitted status.

There is no defense for the government that on April 5, 2016, Magistrate Judge Bowler allowed the *pro hac vice* motion on behalf of Mr. Ekeland on criminal docket 16-mj-4117-MBB. This order was on a separate docket before a different judge and therefore had no bearing on the matter before Judge Burroughs.  See Local Rules of the United States District Court for the District of Massachusetts, Rule 83.5.3. ("An attorney who is a member of the bar of any United States District Court or the highest court of any state may appear and practice in this court *in a particular case* by leave granted in the discretion of the court…") (emphasis supplied).

However, even if the Court were to consider Magistrate Judge Bowler's April 5, 2016 allowance of the *pro hac vice* motion in 16-mj-4117-MBB when reviewing the sealed docket before Judge Burroughs, the government is still not saved: the government had already filed one "assented-to" motion on 16-mc-90164-ADB on March 1, 2016 *prior to* Mr. Ekeland's April 5, 2016 admission on16-mj-4117-MBB.  Again, this motion would be, at best, a legal nullity, as would the grant of that order.  Simply put, Mr. Ekeland had no right to assent to anything before the Court.

Indeed, the government appears to have realized as much: their decision to change the language in the "assented-to" motions, namely their addition of the phrase "and the defendant" to the last four (4) motions (whereas they had previously asserted only Mr. Ekeland's assent), reveals the government's concern that the prior "assented-to" motions, and their corresponding grants, were ineffective.

Since the purported "assented-to" motions and orders on 16-mc-90164-ADB were ineffective in tolling the speedy trial clock, the indictment must be dismissed.

4. The Supreme Court's holding in *Zedner v. United States*, 126 S.Ct. 1976 (2006), that "a defendant may not prospectively waive the application of the [Speedy Trial] Act" renders all purported prospective waivers on all dockets in this matter a legal nullity.

In Zedner v. United States, 126 S.Ct. 1976, 1985 (2006), the Supreme Court held "a defendant may not prospectively waive the application of the [Speedy Trial] Act." In Zedner, the defendant had signed a court-generated form waiving his right to a speedy trial "for all time." Id. at 1982. The holding of the case, however, is not limited to waivers "for all time"; rather, the holding concerns all prospective waivers under the Act, regardless of duration. "Petitioner contends, and the Government does not seriously dispute, that a defendant may not prospectively waive the application of the Act. We agree." Id. at 1985. "If a defendant could simply waive the application of the Act whenever he or she wanted more time, no defendant would ever need to put such considerations before the court under the rubric of an ends-of-justice exclusion." Id. "Allowing prospective waivers would seriously undermine the Act…" Id. at 1986.

The Court's holding in Zedner is controlling here insofar as the government argues that the "assented-to" motions in 16-mc-90164-ADB, or any other motions or actions of the parties, purport to act as prospective waivers of the Speedy Trial Act. There are no prospective waivers under the Act, and the violation of Mr. Gottesfeld's rights require dismissal.

5.  <u>Independent of the Speedy Trial Act, the Court should dismiss the indictment under FRCP 48(b)(1).</u>

FRCP 48(b)(1) provides in pertinent part: "The Court may dismiss an indictment… if unnecessary delay occurs in… presenting a charge to a grand jury."

FRCP 48(b), of course, operates independently from the Act. See <u>United States</u> v. <u>Goodson</u>, 204 F.3d 508 (4th Cir. 2000) (noting purpose of Rule 48(b)); <u>United States</u> v. <u>Carlone</u>, 666 F.2d 1112, 1116 (7th Cir. 1981) (suggesting that Rule 48(b) could provide an alternate basis in an extreme case to dismiss an indictment, without reference to Speedy Trial Act); <u>United States</u> v. <u>Balochi</u>, 527 F.2d 562, 563–64 (4th Cir. 1976) (per curiam) (Rule 48(b) is broader in compass).

This is indeed an extreme case deserving of dismissal independent of the Speedy Trial Act violations.  It took fifty (50) days, inclusive, to bring the detained Mr. Gottesfeld from the Southern District of Florida to the District of Massachusetts.  This is an extraordinary amount of time without any excuse, particularly where Mr. Gottesfeld arrived at the Wyatt Detention Center on March 10, 2016.  All the while, the government claimed in a separate sealed civil docket that it possessed the "assent" of Tor Ekeland to waive Mr. Gottesfeld's speedy trial rights, knowing that the unlicensed and unadmitted Mr. Ekeland could not possibly represent Mr. Gottesfeld on that separate civil case.

