# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SERKAN CABI, PH.D., ISIN CAKIR, PH.D., and SAFAK MERT, PH.D., <br><br> Plaintiffs, <br><br> v. <br><br> BOSTON CHILDREN'S HOSPITAL, THE CHILDREN'S HOSPITAL CORPORATION AND ITS AFFILIATED ENTITIES, UMUT OZCAN, M.D., and JOSEPH MAJZOUB, M.D., <br><br> Defendants. | Civil Action No. 1:15-cv-12306-DJC |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA

Pursuant to Rules 26(c) and 45(d)(3) of the Federal Rules of Civil Procedure, and Local Rule 7.1, Defendants Boston Children's Hospital, The Children's Hospital Corporation and Its Affiliated Entities (collectively, "Children's Hospital"), Joseph Majzoub, M.D., and Umut Ozcan, M.D. (collectively, "Defendants"), respectfully move for a protective order and to quash the subpoena *duces tecum* issued by Plaintiffs Serkan Cabi, Isin Cakir, and Safak Mert (collectively, "Plaintiffs") directed at Harvard Medical School ("HMS").

Plaintiffs' subpoena is a blatant attempt to end-run HMS's ongoing, confidential research misconduct investigation (the "HMS Investigation") by using discovery in this case to obtain documents related to the HMS Investigation, and should therefore be quashed. Indeed, the Plaintiffs have previously tried to compel Children's Hospital to produce documents related to the confidential HMS Investigation, and failed. The Court held that documents related to the confidential HMS Investigation into research misconduct are irrelevant to this litigation, and

denied Plaintiffs' motion to compel. The Plaintiffs have now subpoenaed third-party HMS to obtain many of the same documents that they unsuccessfully attempted to obtain from Children's Hospital, including documents directly related to the confidential HMS Investigation. The Plaintiffs should not be allowed to circumvent the Court's discovery rulings by issuing a broad subpoena to a third party seeking irrelevant documents that were the subject of a prior failed motion to compel. This is particularly true here because the Plaintiffs are improperly using this subpoena as a vehicle to obtain discovery related to the confidential HMS Investigation that they might otherwise not have access to in the course of the investigation. For these reasons and the additional reasons set forth below, Plaintiffs' subpoena to HMS should be quashed.

## BACKGROUND

Defendant Children's Hospital is a pediatric hospital and research center, and was the former employer of the Plaintiffs. The Plaintiffs were post-doctoral research fellows in the laboratory of Dr. Ozcan. In March 2014, the Plaintiffs accused Dr. Ozcan of creating a hostile work environment and research misconduct. (Dkt. No. 79, ¶¶ 33–35).

Children's Hospital informed HMS, as a teaching affiliate of Children's Hospital, about the research misconduct allegations immediately, and a separate, confidential proceeding was initiated, pursuant to federal regulation, to address Plaintiffs' research misconduct claims. HMS has taken the lead in conducting the research misconduct investigation. The Plaintiffs initiated this action in Federal court on June 11, 2015 to address their hostile work environment and retaliation claims.

## THE RESEARCH MISCONDUCT PROCEEDING

When the Plaintiffs made allegations of research misconduct against Dr. Ozcan on March 3, 2014, Children's Hospital promptly referred those allegations to HMS. Dr. Ozcan

made counter-allegations, and they were referred to HMS as well. HMS then undertook a confidential review in accordance with internal policies and federal regulations. *See* 42 C.F.R. §§ 93.100 et seq. The HMS Investigation is ongoing. The HMS Investigation is separate and distinct from this litigation, and pursuant to federal regulation, is to remain confidential. 42 C.F.R. § 93.108. Records or evidence related to the research misconduct investigation must be maintained as confidential, with disclosure only to "those who have a need to know to carry out a research misconduct proceeding." *Id.*

Nevertheless, on February 14, 2017, Plaintiffs' counsel issued a wide-ranging subpoena *duces tecum* to HMS. The subpoena directs HMS to produce twenty-six broad categories of documents (the "Requests"). The Plaintiffs have already directed most of these Requests to Children's Hospital itself, and Plaintiffs' subsequent motion to compel Children's Hospital to produce documents related to the confidential HMS Investigation was denied.

The Plaintiffs' expansive requests directed at HMS, coming long <u>after</u> the time for document requests expired on November 15, 2016, amount to an impermissible last-minute fishing expedition that seeks many confidential, proprietary, and/or privileged documents that have no relevance to this case. The Plaintiffs should not be using discovery in this litigation to try a second time to obtain documents that the Court already has held are irrelevant to this litigation, and that relate to the separate, ongoing, confidential investigation by HMS. Accordingly, this Court should quash the subpoena, or, in the alternative, issue a protective order precluding the production of documents responsive thereto.

