EXHIBIT D

The Attorney General's

# Guide for
# Board Members of
# Charitable Organizations



COMMONWEALTH OF MASSACHUSETTS

OFFICE OF ATTORNEY GENERAL

MAURA HEALEY

March 2015

ONE ASHBURTON PLACE
BOSTON, MA 02108

(617) 727-2200
WWW.MASS.GOV/AGO

# TABLE OF CONTENTS

Introduction ........................................................................................................ 5

I. Board Members Have Responsibilities ........................................................ 7

II. You Have the Right to Information ............................................................ 7

III. Make Sure Your Board is Vital and Diverse ........................................... 8

IV. Choose and Evaluate Your Chief Executive Officer Carefully ...................... 9

V. Get Involved in Setting Executive Compensation ........................................ 10

VI. Beware of Conflicts of Interest ............................................................... 11

VII. Pay Close Attention to Financial Matters ............................................... 13

VIII. Educate Yourself ................................................................................. 14

IX. Other Resources to Assist You in Your Responsibilities ............................ 15

# INTRODUCTION

This guide is provided by the Attorney General's Office to help board members of non-profit charitable organizations carry out their important responsibilities. As a board member you have both the privilege and the responsibility of participating in the governance of an organization that is operated not for the benefit of private individuals, but for the benefit of the public. As the agency of the Commonwealth charged with protecting the public's interest in your organization's activities, the Attorney General's Office deeply appreciates your willingness to serve as a board member and recognizes your hard work and dedication perform an extremely important service for all citizens of the Commonwealth.

While portions of this guide may be helpful and applicable to all nonprofit organizations, it should be emphasized that it is specifically designed for board members of those nonprofit organizations that are "public charities." What constitutes a public charity is not widely understood, and people are often surprised to learn that these organizations range in size, scope and complexity from our largest universities and health care systems to small, neighborhood-based social service organizations. As a general rule these otherwise diverse organizations are linked, not just by nonprofit basis, but because they operate on an exclusively charitable basis and collect, hold and expend funds solely for the benefit of the public.

Examples of nonprofit organizations that **are** public charities include philanthropic organizations as well as most of our hospitals, schools, social service providers, cultural organizations, parent-teacher associations/organizations, and youth sports leagues. Examples of nonprofit organizations that **are not** public charities, and are therefore not regulated by the Attorney General's Office, include chambers of commerce, labor unions, social clubs, civic associations and similar organizations that benefit only their members. If you have any doubt regarding your organization's status, you should consult legal counsel or contact the **Non-Profit Organizations/Public Charities Division** of the Attorney General's Office at (617) 727-2200, ext. 2101.

Often we are asked what we believe are the most important things a board member can do in order to best serve his or her organization. Here are our recommendations in key areas of stewardship. While this guide is not intended to prescribe the exact manner in which a Massachusetts public charity board must function, and while we recognize that the size, form and structure of the boards vary greatly, we believe that this guide will help all board members do their jobs well.

## I.  BOARD MEMBERS HAVE RESPONSIBILITIES

If you are a trustee or a member of the board of directors of a charitable organization, you and your fellow board members are responsible for governing the organization.

The law imposes upon you two primary duties: the duty of care, and the duty of loyalty. The **duty of care** means that you must act with such care as an ordinarily prudent person would employ in your position.  The **duty of loyalty** means that you must act in good faith and in a manner that you reasonably believe is in the best interest of the organization.

As discussed throughout this guide, it is your job to oversee your chief executive officer (CEO) and to see that the organization is faithfully carrying out its purpose without extravagance or waste.

**THIS MEANS:**

- You should attend board meetings and meetings of committees on which you serve.  You should make sure that you receive detailed information beforehand about matters which are going to be voted on at a meeting.
- You should carefully read all of the material which you receive and prepare yourself to ask questions.
- You should use your own judgment and not simply take the word of your CEO or fellow board members.

> **IN SHORT:**
> You should be aware of and informed about every major action the charity takes.

## II.  YOU HAVE THE RIGHT TO INFORMATION

In order to carry out your legal responsibilities as a board member or trustee, you must be able to make informed judgments about important matters affecting the organization.  The law permits you to reasonably rely on information from the organization's staff, lawyer, auditor, outside advisors, and board committees in making those judgments.  If you do not have adequate information, you have the right to get it.

**THIS MEANS:**

- You have the right to have reasonable access to management.

- You have the right to have reasonable access to internal information of the organization.

- You have the right to have reasonable access to the organization's principal advisors, such as its auditors or attorneys, for example.

- Senior management must be willing to facilitate board access to the books and records of the organization.

- Senior management must be willing to facilitate communications between the board and the principal advisors of the organization.

- The board has the right, if necessary, to engage the services of outside advisors at the organization's expense to assist it with a particular matter.

---

**IN SHORT:**

You have the right to obtain the information you need to carry out your responsibilities as a board member.

