UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 16-CR-10305 (NMG) |
| | ) | |
| MARTIN GOTTESFELD, | ) | |
| | ) | |
| Defendant. | ) | |

OPPOSITION OF THE UNITED STATES
TO DEFENDANT'S MOTION TO DISMISS

The United States of America, by Assistant United States Attorneys Seth B. Kosto and

David J. D'Addio, hereby opposes defendant Martin Gottesfeld's motion to dismiss for claimed

pre-indictment violations of the Speedy Trial Act, 18 U.S.C. § 3161(b), and Fed. R. Crim. P.

48(b)(1). (Docket No. 164) ("Motion"). Because all but 26 days between Gottesfeld's

February 17, 2016 arrest and his October 19, 2016 indictment were and are properly excluded

under 18 U.S.C. § 3161(h), the Court should deny his motion.

I.      **BACKGROUND**

A.      <u>Tor Ekeland's Early Representation of Gottesfeld</u>

On October 1, 2014, FBI agents executed a search warrant at Gottesfeld's Somerville

residence. (Apr. 27, 2016 Detention Hearing, Testimony of FBI Special Agent J. Williams,

Docket No. 19, p. 14) (hereinafter "Det. Tr. at __").

On April 8, 2015, FBI agents delivered a letter to Gottesfeld informing him that he was

the target of a federal investigation and inviting him to have his attorney contact the U.S.

Attorney's Office. (Exhibit 1 hereto). Within a week, Tor Ekeland, Esq., contacted the U.S.

Attorney's Office on Gottesfeld's behalf and accepted the government's invitation to him and

Gottesfeld to attend a "reverse proffer" at which the government would share its view of the evidence in the case. (Exhibit 2 hereto). Mr. Ekeland attended the proffer on Gottesfeld's behalf. (Det. Tr. at 16).

Beginning in June 2015, after the reverse proffer, Mr. Ekeland and the government began to discuss the possibility of a pre-indictment plea. (Exhibit 3 hereto). These discussions, which included the provision of some pre-indictment discovery to Mr. Ekeland, continued through October 26, 2015, when Mr. Ekeland wrote to the government on Gottesfeld's behalf that his client would be "interested in a proffer, and taking a plea." (Exhibit 4 hereto).

On December 17, 2015, a proffer followed that was attended by Mr. Ekeland as Gottesfeld's lawyer, Gottesfeld, and representatives from the U.S. Attorney's Office, the FBI, and Boston Children's Hospital — one of the victims in the case. (Det. Tr. at 16). In connection with that proffer, Mr. Ekeland negotiated proffer protections for Gottesfeld, both from the government and from Boston Children's Hospital, which committed for its part not to use Gottesfeld's statements against him "in any civil action against Mr. Gottesfeld." (Exhibits 5 and 6 hereto). Mr. Ekeland signed both agreements as "attorney" or "counsel" for Gottesfeld.

Plea negotiations continued with Mr. Ekeland through February 2016 (Exhibit 7 hereto), until the government learned that Gottesfeld had disappeared. Several days later, Gottesfeld and his wife were rescued, off the coast of Cuba, from a disabled and unregistered boat that Gottesfeld had purchased for $4,000 cash a month earlier. (Det. Tr. at 32). They had with them their wedding album, their marriage license, several phones, and other documents indicative of flight. (Det. Tr. at 25-32).

B.    Complaint through Indictment (February 17, 2016 through October 19, 2016)

Having learned that Gottesfeld fled, the government obtained a complaint charging him and an arrest warrant. (Docket Nos. 3, 4). Agents arrested Gottesfeld on February 17, 2016, when the cruise ship that had rescued him and his wife at sea returned to Miami, Florida. (Det. Tr. at 34). Gottesfeld had an initial appearance in federal court in Miami that day at which the government moved for detention and Gottesfeld consented to detention and to his removal to this District. (Motion, Exh. 1, Docket Nos. 2, 5). Notably, Mr. Ekeland e-mailed the U.S. Attorney's Office that day and stated that he had attempted unsuccessfully to contact his client, but that he had spoken with Gottesfeld's wife about Gottesfeld consenting to detention and removal. (Exhibit 8 hereto).

