UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.: 16-cr-10305-NMG |
| | ) | |
| MARTIN GOTTESFELD | ) | |

DEFENDANT'S EMERGENCY MOTION FOR LEAVE TO FILE HIS
"OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE
DEFENDANT'S 'TORTURE DEFENSE' BASED ON NECESSITY AND DEFENSE OF
ANOTHER" IN TWO SEPARATE PARTS OVER SEPARATE DATES, AS NECESSARY

The defendant Martin Gottesfeld ("Mr. Gottesfeld") hereby files an Emergency Motion

for Leave to file his "Opposition to Government's Motion in Limine to Preclude Defendant's

'Torture Defense' Based on Necessity and Defense of Another," now scheduled to be filed on

May 25, 2018, to instead be filed in two parts over two dates, as necessary.  The first part would

be filed as scheduled this Friday, May 25, 2018.  If the Court agreed with the first part of Mr.

Gottesfeld's opposition (and therefore denied the government's motion *in limine*), the second

part of the opposition would be moot and unnecessary to file.   On the other hand, if the Court

denied the first part of Mr. Gottesfeld's opposition, he would then file the second part of the

opposition.  As grounds for this motion to leave, the defendant states the following:

1.  The government's motion *in limine*, which seeks to preclude Mr. Gottesfeld's defenses of
    necessity and defense of another at trial, shifts the burden of proof to the defendant and
    requires him to divulge significant and constitutionally-protected aspects of his case.  The
    Court should deny the government's motion *in limine* without requiring the defendant to
    divulge this protected information and instead allow the defendant to present the evidence
    in the normal course at trial.

The government seeks to deprive the defendant Martin Gottesfeld of his constitutional

rights to present a full and complete defense, compulsory process, confrontation of witnesses,

due process of law, freedom of speech, his right to testify, and his right to a jury trial through an

alarming motion *in limine* ("motion") that aims to preclude Mr. Gottesfeld's defense before he

has raised it.  Further, the motion shifts the burden of proof to the defense and compels self-incrimination by forcing Mr. Gottesfeld, who is presumed to be innocent, to state with detail his anticipated evidence and trial strategy while the government, the party with the burden of proof, has yet to present any evidence whatsoever.  The government's sweeping effort to control the content of the evidence, the manner in which it is presented, counsel's arguments to the jury, and the issues the jury may consider – before the trial has even begun - must not be indulged.

For decades, legal scholars, judges, and lawyers have condemned the use of motions *in limine* as a method of precluding entire defenses, particularly in politically-charged cases.  See generally Luke Shulman-Ryan, *Evidence – The Motion In Limine and the Marketplace of Ideas: Advocating for the Availability of the Necessity Defense for Some of The Bay State's Civilly Disobedient*, 27 W. New L. Rev. 299 (2005); Douglas L. Colbert, *The Motion in Limine in Politically Sensitive Cases: Silencing the Defendant at Trial,* 39 Stan. L. Rev. 1271 (1987); Douglas L. Colbert, *The Motion in Limine: Trial Without Jury – A Government's Weapon Against the Sanctuary Movement,* Hofstra Law Review, Vol. 15: Iss. 1, Article 2; see also Washington v. Texas, 388 U.S. 14, 19 (1967) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts… he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."); Commonwealth v. O'Malley, 14 Mass. App. Ct. 314, 323 (1982) ("The notion of using a pretrial motion to test the adequacy of the entire defense case as matter of law appears to be inimical to these principles… In the usual case, therefore, it is far more prudent for the judge to follow the traditional, and constitutionally sounder, course of waiting until all the evidence has been introduced at trial before ruling on its sufficiency to raise a proffered defense.")

The government here exemplifies virtually every problematic aspect of such inappropriate use of motions *in limine*.

"[B]y requiring the defense to respond, the court compels a pretrial preview of defense theories…. Inevitably, the accused is compelled to divulge her trial strategy, allowing the prosecution to shore up weaknesses in its direct case and to prepare rebuttal of defense contentions.  Thus, the prosecutions motion in limine requires defense counsel to disclose her 'ideas, thoughts and strategies' – information that the Supreme Court considers privileged and whose confidentiality is recognized as vital to the proper functioning of the criminal justice system."  Colbert at 1316-1317; citing Hickman v. Taylor, 329 U.S. 495, 511 (1947).

The motion also infringes on Mr. Gottesfeld's rights to remain silent and to avoid self-incrimination.  "[S]uch motions compel the accused to speak on her own behalf – or else risk waiving an entire defense… In attempting to satisfy this initial test, the accused foregoes these fundamental rights without any proof of guilt by the prosecution."  Colbert, at 1317.

