UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.: 16-cr-10305-NMG |
| | ) | |
| MARTIN GOTTESFELD, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S MOTION IN LIMINE AND SUPPORTING MEMORANDUM TO ADMIT
EVIDENCE REGARDING NETWORK ATTACKS, "DOXING" AND THREATS

Defendant Martin Gottesfeld is charged in a two-count indictment with conspiring to

cause damage to protected computers belonging to Wayside Youth & Family Services Network

("Wayside") and the Boston Children's Hospital (Count One) and with causing damage to

protected computers belonging to the Boston Children's Hospital (Count Two).  *See* Dkt. No. 28.

Specifically, the Indictment alleges that Gottesfeld and other unidentified co-conspirators

"launched disruptive attacks on the computer networks of Wayside and [Boston] Children's

Hospital" in an effort to "punish" these entities and "to pressure these institutions to end their

involvement in" the treatment of Justina Pelletier.  Dkt. No. 28 at ¶ 17.  Gottesfeld launched the

attacks on the Children's Hospital network under the banner of the hacking collective

Anonymous, in an operation he referred to as "OpJustina."

The attack was multi-faceted.  The government will offer evidence at trial that Gottesfeld

caused a distributed denial of service ("DDOS") attack directed at the Children's Hospital

network.  The government will also offer evidence at trial that during the DDOS attack,

Children's Hospital also faced several other methods of attack on its network, designed to obtain

access to and threaten the integrity of patient information, among other data.

The government will offer evidence that Gottesfeld was aware of and supported these ongoing efforts by co-conspirators to penetrate the Children's Hospital network and obtain access to patient information.  For example, during the attack, Gottesfeld sent numerous public messages directed at the Boston Children's Hospital from one of his Twitter accounts, "@AnonMercurual."  On April 19, 2014, Gottesfeld publicly tweeted "@BostonChildrens Website troubles? We are #Anonymous. #FreeJustinaNOW or d0xes of your staff are next. HIPAA breach thereafter. Test us."  On April 24, 2014, Gottesfeld publicly tweeted: "@BostonChildrens @BostonGlobe We will reduce the attack traffick [sic] shortly. We'll be back until they #FreeJustina and stop 'parent-ectomies.'"  The various forms of attack on the Children's Hospital network, along with Gottesfeld's statements regarding them, constitute overt acts in furtherance of the conspiracy and are admissible for that reason.

In addition to the charged conduct, however, there are several instances of related network attacks on other institutions (described in general terms, though not directly attributed to Gottesfeld in the Indictment), that are relevant to the charged offenses and are therefore the subject of this motion *in limine*.  As set forth below, these prior network attacks, and Gottesfeld's contemporaneous public statements about them, are admissible as intrinsic evidence of the charged offenses, and alternatively, also as evidence of motive, intent, and method of operation under Fed. R. Evid. 404(b).

The government will also offer evidence that during the attack on the Children's Hospital network, Gottesfeld threatened to conduct similar attacks on other institutions that he believed related in some way to the Pelletier matter or to the Boston Children's Hospital.  Relatedly, the government intends to offer evidence that in late 2013 and early 2014, Gottesfeld engaged in a campaign of harassment and intimidation, including efforts to disseminate personal information

of multiple individuals, in connection with his attacks on the Wayside and Children's Hospital networks as well as his campaign to shut down a Utah residential treatment center for adolescents that he believed was similar to Wayside.  This evidence is not intrinsic to the charged offenses, but is nonetheless admissible under Fed. R. Evid. 404(b) to demonstrate Gottesfeld's motive, intent, and methodology in connection with the attacks he and co-conspirators carried out against the Boston Children's Hospital and Wayside.  The evidence is further relevant to placing in context the measures Boston Children's Hospital took in responding to the attacks on its computer network.

I.    ARGUMENT

A.    Gottesfeld's Prior Attacks on Computer Networks Are Intrinsic Evidence of the Charged Offenses, Without Reference to Rule 404(b)

Rules 401 and 402 together "establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise."  *Huddleston v. United States*, 485 U.S. 681, 687 (1988).  As the First Circuit has stated, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency.  Relevant evidence is not confined to that which directly establishes an element of the crime."  *United States v. Mangual-Santiago*, 562 F.3d 411, 428 (1st Cir. 2009) (internal marks and citations omitted).

In this case, the government intends to offer evidence, consistent with allegations in the Indictment, that the defendant was concerned about what he believed were abuses at facilities that treat children and teens with serious emotional, psychological, and medical problems, and that he used websites and social media tools to bring attention to this cause.  *See* Dkt. No. 28 at ¶ 2.  His concern about these facilities ultimately led to his decision to attack the networks of

Wayside and the Boston Children's Hospital for their involvement in the treatment of Justina Pelletier.

