UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARTIN GOTTESFELD,<br>      Defendant. | Crim. No. 16-CR-10305-NMG |

**MOTION IN LIMINE TO ADMIT DEFENDANT'S PUBLISHED STATEMENT**

The United States of America, through Andrew E. Lelling, U.S. Attorney for the District of Massachusetts, by Assistant U.S. Attorneys David J. D'Addio and Seth B. Kosto, respectfully moves this Court in limine for a ruling admitting, pursuant to Fed. R. Evid. 801(d)(2)(B), an online news article containing defendant Martin Gottesfeld's published statement claiming responsibility for the April 2014 attack on the computer networks of Boston Children's Hospital.

**Background**

On September 18, 2016, the news and opinion website www.huffingtonpost.com published an article, over a reporter's byline and under the headline "Why I Knocked Boston Children's Hospital Off the Internet: A Statement from Martin Gottesfeld – the high-profile 2014 cyber attack is explained for the first time." (Docket No. 116-1). Following three introductory paragraphs that provided background on the Pelletier controversy, the circumstances surrounding Gottesfeld's rescue from a boat off the coast of Cuba, and his subsequent arrest, the article states: "For the first time, Gottesfeld is coming forward to explain why he did what he did, in an exclusive statement provided to the Huffington Post. … Here is his statement, published in full." Over the next seventeen paragraphs consisting of 901 words,

Gottesfeld's statement explains both why and how he attacked the hospital's network, including the following passage:

> The [hospital's] network was strong, well funded, but especially vulnerable to a specific attack. Apparently BCH was unwilling to architect around the problem. I see such laziness often in my work, and it leaves our nation vulnerable.
>
> I had spent my career building cyber-defenses. For the first time, I was on the offensive. I coded around the clock for two weeks to perfect the attack. Small test runs were made. BCH bragged to the media that they were withstanding the onslaught and hadn't been taken down. They had no idea what was to come.
>
> I finished the code just in time. It ran. BCH's donation page went down. As they were down, I was nervous. I left it running for a few hours.

(Docket No. 116-1). An FBI witness is expected to testify that the article appears to this day on, and was printed out from, the *Huffington Post*'s website.

**Argument**

Gottesfeld's statement is an admission to the crimes charged in the indictment. The Court should admit it as a non-hearsay statement offered against him, where the evidence shows that the *Huffington Post* confession is one "[Gottesfeld] manifested that [he] adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). Gottesfeld's adoption or acquiescence in the confession overcomes the implicit hearsay statement of the article's byline author, namely that Gottesfeld actually said or wrote what the *Huffington Post* printed as his statement, "published in full." *See Rivera v. Incorporated Village of Farmingdale*, 29 F.Supp.3d 121, 131 (E.D.N.Y. 2013).

"Adoption or acquiescence may be manifested in any appropriate manner." *Pilgrim v. Trustees of Tufts* College, 118 F.3d 864 (1st Cir. 1997). Several courts have applied adoptive admissions under FRE 801(d)(2)(B) where a declarant adopts his

quotation from a newspaper article during a deposition. *Rivera*, 29 F.Supp.3d at 131; *see also Tracinda Corp. v. DaimlerChrylsler AG*, 362 F.Supp.2d 487, 495 (D. Del. 2005) (same); *Boyd v. City of Oakland*, 458 F.Supp.2d 1015, 1050 (N.D. Cal. 2006) (same). The Tenth Circuit has similarly held that by distributing newspaper articles containing their hearsay statements, declarants "unequivocally manifested their adoption of the statements made in the newspaper articles." *Wagstaff v. Protective Apparel Corp. of America*, 760 F.2d 1074, 1078 (10th Cir. 1985); *see also Spurlock v. Fox*, 2010 WL 3807167 (M.D. Tenn. Sept. 23, 2010) ("Generally, when a party-opponent copies a document and distributes the copies to others, he or she has adopted the content of the document"); *Momah v. Bharti*, 182 P.3d 455, 466 (Wash. App. Ct. 2008) (attorney who published defamatory statements in the press on his own website effectively manifested his belief in the truth of the information posted).

