UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARTIN GOTTESFELD,<br>      Defendant. | Crim. No. 16-CR-10305 (NMG) |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTIONS *IN LIMINE*** 

The United States of America, by Andrew E. Lelling, United States Attorney for the District of Massachusetts, and Assistant United States Attorneys David J. D'Addio and Seth B. Kosto, hereby files this response to the following seven motions *in limine* filed by defendant Martin Gottesfeld: Dkt. Nos. 224 through 230.

I. INTRODUCTION

Defendant filed seven motion *in limine* regarding evidentiary matters and the conduct of the trial. Specifically, Gottesfeld has moved to: (1) sequester witnesses during trial (Dkt No. 224); (2) exclude "inflammatory and unfairly prejudicial testimony during the trial, including 'terrorist,' 'terrorism,' and similar language," (Dkt. No. 225); (3) exclude evidence regarding physical surveillance of Gottesfeld, (Dkt. No. 226); (4) exclude "any and all evidence concerning the alleged 'doxing' of persons," (Dkt. No. 227); (5) exclude evidence relating to Gottesfeld's solicitation of technical assistance in falsely convincing Terri and Daniel Barach that their son had committed suicide, (Dkt. No. 228); (6) exclude evidence relating to uncharged cyberattacks

and threats of cyberattacks,(Dkt. No. 229); and (7) exclude evidence regarding the circumstances of Gottesfeld's arrest (Dkt. No. 230).

The government has addressed several of these motions in its affirmative motions *in limine* to admit certain evidence. Specifically, the government has moved to admit evidence regarding (1) the Defendant's involvement in "doxing" individuals,; (2) his solicitation of assistance in falsely convincing Dana Gottesfeld's parents that their son had committed suicide—a plan that related to the Defendant's campaign to shut down Logan River Academy; (3) and evidence of his involvement in related cyberattacks and threats of additional cyberattacks. (Dkt. No. 217). The government incorporates by reference the arguments set forth in Dkt. No. 217 and limits its response herein to the Defendant's motions not otherwise addressed in the government's affirmative motions *in limine*.

## II. ARGUMENT

### A. A Limited Sequestration Order Is Appropriate.

The government has moved for a limited sequestration order requiring witnesses to remain outside the courtroom until they testify. (Dkt. No. 219). Defendant seeks a broader order precluding witnesses from "discussing their testimony, questions by attorneys, rulings of the Court, or other aspects of the proceedings during trial." (Dkt. No. 224). This request is overbroad, as it would seem to preclude discussion of matters such as logistics and timing of testimony. For example, several anticipated witnesses are Boston Children's Hospital physicians and those who work closely with such physicians. The ability of these witnesses to discuss matters of the timing and anticipated duration of their testimony is crucial to minimizing disruption to patient care. Such discussions should be permitted. The government does not,

however, oppose an order directing witnesses not to discuss *with each other* the *substance* of their testimony during the pendency of the trial.

      B.  <u>The Government Does Not Intend To Use or Elicit the terms "Terrorist" or "Terrorism" at Trial.</u>

The government does not intend to use terms such as "terrorist" or "terrorism" in its opening statement or closing argument, nor does it anticipate witnesses will use such terms in their testimony. The government will instruct its witnesses not to do so. While these terms will be avoided, it is important to note that the government does anticipate eliciting testimony about the experience of Boston Children's Hospital witnesses who worked through the Defendant's attack on the hospital network, including the emotional impact of the attack. Such testimony is relevant to demonstrating the potential impact on patient care and the propriety of the responsive measures the hospital took to protect its network from further damage, and is not unfairly prejudicial. Defendant's request to avoid "similar language" should be denied as overbroad to the extent it limits witnesses' ability to describe the events they experienced during the attack.

      C.  <u>The Government Does Not Presently Intend Elicit Testimony Regarding Physical Surveillance of Gottesfeld in Its Case-In-Chief.</u>

The government does not presently intend for elicit testimony regarding physical surveillance of Gottesfeld in its case-in-chief. That said, the defendant has not proffered any argument that such evidence is somehow inappropriate. The government therefore reserves its right to offer evidence of surveillance in its case in chief, depending on the nature of the cross examination of witnesses, or in its rebuttal case, depending on the nature of evidence offered by the Defendant.

