UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 16-cr-10305-NMG |
| ) | |
| MARTIN GOTTESFELD ) | |

DEFENDANT'S MOTION FOR RELEASE PENDING SENTENCING

Pursuant to 18 U.S.C. §3143(a)(1), the defendant Martin Gottesfeld ("Mr. Gottesfeld") hereby files this motion for release pending his sentencing hearing scheduled for November 14, 2018. Mr. Gottesfeld demonstrates by clear and convincing evidence that he "is not likely to flee or pose a danger to the safety of any other person or the community if released under [18 U.S.C.] section 3142(b) or (c)."

1. <u>The government failed to prove a central claim of the indictment.</u>

At trial, the government failed to prove a central claim of both counts of the indictment, <u>viz.</u>, that Mr. Gottesfeld caused "the potential modification and impairment of the medical examination, diagnosis, treatment, and care of one or more individuals." Dkt. No. 28 at 7, 11. That this claim was central to the government cannot be seriously disputed; Mr. Gottesfeld had already admitted to Distributed Denials of Service ("DDOS"). On December 17, 2015 (two months prior to being charged), Mr. Gottesfeld met with the government and representatives from Boston Children Hospital ("BCH") to explain how and why he initiated DDOSs on BCH and Wayside Youth and Family Services ("Wayside"). On September 18, 2016, Mr. Gottesfeld publicly admitted to initiating a Distributed Denial of Service ("DDOS") in an article published in the *Huffington Post*. Dkt. No. 116-1. Indeed, the evidence that Mr. Gottesfeld initiated DDOSs was so clear and undisputed that the undersigned conceded those acts in his Opening

Statement before the jury. Mr. Gottesfeld's decision to testify (about the DDOSs and other topics) was discussed early and often during the trial, and in fact he did testify about DDOSs.

Against this background, the focus of the trial was surely not on whether Mr. Gottesfeld initiated DDOSs; rather, the focus of the trial was on certain specific questions, including the government's central claim that Mr. Gottesfeld caused potential modification and impairment to the care of patients. Indeed, it might be said that this question was the moral core of the government's accusations. At trial the government called numerous witnesses from BCH and Wayside who otherwise had little to provide the jury in an effort to prove this central claim. The jury repeatedly heard about the young age of patients treated at BCH; the delicate nature of their medical conditions; they types of care they required; the varieties of medications they needed; and the vital importance of communication among staff about patient examinations, diagnoses, treatment, and care. The government repeatedly elicited evidence concerning the effect email disruptions and downed portals allegedly impacted hospital staff in performing their duties to patients. Despite the government's persistent attempts to portray BCH and Wayside patients as in jeopardy, the reality is that every relevant staff member from both institutions testified they were unaware of a single patient being injured or adversely affected by a DDOS; as to both counts of the indictment, the government failed to prove that Mr. Gottesfeld caused even "the *potential* modification and impairment of the medical examination, diagnosis, treatment, and care of one or more individuals." Dkt. No. 28 at 7, 11 (emphasis supplied).

Instead of proving the moral core of its case, the government instead demonstrated a financial loss of over $5,000 on both counts to sustain convictions. Yet, Mr. Gottesfeld personally conceded financial losses at least as early September 2016 *Huffington Post* article. Dkt. No. 116-1. Even where the actual losses may be greater than $5,000, those losses (which

insurance may have reimbursed) are hardly compensation for the failure of the government to prove even potential "modification and impairment" to the care of patients.  The government's failure to prove potential harm to patients also preserves the importance of Mr. Gottesfeld's personal assertions about the impact of a DDOS on patient care: "I also knew… that no patients should be harmed… the only effects would be financial and on BCH's reputation."  See Id.

The government's failure to prove this central claim is a significant change of circumstance that favors his release pending sentencing.

2. Mr. Gottesfeld does not pose a danger to others or a risk of flight.

Mr. Gottesfeld has no prior record of criminal convictions and certainly does not pose a danger to the community; the government's failure to prove its central claim at trial reinforces Mr. Gottesfeld's lifetime of safe and peaceful engagement with others.

Further, the circumstances reveal by clear and convincing evidence that Mr. Gottesfeld does not pose a flight risk.  Mr. Gottesfeld of course acknowledges that in January 2016 - over thirty months ago, prior to being charged by complaint, and with no process or travel restrictions against him - he and his wife Dana Gottesfeld traveled by boat from Florida to Cuba seeking asylum.  Mr. Gottesfeld openly testified to this travel and asylum request at trial.  But this effort must not be confused with flight from ongoing court proceedings, of which there were none at the time.  Mr. Gottesfeld has never evaded ongoing court proceedings, and would not do so now.

While the government would surely cite the convictions as contrary evidence, Mr. Gottesfeld's overall situation has clearly improved since this case was first charged on February 17, 2016.  As stated, the government failed to prove the moral core of its case, which should inure to him at sentencing.  He also has two-and-a-half years of credit towards his sentence.

