UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

United States of America

v.

Martin S. Gottesfeld
Defendant

Case No.: 16-cr-10305

FILED
IN CLERKS OFFICE
2018 DEC 21 PM 12: 10
U.S. DISTRICT COURT
DISTRICT OF MASS.

## EMERGENCY MOTION FOR DISCLOSURE PURSUANT TO 28 U.S.C. §§ 144 AND 455 AND THE DUE PROCESS CLAUSE

The defendant, Martin S. Gottesfeld (herein the "defendant"), acting pro se, hereby moves The Honorable U.S. District Court Judge Nathaniel M. Gorton on an emergency basis to disclose onto the record any and all information which may be relevant under 28 U.S.C. §§ 144 and 455 as well as the Due Process Clause of The U.S. Constitution regarding both the assignment and possible disqualification of The Honorable Judge Nathaniel M. Gorton to/from the instant case or any aspect thereof.

The defendant wishes to note respectfully that the relevant Canon of Ethics for U.S. judges requires The Honorable Judge Nathaniel M. Gorton to disclose such information. (Please see Liteky v. United States, 510 U.S. 540, 548; 114 S. Ct. 1147; 127 L.Ed.2d 474 (1994) and (American Textile Mfrs. Institute, Inc. v. The Limited, Inc., 190 F.3d 729, 742 (6th Cir. 1999)

quoting Porter v. Singletary, 49 F.3d 1483, 1489 (11th Cir. 1998), "Further, judges have an ethical duty to 'disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification... [B]oth litigants and counsel should be able to rely upon judges to comply with their own Canon of Ethics.'" (internal citations omitted)).

The defendant also explicitly notes that the information which he definately and definitively "consider[s] relevant to the question of disqualification" includes but is not limited to the following:

1. Any history of capital or asset transaction(s) between the following potential sources of capital or assets (herein "Category A entities"): The Honorable Judge Nathaniel M. Gorton and his spouse, those within 3 degrees of relationship to either of them and the spouses of such people (including but not limited to Michael C. Gorton Sr., Karen Swift, Slade Gorton, Kimberly Gorton, and Michael C. Gorton Jr.) as well as Slade Gorton & Co., Inc., Slade Gorton Seafood Holdings, Inc., SG Seafood Holdings, Inc., and entities of similar composition and/or ownership, and the following potential recipients of capital or assets (herein "Category B entities"): Boston Children's Hospital, Children's Hospital Corporation LLC, The Home For Little Wanderers, The Wayside Youth and Family Support Network, KDSA, The Boston Foundation, The Massachusetts Department of Children and Families, The Honorable Massachusetts Family Court Judge

Joseph F. Johnston, Logan River Academy, Brigham and Women's Hospital, Massachusetts General Hospital, Beth Israel Deaconess Medical Center, The Dana Farber Cancer Institute, other Harvard-affiliated hospitals and medical organizations, Harvard University, Harvard Medical School, The Joslin Diabetes Center, The Judge Rotenberg Educational Center, NATSAP, BestNotes, NSTAR (other than utility bills), The Massachusetts Medical Society, Greatschools.org, and Sorenson's Ranch School.

2. Any history of capital or asset transaction(s) between any Category B entity as a source and any Category A entity as a recipient not already covered by item 1 above.

3. Any history of capital or asset transaction(s) between The Home For Little Wanderers and other Category B entities.

4. Any history or histories of philanthropic, promotional, organizational or other partnerships, programs, or other joint ventures between a Category A entity and a Category B entity or between The Home For Little Wanderers and another Category B entity.

5. Any history of service by any Category A entity or a director, officer, advisor, or other representative thereof on any board, committee or similar body of a Category B entity, or any history of service by The Home For Little Wanderers or a director, officer, advisor, or other representative thereof on any board, committee or similar body of another Category B entity.

6. Any history of service by any Category B entity or a director, officer, advisor, or other representative thereof on any board, committee, or similar body of a Category A entity.

7. Any threats or retaliation faced by any Category A entity as a potential and/or perceived result of the events of the case The United States v. Aaron Swartz.

The defendant is asking for the disclosure of this information on an emergency basis because: 1) he is entitled to a neutral and detached tribunal in the first instance (please see Tumey and Ward supra); 2) the scheduled sentencing date in the instant case is fast approaching; 3) when the defendant inquired, he was left unsure as to whether The Honorable Judge Nathaniel M. Gorton will honor the prison mailbox rule; and 4) his motion for a stay of the sentencing date to prepare and file an affidavit pursuant to 28 U.S.C. §§ 144 and 455 were immediately denied from the bench on Thursday, December 13th, leaving him insufficient time to file the aforementioned affidavit and motion as well as supplimentary objections to the pre-sentence report and a supplimentary sentencing memorandum.

Further, the defendant will only be entitled to file one (1) affidavit pursuant to 28 U.S.C. § 144 and he believes that it is fair and proper for the requested information to be disclosed beforehand.