The government took from February 17, 2016 to October 19, 2016, two-hundred and forty-six (246) days, inclusive, to obtain an indictment.  This delay occurred *after* the government had already investigated the matter for almost two years.  Meanwhile, from April 27, 2016 to July 27, 2016, a period of ninety-two (92) days, inclusive, Mr. Gottesfeld was forced to wait in custody while awaiting a decision on a Detention Hearing.  Further, the government repeatedly used the delay to suggest to the Court in the sealed civil docket that the outcome of

the decision might encourage the defendant to plea guilty.  (Ex. 3 at D-6, D-8, and D-10)

("Magistrate Judge Bowler has not yet issued a detention decision.  While that decision is

pending, the parties have not been able to conclude their discussions of a possible plea agreement

and information.  Once the Magistrate Judge issues her decision, the parties will resume their

discussions…").

First, "the time spend in plea bargaining is a gamble taken by the government regarding

the defendant's speedy trial rights and is properly counted against the government."  United

States v. Tigano, III, Dkt. No. 15-3073 (2nd Cir. 2018) (citation omitted).  None of time discussed

by the government should be excluded from the speedy trial clock.  Second, the government's

repeated suggestions that the Court's decision on detention might influence Mr. Gottesfeld's

decision on whether to plea guilty, were – to put it mildly - wholly inappropriate.

Independent of the Speedy Trial Act, the Court should dismiss the case pursuant to FRCP

48(b)(1).

6.  <u>The Court's dismissal of the indictment should be with prejudice.</u>

To determine whether to dismiss a case with or without prejudice under the Speedy Trial

Act, "the court shall consider, among others, each of the following factors: the seriousness of the

offense; the facts and circumstances of the case which led to the dismissal; and the impact of a

reprosecution on the administration of this chapter and on the administration of justice."  18

U.S.C. §3162(a)(1).

a.  "The seriousness of the offense"

The first listed factor of 18 U.S.C. §3162(a)(1) weighs in favor of Mr. Gottesfeld.  The

government's own treatment of this case reveals that even they did not view the alleged offense

with remarkable seriousness in the months following the incidents.  And that only makes sense.

The government was clearly aware of the controversy surrounding the reported mistreatment and/or abuse of J.P. and her family.  For example, in Agent Tunick's Affidavit filed on February 16, 2016, he acknowledged "The issue of Patient A's custody and medical care became a national media story, with religious and political organizations and others asserting the case was an example of interference with parental rights."  (D-3-2 at ¶ 6).

More than interference with parental rights, however, the J.P. matter raised questions on medical child abuse.  Before the alleged offenses, many notable news outlets reported on the widespread concern over the reported mistreatment and/or abuse of J.P. and her family.  See e.g. "A Medical Collision with a Child in the Middle," The Boston Globe, December 15, 2013; "Protest Planned to Fight Hospital's 'Kidnapping' of West Hartford Girl," West Hartford Patch, December 2, 2013 (https://patch.com/connecticut/westhartford/protest-planned-to-fight-hospitals-kidnapping-of-west-hartford-girl) (last accessed April 17, 2018) (https://www.bostonglobe.com/metro/2013/12/15/justina/vnwzbbNdiodSD7WDTh6xZI/story.html) (last accessed April 8, 2018); "Frustrations on All Fronts in Struggle Over Child's Future," The Boston Globe, December 16, 2013 (https://www.bostonglobe.com/metro/2013/12/16/month-medical-ordeal-conclusion-still-uncertain/Y7qvYTGsq8QklkxUZvuUgP/story.html) (last accessed April 17, 2018); "Advocates Fight for Justina Pelletier, Teen Held by State in Psych Ward," ABC News, February 10, 2014 (http://abcnews.go.com/Health/advocates-fight-teen-justin-pelletier-held-state-pysch/story?id=22312907) (last accessed April 8, 2018); "Justina Pelletier's Parents Fighting to Get Her Back," WGBH News, March 6, 2014 (https://news.wgbh.org/post/justina-pelletiers-parents-fighting-get-her-back)

Media continued to report on the alleged mistreatment and/or abuse of J.P. and her family in and around the period of the alleged DDOS attacks.  See "The Sad, Scary Saga of Justina

Pelletier," Slate.com, March 27, 2014

(http://www.slate.com/blogs/xx_factor/2014/03/27/justina_pelletier_ruling_boston_children_s_hospital_and_judge_perform_parent.html) (last accessed April 17, 2018); "Mitochondrial Disease or Medical Child Abuse?," Slate.com, April 1, 2014