## **LEGAL STANDARD**

The party issuing a subpoena has the burden of establishing that the requested information is relevant to its claims or defenses. *Enargy Power (Shenzhen) Co. v. Xiaolong*

*Wang*, No. 13-11348-DJC, 2014 WL 2048416, at *2 (D. Mass. May 16, 2014). The decision to quash a subpoena is within the broad discretion of the court. *See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003); *see also Town of Norfolk v. U.S. Army Corps of Eng'rs.*, 968 F.2d 1438, 1456 (1st Cir. 1992).

A party has standing to seek to quash a subpoena when a party has a personal right or privilege with respect to the requested information. *Enargy Power*, 2014 WL 2048416, at *2 n.4; *Combat Zone, Inc. vs. Does 1-84*, No. 12-cv-30085-MAP, 2013 WL 1092132, at *8 n.8 (D. Mass. Feb. 20, 2013); *Reliastar Life Ins. Co. v. Warrior*, No. 06-cv-2486CM-DJW, 2007 WL 2669558, at *4 (D. Kan. Sept.7, 2007). The Defendants have standing to move to quash the subpoena issued to HMS for three independent reasons: (1) a right to confidentiality, as guaranteed by federal regulation; (2) privilege; and (3) lack of relevance.

Here, Defendants have a right to confidentiality with respect to the records and evidence that Children's Hospital shared with HMS as a result of the research misconduct investigation. *See* 42 C.F.R. § 93.108.

Moreover, Plaintiffs' subpoena also seeks HMS's privileged communications with Children's Hospital's counsel. There is a common interest agreement between Children's Hospital's Office of General Counsel, and the Harvard Medical School's Dean for Faculty and Research Integrity, Gretchen Brodnicki, Esq., and the Harvard Medical School's Office of General Counsel to allow the institutions to share legal advice and privileged communications. At a minimum, the Defendants request that Plaintiffs' subpoena be quashed to the extent it seeks these privileged communications.

In addition to moving to quash a subpoena, a party may move for a protective order pursuant to Rule 26(c) "regardless of whether [it] is seeking to prevent disclosure of information

-4-

by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule, such as annoyance, embarrassment, etc." *Accusoft Corp. v. Quest Diagnostics, Inc.*, No. 12-cv-40007-FDS, 2012 WL 1358662, at *10 (D. Mass. Apr. 18, 2012) (internal citation omitted). Courts have granted motions for protective orders where subpoenas are not relevant to the claims or defenses of any party. *See, e.g., Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 59 (1st Cir. 2014); *Heidelberg Americas*, 333 F.3d at 42.

Finally, a Court may limit "[o]n motion or on its own . . . the frequency or extent of discovery otherwise allowed" if determined that "the discovery sought is unreasonably cumulative or duplicative" or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Here, Plaintiffs have attempted, time and again, to seek overbroad, irrelevant discovery from the parties in this case, which the Defendants have successfully opposed. Now Plaintiffs have switched gears and continue to seek such irrelevant materials from non-parties through subpoenas. The Defendants respectfully request that the Court exercise its right under Fed. R. Civ. P. 26(b)(2)(C) to limit the impermissible discovery that the Plaintiffs' continue to seek. *See also Accusoft Corp.*, 2012 WL 1358662, at *11.

## ARGUMENT

The Plaintiffs' Requests should be quashed because they are overly-broad and irrelevant, and seek to end-run the confidential HMS Investigation by requesting documents directly related to the HMS Investigation—which the Court has already deemed are irrelevant to this litigation—including privileged documents.

Nearly all of the Plaintiffs' Requests have been previously directed to the Defendants, and the Court denied Plaintiffs' motion to compel because these requests were irrelevant, overbroad, or privileged. This discovery remains impermissible under Fed. R. Civ. P. 26(b)(1).

The Defendants respectfully request that this Court exercise its power under Fed. R. Civ. P. 26(b)(2)(C) to limit this impermissible discovery, and not allow Plaintiffs to obtain by third-party subpoena what they were denied in discovery from the parties.

Plaintiffs' irrelevant, overbroad requests fall within seven categories, all of which should be quashed:

### a. *Requests directly related to the HMS Investigation (Nos. 1, 2, 3, 4, 5, 6, 7, 19, 20, 21, 22, 23, 24, 25, 26)*

Magistrate Judge Bowler previously denied the Plaintiffs' request to discover information regarding the confidential HMS Investigation, including "[a]ll documents concerning communications with HMS personnel since February 1, 2014"—agreeing that such requests were "out of bounds." *See* Dkt. 126 at 42–43. The Plaintiffs' research misconduct allegations are not at issue in this case. Nevertheless, Requests 21 and 22[1] broadly seek documents regarding the confidential HMS Investigation. Requests 23[2], 24, 25, and 26 directly relate to allegations that are part of the confidential HMS Investigation. And Requests 19 and 20, requesting from HMS "all statements" about Dr. Ozcan or the Plaintiffs from a list of 50 individuals, seek statements that were made to the HMS panel investigating the research misconduct allegations.