---

## III.  MAKE SURE YOUR BOARD IS VITAL AND DIVERSE

A charity's board should be vigorous and responsive to the mission of the charity.  You should make sure that your board's process of selecting new members assures diversity of viewpoints and rotation of board members and officers.  As a board member, you have responsibility for ensuring that the public and charitable role of the organization will be carried out in a way that is effective in furthering the mission of the charity. A nominating process which invites openness, variety, and change is important to achieving this goal.

**THIS MEANS:**

- Your nominating process should reach out for candidates, and actively recruit individuals whose commitment, skills, life experience, background, perspective, or other characteristics will serve the organization and its needs.

- A larger candidate pool may result if you include non-board members as well as board members on your nominating committee.

- Term limits for board members are an effective way to ensure board vitality. If your board does not have term limits, board members should be reviewed periodically to confirm that they remain interested in and suitable for the board. Rotation off the board, assignments to off-board committees, and designation as emeritus members are other ways to achieve a vigorous board.

---

**IN SHORT:**

> To avoid becoming labeled as a closed club for "insiders only," choose board members who have an interest in the organization's mission, represent diverse viewpoints, and have a willingness to learn, and then be sure there are opportunities for board renewals.

---

## IV.  CHOOSE AND EVALUATE YOUR CHIEF EXECUTIVE OFFICER CAREFULLY

Hiring the organization's CEO is one of the most important tasks you have.  It is the job of the board to engage in a selection process which will allow the board to find the right person to carry out the charity's purpose efficiently and effectively.  The organization for which you are responsible can only benefit when the entire board participates in hiring and evaluating its chief executive employee.

**THIS MEANS:**

- The board should form a search committee at the beginning of the hiring process.  If the board does not create a written job description for the CEO position prior to hiring, it should at least develop a profile of the sort of CEO it believes the organization's mission and current needs require.

- A majority of the search committee members should be board members, but it may be beneficial to include staff members and others knowledgeable about the organization and its mission .

- If the size of the board permits, the entire board should interview the final candidates and participate in contacting their references.
- The entire board should make the final decision to hire the CEO.
- After the CEO is hired, the board should periodically review and assess the chief executive's performance, keeping in mind that the board has the authority to discharge as well as hire the CEO.

---

**IN SHORT:**

Board members should actively participate in selecting and evaluating the charity's CEO.

---

## V. GET INVOLVED IN SETTING EXECUTIVE COMPENSATION

The board is responsible for setting the compensation of the organization's CEO and other senior managers. When setting executive compensation, you should be mindful that the public, which supports the charity and uses its services, is interested in knowing the amount. This information is provided to the public by the Non-Profit Organizations/Public Charities Division of the Attorney General's Office and by the Internal Revenue Service (IRS), and is available online to anyone who wishes to review an organization's Form 990 at **www.guidestar.org**, an independent database of nonprofit organizations.

In addition, both the IRS and the Non-Profit Organizations/Public Charities Division from time to time scrutinize the reasonableness of a charity's executive compensation and the process used by the board to determine this compensation. Complaints of excessive compensation or private benefit, whether from regulators or from the public, can expose the organization to legal action and damage its good name.

**THIS MEANS:**

- Every board member should know what the CEO and other senior managers are paid, including the value of any non-salary compensation, such as the use of an automobile, retirement funds, etc.
- If a compensation committee is used, it should not make the final decision. In setting compensation, you should consider the performance of your CEO and senior managers and the compensation provided to other similarly situated

executives in the field.  If the board chooses to engage a compensation consultant to gather or review this information, it should not rely solely on the recommendations of the consultant, however.  Board members are responsible for determining what level of compensation is reasonable for their organization, taking into account other important factors such as the concerns of donors, the impact on the charity's mission and finances, and the good name of the organization.

> **IN SHORT:**
>
> Your process for setting executive compensation, the amount of such compensation, and the terms of such compensation should all be well documented, approved by the full board, and be sensitive to public concerns and regulatory oversight.

## VI.  BEWARE OF CONFLICTS OF INTEREST

You, or a business you control or benefit from financially, may be considering whether or not to engage in a transaction with the organization on whose board you are sitting. A situation of this type presents a potential conflict between your own financial interests and your duty as a board member to be absolutely loyal to the organization.  It also may look questionable to the public.

Because of these problems, a board member or related entity should be cautious about entering into a business relationship with the organization the board member is overseeing, and the board should be very cautious about allowing the organization to enter into such a relationship.  Such a transaction should not occur unless the board determines it is clearly in the best interest of the charity.  Prior to the board vote, the board member should fully disclose his or her financial interest to the entire board, and the board member should not vote on any aspect of the arrangement or be present when it is being discussed or voted upon.

**THIS MEANS:**

- You should ensure that your board has a policy for dealing with conflicts of interest.

- The policy should include a procedure for the annual written disclosure by all board members and senior managers or key decision makers in the organization of their business involvements with the charity and their other board memberships and business interests, both for-profit and charitable. The information disclosed should be circulated to all board members and be updated throughout the year as necessary. The Attorney General's Non-Profit Organizations/Public Charities Division requires that the value and terms of these related party transactions be disclosed on the organization's annual Form PC filing. (Please visit the Attorney General's Office website, **www.mass.gov/ago**, to see the Instructions to Form PC for additional information on related party disclosures.)