In the meantime, the United States Marshals Service transferred Gottesfeld from Miami to Rhode Island, where Gottesfeld arrived on March 10, 2016.

On February 18, 2016, while Gottesfeld was en route, Mr. Ekeland successfully sought the government's assent to file an application to appear *pro hac vice* in the District of Massachusetts, stating that he or local counsel would file it shortly. (Exhibit 9 hereto). On April 1, 2016, shortly before Gottesfeld's scheduled initial appearance in Massachusetts, local counsel filed appearances and the *pro hac vice* motion on Mr. Ekeland's behalf. (Docket Nos. 9-11). Judge Bowler allowed Mr. Ekeland's admission on April 5, 2016, (Docket No. 12), the day before Gottesfeld's initial appearance. (Docket No. 13).

*The Assented to Motions to Exclude*

On February 29, 2016, the government e-mailed Mr. Ekeland to seek his assent to file a motion to exclude time under the Speedy Trial Act and provided him with a draft of the motion. Mr. Ekeland responded that both he and his client "assented to this motion":



Tor Ekeland <tor@torekeland.com>  Bookbinder, Adam (USAMA)
Re: Motion to extend 30-day period to indict.docx

You replied to this message on 2/29/2016 5:00 PM.
We removed extra line breaks from this message.

signature.asc
.asc File

For the record, I have consulted with my client Marty Gottesfeld as to the motion to extend the 30 day period to indict and he consents to this motion.

-Tor

Tor Ekeland
Managing Partner
Tor Ekeland, P.C.
195 Plymouth Street
Brooklyn, NY 11201
p: (718) 737-7264
f: (718) 504-5417
tor@torekeland.com

(Exhibit 10 hereto).  With both Mr. Ekeland and Gottesfeld's assent, on March 1, 2016, the government filed a motion to exclude the time between March 18, 2016 and April 22, 2016 under 18 U.S.C. § 3161(h).  (Motion, Exh. 3 at 4).  Consistent with both Local Rule 40.4 and the District *Plan for the Prompt Disposition of Criminal Cases*, the government filed the motion with the judge assigned to the miscellaneous business docket ("MBD").  United States District Judge Allison D. Burroughs, who was serving as the MBD judge, allowed the motion in writing that day.  (Motion, Exh. 3 at 8).

Judge Bowler held a detention hearing on April 27, 2016, (Docket No. 15), and ultimately, after Gottesfeld filed a Motion for Release (Docket No. 23), issued a July 27, 2016 order detaining Gottesfeld pending trial.  (Docket No. 25).

During the months between Gottesfeld's arrest and his indictment, the government continued its plea negotiations with Mr. Ekeland and, as set forth in the table below, filed a series of assented to motions to exclude additional time under the Speedy Trial Act.  Judge Burroughs allowed each motion.

| MOTION | FILED | EXCLUDED FROM | EXCLUDED TO | DATE ALLOWED | WRITTEN ASSENT |
|--------|-------|---------------|-------------|--------------|----------------|
| Second | 4/11/16 | 4/22/16 | 5/27/16 | 5/5/16 | Exh. 11 |
| Third | 5/20/16 | 5/27/16 | 7/1/16 | 5/25/16 | Exh. 12 |
| Fourth | 6/30/16 | 7/1/16 | 8/1/16 | 6/30/16 | Exh. 13 |
| Fifth | 7/22/16 | 8/1/16 | 9/9/16 | 8/2/16 | Exh. 14 |
| Sixth | 8/26/16 | 9/9/16 | 10/10/16 | 8/29/16 | Exhs. 15 & 16 |

It is clear from counsel's communications with the government that Gottesfeld participated actively in these negotiations.  On June 29, 2016, for example, Mr. Ekeland's associate wrote to the government that Gottesfeld was "currently alright with another 30-day extension but not the longer one" that the government had proposed.  (Exhibit 13 hereto).  Mr. Ekeland also made clear that Gottesfeld remained interested in pleading guilty through the final assented to motion to exclude time.  (Exhibit 15 hereto, Aug. 9 email) ("I know he is seriously thinking about what you suggested last time."); (Exhibit 16 hereto, Aug. 17 email) ("He's seriously considering the plea"); (Exh. 16, Aug. 23 email) ("We r good on the extension.  He's still thinking on the plea.").