Preclusion of a recognized defense in advance of trial "jeopardizes the accused's 'inherent and invaluable right' to be judged by a jury that has had the opportunity to hear and consider a complete defense to the charge."  Id., quoting Duncan v. Louisiana, 391 U.S. 145, 152 (1968).  In Duncan v. Louisiana, the Supreme Court wrote "Fear of unchecked power… found expression in the criminal law in this insistence upon community [i.e., jury] participation in the determination of guilt or innocence."  Duncan at 156.  In Williams v. Florida, the Supreme Court elaborated: "[T]he essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from the group's determination of guilt or innocence."  399 U.S. 78, 100 (1970).  "The government's motion in limine to preclude

an entire defense directly challenges the jury's role, as envisioned by the Framers of the Constitution, as a democratic body."  Colbert at 1318 (citations omitted).

Further, "[t]his role is all the more important in politically sensitive cases, where the defendant's only opportunity to be judged fairly depends on a jury gaining sufficient understanding of the circumstances leading to the accused's arrest."  Id.

Indeed, the government recognizes that the motive for the alleged cyber attack, Boston Children's Hospital ("BCH") and Wayside Youth and Family Support Network ("Wayside")'s alleged mistreatment and/or abuse of J.P. and her family, was widely-reported reported in the press with political implications.   For example, in Agent Tunick's Affidavit filed on February 16, 2016, he acknowledged "The issue of Patient A's custody and medical care became a national media story, with religious and political organizations and others asserting the case was an example of interference with parental rights."  (D-3-2 at ¶ 6).

More than interference with parental rights, however, the J.P. matter raised questions on medical child abuse.  Before the alleged offenses, many notable news outlets reported on the widespread concern over the reported mistreatment and/or abuse of J.P. and her family.  See e.g. "A Medical Collision with a Child in the Middle," The Boston Globe, December 15, 2013; "Protest Planned to Fight Hospital's 'Kidnapping' of West Hartford Girl," West Hartford Patch, December 2, 2013 (https://patch.com/connecticut/westhartford/protest-planned-to-fight-hospitals-kidnapping-of-west-hartford-girl) (last accessed April 17, 2018) (https://www.bostonglobe.com/metro/2013/12/15/justina/vnwzbbNdiodSD7WDTh6xZI/story.html) (last accessed April 8, 2018); "Frustrations on All Fronts in Struggle Over Child's Future," The Boston Globe, December 16, 2013 (https://www.bostonglobe.com/metro/2013/12/16/month-medical-ordeal-conclusion-still-uncertain/Y7qvYTGsq8QklkxUZvuUgP/story.html) (last

accessed April 17, 2018); "Advocates Fight for Justina Pelletier, Teen Held by State in Psych

Ward," ABC News, February 10, 2014 (http://abcnews.go.com/Health/advocates-fight-teen-

justin-pelletier-held-state-psych/story?id=22312907) (last accessed April 8, 2018); "Justina

Pelletier's Parents Fighting to Get Her Back," WGBH News, March 6, 2014

(https://news.wgbh.org/post/justina-pelletiers-parents-fighting-get-her-back)

      Media continued to report on the alleged mistreatment and/or abuse of J.P. and her family

in and around the period of the alleged DDOS attacks.  See "The Sad, Scary Saga of Justina

Pelletier," Slate.com, March 27, 2014

(http://www.slate.com/blogs/xx_factor/2014/03/27/justina_pelletier_ruling_boston_children_s_h

ospital_and_judge_perform_parent.html) (last accessed April 17, 2018); "Mitochondrial Disease

or Medical Child Abuse?," Slate.com, April 1, 2014

(http://www.slate.com/articles/health_and_science/medical_examiner/2014/04/justina_pelletier_

s_mitochondrial_disease_boston_children_s_hospital_suspects.html) (last accessed April 8,

2014); "'Shocking Note' Apparently Penned by Justina Pelletier to Her Parents," The Blaze,

April 15, 2014, (https://www.theblaze.com/news/2014/04/15/shocking-note-apparently-penned-

by-justina-pelletier-to-her-parents) (last accessed April 17, 2018); "Justina Pelletier tells parents

in secret letter she is being 'tortured'," Life News, April 16, 2014,

(http://www.lifenews.com/2014/04/16/justina-pelletier-tells-parents-in-secret-letter-she-is-being-

tortured/) (last accessed April 8, 2018); "The Faces of 'Free Justina'," The Boston Globe, May 2,

2014(http://www.bostonglobe.com/2014/05/01/justina/1iVWxZZSSejnbcQhrRLELN/story.html)

(last accessed April 8, 2018); "Justina Pelletier's Legal Nightmare Should Frighten All Parents,"

Fox News, June 17, 2014 (http://www.foxnews.com/opinion/2014/06/17/justina-pelletier-legal-

nightmare-should-frighten-all-parents.html) (last accessed April 8, 2018).  It was in this context that the alleged offenses occurred.