As set forth in the Indictment, Gottesfeld initially focused his attention on a residential treatment center in Utah, Logan River Academy, for adolescents with emotional and behavioral issues.  He told others that the brother of his then-girlfriend, Dana Barach, was being mistreated at that school.  He created a website and Twitter, Facebook, and YouTube accounts through which he advocated the shutdown of Logan River Academy.  In November 2013, the Logan River Academy computer network was the target of a DDOS attack.  The attack affected the network intermittently for several months thereafter.  In March 2014, BestNotes, an Idaho records management company that managed patient records for the Logan River Academy, was also the target of a DDOS attack.  Gottesfeld tweeted publicly about his involvement in and endorsement of these attacks.  For example, on March 24, 2014, using the Twitter handle @AnonMercurial, Gottesfeld tweeted "@BestNotes Website troubles? Drop Logan River or we NEVER stop. #ShutLoganRiver."  That same date, he tweeted, "Tango Down!!! . . . #ShutLoganRiver" and posted a link to a website purporting to show that loganriver.com was inaccessible.  Gottesfeld further discussed his involvement in the DDOS attack on Logan River Academy as well as the involvement of members of the hacking collective Anonymous in this campaign to shut down Logan River Academy with a witness the government may call at trial.

Gottesfeld has stated that this initial campaign against Logan River Academy was directly related to his campaign against Wayside and the Boston Children's Hospital.  On March 23, 2014, for example, Gottesfeld was engaged in a series of direct (non-public) Twitter messages with co-conspirator "DigitaGhost."  In that discussion, Gottesfeld suggested attacking the Wayside network because of Wayside's involvement in the care of Justina Pelletier.  When

DigitaGhost stated that Wayside looked "like one of your brainwashing schools," Gottesfeld responded:  "It is basically one of those schools, from what we can tell. That's how I was able to bring in #ShutLoganRiver . . . that put this in our official purview."  In short, Gottesfeld linked the Pelletier matter directly to his campaign to shut down Logan River Academy, justifying the involvement of members of Anonymous in attacking Wayside and ultimately the Boston Children's Hospital networks because it was in the "official purview" of his Logan River Academy operation.

The evidence of Gottesfeld's threats and involvement in network attacks on Logan River Academy and BestNotes therefore provide relevant context for his attacks against Children's Hospital and Wayside.  "Intrinsic evidence includes prior acts that are 'part of [the] necessary description of the events leading up to the crime[ ]' or that go to 'an element of the charged offense.'"  *United States v. Souza*, 749 F.3d 74, 84 (1st Cir. 2014).  In this case, evidence of the prior network attacks is necessary in order to offer the jury a complete and coherent narrative of the charged conduct.  The campaigns against Logan River Academy and BestNotes, including the network attacks, are "part of [the] necessary description of the events leading up to the crime," *Souza*, 749 F.3d at 84, and subject to Rule 403, are admissible for that reason.  Because this evidence is intrinsic to the charged crime, Fed R. Evid. 404(b) is not implicated at all, *see United States v. DeSimone*, 699 F.3d 113, 124 (1st Cir. 2012); *United States v. David*, 940 F.2d 722, 737 (1st Cir. 1991).

    B.  <u>Fed. R. Evid. 404(b) Provides an Alternative Ground for Admitting Pre-Conspiracy Criminal Conduct.</u>

Federal Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs, or acts" is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Subject to Rule 403, evidence of other bad acts is admissible

if it has "special relevance" to a disputed issue in the case other than to prove bad character or criminal propensity. *See e.g.*, *United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000).

"Special relevance" is not a heightened evidentiary standard, but rather a requirement that the evidence serve some "purpose other than solely to prove that the defendant had a propensity to commit the crime in question." *United States v. Jiminez*, 507 F.3d 13, 17 (1st Cir. 2007) (*quoting Aguilar-Aranceta*, 58 F.3d at 798). Indeed, all that is required to meet the first prong of this two-prong test is that the evidence supports "at least one permissible inference" not based on propensity. *Jiminez*, 507 F.3d at 17 (quoting *United States v. Nickens*, 955 F.2d 112, 125 (1st Cir. 1992)). Rule 404(b)'s list of permissible purposes is not exhaustive, *Udemba v. Nicoli*, 237 F.3d 8, 15 (1st Cir.2001), and "[t]he showing of special relevance is not particularly demanding." *Jiminez*, 507 F.3d at 17.

Defendant's involvement in prior network attacks is relevant not because it shows "bad character" or a propensity to commit certain types of crimes; it is relevant as described above because it provides powerful evidence of defendant's motive and intent, as well as his ability and willingness to use network attacks and the resources of other members of Anonymous to attain his social and political goals.