Gottesfeld has manifested his adoption of the *Huffington Post* article by featuring it as a justification for his network attacks, in the media, in jail correspondence, on his website www.freemartyg.com, and in proceedings before this Court.

On September 16, 2016, two days before *the Huffington Post* published Gottesfeld's claim of responsibility, Gottesfeld directed his wife (Dana) in a recorded jail to tell the news media that she had "an exclusive 900 word statement from Marty" in which he would "tell all." (As noted above, Gottesfeld's statement in the *Huffington Post* has 901 words. Docket No. 116-1). Two days later, on September 18, 2016, Dana told Gottesfeld that the *Huffington Post* would be publishing his statement. Gottesfeld told Dana to get the statement over to the *Huffington Post* right away. On September 19, 2016, Dana called Gottesfeld and told him that the article had been published online the

night before, and Gottesfeld talked about shopping the article around to the "local NPR station" and the "local news stations," because "now you've got something in the *Huffington Post*." Gottesfeld predicted that there would be a "flood of traffic to the Huffington Post article" if the government indicted him. Finally, Dana read a few paragraphs from the beginning of the *Huffington Post* article. The words she read aloud substantially matched the three-paragraph preamble to Gottesfeld's statement.[1]

On September 19, 2016, at the outset of a telephone interview with a Fox News reporter, the reporter referenced having read the *Huffington Post* article, which is consistent with Gottesfeld's direction to Dana to send the article around to various news stations. Later in the same interview, in response to the reporter's question about whether Gottesfeld had accomplished his "end game" with what happened to the Boston Children's Hospital website, Gottesfeld stated "I would refer you to the *Huffington Post* article."

Even in jail correspondence, Gottesfeld referenced the article as his own. Writing to an M.O. in November 2016, Gottesfeld stated, "Have you caught my articles in the Huff Post?"

Gottesfeld has similarly manifested his belief in his statements in the *Huffington Post* article before this Court. Most recently, in his opposition to the government's

---

[1]Together with the testimony of an FBI witness who printed out the article, Gottesfeld's statements to Dana and to a Fox News reporter about the *Huffington Post* article are sufficient to demonstrate the authenticity of his article — *i.e.*, that the article is exactly what it purports to be, his statement contained within a newspaper article that appears on the internet. *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

motion in limine, Gottesfeld quoted extensively from his admission as being the "factual *predicate* for his motive." (Docket No. 198 at 21-22) (emphasis in original)). Gottesfeld's calling the article his "alleged" statement does not diminish his reliance on, wide distribution of, and manifestation of his belief in his statements in the article. Those statements are accordingly admissible as adoptive admissions under Fed. R. Evid. 801(d)(2)(B).

This follows from the common sense proposition that Gottesfeld would not, in the interview, in letters to confederates, on his websites, or before this Court, rely on an article purporting to contain his own words if he did not believe that he in fact made the statements attributed to him. By inviting readers and the Court to read the *Huffington Post* article to learn about his motives, Gottesfeld is like the parties in *Rivera*, *Trascenda, Boyd*, *Wagstaff*, and *Momah*, who were held to have adopted the content of their statements in newspaper articles, by distributing them widely, or by adopting them in legal proceedings. *See Rivera*, 29 F.Supp.3d at 130–31; *Trancinda*, 362 F.Supp.2d at 495; *Boyd*, 458 F.Supp.2d at 1050; *Wagstaff*, 760 F.2d at 1078; *Momah*, 182 P.3d at 466 ("By providing the content as a means of publicizing himself, [the declarant] effectively manifests his belief in the truth of the information.").

For all of the reasons above, Gottesfeld's article should be admitted as an adoptive admission under Fed. R. Evid. 801(d)(2)(B).

    Respectfully submitted,

    ANDREW E. LELLING
    UNITED STATES ATTORNEY


    By: /s/Seth B. Kosto
    David J. D'Addio
    Seth B. Kosto
    Assistant United States Attorneys

Date:  June 29, 2018

## **CERTIFIFCATE OF SERVICE**

      I hereby certify that, on this date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

                                     /s/ *Seth B. Kosto*
                                     Seth B. Kosto
                                     David J. D'Addio
                                     Assistant U.S. Attorneys

June 29, 2018