### D. The Circumstances of Gottesfeld's Arrest Are Probative of His Consciousness of Guilt.

Gottesfeld points to a single factor to argue that he and his wife were not on the run when he was rescued at sea—that they were not under any travel restrictions.  While this is true, there are several other record factors indicating that the two were on the run:  (1) on the day of their rescue, Gottesfeld and his wife were traveling in an unregistered, uninsured, and unnamed boat that Gottesfeld had purchased for $4,000 some four weeks earlier (Dkt. No. 19 at 26, 32); (2) they had with them worldly possessions: a wedding album, their marriage license, Social Security cards, and birth certificates (*Id.* at 29); (3) they had receipts showing substantial cash withdrawals (up to $4,900 at a time) and the purchase of electronics (*Id*. at 30); (4) the two had left Massachusetts without telling either of their employers or Dana Gottesfeld's family that they would be gone long, leading to police contacts asking after them, and without paying the February rent on Gottesfeld's Somerville apartment (*Id.* at 18-21); (5) Dana Gottesfeld had not used the cell phone her mother had given her since January 15, 2016, (*Id.* at 21-22); and (6) Gottesfeld told his rescuers that he and his wife had left Key West the morning of their rescue, which their rescuers noted was inconsistent with their physical appearance and behavior (*Id.* at 31).  Their trip occurred only weeks after a December 17, 2015 proffer that Gottesfeld attended, and renewed communications between Gottesfeld's counsel and the government about resolving Gottesfeld's case. (*Id.* at 17-18).  In short, there is ample evidence that the Gottesfelds left to avoid prosecution and that they did not intend to return to the United States.

In *United States v. Benedetti*, 433 F.3d 111 (1st Cir. 2005), the First Circuit explained that although "[f]light evidence is controversial and must be handled with care," with an "adequate factual predicate, ... evidence of a criminal defendant's flight is generally thought to be probative of his or her consciousness of guilt." *Id.* at 116.  Thus, *Benedetti* makes clear that "[a]s

4

a precursor to admissibility, the government must present sufficient extrinsic evidence of guilt to support an inference that [the] defendant's flight was not merely an episode of normal travel but, rather, the product of a guilty conscience related to the crime alleged." *Id.*  The aim is to ensure that "a jury does not infer guilt based solely on a defendant's meanderings." *Id.*  In so concluding, however, the First Circuit explained that the government must present only "enough extrinsic evidence to furnish circumstantial badges of guilt." *Id.* at 117.  "[A] district court is afforded considerable leeway when determining whether evidence of a defendant's flight is accompanied by a sufficient factual predicate." *Id.* at 116.

In Gottesfeld's case, there are ample circumstantial (and direct) "badges of guilt." *See Benedetti*, 433 F.3d at 117.  Gottesfeld published a written statement taking responsibility for the attack on the Boston Children's Hospital computer network, as charged in the indictment; he used his Twitter accounts, @anonmercurial and @anonmercurial2, to taunt and threaten Wayside and Children's Hospital while the attacks were under way; and forensic evidence seized from his computers show communications between him and his co-conspirators about the selection of Wayside as a target and the timing of the attacks.  As noted, the flight followed a meeting with the government and discussions regarding resolution of the matter by plea.

Given that extrinsic evidence linking the flight evidence to the defendant's consciousness of guilt, the Court need only evaluate whether the flight evidence would be unduly prejudicial under Fed. R. Evid. 403.  The Court has wide latitude in determining whether the flight evidence passes Rule 403's balancing test.  *See United States v. West*, 877 F.3d 434, 439 (1st Cir. 2015); *Benedetti*, 433 F.3d at 117.  Moreover, cautionary instructions can further minimize the risk of unfair prejudice.  *See Daigle v. Me. Med. Ctr., Inc.*, 14 F.3d 684, 690 (1st Cir. 2017).

In light of Gottesfeld's continued insistence that he did nothing wrong in directing network attacks at Wayside and Children's Hospital, flight evidence (and its attendant suggestion of consciousness of guilt) are highly probative of his supposed good motives for the attack and not at all unfairly prejudicial. For these reasons, the Court should admit the evidence of Gottesfeld's flight and instruct the jury about the limitations of that evidence.

        Respectfully submitted.

        ANDREW E. LELLING
        UNITED STATES ATTORNEY

By:   /s/ *Seth B. Kosto*
        Seth B. Kosto
        David J. D'Addio
        Assistant U.S. Attorneys

July 9, 2018

## CERTIFIFCATE OF SERVICE

I hereby certify that, on this date, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

        /s/ *Seth B. Kosto*
        Seth B. Kosto
        David J. D'Addio
        Assistant U.S. Attorneys

July 9, 2018.