Further, Mr. Gottesfeld's stature in the community has grown considerably since he was charged. Through news articles, television broadcasts, media interviews, and his own publications, he has raised considerable awareness on behalf of allegedly abused children trapped inside the Troubled Teen Industry or kidnapped by medical providers, including but not limited to the high-profile case of Justina Pelletier. On June 29, 2017, *Rolling Stone* published a feature-length article about the case and Mr. Gottesfeld's motive entitled "The Hacker Who Cared Too Much," See https://www.rollingstone.com/culture/culture-features/the-hacker-who-cared-too-much-196425/ (last accessed August 29, 2018). Other publications including *Newsweek, The New American*, and *The Daily Wire* have reported on his efforts to raise public awareness concerning allegedly mistreated children at hospitals and institutions across the country. See e.g., "Anonymous Hacker Indicted as Hunger Strike Continues," Anthony Cuthbertson, *Newsweek*, October 21, 2016, available at https://www.newsweek.com/alleged-anonymous-hacker-indicted-hunger-strike-continues-512017 (last accessed August 29, 2018); "Critics Slam Prosecution of Man Who Tried to Save Girl From Gov't," Alex Newman, *The New American*, April 13, 2017, available at https://www.thenewamerican.com/usnews/crime/item/25811-critics-slam-prosecution-of-man-who-tried-to-save-girl-from-gov-t (last accessed August 29, 2018); "The Story of Martin Gottesfeld: The Hacktivist who Faces 15 Years in Jail For Trying to Save a Young Girl's Life," Frank Camp, *The Daily Wire*, January 6, 2018, available at https://www.dailywire.com/news/25476/story-martin-gottesfeld-hacktivist-who-faces-15-frank-camp (last accessed August 29, 2018). Since being charged, Mr. Gottesfeld has also worked as a journalist writing on the Troubled Teen Industry, politics, and contemporary issues, achieving publication several well-subscribed publications. See e.g. "How the Justice Department Could

and Should Have Protected the Pelletiers," Martin Gottesfeld, *Huffington Post*, February 02, 2017, available at https://www.huffingtonpost.com/entry/how-the-justice-department-could-and-should-have-protected_us_58936187e4b0eef0adc989fc (last accessed August 29, 2018).  In light of Mr. Gottesfeld's growing stature in the community, including within political journalism, it is certainly in Mr. Gottesfeld's interest to remain civically engaged and appear in his court case.

As the Court is aware, Mr. Gottesfeld was born and raised in Massachusetts and lives with his wife in Somerville.  Mr. Gottesfeld is ready and willing to abide by conditions of release, including but not limited to GPS monitoring and home confinement, pending sentencing.  He does not pose a risk of flight and should be released pending sentencing.

3. Likelihood of Success on Appeal.

Since Mr. Gottesfeld has not yet been sentenced or filed his Notice of Appeal, this motion is filed under 18 U.S.C. §3143(a), not §3143(b); nonetheless, it is appropriate this motion cite several meritorious issues to be raised on appeal.[1]  This discussion of appealable issues must be viewed in a light no more stringent than a motion under 18 U.S.C. §3143(b), which asks, in relevant part, whether, "the appeal… raises a substantial question of law or fact likely to result in (i) reversal, [or] (ii) an order for a new trial."  Of course, this Court need not rule that it committed reversible error in order to release Mr. Gottesfeld.   In United State v. Bayko, 774 F.2d. 516, 523 (1st Cir. 1985), the First Circuit rejected the argument that a defendant's release (pending appeal) is "contingent upon a finding by the district that court that it is likely to be reversed."  Indeed, the First Circuit holds that a "substantial question of law or fact" means "'a

---

[1] As this Court is not required under 18 U.S.C. §3143(a) to consider the defendant's likelihood of success on appeal, this argument is not (and is not intended to be) a full briefing of the issues to be raised in Mr. Gottesfeld's appeal; further, since this argument is not a full briefing of appellate issues, this Court must not estop Mr. Gottesfeld from more comprehensively briefing and arguing the likelihood of success on appeal in future court filings.

"close" question or one that very well could be decided the other way.'" Id. at 523, quoting United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985). "The determination of whether a question is 'close' question is to be made on a case-by-case basis." Id. The statute requires "that the claimed error not be harmless or unprejudicial." Id. Moreover, the "likely to result" standard is to be applied "flexibly." United States v. Colon-Munoz, 292 F.3d 18, 20 (1st Cir. 2002).