The defendant also wishes to note respectfully that in regards to 28 U.S.C. § 455, U.S. Circuit Courts have

repeatedly cautioned that while objectively reasonable members of the public are not unduly suspicious nor distrusting of judges, they also do not have the same level of confidence in the ability of judges to remain impartial as do other members of the judiciary. (Please see In re Boston's Children First, 244 F.3d 164, 171 (1st Cir. 2001) quoting In re School Asbestos Litigation, 977 F.2d 764, 782 (3d. Cir. 1992) and In re Murchison, 349 U.S. 133, 136; 75 S.Ct. 623; 99 L.Ed. 942 (1955), "'The problem, however, is that regardless of [a judge's] actual impartiality, a reasonable person might perceive bias to exist, and this cannot be permitted.'" "Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their best to weigh the scales of justice equally between contending parties." (internal citations omitted) as well as O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 988 (7th Cir. 2001), In re Mason, 916 F.2d 384, 386 (7th Cir. 1990), United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998), and United States v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995).)

In Liljeberg v. Health Services Acquisition Corp. 486 U.S. 847, 864; 108 S.Ct. 2194, 2205; 100 L.Ed.2d 855, The U.S. Supreme Court went further, noting "that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges."

The defendant also wishes to note respectfully that in the First Circuit, close calls should be resolved in favor of

recusal. (Please see In re Boston's Children First, supra, at 167, quoting Nichols v. Alley, 71 F.3d 347, 352 (10th Cir. 1995).)

Additionally, a judge's inner conviction that he/she can remain impartial does not effect the requirements of 28 U.S.C. § 455. (Please see Blizard v. Frechette, 601 F.2d 1217 (1st Cir. 1979).)

Penultimately, the defendant wishes to note respectfully that the outcome of a criminal case can have substantial effects on the financial and other interests of non-party "victims," their partners, affiliates, and clients which are cognizable under 28 U.S.C. §§ 455(a), 455(b)(4), and 455(b)(5)(iii) (please see Emich Motors Corp. v. General Motors Corp., 340 U.S. 558; 71 S.Ct. 408; 95 L.Ed. 534 (1951)) and that the possibility of restitution to non-party "victims" affects analyses of recusal issues (please compare United States v. Feldman, 983 F.2d 144 (9th Cir. 1992) to United States v. Sellers, 566 F.2d 884 (4th Cir. 1977)).

Finally, for the purpose of illustrating the types of data which he "consider[s] relevant to the question of disqualification," the defendant wishes, respectfully, to list the following information which he has discovered:

1. In 2013, on or about the time when Justina Pelletier was in the Bader 5 psychiatric ward at Boston Children's Hospital (BCH), Slade Gorton & Co., Inc. donated at least $1,000 to BCH. Slade Gorton & Co., Inc. is and was at the time a subsidiary of Slade Gorton

Seafood Holdings, Inc., where The Honorable Judge Nathaniel M. Gorton listed himself as a "Shareholder, Clerk/Secretary, and Director." Further, the Chairman, the President and CEO, and the Vice President of Food Service Sales for Slade Gorton & Co., Inc. are all relatives within the third degree of relationship to The Honorable Judge Nathaniel M. Gorton. Additionally, BCH publicly thanked Slade Gorton & Co., Inc. for this donation on May 11th, 2014 — within 1 month of the events in controversy in the instant case. However, earlier during the Justina Pelletier protests, BCH had taken down a list of its philanthropic donors presumably to protect them from economic harm.

2. On May 13th, 2013, The Honorable Judge Nathaniel M. Gorton cited threats of retaliation when he ordered the names of government agents redacted in documents from the case of United States v. Aaron Swartz prior to their release to the public.

3. In 2003, while The Honorable Judge Nathaniel M. Gorton listed himself on his financial disclosure as a member of the Board of Advisors for the Home for Little Wanderers and on or about when his brother was on the Board of Directors for The Home for Little Wanderers, there was an announcement that BCH had partnered with the Home to help divert juvenile psychiatric inpatients at BCH — like Justina Pelletier would eventually be — into outpatient environments.

4. The Honorable Judge Nathaniel M. Gorton listed himself

in his financial disclosures as "a member of the corporation" of The Home for Little Wanderers from 2003 through 2012, a period which overlapped for 6 years with the employment by the Home of an accountant who was on the jury of the instant case and who recognized the employer of the first government witness both as a vendor for the Home during her time working there from 2006 to 2014 and as a vendor for her then-current employer as well.

If applicable, the defendant respectfully requests the application of the prison mailbox rule to the filing of this motion.

Respectfully mailed on <u>Dec. 18th, 2018</u>,

Martin S. Gottesfeld
Defendant, pro se
ID # 71225
Unit H1, Cell 235
26 Long Pond Road
Plymouth, MA 02360

CERTIFICATE OF SERVICE

I hereby certify that on _December 18th, 2018_ the foregoing document was _mailed_ to Assistant U.S. Attorney David J. D'Addio

_Martin S. Gottesfeld_