(http://www.slate.com/articles/health_and_science/medical_examiner/2014/04/justina_pelletier_s_mitochondrial_disease_boston_children_s_hospital_suspects.html) (last accessed April 8, 2014); "'Shocking Note' Apparently Penned by Justina Pelletier to Her Parents," The Blaze, April 15, 2014, (https://www.theblaze.com/news/2014/04/15/shocking-note-apparently-penned-by-justina-pelletier-to-her-parents) (last accessed April 17, 2018); "Justina Pelletier tells parents in secret letter she is being 'tortured'," Life News, April 16, 2014,

(http://www.lifenews.com/2014/04/16/justina-pelletier-tells-parents-in-secret-letter-she-is-being-tortured/) (last accessed April 8, 2018); "The Faces of 'Free Justina'," The Boston Globe, May 2, 2014(http://www.bostonglobe.com/2014/05/01/justina/1iVWxZZSSejnbcQhrRLELN/story.html) (last accessed April 8, 2018); "Justina Pelletier's Legal Nightmare Should Frighten All Parents," Fox News, June 17, 2014 (http://www.foxnews.com/opinion/2014/06/17/justina-pelletier-legal-nightmare-should-frighten-all-parents.html) (last accessed April 8, 2018).  It was in this context that the alleged offenses occurred.

　　　　Mindful of the public sentiment and other concerns regarding the reported mistreatment and/or abuse of J.P. and her family, for almost two years the government refrained from charging Mr. Gottesfeld with the 2014 DDOS disruptions.  Instead, the government slowly investigated the matter and engaged in lengthy negotiations with Mr. Gottesfeld seeking a pre-indictment resolution to the case.  The government met with Mr. Gottesfeld on numerous occasions in attempts to come to a resolution.  (D-19 at 16-18)  The government was free to seek an

indictment at any point, but elected not to.  The government only filed the February 16, 2016

complaint against Mr. Gottesfeld after he was stranded while sailing south of Florida and picked

up by the Disney cruise ship.  Further, even after the government filed its complaint, the

"assented-to" motions in 16-mc-90164-ADB reveal that the government still continued to engage

in pre-indictment negotiations with Mr. Gottesfeld.  (D-1) ("a resolution of this case through plea

agreement and information would be in the interests of justice."); (D-4) (same); (D-6) ("Once the

Magistrate Judge issues her decision, the parties will resume their discussions and either reach an

agreement or determine there will be no plea agreement the case will proceed via indictment.").

    The facts and circumstances of this case, as well as the government's own words and

actions, reveal that even the government did not consider a grand jury investigation or protracted

prosecution necessary or desirable.  While reasonable people may (and do) debate the rightness

of Mr. Gottesfeld's alleged response to the suffering of J.P. and her family, there is no doubt that

J.P. and her family earned significant, well-meaning, and outspoken support from recognized

voices and outlets from across the region and the country.  What was sufficiently appropriate to

resolve through quiet negotiations in 2015 and 2016 should not now be deemed too serious to

dismiss with prejudice.

    Further, the government overstates the alleged damages in the case.  They have already

admitted this was not "a cyber 9[/]11." (D-19 at 55).   Indeed, the claimed monetary losses are

not as significant as losses regularly claimed in other federal cases.

    Moreover, BCH's claimed fundraising loss of $300,000 is wholly speculative.  It appears

this figure is based on BCH's fundraising figures from prior years.  However, nothing in the case

suggests that BCH would have replicated its previous fundraising figures.  In fact, with The

Boston Globe, WGBH, ABC, and others news outlets reporting on BCH's alleged mistreatment

and/or abuse of J.P. and her family, and with ongoing protests against BCH, it is probable that BCH would have raised substantially *less funds* than years past.

Even more, both BCH's speculative fundraising losses and the $300,000 BCH allegedly incurred responding to the cyber attacks are unlikely to be wholly attributable to the DDOS or Mr. Gottesfeld.  First, it is the defense's understanding that the remedial actions taken by BCH were more consistent with concerns about malware, such as those posed by the malicious "fishing" emails; the government has not charged Mr. Gottesfeld with sending those emails and conceded it did not know who sent them.  (D-19 at 49)  Second, it is well-documented that many people were upset about BCH's alleged mistreatment and/or abuse of J.P. and her family and others may have had a motive to send such malicious emails.  Whether the person who sent the malicious emails was "DigitaGhost" (D-3-2 at ¶¶ 26-28) or another individual was unknown at the Detention Hearing (D-19 at 49).  It is abundantly clear, however, that Mr. Gottesfeld must not be held responsible for costs incurred by BCH's response to them.