It is inappropriate for the Plaintiffs to use this litigation to gain discovery into the confidential HMS Investigation. Federal law mandates that these proceedings remain

---

[1] Request 22 asks for "documents and communications with any department or agency of the federal government concerning any of the research misconduct proceedings against Dr. Ozcan, Dr. Cakir, and/or Dr. Cabi." Magistrate Judge Bowler has already denied the Plaintiffs' attempt to obtain the very same information from Children's Hospital. *See* Dkt. 126 at 33–34.

[2] Request 23 asks for "documents and communications with any department or agency of the federal government concerning any grant for which Dr. Ozcan applied or which he obtained." Magistrate Judge Bowler denied a similar request from the Plaintiffs to Children's Hospital because federal funding of research is not at issue in this case. *See* Dkt. 126 at 33. Magistrate Judge Bowler also noted that the Plaintiffs could issue a Freedom of Information Act to the pertinent federal agencies if they wanted the information. *Id.*

confidential. The Plaintiffs should not be allowed to circumvent these regulations through the improper use of a third-party subpoena. The Plaintiffs are requesting documents from HMS that have no bearing on Plaintiffs' hostile work environment and retaliation claims, which are the subject of this litigation. Rather, Plaintiffs' Requests seek documents directly related to the research misconduct investigation, not their employment claims. Because the confidential HMS Investigation is beyond the scope of this litigation, the Court should again deny Plaintiffs' attempts to use this case as a vehicle to discover irrelevant and confidential information.

### b. Requests related to patent applications (Nos. 1(a), 1(b), 2(a), 2(b), 3(a), 3(b), 4(a), 4(b), 8, and 9)

The Plaintiffs have repeatedly sought to obtain broad discovery into irrelevant patent-related issues. This is an employment discrimination, retaliation, and conspiracy case—not a patent inventorship action. Indeed, the Plaintiffs withdrew their claim for correction of patent inventorship. *Compare* Dkt. 1 ¶¶ 288–293 (Count VIII of the Complaint) *with* Dkts. 33 and 79 (First Amended Complaint and Second Amended Complaint). The only patent-related issue in this case is whether Children's Hospital retaliated against Plaintiffs by removing them from two patent applications. However, at Plaintiffs' request, Children's Hospital hired an outside, independent patent firm, Pabst, to perform an inventorship analysis as to three patent applications involving the Plaintiffs and Dr. Ozcan. Pabst concluded that Cabi and Cakir did not qualify as inventors for two of three patent applications that it reviewed. BCH00048433–46.

As a result, the Court has repeatedly denied Plaintiffs attempts to obtain broad discovery into irrelevant patent issues. *See, e.g.*, Dkt. No. 126 at 18:8–18 (denying Plaintiffs' requests for documents related to projected or anticipated revenue from SR01 and SR02); *id.* at 23:7–13 (denying Plaintiffs' requests for documents concerning communications between Dr. Ozcan, Dr. Majzoub, and anyone else regarding commercialization of patents). Plaintiffs are only entitled to

discovery related to patent applications to the extent that they are relevant to the issue of retaliation. *See* Dkt. 126 at 18–23. Accordingly, Children's Hospital produced the patent applications the Plaintiffs requested and the inventorship report from Pabst, concluding that Cabi and Cakir did not qualify as inventors under patent law. However, any other documents that HMS may have related to patent applications, if any, have no bearing on the narrow retaliation issue. Therefore, the Court should deny the Plaintiffs' over-broad, and irrelevant patent-related Requests.

### c. *Requests related to scientific journals and manuscripts (Nos. 10, 11, 12, 13)*

Dr. Ozcan and other members of his laboratory published two papers in *Cell* and *Nature Medicine*. These manuscripts are irrelevant to this litigation except for the narrow question of whether the Plaintiffs were retaliated against because they were not listed as authors (although Children's Hospital offered them the opportunity to be listed). BCH00011500–592; BCH00010073–165; BCH00011029–121; BCH00046911. Children's Hospital has already produced the documents relevant to the authorship determination, and therefore this request is duplicative of discovery Plaintiffs have already obtained from Children's Hospital. *See* Dkt. No. 126 at 25:6–26:3. To the extent that HMS has any documents related to the manuscripts, it has those documents for purposes of the confidential HMS Investigation, and should be protected.

### d. *Requests related to ERX (Nos. 1(f), 2(f), 3(f), 4, 9, 18)*

The Plaintiffs' broad requests related to ERX should be quashed because they do not relate to the Plaintiffs' claims in this litigation. ERX has been dismissed as a party defendant, and is not relevant to this case. Magistrate Judge Bowler denied Plaintiffs' previous attempt to compel Children's Hospital to produce information about work performed for ERX, including documents concerning the funding for such work. *See* Dkt. 126 at 35–36. Likewise,

communications between HMS and ERX, or documents that HMS may have about ERX, if any exist, are irrelevant.