- Your conflict-of-interest policy should address the issues raised if board members or other senior managers have or might acquire investments that may affect or be affected by the charity's investment decisions. In addition, it should address other conflicts that can be reasonably foreseen, based on the organization's charitable activities. For example, a grant-making organization should consider how to address grant applications from an entity that has an employee or board member serving on the grant-making organization's board.

- In addition to the disclosure of financial interests and conflicts of interest, the policy should also include a procedure for the withdrawal from discussion and voting by the board member or senior manager with a conflict. This procedure should be followed whenever the charity enters into a business transaction with a board member or senior manager, or with an entity in which a board member or senior manager has an interest.

- It may be advisable to obtain an outside evaluation or appraisal of any major business transaction that is being proposed between the charity and a board member or manager or any entity in which a board member or manager has an interest. This evaluation is to assure that the proposal is feasible, the terms are favorable to the charity, and the potential pitfalls of such a transaction to the charity have been identified.

- The board should carefully consider the pros and cons of entering into relationships, such as management contracts, the creation of subsidiary entities (whether they are for-profits or nonprofits), and other transactions that involve inherent conflicts of interest because the board's duties of care and loyalty are being divided among several entities or delegated, even in part, to another entity.

- Because of the sensitivity of conflict-of-interest issues, you may want to require that transactions involving these issues receive a greater-than-majority vote.

> **IN SHORT:**
>
> Any conflict transaction should be scrutinized very closely by the board, both because of the dynamic it creates within the board and because of the predictable skepticism with which the public and regulators will view the transaction, no matter how scrupulously a careful policy is followed.

## VII. PAY CLOSE ATTENTION TO FINANCIAL MATTERS

As a board member you have primary responsibility for making sure that the charity is financially accountable, that it is not allowing charitable assets to be used inappropriately or diverted to private interests, that it has mechanisms in place to keep it fiscally sound, and that it is properly using any restricted funds it may have.

**THIS MEANS:**

- The board should make sure that a realistic annual budget is developed.

- The budget should be developed early enough that the entire board can be involved in its review and approval before the beginning of the fiscal year.

- The board should be sure that the charity has adequate internal accounting systems and controls. At a minimum, the board should discuss and approve all delegations of its signatory authority, put these delegations in writing, and review them annually. In addition, the board should consider requiring board action on large or especially significant contracts or grants, and on all transactions involving real estate, borrowing, or sale/disposal of large assets. Board members should expect management to produce timely and accurate income and expense statements, balance sheets, and budget status reports, and should expect to receive these in advance of board meetings. These reports ought to be easily understood by the majority of board members and board members should take an active role in reviewing and questioning the information in them.

- The board should require periodic confirmation from management that all required filings (such as tax returns and the Massachusetts Form PC) are up-to-date and that employee withholding taxes and insurance premiums are being paid when due.

- The board should consider the value of having independent audits and maintaining standing audit and finance committees. However, if these committees are established, the full board should still receive and act on the report of the independent auditor, receive periodic financial reports, and approve the budget.

- The board should make sure that fundraising is done honestly and with integrity. The board also should make sure that any contract with an outside professional fundraiser is fair and reasonable, and that the fundraiser's performance is monitored.

- The board should confirm that any restricted gift to the charity is separately accounted for, and that the funds are being used in accordance with the terms of the restriction.

> **IN SHORT:**
>
> The board should be informed about all aspects of the organization's finances and is ultimately responsible for the financial health and integrity of the organization.

## VIII.  EDUCATE YOURSELF

A member of the board of a charity should be knowledgeable about his or her role in the governing process, the mission of the organization, and the unique operational, legal, and financial issues facing the organization.

**THIS MEANS:**

- You should have a copy of, and be familiar with, the articles of organization of your organization and the by-laws of your board.

- The board should review what training and education it may need on a regular basis.

- Particular attention should be given to providing orientation to new board members.

- Programs and materials should draw on the expertise of specialists in the fields related to your board responsibilities.

- If your board does not have a board manual containing governing documents, copies of the most recent audit and budget, and other orientation materials, it may want to consider developing one.

> **IN SHORT:**
>
> As a board member, you must take the initiative to educate yourself on an ongoing basis about your role and responsibilities, and the board as a whole must take responsibility for its own training and orientation.

## IX.  OTHER RESOURCES TO ASSIST YOU IN YOUR RESPONSIBILITIES

The Attorney General's website provides access to a number of useful publications, advisories, and reports produced by the Non-Profit Organizations/Public Charities Division.  These may be viewed online or downloaded from **www.mass.gov/ago**. In addition, the division has posted on the website a number of links to information provided by others, including the IRS, Guidestar.org, and nonprofit oversight and advocacy organizations.  Finally, all forms and instructions issued by the division are also available on the website.



**OFFICE OF ATTORNEY GENERAL**
**MAURA HEALEY**
NON-PROFIT ORGANIZATIONS/PUBLIC CHARITIES DIVISION
ONE ASHBURTON PLACE
BOSTON, MA 02108
(617) 727-2200
WWW.MASS.GOV/AGO