Ultimately, however, Gottesfeld rejected the government's plea offer.  The grand jury returned its indictment on October 19, 2016.  (Docket No. 28).

## II.     ARGUMENT

### A.     The Date of Gottesfeld's Initial Appearance, His First Ten Days of Transport, and the Filing Date of the First Assented to Motion are Properly Excluded

For several reasons, February 17, 2016 — the date of Gottesfeld's arrest and initial appearance in Florida, the government's motion for detention there, and the Florida court's order removing him to this District — are excluded from Speedy Trial Act's calculations. *United States v. Santiago-Becerril*, 130 F.3d 11, 26 (1st Cir. 1997) (defendant's first appearance

is excludable because it is a "proceeding concerning the defendant" and based on "government's motion to detain"); 18 U.S.C. § 3161(h)(1)(E) ("delay resulting from any proceeding relating to the removal of any defendant").

The parties agree that only the first ten days of Gottesfeld's transfer from Florida are properly excluded under 18 U.S.C. § 3161(h)(1)(F).  (Motion at 11).  All time is thus properly excluded between February 17, 2016 and February 27, 2016.  Two non-excludable days then accrued on February 28 and February 29, 2016.

The following day, March 1, 2016, is excluded based on the government's <u>filing</u> of its first assented to motion.  Whether or not the Court's order on that motion validly excluded later time, delay resulting "from any pretrial motion, from the filing of the motion through the … prompt disposition of, such motion" must be excluded.  18 U.S.C. § 3161(h)(1)(D); *United States v. Richardson*, 421 F.3d 17, 31 (1st Cir. 2005) (motion for continuance and order of excludable delay tolled the Speedy Trial Act clock).  Judge Burroughs ruled on the first motion to exclude on March 1, 2016, which resulted in the clock resuming on March 2, 2016 and running for 16 more days, through March 17, 2016, for a total of 18 elapsed days.

For the reasons stated below, Judge Burroughs properly excluded under 18 U.S.C. § 3161(h)(7)(A) all of the time between March 18, 2016 and October 10, 2016.  The Speedy Trial Act clock resumed on October 11, 2016 and ran for 7 more days until the grand jury indicted Gottesfeld on October 19, 2016, for a total of 26 elapsed days.  *See United States v. Ayotte*, 41 F. Supp.2d 398, 407 (D. Me. 2012) (indictment date excluded from Speedy Trial Act calculation).

B.     Pre-Indictment Motions to Exclude Time are Properly Filed on the
       Miscellaneous Business Docket

Faced with a series of assented to motions and timely court orders that exclude all but 26 days from the Speedy Trial Act clock, Gottesfeld attacks the government for having sought these orders in a "sealed civil docket."  (Motion at 12).  Gottesfeld's motion, however, ignores that the government followed the exact procedures this Court requires, both in its *Plan for the Prompt Disposition of Criminal Cases* ("the District Plan") and in Local Rule 40.4.

The District Plan, established under the Speedy Trial Act, 18 U.S.C. § 3165, instructs the government to seek pre-indictment exclusions from the "judge assigned to the miscellaneous business docket":

(c)     CONTINUANCES

       (1)     PRE-INDICTMENT

              (A)     If the United States Attorney anticipates that an indictment or information will not be filed within the time limit set forth in section 3 [30 days after arrest], he may file a written motion for a continuance with the judge assigned to the miscellaneous business docket."

District Plan, ¶ 5(c)(1)(A).

Local Rule 40.4, captioned "Emergencies and Special Proceedings," states, in pertinent part, that "special proceedings", including "motions relating to grand jury investigations," will be heard by the MBD Judge:

(a)     **Matters and Proceedings Heard by Miscellaneous Business Docket (MBD) Judge**.  There will be designated an MBD judge to hear and determine:

       …

       (2)     Special proceedings, the nature of which precludes their assignment in the ordinary course (for example, motions relating to grand jury investigations….