Thus, the observation that "[t]his role is all the more important in politically sensitive cases, where the defendant's only opportunity to be judged fairly depends on a jury gaining sufficient understanding of the circumstances leading to the accused's arrest" is amply illustrated in Mr. Gottesfeld's case.  Colbert at 1318.

The motion *in limine* also seeks to undermine the Court's own role in making proper rulings on the admissibility of evidence in the context of an ongoing, dynamic trial; indeed the motion requests the Court to make a crucial ruling on wholly insufficient evidence before the trial has even begun.  See Colbert at 1321 ("The government's use of the broad motion in limine also demonstrates a lack of confidence in the ability of trial judges to make appropriate rulings during trial and to control court proceedings…. The motion reduces the presiding judge to an enforcer of a pretrial order which restricts evidence from being heard, rather than a neutral magistrate who makes evidentiary rulings as the relevance of evidence becomes clearer"); see also O'Malley, 14 Mass. App. Ct. at 323-325.

The motion undermines the historical purpose of trial by jury.   In Duncan, the Supreme Court recognized: "A right to a jury trial is granted to criminal defendants in order to prevent oppression by the government…. Providing an accused with the right to be tried by a jury of his peers have him an inestimable safeguard against the corrupt or overzealous prosecutor and against compliant, biased, or eccentric judge."  391 U.S. at 155-156.  As stated *infra*, Mr. Gottesfeld will meet the requisite elements of the defenses of necessity and defense of others; nonetheless "[t]he motion… demonstrates a lack of trust and confidence in the people who serve

as jurors… Public confidence in the fairness of a criminal trial is diminished, and, most seriously, the democratic process is thwarted."   Colbert, at 1326.

The Court should deny the government's motion without deciding "the merits" and, instead, allow the parties to present evidence while the Court makes appropriate rulings on the admissibility of individual pieces of evidence as they are offered within the context of the case. At the end of the case, a charge conference may be conducted in which counsel for both parties may advocate for the instructions to be provided to the jury based on the evidence introduced at trial.

2. <u>Since Mr. Gottesfeld is likely to prevail on his Motion to Dismiss, the second half of the opposition is unnecessary at this time; further, even if it was necessary, the defense requires additional time to prepare the second half of the opposition to the government's motion *in limine*.</u>

On May 21, 2018, Mr. Gottesfeld moved to continue the trial presently scheduled for July 16, 2018.  Dkt. No. 180.  This filing hereby incorporates by reference the facts and arguments made in that motion.  Id.

In sum, Mr. Gottesfeld contests that he is likely to prevail on the merits of his Motion to Dismiss.  Dkt. No. 164.  A tentative hearing on that motion is scheduled for June 4, 2018. Because the indictment will likely be dismissed, this case is likewise unlikely to go to trial on the scheduled July 16, 2018.  Requiring a full briefing of the opposition to the government's motion *in limine* on such a consequential question at this time is therefore unnecessary.

Further, independent of the above, undersigned counsel requires more time to fully research and brief the second part of the opposition.  As argued in his Motion to Continue, undersigned counsel was appointed to represent Mr. Gottesfeld recently on March 22, 2018.  As he has come to know the case, counsel has realized the depth of the issues presented and the time-commitments required to adequately prepare the case.

Moreover, AUSA D'Addio appears to have represented the government on the case for *at least* thirty-two (32) months; indeed, he appears to have worked on the case before it was even charged.  See Dkt. No. 167-1, Ex. 4.   Even AUSA Seth Kosto has represented the government for at least seven (7) months.  Dkt. No. 96.  That collective minimum of thirty-nine (39) months simply pales in comparison to undersigned counsel's two (2) months on the case.  Outnumbering defense counsel 2:1 and far more familiar with the case, the prosecution now seeks to disarm Mr. Gottesfeld of his principal defenses without counsel having adequate time to research and brief the matter.  For a fair and proper hearing on these important matters, the Court must allow counsel to be fully prepared to respond to their claims.

   3.   <u>Conclusion</u>

The soundness of the proffered two-part filing of the defense's opposition to the government's motion is especially necessary and appropriate in this case.  For the above-stated reasons, the defense respectfully requests the Court ALLOW this emergency motion for leave.

Respectfully submitted,
MARTIN GOTTESFELD
By his attorney:

/s/ David J. Grimaldi

_____
David J. Grimaldi
David J. Grimaldi, P.C.
BBO No. 669343
675 Massachusetts Avenue, 9th Floor
Cambridge, MA 02139
617-661-1529 (tel)
857-362-7889 (fax)
DATE: May 23, 2018                        david@attorneygrimaldi.com

<u>CERTIFICATE OF SERVICE</u>

   I, David J. Grimaldi, hereby certify that true copies of this motion were served on all registered participants in this matter via ECF this 23rd day of May, 2018.

/s/ David J. Grimaldi

_____
David J. Grimaldi