   C.   <u>Because the Probative Value of the Evidence Is High, and the Potential for Unfair Prejudice Is Low, the Evidence Clears Rule 403, Regardless of Whether Offered as Intrinsic or Extrinsic/404(b) Evidence.</u>

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As the First Circuit has repeatedly stated, "it is almost always the case that evidence presented by the government is prejudicial to the defendant's

interests[,]" but the law "protects a defendant against *unfair* prejudice, not against *all* prejudice." *United States v. Dunbar*, 553 F.3d 48, 60 (1st Cir. 2009) (citations omitted) (emphasis in original); *see United States v. Gobbi*, 471 F.3d 302, 312 (1st Cir. 2006) ("By design, all evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided.") (internal marks and citation omitted) (emphasis in original).  Here, there is little risk of any unfair prejudice, much less unfair prejudice to a degree that substantially outweighs the probative nature of the evidence regarding Gottesfeld's involvement in and statements about the network attacks on Logan River Academy and BestNotes.  There is, for example, no reason to believe that any of this prior activity would "invite[] the jury to render a verdict on an improper emotional basis." United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000); see also United States v. Currier, 836 F.2d 11, 18 (1st Cir.1987) ( "Unfairly prejudicial evidence . . . is evidence that triggers the mainsprings of human action in such a way as to cause a jury to base its decision on something other than the established proposition in the case.") (internal quotation marks and brackets omitted).  Accordingly, the evidence passes the Rule 403 balancing test.

Furthermore, upon admission of testimony regarding Gottesfeld's involvement in the predecessor network attacks, the Court could, and indeed should, mitigate the potential for any unfair prejudice with an appropriate instruction to the jury to consider the evidence only for the limited purposes described above, including motive, intent, and methodology.  The Court should expressly instruct the jury that Gottesfeld is not on trial for those other acts, and that the jury should not consider the evidence as a reflection of the defendant's character or propensity to commit certain types of crimes.  *See United States v. Garcia*, 983 F.2d 1160, 1173 (1st Cir. 1993) ("district court handled the prior acts evidence with care, providing the jury with a limiting

instruction . . . and again instructing the jury of the scope of prior acts evidence in his final charge").

D.  Evidence of Prior Doxing and Other Threats Are Admissible Under Fed. R. Evid. 404(b).

The government intends to offer evidence at trial that Gottesfeld disseminated personal information of individuals in connection with his Logan River Academy campaign as well as his attacks on the Boston Children's Hospital and Wayside.  For example, in March 2014, Gottesfeld disseminated personal information of two individuals:  a Massachusetts state court judge presiding over the Justina Pelletier custody matter (full name, home address, and home telephone number), and a physician formerly employed at the Boston Children's Hospital (full name, home address, home telephone number, work telephone number, and work fax number).  The information was contained in a public posting on pastebin.com that Gottesfeld referred people to in public various tweets and other social media postings.

The pastebin.com posting announced the launching of "OpJustina"—an effort to pressure institutions involved in the care of Pelletier to return her to the custody of her family.  The posting criticized the judge's handling of the Pelletier case, stating "Anonymous is here to remind you who is in charge of this country and as a result we feel you should be exposed from behind your veil of secrecy and deceit."  The posting called on Children's Hospital to return Justina Pelletier to her parents, despite the fact that she was not being treated at Children's Hospital at the time.  The posting stated:  "This will be your first and final warning.  Failure to comply will result in retaliation which you will not be able to withstand."  Most of the content of the posting, including the information necessary to launch a DDOS attack on the Boston Children's Hospital network, was included in a video that Gottesfeld posted to his Shut Down Logan River Academy YouTube channel.  The video, which was narrated by a computer-

8

generated voice, stated that Anonymous "will punish all those held accountable and will not relent until Justina is free."

Similarly, on March 22, 2014, Gottesfeld described doxing an unidentified woman and doing other "d0xes on our site" in a series of Twitter direct messages he exchanged with co-conspirator "DigitaGhost" while discussing his campaign against Logan River Academy and the Pelletier case.

Here again, these acts are relevant not because they show "bad character" or a propensity to commit certain types of crimes; they are relevant because they are inextricably tied Gottesfeld's campaign against Children's Hospital that resulted in him and other members of Anonymous attacking the computer network.  Moreover, these efforts to pressure individuals and institutions through publishing personal information lend credibility to Gottesfeld's April 19, 2014 demand via Twitter (described above) that Children's Hospital "#FreeJustinaNOW or d0xes of your staff are next.  HIPAA breach thereafter.  Test us."  These prior doxing efforts therefore provide context for the later threats as well as for the protective measures Children's Hospital took in response to the credible threat of a network breach, including shutting down certain internet-based services at the hospital.