A non-exhaustive review of issues likely to be raised on appeal meets the standard established by the First Circuit in Bayko. 774 F.2d at 523. First, while Mr. Gottesfeld certainly contends that the Court's denial of his motion to dismiss under the Speedy Trial Act was reversible error, it was at least "a close question or one that very well could be decided the other way." Id.; Dkt. Nos. 205 and 209. 18 U.S.C. §3161(b) requires that a defendant be indicted within thirty days from the date he was arrested. 18 U.S.C. §3162(a)(1) states: "If… no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against the individual shall be dismissed or otherwise dropped." In this case, the Court detained Mr. Gottesfeld between his arrest on February 17, 2016 to his indictment on October 19, 2016, *a period of two hundred forty-six days* inclusive, without a single ends-of-justice exclusion "in the record of the case," as required by 18 U.S.C. §3161(h)(7)(A) and United States v. Zedner, 547 U.S. 489, 507 (2006). For the reasons discussed in Mr. Gottesfeld's filings seeking dismissal, including Dkt. Nos. 164, 176, and 213, incorporated by reference hereto, woefully inadequate time was excluded from the pre-indictment speedy trial clock in this case, and dismissal was required.

Second, the Court's denial of Mr. Gottesfeld's requests to present the defenses of necessity and defense of others was reversible error, and at least "a close question or one that very well could be decided the other way." Id.; Dkt. No. 209. The highly publicized and

controversial alleged kidnapping and abuse of teenager Justina Pelletier, and its role in this case, should have permitted the jury to acquit Mr. Gottesfeld under the doctrines of necessity and defense of another. For the reasons discussed in Mr. Gottesfeld's filing opposing the government's motion *in limine* to exclude Mr. Gottesfeld's defenses, Dkt. No. 198, incorporated by reference hereto, as well his arguments in-court before and during trial, this Court could have and, respectfully, should have decided the issue the other way.

Third, the Court's denial of Mr. Gottesfeld's motions to suppress evidence was reversible error, and at least "a close question or one that very well could be decided the other way." Id., Dkt. Nos. 209, 222. Magistrate Judge Marianne Bowler was required to disqualify herself from considering the search warrant for reasons including that her spouse Dr. Marc Pfeffer is employed by Harvard Medical School and Brigham and Women's Hospital, institutions affected by the DDOS. Indeed, during trial the government reinforced through witness testimony the effect the DDOS had on those institutions. Magistrate Judge Bowler's failure to recuse herself stands in sharp contrast to her decision to disqualify herself in another case involving Harvard-affiliated institutions, Cabi, et al v. Boston Children's Hospital, et al, 15-cv-12306-DJC. The standard adopted by the First Circuit in Bayko standard is satisfied. Further, a "close question" certainly exists as to the government's warrantless acquisition and use of port data seized in this case, for reasons including the Supreme Court's recent rejection of the third-party doctrine as it relates to certain electronic evidence. Carpenter v. United States, 585 U.S. ____ (2018) (2018 U.S. Lexis 3844). As argued in Mr. Gottesfeld's suppression filings, including Dkt. Nos. 78, 89, 128, 166, 175, and 188, incorporated by reference hereto, as well his arguments in-court before and during trial, this Court could have and, respectfully, should have decided these issues for Mr. Gottesfeld.

Fourth, several issues arose at trial, including but not limited to the Court's denial of defendant's motion *in limine* to exclude uncharged conduct, Dkt. No. 229, and the government's use of a prejudicial PowerPoint demonstration in closing argument that it never provided to the defense in discovery, also satisfy the Bayko standard. 774 F.2d. at 522-523.

As stated, Mr. Gottesfeld need not establish any likelihood of prevailing on appeal in a motion under 18 U.S.C. §3143(a)(1); however, this brief recitation of select issues to be litigated on appeal provide strong support for Mr. Gottesfeld's request for release on conditions under that provision.

4. Conclusion

Mr. Gottesfeld was not convicted of a central claim that was actually contested by the defense.  He has no prior record of convictions.  He has been detained already for two-and-a-half years.  His stature in the community has grown in the last several years, and he has strong issues to be litigated on appeal.  If ordered by the Court, he will remain on GPS monitoring and remain confined to his Somerville home.  Respectfully, Mr. Gottesfeld has met the standard of clear and convincing evidence set out in 18 U.S.C. §3143(a)(1).  The Court should order his release.  A hearing is requested on this motion.

                                                Respectfully Submitted,
                                                MARTIN GOTTESFELD
                                                By his attorney:

                                                /s/ David J. Grimaldi
                                                _____
                                                David J. Grimaldi
                                                David J. Grimaldi, P.C.
                                                BBO No. 669343
                                                675 Massachusetts Avenue, 9th Floor
                                                Cambridge, MA 02139
                                                617-661-1529 (tel)
                                                857-362-7889 (fax)
DATE: August 31, 2018                        david@attorneygrimaldi.com

<u>CERTIFICATE OF SERVICE</u>

    I, David J. Grimaldi, hereby certify that true copies of this motion were served on all registered participants in this matter via ECF this 31st day of August, 2018.

                                                        /s/ David J. Grimaldi

                                                        _____

                                                        David J. Grimaldi