In sum, many factors, including the government's nearly two-year long delay in charging this case; the pre-charging negotiations with Mr. Gottesfeld while he was out of custody; the genuine public concern over the alleged mistreatment and/or abuse of J.P. and her family; and the relatively moderate, speculative, and misattributed damages; all reveal the first factor of 18 U.S.C. §3162(a)(1) to weigh in favor of Mr. Gottesfeld.

  b. "The facts and circumstances of the case that led to the dismissal"

The second listed factor of 18 U.S.C. §3162(a)(1) also weighs in favor of Mr. Gottesfeld. The specific facts and circumstances leading to the dismissal are discussed *supra* and are incorporated by reference here.  The egregious nature of these facts and circumstances – fifty (50) days of transport while in custody; detention at Wyatt from March 10 to April 6, 2016

before an Initial Appearance; unlicensed and unadmitted lawyers; separate sealed civil dockets; changing language in so-called "assented to" motions; a three-month delay between a Detention Hearing and an order on the same; government attempts to use that delay to secure a plea – were all to the tremendous detriment to Mr. Gottesfeld.

"When a STA violation is caused by the court or the prosecutor, it weighs in favor of granting a dismissal with prejudice." United States v. Ramirez Jr. et al., 973 F. 2d 36 (1st Cir. 1992) (citation omitted). Federal agencies working for the government and the courts are held to that same standard. "Whether BOP, ICE, or even a court itself causes the delay, the outcome is effectively the same…. There is only one federal government…" United States v. Reina-Del Rosario, 2017 WL 6547853 (D.P.R.) (internal citations omitted). "Where the violation of the STA is attributable to the prosecution, or even the court, 'the allowance of reprosecution of defendant[ ] for the charged offense[ ] would completely negate the beneficent purposes intended to be accomplished by the Act in insuring timely trial of defendants, especially those incarcerated pending trial as w[as] th[is] defendant[ ].'" Reina-Del Rosario, supra (citation omitted).

 In the present circumstances, nothing but a dismissal with prejudice will remedy the actions that led to the speedy trial violations in this case.

      c.  "The impact of a reprosecution on the Administration of this Chapter and on the Administration of Justice"

The third listed factor of 18 U.S.C. §3162(a)(1) also weighs in favor of Mr. Gottesfeld.

First, as stated *supra*, these events allegedly occurred in highly-charged circumstances in which well-meaning people were genuinely concerned over an ongoing controversy. The government's own reaction to the case in the first two years speaks to the public sensitivity surrounding the issues.

Second, a reprosecution is not needed to reach any kind of approximate justice. One of the most important factors in this respect is the relative similarity between Mr. Gottesfeld's length of pretrial incarceration and his likely sentencing guidelines upon any conviction at reprosecution. See United States v. Reina-Del Rosario, No. 17-cr-534-GAG, (Dist. of Puerto Rico) (Dec 21, 2017). When asked about sentencing at the Detention Hearing, the government asserted "We're talking three, four years would be the Guideline range" *without* acceptance of responsibility  (D-19 at 59). With acceptance of responsibility, of course, the guidelines would be reduced markedly. Further reductions would be warranted in light of the overstated, speculative, and misattributed financial damages discussed *supra*. Additionally, during any sentence Mr. Gottesfeld would be afforded fifty-four (54) days of good time annually (on a *pro rated* basis, as appropriate) if statutory circumstances were met. 18 U.S.C. §3624(b)(1).

As of this filing, Mr. Gottesfeld has been held in custody since February 17, 2016, a period of approximately twenty-six (26) months. Mr. Gottesfeld has already spent approximately as much time in custody as he would likely receive in a reprosecution. The Administration of the Speedy Trial Act and the Administration of Justice support dismissal with prejudice.

## CONCLUSION

The two-hundred forty-six (246) day period between Mr. Gottesfeld's arrest and indictment was a violation of the Speedy Trial Act by a factor greater than eight (8). The circumstances giving rise to the violation were unacceptable to egregious. Given all that has happened in the four (4) years since the alleged offenses took place and the twenty-six (26) months since Mr. Gottesfeld has been in custody, we respectfully request the Court dismiss this case with prejudice.

Respectfully submitted,
MARTIN GOTTESFELD
By his attorney:

/s/ David J. Grimaldi

_____

David J. Grimaldi
David J. Grimaldi, P.C.
BBO No. 669343
675 Massachusetts Avenue, 9th Floor
Cambridge, MA 02139
617-661-1529 (tel)
857-362-7889 (fax)
david@attorneygrimaldi.com

DATE: April 23, 2018

CERTIFICATE OF SERVICE

    I, David J. Grimaldi, hereby certify that true copies of this motion were served on all registered participants in this matter via ECF this 23rd day of April 2018.

/s/ David J. Grimaldi

_____

David J. Grimaldi