To the extent that the Plaintiffs are seeking information about an ERX licensing agreement, that information is irrelevant, and Magistrate Judge Bowler has previously denied Plaintiffs' attempts to obtain this information. *Id.* at 18:8–18, 23:7–13.

### e. *Requests related to conflict of interest reports or findings by BCH or HMS (Nos. 16, 17)*

Plaintiffs' Requests regarding conflicts of interest reports and findings are irrelevant. The Plaintiffs do not have any cause of action arising out of any alleged conflict of interest by Dr. Ozcan, and are not entitled to discovery on this issue. Indeed, the Plaintiffs have already tried, and failed, to obtain similar information about conflict of interest reports and findings from Children's Hospital. *See* Dkt. 126 at 34 (denying Plaintiffs' request for documents or communications related to conflicts of interests).[3] Dr. Ozcan's alleged violation of a conflict of interest policy is not relevant to Plaintiffs' claims of a hostile work environment on the basis of race, gender, or national origin, or to their claims of retaliation or conspiracy. These Requests should therefore be quashed, as Plaintiffs have not met their burden of showing that the discovery sought is proportional to the needs of the case. *Gilead Scis., Inc. v. Merck & Co., Inc.*, No. 5:13-CV-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016).

### f. *Plaintiffs' Request for Privileged Information (Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 24, 25, 26)*

In addition to requesting overbroad and irrelevant documents, the Plaintiffs are seeking documents and information protected by Children's Hospital's attorney-client and work-product

---

[3] "MR. SAMITO: I would like those documents, written communications, e-mails, and letters . . . that detail these conflict of interest violations. MR. WOLKOFF: Your Honor, we can't figure out how conflict of interest, even if there are documents, relates to this matter . . . THE COURT: Denied." Transcript from 7.20.2016 Hearing on Motion to Compel, Dkt. No. 126, 34:8–25.

privilege and by Children's Hospital's joint defense agreement with HMS. The Plaintiffs' subpoena should be quashed for these reasons as well.

### g.   *Findings or conclusions concerning computers used or owned by Dr. Ozcan, Dr. Cakir, Dr. Cabi, or Dr. Mert (No. 26)*

To the extent that HMS has any documents from Children's Hospital reflecting findings or conclusions made concerning any computers used or owned by Dr. Ozcan or the Plaintiffs, HMS obtained such documents in the context of the confidential investigation, and therefore the confidentiality rules of 42 C.F.R. § 93.108 apply. To the extent that Children's Hospital shared any attorney work-product analyses of computers used by Dr. Ozcan or any of the Plaintiffs in this matter with HMS, the reports were shared under a common interest agreement and are therefore subject to attorney-client and work-product privilege.

## CONCLUSION

For the foregoing reasons, Children's Hospital, Joseph Majzoub, M.D., and Umut Ozcan, M.D. respectfully request that the Court grant this motion, that the subpoena *duces tecum* be quashed, and that Children's Hospital, Dr. Majzoub, and Dr. Ozcan be granted such additional relief as is deemed just and appropriate under the circumstances.

*Respectfully submitted,*

BOSTON CHILDREN'S HOSPITAL, THE
CHILDREN'S HOSPITAL CORPORATION AND
ITS AFFILIATED ENTITIES

*By their attorneys,*

Dated: March 9, 2017

/s/ *Harvey J. Wolkoff*
Harvey J. Wolkoff (BBO # 532880)
Elizabeth E. Monnin-Browder (BBO # 679005)

ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000
Harvey.Wolkoff@ropesgray.com
Elizabeth.Monnin-Browder@ropesgray.com

*Attorneys for Boston Children's Hospital,
The Children's Hospital Corporation and Its
Affiliated Entities, and Dr. Joseph Majzoub*

/s/ *Alan D. Rose*
Alan D. Rose (BBO #427280)
Rose, Chinitz & Rose
One Beacon Street, 23rd Floor
Boston, MA 02108
(617) 536-0040
adr@rose-law.net

*Attorney for Joseph Majzoub, M.D.*

/s/ *Tracy A. Miner*
Tracy A. Miner (BBO #547137)
Seth B. Orkand (BBO #669810)
DEMEO LLP
200 State Street
Boston, MA 02109
(617) 263-2600
tminer@demeollp.com
sorkand@demeollp.com

*Attorneys for Umut Ozcan, M.D.*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed today through the Court's ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent by U.S. Mail to those indicated as non-registered participants on March 9, 2017.

Dated: March 9, 2017                                /s/ Elizabeth E. Monnin-Browder
                                                    Elizabeth E. Monnin-Browder