The First Circuit has declined to disturb the filing of continuance motions under the District Plan with a district judge. In *United States v. Mitchell*, 723 F.2d 1040, 1044 (1st Cir. 1983), the defendant (like Gottesfeld) was charged by complaint. The government moved ex parte for a 17-day extension of time in which to return an indictment charging the defendant. *Mitchell*, 723 F.3d at 1044. That motion was allowed by a district judge. *Id.*. The First Circuit held that the 17 days had been properly excluded, although it did reject the government's argument that the District Plan authorized ex parte, in camera filings in the ordinary course. *Id.*.

Here, the government did not act *ex parte*. It contacted defendant's long-time counsel (see below) with a proposal that benefitted both parties; secured counsel and Gottesfeld's assent; and filed motions with the MBD judge stating the grounds for exclusion, as the District Plan, Local Rule 40.4, and the Speedy Trial Act require. Given the secrecy obligations associated with the grand jury's work — even in a case where the defendant had been charged by complaint and might be indicted — the government filed its motions under seal.

Any argument that the government's reliance on the established rules and procedures of this Court was improper or in bad faith is both inconsistent with those rules and procedures and without merit.

C.     The Government Properly Obtained Valid Consent From Gottesfeld's Counsel

Gottesfeld argues that a lawyer who represented him over nearly 20 months had no power to assent to the filing of motions to exclude time, either because Mr. Ekeland had not filed an appearance in the MBD Case, or because some of the government's assented to motions do not state that Gottesfeld himself assented to the requested exclusions. (Motion at 14-16). Far from being the "legal nullity" that Gottesfeld claims, (Motion at 14), Mr. Ekeland's assent

was effective and repeatedly benefitted Gottesfeld, who was an active participant in negotiations to resolve his case.

Mr. Ekeland contacted the government in April 2015, one day after it delivered a target letter to Gottesfeld. (Exhs. 1, 2). Mr. Ekeland represented Gottesfeld at the government's reverse proffer. (Det. Tr. at 16-17). In June 2015, the government, again at Mr. Ekeland's request, summarized in writing the contours and Guidelines calculations of a pre-indictment guilty plea (Exh. 3). Gottesfeld's stated interest in "taking a plea" continued (Exh. 4), even as Mr. Ekeland represented him at a December 2015 proffer attended by both the government and by a victim's representatives. (Exh. 4 & Det. Tr. at 17). Here, Mr. Ekeland secured for Gottesfeld both proffer protection and a valuable commitment from Boston Children's Hospital's representatives that it would not use anything Gottesfeld said about the attacks in later civil litigation. (Exhs. 5, 6). On both documents, each of which Gottesfeld signed, Mr. Ekeland identified himself as "attorney for Martin Gottesfeld."

On February 5, 2016, after Gottesfeld had already purchased the boat in which he would flee (Det. Tr. at 32), Mr. Ekeland was still working diligently on Gottesfeld's behalf, attempting to resolve the case. (Exh. 7). Even after Gottesfeld was arrested, Mr. Ekeland continued to communicate with the government on Gottesfeld's behalf, keeping the prosecutors apprised of his efforts to advise Gottesfeld (Exh. 8) and stating his intent to file a motion for admission pro hac vice in this District (Exh. 9).

By March 1, 2016, the date on which Mr. Ekeland assented in writing and on behalf of himself and Gottesfeld to the government's first motion to exclude time, (Exh. 10), Mr. Ekeland had been representing Gottesfeld in his communications with the government and third parties

for nearly a year and had stated his intent to appear on Gottesfeld's behalf.  The government could reasonably rely upon his assent.