The evidence would also serve to corroborate anticipated witness testimony regarding Gottesfeld's and Anonymous's use of doxing in connection with the Logan River Academy campaign and the attacks on Children's Hospital and Wayside.  *See United States v. Figueroa*, 976 F.2d 1446, 1454 (1st Cir.1992) (Rule 404(b) permits introduction of evidence for purely corroborative purposes on matters "significant to the government's case"); *United States v. Blakely*, 942 F.2d 1001, 1019 (5th Cir.1995) (once credibility of government witness had been challenged by defense, 404(b) evidence to corroborate was admissible); *United States v. Everett*,

825 F.2d 658, 660 (2d Cir.1987) (admitting 404(b) evidence for corroborative purposes where the corroboration is "direct and the matter corroborated is significant").

Because the evidence would then be probative of material maters at trial, and because it is not so inflammatory as to cause unfair prejudice under Rule 403 (particularly with careful limiting instructions), this evidence too should be admitted at trial.

    E.  <u>Gottesfeld's Threats To Attack Other Networks Are Admissible Under Fed. R. Evid. 404(b).</u>

During the attack on the Children's Hospital network, Gottesfeld threatened to attack the networks of other entities in connection with "#OpJustina" including the following:

- On or about April 21, 2014, the Defendant threatened to attack the network of the Mass Medical Society, tweeting:  "@MassMedical No help to #FreeJustina means no website for you! . . . We are #Anonymous. We give 0 fux."

- On or about April 21, 2014, the Defendant threatened to attack the network of the NSTAR, tweeting:  "@NSTAR_News We advise you to stop helping Boston Children's Hospital if you like your website to work . . . #FreeJustina."

The government intends to offer these statements to show Gottesfeld's motive, state of mind, and intent.  Because they were made during and in furtherance of the charged offenses, there is little concern that they would constitute prohibited "propensity" evidence.  Likewise, they are not so inflammatory as to cause unfair prejudice under Rule 403 (particularly with careful limiting instructions).

    F.  <u>Evidence Other Doxing and Harassment Is Admissible Under Fed. R. Evid. 404(b).</u>

The government may also offer evidence of a separate doxing incident.  On or about November 3, 2013, Gottesfeld posted personal information regarding his girlfriend's parents on a message board he maintained on his website www.shutdownloganwiver.com.  Specifically, he provided the name, partial home address, and home telephone number of Terri and Daniel

Barach, along with the Terri Barach's email addresses, personal cell phone number, and voicemail access code to members of the forum.  He did so in an effort to pressure Dana Barach's parents to remove their son from a facility that Gottesfeld believed was mistreating him.[1]  On or about December 11, 2013, Gottesfeld solicited individuals "with social engineering and hopefully other relevant industry experience to spoof caller ID at Dana's parent's [sic] [i.e., Terri and Daniel Barach] house late at night from Oak Grove," referring to the facility where the son then resided.  Gottesfeld continued:  "I want them to say that their son has been found dead in his room. He hung himself, and that he scrawled 'This is my mom's fault.' on the wall as his only note. The police are there and would like to speak with them and they should come to Oak Grove as soon as they can safely do so."

With respect to admissibility, these messages exhibit "special relevance" under Rule 404(b), although the government concedes this is a closer call.  Although not intrinsic evidence of a charged offense, the evidence is nonetheless relevant to show Gottesfeld's motive and intent, as he has expressly joined together the Pelletier case with his broader campaign against institutions such as Logan River Academy that he referred to as the "troubled teen industry." The evidence further demonstrates the extent to which he would pursue intimidation to obtain his goals and his willingness and ability to enlist the assistance of others using anonymization techniques on the Internet to do so.  The evidence would also serve to corroborate testimony regarding Gottesfeld's use of "doxing" to obtain his political goals with respect to his campaign against the "troubled teen industry," in which he included Wayside and the Boston Children's Hospital.  The government respectfully reserves its right to offer this evidence depending on

---

[1]  Gottesfeld indicated that the son was residing at a school he referred to as "Oak Grove," not Logan River Academy, where Gottesfeld said the son was previously residing.

positions taken by the defendant and the manner in which the defendant challenges aspects of the government's proof at trial.  Because the evidence would be probative of material maters at trial, and because it is not so inflammatory as to cause unfair prejudice under Rule 403 (particularly with careful limiting instructions), this evidence too should be admitted, should the government offer it.

Respectfully submitted,

Andrew E. Lelling
United States Attorney

By:   */s/ David J. D'Addio*
David J. D'Addio
Seth B. Kosto
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Seth B. Kosto*

Dated: June 29, 2018