Under these circumstances, it is irrelevant whether Mr. Ekeland filed an appearance in the MBD case or in Judge Bowler's case.  Gottesfeld's motion conflates an attorney's ability to communicate with or enter into agreements with the government on behalf of a client and his obligation to file a motion "to appear and practice in this Court."  *See* Local Rule 83.5.6.  It was only necessary for Mr. Ekeland to seek the government's and the Court's consent to *appear* (as he stated he would and later did) in connection with Gottesfeld's initial appearance.[1]

Indeed, if the government could not properly receive Mr. Ekeland's assent, there was no one other than Gottesfeld with whom it could discuss a motion to exclude time[2] — a result that Mr. Ekeland surely would have objected to given that the government knew he represented Gottesfeld.  *See* Mass. R. Prof. C. 4.2(a) ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.").

The Motion's suggestion that Mr. Ekeland's consent had no force under these circumstances is another meritless argument that the Court should reject.

Nor was Mr. Ekeland's consent somehow invalid based on Gottesfeld's suggestion that the government's motions to exclude did not always expressly reference Gottesfeld's (as

---

[1]Under Gottesfeld's logic, counsel could not co-sign a proffer agreement, a plea agreement before the filing of an information, or a waiver of the statute of limitations in connection with an ongoing investigation.
[2]Even local counsel only appeared in Judge Bowler's case on April 1, 2016, days before Gottesfeld's initial appearance.  (Docket No. 9).

opposed to Mr. Ekeland's) consent. Mr. Ekeland's written assents show Gottesfeld to have been keenly aware of his speedy trial rights, including one instance in which Gottesfeld himself limited a requested continuance to only 30 days. (Exh. 13).

In any event, Gottesfeld need not have consented at all to the government's motions to exclude. Defense counsel has the power to seek a Speedy Trial Act continuance without first informing his client or obtaining his client's personal consent. *See United States v. Gates*, 709 F.3d 58, 65 (1st Cir. 2013) ("a defendant's lawyer may seek a continuance and the concomitant exclusion of time for STA purposes without first securing the defendant's personal consent"). This is because "the plain text of the STA authorizes courts to grant continuances 'at the request of the defendant *or* his counsel.'" *Id.* (quoting 18 U.S.C. § 3161(h)(7)(A)) (emphasis in original); *see also United States v. Jondle*, 2015 WL 10434884, at *1 (D. Mass. 2015) (Gorton, J.) (defendant's complaint that the court did not get permission for continuance from defendant personally "has been squarely rejected by the . . . First Circuit").

D.    The MBD Judge's Orders Do Not Improperly Backdate

Gottesfeld next challenges as non-excludable certain periods during which motions to exclude time were pending. (Motion at 13-14). For example, the government filed a motion on April 11, 2016 seeking to exclude time between April 22, 2016 and May 27, 2016. Judge Burroughs granted that motion on May 5, 2016, some 14 days into the period the parties intended to exclude. Similarly, the government moved on July 22, 2016 to exclude time between August 1 and September 9, 2016. Judge Burroughs granted that motion on August 2, 2016, one day into the period the parties intended to exclude.

While Gottesfeld characterizes this as impermissible "backdating," (Motion at 13), First Circuit precedent amply supports the exclusion of these periods. As noted above, under 18

U.S.C. § 3161(h)(1)(D), excludable time begins with the *filing* of motions and continues

through the "prompt disposition" of those motions. *United States v. Barnes*, 159 F.3d 4, 12 (1st

Cir. 1998) (for motions requiring no hearing, time is tolled until the "prompt disposition" of the

motion, which ordinarily cannot exceed the 30-day "under-advisement" period"); *Richardson*,

421 F.3d at 31 (motion for continuance and order of excludable delay tolled the speedy trial

clock). Because time was excluded until Judge Burroughs decided the assented to motions,

there is no Speedy Trial Act violation from purported backdating, and no non-excludable days

accrued while the motions were pending. It is particularly appropriate here that the court

exclude time under 18 U.S.C. § 3161(h)(1)(D) because the government consistently filed its

motions before the periods it sought to exclude. It had no control over the speed with which the

MBD judge ruled on its motions. Recognizing this fact, the Speedy Trial Act protects

defendants by limiting "under advisement" exclusions to 30 days. *See Barnes*, 149 F.3d at 12.

E.     The MBD Judge's Orders Do Not Violate *Zedner* Where it is "Clearly Obvious"
       that the Court Adopted the Content of the Assented to Motions

The Speedy Trial Act does require a court to set forth its reasons, either orally or in

writing, for concluding that the ends of justice served by the granting of a continuance outweigh

the best interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A);

*United States v. Zedner*, 547 U.S. 489, 507 (2006) ("without on-the-record findings, there can

be no exclusion under [the current §3161(h)(7)(A)]"). Where motions to exclude time set forth

appropriate grounds, however, the court need not formalistically parrot those grounds back to

comply with *Zedner*. *See United States v. Pakala*, 568 F.3d 47, 58 (1st Cir. 2009).

In *Pakala*, the First Circuit considered whether *Zedner*'s requirements were met where

the defendant filed two motions to exclude time that resulted in the district court granting "ends-

of-justice" continuances by electronic endorsement (as happened here). 568 F.3d at 58 ("the district court only entered electronic endorsements that did not even hint at the days excluded or the reasons why"). *Pakala* distinguished *Zedner* and held that the days under consideration were properly excluded because "it was clearly obvious that the district court, in granting the motions, necessarily adopted" the grounds put forth by the defendant in his motions. 568 F.3d at 60; *see also United States v. Bruckman,* 874 F.2d 57, 62 (1st Cir. 1989) (holding that "the basic facts and justifying grounds for the requested continuance and excludable time under the Speedy Trial Act are clearly obvious as explained in the government's motion and memorandum, which was 'allowed' by the trial court.").

Here, it is clearly obvious that Judge Burroughs understood and necessarily adopted the "interest of justice" grounds that the government offered on behalf of itself and Gottesfeld. *See Pakala*, 568 F.3d at 60. The first assented to motion raised the possibility of a pre-indictment plea, noted that "a resolution of this case through a plea agreement and information was in the interest of both parties and in the interest of justice," and explained that Gottesfeld was in custody and in transit from Florida, making meaningful communication about a plea challenging. (Motion, Exh. 3 at 7-8). The government also advised the Court that Gottesfeld's counsel had assented to the motion. While assent in and of itself would not be sufficient to exclude time, District Plan at ¶ 5(a), Mr. Ekeland's assent assured the Court that <u>both</u> parties anticipated the benefits of an early resolution. (Motion, Exh. 3 at 8).

The second assented to motion to exclude similarly reported the parties' need for more time to negotiate, noting especially that Gottesfeld had only appeared in Massachusetts for the

first time five days earlier and was awaiting a scheduled detention hearing date.[3] (Motion, Exh. 3 at 11). The motion also alerted the Court to its March 1, 2016 order, which expressly reminded it of the accruing delay. *Id.*

The third, fourth, and fifth assented-to motions all explained that the Court's pending decision on detention was a barrier to plea negotiations. The government committed that the parties would, "[o]nce the Magistrate Judge issues her decision, … resume their discussions and either reach an agreement or determine that there will be no plea agreement and the case will proceed via indictment." (Motion, Exh. 3 at 14). Gottesfeld now suggests, without support, that the government improperly used this delay to leverage plea negotiations. (Motion at 22-23). This position ignores the contemporaneous record showing good faith efforts to resolve the matter before indictment. That a pending decision on pretrial detention would affect those negotiations is hardly surprising. It is of course relevant to a defendant's decision on a proposed plea whether he or she will remain in custody pending trial or could argue for immediate release in connection with a plea. To suggest otherwise rewrites the history of the communications between the parties. (*See* Exhs. 10-17).

Nor was this indeterminate foot-dragging. The final assented-to motion sought a "likely final" extension, noting Judge Bowler's detention order and that it had "resulted in renewed discussions regarding a possible plea agreement and information," described the "diligent efforts of the parties," and represented that Gottesfeld was "currently assessing a draft of a proposed plea agreement and information." These were the significant developments that the

---

[3]Communications between counsel before Gottesfeld's April 6, 2016 initial appearance reveal that counsel for Gottesfeld requested a later detention hearing date (April 27) to accommodate his schedule and Gottesfeld's desire to present witnesses and evidence. *See*, *e.g.*, Docket No. 18 (letters in support).

parties had predicted would occur once the detention issue had been resolved, so it is not surprising to see that this was the final requested extension. (Motion, Exh. 3 at 24). Indictment followed with no further requests for delay.

And while it is clearly the First Circuit's preferred practice for a court to set forth its reasons for excluding time at or near the time of the granting of the continuance, this Court can still set forth in the record the grounds justifying exclusion at any time prior to its ruling. *See Zedner*, 547 U.S. at 507 & n.7 ("at the very least the Act implies that those findings must be put on the record by the time the district court rules on a defendant's motion to dismiss under § 3162(a)(2)"). The Court should accept *Zedner*'s invitation and find that these exclusions were in the interests of justice.

### F.    Plea Negotiations are a Valid Ground for Exclusion

The Court should reject Gottesfeld's argument (under Fed. R. Crim. P. 48(b)(1)) that "plea bargaining is a gamble taken by the government regarding the defendant's speedy trial rights…." (Motion at 18 (quoting *United States v. Tigano*, 880 F.3d 602 (2d Cir. 2018)).

The First Circuit has never held that plea negotiations are not appropriate grounds for an interests of justice exclusion. *United States v. Souza*, 749 F.3d 74, 80 (1st Cir. 2014) ("we have expressly left open the issue of whether periods of plea negotiation can be excluded"). Other circuits have properly recognized that plea negotiations that both parties desire play a "vital role" in federal practice. *United States v. Fields*, 39 F.3d 439, 445 (3d Cir. 1994) (Alito, J.); *see United States v. Williams*, 12 F.3d 452, 460 (5th Cir. 1994), abrogated on other grounds by *United States v. Wells*, 519 U.S. 482 (1997) ("The plea negotiations favored both sides; we cannot say upon review that justice was not served by granting a continuance after those negotiations broke down").

15

*Tigano* is an outlier whose facts bear no resemblance to this case. It involved a defendant who wanted to go to trial immediately and had "no interest in a plea," 880 F.3d at 615, but nevertheless was held pre-trial for nearly seven years — "the longest period of pretrial incarceration we have seen in a speedy trial context in [the Second] Circuit." *Id.* at 618.

Here, Gottesfeld communicated through counsel that he was likely to plead guilty, right through the final assented to motion to exclude. (Exh. 15, Aug. 9 email) ("I know he is seriously thinking about what you suggested last time."); (Exh. 16, Aug. 17 email) ("He's seriously considering the plea"); (Exh. 16, Aug. 23 email) ("We r good on the extension. He's still thinking on the plea."). To hold here that the government negotiated at its peril is a final "disingenuous and unpersuasive" argument that the Court should reject. *See Jondle*, 2015 WL 10434884 at *2 (Gorton, J.) ("After either requesting or assenting to 17 separate motions for excludable delay, the defendant now avers that the allowance of those motions was prejudicial. Given that the Court allowed the delays primarily for defendant's benefit, the contention is disingenuous and unpersuasive."); *United States v. Castillo-Pacheco*, 53 F.Supp.2d  55, 61 (D. Mass. 1999) (Saris, J.) (plea negotiations would be a proper ground for tolling of STA clock "where both defense attorneys were communicating by word and deed that defendants were likely to plead guilty."); *see also United States v. Pringle*, 751 F.2d 419, 434 (1st Cir. 1984) (defendant cannot lull the prosecution and the court into a "false sense of security only to turn around later and use the waiver-induced leisurely pace of the case as grounds for dismissal").

For all of these reasons, the Court should deny Gottesfeld's motion to dismiss.

G.     Any Dismissal Required Should be Without Prejudice

While Gottesfeld correctly identifies the four factors that the Court would consider in deciding whether to dismiss an indictment for Speedy Trial Act violations with or without

prejudice, (Motion at 18), 18 U.S.C. § 3162(a), he is incorrect to suggest, assuming any violation, that the Court would do so here with prejudice.

"The facts and circumstances" leading to a dismissal here would dictate dismissal without prejudice. *See Barnes*, 159 F.3d at 17 ("there is no evidence that the delay was caused by bad faith conduct on the part of the prosecutor"). Mr. Ekeland's communications to the government led the government to believe that Gottesfeld wanted to negotiate a pre-indictment plea. To give time for that possibility, the government followed in good faith the Local Rules and District Plan, which have been the practice in this District for decades. The government and Mr. Ekeland did not ignore the Speedy Trial Act — they accounted in Court filings for nearly every day of pre-indictment delay. If the Local Rules and the District Plan now somehow violate the Speedy Trial Act, they should be revised. If Mr. Ekeland somehow had no authority to communicate with the government on behalf of his long-time client, the Local Rules should be revised to make clear that a lawyer may not take any action on his client's behalf in a grand jury proceeding without filing an appearance before the MBD judge. If the Court holds that mutually beneficial plea negotiations cannot support excludable delay in the interest of justice, the government should not be prejudiced by a ruling that has never been the law of the First Circuit. The fact that eight months of Court-authorized delay passed between the defendant's arrest, in mid-flight, and his indictment, is far from egregious.

Considering the attention that the government paid to the requirements of the Speedy Trial Act, the "impact of a re-prosecution on the administration of this chapter and on the administration of justice" would be negligible. As an initial matter, Gottesfeld's trial would not be a re-prosecution at all. *See United States v. Worthy*, 772 F.3d 42, 47 (1st Cir. 2014) (affirming district court's find that "as the case had not yet proceeded to trial, the administration

of justice would not be impeded by the need to carry out a retrial").  Gottesfeld is also incorrect when he suggests that the time he has spent in jail to date (27 months) approximates the sentence he could expect upon conviction.  (Motion at 24).  Gottesfeld's Guidelines exposure at the time of the detention hearing — 36 to 48 months assuming acceptance of responsibility (Det. Tr. at 59) — is significantly higher now, both because he should not receive Guidelines credit for acceptance of responsibility after conviction at trial and where his conduct since his flight and arrest gives no sense that he accepts any responsibility at all for his actions.

Moreover, Gottesfeld has identified no prejudice to his ability to prepare for a trial that will begin in less than three months.  *See United States v. Dessesaure*, 556 F.3d 83, 86 (1st Cir. 2009) ("Ordinarily, the strongest argument against re-prosecution is prejudice to the defendant-most importantly, loss of witnesses or other impediments to obtaining a fair trial at a later date").  Whenever Gottesfeld is tried, he will have to confront his very public claims of responsibility for the attack.  (*E.g.*, Docket No. 116-1, Exh. A, "Why I Knocked Boston Children's Hospital Off the Internet – A Statement by Martin Gottesfeld.").

Finally, a disabling DDOS attack targeting both a children's hospital that treats the sickest of pediatric patients and a facility that provides counseling and clinical services for hundreds of at risk youth is an extremely serious offense.  To suggest that these attacks were not "a cyber 9/11," (Motion at 21), sets the bar for seriousness at the wrong height.  Moreover, the court's view of the "strength of the allegations has no place in determining the seriousness of the offenses."  *See United States v. Koerber*, 813 F.3d 1262, 1275 (10th Cir. 2016).  Gottesfeld's challenge to the losses alleged in the indictment (losses that he describes as speculative) are thus misplaced.  (Motion at 21-22).

Dismissal with prejudice is a "rare and last resort," *United States v. Franklin*, 630 F.3d

53, 58 (1st Cir. 2011).  The facts of this case do not justify dismissal at all, let alone dismissal with prejudice.

## III.     CONCLUSION

For all of these reasons, the Court should deny Gottesfeld's motion to dismiss.  If the Court allows the motion to dismiss, it should do so without prejudice.

Because the motion to dismiss is without merit, the United States opposes Gottesfeld's motion for release.  Even if this were a close case for dismissal (which it is not), Gottesfeld is not a candidate for release based on his flight and his willful violation of the Court's orders since his arrest and detention.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney


By:*/s/ Seth B. Kosto*
      Seth B. Kosto
      David J. D'Addio
      Assistant U.S. Attorneys

May 4, 2018

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Seth B. Kosto*

Dated: May 4, 2018