No. _____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

*In re MARTIN S. GOTTESFELD*, Petitioner.

## BRIEF OF PETITIONER MARTIN S. GOTTESFELD

Martin S. Gottesfeld, *pro se*
Reg. no. 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

Dated September 27, 2021

## THE RELIEF SOUGHT (FED. R. APP. P. 21(a)(2)(B)(i))

1.   MARTIN S. GOTTESFELD, *pro se*, hereby petitions This Honorable Court pursuant to Fed. R. App. P. 21 to issue a writ of mandamus (hereinafter the "Writ"), directing The Honorable U.S. District Judge Nathaniel M. Gorton to rule on Petitioner's 45-day-old Expedited Motion for Release Pending Appeal (hereinafter "Pet. Bail Mot.") and its accompanying Memorandum in Support of Expedited Release (hereinafter "Pet. Bail Memo."), entered below in *United States v. Gottesfeld*, 16-cr-10305-NMG (D. Mass.) (hereinafter the "Dist. Case"), dkt. no. 431 (Aug. 13, 2021), copies of which are herewith provided[1] as Exh. 4 hereto.

2.   Though Petitioner seeks release in the court below, he expressly declines any construal of this instant petition as one seeking his release or as a complaint of judicial misconduct; instead the instant petition seeks to require the lower court to rule so that the losing party below may then advance via Fed. R. App. P. 9(b) and 18 U.S.C. § 3145(c). *See Castro v. United States*, 540 U.S. 375 (2003) (courts must obtain *pro se* litigant's consent before construing his filing in a manner that may increase his later difficulty of obtaining relief).

3.   Petitioner moves This Court when issuing the Writ to require therein that Judge Gorton comply with, *inter alia*, Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record") and Fed. R. App. P. 9(a)(1) ("The district court must state in writing or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case"). *Contrast* Fed. R. Crim. P. 12(d) and, *e.g.*, Judge Gorton's findings-less orders on disq. mots., Dist. Case, ECF Nos. 350-52 (Jan. 3, 2019); findings-less Ord. on Mot.

---

[1] Petitioner herewith provides said copies unsealed. The docket below contains neither a motion to seal nor findings justifying closure. No valid reason exists to seal Pet. Bail Memo.'s exhibits. *See* Mot. to Unseal, Dist.

to Unseal, Dist. Case, dkts. 354 (Jan. 3, 2019); and findings-less ruling *ore tenus* on Disq. Mot., Trial Tr. Day VIII at 19, Aug. 1, 2018, Dist. Case, ECF No. 331.

4.   Petitioner moves This Court when issuing the Writ to require therein that Judge Gorton comply with, *inter alia*, Fed. R. Crim. P. 50 ("Scheduling preference must be given to criminal proceedings as far as practicable"). *Contrast* Fed. R. Crim. P. 50 and, *e.g.*, M.J. Bowler's civil rulings while Petitioner's detention pended 91 days after his Apr. 27, 2016, detention hearing (Dist. Case, ECF No. 15), *e.g.*, Report and recommendation on motion to dismiss civil complaint, *Reem Prop., LLC v. Engleby*, Civil Action No. 15-40127-PBS (D. Mass.), ECF No. 32 (July 20, 2016); and Judge Gorton's civil rulings while Petitioner's Motion for Release, Dist. Case, ECF No. 177 (May 14, 2018) pended, *e.g.*, Order granting motion to dismiss antitrust claims, *MacCausland v. Uber Techs., Inc.*, 312 F. Supp. 3d 209 (D. Mass. May 30, 2018) and Order denying certif. of interloc. appeal, *Amphastar Pharms., Inc. v. Momenta Pharms., Inc.*, 313 F. Supp. 3d 366 (D. Mass. June 1, 2018).

5.   Petitioner moves This Court when issuing the Writ to require therein that Judge Gorton comply with, *inter alia*, 18 U.S.C. § 3145(b) ("The [bail] motion shall be determined promptly"). *See also United States v. Jones*, 1999 U.S. Dist. LEXIS 8080, No. 98-cr-10169-WGY (D. Mass. May 26, 1999) at *1 (criminal defendant entitled to prompt bail determination). *Contrast* 18 U.S.C. § 3145(b) and *Jones, supra*, to, *e.g.*, the three months between the entries of Electronic Clerk's Notes, Dist. Case, ECF No. 15 (Apr. 27, 2016) (Petitioner's detention taken "under advisement") and Order of Detention, Dist. Case, ECF No. 25 (July 27, 2016), and to the continuing delay between entry of Pet. Bail Mot., Dist. Case, dkt. 431 (Aug. 13, 2021) and the instant petition.

6.   Petitioner moves This Court when issuing the Writ to require therein that Case, dkt. 433 (Sept. 7, 2021), herewith provided as Exh. 3 hereto.

Judge Gorton comply with, *inter alia*, *El Fenix de P.R. v. The M/V Johanny*, 36 F.3d 136, 141 (1st Cir. 1994) ("The proper approach under [28 U.S.C.] subsection 455(e) requires the trial judge to place on the record all the facts relating to any alleged appearance of lack of impartiality and then leave entirely to the parties whether to waive disqualification under section 455(a)") and *American Textile Mfrs. Inst., Inc. v. Limited, Inc.*, 190 F.3d 729, 742 (6th Cir. 1999) ("[J]udges have an ethical duty to 'disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification,'" quoting *Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995)). *Contrast El Fenix de P.R., supra, American Textile Mfrs. Inst., Inc., supra*, and *Porter, supra*, to, *e.g.*, Order denying judicial disclosure, Dist. Case, dkt. 342 (Dec. 28, 2018), findings-less orders on disq. mots., Dist. Case, ECF Nos. 350—52 (Jan. 3, 2019), and findings-less ruling *ore tenus* on Disq. Mot., Trial Tr. Day VIII at 19, Aug. 1, 2018, Dist. Case, ECF No. 331.

THE ISSUES PRESENTED (FED. R. APP. P. 21(a)(2)(B)(ii))

7.   The primary issue hereby presented is whether Judge Gorton must promptly rule on Pet. Bail Mot.

8.   Necessarily, this petition raises whether, once a district judge leaves a bail motion pending for over 45 days, an appellate court may issue a writ of mandamus compelling the district judge to rule on said motion.

9.   The instant petition also raises whether, once a district court with a documented, continuing habit of omitting required findings in a given case also fails to dispose promptly of a pending bail motion, an appellate court may include in a writ of mandamus requirements for the district court to provide all relevant findings in order to preclude frustration of appellate review that would otherwise lead to further delays irreconcilable with due process, statutory and other promptness requirements, and judicial canons.

THE FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED (FED. R.
APP. P. 21(a)(2)(B)(iii))

10.  Petitioner filed Pet. Bail Mot. pursuant to the prison-mailbox rule
Friday, August 6, 2021. *See* Pet. Bail Mot. at 2, citing *Fallen v. United
States*, 378 U.S. 189 (1964) and *Houston v. Lack*, 487 U.S. 266 (1988).

11.  The district court entered Pet. Bail Mot. Friday, August 13, 2021. *See*
Dist. Case, docket report.

12.  Pet. Bail Mot. has sat for 45 days while the district court has entered
no ruling thereon. *Id.*

13.  "The [bail] motion shall be determined promptly." 18 U.S.C. § 3145(b).

14.  Petitioner is entitled to prompt bail determinations in the district
court. *Jones, supra.*

15.  "'[D]efendant may invoke due process to challenge delay both before and
after official accusation.'" Pet. Bail Memo. at 18 n.51, quoting, *inter alia*,
*Doggett v. United States*, 505 U.S. 647, 655 n.2 (1992). *See also* Pet. Bail
Memo. at 17, § X, *in toto*.

16.  "Scheduling preference must be given to criminal proceedings as far as
practicable." Fed. R. Crim. P. 50. *Contrast, e.g.,* one of Judge Gorton's
civil rulings in this same interval. Exh. 1 hereto.

17.  "A judge should dispose promptly of the business of the court." Code of
Conduct for United States Judges ("CCUSJ") Canon 3A(5).

18.  The district court repeatedly introduces unlawful delays in adjudicating
Petitioner's detention, sometimes waiting months. *See, e.g.,* Electronic
Notice of Rescheduling delaying Petitioner's initial appearance one week,
Dist. Case, ECF No. 8 (Mar. 15, 2016); Electronic Clerk's Notes, showing
three-week continuance of Petitioner's detention hearing, Dist. Case, ECF No.
13 (Apr. 6, 2016), i.e. triple the lawful limit allowed by 18 U.S.C. §
3142(f); and Electronic Clerk's Notes showing the court took Petitioner's

detention under advisement Apr. 27, 2016, Dist. Case, ECF No. 15, then delayed
91 days before entering an order of detention, Dist. Case, ECF No. 25 (July
27, 2016), despite, *e.g.*, 18 U.S.C. § 3161(h)(1)(H), (h)(7)(C) (STA limits
"under advisement" continuances to 30 days, bans court-congestion
continuances); *Jones*, *supra*; and CCUSJ Canon 3A(5), *supra*.

19.  In aggregate:

> It took 246 days from the date of Gottesfeld's arrest for Gottesfeld to be
> indicted. It took 50 days to bring Gottesfeld from the Southern District
> of Florida to the District of Massachusetts and 71 days from the time of
> his arrest for Gottesfeld to receive a detention hearing. By the time the
> detention order was issued on July 27, 2016, Gottesfeld had been in
> custody for 162 days.

Appellant's Redacted Brief (hereinafter "Red. Br.") at MS Word pg. 23, filed
as Pet. Bail Memo., Exh. M (available in Exh. 4 hereto and on the docket of
*United States v. Gottesfeld*, 18-1669 (1st Cir.) (July 31, 2020)).

20.  Petitioner has exhausted all other potential methods to secure prompt
dispositions of his district-court bail motions: a) he raised the issue, along
with related STA violations, in the court below and in his pending direct
appeal——*see, again,* Red. Br.; and b) he, through his wife and next friend
Mrs. Dana E. Gottesfeld, has repeatedly notified the acting chief district
judge for his district case pursuant to *Jones, supra,* at *8 ("[I]n any case of
apparently unwarranted delay in this District, a letter directed to the Chief
Judge will cause a prompt inquiry and elicit a response. . . . No such letter
will go unanswered"). *See* Letter from Mrs. Dana E. Gottesfeld to Acting Chief
District Judge Young re Pet. Bail Mot. (Sept. 2021), Exh. 2 hereto.

21.  "When factual issues are involved in deciding a motion, the court must
state its essential findings on the record." Fed. R. Crim. P. 12(d). *See also*
Fed. R. App. P. 9(a)(1) ("The district court must state in writing or orally
on the record, the reasons for an order regarding the release or detention of
a defendant in a criminal case").

22.  Judge Gorton is required to disclose "all the facts relating to any

alleged appearance of lack of impartiality." *El Fénix de P.R.*, *supra*. *See also American Textile Mfrs. Inst., Inc.*, *supra*; and *Porter*, *supra*.

23. This Court may issue the Writ to direct a district court to rule on a pending motion. *See, e.g.*, *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 4 (1st Cir. 2012) (noting "two writs of mandamus from this court to the district court directing it to rule on plaintiffs' motion").

THE REASONS WHY THE WRIT SHOULD ISSUE (FED. R. APP. P. 21(a)(2)(B)(iv))

24. Foremost Petitioner is indisputably entitled to the prompt ruling he hereby seeks on his district-court bail motion and the delay already passed is impermissible yet sure to increase absent the filing of this petition.

25. Forcing Petitioner to jump through more hoops—should such exist—would be both unproductive and further disregard his right to prompt bail findings.

26. Pet. Bail Mot. also raises concerns for the public's confidence in the judiciary. Pet. Bail Memo. at 12, § VI, citing, *inter alia*, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988). The public's confidence in the judiciary is best safeguarded at this point through rigorous oversight, *inter alia*, the issuance of the Writ and the adjudication of the disqualification issues inherent in Pet. Bail Mot.

CERTIFICATE OF COMPLIANCE

1. This petition complies with Fed. R. App. P. 21(d)(2) because this petition is eight (8) pages.

2. This petition complies with Fed. R. P. App. 21(d), 32(c)(2), 32(a)(4), (5), (6), because it is typed on 8½x11-inch paper, double-spaced, with one-inch margins in a monospaced font containing no more than 101/2 characters per inch, in a plain, roman style, with case names italicized.

by: _____                    Monday, September 27, 2021

Martin S. Gottesfeld, *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all parties to the proceedings in the trial court and provided to Judge Gorton through the district clerk's office.

by: _____

Martin S. Gottesfeld, *pro se*

Monday, September 27, 2021

Exhibit 1

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:21-cv-10679-NMG

🖼 Create an Alert for This Case on RECAP

Malzone v. Boston Buildings Service Employees Trust Fund et al    Date Filed: 04/23/2021
Assigned to: Judge Nathaniel M. Gorton    Jury Demand: None
Cause: 28:1132 E.R.I.S.A.    Nature of Suit: 791 Labor: E.R.I.S.A.
   Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 08/31/2021 | 10 | Assented to MOTION for Extension of Time to 10/04/2021 to File Answer re 1 Complaint, by SEIU Affiliates Officers and Employees Pension Plan.(Landry, Thomas) (Entered: 08/31/2021) |
| 09/01/2021 | 11 | Judge Nathaniel M. Gorton: ELECTRONIC ORDER entered granting 10 Assented-to Motion for Extension of Time to Answer re 1 Complaint, SEIU Affiliates Officers and Employees Pension Plan answer due 10/4/2021. (McDonagh, Christina) (Entered: 09/01/2021) |
| 09/16/2021 | 12 | MOTION for Leave to Appear Pro Hac Vice for admission of Lauren P. McDermott and Andrew K. Lin Filing fee: $ 200, receipt number 0101-8950941 by SEIU Affiliates Officers and Employees Pension Plan.(Landry, Thomas) Modified on 9/16/2021 to split up Exhibits as attachments (Warnock, Douglas). (Entered: 09/16/2021) |
| 09/16/2021 | 13 | Judge Nathaniel M. Gorton: ELECTRONIC ORDER entered ALLOWING 12 Motion for Leave to Appear Pro Hac Vice Added Lauren McDemott and Andrew Lin. **Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form.** (Warnock, Douglas) (Entered: 09/16/2021) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/04/2021 12:15:49 | | |
| **PACER Login:** | curiousgeorge589 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-10679-NMG Starting with document: 10 Ending with document: 13 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

🔳 Create an Alert for This Case on RECAP

ADR,CASREF

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:20-cv-10668-NMG

Minturn v. Monrad et al
Assigned to: Judge Nathaniel M. Gorton
Referred to: Magistrate Judge Marianne B. Bowler
Demand: $1,000,000
Cause: 29:1002 E.R.I.S.A.: Employee Retirement

Date Filed: 04/06/2020
Jury Demand: Plaintiff
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 08/16/2021 | 55 | Joint MOTION for Extension of Time to 09/30/2021 to allow Defendants to Oppose Plaintiff's Motion for Summary Judgment on Count IV *and to Extend Deadline to Complete Depositions to 10/20/2021* by Robert B Minturn.(Salvesen, Douglas) (Entered: 08/16/2021) |
| 08/16/2021 | 56 | Judge Nathaniel M. Gorton: ELECTRONIC ORDER entered granting 55 Motion for Extension of Time to allow Defendants to Oppose Plaintiff's Motion for Summary Judgment on Count IV and to Extend Deadline to Complete Depositions to 10/20/2021 (Lima, Christine) (Entered: 08/16/2021) |
| 08/16/2021 | 57 | Set/Reset Deadlines as to 52 MOTION for Summary Judgment *on Count IV (Breach of Contract).* Responses due by 9/30/2021 (Lima, Christine) (Entered: 08/16/2021) |
| 09/30/2021 | 58 | MEMORANDUM in Opposition re 52 MOTION for Summary Judgment *on Count IV (Breach of Contract)* filed by George P. Beal, Peter J Blampfield, Charles R. Daugherty, Bruce H Monrad, Ernest E. Monrad. (Wilkins, Elizabeth) (Entered: 09/30/2021) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/04/2021 13:19:44 | | |
| **PACER Login:** | curiousgeorge589 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-10668-NMG Starting with document: 55 Ending with document: 58 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

🆁 Create an Alert for This Case on RECAP

MOTREF,STAYED

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:18-cv-10534-NMG

| | |
|---|---|
| Certain London Market Company Reinsurers v. Lamorak Insurance Company | Date Filed: 03/20/2018 |
| | Jury Demand: Defendant |
| Assigned to: Judge Nathaniel M. Gorton | Nature of Suit: 110 Insurance |
| Case in other court: Suffolk Superior Court, 1884cv00826 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Declaratory Judgment | |

| Date Filed | # | Docket Text |
|---|---|---|
| 09/29/2021 | 193 | MOTION to Withdraw as Attorney by Lamorak Insurance Company.(French, William) (Entered: 09/29/2021) |
| 09/30/2021 | 194 | Judge Nathaniel M. Gorton: ELECTRONIC ORDER entered ALLOWING 193 Motion to Withdraw as Attorney. Attorney William K. French terminated (Warnock, Douglas) (Entered: 09/30/2021) |
| 09/30/2021 | 195 | STATUS REPORT by Lamorak Insurance Company. (Cunningham, Thomas) (Entered: 09/30/2021) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/04/2021 13:22:34 | | | |
| PACER Login: | curiousgeorge589 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:18-cv-10534-NMG Starting with document: 193 Ending with document: 195 |
| Billable Pages: | 1 | Cost: | 0.10 |

Exhibit 2

 Gmail

Dana Gottesfeld <danagottesfeld@gmail.com>

---

**Inquiry into bail delay as per U.S. v. Jones 1999**

---

**Dana Gottesfeld** <danagottesfeld@gmail.com>                                           Fri, May 25, 2018 at 2:57 PM
To: maryellen_molloy@mad.uscourts.gov
Cc: Ryan Grim <ryan.grim@theintercept.com>, Frank Camp <Fcamp@dailywire.com>, Alex Newman
<alexnewman_85@hotmail.com>, katelyn_coppola@mad.uscourts.gov

Hi Maryellen,

Can you please forward the below to Honorable Chief Judge Saris?


Honorable Judge Patti Saris:

My name is Dana Gottesfeld. As per the attached memorandum docketed by then-Chief Judge Young in the 1999 case of
U.S. v. Edwin Jones, I am formally inquiring for an investigation into a second undue bail delay regarding my husband's
case, 16-cr-10305-NMG. In particular, though his counsel field for a new bail hearing more than a month ago on April 20th,
that hearing was not scheduled to occur until June 4th and has now been subsequently delayed again another 9 days until
June 13th. All of this was after Magistrate Judge Marianne Bowler held my husband's detention "under advisement" for 92
days.

Thank you for your prompt attention to this matter as per Judge Young's memorandum,
Dana Gottesfeld

P.S. In his 2012 financial disclosure, Judge Gorton listed The Home for Little Wanderers, a 501(c)(3) which accepted
$50,000 from one of the alleged victims in my husband's case just 5 months before he was arrested.

---

📄 **United States v. Jones_ 1999 U.S. Dist. LEXIS 8080 (1).pdf**
58K

**A** Neutral
As of: March 29, 2018 12:56 PM Z

## *United States v. Jones*

United States District Court for the District of Massachusetts

May 26, 1999, Decided

CRIMINAL ACTION No. 98-10169-WGY

**Reporter**
1999 U.S. Dist. LEXIS 8080 *

UNITED STATES v. EDWIN JONES

**Subsequent History:** Motion denied by *United States v. Jones, 2008 U.S. Dist. LEXIS 53870 (D. Mass., July 16, 2008)*

## Core Terms

detention, withdrawal, appearance, notice, prompt, detained

## Case Summary

### Procedural Posture

Criminal defendant, who was detained for almost a year while his requests for a bail hearing were ignored by the United States District Court for the District of Massachusetts, sought release from confinement upon some combination of conditions.

### Overview

Criminal defendant was arrested and a magistrate judge ordered him detained. Defendant four times requested in writing that a district judge review the detention order. A bail review hearing was finally held almost a year after defendant was first detained. Defendant contended that, because the court failed to give him the prompt process that Congress expressly mandated, he was entitled to release from confinement upon some combination of conditions. The court rejected defendant's challenge and denied his motion because defendant continued to be both a risk of flight and a danger to the community. However, the court set up new procedures to ensure prompt review of such orders in the future.

### Outcome

The court rejected defendant's challenge and denied his motion. The court held that, upon the totality of the record, it was readily apparent that defendant continued to be both a risk of flight and a danger to the community.

The court set forth new, internal court procedures for ensuring prompt review of detention orders.

## LexisNexis® Headnotes

Civil Procedure > Judgments > Relief From Judgments > Altering & Amending Judgments

Criminal Law & Procedure > Preliminary Proceedings > Bail > Delays in Granting of Bail

Criminal Law & Procedure > Preliminary Proceedings > Detainer > General Overview

### *HN1*[ ] **Relief From Judgments, Altering & Amending Judgments**

A person ordered detained by a magistrate may file with the court a motion for revocation or amendment of the detention order. The motion shall be determined promptly. *18 U.S.C.S. § 3145(b)*.

Criminal Law & Procedure > Counsel > Substitution & Withdrawal

### *HN2*[ ] **Counsel, Substitution & Withdrawal**

Pursuant to Local Rule 83.5.2(c) ( Mass.), an attorney may withdraw from a case by serving notice of his withdrawal on his client and all other parties and filing the notice, provided that (1) such notice is preceded or accompanied by notice of the appearance of other counsel; (2) there are no motions pending before the court; (3) no trial date has been set; and (4) no hearings or conferences are scheduled, and no reports, oral or written, are due. Unless these conditions are met, an

attorney (including one whose services have been terminated by his client) may withdraw from a case only by leave of court.

Criminal Law & Procedure > Counsel > Right to Self-Representation

HN3[⬇] Counsel, Right to Self-Representation

With the appearance of counsel on the docket, a defendant's individual letters are without standing, inasmuch as the court may properly require an individual represented by counsel to address the court only through counsel.

**Counsel: [*1]** For EDWIN JONES, Defendant: Jonathan Shapiro, Stern, Shapiro, Weissberg & Garin, Boston, MA.

**Judges:** WILLIAM G. YOUNG, CHIEF JUDGE.

**Opinion by:** WILLIAM G. YOUNG

# Opinion

MEMORANDUM

YOUNG, C.J.

May 26, 1999

HN1[⬆] [A] person . . . ordered detained by a magistrate . . . may file with the court . . . a motion for revocation or amendment of the [detention] order. **The motion shall be determined promptly.**

18 U.S.C. § 3145(b) (emphasis added).

Edwin Jones ("Jones") was arrested on May 29, 1998. Magistrate Judge Bowler ordered Jones detained on June 17, 1998. During the months that followed, Jones four times requested in writing that a district judge review the detention order. A bail review hearing was finally held on April 20, 1999, and determined on May 6, 1999. It is thus crystal clear that Jones never received the "prompt" hearing to which he was entitled. Instead, he languished in custody for nearly a year before a district judge ever considered his detention status. This memorandum considers this serious matter, explains the particular resolution in Jones' case, and suggests

institutional changes that may prevent a repetition.

**What happened?**

Edwin Jones is facing [*2] serious drug charges. Following his arrest, he was arraigned before the magistrate judge who ordered him detained on June 17, 1998 and supported such order with a detailed and comprehensive memorandum on September 3, 1998. Jones' first lawyer moved for review of detention on September 10, 1998, but then abruptly filed a notice of withdrawal on September 28, 1998. Thereafter, Jones himself wrote repeatedly to the court requesting a review of the detention order. See Letters of October 14, 1998, February 4, 1999, and February 11, 1999. It was not until successor counsel was appointed, however, that a hearing was finally scheduled and held. An order confirming the detention order of the magistrate judge finally entered five months and twenty-four days after Jones' initial request for such review.

**How could this happen?**

The unacceptable treatment of Mr. Jones appears to have resulted from the compounding of three errors. First, Jones' original counsel simply dropped out of the case without permission of the Court as required by our Local Rules. Second, the Court's internal computer-generated tracking systems focus unduly on "motions" to the exclusion of other types of documents [*3] in the Court's records. Third, the one motion for review of detention filed by Jones' counsel was, inexplicably, not acted upon.

Consider first the conduct of counsel. HN2[⬆] Pursuant to Local Rule 83.5.2(c) **Withdrawal of Appearance:**

An attorney may withdraw from a case by serving notice of his withdrawal on his client and all other parties and filing the notice, provided that (1) such notice is preceded or accompanied by notice of the appearance of other counsel; (2) there are no motions pending before the court; (3) no trial date has been set; and (4) no hearings or conferences are scheduled, and no reports, oral or written, are due. Unless these conditions are met, an attorney (including one whose services have been terminated by his client) may withdraw from a case only by leave of court.

Here, original counsel improperly failed to seek leave of the court to withdraw. Instead, counsel simply filed a notice of withdrawal without any successor counsel

having filed an appearance, thus leaving his client in the lurch. True, the notice of withdrawal was duly docketed, but there was no occasion (nor need there have been) to bring the matter to the attention of the presiding [*4] judge.

There the matter rested until October 14, 1998, on which date Jones wrote his first letter requesting a bail review hearing. That letter was promptly and properly docketed as a "letter (non-motion)," as were Jones' succeeding missives. Timely and accurate as was the court's docket, it failed to elicit any action. Nor is this surprising, since all our internal tickler systems are geared to the prompt disposition of "motions," those documents which expressly seek court action. Indeed, even had any of Jones' letters been brought to the court's attention -- and there is no indication that any of them were -- there is no certainly that the court would have acted even then. This is because the court had every right to consider that, _HN3_[⬆] with the appearance of counsel on the docket, Jones' individual letters were without standing inasmuch as the court may properly require an individual represented by counsel to address the court only through counsel. _See_ Local Rule 83.5.2(b) (detailing the requirements for a _pro se_ appearance).

Finally, there is the matter of Jones' motion for review of detention duly filed on September 10, 1998. There appears no excuse other than the press of [*5] other important court business for not timely addressing this motion.

**What to do?**

Jones argues that because this court has failed to give him the prompt process that the Congress has expressly mandated, he is now entitled to release from confinement upon some combination of conditions. _See_ _United States v. Fernandez-Alfonso, 813 F.2d 1571, 1574 (9th Cir. 1987)_ (holding that conditional release is the appropriate remedy for a violation of the promptness requirement). This Court rejects that notion. First, the Ninth Circuit has explicitly limited the holding of Fernandez-Alfonso to situations in which flight risk, rather than danger to the community, caused the detention in the first instance. _See_ _United States v. Gonzales, 852 F.2d 1214, 1215 (9th Cir. 1988)_ (refusing to release defendant who was a danger to the community notwithstanding a violation of the promptness requirement). Second, the First Circuit has held that "neither the timing requirements nor any other

part of the act can be read to require, or even suggest, that a timing error must result in release of a person who should otherwise be detained." _United States v. Pasciuti, 958 F.2d 361, [*6] 1992 WL 51482,_ at *3 (1st Cir. 1992) (table) (rejecting "defendant's contention that release is the automatically mandated remedy for any violation of _§ 3145 [b]_'s prompt review directive.").

Upon the totality of the record here, it is readily apparent that Jones continues to be both a risk of flight **and** a danger to the community. It is upon this analysis that the Court rejected Jones' challenge and denied his motion. _See Gonzales, 852 F.2d at 1215_ ("We decline to extend Fernandez-Alfonso to a case involving a finding of danger to the community.").

The fact that Jones' challenge is futile in light of the public interest considerations, however, does not relieve this court of its duty to perform a searching review of its procedures to insure that this impermissible delay will not again occur.

Among the necessary steps are at least the following:

1. A revision of internal procedures to insure that each individual detained by court order is provided a timely memorandum detailing the grounds for detention, and subsequently tracking such individuals to assure that, if review is sought, it is promptly granted. How to accomplish such a revision will, of course, [*7] necessitate the best ideas of our courtroom deputies, docket clerks, and systems staff, as well as our pre-trial services officers.

2. Training docket clerks to recognize the importance of **all** motions **and** letters pertaining to the detention status of individuals within the court's jurisdiction and also promptly to bring such issues to the attention of the judges and courtroom deputies. [1] As the issue of continued detention without bail review appears endemic throughout the federal court system, this training can best be accomplished in-house. One imagines there may be an important role here to be served by our pre-trial service officers.

[*8] 3. Finally, it is appropriate to remember a proud

---

[1] We are fortunate in this District to have organized ourselves such that each judge is supported by an individual docket clerk. As these most important members of the court's staff are the ones who actually see and docket every document in the court's possession, any system designed effectively to flag and empower such documents would seem to begin with them.

tradition of this court firmly established by my predecessors. It is this: in any case of apparently unwarranted delay in this District, a letter directed to the Chief Judge will cause a prompt inquiry and elicit a response. <u>See, e.g.</u>, Remarks of Chief Judge Joseph L. Tauro during this court's educational forum, <u>Federal Court Judicial Forum '97</u> (MCLE, Oct. 16, 1997). While Jones can hardly be faulted for unfamiliarity with this practice, it is important that the bar be advised of its existence. No such letter will go unanswered.

WILLIAM G. YOUNG

CHIEF JUDGE

**End of Document**



Dana Gottesfeld <danagottesfeld@gmail.com>

**(no subject)**

**William_Young@mad.uscourts.gov <William_Young@mad.uscourts.gov>**          Fri, Jun 15, 2018 at 12:53 PM
To: danagottesfeld@gmail.com

**Dana Gottesfeld 6-15-2018.pdf**
30K

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

**BOSTON, 02210**

**WILLIAM G. YOUNG**
**DISTRICT JUDGE**

June 15, 2018

Ms. Dana Gottesfeld
danagottesfeld@gmail.com

Re: <u>United States</u> v. <u>Gottesfeld</u> 1:16CR10305-NMG

Dear Ms. Gottesfeld,

Chief Judge Saris has referred your inquiry of May 25, 2018 to me as the senior active District Judge.

I have thoroughly reviewed the docket in this case and I see that it is coming on for trial next month. The matters you raise are properly addressed by way of a motion filed by counsel before the presiding judge.

As you are aware, since you are a non-party to this action you cannot yourself submit documents in this case. See order of December 21, 2017 (Gorton, J.).

By copy of this letter, I shall inform Judge Gorton of your inquiry.

Sincerely,

William G. Young
United States District Judge

WGY/ees
Attachments
cc: Hon. Nathaniel M. Gorton

 Gmail

**Dana Gottesfeld <danagottesfeld@gmail.com>**

---

## (no subject)

**Dana Gottesfeld <danagottesfeld@gmail.com>**                    Tue, Jun 19, 2018 at 11:00 AM
To: William_Young@mad.uscourts.gov

Dear Honorable Senior Active Judge Young,

Thank you for answering my inquiry from May 25th below.

Today is the 60th day since my husband filed for a detention finding from The Honorable U.S. District Court Judge Nathaniel M. Gorton. As I stated previously, it took 54 days after my husband's initial filing on April 20th of this year for a detention hearing to be held last Wednesday, June 13th.

Though an order was promptly issued, The Honorable Judge Gorton is yet to place any findings on the record and without such findings my husband is still just as unable to appeal his detention to the First Circuit Court of Appeals as he was prior to the proceeding. Further, it is our understanding that my husband had a right to prompt findings following his April 20th motion. I have diligently tracked The Honorable Judge Gorton's public schedule and there appears to have been ample opportunity for a detention hearing to have been held earlier. Also, my husband's attorney diligently emailed The Honorable Judge Gorton's clerk to schedule a prompt hearing to no avail.

And again, today is day 60 and we still have no findings on the record.

So, I must respectfully ask, even if such findings were to be issued today, is the above considered an acceptable practice in Boston U.S. District Court? Also, what about the 92 days during which my husband's detention was held under advisement by The Honorable Magistrate Judge Marianne B. Bowler? Is that considered an acceptable practice?

Generally, we are unaware of any motion which my husband's attorney could now file which would address these matters going forward for other defendants who may encounter similar delays. My husband and I were heartened to read Your Honor's memorandum in *U.S. v Edwin Jones* (please see first attachment). We agree with Your Honor's assessment that the delays in that case were unacceptable and that action in the form of a thorough investigation in to how they were allowed to occur as well as subsequent mitigation were merited.

However, we are very disheartened that such problems still appear to persist 19 years later. So, we are asking for a thorough investigation once again.

To aid in any such efforts, we can tell Your Honor that The Honorable Magistrate Judge Marianne B. Bowler went on vacation after she had already held my husband's detention under advisement for approximately one month, or so we are told. I also respectfully request that Your Honor see the second attachment, which comes from exhibit 14 of 16-CR-10305 D.E. 167 and is dated July 20, 2016. At that point, my husband's detention had been under advisement for 84 days and the government remarked, "... still no decision from [The Honorable Magistrate Judge Marianne B.] Bowler (we have spoken to [Her] [Honor's] clerk on this, but to no avail)."

Insofar as they may be relevant to the apparent decisions of both The Honorable Magistrate Judge Marianne B. Bowler as well as The Honorable Judge Nathaniel M. Gorton to wait as long as they have to issue detention findings in my husband's case while both attended to other matters which bore no statutory nor Constitutional requirements for promptness, I humbly request that Your Honor see the remainder of the attachments hereto.

Please let us know if we may be of any further service illuminating this matter and please let us know if/how Your Honor intends to proceed. It is our sincere hope that Your Honor will help ensure that this stops happening to defendants in Boston and that going forward every defendant's rights will be vigorously upheld.

Sincerely,
Dana Gottesfeld


On Fri, Jun 15, 2018 at 12:53 PM, <William_Young@mad.uscourts.gov> wrote:

**10 attachments**

United States v. Jones_ 1999 U.S. Dist. LEXIS 8080 (1).pdf
58K

D.E. 167, exhibit 14.pdf
53K

Think Russia Is Bad_ Listen To This Imprisoned Human Rights Activist... _ HuffPost.pdf
200K

366774173-Save-A-Girl-s-Life-Get-Treated-Worse-Than-A-Terrorist (1).pdf
273K

Fate of Accused Hospital Hacker in the Hands of Judge With Personal Ties to Hospital.pdf
484K

More Judicial Conflicts of Interest in the Case of Justina Pelletier's Guardian Hacktivist.pdf
516K

Home for Little Wanderers 2003 Annual Report (begin working with BCH).pdf
53K

The Home for Little Wanderers awarded $50,000 from BCH.pdf
6232K

Nathaniel_M_Gorton-2012, Financial Disclosure.pdf
262K

2005 Home For Little Wanderers Annual Report.pdf
29K

 Gmail

**Dana Gottesfeld <danagottesfeld@gmail.com>**

## As per U.S. v. Edwin Jones

**Dana Gottesfeld** <danagottesfeld@gmail.com>
To: dennis_Saylor@mad.uscourts.gov

Tue, Sep 28, 2021 at 8:00 AM

Dana Gottesfeld on behalf of Martin Gottesfeld, Reg No.12982-104
FCI Terre Haute
Federal Correctional
Institution
P.O. Box 33
Terre Haute, IN 47808

September 28, 2021

Chief Judge F. Dennis Saylor IV
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston MA 02210

RE: U.S. v. Gottesfeld,16-cr-10305-NMG (D. Mass.)

Dear Chief Judge Saylor:

I realize you have recused from the above-noted case; however, the procedure in United States v. Jones (discussed below) is to contact the Chief Judge. I trust that you will refer this inquiry to one of your colleagues if appropriate.

I am the wife of Martin Gottesfeld and hold power of attorney for him. I am writing you respectfully to request that you discuss with the assigned District Judge in Case No. 16-CR-10305 that Martin Gottesfeld's Motion for Bail Pending Appeal has been pending for 47 days.

My husband, despite having a good argument for release pending his appeal, is languishing in prison, so far unable to obtain judicial consideration of his motion.

United States v. Jones, 1999 U.S. Dist. LEXIS 8080, No. 98-cr-10169-WGY, at *8 (D. Mass. May 26, 1999) states, "[I]t is appropriate to remember a proud tradition of this court firmly established by my predecessors. It is this: in any case of apparently unwarranted delay in this District, a letter directed to the Chief Judge will cause a prompt inquiry and elicit a response. . . . No such letter will go unanswered."

Federal Rule of Criminal Procedure 50 Prompt Disposition states, "Scheduling preference must be given to criminal proceedings as far as practicable." And 18 U.S.C. sec. 3145(a) of the Bail Reform Act states, "The motion shall be determined promptly."

It is my hope that Your Honor will receive this message with the spirit in which it was intended and we see this motion addressed soon to move it out of limbo and freeing the court to work on other important matters.

Respectfully,
s/ Dana Gottesfeld on behalf of Marty Gottesfeld

**Letter to Chief Judge Saylor.docx**
14K

Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2021 SEP -7 PM 1:00

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA,    )
v.    )    No. 16-cr-10305-NMG
MARTIN GOTTESFELD, pro se,    )
Defendant.    )

## MOTION TO UNSEAL EXHIBITS TO BAIL-PENDING-APPEAL MEMO

MARTIN GOTTESFELD, Defendant, pro se, hereby moves This Honorable Court

to unseal the following documents that it sealed sua sponte with neither

findings nor an opportunity to object, or, in the alternative, to enter

particularized findings viewable by the public justifying their continued

unavailability:

1) exhs. A-M to Defendant's recent Memorandum in Support of Expedited

Release (hereinafter "Memo. Exhs. A-M"), dkt. 441-1 through 441-6;

2) Defendant's letter re previous appointed counsel Ray Gillespie's

undisclosed conflict of interest, i.e. U.S. tax debts, dkt. 140; and

3) other documents currently under seal in the instant case for which

particularized findings are not yet entered.

Defendant notes his objections to the sealing of the above-enumerated

documents and moves for a hearing on this motion.

"It is axiomatic that protection of the right of access suggests that the

public be informed of attempted incursions on that right. Providing the

public with notice ensures that the concerns of those affected by a closure

decision are fully considered." United States v. Kravetz, 706 F.3d 47, 59

(1st Cir. 2013) (citing In re Hearst Newspapers, 641 F.3d 168, 182 (11th Cir.

2011) (noting that the courts of appeals have uniformly required that notice

and an opportunity to be heard be given prior to the sealing of documents to

which a right of access attaches) (collecting cases)).  In the cases of the
supporting exhibits and dkt. 140, neither notice nor opportunity were
provided.

   "'[S]afeguards that will protect the [access] right of the public,
without unduly interfering with the workings of the judicial process,' include
a docket entry that a motion to seal has been filed." *Kravitz, supra*, at 59–
60 (quoting *Washington Post v. Robinson*, 935 F.2d 282, 289 (D.C. Cir. 1991)
(alterations in original) and citing, *generally*, *Hartford Courant Co. v.
Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004) ("[D]ocket sheets provide a kind of
index to judicial proceedings and documents, and endow the public and press
with the capacity to exercise their [access] rights . . . .")).  This Court
*sua sponte*, sealed the relevant documents; no such docket entries were made
because no such motions to seal were filed.  Even trained legal practitioners
reviewing the instant docket report could only discover that these particular
documents are sealed by incurring the requesite PACER fees to click each of
the case's 400-plus docket entries manually one by one.

   "Appellate courts have on several occasions emphasized that upon entering
orders which inhibit the flow of information between courts and the public,
district courts should articulate on the record their reasons for doing so."
*Kravetz* at 60 (quoting *In re Associated Press*, 162 F.3d 503, 510 (7th Cir.
1998)).  "Those reasons must be specific enough to permit a reviewing court to
determine whether sealing was appropriate." *Id.* (citing *Press-Enter. Co. v.
Superior Courts*, 464 U.S. 501, 510 (1984)).  A "district court's one sentence
justification for the continued sealing" of "several documents" unequivocally
"falls short." *Id.*  In contrast, not even a one-sentence justification for the
continued sealing of the relevant records has been entered in the instant
case.  *See also* Fed. R. Crim. P. 12(d) (when deciding issues of fact, The
Court must enter findings).

Even where third parties may have confidentiality interests, "where the public's right of access competes with privacy rights, 'it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document.'" *Kravetz, supra,* at 62—63 (quoting *United States v. Amodeo,* 44 F.3d 141, 147 (2d Cir. 1995) and citing *In re Providence Journal,* 293 F.3d 1, 15 (1st Cir. 2002) (holding, in context of documents to which First Amendment right of access attaches, that "[r]edaction constitutes a time-tested means of minimizing any intrusion on that right")).

For nearly every relevant document in the instant case, however, no such competing interests exist. *See infra.*

The first relevant document is Declaration of Martin S. Gottesfeld (Aug. 6, 2021), Memo. Exh. A. This seven-(7)-page, fifty-seven-(57)-paragraph declaration details 1) non-random designations of magistrate judges to other cases involving alleged instant victim Boston Children's Hospital ("BCH") and 2) magistrate-shopping by prosecutors, including in the instant case, under a system that This Court apparently designed in order to allow them to do so. Defendant asserts that no valid justification exists to seal this document. He objects on two independent bases to its sealing: 1) the public has a right of access to this document and 2) he has a right under U.S. Const. amend. VI to a public trial, which includes the right to a public fully informed of the anomolies relevant to the magistrate-judge designation of this case.

Further, this first document contains nothing giving rise to a privacy interest.

"'Every court considering attempts to manipulate the random assignment of judges has considered it to constitute a disruption of the orderly administration of justice.'" Memo. Exh. A, ¶ 2, quoting *DataTern, Inc. v. MicroStrategy Inc.,* 2018 U.S. Dist. LEXIS 94321, No. 11-cv-11970-FDS (D. Mass.

June 5, 2018) at *62. The public has an interest in "the prompt, fair and ethical administration of justice." *United States v. Panzardi Alvarez*, 816 F.2d 813, 817 (1st Cir. 1987). The public therefore has an interest in the mathematical analysis contained in Memo. Exh. A showing such a "disruption."

Complementing the public's interest, Defendant has a right to a public trial; "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *In re Oliver*, 333 U.S. 257, 270 (1948).

Here, Defendant has made substantial allegations of judicial and prosecutorial misconduct directly affecting this case. This Court's answer was, *sua sponte*, to seal these allegations from the forum of public opinion. The Constitution does not allow This Court to do so. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Oliver, supra*, at 270 n.25 (quoting 1 Cooley, Constitutional Limitations 8th ed. (1927) at 647).

"Indeed, the public interest demands that prosecutors be held to the highest standards of conduct." *Ramos Colon v. United States Attorney*, 576 F.2d 1, 3 (1st Cir. 1978). "Under our system of government, the primary check against prosecutorial abuse is a political one... [W]hen crimes are not investigated and prosecuted fairly, nonselectively, with a reasonable sense of proportion, the President pays the cost in political damage to his administration." *Morrison v. Olson*, 487 U.S. 654, 728 (1988) (Scalia, J., dissenting on other grounds).

The analysis in Memo. Exh. A must be made public in order to vindicate Defendant's and the public's interests in the orderly administration of justice.

The next relevant document is Marianne B. Bowler, *Curriculum Vitae* ("Bowler CV"), Memo. Exh. B. Magistrate Judge Bowler makes this document available publicly on the Internet. No justification exists to seal it on the instant docket.

The same is true for *Marc Alan Pfeffer, M.D., Ph.D.,* Harvard Catalyst Profiles, Memo. Exh. C., which Harvard publishes for free for anyone to see.

The next relevant documents, Gorton, Nathaniel M., financial disclosure reports, 2003—16 ("Gorton Discls."), Memo. Exh. D, are also publicly available on the Internet, and, moreover, federal law mandates their accessibility: The Ethics in Government Act of 1978, 5 U.S.C. App. § 105 Custody of and public access to reports. No justification exists to seal these on the instant docket. Excerpts of these same reports previously filed appear elsewhere on the docket, having never been sealed, *e.g.*, dkt. 346-1 at 11—33.

The next relevant document, [Proposed ]Order of Release, Memo. Exh. E, is a vital part of the bail-pending-appeal ("BPA") motion. It details the specific release conditions that Defendant proposed. So long as it remains sealed the public cannot know which particular conditions that This Court is considering, and, therefore, the public is prevented from knowing the actual controversy re reasonable assurances of Defendant's appearance and public safety. No justification exists to seal this document; doing so obfuscates the judicial process.

The next relevant document, Declaration of Martin S. Gottesfeld (Aug. 4, 2021), Memo. Exh. F, directly addresses the government's assertions that Defendant is a flight risk and a danger to the community. It rebuts the incomplete and inaccurate information that the government presented to This Court and informs This Court for the first time of the relevant circumstances of Defendant's political-asylum claim in Cuba. Defendant asserts that

redactions to this document are unnecessary, but that, in any case,
provisional redactions could be made and later argued while, forthwith, the
majority of the document should be available to the public. This document
also addresses judicial conflicts of interest, political impotence or outright
corruption, and prosecutorial abuse. *See, again, Oliver, Ramos Colon,
Morrison, supra.*

The next relevant documents are affidavits and a letter, all re
Defendant's proposed conditions of release:

• Affidavit of Mr. Benjamin Brown, offering twenty thousand dollars
($20,000) cash towards Defendant's bail and asserting under penalty of
perjury; "I know Mr. Gottesfeld very well and, in my experience, he has always
proven to be an upstanding and reliable individual. I have no doubt that he
will abide by any release conditions imposed by this Court," Memo. Exh. G;

• Affidavit of Mr. Gregory Brown, also offering twenty thousand dollars
($20,000) cash towards Defendant's bail and asserting under penalty of
perjury: "I know Mr. Gottesfeld very well and, in my experience, he has always
proven to be an upstanding and reliable individual. I have no doubt that he
will abide by any release conditions imposed by this Court," Memo. Exh. H;

• Declaration of Mr. Ryan Grim, "co-founder of publishing house Strong
Arm Press" and "Washington, DC Bureau Chief for The Intercept," offering
Defendant "a position as a web developer for Strong Arm Press" and asserting:
"I have known Martin Gottesfeld since 2016. In my interactions with him, Mr.
Gottesfeld has always proven to be a responsible and truthful person," Memo.
Exh. I;

• Declaration of Mrs. Gloria Gottesfeld, offering one thousand dollars
($1,000) cash towards Defendant's bail and asserting that Defendant "has
always been kind, trustworthy and honest," Memo. Exh. J;

• Affidavit of Mr. Damian Musello, property manager of Defendant's

apartment, offering to check-in on Defendant "on a daily basis," and: "If I
find that Mr. Gottesfeld is not present in [his] apartment, I will immediately
report that fact to probation," Memo. Exh. K; and

• Affidavit of Ms. Barbara Greene, also offering to "check-in" on
Defendant "on a daily basis, or whatever other frequency that the Court may
Order" and notify probation should Defendant be "not present in [his]
apartment," Memo. Exh. L.

No compelling reason exists to seal Memo. Exhs. G—L.

The next relevant document is Defendant's redacted opening appellate
brief, Memo. Exh. M, the first part of which was sealed. The version filed
by Defendant is already redacted and appears identically on the public docket
of case no. 18-1669 (1st Cir.). Sealing and further redaction of this
document are unnecessary.

The next relevant document is Defendant's letter to This Court re
Attorney Raymond Gillespie's concurrent federal-tax debt, lack of malpractice
insurance, and past representation of Defendant under the Criminal Justice Act
("CJA"). The public should know that its funds are used to pay uninsured
attorneys to represent criminal defendants despite those attorneys' otherwise-
undisclosed and concurrent conflicts of interest, e.g., delinquent tax debts.
Cf. *United States v. Scalise*, 2015 U.S. Dist. LEXIS 58648, Cr. No. 1:07-cr-
00052 Erie (W.D. Pa. May 5, 2015) (criminal-defense attorney's $100,000 tax
debt warranted evidentiary hearing as to his conflict of interest in
representing a defendant against the same U.S. attorney's office that had
discretion to indict the attorney). Whatever privacy interest(s) Attorney
Gillespie may have in the contents of Defendant's letter, dkt. 140, are
outweighed by, e.g., L.R., D. Mass. 83.6.11(a) ("All matters before the court
concerning alleged attorney misconduct and discipline are presumptively
public") and Mass. R. Prof. C. 1.7 (failure to disclose a conflict of interest

is attorney misconduct).

Last, Defendant is aware, generally, of other sealed case documents, but he knows not their docket-entry numbers, e.g., ex parte motions for funds for expert witnesses and orders thereon. He moves to unseal these as well, or, in the alternative, for This Court to enter particularized findings available to the public justifying their continued unavailability.

Defendant reiterates his request for a hearing on this motion.

Respectfully filed under the prison-mailbox rule, Fallen v. United States, 378 U.S. 139 (1964); Houston v. Lack, 487 U.S. 266 (1988), in an envelope bearing sufficient affixed pre-paid First Class U.S. postage and track. no. 9114 9022 0078 9497 2469 16, handed to Ms. ~~Jamie Wheeler~~ Rebekka Erule MSG 2021-08-27 of the FCI Terre Haute CMU unit team in her official capacity as an agent of The United States and of its counsel Thursday, August 26, 2021, or the first opportunity thereafter,

by: _____
    Martin S. Gottesfeld, Defendant, pro se
    Reg. no. 12982-104
    Federal Correctional Institution
    P.O. Box 33
    Terre Haute, IN 47808

### CERTIFICATE OF SERVICE

I, Martin S. Gottesfeld, pro se, certify that I mailed a copy of the foregoing document to David J. D'Addio, counsel for The United States in the above-captioned case Thursday, August 26, 2021, or the first opportunity thereafter, and that I separately affected service in-hand via 28 C.F.R. § 540.203(a), (c)(1), and (c)(3),

by: _____
    Martin S. Gottesfeld, Defendant

- PAGE 8 OF 8 -

Exhibit 4

UNITED STATES DISTRICT COURT FILED
DISTRICT OF MASSACHUSETTS CLERKS OFFICE

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2021 AUG 13 PM 12: 56 |
| v. | No. 16-cr-10305-NMG |
| MARTIN GOTTESFELD, *pro se*, | U.S. DISTRICT COURT |
| Defendant. | DISTRICT OF MASS. |

## EXPEDITED MOTION FOR RELEASE PENDING APPEAL

MARTIN GOTTESFELD, Defendant, *pro se*, hereby moves The Honorable Court for release pending appeal: *United States v. Gottesfeld*, 18-1669, 19-1042, 19-1043, 19-1107 (1st Cir.).

Defendant's imprisonment is plainly unjust; he is entitled to release under, *inter alia*, the Due Process and Excessive Bail clauses (U.S. Const. amends. V, VIII) and 18 U.S.C. § 3143(b). *See* accompanying Memorandum in Support of Expedited Release Pending Appeal ("Supp. Memo.").

Pursuant to The Due Process Clause and 28 U.S.C. § 455(a), (b)(1), (b)(4), (b)(5)(iii), Defendant hereby renews his motion to disqualify The Honorable Judge Nathaniel M. Gorton.[1,2] *See* Supp. Memo.

Also pursuant to The Due Process Clause and 28 U.S.C. § 455(a), (b)(1), (b)(4), (b)(5)(iii), (b)(5)(iv), Defendant hereby renews his motion to disqualify The Honorable Magistrate Judge Marianne B. Bowler.[3] *See* Supp. Memo.

Third, Defendant moves to vacate Det. Ord., dkt. 25 (July 27, 2016) and for a detention hearing before a neutral and detached judicial officer. *See* Supp. Memo.

Respectfully filed under the prison-mailbox rule, *Fallen v. United States*, 378 U.S. 139

---

[1] Raised in sealed exhs. to Withd. Mot., *presumably* dkt. 214-1 *et seq.* (June 28, 2018); Hrg. Tr. 7:21, 9:24, July 6, 2018, dkt. 435 (docket report misdated "July 9, 2013"); Trial Tr. VIII at 19, Aug. 1, 2018, dkt. 331; disq. mots., dkts. 344-47 incl. dkts. 346-1 *et seq.* (Dec. 31, 2018).

[2] Defendant declines any construal hereof that divests The First Circuit of jurisdiction. *Cf. Castro v. United States*, 540 U.S. 375, 382 (2003) (court must warn and allow *pro se* party to amend filing before recharacterization that may make it much harder to obtain relief); *United States v. Berkon*, 502 F. Supp. 25 (D.P.R. 1980) (recusal heard as appeal pended). Defendant limits this renewal to the bail issue at bar, consistent with his request for limited remand for disq. findings; *see* Red. Appel. Br. at MS-Word pg. nos. 60–62, *filed as* Supp. Memo., Exh. 6 / M.

[3] Raised in Withd. Mot. at 3, dkt. 90 (Oct. 23, 2017); Hrg. Tr. at 19, May 3, 2018, dkt. 434; suppl. suppr. mots., dkts. 128 (Mar. 20, 2018); 166 (May 4, 2018); DQ. Aff. ¶¶ 103–29, dkt. 346.

(1964); *Houston v. Lack*, 487 U.S. 266 (1988), in an envelope bearing sufficient affixed pre-paid U.S. Priority Mail postage and track. no. 9114 9022 0078 9497 2467 94, handed to Ms. Jamie Wheeler of the FCI Terre Haute CMU unit team in her official capacity as an agent of The United States and of its counsel Friday, August 6 , 2021, or the first opportunity thereafter,

by: _____

    Martin S. Gottesfeld, Defendant, *pro se*
    Reg. no. 12982-104
    Federal Correctional Institution
    P.O. Box 33
    Terre Haute, IN 47808

## CERTIFICATE OF SERVICE

I, Martin S. Gottesfeld, *pro se*, certify that I mailed a copy of the foregoing document to David J. D'Addio, counsel for The United States in the above-captioned case, in an envelope bearing sufficient affixed pre-paid First Class U.S. postage and track. no. 9114 9023 0722 4792 9869 35, handed to Ms. Jamie Wheeler of the FCI Terre Haute CMU unit team in her official capacity as an agent of The United States and of its counsel Friday, August 6 , 2021, or the first opportunity thereafter, and that separately I affected service in-hand via 28 C.F.R. § 540.203(a), (c)(1), (c)(3),

by: _____

    Martin S. Gottesfeld, Defendant

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>v.<br>MARTIN GOTTESFELD, *pro se*,<br>Defendant. | No. 16-cr-10305-NMG |

## MEMORANDUM IN SUPPORT OF EXPEDITED RELEASE PENDING APPEAL

### I. THE RENEWED DISQUALIFICATION MOTIONS ARE RELEVANT AND TIMELY.

Defendant "is entitled to a neutral and detached judge in the first instance." *Ward v. Village of Monroeville*, 409 U.S. 57, 61-62 (1972). *See also* DQ. Aff. ¶ 41, dkt. 346 (Dec. 31, 2018) (quoting same). This constitutional guarantee applies to the instant bail proceeding:

> Every procedure which would offer a *possible* temptation to the average man as a judge to forget the burden of proof required to convict the defendant, *or which might* lead him not to hold the balance nice, clear and true between the State and the accused denies the latter due process of law.

*Tumey v. Ohio*.[1] A judge hearing bail must "hold the balance nice, clear and true" between "the burden of proof required to convict the defendant," *id.*, and "the weight of the evidence against the person," 18 U.S.C. § 3142(g)(2). Bail requires a neutral and detached judge in the first instance because review is "tempered by deference to the district court's firsthand judgment." *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir. 1985). But not even where review is *de novo* "may the State's trial court procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication." *Ward* at 61. With bail still before the district court the renewed disqualification motions cannot be moot.

And Defendant's filings show he promptly raised disqualification issues when he found them; when lawyers refused he fired them and sued.[2] Defendant even moved for judicial disclosure, dkt. 340 (Dec. 21, 2018), albeit unsuccessfully, Ord. Denying Discl., dkt. 342 (Dec. 27, 2018).

---

[1] 273 U.S. 510, 532 (1927) (emphasis added); *see also* DQ. Aff. ¶ 41 (quoting same).

[2] Withd. Mot., dkt. 90 (Oct. 23, 2017); Hrg. Tr. at 15, Mar. 22, 2018, dkt. 419; Hrg. Tr. at 19, May 23, 2018, dkt. 434; exhs. to Withd. Mot., *presumably* dkts. 214-1 *et seq.* (June 28, 2018); exhs. to Emerg. Withd. Mot., dkt. 242 (July 12, 2018); Trial Tr. VIII at 19, Aug. 1, 2018, dkt. 331; sealed exhs. to Emerg. Withd. Mot., dkts. 335-1 *et seq.* (Dec. 7, 2018); Hrg. Tr. 8:22, Dec.

We write to clarify that a litigant's duty to investigate the facts of his case does not include a mandate for investigations into a judge's impartiality. Judge Beckwith erred by suggesting otherwise. After proclaiming that "the strategy employed by Relator [filing the recusal motion two weeks after receiving an unfavorable dispositive ruling] is questionable at best, and the Court refuses to reward Relator or encourage this trend," she concluded that subsection of her opinion by stating that "litigants have a duty to investigate and inform the court of any perceived biases before the court and the parties invest time and expense in a case. Relator has posited no reason for the failure to make a timely inquiry into Judge Holschuh's background." *United States ex rel. American Textile Mfrs. Inst. Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 546 (S.D. Ohio 1997).

We believe instead that litigants (and, of course, their attorneys) should assume the impartiality of the presiding judge, rather than pore through the judge's private affairs and financial matters. Further, judges have an ethical duty to "disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification." *Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995). "Both litigants and counsel should be able to rely upon judges to comply with their own Canons of Ethics." *Ibid.* In ATMI's case, Judge Holschuh possibly did not consider the matter sufficiently relevant to merit disclosure, but his nondisclosure did not vest in ATMI a duty to investigate him.

*American Textile Mfrs. Inst., Inc. v. Limited, Inc.*[3] Defendant posits the § 455(e) no-waiver rule expressly forbids finding waiver from untimeliness. Implied waiver subverts Congress's goal for § 455: "to foster public confidence in the judicial system."[4] After Judge Gorton denied disclosure, ruling implied waiver would harm public confidence, not foster it.

> In contrast, § 455(a) is automatic, mandatory and self-executing. The adoption of ABA Canon 3 C was a response to criticism of the inadequacy of the [28 U.S.C.] § 144 approach. It did away with the "duty to sit" doctrine. It attacks the appearance of bias, not just bias in fact. The waiver of § 455(b) grounds is forbidden, and it is allowed for § 455(a) only with a statement on the record of the basis of disqualification. 28 U.S.C. § 455(e).

*Chantal* at 1023 (some citations omitted). The renewed disqualification motions are timely.

## II. DISCLOSURE & FINDINGS ARE REQUIRED IN RE DISQUALIFICATION.

"When factual issues are involved in deciding a motion, the court must state its essential findings on the record." Fed. R. Crim. P. 12(d). "Judicial bias should be treated as a mixed question of law and fact..." *Nakell v. Attorney Gen.*, 15 F.3d 319, 324 (4th Cir. 1994).

The proper approach under subsection 455(a) *requires* the trial judge to place on the record *all* the facts relating to any *alleged* appearance of lack of impartiality and then leave entirely to the parties whether to waive disqualification under section 455(a).

---

13, 2018, dkt. 423; DQ. Aff, ¶¶ 202, 211.

[3] 190 F.3d 729, 742 (6th Cir. 1999) (alteration in original); *see also* 28 U.S.C. § 455(c) (a judge should learn his personal fiduciary interests and make reasonable efforts to know his spouse's personal financial interests), (e) (no waiver of disq. absent full, on-the-record disclosure).

[4] *United States v. Chantal*, 902 F.2d 1018, 1022 (1st Cir. 1990) (internal quotation marks and citations omitted).

*El Fenix de P.R. v. The M/V Johanny*, 36 F.3d 136, 141 (1st Cir. 1994) (emphasis added).

## III. DISQUALIFICATION STANDARDS

Bracing *Ward, Tumey, etc.*, a judge must recuse when his "impartiality might reasonably be questioned." § 455(a). A judge's or his spouse's "financial interest in the subject matter" also begets recusal. § 455(b)(4). As do other interests of the judge, his spouse, or anyone within three degrees of relationship to them "that could be substantially affected by the outcome of the proceeding." *Id.*; § 455(b)(5)(iii). A judge aware 1) that such a person is likely a material witness or 2) of disputed evidentiary facts must recuse too. § 455(b)(5)(iv), (b)(1).

Though overall Congress intended § 455 "to foster public confidence in the judicial system," *Chantal* at 1022; it specifically grounded subsection 455(b) in due process:

A fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end[] no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships *must* be considered. This Court has said, however, that every procedure which would offer a possible temptation to the average man as a judge not to hold the balance nice, clear and true between the State and the accused denies the latter due process of law. Such a stringent system may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way justice must satisfy the appearance of justice.

*In re Murchison*, 349 U.S. 133, 136 (1955) (alteration and emphasis added) (internal quotation marks, ellipsis, and citations omitted). Subsection 455(b)(1), for example, forbids "personal knowledge of disputed evidentiary facts." Such *ex curia* knowledge leaves no official record, thus frustrating appellate review, and the disadvantaged party cannot rebut the "silent facts" to which he can never be privy. *In re Kensington Int'l Ltd.*, 368 F.3d 289, 309-12 (3d Cir. 2004).

## IV. MAGISTRATE JUDGE BOWLER MUST BE DISQUALIFIED.

Magistrate Judge ("M.J.") Bowler had and has personal knowledge of disputed evidentiary facts in re the bail issue at bar, as shown by, *e.g.*, "My spouse, Marc A. Pfeffer, M.D., Ph.D., is the Dzau Professor of Medicine at Harvard Medical School and a senior cardiologist at the Brigham and Women's Hospital in Boston, which is a Harvard Medical School affiliated hospital." *Cabi, et al. v. Boston Children's Hospital*, 15-cv-12306, dkt. 211 at 2 (D. Mass. Mar. 20, 2017) (Bowler, M.J.,

recusing). "We work closely with physicians at Boston Children's Hospital." Brigham and Women's

Hospital ("BWH") Cardiovascular Genetic Diseases page, dkt. 346-3 at 86 (Dec. 31, 2018). AUSAs

gamed Her Honor's personal knowledge early and often, e.g., directly beseeching M.J. Bowler:

> ..., you know, that these doctors and there are many of them that are at the Harvard hospitals
> that are outside the hospital physically, could not access patient records of their patients
> in the hospital, that they couldn't place orders with pharmacies for medications, they
> couldn't communicate through the hospital portal with their patients.

Det. Hrg. Tr. at 55, Apr. 27, 2016, dkt. 19 (emphasis added).[5] "Harvard hospitals" besides Boston

Children's Hospital ("BCH") had gone unsung at bar, as had how "many" doctors "are at the Harvard

hospitals" who "could not access patient records" from "outside the hospital." See Det. Hrg. Tr.;

docket report. But BCH doctors' access to such records was a hotly contested factual matter.[6]

Defendant and his lawyer were new to This Court.[7] The AUSAs, in contrast, knew Her Honor's

background well.[8] They judge-shopped for M.J. Bowler in a system already rigged to put Her Honor

on Harvard-hospital cases. Decl. of Martin S. Gottesfeld (Aug. 6, 2021); Exh. A.  . . : : . .  . . . .

And M.J. Bowler must have been cognizant of the relevant events because, e.g., "It wasn't

just [BCH] that was down in this [DDoS] attack, it was... Mass. General, Brigham and Women's...

and Harvard Medical School," Trial Tr. IV at 196, July 25, 2018, dkt. 327.

> To put it into perspective, that [DDoS] was 2.8 times larger[sic] than the amount of
> bandwidth[sic] that Harvard had. Harvard had 10 gigabits[/second] of bandwidth and were
> getting 28 gigabits[/second] worth of traffic. [] And that's why all of Longwood[ Medical
> Area, including BWH,] was no longer functioning.

Id. at 199.[9] M.J. Bowler also personally knew the DDoS's aforesaid toll on Mass. General Hospital

("MGH"). Her Honor sits on MGH's Visiting Committee on Neuroscience. See Marianne B. Bowler,

[5] Notwithstanding such inflammatory rhetoric and M.J. Bowler's crediting thereof, the government ultimately failed to prove that Defendant's actions, i.e. saving Justina Pelletier, caused "the potential modification or impairment of the medical examination, diagnosis, treatment, or care of [one] or more individuals." Verdict Form, dkt. 301 (Aug. 1, 2018).

[6] Det. Hrg. Tr. 9:19–23, 51:9–14, 55:24–56:4.

[7] E.g., Ord. Grant. Leave to Appear Pro Hac Vice, dkt. 12 (Apr. 5, 2016); Det. Hrg. Tr. at 40; Det. Ord. at 9, dkt. 25 (July 27, 2016) (Defendant "does not have a prior criminal record").

[8] E.g, U.S. District Court Press Release Apr. 16, 2014, at 2, dkt. 128-6 ("Judge Bowler lives in Brookline with husband, Marc A. Pfeffer, M.D., Ph.D., who is the Dzau Professor of Medicine at Harvard Medical School and a senior cardiologist at the Brigham and Women's hospital in Boston").

[9] Defendant reserves his right against self-incrimination; but Fed. R. Civ. P. 11(b)(3) obliges he herein clarify that the throughput directed at Harvard likely exceeded 250 gigabits/second (gbits/sec); the DDoS saturated upstream connections, so Radware's 28-gbits/sec figure likely reflects

*Curriculum Vitae* ("Bowler CV") at 6, Exh. B (retrieved 2021). AUSAs, aware Her Honor was an MGH bureaucrat wedded to one of "those doctors" "at the Harvard hospitals," fretted to Her Honor that the DDoS was "expensive," "tremendously disruptive," "operationally disruptive," and "tremendously concerning for everyone at the hospital because they were worried that patient records could be stolen, damaged, altered and that would be catastrophic." Det. Hrg. Tr. at 56.[10] M.J. Bowler's *ex curia* knowledge of this "expensive," "disruptive" DDoS mandated Her Honor's recusal.[11]

And once AUSAs invoked "those doctors" "at the Harvard hospitals," *supra*, M.J. Bowler knew Pfeffer was a possible material witness, *e.g.*, in re restitution and U.S.S.G. § 2B1.1(b)(2)(A)(i). Indeed, AUSAs *ab initio* sought restitution to Pfeffer's employers and balked only when Defendant filed a draft-PSR page proving such before The First Circuit. *See* Dft. PSR Pg., sealed exh. to Mand. Pet., No. 19-1011. Her Honor's recusal was thus also mandated by § 455(b)(5)(iv).

The DDoS also hit home for M.J. Bowler by trashing her spouse's medical-communications work and research.[12] "[P]rofessional prestige and the opportunity to associate with and train students under training grants in a significant area of medical research [] lend more than an abstract interest to [a doctor]'s personal stake in" a case. *Apter v. Richardson*, 510 F.2d 351, 354 (7th Cir. 1974). *Compare* Trial Tr. IV 52:3–6. "Preparation time devoted to a project in expectation of economic benefits has been held a sufficient 'personal stake'" for standing.[13] Pfeffer's economic and other interests are cognizable in research grants awarded to an institutional victim and not directly to himself: "The fact that the alleged wrong may also have injured third parties does not deprive [the doctor] of standing so long as [he as well is injured.[14] M.J. Bowler

---

only the trickle-through near Harvard itself.

[10] *See, again,* n.5, *supra.*

[11] *El Fenix, supra,* at 140 n.4, citing *United States v. Alabama,* 828 F.2d 1532, 1543–46 (11th Cir. 1987) (recusal mandated when trial judge's pursuits involved him in "disputed evidentiary facts").

[12] *See, e.g.,* for Pfeffer's research: 2d Suppl. Suppr. Mot. at 4, dkt. 166 (May 4, 2018); *Marc Alan Pfeffer, M.D., Ph.D.,* Harvard Catalyst Profiles, Exh. C (retrieved 2021); Research Info. Comput. Systs., dkt. 346-2 at 84, 86; and for impact on HMS research, Compl. ¶ 13, dkt. 3-2 (Feb. 16, 2016); Det. Hrg. Tr. 51:15, Trial Tr. IV 97:20–21,24–25; Trial Tr. VII 20:5–6, July 31, 2018, dkt. 329; Sent. Tr. at 48–50, Jan. 10, 2019, dkt. 399.

[13] *Apter,* citing *Park View Heights Corp. v. City of Black Jack,* 467 F.2d 1208 (8th Cir. 1972).

[14] *Apter,* citing *Sierra Club v. Morton,* 405 U.S. 727, 736–38 (1972); *Cotovsky-Kaplan Physical Therapy Ass'n, Ltd. v. United States,* 507 F.2d 1363 (7th Cir. 1975).

rightly recused *sua sponte* upon softer impact on Pfeffer. *Ozbi, supra,* at 1, citing § 455(b)(4).
Her Honor surely knew his vital interest at bar and had to recuse. § 455(c), (b)(4), (b)(5)(iii).

Sans disclosure known facts tie M.J. Bowler to this case: Her Honor was a Harvard Medical
School ("HMS") research assistant. Bowler CV at 4. Her Honor is, since 1983, a "Member of the
Corporation" of New England Baptist Hospital, *id.* at 7, and was its chair from 1990—96, *id.* at 6.
NEBH runs "teaching programs in collaboration with Harvard Medical School." New England Baptist
Hospital, *About,* available at https://www.nebh.org/who-we-are (viewed July 26, 2021). Her Honor
also personally molded the same child-welfare system witheringly rebuked over Justina's case.[15]

A judge cannot accept $5 a warrant. *Connally v. Georgia,* 429 U.S. 245 (1977). Mayors cannot
try cases affecting city budgets. *Tumey; Ward.* No one may judge her own case. *Murchison.* "In
defining these standards the Court has asked whether, under a realistic appraisal of psychological
tendencies and human weakness, the [judge's personal] interest poses such a risk of actual bias or
prejudgment that the practice must be forbidden if the guarantee of due process is to be
adequately implemented."[16] This is such a case. M.J. Bowler herself worked for HMS; Pfeffer still
does. Her Honor sits on a board at Harvard's primary teaching hospital (MGH) and chaired one of
HMS's teaching collaborators, where she remains a member of the corporation. The alleged effects
on HMS and its partners were widespread and severe. In the AUSAs' own words to M.J. Bowler:

> [I]t was tremendously disruptive [] and that doesn't even include the fundraising that was
> disrupt[ed]. So not only was it operationally disruptive, it was expensive and *tremendously*
> concerning for *everyone* at the hospital because they were worried that patient records could
> be stolen, damaged, altered and that could be *catastrophic* so this was a significant, *very*
> *significant* disruption for the hospital.

Det. Hrg. Tr. 56:4—14 (emphasis added).[17] Judges might impartially hear cases that so alarm their

[15] E.g., David Kushner, *The Hacker Who Cared Too Much: How a Crusade to Save Children Landed a
Hacker in Prison,* Rolling Stone (June 28, 2017), excerpt at dkt. 346-3 at 72; Jennifer McKim,
*Savage toll of abuse for children in DCF care: More than 95 have died since '01, state report
says,* Boston Globe (Feb. 2, 2014), *id.* at 73; Tweets with #FreeJustina & DCF (Nov. 1, 2013—June
20, 2014), *id.* at 79; Tweets with #FreeJustina & foster (same period), dkt. 346-1 at 109—13;
MyFoxBoston, *Protesters gather outside state facility housing Justina Pelletier* (May 4, 2014), *id.*
at 125; Lifting The Veil, *Thousands Rally for Pelletier Family at Massachusetts Statehouse* (May
28, 2014), *id.* at 127; Mass Resistance, *Justina Pelletier is finally released...* (June 18, 2014),
*id.* at 133; see also DQ. Aff. *in toto* incl. dkts. 346-1 et seq., *in toto.*
[16] *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 883—84 (2009) (internal quotation marks and
citations omitted).
[17] See, again, n.5, *supra.*

spouses, but "the requirement of due process [] is not satisfied by the argument that men of the

highest honor and greatest self-sacrifice could carry it on without danger of injustice." *Tumey*

at 532. "[J]ustice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11,

14 (1954). M.J. Bowler's passing on Defendant who allegedly "tremendously disrupt[ed]" Her Honor's

spouse's tenure employers, thus "tremendously concerning" "everyone" there with "catastrophic"

damage, utterly fails to satisfy the appearance of justice; The Due Process Clause required M.J.

Bowler to recuse.[18]  Instead Her Honor preempted Defendant's lawyer. Det. Hrg. Tr. 60:19—61:22.

As feared in *Caperton*, M.J. Bowler had prejudged Defendant guilty without trial:

```
19 MS. BROWN: Obviously he[, i.e. Defendant,] doesn't need a
20          probation officer as well.
21 THE COURT: Yes, he will soon enough. He will
22          soon enough.
```

Det. Hrg. Tr. at 62. M.J. Bowler could only be sure Defendant "will" need a probation officer if

Her Honor 1) was granting bail or 2) had judged him guilty before trial. The record proves which:

*see* Det. Ord. Once denied bail Defendant would need a probation officer only if convicted. "A

sentence of a court pronounced against a party without hearing him or giving him an opportunity to

be heard, is not a judicial determination of his rights, and is not entitled to respect in any

other" court.[19] "[A]n extrajudicial source is not the exclusive basis for establishing

disqualifying bias."[20] "By [due process] is most clearly intended the general law, a law which

hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial."[21]

Once M.J. Bowler prejudged Defendant without hearing his bail argument recusal was required. *Id.*

Also M.J. Bowler rubber-stamped the warrant to search Defendant's home "September 29, 2014 @

3:43 PM." Search warrant and application, dkt. 78-1. But only after affirming probable cause did

Her Honor actually read the paperwork and note that page one of the application was postdated the

[18] "Our commitment to these values [of government under law] requires fidelity to them even when
there is temptation to ignore them. Such temptation is especially apt to arise in criminal
matters, for those granted constitutional protection in this context are those whom society finds
most menacing and opprobrious." *McKlesky v. Kemp*, 481 U.S. 279, 342—43 (1987) (Brennan, Marshall,
Blackmun, Stevens, JJ., dissenting), citing *The Least Dangerous Branch* 24 (1962).

[19] *Windsor v. McVeigh*, 93 U.S. 274, 277 (1876); *Hovey v. Elliott*, 167 U.S. 409, 414 (1897) (same).

[20] *In re United States*, 441 F.3d 44, 67 n.20 (1st Cir. 2006) (internal quotation marks and
citations omitted).

[21] *United States v. New York, N.H. & H.R. Co.*, 165 F. 742, 746 (C.C. Mass. 1908).

next day: "09/30/2014," *id.* Unknown to the government Her Honor filed a sealed *post facto*-altered version, Hrg. Tr. 20:2—16, May 3, 2018, dkt. 434; No. 14-mj-2234-MBB, dkt. 3.[22]

Each item *supra* severally required recusal. Together they're indisputable. If nothing more, M.J. Bowler's impartiality "could reasonably be questioned." § 455(a). E.g., testimony of BWH doctors left Judge Stearns, a trustee of Vincent Memorial Hospital, "no alternative but" recusal despite "three levels" of removal.[23] Elsewhere, affirming vacatur under § 455(a), SCOTUS noted:

> A finding by another judge—faced with the difficult task of passing upon the integrity of a fellow member of the bench—that his or her colleague merely possessed constructive knowledge, and not actual knowledge [of disputed evidentiary facts], is unlikely to significantly quell the concerns of the skeptic.

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 n.12 (1988). That prospect is shakier here after M.J. Bowler referred *sua sponte* to BCH by the intimate monikor most familiar to Her Honor's husband and other Harvard doctors: "Children's," Det. Ord. at 10. If This Court is unconvinced, Defendant moves to examine M.J. Bowler and Pfeffer as to their knowledge and talks.

## V. JUDGE GORTON MUST BE DISQUALIFIED.

Defendant promptly sought Judge Gorton's recusal upon following the money between His Honor's family, family business Slade Gorton & Co., Inc. ("SG&C"), favored charity The Home for Little Wanderers ("HLW"), and BCH.[24] Then His Honor *sua sponte* banned shirts "showing Mr. [Aaron] Swartz in all his glory." Hrg. Tr. at 46, July 17, 2018, dkt. 265. Nonetheless, a juror *sua sponte* alluded to Swartz and counsel expressly moved to disqualify, Trial Tr. VIII at 19. Judge Gorton denied the motion without findings or disclosure. *Id.*[25]

---

[22] Her Honor also *sua sponte* delayed Defendant's initial appearance a week, dkt. 8; continued his bail hearing 3 weeks, dkt. 13, i.e. triple the limit: 18 U.S.C. § 3142(f); then held his detention under advisement 92 days, dkts. 15, 25. Cf. 18 U.S.C. § 3145(b), (c) (bail "shall be determined promptly); 18 U.S.C. § 3161(h)(1)(H), (h)(7)(C) (STA limits "under advisement" to 30 days, bans court-congestion continuances); *United States v. Jones*, 1999 U.S. Dist. LEXIS 8080, 98-cr-10169 (D. Mass. May 26, 1999) (M.J. Bowler and prior bail delay); and Code of Conduct for United States Judges ("CCUSJ") Canon 3A(5) ("A judge should dispose promptly of business of the court").

[23] *Bradley v. Sugarbaker*, 2013 U.S. Dist. LEXIS 172872, 07-cv-12319 (D. Mass. Dec. 4, 2013).

[24] *Inter alia*, sealed exhs. to Withd. Mot., *presumably* dkt. 214-1 *et seq.* (June 28, 2018); Hrg. Tr. 7:21, 9:24, July 6, 2018, dkt. 435 (docket report misdated "July 9, 2018").

[25] See also Joana Kao, *Swartz judge sides with MIT on release of case evidence*, MIT Tech (May 14, 2013), dkt. 346-4 at 7; Katie Rogers, *Internet pays tribute to Aaron Swartz: commentary from around the web*, The Guardian (Jan. 14, 2013), dkt. 346-1 at 193; Kevin Cullen, *On humanity, a big failure in Aaron Swartz case*, Boston Globe (Jan. 15, 2013), dkt. 346-1 at 199; DQ. Aff. ¶¶ 45—50, 72—78.

When asked, Judge Gorton outright denied on-the-record disclosure: dkts. 340, 342. *Contrast*, §§ I–II, *supra*: This error "did not vest in" Defendant "a duty to investigate him" or else waive disqualification. *American Textile Mfrs. Inst., Inc.* Instead: "§ 455(a) is automatic, mandatory and self-executing.... D[]aiver of § 455(b) grounds is forbidden, and it is allowed for § 455(a) only with a statement on the record of the basis for disqualification." *Chantal, supra.*

Defendant filed motions to disqualify *eo die* Judge Gorton refused disclosure: dkts. 344–46, "mailed 12/27/18" asserting the prison-mailbox rule. Exhibited were 500-plus pages of financial and other data undisclosed by Judge Gorton, dkts. 346-1 *et seq.* Defendant had just obtained them, e.g., DQ. Aff. ¶¶ 202, 211: "My team and I are still working to find more." Further proving alacrity, the next day Defendant filed Suppl. Disq. Mot., dkt. 347. His Honor also denied these disqualification motions without explanation or disclosure: dkts. 350–52. *Contrast* §. II, *supra*.

But much is known. *Ab initio* Judge Gorton has held stock in and been a "Clerk/Secretary and Director" of Slade Gorton & Co., Inc. ("SG&C"), "a closely held family seafood business."[26] Slade Gorton fathered Judge Gorton. His Honor's brother Michael Sr., niece Kim (a Harvard alumna), and nephew Michael Jr. respectively chair and preside over SG&C's board and direct its sales.[27] SG&C joined The Seafood Nutrition Partnership ("SNP"), a trade body hawking "the benefits of a seafood-rich diet," Suppl. Disq. Mot. at 6, 8–9. HMS faculty cofounded SNP in 2013, *id.*, i.e. amid the Pelletier case. The month M.J. Bowler rubber-stamped the search of Defendant's home, September 2014, Pfeffer's BWH cardiology department joined SG&C's marketing, pledging to run four "eating heart healthy" programs for SNP, *id.* at 7. The programs started in 2015, *id.*, before Defendant moved to examine Pfeffer *et al.* about Pfeffer's work for HMS and BWH and M.J. Bowler's knowledge thereof "as of September 2014," 2d Suppl. Suppr. Mot. at 4. His Honor disclosed nothing when BWH Cardiology arose, but passed on BWH Cardiology's ties to HMS while HMS and BWH Cardiology promoted His Honor's products as "heart healthy." Ord., dkt. 209 at 28; Suppl. Disq. Mot. at 7. His Honor needed to heed § 455(a), (b)(1), (b)(4), (b)(5)(iii) and recuse. *Cf. Bradley*, n.23, *supra*.

---

[26] Gorton, Nathaniel M., financial disclosure reports, 2003–16 ("Gorton Discls."), Exh. D; *see also* dkt. 346-1 at 11–33 (redacted, marked versions of same); DQ. Aff. ¶¶ 23, 203.

[27] John C. Hughes, *Slade Gorton: A Half Century in Politics*, excerpt at dkt. 346-1 at 141–44; SG&C website, marked print-outs, Dec. 23, 2018, http://www.sladegorton.com/about-us/our-team/executive-team, *id.* at 147–48; DQ. Aff. ¶ 23; *cf. also* CCUSJ Canon 3C(3)(a), § 455(b)(5).

Also undisclosed, Harvard's chief pediatrics professor cofounded SNP, Suppl. Disq. Mot. at 6. As BCH boasted, "We're the primary pediatric teaching facility for Harvard," Trial Tr. IV at 52. All BCH faculty are HMS faculty, id. Their email addresses are @childrens.harvard.edu.[28] During the Pelletier scandal SG&C gave to BCH; BCH thanked SG&C on its website, further promoting SG&C.[29] Defendant is chiefly accused of a modern civil-rights-era-style sit-in of BCH's same website amid a major online fundraiser. Indictm. ¶¶ 28–29, dkt. 28. Back then BCH took offline lists of its patrons, like SG&C, to protect them from reputational and economic harm.[30] SG&C was thus subject to harm from Justina's case and Defendant's actions, and remains interested in this case.

Besides patronizing BCH for online promotion, Judge Gorton et al. have long-term interests in HLW.[31] His Honor, Michael Sr. and his wife, and SG&C are frequent donors; Michael Sr. was on its board of directors; both His Honor and Michael Sr. sat on its board of advisors; and from 2003–12 Judge Gorton listed himself as a "Member of the Corporation." Id.; Gorton Discls.; cf. also CCUSJ Canon 3C(3)(c). SG&C leverages Michael Sr.'s patronage of HLW on its website near links to "Email: sales" and "Download our catalogue." SG&C website, marked print-outs, dkt. 346-1 at 147–48.

HLW, in turn, has long partnered with BCH "to 'divert'[] children from psychiatric inpatient stay by working intensively with families in their homes"; HLW FY 2003 Report excerpt, dkt. 346-1 at 35. This "Safe-at-Home" program could have had Justina's face on it. HLW also places such kids for adoption[32] "and one of the most controversial and bitterly disputed parts of Justina's saga was when BCH and The Massachusetts Department of Children and Families put her on a path towards adoption against her and her family's wishes," DQ. Aff. ¶ 20. In support of this partnership BCH frequently donates to HLW.[33]

---

[28] DQ. Aff. ¶ 116; People: Boston Children's Hospital, https://hsci.harvard.edu/people/people-terms/boston-childrens-hospital (retrieved Dec. 30, 2018), dkt. 346– at .

[29] Boston Children's Hospital Philanthropy Supporters 2013, excerpt at dkt. 343-3 at 145–47.

[30] E.g., Failure To Listen, Mat Staver Joins Megyn Kelly to Discuss State Ordered Detaining of Justina Pelletier (May 5, 2014) at 2, dkt. 346-1 at 120.

[31] DQ. Aff. ¶¶ 13–18, 21, 27; HLW Annual Reports FYs 2003–15, excerpts at dkt. 346-1 at 10–11, 34–102.

[32] HLW "Waiting Children" Adoption (retrieved Dec. 29, 2018), dkt. 346-1 at 106; Patricia Wen, Parents of Justina Pelletier upset after learning teenager will now be sent to DCF foster care, advocates say, Boston Globe (Feb. 24, 2014), dkt. 346-1 at 108.

[33] DQ. Aff. ¶¶ 24–25, 150, 156; The Home for Little Wanderers awarded $50,000 [from BCH] (Sept.

More broadly, for decades Judge Gorton molded the same public-private Massachusetts child-welfare system that during Justina's saga was a lightning rod for criticism. *see* n.15, *supra*; *in toto* DQ. Aff., dkts. 346-1 *et seq*. His Honor's pursuits *ex curia* thus involved him in disputed evidentiary facts upon which His Honor passed, *e.g.*, 1) the total fundraising BCH lost from the DDoS, i.e. an estimate based upon years past and donors disinclined to give due to scandal—using His Honor's personal experiences fundraising for child-welfare NGOs;[34] 2) whether Defendant's activism against said child-welfare system posed danger if he were released, Hrg. Tr. 13:7, Sept. 24, 2018, dkt. 422; and 3) whether Defendant was entitled to a defense-of-others instruction due to His Honor's associates endangering Justina's life while in their custody, Chg. Conf. Tr. 17:12, July 30, 2018, dkt. 328. Judge Gorton thus had to recuse under § 455(b)(1). *El Fenix*, *supra*.

Given the longstanding ties between SG&C and BCH—particularly those in re HLW and BWH—His Honor could not have missed his need to disclose and recuse. *Cf. Liljeberg* at 851-52 (despite no actual knowledge, "a reasonable observer would expect" the judge "would remember" his organization "had some dealings with" litigating party and third party "and seek to ascertain the nature of those dealings"). Relationships flowed from Judge Gorton through SG&C and HLW to SNP, BCH, BWH, a juror, and a trial witness.[35] *Cf. Bradley*, n.23, *supra*.

As with M.J. Bowler, The Constitution required Judge Gorton to disqualify, *e.g.*, Defendant sought to admit evidence His Honor's Massachusetts child-welfare associates tortured a child and unlawfully endangered her life: Opp. to Mot. *in Lim.*, dkt. 198. No judge can satisfy due process while passing on whether his lifelong comrades—let alone those promoting his products—were hit by lawful defense of others. To hold otherwise allows judges to pass on the character, judgment, and credibility of their associates as if they were witnesses in a bench trial, especially where, as here, Judge Gorton cut off the jury's factfinding, Ord. Allow. Mot. *in Lim.*, dkt. 209.

Given BWH runs programs for Judge Gorton's family business, the issue at bar of restitution

2, 2015) (retrieved Dec. 23, 2018), dkt. 346-1 at 150.

[34] HLW annual reports FYs 2003-15, n.31, *supra*; Sent. Tr. at 11, HLW FY 2012 Report excerpt in re third-party payers, dkt. 345-2 at 203.

[35] After the citations *supra*, *see*, *e.g.*, Trial Tr. II at 95-99, July 23, 2018, dkt. 325; Boston Business Journal, *KDSA gets inspired by the tales* (Nov. 20, 2008), dkt. 346-1 at 166; HLW annual reports, KDSA-donation excerpts, dkt. 346-2 at 181-91; HLW 2012 Form 990, dkt. 346-1 at 174; HLW annual reports, BWH-donation excerpts, dkt. 346-3 at 24.

to BHH was sharper than mayors in *Ward* and *Tumey* fining drivers to pad city budgets. BHH suddenly was cut *sub silencio* after the draft PSR—right after Defendant raised restitution to BHH as a disqualification issue. Compare Dft. PSR Pg., *supra*, *to* Final PSR. A person would reasonably question this timing and coordination. And due process no more abides Judge Gorton's ever having presided over likely restitution to those promoting His Honor's wares than it lets mayors in black robes fill city coffers. Broader, as "[c]ircumstances and relationships must be considered," *Murchison*, the sum of facts paints "a possible temptation to the average man" in Judge Gorton's place "not to hold the balance nice, clear and true between the State" and Defendant.

Plus, Judge Gorton's refusal to disclose under the canons—or to enter findings—indicates more than a "possible temptation." It is now its own recusal basis: An unafraid judge would disclose. *Compare* § 455(a), (b)(4), (c), (e), Discl. Mot., dkts. 341, 341-1 *to* Ord. Den. Discl., dkt. 342. An objective, fully informed citizen would question what *else* Judge Gorton keeps hidden and ergo question His Honor's impartiality. § 455(a). Disclosure under the honor system at this late stage could never assuage such concerns. *Cf. Liljeberg* at 866, 868.

### VI. THE PREVIOUS DETENTION ORDER AND FINDINGS REQUIRE VACATUR.

Defendant hereby moves to vacate Det. Ord., dkt. 25, and all findings in re detention.

SCOTUS considers three risks when deciding if § 455(a) requires vacatur: 1) the risk of injustice to the parties; 2) the risk that denying relief will produce injustice in other cases, and 3) the risk of undermining public confidence in the judicial process. *Liljeberg* at 864.

First, the injustice to Defendant is manifest: His now-65-month detention is as-yet unheard *de novo* by an uninterested judge—an unending injustice sans vacatur. Judges interested in his conviction denied him due process, *supra*, and a speedy-and-public trial, as detailed *infra*. Upon reversal he will have endured 5½ years of pre-retrial incarceration; and here The Due Process Clause itself requires vacatur, e.g., "This separate violation of § 455[(b)] further compels the conclusion that vacatur was an appropriate remedy; by his silence, [the judge] deprived respondent of a basis for making a timely motion for a new trial." *Liljeberg* at 867; *cf.* Ord. Den. Discl.

Also manifest are the risks of upholding the procedural posture at bar:

[P]roviding relief in cases such as this will not produce injustice in other cases; to the

contrary, the [Court]'s willingness to enforce § 455 may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered.

*Liljeberg* at 868. And the instant denial of prompt relief has already undermined public trust in the judiciary, *e.g.*, Aaron Bandler, *EXCLUSIVE: Jailed Hacktivist Who Fought To Save Girl's Life Blocked By Biased Judge From Attending His Father's Funeral*, DailyWire (Apr. 9, 2017), dkt. 346-1 at 151. Further delay further harms public trust. And the public is less trusting now than ever. "Judicial discipline at the federal level is almost non-existent." Peter S. Green & John Mazor, *Corrupt Justice: What happens when judges' bias taints a case?*, The Guardian (Oct. 18, 2015). From 2010—14, 2,561 federal judicial-misconduct complaints alleged bias or conflicts of interest, "But only three judges were disciplined during those years and each got the mildest rebuke on the books." *Id.*[36] For decades public trust in federal judges has consistently deteriorated. Gallup, Inc., *Trust in Government, available at* https://news.gallup.com/poll/5392/trust-government.aspx (visited Feb. 8, 2021). The latest data, taken five months before Defendant's arrest, is the worst yet: asked "how much trust and confidence" they had in the federal judicial branch, 47 percent said "Not very much" or "None at all." *Id.* The thin majority who answered a "Fair amount" or a "Great deal" approximates Americans' approval of King George III on July 3, 1776.[37] Respectfully, events after these latest 2015 data—including those *supra*—lowered public trust still further.[38]

## VII. COMMUNITY SAFETY CAN BE REASONABLY ASSURED.

"[I]nterpreting the 'reasonably assure' standard set forth in [18 U.S.C. § 3142(c)] as a requirement that release conditions 'guarantee' community safety and the defendant's appearance" is erroneous. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). "[W]e agree with the Eighth Circuit that the courts cannot demand more than an 'objectively reasonable assurance of community safety.'" *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) (quoting *Orta* at 892). Defendant proposes conditions ("prop. condts.") exceeding reasonable assurance, . . . . .

---

[36] Defendant declines any construal hereof as a complaint of judicial misconduct. *Castro, supra.*

[37] Independence Hall Association, *Loyalists, Fence-sitters, and Patriots, available at* https://www.ushistory.org/us/11b.asp (visited July 22, 2021).

[38] *E.g.*, Martin Gottesfeld, *Think Russia Is Bad? Listen To This Imprisoned Human Rights Activist*, The Huffington Post (Mar. 28, 2017), dkt. 346-3 at 118; Jim Jimitis, *Fate of Accused Hospital Hacker In The Hands of Judge With Personal Ties To Hospital*, Red State (Mar. 29, 2017), *id.* at 121.

[Proposed ]Order of Release, Exh. E. Defendant has no prior conviction, n.7, *supra*. He acted only

upon credible claims BCH tortured then-15-year-old Justina Pelletier, Tort. Memo, dkt. 190-1. No

like incidents since occurred at BCH. None are expected. AUSAs produce no basis to find Defendant

dangerous. An unmasked *Anonymous* hacker cannot act anonymously or *Anonymously*. Defendant's days

of hacktivism are over; just begun are his protected pursuits: journalism and politics.[39]

Defendant's lawful conduct is further enforced by the prop. condts. In another case, *e.g.*,

> [D]efendant has also agreed to maintain his current residence, and to go on electronic
> monitoring 24/7 if ordered by the court. This would eliminate any risk of flight and would,
> in this court's view, reasonably eliminate any concerns [D]efendant would continue to engage
> in illegal activities.

*United States v. D'Amore*, 2008 U.S. Dist. LEXIS 119275, 00-cr-10094, at *19 (D. Mass. May 20,

2008). This Court found, for example, that the particular conditions D'Amore posited reasonably

assured community safety because the "types of crimes with which [D]efendant has been engaged in

the past required his personal involvement and could not be conducted from his home." *Id.*

Likewise prop. condts. 5–8, 12–13 (computer monitoring, house arrest) assure such here.

### VIII. DEFENDANT'S APPEARANCE CAN BE REASONABLY ASSURED.

"[O]nly reasonable assurances, rather than a guarantee, are required with regard to risk of

flight." *United States v. Simone*, 317 F. Supp. 2d 38, 42 (D. Mass. 2004). For 31 years The First

Circuit has held that electronic monitoring, prop. condt. 12, effectively deters flight.[40]

> [A]lso of note is the degree to which electronic monitoring technology has progressed since
> [cases from 1985 and '93]. As defense counsel argued, pretrial monitoring now enables a
> pretrial officer to track a defendant in real time, on a computer or a cell phone, so that the
> officer can be assured that, for example, when [Defendant] says he is going to the hospital,
> that he is in fact doing so.

*United States v. Paulino*, 335 F. Supp. 3d 600, 617–18 (S.D.N.Y. 2018). If GPS bracelets were

ineffective pretrial services would shun the technology, not rely upon it at risk to the public.

The fugitive-disentitlement doctrine further deters Defendant from flight.[41] The government

has already done its worst to Defendant; now he dreams of his day before a fair tribunal. *Id.*

---

[39] Decl. of Martin S. Gottesfeld (Aug. 4, 2021) ("Bail Decl."), Exh. F; U.S. Const. amend. I.

[40] *United States v. O'Brien*, 895 F.2d 810, 816 (1st Cir. 1990) (finding electronic-monitoring bracelet and surety rebutted presumption of flight). See also exhs. G–L; *D'Amore*, *supra*.

[41] Bail Decl. ¶ 49 (quoting *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993) ("... an appellate court may dismiss the appeal of a defendant who is a fugitive...")).

### A. DEFENDANT'S LAWFUL 2016 ASYLUM CLAIM IS UNINDICATIVE OF FLIGHT.

"'[A]n act of Congress ought never to be construed to violate the law of nations if any other possible construction remains.'[42] The Bail Reform Act is an act of Congress, e.g., § 3142(e)(1). The law of nations, i.e. customary international law, jealously guards the right to seek asylum.[43] In the instant case The Bail Reform Act ought not be construed against Defendant's asylum claim.

And Defendant sought asylum[44] uncharged, when his travel was unrestricted. Det. Hrg. Tr. 36:12. AUSAs imply but do not testify charges were imminent; their posture belies their innuendo. Defendant is the only activist indicted under The Computer Fraud and Abuse Act since *United States v. Aaron Swartz*, 11-cr-10260-NMG (D. Mass.), fallout from which included House and Senate hearings and over 61,000 signatures to fire then–U.S. Attorney Carmen Ortiz.[45] Supposed-victim BCH was accused of torture and 32 Congressmen cosponsored Justina's Law.[46] From target letter to asylum claim—some nine months—AUSAs sought not to indict. Det. Hrg. Tr. 16:3. Defendant sought asylum when charges absent a plea agreement were at most uncertain.

### IX.  DEFENDANT'S APPEAL FULFILLS 18 U.S.C. § 3143(b)(1)(B).

Defendant's appeal is briefed; oral argument was June 8, 2021. Docket report, *United States v. Gottesfeld*, 18-1669 (1st Cir.). Defendant filed for victory, not delay; he cannot now slow the court's ruling. Defendant raises eight substantial questions of law or fact.[47] Any of the first three would require dismissal. *Id.* ¶¶ 1–3. Four others would require retrial. *Id.* ¶¶ 4–6, 8. The last will likely also result in retrial. *Id.* ¶ 7. To wit, the eight issues *infra* merit release pending appeal, which requires only a "substantial question" that if decided favorably would likely lead to reversal. *Bayko, supra*, 522–23.

---

[42] F. Hoffmann-La Roche Ltd. v. Empagran S. A., 542 U.S. 155, 164 (2004) (quoting *Murray v. Schooner Charming Betsy*, 2 CRANCH 64, 118, 2 L. Ed. 208 (1804)) (alteration in original).

[43] Roman Boed, *The State of the Right of Asylum in International Law*; "Everyone shall be free to leave any country, including his own," International Covenant on Civil and Political Rights, art. 12(2) (ratified June 8, 1992); "Everyone has the right to seek and enjoy in other countries asylum from persecution," United Nations Universal Declaration of Human Rights, art. 14(1).

[44] Trial Tr. VI at 49, July 27, 2018, dkt. 313.

[45] WhiteHouse.gov petition, *Remove United States District[sic] Attorney Carmen Ortiz from office for overreach in the case of Aaron Swartz*, dkt. 346-1 at 6.

[46] Tort. Memo; Congress.gov, H.R. 4989—*Justina's Law* 113 Congress (2013–14), dkt. 346-1 at 2.

[47] Red. Appel. Br. ("Appel. Br.") at 3–4 (all pg. nos. to MS Word, not CM/ECF), Exh. M.

1. This Court erroneously excluded 13 unexcludable days under 18 U.S.C. § 3161(h)(1)(D) for non-pretrial motions filed in a separate, sealed, civil case, which, when added to the 26 days already counted, trigger dismissal under 18 U.S.C. § 3161(b). Appel. Br. at 29; Red. Appel. Rep. ("Appel. Rep.") at 14 (all pg. nos. to MS Word, not CM/ECF), Exh. N.

2. This Court violated § 3161(h)(1)(H), (h)(7)(C) by excluding 92 days while Defendant's bail was "under advisement," triggering dismissal under § 3161(b). Appel. Br. at 31; Appel. Rep. at 4.

3. This Court erroneously excluded months of unexcludable time in violation of § 3161(h)(7)(A), which required specific on-the-record findings that were never made. Added to the 26 days already counted, these months trigger dismissal under § 3161(b). Appel. Br. at 36.

4. This Court wrongly denied suppression, forcing retrial. Appel. Br. at 42; Appel. Rep. at 26.

5. This Court erroneously denied David Grimaldi's withdrawal, forcing Defendant to stand trial with conflicted counsel, which now requires remedial retrial. Appel. Br. at 49.

6. This Court violated Defendant's public-trial right, closing the courtroom five times over his objections without considering alternatives or making findings. These structural errors require retrial. Appel. Br. at 54; Appel. Rep. at 21.

7. This Court made no findings when refusing disqualification. Appel. Br. at 60; Appel. Rep. at 27. Disqualification ultimately will require retrial. *See Liljeberg, supra,* at 850, 863-70.

8. This Court erroneously precluded Defendant's defense-of-others argument. The only remedy is retrial. Appel. Br. at 57; Appel. Rep. at 16.

Under § 3143(b)(1)(B) a "substantial question" is "a 'close' question or one that very well could be decided the other way." *Bayko* at 523. Whether an appeal presents a "close" question is decided on a case-by-case basis. *Id.* "[L]ikely to result in reversal or an order for a new trial" requires "the claimed error[s] not be harmless or unprejudicial." *Id.* The "likely to result" standard is applied "flexibly." *United States v. Colon-Munoz,* 292 F.3d 18, 20 (1st Cir. 2002). In deciding the standard's second part, The Court "must assume that the substantial question presented will go the other way on appeal and then assess the impact of such assumed error on the conviction." *United States v. Powell,* 761 F.2d 1227, 1233 (8th Cir. 1985).

The First Circuit stresses bail pending appeal is not "contingent on a finding by the district court that it is likely to be reversed." *Bayko* at 523.[48]

> Thus, in determining whether there is a substantial question, a court must keep in mind that it is not being asked to reverse its position on issues decided at trial, nor is it being asked to grant a new trial. It must decide only that a significant issue exists that merits appellate review and that the issue is critical enough to the defendant's conviction that a contrary appellate ruling would warrant a reversal.

*United States v. Hicks,* 611 F. Supp. 497, 499 (S.D. Fla. 1985). Each of Defendant's appellate

[48] *See, e.g., United States v. Greenberg,* 772 F.2d 340, 341 (7th Cir. 1985) (district court does not have to find that it is more likely to be reversed than affirmed); *Powell, supra,* at 1232 ("a judge considering the question of bail pending appeal need not hold" "that he or she has probably made a mistake"); *United States v. Miller,* 753 F.2d 19, 23 (3d Cir. 1985) ("The federal courts are not to be put in the position of 'bookmakers' who trade on the probability of ultimate outcome"); *United States v. DeSimone,* 424 F. Supp. 2d 344, 345 (D.R.I. 2006) (district court is not required to conclude that it is likely to be reversed to grant bail pending appeal).

issues exceeds this standard, meriting immediate release.

## X. THE DUE PROCESS CLAUSE MANDATES DEFENDANT'S EXPEDITED RELEASE.

Defendant was robbed of due process. The government judge-shopped, Exh. A, then searched and seized his property with a warrant rubber-stamped before the date printed on the first page of its application, § IV, *supra*. M.J. Bowler disclosed nothing while wrongly dragging out basic rulings, n.22, *supra*. Judge Gorton denied Defendant relief from M.J. Bowler without disclosing that M.J. Bowler's husband—the primary nexus of Her Honor's biases—also promoted Judge Gorton's products, § V, *supra*. Based upon loyalty and personal knowledge of disputed evidentiary facts, Judge Gorton also forbid the jury's factfinding on Defendant's defense of others, crediting His Honor's child-welfare chums and product endorsers over Defendant, *id.* Thus Defendant's conviction "is not entitled to respect in any other" court. *Windsor* at 277. Defendant has effectively been held 65 months without trial. More time shall lapse before any fair retrial commences.

"Put bluntly, 'prolonged pretrial detention may become excessive and consequently punitive so as to violate the person's right to due process.'" *United States v. Daniels.*[49]

As the First Circuit has explained, the constitutional limit to the length of pretrial detention requires an assessment on a case by case basis. In support of this approach, the First Circuit has identified two types of criteria which would guide the determination of whether due process requires release. First, due process judgments should reflect the factors relevant to the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or danger to the community, and the strength of the government's case on the merits. Second, these judgments should reflect such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity.

*Id.* (internal quotation marks, ellipsis, and citations omitted). "[W]e shall assume that in many, perhaps most, cases, sixteen months would be found to exceed [] due process limitations [] of pretrial confinement." *Id.* at *10 (internal quotation marks and citations omitted).

AUSAs lost on possible impact to patient care, 18 U.S.C. § 1030(c)(4)(B)(i), (A)(i)(II), i.e. the moral core of the case, n.5, *supra*. Even *contra bonos mores* gagging Defendant's defense of others and admonishing the jury against his "good motive" in re *mens rea*, Trial Tr. VII 74:6, VIII 31:4–7, AUSAs barely eked out a verdict; *see, e.g.*, *id.* at 19; Jury Notes, dkt. 301-1 (Aug. 1,

[49] 2000 U.S. Dist. LEXIS 15810, 98-cr-30040-MAP (D. Mass. Oct. 5, 2000) at *48 (quoting *United States v. Shareef*, 907 F. Supp. 1481, 1484 (D. Kan. 1995) (collecting cases)).

2018). At fair retrial, however, Defendant's defense of others will be heard and:

> Double jeopardy bars retrial on a particular charge when the jury was dismissed without returning an express verdict on that charge and without defendant's consent despite having a full opportunity to return a verdict and in the absence of extraordinary circumstances which prevented it from doing so.

*United States v. Candelario-Santana.*[50] No mistrial was declared and The Court *sua sponte* accepted an incomplete verdict. Defense counsel faced a statutory construction already decided—apparently off the record—but never consented, Trial Tr. VIII at 31. In Defendant's recollection, no *Allen* charge was given. *Cf. Allen v. United States*, 164 U.S. 492 (1896). For these reasons, retrial is barred on § 1030(c)(4)(B)(i), (A)(i)(II), precluding at retrial the AUSAs' days-long prejudicial dog-and-pony show about BCH's "most vulnerable patients"—not one of whom was in fact hurt. Fed. R. Evid. 403. Weighed on justice's scales the gravity and rigor of the retriable charge, § 1030(c)(4)(B)(i), (A)(i)(I), based solely on institutional loss under $400,000, fails to budge Defendant's 65 months of pretrial incarceration.

Moreover retrial is unlikely. Upon any reversal Defendant forthwith shall seek dismissal via U.S. Const. amends. V, VI.[51] Under, *e.g.*, *Barker*, 1) the delay before retrial—5½ years so far—is quintuple that for presumptive prejudice; 2) AUSAs and The Court caused it;[52] 3) Defendant ardently claimed his right;[53] and 4) although Defendant's stark showing under the other factors moots his need to show prejudice, Defendant easily does so, *e.g.*, courts look away as AUSAs deny Defendant mail, phone calls, contact visits, etc. in a terrorist unit thousands of miles from home that The U.S. Court of Appeals openly compares to Chinese water torture.[54]

---

[50] 977 F.3d 146, 159 (1st Cir. 2020) (internal quotation and alteration marks, ellipses, and citation omitted).

[51] *E.g.*, *Barker v. Wingo*, 407 U.S. 514 (1972); *Doggett v. United States*, 505 U.S. 647, 655 n.2 (1992) ("[D]efendant may invoke due process to challenge delay both before and after official accusation"); *United States v. MacDonald*, 456 U.S. 1, 7 (1982).

[52] *E.g.*, n.22, *supra*; Opp. to STA Mot., dkt. 167 (May 4, 2018); Ord. Den. STA Mot., dkt. 209 (June 19, 2018); Ord. Den. Recon., dkt. 222 (June 29, 2018).

[53] *E.g.*, 1st Speedy Tr. Mot., dkt. 122 (Mar. 8, 2018); *see also* dkts. 131, 146, 151, 164, 170, 172, 176 (STA mot.), Recon. Mot., dkt. 213 (June 27, 2018); Appel. Br.; Appel. Rep.

[54] Decl. of Martin S. Gottesfeld (Aug. 5, 2021), Exh. O; *Aref v. Lynch*, 833 F.3d 242, 257 (D.C. Cir. 2016) (citing *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 684 (M.D. La. 2007) ("With each passing day its effects are exponentially increased, just as surely as a single drop of water repeated endlessly will eventually bore through the hardest of stones")); 18 U.S.C. § 3621(b) (500 mile rule); Hrg. Tr. 15:23, July 17, 2018; 1st Am. Compl. ("FAC"), *Brown v. Federal Bureau of Prisons*, 19-cv-02795 (RBW) (D.D.C.).

By, e.g., judge-shopping then withholding known disqualification grounds, frivolously opposing Defendant's STA and suppression motions, and moving meritlessly *in limine* to deny Defendant a fair trial, the government needlessly complicated this case.

Put simply, slow-and-private foreclosed speedy-and-public. Justina survives; this case shall not. Only by now releasing Defendant can justice begin to "satisfy the appearance of justice."

Towards this long-overdue imperative, Defendant moves for a detention hearing before a neutral and detached judicial officer; it would be Defendant's first such opportunity.

Respectfully filed under the prison-mailbox rule, *Fallen v. United States*, 378 U.S. 139 (1964); *Houston v. Lack*, 487 U.S. 266 (1988), in an envelope bearing sufficient affixed pre-paid U.S. Priority Mail postage and track. no. 9114 9022 0078 9497 2467 94, handed to Ms. Jamie Wheeler of the FCI Terre Haute CMU unit team in her official capacity as an agent of The United States and of its counsel Friday, August 6                    , 2021, or the first opportunity thereafter,

by: _____

Martin S. Gottesfeld, *pro se*, Defendant
Reg. no. 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808


## CERTIFICATE OF SERVICE

I, Martin S. Gottesfeld, *pro se*, certify that I mailed a copy of the foregoing document to David J. D'Addio, counsel for The United States in the above-captioned case, in an envelope bearing sufficient affixed pre-paid First Class U.S. postage and track. no. 9114 9023 0722 4792 9869 35, handed to Ms. Jamie Wheeler of the FCI Terre Haute CMU unit team in her official capacity as an agent of The United States and of its counsel Friday, August 6          , 2021, or the first opportunity thereafter, and that separately I affected service in-hand via 28 C.F.R. § 540.203(a), (c)(1), (c)(3),

by: _____

Martin S. Gottesfeld, Defendant

Exhibit A

**Declaration of Martin S. Gottesfeld**

I declare as follows pursuant to 28 U.S.C. § 1746(1):

1.   I am Martin Stephen Gottesfeld, Defendant, *pro se*, in *United States v. Gottesfeld*, 16-cr-10305-NMG (D. Mass.) (hereinafter the "case").

2.   "Every court considering attempts to manipulate the random assignment of judges has considered it to constitute a disruption of the orderly administration of justice." *DataTern, Inc. v. MicroStrategy Inc.*, 2018 U.S. Dist. LEXIS 94321, 11-cv-11970-FDS (D. Mass. June 5, 2018) at *62 (quoting *In re Bell South Corp.*, 334 F.3d 941, 959–60 (11th Cir. 2003) (citing cases)) (collecting cases).

3.   A review of This Court's orders in the Federal Bureau of Prisons (BOP) LexisNexis® database finds the first reference to random judicial assignment in early 1985: *United States v. Ouimette*, 614 F. Supp. 107, 109 (D. Mass. 1985) ("On remand[ January 26, 1985], the case was randomly assigned to this judge").

4.   Such a review also finds the first reference to "The District Court's Program for Random Assignment of Civil Cases to Magistrate Judges" on May 5, 2011: *Karas v. Hood, Inc.*, 2011 U.S. Dist. LEXIS 48349, 11-cv-40016-FDS (D. Mass. May 5, 2011) at *1–2.

5.   Presumably, however, prior cases were also purportedly designated randomly to magistrate judges (MJs). *Cf.*, *e.g.*, Rule 6(a)(1), Rules for United States Magistrate Judges in the U.S. District Court for the District of Massachusetts (Effective January 8, 2002), *available at* https://www.mad.uscourts.gov/general/pdf/LC/MJRules2011.pdf (retrieved Aug. 3, 2021).

6.   Nonetheless a review of This Court's orders in the BOP LexisNexis® database finds seven (7) civil cases involving Boston Children's Hospital (BCH) that should have been designated randomly but instead appear otherwise:
1) M.J. Karol—Nov. 12, 1993; *Boston Children's Hospital v. Nadal-Ginard*, 93-cv-12539;
2) M.J. Bowler—May 30, 2000; *Davidson v. Cao*, 00-cv-11046;
3) M.J. Bowler—Apr. 8, 2011; *Darville v. Children's Hospital Corporation*, 11-cv-10599;
4) M.J. Sorokin (now District Judge Sorokin)—July 10, 2012; *Felder v. Ponder*, 12-cv-11192;
5) M.J. Sorokin—Feb. 4, 2014; *Robinson v. Children's Hospital of Boston*, 14-cv-10263;
6) M.J. Sorokin—Feb. 25, 2014; *DeGrandis v. Children's Hospital Boston*, 14-cv-10461; and
7) M.J. Bowler—June 11, 2015; *Cabi, et al. v. Boston Children's Hospital*, 15-cv-12306.

7.   A review of the available MJs for each of the above seven (7) cases using LexisNexis, This Court's website and press releases, and Leadership Directories, Inc., *Federal-State Court Directory* 69 (2017 ed.) finds the following numbers of MJs:
1) *Boston Children's Hospital v. Nadal-Ginard* (5): Alexander, Collings, Cohen, Bowler, and Karol*;
2) *Davidson v. Cao* (4): Alexander, Collings, Cohen, and Bowler*;
3) *Darville v. Children's Hospital Corporation* (5): Collings, Bowler*, Dein, Sorokin, and Boal;
4) *Felder v. Ponder* (5): Collings, Bowler, Dein, Sorokin*, and Boal;

5) *Robinson v. Children's Hospital of Boston* (6): Collings, Bowler, Dein, Sorokin\*, Boal, and Hennessy;
6) *DeGrandis v. Children's Hospital Boston* (same 6): Collings, Bowler, Dein, Sorokin\*, Boal, and Hennessy; and
7) *Cabi, et al. v. Boston Children's Hospital* (6): Bowler\*, Dein, Boal, Hennessy, Kelly, and Cabell.

8.   Combinatorics is the "branch of mathematics founded on the formul[ae] for permutations and combinations." *United States v. Jefferson*, 302 F. Supp. 2d 1295, 1300 n.5 (M.D. Ala. 2004).

9.   Combinatorics is employed in, *e.g.*, chess, poker, blackjack, genetics, and computer science; it is relevant to verifying the randomness of purportedly random processes, *e.g.*, fairly dealing cards and designating MJs to civil cases.

10.   Chess, poker, blackjack, and computer science also employ game theory to understand behavior in zero-sum games and other adversarial scenarios. IBM's *Deep Blue*, for instance, used game theory to beat human chess grandmaster Gary Kasparov in 1996.

11.   "[A] number of results in game theory [] have become important in economics and other fields." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1325 (Fed. Cir. 2014). *See also Unwired Planet, LLC v. Apple Inc.*, 13-cv-04134-VC, at \*6–7 (N.D. Cal. Feb. 14, 2017) ("[G]ame-theoretic models have longstanding and widespread acceptance in economics and other disciplines").

12.   "Analysis that tracks economic theories known as 'game theory' is used in the airline industry to predict actions by competitors and gauge competitors' reactions." *United States v. AMR Corp.*, 140 F. Supp. 2d 1141, 1182 (D. Kan. 2001).

13.   Lawyers also use game theory.

14.   "[T]he broad definitions used in the study of 'game theory' and in legal coures on the subject, certainly apply" to death-penalty litigation. *In re Byrd*, 269 F.3d 585, 594 (6th Cir. 2001) (Boggs, Suhrheinrich, and Batchelder, JJ., dissenting on other grounds).

15.   "Game theory teaches us that a cartel cannot survive absent some enforcement mechanism because otherwise the incentives to cheat are too great." *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1233 (3d Cir. 1993) (internal citations omitted).

16.   A U.S. court applied game theory to attorneys-fees requests. *In re Balderas*, 328 B.R. 707 (Apr. 20, 2005).

17.   "Yes, this is sort of an exercise in non-quantitative game theory, but that is exactly what sophisticated commercial and bankruptcy lawyers do all day long." *Giaimo v. Detrano (In re Detrano)*, 222 B.R. 685, 688–89 (Bankr. E.D.N.Y. 1998).

18.   I have sufficient relevant experience with combinatorics and game theory to provide meaningful insights into MJ designations in BCH cases:
1) at age five I wrote my first computer programs;
2) at 12 I sold my first such program;
3) at 15 I was admitted on scholarship to both Phillips Academy Andover and Phillips Exeter Academy, and matriculated to Exeter;
4) Exeter integrates combinatorics into its standard math curriculum starting in precalculus, which I completed in an accelerated program for only the best math students; and

5) as an 11th grader I scored the highest possible on the college-level (AP) computer-science test and won Exeter's highest computer-science prize, in large part for my work in game theory (AI) and combinatorics.

19. There were 21,600 possible combinations of MJ designations for the six (6) above post-1993 BCH cases, i.e. excluding *Nadal-Ginard*. The odds of MJs Bowler and Sorokin splitting them all, as they in fact did, are 1:1,350 or 0.074%. This is less likely than flipping a coin ten (10) times and getting only heads.

20. Massachusetts is a small district in the smallest federal circuit; its volume of cases is insufficient to explain one anomaly like the Bowler-Sorokin-BCH nexus. Basically, the number of cases is too few to expect, reasonably, such an unlikely correlation; or, put another way, one would have to flip a coin many, many times in order to expect to see heads on ten (10) consecutive flips and the number of coin flips in this district is too few.

21. Although one may reasonably question whether the rigging of the MJ-designation system started after *Nadal-Ginard*, even including that case, the odds of MJs Bowler and Sorokin splitting all or all but one of the seven (7) BCH cases, as they have done, remain unlikely: 2:675 or 0.2963%. That's roughly three out of 1,000 or less likely than flipping a coin eight times and getting only heads (0.390625%).

22. Excluding *Nadal-Ginard*, the odds of MJ Bowler and any one other MJ splitting all of the latest six BCH cases, as happened, are 1:180 or 0.556%. That's 25% less likely than flipping a coin seven (7) times and receiving all heads.

23. And the odds are still miniscule of MJ Bowler and any one other MJ splitting all or all but one of the seven (7) BCH cases, i.e. including *Nadal-Ginard*: 1,159:54,000 or 2.1462962% or about 21.5 out of 1,000. In comparison, the likelihood of flipping a coin five (5) times and receiving all heads is 3.125%.

24. Even including *Nadal-Ginard* and ignoring the fact that two MJs appear, effectively, to have split these BCH cases, the odds of randomly designating MJ Bowler to at least three (3) of the latest six (6) BCH cases are 7:80 or 8.75%. And it is reasonable to question the randomness of that result.

25. There may be other cases involving BCH that are excluded from LexisNexis. Bluntly, many cases are so obviously weak or insignificant that rigging the MJ-designation or judge-assignment processes would be counterproductive. Rigging the system for doomed or inconsequential cases would raise the odds of being caught with no discernable benefit and could create appellate issues that prolong otherwise trival BCH cases. The cases that appear in LexisNexis, in contrast, either 1) required orders of enough significance to appear in Lexis (not a very high bar, but better than none at all) or 2) were cited in support of another decision (and are thus operative parts of the functional case law in the district).

26. One must also ignore cases directly designated under Local Rule 40.1(g), e.g., *The Children's Hospital Corporation v. Cakir*, 15-cv-13281.

27. Also of note, there were four (4) cases in LexisNexis involving Harvard Medical School affiliate The Dana-Farber Cancer Institute. Two had designated MJs. And one of those was designated to MJ Bowler:
1) MJ Bowler—*Mehic v. Dana-Farber Cancer Institute*, 15-cv-12934; and
2) MJ Cabell—*Dana-Farber Cancer Institute, Inc. v. Ono Pharmaceutical Co.*,

- PAGE 3 OF 7 -

Ltd., 15-cv-13443.

28. The case split for BCH and Dana-Farber cases is

| | |
|---|---|
| Bowler: 4 | Cohen: 0 |
| Sorkin: 3 | Boal: 0 |
| Karol: 1 | Dein: 0 |
| Cabell: 1 | Hennessy: 0 |
| Collings: 0 | Kelley: 0. |
| Alexander: 0 | |

29. Cases involving Harvard affiliates Brigham & Women's Hospital (BWH) and Massachusetts General Hospital (MGH), over which MJ Bowler could never preside given Her Honor's immediately obvious connections to BWH and MGH, provide a control experiment. MJ Bowler's connections to the BCH and Dana-Farber cases are significant but nonobvious, so Her Honor gets assigned and not much is or was said about disqualification. It would be unavoidably scandalous, however, for MJ Bowler to enter significant rulings on BWH and MGH/Partners cases, thus rendering no benefit to rigging the system for these cases:

| | |
|---|---|
| Collings: 5 | Cabell: 1 |
| Boal: 5 | Karol: 0 |
| Dein: 4 | Alexander: 0 |
| Sorokin: 4 | Cohen: 0 |
| Kelly: 4 | Hennessy: 0. |
| Bowler: 3 | |

| Case name | Initial MJ designation |
|---|---|
| Pressman v. Brigham Medical Grp. 92-cv-10463 | Collings |
| Perkins v. Brigham & Women's Hospital, 93-cv-11701 | None |
| Heinrich, et al. v. Sweet, et al., 97-cv-12134 | None |
| Choi v. Massachuetts General, et al., 99-cv-10687 | None |
| Joseph, et al. v. Sweet, et al., 00-cv-11026 | None |
| Massachusetts Eye & Ear v. Novartis Ophthalmics, 01-cv-10747 | None |
| Porter v. Tap Pharmaceutical, et al., 01-cv-10861 & related cases | None |
| Palomar Med. Techs. v. Altus Med., Inc., 02-cv-10258 | None |
| Alexander v. Brigham & Women's Physicians Organization, Inc., 04-cv-10738 | None |
| United States v. Partners Healthcare System, Inc., 05-cv-11576 | None |
| Moore v. Brigham & Women's Hospital, 05-cv-40123 | None |
| Jones v. Brigham and Women's Hospital, 07-cv-11481 | Collings |
| Bradley v. Sugarbaker, 07-cv-12319 | Sorkin |
| Sagun Tuli v. Brigham & Women's Hospital, 07-cv-12338 | Bowler |
| Maher v. Mass. Gen. Hosp. Long Term Disability Plan, 08-cv-10460 | None |
| Rubin v. The General Hospital, 09-cv-10040 | Collings |
| Palomar Medical Technologies, Inc. v. TRIA Beauty, Inc., 09-cv-11081 | None |
| Meredy v. Massachusetts General Hospital, 09-cv-11381 | None |
| Hamilton v. Partners Healthcare, 09-cv-11461 | None |
| Greene v. Ablon, 09-cv-10937 | None |
| Reardon v. Massachusetts General Hospital Corporation, 09-cv-11900 | None |
| Phillips v. Medtronic, Inc., 10-cv-10305 | Bowler |
| Shervin v. Partners Healthcare System, Inc., 10-cv-10601 | Sorkin |
| Li v. Huffman, 11-cv-11557 | Collings |
| Kinghorn v. The General Hospital Corporation, 11-cv-12078 | Dein |
| Culton v. Brigham & Women's Hospital, Inc., 12-cv-10440 | Bowler |
| Fertik v. Stevenson, 12-cv-10795 | Kelley |
| Goldstein v. Faulkner Hospital, 12-cv-11974 | Boal |
| Brigham and Women's Hospital, Inc. v. Perrigo Company, 13-cv-11640 | Sorkin |
| Toussaint v. Brigham and Women's Hospital, Inc., 13-cv-12083 | Collings |

| | |
|---|---|
| *Partners Healthcare System, Inc. v. Fisher Scientific Company LLC,* 14-cv-10382 | Sorokin |
| *Chacon v. Brigham and Women's Hospital,* 14-cv-13235 | Dein |
| *Rafi v. Brigham and Women's Hospital,* 14-cv-14017 | Boal |
| *Anversa v. Partners HealthCare System, Inc.,* 14-cv-14424 | Kelley |
| *Vertus v. General Hospital Corporation, The,* 15-cv-10888 | Dein |
| *Sams v. Massachusetts General Hospital,* 15-cv-11057 | Boal |
| *Wollman v. Massachusetts General Hospital, Inc.,* 15-cv-11890 | Dein |
| *Rosbeck v. Corin Group PLC,* 15-cv-12954 | Boal |
| *Rafi v. Morton,* 18-cv-10482 | Boal |
| *General Hospital Corp. v. Esoterix Genetic Labs, LLC.,* 18-cv-11360 | Cabell |
| *Ventura v. Massachusetts General Hospital,* 18-cv-12159 | Kelley |
| *Kane v. Mass. Gen. Hospital,* 20-cv-11266 | Kelley |

30.  The above split of BWH and MGH/Partners cases much closer resembles what one expects from a random designation process, given the dates of the cases and relevant times on the bench.

31.  *United States v. Gottesfeld,* as a criminal case, was not purportedly designated by a random process, however.

32.  Through a retired Boston federal judge, key facts emerged about the MJ-designation process for criminal cases in the district. *Cf.* DQ. Aff. ¶¶ 195–198, dkt. 346 (Dec. 31, 2018).

33.  As my counsel learned, The U.S. District Court for the District of Massachusetts selects a monthly rotating emergency magistrate judge (EMJ) to hear, among other matters, search-warrant applications.

34.  The Court also selects a monthly rotating backup emergency magistrate judge (BEMJ) to perform the EMJ's duties when the EMJ is unavailable.

35.  The Court communicates the identities of the EMJ and BEMJ to the U.S. attorney's office, so prosecutors know in every case ahead of time which MJ will hear each specific warrant application.

36.  The Court then designates subsequent criminal cases back to the MJ who issued the relevant search warrant.

37.  This system allows the government to shop criminal cases to the particular MJ it prefers for each case—indeed it seems designed to allow the government to do so.

38.  Thus, in cases in which the government is in no hurry to make an arrest, prosecutors can and do simply wait for the MJ they prefer for a particular case to become EMJ, or to become BEMJ and for the EMJ to be unavailable. Then they present a search-warrant application to that preferred MJ and thereby lock in that preferred MJ for the remainder of the case.

39.  Based upon a statistical analysis by my previous court-appointed trial attorney, for example, MJ Bowler was BEMJ in September 2014, when the government waited until the end of the month—when the EMJ was unavailable—to go to MJ Bowler with the application to search my residence.

40.  My criminal case was first designated to MJ Hennessy but later transferred back to MJ Bowler.

41.  This system intentionally and unfairly disadvantages criminal defendants.

42.  In my case, for instance, the government had submitted an *ex parte* search-warrant application to MJ Bowler, which remained under seal and unread by myself and my counsel during my initial appearance and detention hearing.

Search warrant and application, dkt. 78-1.

43. This warrant application, in ¶ 8, accused me not only of disrupting BCH, but of disrupting the network on which BCH *and other Harvard-affiliated hospitals communicate.* Id.

44. At all relevant times my prosecutors knew that Harvard Medical School (HMS) effectively oversees its teaching hospitals, *inter alia*, BCH, BWH, Beth Israel Deaconess Medical Center (BID), Dana-Farber Cancer Institute, and MGH.

45. At all relevant times my prosecutors knew that MJ Bowler had worked as a research assistant at HMS.

46. At all relevant times my prosecutors knew that MJ Bowler was married to a HMS cardiology professor and BWH senior cardiologist.

47. At all relevant times my prosecutors knew that MJ Bowler remained a "Member of the Corporation" of New England Baptist Hospital and that Her Honor had chaired its board, as well as the fact that New England Baptist Hospital runs its teaching programs in collaboration with HMS.

48. At all relevant times my prosecutors knew that MJ Bowler sits on MGH's Visiting Committee on Neuroscience.

49. At all relevant times my prosecutors knew that MJ Bowler had directed The Boston Foundation (TBF), which raises money for Harvard hospitals and The Wayside Youth and Family Support Network (Wayside).

50. At all relevant times my prosecutors knew that MJ Bowler personally molded and harbored personal knowledge of disputed evidentiary facts about the Massachusetts child-welfare system that became a lightning rod of public criticism during and because of the events in controversy in my case.

51. My prosecutors wanted MJ Bowler for my case and This Court's EMJ/BEMJ system allowed them to judge shop for Her Honor and then hide at my detention hearing their plea to Her Honor's personal and spousal interests. Search-warrant affidavit ¶ 8, dkt. 78-1.

52. The average member of the public likely overestimates the average wait for prosecutors to get their preferred MJ, but a mathematical analysis reveals the true numbers:

| No. of MJs | Ave. wait for pref. MJ as either EMJ/BEMJ | Ave wait for pref. MJ as EMJ | Max wait for either role | Max wait for EMJ |
|---|---|---|---|---|
| 2 | 0 | 8 days | 0 | 31 days |
| 3 | 5 days | 21 days | 31 days | 62 days |
| 4 | 13 days | 35 days | 62 days | 92 days |
| 5 | 22 days | 49 days | 92 days | 103 days |
| 6* | 31 days | 64 days | 103 days | 133 days |
| 7 | 40 days | 79 days | 133 days | 164 days |

* Six (6) MJs were active in Boston when prosecutors shopped my case to MJ Bowler.

53. Prosecutors had an average wait of just 31 days in order to have 100% certainty of locking in their preferred MJ for the remainder of my case. In comparison, had This Court forced prosecutors to go through a random draw of the six active MJs, then they would have had a 16.67% chance of drawing MJ Bowler.

54. An affidavit by a Ph.D. statistician confirming my calculations will soon be filed separately.

55. But some events from my case are so ludicrously unlikely—and suspicious—that their odds likely defy calculation.

56. For example, my original twelve jurors included both the former accountant for Judge Gorton's child-welfare charity that is partnered with BCH and a Wayside alumnus.

57. It is reasonable to question the selection of my jury pool and the impartiality of the MJ specifically sought out by prosecutors for my case.

I declare the foregoing is true and correct under the penalty of perjury under the laws of The United States of America. Executed Friday, August 6, 2021.

by: _____
Martin S. Gottesfeld

Exhibit B

## *CURRICULUM VITAE*

## HONORABLE MARIANNE B. BOWLER
## UNITED STATES MAGISTRATE JUDGE

**PROFESSIONAL EXPERIENCE:**

**1990-present**     <u>**United States Magistrate Judge**</u>
**United States District Court/Boston**
**District of Massachusetts**

Responsible for handling civil cases from filing through resolution by jury trial and criminal cases from the filing of charges in felony matters until trial and misdemeanor matters through trial and sentencing. Broad subject matter jurisdiction.

Extensive experience with high profile criminal cases.

The court has one of the busiest intellectual property dockets in the country because of the numerous academic institutions and the related commercial spinoffs in the Boston area.

Additional judicial duties include serving as a mediator as part of the Alternate Dispute Resolution (ADR) Program of the United States District Court of the District of Massachusetts (since 2002). Conducted over 400 mediations in the Districts of Massachusetts, Puerto Rico and Rhode Island involving a wide range of subject areas including complex business litigation, all types of intellectual property disputes, discrimination and civil rights, admiralty, personal injury, environmental matters and products liability cases resulting in hundreds of millions of dollars in settlements with an average annual settlement rate in excess of 80 percent. Magistrate judge representative to the court's Committee on ADR, which administers the court's ADR program, which handles about 200 cases annually. Between 2004 and 2010 responsible for successfully mediating all of the DES (diethylstilbestrol) cases filed in the District of Massachusetts.

Frequent guest speaker and lecturer on the subject of mediation.

Special interests: admiralty, biotechnology, intellectual property, international law, medicolegal issues and product liability.

**2002-2005**  **Chief Magistrate Judge**
Administrative responsibilities and liaison to the Chief Judge for the seven Magistrate Judges serving in the District of Massachusetts.

**2010 - 2012**  Observer Member to the Judicial Council of the First Circuit

**2008 - Present**  Member of the International Judicial Relations Committee of the Judicial Conference of the United States (by appointment of the Chief Justice of the Supreme Court of the United States)

* * * * *

**1978-1990**  **Assistant U.S. Attorney**
District of Massachusetts
United States Department of Justice

**1989-1990**  **Senior Litigation Counsel** First AUSA in the District of Massachusetts to be awarded this title by the Department of Justice in recognition for outstanding litigation skills. Duties included training Assistant U.S. Attorneys, serving as a litigation consultant in the U.S. Attorney's Office and handling complex litigation and monitoring the settling of cases.

Responsible for the defense of the government in <u>Martin Gaffney, et al. v. U.S.A.</u>, which alleged that medical malpractice by U.S. Navy physicians resulted in a stillborn birth and the mother's subsequent need for blood transfusions which resulted in the mother, her husband and an afterborn child developing AIDS, which caused the death of all the family members.

**1988-1989**  **Executive Assistant United States Attorney**
First person to serve in this capacity in the District of Massachusetts. Responsibilities included serving as Acting U.S. Attorney in the absence of the U.S. Attorney, making major management and prosecutorial decisions, overall supervision, press relations and oversight of the administrative and civil divisions.

**1986-1987**  **Attorney General's Advocacy Institute, Wash., D.C.**
Selected by the Attorney General to direct the civil and appellate educational programs for all Assistant U.S. Attorneys nationwide. Responsibilities included managing an intensive two week civil litigation course for recently named Assistant U.S. Attorneys and a one week appellate program for senior attorneys. Lectures to U.S. Attorneys' offices around the country on medical malpractice, settlement techniques, mediation and alternative dispute resolution. Specialized lectures on the

selection and preparation of expert witnesses involving scientific, medical or technical subjects.

**1980-1986**   **Civil Division, Trial Attorney**
Responsible for a wide variety of civil litigation at the trial and appellate levels, with special emphasis on complex personal injury cases, swine flu litigation, asbestos litigation and medical malpractice. Extensive use of mediation and alternative dispute resolution in conjunction with traditional trial practice.

Handled 35 swine flu vaccine cases totaling in excess of $42 million in claims. There were no judgments against the government. Liability was admitted in one wrongful death case and a trial on the issue of damages resulted in an award of $218,000. Four other cases were settled for a total payout of $160,000. The government prevailed at trial in all of the other cases and in all the appeals.

**1979**   **New England Strike Force Against Organized Crime**
Special assignment to the prosecution trial team in a 15 defendant RICO case. The case was the second prosecution in Massachusetts under the RICO statute. The trial lasted three months.

**1978**   **Civil Division, Trial Attorney**
General civil litigation, including both affirmative litigation and the defense of the government.

**1978**   **Assistant District Attorney**
Middlesex County, Cambridge, MA
Prosecution of criminal cases in the District and Superior Courts. Co-Prosecutor in the first degree murder trial Commonwealth v. Anthony Jackson, which resulted in conviction and life sentence without parole.

**1977-1978**   **Deputy Chief Law Clerk to the Justices of the Massachusetts Superior Court**
Responsible for the management of the law clerk program, hiring of future law clerks and special assignments for the Chief Justice. Assigned to complex cases, primarily first degree murder cases.

**1976-1977**   **Law Clerk to the Justices of the Superior Court**

**1969-1976**   **Managing Editor, "This Week in Public Health"**
The official publication of the Mass. Department of Public Health.

**1969-1976**   **Freelance Writer - Medical and Scientific Subjects**
Articles appeared in numerous newspapers and magazines

**1967-1969**     **Research Assistant in Biochemistry - Harvard Medical School**
Subject area of interest: Calcium Retention in Patients with Metabolic Bone Disease

**EDUCATION:**     J.D. *cum laude* (1976) Suffolk Law School, Boston
Class Rank: 5/247
Honors: Dean's List - All semesters
John B. Hynes Scholarship (two years)
Hiram Archer Scholarship (one year)

A.B. (1967) Regis College, Weston, Mass. Pre-med. Senior thesis
entitled "A Report on the Current Status of the Ovarian Hormone Estrogen"

Doctor of Laws, *honoris causa*
Regis College, 2003

Doctor of Laws (Honorary)
Suffolk University, 1994

**`SELECTED PROFESSIONAL ORGANIZATIONS:**

American Bar Association
American Inns of Court
Boston Bar Association
Boston Intellectual Property Inn of Court- Vice President 2011-2012
   President 2012-2013
Boston College Inn of Court for Intellectual Property, Founding Co-president
   in 1997
Maritime Law Association of the United States- Elected to Honorary
   Membership in 2008
Suffolk Law School Alumni Association - President,1980/81 (First woman
   president)

**PUBLICATIONS:**

Pfeffer MA, Bowler MB. Access to safety data–stockholders versus
prescribers. New England Journal of Medicine 2011; 365: 1-3

Mass. Bar Assoc. Civil Litigation-March 1993 ("CL53") Resolving discovery
disputes in federal court

Acknowledged in the preface of Seamen's Damages for Death and Injury,
1988 supplement. Harrison Co. (1988).

Acknowledged: Flanagan, B. and Nichols Jr., G. Bone matrix turnover and balance in vitro:II. The effect of ageing. Journal of Clinical Investigation 1969; 48(4): 607-612

Acknowledged: Flanagan, B. and Nichols Jr., G. Bone matrix turnover and balance in vitro:I. The effect of parathyroid hormone and thyrocalcitonin. Journal of Clinical Investigation 1969; 48(4): 595-606

Printout of published opinions available upon request.

## SELECTED AWARDS/HONORS:

| | |
|---|---|
| 2012- | Distinguished Public Service Award - Boston Patent Law Assoc. |
| 2011- | U.S Ukranian Foundation - Appreciation Award |
| 2004 - | Boston Bar Assoc. - Citation for Judicial Excellence at Annual Law Day Dinner |
| 1991 - | Suffolk University Law School - Outstanding Alumni Award for "Exceptional Professional Achievements" (first woman to receive award). |
| 1989 - | MCLE, Certificate of Appreciation for Participation in Educational Programs. |
| 1988 - | Massachusetts Bar Association, Certificate of Appreciation for Professional Education Program. |
| 1987 - | United States Department of Justice, Certificate of Appreciation for Outstanding Services (conferred in Washington, D.C.). |
| 1986 - | 10th Special Forces, Certificate of Appreciation. |

**Listed in**

Who's Who in America
Who's Who in American Women
Who's Who in American Law

## GUEST LECTURER:

Boston Bar Association
Boston Patent Law Association
Discovering Justice, Boston
Federal Bar Association
Federal Court Forum
Financial Executive Institute

Government of Kuwait, Kuwait City (1997-first US woman judge to speak in
    Kuwait
Government of Egypt (2012)-presentation on enforcement of foreign court
    orders in cross border financial investigations, presentations before
    the Court of Cassation and Cairo University Law School
Judicial Institute of the United Arab Emirates at Sharjah (2011)-presentation
    on copyright and trademark law
Massachusetts Bar Association
Massachusetts Continuing Legal Education
Massachusetts Federal Bar Association
Open World
Practicing Law Institute, NYC (Understanding Intellectual Property License)
United States Department of Justice, Washington, D.C. - Attorney General's
    Advocacy Institute
Women's Bar Association
U.S. Embassy, Belgrade, Serbia 2012

In addition, numerous law schools, foreign judges, prosecutors, law
enforcement agents and civic organizations


**SELECTED CIVIC ACTIVITIES:**

**2005-2008**          **Board of Overseers**
                       **USS Constitution Museum, Boston**

**2003-2007**          **Board of Directors, Discovering Justice,**
                       **James D. St. Clair Court Education Project**

**1999-Present**       **Visiting Committee on Neuroscience,**
                       **Massachusetts General Hospital**

**1996-Present**       **Board of Directors, South Cove Manor (non-profit nursing facility serving**
                       **Boston's Chinatown)**

**1995-2005**          **Board of Directors, The Boston Foundation**

**1994-2012**          **Trustee, Suffolk University, Boston**

**1994-2004**          **Member of Visiting Committee, Museum School**
                       **(Boston Museum of Fine Arts)**

**1990-1996**          **Chairman, Board of Trustees, New England Baptist Hospital, Boston**

**1996-Present**      Honorary Life Trustee, New England Baptist Hospital, Boston
                      Trustee Member - Credentials Committee

**1983-Present**      Member of the Corporation. New England Baptist Hospital, Boston

**1982-1985**         Board of Directors, Catholic Charitable Bureau of Boston

Exhibit C

# Harvard Catalyst Profiles

Contact, publication, and social network information about Harvard faculty and fellows.

(https://catalyst.harvard.edu)

# Marc Alan Pfeffer, M.D., Ph.D.

| | |
|---|---|
| Title | Victor J. Dzau Distinguished Professor of Medicine |
| Institution | Brigham and Women's Hospital |
| Department | Medicine |
| Address | Brigham and Women's Hospital |
| | Medicine |
| | 75 Francis St |
| | Boston MA 02115 |
| Phone | 617/732-5681 |
| Fax | 617/732-5291 |
| Email | mpfeffer@rics.bwh.harvard.edu |
| vCard | Download vCard (https://connects.catalyst.harvard.edu/Profiles/display/person/40685/Mcwas/vcard) (login for email (https://connects.catalyst.harvard.edu/Profiles/login/default.aspx?pin=send&method=login&edit=false)) |

research activities and funding    |    selected publications

## ⊟ Research

### ⊟ research activities and funding

The research activities and funding listed below are automatically derived from NIH ExPORTER and other sources, which might result in incorrect or missing items. Faculty can login (https://connects.catalyst.harvard.edu/Profiles/login/default.aspx?pin=send&method=login&edit=true) to make corrections and additions.

Most Recent | List All

1. P20HL101968      (PFEFFER, MARC ALAN)          Apr 1, 2010 - Mar 31, 2012
   NIH
   Cardiac progenitor cell therapy for advanced ischemic cardiomyopathy.
   Role: Principal Investigator

2. M01RR002635      (GOTTLIEB, GARY L.)           Feb 1, 1997 - Nov 30, 2004
   NIH
   General Clinical Research Center
   Role: Co-Principal Investigator

3. P50HL036568      (WILLIAMS, GORDON H)          Dec 1, 1985 - Nov 30, 1991
   NIH
   SPECIALIZED CENTER OF RESEARCH IN HYPERTENSION
   Role: Principal Investigator

4. R01HL038074      (PFEFFER, MARC A)            Sep 1, 1985 - Aug 31, 1987
   NIH
   CARDIAC HYPERTROPHY AND FAILURE
   Role: Principal Investigator

## ⊟ Bibliographic

### ⊟ selected publications

Publications listed below are automatically derived from MEDLINE/PubMed and other sources, which might result in incorrect or missing publications. Faculty can login (https://connects.catalyst.harvard.edu/Profiles/login/default.aspx?pin=send&method=login&edit=true) to make corrections and additions.

---

Pfeffer's Networks

Click the Explore buttons for more information and interactive visualizations.

Concepts (975) ⬡

Heart Failure
(https://connects.catalyst.harvard.edu/Profiles/profile/1206483)
Myocardial Infarction
(https://connects.catalyst.harvard.edu/Profiles/profile/1206510)
Angiotensin-Converting Enzyme Inhibitors
(https://connects.catalyst.harvard.edu/Profiles/profile/1209001)
Captopril
(https://connects.catalyst.harvard.edu/Profiles/profile/1220064)
Tetrazoles
(https://connects.catalyst.harvard.edu/Profiles/profile/1229106)

Explore
(https://co
nnects.ca
talyst.har
vard.edu/
Profiles/p
rofile/123
2171/217)

Co-Authors (94) ⬡

Solomon, Scott
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815)
Shah, Amil
(https://connects.catalyst.harvard.edu/Profiles/profile/1240323)
Desai, Akshay
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660)
Braunwald, Eugene
(https://connects.catalyst.harvard.edu/Profiles/profile/1256822)
Claggett, Brian
(https://connects.catalyst.harvard.edu/Profiles/profile/26218200)

Explore
(https://co
nnects.ca
talyst.har
vard.edu/
Profiles/p
rofile/123
2171/363)

Similar People (60) ⬡

Bhatt, Deepak
(https://connects.catalyst.harvard.edu/Profiles/profile/1233412)
Solomon, Scott
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815)
Desai, Akshay
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660)
Braunwald, Eugene
(https://connects.catalyst.harvard.edu/Profiles/profile/1256822)
Januzzi, James
(https://connects.catalyst.harvard.edu/Profiles/profile/1259936)

Explore
(https://co
nnects.ca
talyst.har
vard.edu/
Profiles/p
rofile/123
2171/494)

Return to Top

88. Pfeffer MA. Learning From Major Clinical Trials: Bending Without Breaking. Circulation. 2017 12 05; 136(23):2207-2209. PMID: 28203564 (//www.ncbi.nlm.nih.gov/pubmed/29203564).

Citations:
[Altmetric  8  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=29992072)
   Fields: [Car] [Vas]   Translation: [Human]

89. Kristensen SL, Jhund PS, Lee MMY, Keber L, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Granger CB, Yusuf S, Pfeffer
MA, Swedberg K, McMurray JJV. Prevalence of Prediabetes and Undiagnosed Diabetes in
Patients with HFpEF and HFrEF and Associated Clinical Outcomes. Cardiovasc Drugs Ther.
2017 Dec; 31(5-6):545-549. PMID: 28948430 (//www.ncbi.nlm.nih.gov/pubmed/28948430).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28948430/ [Altmetric] [Vas] [Car] [Human] citedby/)

90. Wolsk E, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Keber L,
Pocock S, Yusuf S, Swedberg K, McMurray JJV, Granger CB, Pfeffer MA, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Contribution of cardiac and
extra-cardiac disease burden to risk of cardiovascular outcomes varies by ejection fraction in
heart failure. Eur J Heart Fail. 2018 03; 20(3):504-510. PMID: 29193462
(//www.ncbi.nlm.nih.gov/pubmed/29193462).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/29193462/citedby/)
[Altmetric  2  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=30920268)
   Fields: [Car]   Translation: [Human]

91. Selvaraj S, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Shah
SJ, Anand I, Rouleau JL, Desai AS
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Lewis EF, Pitt B, Sweitzer NK,
Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815).
Systolic blood pressure and cardiovascular outcomes in heart failure with preserved ejection
fraction: an analysis of the TOPCAT trial. Eur J Heart Fail. 2018 03; 20(3):483-490. PMID:
29148144 (//www.ncbi.nlm.nih.gov/pubmed/29148144).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/29148144/citedby/)
[Altmetric  2  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=29038368)
   Fields: [Car]   Translation: [Human]

92. Seferovic JP, Pfeffer MA, Claggett B
(https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Desai AS
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660), de Zeeuw D, Haffner SM,
McMurray JJV, Parving HH, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Chaturvedi N. Three-question
set from Michigan Neuropathy Screening Instrument adds independent prognostic information
on cardiovascular outcomes: analysis of ALTITUDE trial. Diabetologia. 2018 03; 61(3):581-588.
PMID: 29098323 (//www.ncbi.nlm.nih.gov/pubmed/29098323).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/29098323/citedby/)
[Altmetric  12  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=29545458)
   Fields: [End]   Translation: [Human]

93. Balaj NS, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Lewis
EF, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Fang JC,
O'Meara E, Shah SJ, Sweitzer NK, Fleg JL, Pitt B, Rouleau A, Fine J
(https://connects.catalyst.harvard.edu/Profiles/profile/1245094), Pfeffer MA, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Influence of ejection fraction on
cause-specific mortality in heart failure with preserved ejection fraction. Eur J Heart Fail. 2018
04; 20(4):815-818. PMID: 29087764 (//www.ncbi.nlm.nih.gov/pubmed/29087764).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/29087764/citedby/)

94. Wolsk E, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Diaz R,
Dickstein K, Gerstein HC, Keber L, Lawson FC, Lewis EF, Maggioni AP, McMurray JJV,
Probstfield JL, Riddle MC, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Tardif JC, Pfeffer MA.
Increase in Natriuretic Peptides Precede Heart Failure Hospitalization in Patients With a
Recent Coronary Event and Type 2 Diabetes Mellitus. Circulation. 2017 10 17; 136(16):1560-
1562. PMID: 29038210 (//www.ncbi.nlm.nih.gov/pubmed/29038210).

Citations:
[Altmetric  35  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=27608382)
   Fields: [Car] [Vas]   Translation: [Human] [Cell]

95. Vazir A, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Pitt B,
Anand I, Sweitzer N, Fang J, Fleg J, Rouleau J, Shah S, Pfeffer MA, Solomon SD

Return to Top

Ahmad T, Demissei BG, Fiuzat M, Fiang G, Flag V, Anderson J, Oliver D, Felker GM, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Prognostic Importance of
Temporal Changes in Resting Heart Rate in Heart Failure and Preserved Ejection Fraction:
From the TOPCAT Study. JACC Heart Fail. 2017 11; 5(11):782-791. PMID: 29032132
(//www.ncbi.nlm.nih.gov/pubmed/29032132).

5
Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/29032132/citedby/).
[Altmetric  13   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=28595942)
Fields:  [Car]  Translation:  [Humans]

96. Welsh P, Kou L, Yu C, Anand I, van Veldhuisen DJ, Maggioni AP, Desai AS
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer MA, Cheng S,
Gullestad L, Aukrust P, Ueland T, Swedberg K, Young JB, Kattan MW, Sattar N, McMurray JJV.
Prognostic Importance of emerging cardiac, inflammatory, and renal biomarkers in chronic heart
failure patients with reduced ejection fraction and anaemia: RED-HF study. Eur J Heart Fail.
2018 02; 20(2):268-277. PMID: 28960777 (//www.ncbi.nlm.nih.gov/pubmed/28960777).

10
Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28960777/citedby/)
[Altmetric  7   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=25836885)
Fields:  [Car]  Translation:  [Humans]

97. Platz E (https://connects.catalyst.harvard.edu/Profiles/profile/1236238), Jhund PS, Claggett BL
(https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Pfeffer MA, Swedberg K,
Granger CB, Yusuf S, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), McMurray JJ. Prevalence and
prognostic importance of precipitating factors leading to heart failure hospitalization: recurrent
hospitalizations and mortality. Eur J Heart Fail. 2018 02; 20(2):295-303. PMID: 28872259
(//www.ncbi.nlm.nih.gov/pubmed/28872259).

12
Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28872259/citedby/)

98. Kalil RS, Carpenter MA, Ivanova A, Gravens-Mueller L, John AA, Weir MR, Pesavento T,
Bostom AG, Pfeffer MA, Hunsicker LG. Impact of Hyperuricemia on Long-term Outcomes of
Kidney Transplantation: Analysis of the FAVORIT Study. Am J Kidney Dis. 2017 Dec;
70(6):762-769. PMID: 28801121 (//www.ncbi.nlm.nih.gov/pubmed/28801121).

3
Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28801121/citedby/)
[Altmetric  22   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=23740352)
Fields:  [Nep]  Translation:  [Humans]

99. Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Pfeffer MA. Beyond
the P-value and the sound bite: learning from 'negative' clinical trials. Eur Heart J. 2017 08 07;
38(30):2349-2351. PMID: 28810871 (//www.ncbi.nlm.nih.gov/pubmed/28810871).

Citations:
[Altmetric  2   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=21838961)
Fields:  [Car]  Translation:  [Humans]

100. Baigent C, Herrington WG, Coresh J, Landray MJ, Levin A, Perkovic V, Pfeffer MA, Rossing P,
Walsh M, Wanner C, Wheeler DC, Winkelmayer WC, McMurray JJV. Challenges in conducting
clinical trials in nephrology: conclusions from a Kidney Disease-Improving Global Outcomes
(KDIGO) Controversies Conference. Kidney Int. 2017 08; 92(2):297-305. PMID: 28709600
(//www.ncbi.nlm.nih.gov/pubmed/28709600).

29
Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28709600/citedby/)
[Altmetric  13   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=21958811)
Fields:  [Nep]  Translation:  [Humans]

101. Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Rizkala AR, Gong
J, Wang W, Anand IS, Ge J, Lam CSP, Maggioni AP, Martinez F, Packer M, Pfeffer MA, Pieske
B, Redfield MM, Rouleau JL, Van Veldhuisen DJ, Zannad F, Zile MR, Desai AS
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Shi VC, Lefkowitz MP,
McMurray JJV. Angiotensin Receptor Neprilysin Inhibition in Heart Failure With
Preserved Ejection Fraction: Rationale and Design of the PARAGON-HF Trial. JACC Heart Fail.
2017 07; 5(7):471-482. PMID: 28662936 (//www.ncbi.nlm.nih.gov/pubmed/28662936).

45
Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28662936/citedby/)
[Altmetric  312   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=21357812)
Fields:  [Car]  Translation:  [Humans]

102. Hegde SM (https://connects.catalyst.harvard.edu/Profiles/profile/32357303), Claggett B
(https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Shah AM
(https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Lewis EF, Anand I, Shah SJ,
Sweitzer NK, Fang JC, Pitt B, Pfeffer MA, Solomon SD.
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Physical Activity and Prognosis

Return to Top

(https://www.ncbi.nlm.nih.gov/pubmed/28558715). Physical Activity and Prognosis in the TOPCAT Trial (Treatment of Preserved Cardiac Function Heart Failure With an Aldosterone Antagonist). Circulation. 2017 Sep 12; 136(11):982-992. PMID: 28637881 (//www.ncbi.nlm.nih.gov/pubmed/28837881).

16

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28837881/citedby/)
[Altmetric 55 (https://www.altmetric.com/details.php?domain=connects.catalyst.harvard.edu&citation_id=21230012)]
Fields: [Car] [Vas] Translation: [Humans]

103. Charytan DM (https://connects.catalyst.harvard.edu/Profiles/profile/1233436), Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Ivanovich P, Remuzzi G, Cooper ME, McGill JB, Parving HH, Parfrey P, Singh AK, Burdmann EA, Levey AS, de Zeeuw D, Eckardt KU, McMurray JJV, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Lewis EF, Pfeffer MA. ESRD After Heart Failure, Myocardial Infarction, or Stroke in Type 2 Diabetic Patients With CKD. Am J Kidney Dis. 2017 Oct; 70(4):522-531. PMID: 28599901 (//www.ncbi.nlm.nih.gov/pubmed/28599901).

3

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28599901/citedby/)
[Altmetric 3 (https://www.altmetric.com/details.php?domain=connects.catalyst.harvard.edu&citation_id=21883387)]
Fields: [Rep] Translation: [Humans]

104. Merhi B, Shireman T, Carpenter MA, Kusek JW, Jacques P, Pfeffer M, Rao M, Foster MC, Kim SJ, Pesavento TE, Smith SR, Kew CE, House AA, Gohh R, Weiner DE, Levey AS, Ix JH, Bostom A. Serum Phosphorus and Risk of Cardiovascular Disease, All-Cause Mortality, or Graft Failure in Kidney Transplant Recipients: An Ancillary Study of the FAVORIT Trial Cohort. Am J Kidney Dis. 2017 Sep; 70(3):377-385. PMID: 28579423 (//www.ncbi.nlm.nih.gov/pubmed/28579423).

4

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28579423/citedby/)
[Altmetric 6 (https://www.altmetric.com/details.php?domain=connects.catalyst.harvard.edu&citation_id=20834591)]
Fields: [Rep] Translation: [Humans]

105. Wolsk E, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Pfeffer MA, Diaz R, Dickstein K, Gerstein HC, Lawson FC, Lewis EF, Maggioni AP, McMurray JJV, Probstfield JL, Riddle MC, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Tardif JC, Køber L. Role of B-Type Natriuretic Peptide and N-Terminal Prohormone BNP as Predictors of Cardiovascular Morbidity and Mortality in Patients With a Recent Coronary Event and Type 2 Diabetes Mellitus. J Am Heart Assoc. 2017 May 29; 6(6). PMID: 28554908 (//www.ncbi.nlm.nih.gov/pubmed/28554908).

10

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28554908/citedby/)
[Altmetric 8 (https://www.altmetric.com/details.php?domain=connects.catalyst.harvard.edu&citation_id=20734192)]
Fields: [Car] [Vas] Translation: [Humans]

106. Zannad F, Pfeffer MA, Bhatt DL (https://connects.catalyst.harvard.edu/Profiles/profile/1233412), Bonds DE, Borer JS, Calvo-Rojas G, Fiore L, Lund LH, Madigan D, Maggioni AP, Moyers CM, Rosenberg Y, Simon T, Slough WG, Zalewski A, Zarifa N, Temple R. Streamlining cardiovascular clinical trials to improve efficiency and generalisability. Heart. 2017 08; 103(15):1156-1162. PMID: 28465296 (//www.ncbi.nlm.nih.gov/pubmed/28465296).

3

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28465296/citedby/)
[Altmetric 12 (https://www.altmetric.com/details.php?domain=connects.catalyst.harvard.edu&citation_id=19672848)]
Fields: [Car] Translation: [Humans]

107. de Denus S, O'Meara E, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Lewis EF, Leclair G, Jutras M, Lavoie J, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pitt B, Pfeffer MA, Rouleau JL. Spironolactone Metabolites in TOPCAT - New Insights Into Regional Variation. N Engl J Med. 2017 04 27; 376(17):1690-1692. PMID: 28445660 (//www.ncbi.nlm.nih.gov/pubmed/28445660).

35

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28445660/citedby/)
[Altmetric 171 (https://www.altmetric.com/details.php?domain=connects.catalyst.harvard.edu&citation_id=19615623)]
Fields: [Med] Translation: [Humans]

108. Park M, Katz R, Shlipak MG, Weiner D, Tracy R, Jotwani V, Hughes-Austin J, Gabbai F, Hsu CY, Pfeffer M, Bansal N, Bostom A, Gutierrez O, Sarnak M, Levey A, Ix JH. Urinary Markers of Fibrosis and Risk of Cardiovascular Events and Death in Kidney Transplant Recipients: The FAVORIT Trial. Am J Transplant. 2017 Oct; 17(10):2640-2649. PMID: 28371433 (//www.ncbi.nlm.nih.gov/pubmed/28371433).

Return to Top

69

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28371433/citedby/)
[Altmetric   9   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=20191587)
Fields:  [Tra]   Translation: [Humans]

109. Anand IS, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/28218200), Liu J, Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Rector TS, Shah SJ, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241980), O'Meara E, Fleg JL, Pfeffer MA, Pitt B, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Interaction Between Spironolactone and Natriuretic Peptides in Patients With Heart Failure and Preserved Ejection Fraction: From the TOPCAT Trial. JACC Heart Fail. 2017 04; 5(4):241-252. PMID: 28359411 (https://www.ncbi.nlm.nih.gov/pubmed/28359411).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28359411/citedby/)
[Altmetric   14   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=18349542)
Fields:  [Car]   Translation: [Humans]

110. Foster MC, Weiner DE, Bostom AG, Carpenter MA, Inker LA, Jarolim P (https://connects.catalyst.harvard.edu/Profiles/profile/1245960), Joseph AA, Kusek JW, Pesavento T, Pfeffer MA, Rao M, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Levey AS. Filtration Markers, Cardiovascular Disease, Mortality, and Kidney Outcomes in Stable Kidney Transplant Recipients: The FAVORIT Trial. Am J Transplant. 2017 Sep; 17(9):2390-2399. PMID: 28257169 (https://www.ncbi.nlm.nih.gov/pubmed/28257169).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28257169/citedby/)

111. Cowie MR, Filippatos GS, Alonso Garcia MLA, Anker SD, Baczynska A, Bloomfield DM, Borentain M, Bruins Slot K, Cronin M, Doevendans PA, El-Gazayerly A, Gimpelewicz C, Honarpour N, Janmohamed S, Janssen H, Kim AM, Lautsch D, Laws I, Lefkowitz M, Lopez-Sendon J, Lyon AR, Malik FI, McMurray JJV, Meira M, Figueroa Perez S, Pfeffer MA, Pocock SJ, Ponikowski P, Prasad K, Richard-Lordereau I, Roessig L, Rosano GMC, Sherman W, Stough WG, Swedberg K, Tyl B, Zannad F, Boulton C, De Graeff P. New medicinal products for chronic heart failure: advances in clinical trial design and efficacy assessment. Eur J Heart Fail. 2017 08; 19(5):718-727. PMID: 28345190 (https://www.ncbi.nlm.nih.gov/pubmed/28345190).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28345190/citedby/)

112. Biering-Sørensen T, Shah SJ, Anand I, Sweitzer N, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/28218200), Liu L, Pitt B, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240323). Prognostic importance of left ventricular mechanical dyssynchrony in heart failure with preserved ejection fraction. Eur J Heart Fail. 2017 08; 19(8):1043-1052. PMID: 28322009 (https://www.ncbi.nlm.nih.gov/pubmed/28322009).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28322009/citedby/)
[Altmetric   1   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=32899677)
Fields:  [Car]   Translation: [Humans]

113. Abdul-Rahim AH, Perez AC, MacIsaac RL, Jhund PS, Claggett BL (https://connects.catalyst.harvard.edu/Profiles/profile/28218200), Carson PE, Komajda M, McKelvie RS, Zile MR, Swedberg K, Yusuf S, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Lip GYH, Lees KR, McMurray JJV. Risk of stroke in chronic heart failure patients with preserved ejection fraction, but without atrial fibrillation: analysis of the CHARM-Preserved and I-Preserve trials. Eur Heart J. 2017 Mar 07; 38(10):742-750. PMID: 28426886 (https://www.ncbi.nlm.nih.gov/pubmed/28426886).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28426886/citedby/)
[Altmetric   19   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=17254303)
Fields:  [Car]   Translation: [Humans]

114. Fleming TR, DeMets DL, Roe MT, Wittes J, Calis KA, Vora AN, Meisel A, Bain RP, Konstam MA, Pencina MJ, Gordon DJ, Mahaffey KW, Hennekens CH, Neaton JD, Pearson GD, Andersson TL, Pfeffer MA, Ellenberg SS. Data monitoring committees: Promoting best practices to address emerging challenges. Clin Trials. 2017 Apr; 14(2):115-123. PMID: 28359194 (https://www.ncbi.nlm.nih.gov/pubmed/28359194).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28359194/citedby/)
[Altmetric   12   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=17041991)
Fields:  [Med] [Tra]   Translation: [Humans]

115. Fleming TR, DeMets DL, Roe MT, Wittes J, Calis KA, Vora AN, Meisel A, Bain RP, Konstam MA, Pencina MJ, Gordon DJ, Mahaffey KW, Hennekens CH, Neaton JD, Pearson GD, Andersson TL, Pfeffer MA, Ellenberg SS. Rejoinder. Clin Trials. 2017 04; 14(2):126-127. PMID:

Return to Top

28135837 (//www.ncbi.nlm.nih.gov/pubmed/28135837).

Fields: [Med] [The]

116. Pfeffer MA, McMurray JJ. Clinical Trials Involving Hypertension. N Engl J Med. 2017 01 19; 376(3):290. PMID: 28099831 (//www.ncbi.nlm.nih.gov/pubmed/28099831).

Citations:
[Altmetric 10 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=15575040)
Fields: [Med] Translation: [Humans]

117. Hoenotnee CH, Teng B, Pfeffer MA. Statins and Diabetes: Current Perspectives and Implications for Clinicians. Am J Med. 2017 05; 130(5):504-506. PMID: 28099803 (//www.ncbi.nlm.nih.gov/pubmed/28099803).

3
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/28099803/citedby/)
[Altmetric 59 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=15435040)
Fields: [Med] Translation: [Humans]

118. Jarolim P (https://connects.catalyst.harvard.edu/Profiles/profile/1245960), Ciaggett BL (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Conrad MJ, Carpenter MA, Ivanova A, Bostom AG, Kusek JW, Hunsicker LG, Jacques PF, Gravens-Mueller L, Finn P (https://connects.catalyst.harvard.edu/Profiles/profile/1245004), Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Weiner DE, Levey AS, Pfeffer MA. B-Type Natriuretic Peptide and Cardiac Troponin I Are Associated With Adverse Outcomes in Stable Kidney Transplant Recipients. Transplantation. 2017 Jan; 101(1):182-190. PMID: 26910333 (//www.ncbi.nlm.nih.gov/pubmed/26910333).

3
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26910333/citedby/)
[Altmetric 1 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=6008971)
Fields: [Tra] Translation: [Humans] [Cells]

119. Pfeffer MA. Heart Failure and Hypertension: Importance of Prevention. Med Clin North Am. 2017 Jan; 101(1):19-28. PMID: 27884226 (//www.ncbi.nlm.nih.gov/pubmed/27884226).

3
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27884226/citedby/) [Med]

120. Ferreira JP, Girerd N, Pellicori P, Duarte K, Girard S, Pfeffer MA, McMurray JJ, Pitt B, Dickstein K, Jacobs L, Staessen JA, Butler J, Latini R, Masson S, Mebazaa A, Rocca HP, Delles C, Heymans S, Sattar N, Jukema JW, Cleland JG, Zannad F, Rossignol P. Renal function estimation and Cockcroft-Gault formulas for predicting cardiovascular mortality in population-based, cardiovascular risk, heart failure and post-myocardial infarction cohorts: The Heart 'Omics' in AGEing (HOMAGE) and the high-risk myocardial infarction database initiatives. BMC Med. 2016 Nov 10; 14(1):181. PMID: 27832460 (//www.ncbi.nlm.nih.gov/pubmed/27832460).

9
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27832460/citedby/)
[Altmetric 1 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=13516055)
Fields: [Med] Translation: [Humans] [PH]

121. Pfeffer MA, McMurray JJ. Lessons in Uncertainty and Humility - Clinical Trials Involving Hypertension. N Engl J Med. 2016 Nov 03; 375(18):1756-1766. PMID: 27806228 (//www.ncbi.nlm.nih.gov/pubmed/27806228).

7
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27806228/citedby/)
[Altmetric 185 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=13239615)
Fields: [Med] Translation: [Humans]

122. Erratum to: 36th International Symposium on Intensive Care and Emergency Medicine: Brussels, Belgium. 15-18 March 2016. Crit Care. 2016; 20:347. PMID: 31268434 (//www.ncbi.nlm.nih.gov/pubmed/31268434).

2
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/31268434/citedby/)
[Altmetric 12 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=16117350)
Fields: [Cd]

123. Mc Causland FR, Ciaggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Burdmann EA, Eckardt KU, Kewalramani R, Levey AS, McMurray JJ, Parfrey P, Remuzzi G, Singh AK, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Toto RD, Pfeffer MA. C-Reactive Protein and Risk of ESRD: Results From the Trial to Reduce Cardiovascular Events With Aranesp Therapy (TREAT). Am J Kidney Dis. 2016 Dec; 68(6):873-881. PMID: 27646425 (//www.ncbi.nlm.nih.gov/pubmed/27646425).

9
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27646425/citedby/)
[Altmetric 12 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=12073666)

Return to Top

Fields: (Nep) Translation: (Human)

124. Hawkins NM, Jhund PS, Pozzi A, O'Meara E, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Granger CB, Yusuf S, Pfeffer
MA, Swedberg K, Petrie MC, Virani S, McMurray JJ. Severity of renal impairment in patients
with heart failure and atrial fibrillation: implications for non-vitamin K antagonist oral
anticoagulant dose adjustment. Eur J Heart Fail. 2016 09; 18(9):1162-71. PMID: 27594177
(//www.ncbi.nlm.nih.gov/pubmed/27594177).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27594177/citedby/)

125. Damman K, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815),
Pfeffer MA, Swedberg K, Yusuf S, Young JB, Rouleau JL, Granger CB, McMurray JJ.
Worsening renal function and outcome in heart failure patients with reduced and preserved
ejection fraction and the impact of angiotensin receptor blocker treatment: data from the
CHARM-study programme. Eur J Heart Fail. 2016 12; 18(12):1508-1517. PMID: 27427441
(//www.ncbi.nlm.nih.gov/pubmed/27427441).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27427441/citedby/)
Altmetric   1.   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=3635403)
Fields: (Car) Translation: (Human)

126. Lopes RD, Pieper KS, Stevens SR, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), McMurray JJ, Pfeffer MA,
Leimberger JD, Velazquez EJ. Predicting Outcomes Over Time in Patients With Heart Failure,
Left Ventricular Systolic Dysfunction, or Both Following Acute Myocardial Infarction. J Am Heart
Assoc. 2016 08 27; 5(8). PMID: 27353607 (//www.ncbi.nlm.nih.gov/pubmed/27353607).

Citations:
Altmetric   4   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=9103471)
Fields: (Car) Translation: (Human)

127. Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer MA. The
Future of Clinical Trials in Cardiovascular Medicine. Circulation. 2016 Jun 21; 133(25):2662-70.
PMID: 27324361 (//www.ncbi.nlm.nih.gov/pubmed/27324361).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27324361/citedby/)

128. Pfeffer MA. A Randomized Trial of Intensive versus Standard Blood-Pressure Control. N Engl J
Med. 2016 06 09; 374(23):2290. PMID: 27276570 (//www.ncbi.nlm.nih.gov/pubmed/27276570).

Fields: (Med) Translation: (Human)

129. Abdul-Rahim AH, Docherty KF, Skali H
(https://connects.catalyst.harvard.edu/Profiles/profile/1260092), Kober L, Dickstein K, Maggioni
AP, Mareev V, Zannad F, Velazquez EJ, Califf RM, Pfeffer MA, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Lees KR, McMurray JJ. Effect
of single and dual renin-angiotensin blockade on stroke in patients with and without diabetes in
VALIANT. Eur Stroke J. 2016 Jun; 1(2):93-100. PMID: 31008270
(//www.ncbi.nlm.nih.gov/pubmed/31008270).

130. Sabe MA (https://connects.catalyst.harvard.edu/Profiles/profile/64326152), Claggett B
(https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Burdmann EA, Desai AS
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Ivanovich P, Kewalramani R,
Lewis EF, McMurray JJ, Olson KA, Parfrey P, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer MA. Coronary Artery
Disease Is a Predictor of Progression to Dialysis in Patients With Chronic Kidney Disease, Type
2 Diabetes Mellitus, and Anemia: An Analysis of the Trial to Reduce Cardiovascular Events
With Aranesp Therapy (TREAT). J Am Heart Assoc. 2016 04 23; 5(4). PMID: 27108247
(//www.ncbi.nlm.nih.gov/pubmed/27108247).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27108247/citedby/)
Altmetric   4   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=7130486)
Fields: (Car) (Vas) Translation: (Human)

131. Pfeffer MA, Braunwald E (https://connects.catalyst.harvard.edu/Profiles/profile/1256822).
Treatment of Heart Failure With Preserved Ejection Fraction: Reflections on Its Treatment With
an Aldosterone Antagonist. JAMA Cardiol. 2016 04 01; 1(1):7-8. PMID: 27437645
(//www.ncbi.nlm.nih.gov/pubmed/27437645).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27437645/citedby/)
Altmetric   133   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=6983387)
Fields: (Car) Translation: (Human)

132. Joseph J (https://connects.catalyst.harvard.edu/Profiles/profile/1249146), Claggett BC, Anand
IS, Fleg JL, Huynh T, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660),
Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), O'Meara E,

Return to Top

McKinlay S, Pitt B, Pfeffer MA, Lewis EF. QRS Duration is a Predictor of Adverse Outcomes in Heart Failure With Preserved Ejection Fraction. JACC Heart Fail. 2016 06; 4(6):477-88. PMID: 27036126 (//www.ncbi.nlm.nih.gov/pubmed/27036126).

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/27036126/citedby/)
[altmetric  4  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=13319741)
  Fields:  Car   Translation: Humans

133. Pfeffer MA, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Probstfield JL. Lixisenatide in Type 2 Diabetes and Acute Coronary Syndrome. N Engl J Med. 2016 03 17; 374(11):1095-6. PMID: 26931945 (//www.ncbi.nlm.nih.gov/pubmed/26931945).

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26931945/citedby/)
[altmetric  10  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=6203761)
  Fields:  Med   Translation: Humans

134. Dad T, Tighiouart H, Joseph A, Beckam A, Carpenter M, Hunsicker L, Kusek JW, Pfeffer M, Levey AS, Weiner DE. Aspirin Use and Incident Cardiovascular Disease, Kidney Failure, and Death in Stable Kidney Transplant Recipients: A Post Hoc Analysis of the Folic Acid for Vascular Outcome Reduction in Transplantation (FAVORIT) Trial. Am J Kidney Dis. 2016 Aug; 68(2):277-286. PMID: 26947217 (//www.ncbi.nlm.nih.gov/pubmed/26947217).

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26947217/citedby/)
[altmetric  10  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=6042657)
  Fields:  Nep   Translation: Humans

135. Lewis EF, Kim HY, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Spertus J, Heitner JF, Assmann SF, Kenwood CT, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Fang JC, McKinlay SA, Pitt BA, Pfeffer MA. Impact of Spironolactone on Longitudinal Changes in Health-Related Quality of Life in the Treatment of Preserved Cardiac Function Heart Failure With an Aldosterone Antagonist Trial. Circ Heart Fail. 2016 Mar; 9(3):e001937. PMID: 26962133 (//www.ncbi.nlm.nih.gov/pubmed/26962133).

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26962133/citedby/)
[altmetric  4  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=18019534)
  Fields:  Car   Vas   Translation: Humans

136. Heerspink HJ, Persson F, Brenner BM (https://connects.catalyst.harvard.edu/Profiles/profile/1250624), Chaturvedi N, Brunel P, McMurray JJ, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer MA, Parving HH, de Zeeuw D. Renal outcomes with aliskiren in patients with type 2 diabetes: a prespecified secondary analysis of the ALTITUDE randomised controlled trial. Lancet Diabetes Endocrinol. 2016 Apr; 4(4):309-17. PMID: 26774468 (//www.ncbi.nlm.nih.gov/pubmed/26774468).

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26774468/citedby/)
[altmetric  28  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4991385)
  Fields:  End   Translation: Humans

137. Heerspink HJ, Ninomiya T, Persson F, Brenner BM (https://connects.catalyst.harvard.edu/Profiles/profile/1250624), Brunel P, Chaturvedi N, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Haffner SM, Mcmurray JJ, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer MA, Parving HH, de Zeeuw D. Is a reduction in albuminuria associated with renal and cardiovascular protection? A post hoc analysis of the ALTITUDE trial. Diabetes Obes Metab. 2016 Feb; 18(2):169-77. PMID: 26511599 (//www.ncbi.nlm.nih.gov/pubmed/26511599).

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26511599/citedby/)
[altmetric  26  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4599309)
  Fields:  End   Met   Translation: Humans

138. Pfeffer MA, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Diaz R, Dickstein K, Gerstein HC, Kober LV, Lawson FC, Ping L, Wei X, Lewis EF, Maggioni AP, McMurray JJ, Probstfield JL, Riddle MC, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Tardif JC. Lixisenatide in Patients with Type 2 Diabetes and Acute Coronary Syndrome. N Engl J Med. 2015 Dec 03; 373(23):2247-57. PMID: 26630143 (//www.ncbi.nlm.nih.gov/pubmed/26630143).

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26630143/citedby/)
[altmetric  128  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4837632)
  Fields:  Med   Translation: Humans

Return to Top

139. Bansal N, Carpenter MA, Weiner DE, Levey AS, Pfeffer M, Kusek JW, Cai J, Hunsicker LG, Park M, Bennett M, Liu KD, Hsu CY. Urine Injury Biomarkers and Risk of Adverse Outcomes in Recipients of Prevalent Kidney Transplants: The Folic Acid for Vascular Outcome Reduction in Transplantation Trial. J Am Soc Nephrol. 2016 Jul; 27(7):2109-21. PMID: 26538631. (//www.ncbi.nlm.nih.gov/pubmed/26538631).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26538631/citedby/) 11
[Altmetric 3] (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4728106)
Fields: [Nep] Translation: [Humans]

140. Wang N, Hung CL, Shin SH, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Skali H (https://connects.catalyst.harvard.edu/Profiles/profile/1260092), Thune JJ, Køber L, Shah A (https://connects.catalyst.harvard.edu/Profiles/profile/1240323), McMurray JJ, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Regional cardiac dysfunction and outcome in patients with left ventricular dysfunction, heart failure, or both after myocardial infarction. Eur Heart J. 2016 Feb 01; 37(5):466-72. PMID: 26530103 (//www.ncbi.nlm.nih.gov/pubmed/26530103).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26530103/citedby/) 6
[Altmetric 2] (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4726977)
Fields: [Car] Translation: [Humans]

141. Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Sweitzer NK, Shah SJ, Deswal A, Anand IS, Fleg JL, Pitt B, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Prognostic Importance of Changes in Cardiac Structure and Function in Heart Failure With Preserved Ejection Fraction and the Impact of Spironolactone. Circ Heart Fail. 2015 Nov; 8(6):1052-8. PMID: 26475142 (//www.ncbi.nlm.nih.gov/pubmed/26475142).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26475142/citedby/) 13
[Altmetric 5] (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4646102)
Fields: [Car] [Vas] Translation: [Humans]

142. Bello NA, Lewis EF, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Anand IS, Krum H, McMurray JJ, Olson K, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Swedberg K, van Veldhuisen DJ, Young JB, Pfeffer MA. Increased risk of stroke with darbepoetin alfa in anaemic heart failure patients with diabetes and chronic kidney disease. Eur J Heart Fail. 2015 Nov; 17(11):1201-7. PMID: 26423828 (//www.ncbi.nlm.nih.gov/pubmed/26423828).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26423828/citedby/) 7
[Altmetric 11] (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4577189)
Fields: [Car] Translation: [Humans]

143. Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Lewis EF, Desai A (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Anand I, Sweitzer NK, O'Meara E, Shah SJ, McKinlay S, Fleg JL, Sopko G, Pitt B, Pfeffer MA. Influence of ejection fraction on outcomes and efficacy of spironolactone in patients with heart failure with preserved ejection fraction. Eur Heart J. 2016 Feb 01; 37(5):455-62. PMID: 26374849 (//www.ncbi.nlm.nih.gov/pubmed/26374849).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26374849/citedby/) 53
[Altmetric 15] (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=5075253)
Fields: [Car] Translation: [Humans]

144. Zhao L, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Tian L, Uno H (https://connects.catalyst.harvard.edu/Profiles/profile/1245480), Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Trippa L (https://connects.catalyst.harvard.edu/Profiles/profile/1244761), Wei LJ. On the restricted mean survival time curve in survival analysis. Biometrics. 2016 Mar; 72(1):215-21. PMID: 26302239 (//www.ncbi.nlm.nih.gov/pubmed/26302239).

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26302239/citedby/) 31
[Altmetric 3] (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4428520)
Fields: [Sta] Translation: [Humans]

145. Uno H (https://connects.catalyst.harvard.edu/Profiles/profile/1245480), Wittes J, Fu H, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Tian L, Cai T (https://connects.catalyst.harvard.edu/Profiles/profile/1253077), Pfeffer MA, Evans SR, Wei LJ

Return to Top

(https://connects.catalyst.harvard.edu/Profiles/profile/1233076). Alternatives to Hazard Ratios for Comparing the Efficacy or Safety of Therapies in Noninferiority Studies. Ann Intern Med. 2015 Jul 21; 163(2):127-34. PMID: 26054047 (//www.ncbi.nlm.nih.gov/pubmed/26054047).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26054047/citedby/)
[Altmetric  32  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4118974)
Fields: [Inf] Translation: [Humans]

146. Jhund PS, McMurray JJ, Chaturvedi N, Brunel P, Desai AS
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Finn PV
(https://connects.catalyst.harvard.edu/Profiles/profile/1245094), Hallow SM, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Weinrauch LA
(https://connects.catalyst.harvard.edu/Profiles/profile/1236633), Claggett BL
(https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Pfeffer MA. Mortality following a cardiovascular or renal event in patients with type 2 diabetes in the ALTITUDE trial. Eur Heart J. 2015 Sep 21; 36(36):2463-9. PMID: 26168211 (//www.ncbi.nlm.nih.gov/pubmed/26168211).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26168211/citedby/)

147. Harinstein ME, Butler J, Greene SJ, Fonarow GC, Stockbridge NL, O'Connor CM, Pfeffer MA, Mehra MR (https://connects.catalyst.harvard.edu/Profiles/profile/1234126), Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Yancy CW, Fiuzat M, Mentz RJ, Collins SP, McMurray JJ, Vaduganathan M
(https://connects.catalyst.harvard.edu/Profiles/profile/1243686), Dunnmon PM, Rosano GM, Dinh W, Misselwitz F, Bonow RO, Gheorghiade M. Site selection for heart failure clinical trials in the USA. Heart Fail Rev. 2015 Jul; 20(4):375-83. PMID: 25649127
(//www.ncbi.nlm.nih.gov/pubmed/25649127).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25649127/citedby/)

148. Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Claggett B
(https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Sweitzer NK, Shah SJ, Anand IS, Liu L, Pitt B, Pfeffer MA, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Prognostic importance of impaired Systolic Function in Heart Failure With Preserved Ejection Fraction and the impact of Spironolactone. Circulation. 2015 Aug 04; 132(5):402-14. PMID: 26130119
(//www.ncbi.nlm.nih.gov/pubmed/26130119).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26130119/citedby/)
[Altmetric  18  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4229438)
Fields: [Car] [Vas] Translation: [Humans]

149. Lewis EF, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Parfrey PS, Burdmann EA, McMurray JJ, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Levey AS, Ivanovich P, Eckardt KU, Kewalramani R, Toto R, Pfeffer MA. Race and ethnicity influences on cardiovascular and renal events in patients with diabetes mellitus. Am Heart J. 2015 Aug; 170(2):322-9. PMID: 26299230 (//www.ncbi.nlm.nih.gov/pubmed/26299230).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26299230/citedby/)
[Altmetric  1  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=10285819)
Fields: [Car] Translation: [Humans]

150. Charytan DM (https://connects.catalyst.harvard.edu/Profiles/profile/1236436), Lewis EF, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Weinrauch LA
(https://connects.catalyst.harvard.edu/Profiles/profile/1236633), Ivanovich P, Toto RD, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Liu J, Hartley LH, Finn P (https://connects.catalyst.harvard.edu/Profiles/profile/1245094), Singh AK, Levey AS, Pfeffer MA, McMurray JJ, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Cause of Death in Patients with Diabetic CKD Enrolled in the Trial to Reduce Cardiovascular Events With Aranesp Therapy (TREAT). Am J Kidney Dis. 2015 Sep; 66(3):429-40. PMID: 25935581 (//www.ncbi.nlm.nih.gov/pubmed/25935581).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25935581/citedby/)
[Altmetric  6  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=3870486)
Fields: [Nep] Translation: [Humans]

151. Theilade S, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Hansen TW, Skali H (https://connects.catalyst.harvard.edu/Profiles/profile/1250092), Lewis EF, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer M, McMurray JJ, Rossing P. Pulse pressure is not an independent predictor of outcome in type 2 diabetes patients with chronic kidney disease and anemia--the Trial to Reduce Cardiovascular Events with Aranesp Therapy (TREAT). J Hum Hypertens. 2016 Jan; 30(1):46-52. PMID: 25810068 (//www.ncbi.nlm.nih.gov/pubmed/25810068).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25810068/citedby/)

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26966649/citedby/)
[Altmetric  11  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=3545323)
Fields: [Vas] Translation: [Humans]

152. Mancini GB, Howlett JG, Borer J, Liu PP, Mehra MR
(https://connects.catalyst.harvard.edu/Profiles/profile/1234126), Pfeffer M, Swedberg K, Tardif
JC. Pharmacologic Options for the Management of Systolic Heart Failure: Examining
Underlying Mechanisms. Can J Cardiol. 2015 Oct; 31(10):1282-92. PMID: 26095932
(//www.ncbi.nlm.nih.gov/pubmed/26095932).

2
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/26095932/citedby/)

153. Pfeffer MA. Response: research—enriching your journey. J Am Coll Cardiol. 2015 Feb 17;
65(6):627-8. PMID: 25823364 (//www.ncbi.nlm.nih.gov/pubmed/25823364).

Fields: [Car] Translation: [Humans]

154. Bentley-Lewis R, Aguilar D, Riddle MC, Claggett B
(https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Diaz R, Dickstein K, Gerstein
HC, Johnston P, Køber LV, Lawson F, Lewis EF, Maggioni AP, McMurray JJ, Ping L, Probstfield
JL, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Tardif JC, Wu
Y, Pfeffer MA. Rationale, design, and baseline characteristics in Evaluation of LIXisenatide in
Acute Coronary Syndrome, a long-term cardiovascular end point trial of lixisenatide versus
placebo. Am Heart J. 2015 May; 169(5):631-638.e7. PMID: 25965710
(//www.ncbi.nlm.nih.gov/pubmed/25965710).

28
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25965710/citedby/)
[Altmetric  18  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=3544248)
Fields: [Car] Translation: [Humans]

155. Lam CS, McEntegart M, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26219200), Liu J, Skali H
(https://connects.catalyst.harvard.edu/Profiles/profile/1250092), Lewis E, Køber L, Rouleau J,
Velazquez E, Califf R, McMurray JJ, Pfeffer M, Solomon S
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Sex differences in clinical
characteristics and outcomes after myocardial infarction: insights from the Valsartan in Acute
Myocardial Infarction Trial (VALIANT). Eur J Heart Fail. 2015 Mar; 17(3):301-12. PMID:
25655011 (//www.ncbi.nlm.nih.gov/pubmed/25655011).

12
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25655011/citedby/)

156. Hamo CE, Heitner JF, Pfeffer MA, Kim HY, Kenwood CT, Assmann SF, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Boineau R, Fl_g JL, Spertus
JA, Lewis EF. Baseline distribution of participants with depression and impaired quality of life in
the Treatment of Preserved Cardiac Function Heart Failure with an Aldosterone Antagonist
Trial. Circ Heart Fail. 2015 Mar; 8(2):268-77. PMID: 25648577
(//www.ncbi.nlm.nih.gov/pubmed/25648577).

7
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25648577/citedby/)

157. Badar AA, Perez-Moreno AC, Hawkins NM, Brunton AP, Jhund PS, Wong CM, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Granger CB, Yusuf S, Pfeffer
MA, Swedberg K, Gardner RS, Petrie MC, McMurray JJ. Clinical characteristics and outcomes
of patients with angina and heart failure in the CHARM (Candesartan in Heart Failure
Assessment of Reduction in Mortality and Morbidity) Programme. Eur J Heart Fail. 2015 Feb;
17(2):196-204. PMID: 25676097 (//www.ncbi.nlm.nih.gov/pubmed/25676097).

5
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25676097/citedby/)

158. Sandhu RK, Hohnloser SH, Pfeffer MA, Yuan F, Hart RG, Yusuf S, Connolly SJ, McAlister FA,
Healey JS. Relationship between degree of left ventricular dysfunction, symptom status, and
risk of embolic events in patients with atrial fibrillation and heart failure. Stroke. 2015 Mar;
46(3):667-72. PMID: 25628306 (//www.ncbi.nlm.nih.gov/pubmed/25628306).

7
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25628306/citedby/)
[Altmetric  2  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu/citation_id=3110553)
Fields: [Bra] [Vas] Translation: [Humans]

159. Fleg JL, Cooper LS, Borlaug BA, Haykowsky MJ, Kraus WE, Levine BD, Pfeffer MA, Piña IL,
Poole DC, Reeves GR, Whellan DJ, Kitzman DW. Exercise training as therapy for heart failure:
current status and future directions. Circ Heart Fail. 2015 Jan; 8(1):209-20. PMID: 25605639
(//www.ncbi.nlm.nih.gov/pubmed/25605639).

32
Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25605639/citedby/)

160. Cheng S (https://connects.catalyst.harvard.edu/Profiles/profile/1257327), Pfeffer MA.
Searching for treatments of heart failure with preserved ejection fraction: matching the data to

Return to Top

the question. JAMA. 2014 Nov 19; 312(19):1977-8. PMID: 25399271
(//www.ncbi.nlm.nih.gov/pubmed/25399271).

Citations:
[Altmetric  45  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2833552)
Fields: [Med]  Translation: [Humans]

161. Pfeffer MA, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200),
Assmann SF, Boineau R, Anand IS, Clausell N, Desai AS
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Diaz R, Fleg JL, Gordeev I,
Heitner JF, Lewis EF, O'Meara E, Rouleau JL, Probstfield JL, Shaburishvili T, Shah SJ,
Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Sweitzer NK,
McKinlay SM, Pitt B. Regional variation in patients and outcomes in the Treatment of Preserved
Cardiac Function Heart Failure With an Aldosterone Antagonist (TOPCAT) trial. Circulation.
2015 Jan 06; 131(1):34-42. PMID: 25406305 (//www.ncbi.nlm.nih.gov/pubmed/25406305).

164
Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25406305/citedby/)
[Altmetric  80  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2902620)
Fields: [Car] [Vas]  Translation: [Humans]

162. Kristensen SL, Køber L, Jhund PS, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Kjekshus J, McKelvie RS, Zile
MR, Granger CB, Wikstrand J, Komajda M, Carson PE, Pfeffer MA, Swedberg K, Wedel H,
Yusuf S, McMurray JJ. International geographic variation in event rates in trials of heart failure
with preserved and reduced ejection fraction. Circulation. 2015 Jan 06; 131(1):43-53. PMID:
25406306 (//www.ncbi.nlm.nih.gov/pubmed/25406306).

21
Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25406306/citedby/)
[Altmetric  2  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2902635)
Fields: [Car] [Vas]  Translation: [Humans]

163. Hennekens CH, Pfeffer MA. Guidelines and guidance in lipid modification. Trends Cardiovasc
Med. 2015 May; 25(4):348-50. PMID: 25497277 (//www.ncbi.nlm.nih.gov/pubmed/25497277).

Fields: [Car] [Vas]  Translation: [Humans]

164. Vazir A, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Jhund P,
Castagno D, Skali H (https://connects.catalyst.harvard.edu/Profiles/profile/1250092), Yusuf S,
Swedberg K, Granger CB, McMurray JJ, Pfeffer MA, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Prognostic importance of
temporal changes in resting heart rate in heart failure patients: an analysis of the CHARM
program. Eur Heart J. 2015 Mar 14; 36(11):669-75. PMID: 25368202
(//www.ncbi.nlm.nih.gov/pubmed/25368202).

15
Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25353202/citedby/)
[Altmetric  2  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2653058)
Fields: [Car]  Translation: [Humans]

165. Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Claggett B
(https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Pfeffer MA, Bello N, Finn PV
(https://connects.catalyst.harvard.edu/Profiles/profile/145094), Granger CB, McMurray JJ,
Pocock S, Swedberg K, Yusuf S, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Influence of hospitalization for
cardiovascular versus noncardiovascular reasons on subsequent mortality in patients with
chronic heart failure across the spectrum of ejection fraction. Circ Heart Fail. 2014 Nov;
7(6):895-902. PMID: 25326608 (//www.ncbi.nlm.nih.gov/pubmed/25326608).

7
Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25326608/citedby/)
[Altmetric  3  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2787414)
Fields: [Car] [Vas]  Translation: [Humans]

166. Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Pfeffer MA. Left
ventricular size, mass, and shape: is the sum greater than the parts? JACC Heart Fail. 2014
Oct; 2(5):523-5. PMID: 25194288 (//www.ncbi.nlm.nih.gov/pubmed/25194288).

2
Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25194288/citedby/)
[Altmetric  1  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=13257914)
Fields: [Car]  Translation: [Humans]

167. Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Claggett B
(https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Sweitzer NK, Shah SJ, Anand
IS, O'Meara E, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660),
Heitner JF, Li G, Fang J, Rouleau J, Zile MR, Markov V, Ryabov V, Reis G, Assmann SF,
McKinlay SM, Pitt B, Pfeffer MA, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Cardiac structure and function

Return to Top

and prognosis in heart failure with preserved ejection fraction: findings from the echocardiographic study of the Treatment of Preserved Cardiac Function Heart Failure with an Aldosterone Antagonist (TOPCAT) Trial. Circ Heart Fail. 2014 Sep; 7(5):740-51. PMID: 25122188 (/www.ncbi.nlm.nih.gov/pubmed/25122188).

50

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25122188/citedby/)
[Altmetric 6 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2604838)
Fields: [Car] [Vas] Translation: [Humans]

168. Senni M, Paulus WJ, Gavazzi A, Fraser AG, Díez J, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Smiseth OA, Guazzi M, Lam CS, Maggioni AP, Tschöpe C, Metra M, Hummel SL, Edelmann F, Ambrosio G, Stewart Coats AJ, Filippatos GS, Gheorghiade M, Anker SD, Levy D, Pfeffer MA, Stough WG, Pieske BM. New strategies for heart failure with preserved ejection fraction: the importance of targeted therapies for heart failure phenotypes. Eur Heart J. 2014 Oct 21; 35(40):2797-815. PMID: 25104786 (/www.ncbi.nlm.nih.gov/pubmed/25104786).

90

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25104786/citedby/)
[Altmetric 6 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2580930)
Fields: [Car] Translation: [Humans]

169. Pfeffer MA, Jhund P, Aguilar D. Changes in diabetes-related complications in the United States. N Engl J Med. 2014 07 17; 371(3):285. PMID: 25014701 (/www.ncbi.nlm.nih.gov/pubmed/25014701).

Citations:
[Altmetric 1 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2504416)
Fields: [Med] Translation: [Humans]

170. Pfeffer MA, Pitt B, McKinlay SM. Spironolactone for heart failure with preserved ejection fraction. N Engl J Med. 2014 07 10; 371(2):181-2. PMID: 25006726 (/www.ncbi.nlm.nih.gov/pubmed/25006726).

9

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25006726/citedby/)
[Altmetric 11 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2499363)
Fields: [Med] Translation: [Humans]

171. Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Pfeffer MA. Heart failure with preserved ejection fraction: a forest of a variety of trees. Eur Heart J. 2014 Dec 21; 35(48):3410-2. PMID: 24986553 (/www.ncbi.nlm.nih.gov/pubmed/24986553).

3

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24986553/citedby/)
[Altmetric 1 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=3405757)
Fields: [Car] Translation: [Humans]

172. Bello NA, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241666), McMurray JJ, Granger CB, Yusuf S, Swedberg K, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Influence of previous heart failure hospitalization on cardiovascular events in patients with reduced and preserved ejection fraction. Circ Heart Fail. 2014 Jul; 7(4):590-5. PMID: 24874200 (/www.ncbi.nlm.nih.gov/pubmed/24874200).

26

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24874200/citedby/)
[Altmetric 1 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2383703)
Fields: [Car] [Vas] Translation: [Humans]

173. Hennekens CH, Pfeffer MA, Newcomer JW, Jellinger PS, Garber A (https://connects.catalyst.harvard.edu/Profiles/profile/1229983). Treatment of diabetes mellitus: the urgent need for multifactorial interventions. Am J Manag Care. 2014 May; 20(5):357-9. PMID: 25181565 (/www.ncbi.nlm.nih.gov/pubmed/25181565).

2

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25181565/citedby/)
[Altmetric 11 (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2875425)
Fields: [Hea] Translation: [Humans]

174. Pitt B, Pfeffer MA, Assmann SF, Boineau R, Anand IS, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26216200), Clausell N, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241666), Díez R, Fleg JL, Gordeev I, Harty B, Holmar JF, Konwood CT, Lewis EF, O'Meara E, Probstfield JL, Shaburishvili T, Shah SJ, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Sweitzer NK, Yang S, McKinlay SM. Spironolactone for heart failure with preserved ejection fraction. N Engl J Med. 2014 Apr 10; 370(15):1383-92. PMID: 24716680 (/www.ncbi.nlm.nih.gov/pubmed/24716680).

Return to Top

388

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24716680/citedby/)
Altmetric  125   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2272929)
Fields:   [Med]   Translation: [Humans]

175. Udell JA, Morrow DA (https://connects.catalyst.harvard.edu/Profiles/profile/1236813), Jarolim P (https://connects.catalyst.harvard.edu/Profiles/profile/1245080), Sloss G, Hoffman EB, O'Donnell TF (https://connects.catalyst.harvard.edu/Profiles/profile/1114435), Vora AN, Omland T, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer MA, Braunwald E (https://connects.catalyst.harvard.edu/Profiles/profile/1256822), Sabatine MS (https://connects.catalyst.harvard.edu/Profiles/profile/1246061). Fibroblast growth factor-23, cardiovascular prognosis, and benefit of angiotensin-converting enzyme inhibition in stable ischemic heart disease. J Am Coll Cardiol. 2014 Jun 10; 63(22):2421-8. PMID: 24727254 (//www.ncbi.nlm.nih.gov/pubmed/24727254).

27

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24727254/citedby/)
Altmetric   3   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2276371)
Fields:   [Car]   Translation: [Humans]

176. Bello NA, Pfeffer MA, Skali H (https://connects.catalyst.harvard.edu/Profiles/profile/1250082), McGill JB, Rossert J, Olson KA, Weinrauch L (https://connects.catalyst.harvard.edu/Profiles/profile/1236833), Cooper ME, de Zeeuw D, Rossing P, McMurray JJ, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Retinopathy and clinical outcomes in patients with type 2 diabetes mellitus, chronic kidney disease, and anemia. BMJ Open Diabetes Res Care. 2014; 2(1):e000011. PMID: 25452859 (//www.ncbi.nlm.nih.gov/pubmed/25452859).

10

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/25452859/citedby/)
Altmetric   10   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2262241)

177. Butler J, Fonarow GC, Zile MR, Lam CS, Roessig L, Schelbert EB, Shah SJ, Ahmed A, Bonow RO, Cleland JG, Cody RJ, Chioncel O, Collins SP, Dunnmon P, Filippatos G, Lefkowitz MP, Marti CN, McMurray JJ, Misselwitz F, Nodari S, O'Connor C, Pfeffer MA, Pieske B, Pitt B, Rosano G, Sabbah HN, Senni M, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Stockbridge N, Teerlink JR, Georgiopoulou VV, Gheorghiade M. Developing therapies for heart failure with preserved ejection fraction: current state and future directions. JACC Heart Fail. 2014 Apr; 2(2):97-112. PMID: 24720916 (//www.ncbi.nlm.nih.gov/pubmed/24720916).

68

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24720916/citedby/)
Altmetric   14   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=4043537)
Fields:   [Car]   Translation: [Humans] [Animals]

178. Lewis EF, Li Y, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Weinfurt KP, Velazquez EJ, Califf RM, Rouleau JL, Kober L, White HD, Schulman KA, Reed SD. Impact of cardiovascular events on change in quality of life and utilities in patients after myocardial infarction: a VALIANT study (valsartan in acute myocardial infarction). JACC Heart Fail. 2014 Apr; 2(2):159-65. PMID: 24720924 (//www.ncbi.nlm.nih.gov/pubmed/24720924).

24

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24720924/citedby/)
Altmetric   4   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=5765586)
Fields:   [Car]   Translation: [Humans]

179. Goldenberg I, Kutyifa V, Klein HU, Cannom DS, Brown MW, Dan A, Daubert JP, Estes NA, Foster E, Greenberg H, Kautzner J, Klempfner R, Kuniss M, Merkely B, Pfeffer MA, Quesada A, Viskin S, McNitt S, Polonsky B, Ghanem A, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Wilber D, Zareba W, Moss AJ. Survival with cardiac-resynchronization therapy in mild heart failure. N Engl J Med. 2014 May 01; 370(18):1694-701. PMID: 24678999 (//www.ncbi.nlm.nih.gov/pubmed/24678999).

57

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24678999/citedby/)
Altmetric   84   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2228348)
Fields:   [Med]   Translation: [Humans]

180. McMurray JJ, Gerstein HC, Holman RR, Pfeffer MA. Heart failure: a cardiovascular outcome in diabetes that can no longer be ignored. Lancet Diabetes Endocrinol. 2014 Oct; 2(10):843-51. PMID: 24731668 (//www.ncbi.nlm.nih.gov/pubmed/24731668).

71

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24731668/citedby/)
Altmetric   77   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2181433)
Fields:   [End]   Translation: [Humans]

Return to Top

181. Teo KK, Pfeffer M, Mancia G, O'Donnell M, Dagenais G, Diaz R, Dans A, Liu L, Bosch J, Joseph P, Copland I, Jung H, Pogue J, Yusuf S. Aliskiren alone or with other antihypertensives in the elderly with borderline and stage 1 hypertension: the APOLLO trial. Eur Heart J. 2014 Jul; 35(26):1743-51. PMID: 24616335 (//www.ncbi.nlm.nih.gov/pubmed/24616335).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24616335/citedby/)
[altmetric   7   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=2507919)
Fields: [Car] Translation: [Humans]

182. Skali H (https://connects.catalyst.harvard.edu/Profiles/profile/1250092), Dwyer EM, Goldstein R, Haigney M, Krone R, Kukin M, Lichstein E, McNitt S, Moss AJ, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Prognosis and response to therapy of first inpatient and outpatient heart failure event in a heart failure clinical trial: MADIT-CRT. Eur J Heart Fail. 2014 May; 16(5):560-5. PMID: 24578164 (//www.ncbi.nlm.nih.gov/pubmed/24578164).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24578164/citedby/)

183. Gupta DK, Skali H (https://connects.catalyst.harvard.edu/Profiles/profile/1250092), Rivero J, Campbell P, Griffin L, Smith C, Foster C, Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/26218200), Glynn RJ (https://connects.catalyst.harvard.edu/Profiles/profile/1260916), Couper G, Givertz MM (https://connects.catalyst.harvard.edu/Profiles/profile/1231146), Mehra MR (https://connects.catalyst.harvard.edu/Profiles/profile/1234126), Di Carli M (https://connects.catalyst.harvard.edu/Profiles/profile/1247354), Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer MA. Assessment of myocardial viability and left ventricular function in patients supported by a left ventricular assist device. J Heart Lung Transplant. 2014 Apr; 33(4):372-81. PMID: 24582837 (//www.ncbi.nlm.nih.gov/pubmed/24582837).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24582837/citedby/)

184. Fleming TR, Hennekens CH, Pfeffer MA, DeMets DL. Enhancing trial integrity by protecting the independence of data monitoring committees in clinical trials. J Biopharm Stat. 2014; 24(5):968-75. PMID: 24926941 (//www.ncbi.nlm.nih.gov/pubmed/24926941).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24926941/citedby/)

185. Rogers JK, Pocock SJ, McMurray JJ, Granger CB, Michelson EL, Östergren J, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Swedberg K, Yusuf S. Analysing recurrent hospitalizations in heart failure: a review of statistical methodology, with application to CHARM-Preserved. Eur J Heart Fail. 2014 Jan; 16(1):33-40. PMID: 24453096 (//www.ncbi.nlm.nih.gov/pubmed/24453096).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24453096/citedby/)

186. Moukarbel GV, Yu ZF, Dickstein K, Hou YR, Wittes JT, McMurray JJ, Pitt B, Zannad F, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). The impact of kidney function on outcomes following high risk myocardial infarction: findings from 27 610 patients. Eur J Heart Fail. 2014 Mar; 16(3):289-99. PMID: 24464979 (//www.ncbi.nlm.nih.gov/pubmed/24464979).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24464979/citedby/)
[altmetric   3   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=11858323)
Fields: [Car] Translation: [Humans]

187. Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Shah SJ, Anand IS, Sweitzer NK, O'Meara E, Heitner JF, Sopko G, Li G, Assmann SF, McKinlay SM, Pitt B, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Cardiac structure and function in heart failure with preserved ejection fraction: baseline findings from the echocardiographic study of the Treatment of Preserved Cardiac Function Heart Failure with an Aldosterone Antagonist trial. Circ Heart Fail. 2014 Jan; 7(1):104-15. PMID: 24249049 (//www.ncbi.nlm.nih.gov/pubmed/24249049).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24249049/citedby/)
[altmetric   73   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1914062)
Fields: [Car] [Vas]   Translation: [Humans]

188. Pfeffer MA, Skali H (https://connects.catalyst.harvard.edu/Profiles/profile/1250092). PRAISE (prospective randomized amlodipine survival evaluation) and calcium. JACC Heart Fail. 2013 Aug; 1(4):315-317. PMID: 24621934 (//www.ncbi.nlm.nih.gov/pubmed/24621934).

Citations:   (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/24621934/citedby/)
[altmetric   1   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=13280587)
Fields: [Car]   Translation: [Humans]

Return to Top

Fields: [Car] Translation: [Humans]

189. Wong CM, Hawkins NM, Jhund PS, MacDonald MR, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233315), Granger CB, Yusuf S, Pfeffer
MA, Swedberg K, Petrie MC, McMurray JJ. Clinical characteristics and outcomes of young and
very young adults with heart failure: The CHARM programme (Candesartan in Heart Failure
Assessment of Reduction in Mortality and Morbidity). J Am Coll Cardiol. 2013 Nov 12;
62(20):1845-54. PMID: 23850914 (//www.ncbi.nlm.nih.gov/pubmed/23850914).

16

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/23850914/citedby/)
[Altmetric  3  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=5748903)
Fields: [Car] Translation: [Humans]

190. Hennekens CH, Brauer NR, Gelb LJ, Bjorkman DJ, Boxer JS, Pfeffer MA. Emerging clinical
challenges in the use of statins. Am J Med. 2013 Aug; 126(8):663-4. PMID: 23786669
(//www.ncbi.nlm.nih.gov/pubmed/23786669).

Citations:
[Altmetric  11  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1985293)
Fields: [Med] Translation: [Humans] [PH]

191. Campbell P, Takeuchi M, Bourgoun M, Shah A
(https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Foster E, Brown MW,
Goldenberg I, Huang DT, McNitt S, Hall WJ, Moss A, Pfeffer MA, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233315). Right ventricular function,
pulmonary pressure estimation, and clinical outcomes in cardiac resynchronization therapy. Circ
Heart Fail. 2013 May; 6(3):435-42. PMID: 23524528
(//www.ncbi.nlm.nih.gov/pubmed/23524528).

7

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/23524528/citedby/)
[Altmetric  1  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1406603)
Fields: [Car] [Vsn] Translation: [Humans]

192. Pfeffer MA, Brenner EM (https://connects.catalyst.harvard.edu/Profiles/profile/1250524),
McMurray JJ. Aliskiren in type 2 diabetes and cardiorenal end points. N Engl J Med. 2013 03
14; 368(11):1065-6. PMID: 23484839 (//www.ncbi.nlm.nih.gov/pubmed/23484839).

Citations:
[Altmetric  2  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1305400)
Fields: [Med] Translation: [Humans]

193. Swedberg K, Young JB, Anand IS, Cheng S, Desai AS
(https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Diaz R, Maggioni AP,
McMurray JJ, O'Connor C, Pfeffer MA, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233315), Sun Y, Tendera M, van
Veldhuisen DJ. Treatment of anemia with darbepoetin alfa in systolic heart failure. N Engl J
Med. 2013 Mar 28; 368(13):1210-9. PMID: 23473338
(//www.ncbi.nlm.nih.gov/pubmed/23473338).

82

Citations: 245 (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/23473338/citedby/)
[Altmetric  245  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1292581)
Fields: [Med] Translation: [Humans]

194. Gupta DK, Kwong RY (https://connects.catalyst.harvard.edu/Profiles/profile/1245413), Pfeffer
MA. Cardiovascular imaging in clinical practice: what does late gadolinium enhance? JAMA.
2013 Mar 06; 309(9):929-30. PMID: 23462791 (//www.ncbi.nlm.nih.gov/pubmed/23462791).

2

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/23462791/citedby/)
[Altmetric  2  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1558190)
Fields: [Med] Translation: [Humans]

195. Omland T, Pfeffer MA, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233315), de Lemos JA, Rosjo H, Saltyte
Benth J, Maggioni A, Domanski MJ, Rouleau JL, Sabatine MS
(https://connects.catalyst.harvard.edu/Profiles/profile/1245061), Braunwald E
(https://connects.catalyst.harvard.edu/Profiles/profile/1256622). Prognostic value of cardiac
troponin I measured with a highly sensitive assay in patients with stable coronary artery
disease. J Am Coll Cardiol. 2013 Mar 26; 61(12):1240-9. PMID: 23414791
(//www.ncbi.nlm.nih.gov/pubmed/23414791).

70

Citations: (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/23414791/citedby/)
[Altmetric  5  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1243232)
Fields: [Car] Translation: [Humans]

Return to Top

196. Knappe D, Pouleur AC, Shah AM

(https://connects.catalyst.harvard.edu/Profiles/profile/1245923), Bourgoun M, Brown MW, Foster E, Pfeffer MA, Moss AJ, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Acute effects of withdrawal of cardiac resynchronization therapy on left and right ventricular function, dyssynchrony, and contractile function in patients with New York Heart Association functional class I/II heart failure: MADIT-CRT. J Card Fail. 2013 Mar; 19(3):149-55. PMID: 23462074 (//www.ncbi.nlm.nih.gov/pubmed/23462074).

3

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid23462074/citedby/)
[Altmetric     1   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1668277)
Fields: [Car] Translation: [Humans]

197. Claggett B (https://connects.catalyst.harvard.edu/Profiles/profile/28218200), Wei LJ (https://connects.catalyst.harvard.edu/Profiles/profile/1233070), Pfeffer MA. Moving beyond our comfort zone. Eur Heart J. 2013 Mar; 34(12):869-71. PMID: 23329152 (//www.ncbi.nlm.nih.gov/pubmed/23329152).

5

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid23329152/citedby/)
[Altmetric     2   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1313414)
Fields: [Car] Translation: [Humans]

198. McMurray JJ, Anand IS, Diaz R, Maggioni AP, O'Connor C, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Tendera M, van Veldhuisen DJ, Albizem M, Cheng S, Scarlata D, Swedberg K, Young JB. Baseline characteristics of patients in the Reduction of Events with Darbepoetin alfa in Heart Failure trial (RED-HF). Eur J Heart Fail. 2013 Mar; 15(3):334-41. PMID: 23329651 (//www.ncbi.nlm.nih.gov/pubmed/23329651).

6

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid23329651/citedby/)

199. Shah SJ, Heitner JF, Sweitzer NK, Anand IS, Kim HY, Harty B, Boineau R, Clausell N, Desai AS (https://connects.catalyst.harvard.edu/Profiles/profile/1416660), Diaz R, Fleg JL, Gordeev I, Lewis EF, Markov V, O'Meara E, Kobulia B, Shaburishvili T, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pitt B, Pfeffer MA, Li R. Baseline characteristics of patients in the treatment of preserved cardiac function heart failure with an aldosterone antagonist trial. Circ Heart Fail. 2013 Mar; 6(2):184-92. PMID: 23258572 (//www.ncbi.nlm.nih.gov/pubmed/23258572).

69

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid23258572/citedby/)
[Altmetric     4   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1406829)
Fields: [Car] [Vas] Translation: [Humans]

200. Well FG, Gallegos R, Connell J, Kajstura J, D'Amario D, Kwong RY (https://connects.catalyst.harvard.edu/Profiles/profile/1245413), Coelho-Filho O, Shah R (https://connects.catalyst.harvard.edu/Profiles/profile/1249743), Mitchell R (https://connects.catalyst.harvard.edu/Profiles/profile/1234994), Leri A, Foley L, Anversa P, Pfeffer MA. Effect of cardiac stem cells on left-ventricular remodeling in a canine model of chronic myocardial infarction. Circ Heart Fail. 2013 Jan; 6(1):99-106. PMID: 23212553 (//www.ncbi.nlm.nih.gov/pubmed/23212553).

17

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid23212553/citedby/)
[Altmetric     1   (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1406831)
Fields: [Car] [Vas] Translation: [Animals]

201. Inglis SC, Bebchuk J, Al-Suhaim SA, Case J, Pfeffer MA, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Hou YR, Pitt B, Dargie HJ, Ford I, Kjekshus J, Zannad F, Dickstein K, McMurray JJ. Peripheral artery disease and outcomes after myocardial infarction: an individual-patient meta-analysis of 28,771 patients in CAPRICORN, EPEHESUS, OPTIMAAL and VALIANT. Int J Cardiol. 2013 Sep 30; 168(2):1094-101. PMID: 23194780 (//www.ncbi.nlm.nih.gov/pubmed/23194780).

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid23194780/citedby/)

202. Kutyifa V, Solomon SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Bourgoun M, Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240228), Pouleur AC, Knappe D, McNitt S, Wang PJ, Morisky B, Pfeffer M, Moss AJ, Zareba W. Effects of cardiac resynchronization therapy on left ventricular mass and wall thickness in mild heart failure patients in MADIT-CRT. Heart Rhythm. 2013 Mar; 10(3):354-60. PMID: 23174486 (//www.ncbi.nlm.nih.gov/pubmed/23174486).

2

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid23174486/citedby/)

203. Skali H (https://connects.catalyst.harvard.edu/Profiles/profile/1250092), Lin J, Pfeffer MA, Chen CY, Cooper ME, McMurray JJ, Nissenson AR, Remuzzi G, Rossert J, Parfrey PS, Scott-Douglas NW, Singh AK (https://connects.catalyst.harvard.edu/Profiles/profile/1232803), Toto R, Uno H (https://connects.catalyst.harvard.edu/Profiles/profile/1245480), Ivanovich P. Hemoglobin stability in patients with anemia, CKD, and type 2 diabetes: an analysis of the TREAT (Trial to

Return to Top

Reduce Cardiovascular Events With Aranesp Therapy) placebo arm. Am J Kidney Dis. 2013
Feb; 61(2):238-46. PMID: 23156232 (//www.ncbi.nlm.nih.gov/pubmed/23156232).

4

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/23156232/citedby/)

204. Parving HH, Brenner BM (https://connects.catalyst.harvard.edu/Profiles/profile/1250624),
McMurray JJ, de Zeeuw D, Haffner SM, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Chaturvedi N, Persson F, Desai
AS (https://connects.catalyst.harvard.edu/Profiles/profile/1241660), Nicolaides M, Richard A,
Xiang Z, Brunel P, Pfeffer MA. Cardiorenal end points in a trial of aliskiren for type 2 diabetes.
N Engl J Med. 2012 Dec 06; 367(23):2204-13. PMID: 23121378
(//www.ncbi.nlm.nih.gov/pubmed/23121378).

293

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/23121378/citedby/)
[Altmetric   154  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1633377)
Fields: [Med]  Translation: [Humans]

205. Shah AM (https://connects.catalyst.harvard.edu/Profiles/profile/1240323), Pfeffer MA. The
many faces of heart failure with preserved ejection fraction. Nat Rev Cardiol. 2012 Oct;
9(10):555-6. PMID: 22945329 (//www.ncbi.nlm.nih.gov/pubmed/22945329).

29

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/22945329/citedby/)

206. Zhao L, Tian L, Uno H (https://connects.catalyst.harvard.edu/Profiles/profile/1245480), Solomon
SD (https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer MA, Schnider JS,
Wei LJ (https://connects.catalyst.harvard.edu/Profiles/profile/1233070). Utilizing the integrated
difference of two survival functions to quantify the treatment contrast for designing, monitoring,
and analyzing a comparative clinical study. Clin Trials. 2012 Oct; 9(5):570-7. PMID: 22914857
(//www.ncbi.nlm.nih.gov/pubmed/22914857).

16

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/22914857/citedby/)

207. Eickmeier O, Seki H, Haworth O, Hilberath JN, Gao F, Uddin M, Croze RH, Carlo T, Pfeffer MA,
Levy BD. Aspirin-triggered resolvin D1 reduces mucosal inflammation and promotes resolution
in a murine model of acute lung injury. Mucosal Immunol. 2013 Mar; 6(2):256-66. PMID:
22785226 (//www.ncbi.nlm.nih.gov/pubmed/22785226).

84

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/22785226/citedby/)

208. Castagno D, Skali H (https://connects.catalyst.harvard.edu/Profiles/profile/1250092), Takeuchi
M, Swedberg K, Yusuf S, Granger CB, Michelson EL, Pfeffer MA, McMurray JJ, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815). Association of heart rate and
outcomes in a broad spectrum of patients with chronic heart failure: results from the CHARM
(Candesartan in Heart Failure: Assessment of Reduction in Mortality and morbidity) program. J
Am Coll Cardiol. 2012 May 15; 59(20):1785-95. PMID: 22575317
(//www.ncbi.nlm.nih.gov/pubmed/22575317).

19

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/22575317/citedby/)
[Altmetric   2  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=877196)
Fields: [Car]  Translation: [Humans]

209. Pfeffer MA. Cancer in cardiovascular drug trials and vice versa: a personal perspective. Eur
Heart J. 2013 Apr; 34(15):1089-94. PMID: 22408033
(//www.ncbi.nlm.nih.gov/pubmed/22408033).

1

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/22408033/citedby/)
[Altmetric   1  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=1384154)
Fields: [Car]  Translation: [Humans]

210. Barkoudah E (https://connects.catalyst.harvard.edu/Profiles/profile/1253119), Skali H
(https://connects.catalyst.harvard.edu/Profiles/profile/1250092), Uno H
(https://connects.catalyst.harvard.edu/Profiles/profile/1245480), Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Pfeffer MA. Mortality rates in
trials of subjects with type 2 diabetes. J Am Heart Assoc. 2012 Feb; 1(1):8-15. PMID: 23130114
(//www.ncbi.nlm.nih.gov/pubmed/23130114).

25

Citations:  (https://www.ncbi.nlm.nih.gov/pmc/articles/pmid/23130114/citedby/)
[Altmetric   2  (https://www.altmetric.com/details.php?
domain=connects.catalyst.harvard.edu&citation_id=618451)
Fields: [Car] [Vas]

211. Parving HH, Brenner BM (https://connects.catalyst.harvard.edu/Profiles/profile/1250624),
McMurray JJ, de Zeeuw D, Haffner SM, Solomon SD
(https://connects.catalyst.harvard.edu/Profiles/profile/1233815), Chaturvedi N, Persson F,
Nicolaides M, Richard A, Xiang Z, Ambrecht J, Pfeffer MA. Baseline characteristics in the
Aliskiren Trial in Type 2 Diabetes Using Cardio-Renal Endpoints (ALTITUDE). J Renin

Return to Top

Exhibit D

| AO-10<br>Rev. 1/2004 | **FINANCIAL DISCLOSURE REPORT**<br>Calendar Year 2003 | **Report Required by the Ethics<br>in Government Act of 1978<br>(5 U.S.C. app. §§ 101-111)** |
|---|---|---|
| 1. Person Reporting (Last name, First name, Middle initial)<br>Gorton, Nathaniel M | 2. Court or Organization<br>District Court – Massachusetts | 3. Date of Report<br>5/10/04 |
| 4. Title (Article III Judges indicate active or senior status;<br>magistrate judges indicate full- or part-time)<br>U.S. District Judge, Active | 5. ReportType (check appropriate type)<br>◯ Nomination,   Date<br>◯ Initial   ◉ Annual   ◯ Final | 6. Reporting Period<br>1/1/03<br>to<br>12/31/03 |
| 7. Chambers or Office Address<br>United States District Court<br>595 Main Street, Room 411<br>Worcester, MA 01608 | 8. On the basis of the information contained in this Report and any<br>modifications pertaining thereto, it is, in my opinion, in compliance<br>with applicable laws and regulations.<br><br>Reviewing Officer_____   Date_____ | |

**IMPORTANT NOTES:** The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part where you have no reportable information. Sign on last page.

## I. POSITIONS.   (Reporting individual only; see pp. 9-13 of filing instructions)

☐ **NONE**   – (No reportable positions.)

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1.   See Attachment #1 | |

## II. AGREEMENTS.   (Reporting individual only; see pp. 14-16 of filing instructions)

☑ **NONE**   – (No reportable agreements.)

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |

RECEIVED May 27 10 57 AM '04 FINANCIAL DISCLOSURE OFFICE

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| | Gorton, Nathaniel M | 5/10/04 |

## III. NON-INVESTMENT INCOME. (Reporting individual and spouse; see pp. 17-24 of filing instructions)

**A. Filer's Non-Investment Income**

☑ **NONE** – (No reportable non-investment income.)

| DATE | SOURCE AND TYPE | GROSS INCOME (yours, not spouse's) |
|---|---|---|
| 1. | | |

**B. Spouse's Non-Investment Income** – (If you were married during any portion of the reporting year, please complete this section. (dollar amount not required except for honoraria)

☑ **NONE** – (No reportable non-investment income.)

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |

## IV. REIMBURSEMENTS – transportation, lodging, food, entertainment.

(Includes those to spouse and dependent children. See pp. 25-27 of instructions.)

☐ **NONE** – (No such reportable reimbursements.)

| | SOURCE | DESCRIPTION |
|---|---|---|
| 1. | New York Intellectual Property Lawyers Association | reimbursement for lodging and travel by train w/spouse from Boston to NYC to attend annual N.Y.I.P.L.A. dinner 3/28/03 at Waldorf Astoria |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting<br><br>Gorton, Nathaniel M | Date of Report<br><br>**5/10/04** |
|---|---|---|

## V.  GIFTS.   (Includes those to spouse and dependent children.  See pp. 28-31 of instructions.)

☑ **NONE**   - (No such reportable gifts.)

| | SOURCE | DESCRIPTION | VALUE |
|---|---|---|---|
| 1. | | | |

## VI.  LIABILITIES.   (Includes those of spouse and dependent children.  See pp. 32-34 of instructions.)

☑ **NONE**   - (No reportable liabilities.)

| | CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|---|
| 1. | | | |

# FINANCIAL DISCLOSURE REPORT
## Page 1 of 3

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 5/10/04 |

## VII. INVESTMENTS and TRUSTS — Income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type: (e.g. div. rent or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type: (e.g. buy, sell, merger, redemption) | If not exempt from disclosure | | | |
| | | | | | | (2) Date: Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| □ NONE  (No reportable income, assets, or transactions) | | | | | | | | | |
| 1.  Rocky Bay Trust (a MA business trust) (common stock) | G | S corp.inc. | P1 | Q | | | | | See Section VIII |
| 2.  Fidelity Cash Reserves (individual) | A | Dividend | K | T | | | | | |
| 3.  Fidelity Money Market Accts(POA,trustee)(Att#1,¶4) | B | Dividend | M | T | | | | | |
| 4.  Charitable Remainder Trust | D | Div.,int. | | | | | | | See Section VIII |
| 5.  Abbott Labs, Inc. | | | | | sell | 7/24/ | J | | |
| 6.  First Data Corp | | | | | sell | 7/28/ | J | B | |
| 7.  Electronic Data Systems Corp. | | | | | sell | 7/28/ | J | | |
| 8.  Federal National Mtg.Ass'n | | | | | buy | 7/28/ | J | | |
| 9.  Johnson & Johnson Co. | | | | | buy | 7/28/ | J | | |
| 10.  Boston Financial Management, Inc. IRA | | None | P1 | T | | | | | |
| 11.  Abbott Labs, Inc. | | | | | sell | 7/18/ | J | | |
| 12.  Chubb Corp. | | | | | sell | 7/28/ - | K | - C | |
| 13.  First Data Corp. | | | | | sell | 7/28/ | J | B | |
| 14.  Electronic Data Systems Corp. | | | | | sell | 7/28/ | J | | |
| 15.  AOL/Time Warner, Inc. | | | | | sell | 7/28/ | J | B | |
| 16.  Kimberly Clark Corp. | | | | | buy | 7/28/ | K | | |
| 17.  RPM (Ohio), Inc. | | | | | buy | 7/28/ | J | | |
| 18.  Brinker Int'l., Inc. | | | | | buy | 7/28/ | J | | |

1. Income/Gain Codes:    A = $1,000 or less    B = $1,001-$2,500    C = $2,501-$5,000    D = $5,001-$15,000    E = $15,001-$50,000
(See Columns B1 and D4)    F = $50,001-$100,000    G = $100,001-$1,000,000    H1 = $1,000,001-$5,000,000    H2 = More than $5,000,000
2. Value Codes:    J = $15,000 or less    K = $15,001-$50,000    L = $50,001-$100,000    M = $100,001-$250,000
(See Columns C1 and D3)    N = $250,000-$500,000    O = $500,001-$1,000,000    P1 = $1,000,001-$5,000,000    P2 = $5,000,001-$25,000,000
P3 = $25,000,001-$50,000,000    P4 = More than $50,000,000
3. Value Method Codes    Q = Appraisal    R = Cost (Real Estate Only)    S = Assessment    T = Cash/Market
(See Column C2)    U = Book Value    V = Other    W = Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 2 of 3

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 5/10/04 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div. rent or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, merger, redemption) | (2) Date: Month-Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 19. Federal Home Loan Bank (bond) | | | | | buy | 8/12/ | K | | |
| 20. Eli Lilly & Co. | | | | | buy | 10/28 | J | | |
| 21. Wells Fargo & Co. (bond) | | | | | sell | 11/1/ | K | | |
| 22. Newell-Rubbermaid Corp. | | | | | sell | 12/9/ | J | | |
| 23. Federal Home Loan Bank (bond) | | | | | buy | 12/11 | K | | |
| 24. Federal Farm Credit Bank (bond) | | | | | buy | 12/24 | J | | |
| 25. Boston Financial Management, Inc. revocable trust | C | div. & int. | M | T | | | | | See Section VIII |
| 26. Home Depot, Inc. | | | | | sell | 7/18/ | J | | |
| 27. Boston Financial Management, Inc. revocable trust | C | div. & int. | M | T | | | | | See Section VIII |
| 28. Federal National Mortgage Association | | | | | buy | 1/22/ | J | | |
| 29. Gillette Co. | | | | | buy | 1/22/ | J | | |
| 30. Brinker International, Inc. | | | | | buy | 1/22/ | J | | |
| 31. Home Depot, Inc. | | | | | sell | 7/18/ | J | | |
| 32. Abbott Labs, Inc. | | | | | sell | 7/18/ | J | | |
| 33. McDonalds Corp. | | | | | sell | 7/28/ | J | | |
| 34. Kimberly Clark Corp. | | | | | buy | 7/28/ | J | | |
| 35. Avery Dennison, Inc. | | | | | buy | 7/28/ | J | | |
| 36. Brinker International, Inc. | | | | | buy | 7/28/ | J | | |

| 1. Income/Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001-$2,500 | C =$2,501-$5,000 | D =$5,001-$15,000 | E =$15,001-$50,000 |
|---|---|---|---|---|---|
| | F =$50,001-$100,000 | G =$100,001-$1,000,000 | H1 =$1,000,001-$5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes: (See Columns C1 and D3) | J =$15,000 or less | K =$15,001-$50,000 | L =$50,001-$100,000 | M =$100,001-$250,000 | |
| | N =$250,000-$500,000 | O =$500,001-$1,000,000 | P1 =$1,000,001-$5,000,000 | P2 =$5,000,001-$25,000,000 | |
| | P3 =$25,000,001-$50,000,000 | | P4 =$More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash/Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 3 of 3

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 5/10/04 |

## VII.  INVESTMENTS and TRUSTS   — income, value, transactions (includes those of the spouse and dependent children.  See pp. 34-57 of filing instructions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g. div. rent. or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g. buy, sell, merger, redemption) | If not exempt from disclosure (2) Date: Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 37. | Boston Scientific Corp. | | | | | buy | 9/17/ | J | | |
| 38. | Oracle Systems Corp. | | | | | sell | 9/17/ | J | B | |
| 39. | Anadarko Petroleum Corp. | | | | | sell | 9/17/ | J | | |
| 40. | Fleet | A | Interest | J | T | | | | | |

| 1. Income/Gain Codes: (See Columns B1 and D4) | A = $1,000 or less | B = $1,001-$2,500 | C = $2,501-$5,000 | D = $5,001-$15,000 | E = $15,001-$50,000 |
|---|---|---|---|---|---|
| | F = $50,001-$100,000 | G = $100,001-$1,000,000 | H1 = $1,000,001-$5,000,000 | H2 = More than $5,000,000 | |
| 2. Value Codes: (See Columns C1 and D3) | J = $15,000 or less | K = $15,001-$50,000 | L = $50,001-$100,000 | M = $100,001-$250,000 | |
| | N = $250,000-$500,000 | O = $500,001-$1,000,000 | P1 = $1,000,001-$5,000,000 | P2 = $5,000,001-$25,000,000 | |
| | P3 = $25,000,001-$50,000,000 | | P4 = $More than $50,000,000 | | |
| 3. Value Method Codes: (See Column C2) | Q = Appraisal | R = Cost (Real Estate Only) | S = Assessment | T = Cash/Market | |
| | U = Book Value | V = Other | W = Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| | Gorton, Nathaniel M | 5/10/04 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS     (Indicate part of Report.)

Line 1 – Rocky Bay Trust, a Massachusetts Business Trust, of which the reporting party is a shareholder, owns all of the stock of Slade Gorton & Co., Inc., a Massachusetts corp. ("the Company"). Income reported in Section VII by virtue of common stock holdings of the reporting party in Rocky Bay Trust is attributable to his pro rata share of the income of the Company which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual shareholders of the Trust whether or not such income is, in fact, distributed. The value of the stock holdings is appraised biennially by a certified financial analyst.

Line 4 – In 1997 the reporting party and ▓▓▓▓ funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no rights to principal.

Lines 4, 10, 25 and 27 – The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston MA and consist of stocks and bonds in publicly held companies listed in Attachment #2.

| **FINANCIAL DISCLOSURE REPORT** | Name of Person Reporting | Date of Report |
|---|---|---|
| | Gorton, Nathaniel M | 5/10/04 |

## IX.  CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature 

Date _May 14, 2004_

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

---

**FILING INSTRUCTIONS**

Mail signed original and 3 additional copies to:

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C.  20544

Financial Disclosure Report
Nathaniel M. Gorton
May 10, 2004
Attachment #1

I.    Positions

Position                                    Name of Organization/Entity

1.   Shareholder, Clerk/Secretary           Rocky Bay Trust, a MA Business
     and Director                           Trust, which owns all of the
                                            Stock of Slade Gorton & Co.,
                                            Inc.. Boston, MA (closely held
                                            family seafood business)

2.   Clerk and Director                     Cambridge Animal Aid, Inc.
                                            Epsom, NH (non-profit animal
                                            aid organization operated by
                                            reporting party's ████████

3.   Member of the Corporation              The Home for Little Wanderers,
                                            Boston, MA (non-profit,
                                            private child welfare agency)

NOTE: None of the beneficiaries of the following trusts and
accounts of which the reporting party is a trustee (or holds a
power of attorney) is a dependent of the reporting party and
neither the reporting party nor ████████ has any beneficial
interest in or control over the disposition of assets of such
trusts and accounts.

4.   Power of Attorney/Trustee              Fidelity money market accounts
                                            (for all shareholders of Rocky
                                            Bay Trust, all of whom are
                                            ████████████████████ of
                                            reporting party)

5.   Trustee                                Irrevocable Trust (created in
                                            connection with the estate
                                            plan of the reporting party's
                                            ████████

6.   Trustee                                1989 Irrevocable Trust and
                                            Irrevocable Sub S Trust (both
                                            created in connection with the
                                            estate plan of reporting
                                            party's ████████

Financial Disclosure Report
Nathaniel M. Gorton
May 10, 2004
Attachment #2

All of the listed holdings are of common stock unless otherwise noted.

American International Group
Anadarko Petroleum Co.
Automatic Data Processing, Inc.
Avery Dennison, Inc.
B. P. Amoco PLC
Bank One Arizona NA - bond
Bear Stearns Inc. - bond
Bell Atlantic Corp. - bond
BellSouth Corp. - bond
Boston Scientific Corp.
Brinker International, Inc.
Cisco Systems, Inc.
Colgate Palmolive Co.
Costco Wholesale Co.
CVS Corp.
Eli Lilly & Co.
Emerson Electric Co. - stock & bond
Equity Residential Corp.
Exxon-Mobile Corp.
Federal Farm Credit Bank (bond)
Federal Home Loan Bank - bond
Federal National Mortgage Association
First Data Corp.
Gillette Co.
Honeywell Inc. - bond
Intel Corp.

Johnson & Johnson Co.
Kimberly Clark Corp.
MBIA Inc.
MBNA Corp.
Medtronic Inc.
Microsoft Corp.
New York Telephone Corp. - bond
Nokia Corp.
NationsBank - bond
Oracle Corp.
Pepsico Inc.
Pfizer, Inc.
Procter & Gamble Co.
Raytheon, Inc.
RPM (Ohio) Inc.
Staples, Inc.
State Street Corp.
Sysco Corp.
United States Treasury Bonds
Vodafone Group PLC

| AO-10<br>Rev. 1/2004 | FINANCIAL DISCLOSURE REPORT<br>FOR CALENDAR YEAR 2004 | Report Required by the Ethics<br>in Government Act of 1978<br>(5 U.S.C. app. §§ 101-111) |
|---|---|---|

| 1. Person Reporting (Last name, First name, Middle initial)<br><br>Gorton, Nathaniel M | 2. Court or Organization<br><br>District Court - Massachusetts | 3. Date of Report<br><br>5/11/2005 |
|---|---|---|
| 4. Title (Article III Judges indicate active or senior status;<br>magistrate judges indicate full- or part-time)<br><br>U.S. District Judge - Active | 5. Report Type ( heck appropriate type)<br><br>○ Nomination,   Date<br><br>○ Initial    ⊙ Annual    ● Final | 6. Reporting Period<br><br>1/1/2004<br>to<br>12/31/2004 |
| 7. Chambers or Office Address<br><br>United States District Court<br>1 Courthouse Way, Suite 3110<br>Boston, MA 02210 | 8. On the basis of the information contained in this Report and any<br>modifications pertaining thereto, it is, in my opinion, in compliance<br>with applicable laws and regulations.<br><br>Reviewing Officer_____   Date_____ | |

> IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part
> where you have no reportable information. Sign on last page.

## I. POSITIONS.   (Reporting individual only; see pp. 9-13 of filing instructions)

☐ NONE   - (No reportable positions.)

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1.   See Attachment #1 | |

## II. AGREEMENTS.   (Reporting individual only; see pp. 14-16 of filing instructions)

☑ NONE   - (No reportable agreements.)

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |

RECEIVED
2005 MAY 19 P 12: 29
FINANCIAL
DISCLOSURE OFFICE

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| | Garten, Nathaniel M | 5/11/2005 |

## III. NON-INVESTMENT INCOME. (Reporting individual and spouse; see pp. 17-24 of filing instructions)

### A. Filer's Non-Investment Income
☑ NONE - (No reportable non-investment income.)

| | DATE | SOURCE AND TYPE | GROSS INCOME (yours, not spouse's) |
|---|---|---|---|
| 1. | | | |

### B. Spouse's Non-Investment Income - (If you were married during any portion of the reporting year, please complete this section. Dollar amount not required except for honoraria.)
☑ NONE - (No reportable non-investment income.)

| | DATE | SOURCE AND TYPE |
|---|---|---|
| 1. | | |

## IV. REIMBURSEMENTS – transportation, lodging, food, entertainment.
(Includes those to spouse and dependent children. See pp. 25-27 of instructions.)

☐ NONE - (No such reportable reimbursements.)

| | SOURCE | DESCRIPTION |
|---|---|---|
| 1. | New York Intellectual Property Lawyers Association | reimbursement for lodging and travel ██████████ from Boston to NYC to attend annual N.Y.I.P.L.A. dinner 3/26/04 at Waldorf Astoria |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| | Gorton, Nathaniel M | 5/11/2005 |

## V.  GIFTS.   (Includes those to spouse and dependent children.  See pp. 28-31 of instructions.)

☑ NONE   - (No such reportable gifts.)

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1. | | |

## VI.  LIABILITIES.   (Includes those of spouse and dependent children.  See pp. 32-34 of instructions.)

☑ NONE   - (No reportable liabilities.)

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1. | | |

# FINANCIAL DISCLOSURE REPORT
## Page 1 of 4

| | |
|---|---|
| Name of Person Reporting<br>Gorton, Nathaniel M | Date of Report<br>5/11/2005 |

## VII.  INVESTMENTS and TRUSTS  — income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions.)

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount Code 1<br>(A-H) | (2)<br>Type (e.g. div. rent or int.) | (1)<br>Value Code 2<br>(J-P) | (2)<br>Value Method Code 3<br>(Q-W) | (1)<br>Type (e.g. buy, sell, merger, redemption) | If not exempt from disclosure | | | |
| | | | | | | (2)<br>Date: Month - Day | (3)<br>Value Code 2<br>(J-P) | (4)<br>Gain Code 1<br>(A-H) | (5)<br>Identity of buyer/seller (if private transaction) |
| ☐ NONE  (No reportable income, assets, or transactions) | | | | | | | | | |
| 1.  Rocky Bay Trust (a MA business trust) (common stock) | G | S corp | P1 | Q | | | | | See Section VIII |
| 2.  Fidelity Cash Reserves (individual) | A | Dividend | K | T | | | | | |
| 3.  Fidelity Money Market Accounts (POA, trustee)(Att#1,¶4) | B | Dividend | M | T | | | | | |
| 4.  Charitable Remainder Trust | E | div. int. | | | | | | | See Section VIII |
| 5.  American Intl. Group Inc. | | | | | sell | 2/25 | J | C | |
| 6.  Pfizer, Inc. | | | | | sell | 2/25 | J | B | |
| 7.  Sysco Corp. | | | | | sell | 2/25 | J | D | |
| 8.  Gillette Co. | | | | | sell | 7/1 | J | | |
| 9.  Microsoft Corp. | | | | | sell | 7/1 | J | B | |
| 10.  Nokia Corp. | | | | | sell | 7/1 | J | | |
| 11.  Costco Whsl Corp. | | | | | sell | 10/13 | J | B | |
| 12.  Chubb Corp. | | | | | buy | 11/2 | J | | |
| 13.  Boston Financial Management, Inc. IRA | | None | P1 | T | | | | | |
| 14.  Federal Home Ln Bk | | | | | sell | 1/26 | K | | |
| 15.  Federal Farm Cr Bk | | | | | buy | 2/6/ | K | | |
| 16.  Federal Farm Cr Bk | | | | | sell | 3/1 | J | | |
| 17.  Federal Home Ln Bk | | | | | sell | 3/10 | K | | |
| 18.  Federal Home Ln Bk | | | | | buy | 3/23 | K | | |

| 1. Income/Gain Codes:<br>(See Columns B1 and D4) | A = $1,000 or less<br>F = $50,001-$100,000 | B = $1,001-$2,500<br>G = $100,001-$1,000,000 | C = $2,501-$5,000<br>H1 = $1,000,001-$5,000,000 | D = $5,001-$15,000<br>H2 = More than $5,000,000 | E = $15,001-$50,000 |
|---|---|---|---|---|---|
| 2. Value Codes:<br>(See Columns C1 and D3) | J = $15,000 or less<br>N = $250,000-$500,000<br>P3 = $25,000,001-$50,000,000 | K = $15,001-$50,000<br>O = $500,001-$1,000,000 | L = $50,001-$100,000<br>P1 = $1,000,001-$5,000,000 | M = $100,001-$250,000<br>P2 = $5,000,001-$25,000,000 | |
| 3. Value Method Codes:<br>(See Column C2) | Q = Appraisal<br>U = Book Value | R = Cost (Real Estate Only)<br>V = Other | S = Assessment<br>W = Estimated | T = Cash/Market | P4 = More than $50,000,000 |

**FINANCIAL DISCLOSURE REPORT**
**Page 2 of 4**

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 5/11/2005 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-J) | B. (2) Type (e.g. div. rent. or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | C. (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g. buy, sell, merger, redemption) | D. If not exempt from disclosure (2) Date Month - Day | D. (3) Value Code 2 (J-P) | D. (4) Gain Code 1 (A-H) | D. (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 19. Federal Home Ln Bk | | | | | buy | 3/30 | K | | |
| 20. Federal Home Ln Bk | | | | | buy | 4/16 | K | | |
| 21. Bellsouth Telecm | | | | | sell | 6/15 | K | | |
| 22. Federal Farm Cr Bk | | | | | buy | 6/24 | K | | |
| 23. Emerson Elec Co. | | | | | buy | 6/28 | J. | | |
| 24. Raytheon Co. | | | | | buy | 7/1 | J | | |
| 25. Omnicom Group | | | | | buy | 7/9 | J | | |
| 26. Chubb Corp. | | | | | buy | 11/2 | J | | |
| 27. Federal Home Ln Bk | | | | | sell | 11/13 | K | | |
| 28. Federal Home Ln Bk | | | | | buy | 11/24 | K | | |
| 29. Equity Residential | | | | | sell | 5/12 | J | A | |
| 30. Anadarko Pete Corp. | | | | | sell | 10/25 | J | D | |
| 31. Oracle Corp. | | | | | sell | 10/29 | J | | |
| 32. Federal Home Ln Bk | | | | | buy | 12/3 | K | | |
| 33. Neenah Paper, Inc. | | | | | sell | 12/16 | J | A | |
| 34. Neenah Paper, Inc. | | | | | sell | 12/21 | J | A | |
| 35. Boston Financial Management, Inc. revocable trust | C | div.&int. | M | T | | | | | See Section VIII |
| 36. Bell Atlantic - new | | | | | sell | 2/1 | J | | |

| 1. Income/Gain Codes: (See Columns B1 and D4) | A = $1,000 or less | B = $1,001-$2,500 | C = $2,501-$5,000 | D = $5,001-$15,000 | E = $15,001-$50,000 |
|---|---|---|---|---|---|
| | F = $50,001-$100,000 | G = $100,001-$1,000,000 | H1 = $1,000,001-$5,000,000 | H2 = More than $5,000,000 | |
| 2. Value Codes: (See Columns C1 and D3) | J = $15,000 or less | K = $15,001-$50,000 | L = $50,001-$100,000 | M = $100,001-$250,000 | |
| | N = $250,000-$500,000 | O = $500,001-$1,000,000 | P1 = $1,000,001-$5,000,000 | P2 = $5,000,001-$25,000,000 | |
| | P3 = $25,000,001-$50,000,000 | | P4 = More than $50,000,000 | | |
| 3. Value Method Codes: (See Column C2) | Q = Appraisal | R = Cost (Real Estate Only) | S = Assessment | T = Cash/Market | |
| | U = Book Value | V = Other | W = Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 3 of 4

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 5/11/2005 |

## VII.  INVESTMENTS and TRUSTS   – income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions.)

| | A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A -H) | (2) Type (e.g. div. rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g. buy, sell, merger, redemption) | (2) Date: Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|---|
| 37. | Torchmark Corp. | | | | | buy | 2/2 | J | | |
| 38. | Sigma Aldrich Corp. | | | | | buy | 4/7 | J | | |
| 39. | Bank of America Corp. | | | | | buy | 4/7 | J | | |
| 40. | Dell, Inc. | | | | | buy | 7/9 | J | | |
| 41. | Omnicom Group | | | | | buy | 7/9 | J | | |
| 42. | Intel Corp. | | | | | sell | 10/7 | J | | |
| 43. | Medtronic Inc. | | | | | sell | 10/7 | J | B | |
| 44. | Anadarko Pete Corp. | | | | | sell | 10/25 | J | D | |
| 45. | Chubb Corp. | | | | | buy | 11/2 | J | | |
| 46. | Diagnostic Prods Corp | | | | | buy | 11/3 | J | | |
| 47. | Intel Corp. | | | | | sell | 11/12 | J | | |
| 48. | Neenah Paper, Inc. | | | | | sell | 12/16 | J | A | |
| 49. | Neenah Paper, Inc. | | | | | sell | 12/21 | J | A | |
| 50. | Boston Financial Management, Inc. revocable trust | C | div.&int. | M | T | | | | | See Section VIII |
| 51. | Torchmark Corp. | | | | | buy | 2/2 | J | | |
| 52. | U S T Note | | | | | sell | 2/15 | J | A | |
| 53. | Oracle Corp. | | | | | sell | 10/29 | J | C | |
| 54. | Chubb Corp. | | | | | buy | 11/2 | J | | |

| 1. Income/Gain Codes: (See Columns B1 and D4) | A = $1,000 or less | B = $1,001-$2,500 | C = $2,501-$5,000 | D = $5,001-$15,000 | E = $15,001-$50,000 |
|---|---|---|---|---|---|
| | F = $50,001-$100,000 | G = $100,001-$1,000,000 | H1 = $1,000,001-$5,000,000 | H2 = More than $5,000,000 | |
| 2. Value Codes: (See Columns C1 and D3) | J = $15,000 or less | K = $15,001-$50,000 | L = $50,001-$100,000 | M = $100,001-$250,000 | |
| | N = $250,001-$500,000 | O = $500,001-$1,000,000 | P1 = $1,000,001-$5,000,000 | P2 = $5,000,001-$25,000,000 | |
| | P3 = $25,000,001-$50,000,000 | | P4 = $More than $50,000,000 | | |
| 3. Value Method Codes: (See Column C2) | Q = Appraisal | R = Cost (Real Estate Only) | S = Assessment | T = Cash/Market | |
| | U = Book Value | V = Other | W = Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
**Page 4 of 4**

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 5/11/2005 |

VII. INVESTMENTS and TRUSTS – income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions.)

| A. Description of Assets (including trust assets) Place "(x)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A–H) | (2) Type (e.g. div. rent or int.) | (1) Value Code 2 (J–P) | (2) Value Method Code 3 (Q–W) | (1) Type (e.g. buy, sell, merger, redemption) | (2) Date: Month-Day | (3) Value Code 2 (J–P) | (4) Gain Code 1 (A–H) | (5) Identity of buyer/seller (if private transaction) |
| 55. Diagnostic Prods Corp. | | | | | buy | 11/3 | J | | |
| 56. Intel Corp. | | | | | sell | 11/12 | J | | |
| 57. Neenah Paper, Inc. | | | | | sell | 12/16 | J | A | |
| 58. Neenah Paper, Inc. | | | | | sell | 12/21 | J | A | |
| 59. Fleet | A | Interest | J | T | | | | | |

| 1. Income/Gain Codes: (See Columns B1 and D4) | A = $1,000 or less F = $50,001-$100,000 | B = $1,001-$2,500 G = $100,001-$1,000,000 | C = $2,501-$5,000 H1 = $1,000,001-$5,000,000 | D = $5,001-$15,000 H2 = More than $5,000,000 | E = $15,001-$50,000 |
|---|---|---|---|---|---|
| 2. Value Codes: (See Columns C1 and D3) | J = $15,000 or less N = $250,000-$500,000 P3 = $25,000,001-$50,000,000 | K = $15,001-$50,000 O = $500,001-$1,000,000 | L = $50,001-$100,000 P1 = $1,000,001-$5,000,000 P4 = More than $50,000,000 | M = $100,001-$250,000 P2 = $5,000,001-$25,000,000 | |
| 3. Value Method Codes: (See Column C2) | Q = Appraisal U = Book Value | R = Cost (Real Estate Only) V = Other | S = Assessment W = Estimated | T = Cash/Market | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| • | Gorton, Nathaniel M | 5/11/2005 |

## VII. ADDITIONAL INFORMATION OR EXPLANATIONS    (Indicate part of Report.)

Line 1 - Rocky Bay Trust, a Massachusetts Business Trust, of which the reporting party is a shareholder, owns all of the stock of ▮▮▮▮▮▮▮ & Co., Inc., a Massachusetts corp., ("the Company"). Income reported in Section VII by virtue of common stock holdings of the reporting party in Rocky Bay Trust is attributable to his pro rata share of the income of the Company which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders of the Trust whether or not such income is, in fact, distributed. The value of the stock holdings is appraised beinnially by a certified financial analyst.

Line 4 - In 1997 the reporting party ▮▮▮▮▮ funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Lines 4, 13, 35 and 50 - The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston, MA and consist of stocks and bonds in publicly held companies listed in Attachment #2.

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| | Gorton, Nathaniel M | 5/11/2005 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature 

Date ___May 13, 2005___

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

### FILING INSTRUCTIONS

Mail signed original and 3 additional copies to:

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

Financial Disclosure Report
Nathaniel M. Gorton
May 11, 2005
Attachment #1

I.   Positions

Position                                    Name of Organization/Entity

1.   Shareholder, Clerk/Secretary           Rocky Bay Trust, a MA Business
     and Director                           Trust, which owns all of the
                                            Stock of ████████ & Co.,
                                            Inc.. Boston, MA (closely held
                                            ████ seafood business)

2.   Clerk and Director                     Cambridge Animal Aid, Inc.
                                            Floral City, FL (non-profit
                                            animal aid organization ████████)

3.   Member of the Corporation             The New England Home for
                                            Little Wanderers, Boston, MA
                                            (non-profit, private child
                                            welfare agency)

NOTE: None of the beneficiaries of the following trusts and
accounts of which the reporting party is a trustee (or holds a
power of attorney) ████████████████████████ and
neither the reporting party ████████ has any beneficial
interest in or control over the disposition of assets of such
trusts and accounts.

4.   Power of Attorney/Trustee             Fidelity money market accounts
                                            (for all shareholders of Rocky
                                            Bay Trust, ████████████
                                            ██████████████)

5.   Trustee                               Irrevocable Trust (created in
                                            connection with the estate
                                            plan of the reporting party's
                                            sister)

6.   Trustee                               1989 Irrevocable Trust and
                                            Irrevocable Sub S Trust (both
                                            created in connection ████ e
                                            ████████████)

Financial Disclosure Report
Nathaniel M. Gorton
May 11, 2005
Attachment #2

All of the listed holdings are of common stock unless otherwise noted.

American International Group
Anadarko Pete Co.
Automatic Data Processing, Inc.
Avery Dennison, Inc.
Bank of America Corp.
Bank One Arizona NA (bond)
Bear Stearns Co. (bond)
Boston Scientific Corp.
BP Amoco PLC
Brinker International, Inc.
Chubb Corp
Cisco Corporation (formerly Cisco Systems, Inc.)
Colgate Palmolive Co.
Costco Wholesale Corp.
CVS Corp.
Dell, Inc.
Diagnostic Products Corp.
Eli Lilly & Co.
Emerson Electric Co. (stocks & bonds)
Exxon-Mobil Corp.
Federal Farm Credit Bank (bond)
Federal Home Loan Bank (bond)
Federal National Mortgage Association
First Data Corporation
Gillette Co.

Honeywell Inc. (bond)
Intel Corporation
Johnson & Johnson
Kimberley Clark Corp.
MBIA, Inc.
MBNA Corp.
Medtronic, Inc.
Microsoft Corp.
NationsBank Corp. (bond)
New York Telephone Co. (bond)
Nokia Corp.
Omnicom Group
Pepsico Inc.
Pfizer, Inc.
Procter & Gamble Co.
Raytheon, Inc.
RPM (Ohio), Inc.
Sigma Aldrich Corp.
Staples, Inc.
State Street Corp.
Sysco Corp.
Torchmark Corp.
United States Treasury Notes (bonds)
Vodafone Group PLC ADR

**AO 10**
**Rev. 1/2006**

# FINANCIAL DISCLOSURE REPORT
## FOR CALENDAR YEAR 2005

*Report Required by the Ethics in Government Act of 1978 (5 U.S.C. app. §§ 101-111)*

| 1. Person Reporting (last name, first, middle initial)<br><br>Gorton, Nathaniel M | 2. Court or Organization<br><br>District Court – Massachusetts | 3. Date of Report<br><br>05/4/2006 |
|---|---|---|
| 4. Title (Article III Judges indicate active or senior status; magistrate judges indicate full- or part-time)<br><br>U.S. District Judge - Active | 5a. Report Type (check appropriate type)<br>☐ Nomination,    Date<br>☐ Initial    ☒ Annual    ☐ Final<br><br>5b. ☐ Amended Report | 6. Reporting Period<br>01/01/2005<br>to<br>12/31/2005 |
| 7. Chambers or Office Address<br><br>United States District Court<br>1 Courthouse Way, Suite 3110<br>Boston, MA 02210 | 8. On the basis of the information contained in this Report and any modifications pertaining thereto, it is, in my opinion, in compliance with applicable laws and regulations.<br><br>Reviewing Officer_____ Date_____ | |

> *IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part where you have no reportable information. Sign on last page.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of instructions.)*

☐ **NONE** *(No reportable positions.)*

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1. See Attachment #1 | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of instructions.)*

☒ **NONE** *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |
| 2. | |
| 3. | |

**FINANCIAL DISCLOSURE REPORT**
Page 2 of 11

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/4/2006 |

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of Instructions.)*

**A. Filer's Non-Investment Income**

[X] NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

**B. Spouse's Non-Investment Income** – *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

[X] NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

## IV. REIMBURSEMENTS – *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children. See pp. 25-27 of Instructions.)*

[ ] NONE *(No reportable reimbursements.)*

| SOURCE | DESCRIPTION |
|---|---|
| 1. New York Intellectual Property Lawyers Association | reimbursement for lodging and travel by train ▇▇▇ from Boston to NYC to attend annual N.Y.I.P.L.A. dinner 3/18/05 at Waldorf Astoria |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

| FINANCIAL DISCLOSURE REPORT<br>Page 3 of 11 | Name of Person Reporting<br><br>Gorton, Nathaniel M | Date of Report<br><br>05/4/2006 |
|---|---|---|

## V. GIFTS. *(Includes those to spouse and dependent children. See pp. 28-31 of Instructions.)*

[X]   NONE *(No reportable gifts.)*

| | SOURCE | DESCRIPTION | VALUE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children. See pp. 32-34 of Instructions.)*

[X]   NONE *(No reportable liabilities.)*

| | CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

**FINANCIAL DISCLOSURE REPORT**
Page 4 of 11

| Name of Person Reporting | Date of Report |
|---|---|
| Gerton, Nathaniel M | 05/4/2006 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, merger, redemption) | (2) Date Month - Day | (3) Value Code 2. (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 1. Rocky Bay Trust (a MA business trust) (common stock) | D | S corp | P1 | Q | | | | | See Section VIII |
| 2. Fidelity Cash Reserves (individual) | A | Dividend | K | T | | | | | |
| 3. Fidelity Money Market Accounts (POA, trustee)(Att#1,¶4) | D | Dividend | N | T | | | | | |
| 4. Charitable Remainder Trust | E | div.,int. | | | | | | | See Section VIII |
| 5. Gillette Co. | | | | | sell | 1/7 | J | | |
| 6. Federal National Mortgage Association | | | | | sell | 1/25 | J | | |
| 7. Nations Bank Corp. | | | | | sell | 2/15 | K | | |
| 8. American International Group, Inc. | | | | | sell | 3/28 | K | D | |
| 9. Devon Energy Corp. | | | | | buy | 4/1 | J | | |
| 10. Pfizer, Inc. | | | | | sell | 4/8 | K | D | |
| 11. Microsoft Corp. | | | | | sell | 4/15 | J | B | |
| 12. 3M Company | | | | | buy | 5/9 | J | | |
| 13. Investors Financial Service Corp. | | | | | buy | 5/13 | J | | |
| 14. Abbott Labs | | | | | buy | 5/16 | J | | |
| 15. U.S. Treasury Bill | | | | | sell | 8/11 | J | | |
| 16. Chubb Corp. | | | | | sell | 10/28 | J | B | |
| 17. Investors Financial Service Corp. | | | | | sell | 11/11 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | P4 =More than $50,000,000 | | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 5 of 11

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/4/2006 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, merger, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 18. Boston Financial Management, Inc. IRA | | None | P1 | T | | | | | |
| 19. Gillette Co. | | | | | sell | 1/7 | K | D | |
| 20. Omnicom Group | | | | | buy | 1/7 | J | | |
| 21. Avery Dennison Corp. | | | | | buy | 1/7 | J | | |
| 22. Federal National Mortgage Association | | | | | sell | 1/25 | J | | |
| 23. Nokia Corp. | | | | | sell | 3/10 | K | | |
| 24. American International Group, Inc. | | | | | sell | 3/28 | K | E | |
| 25. Pfizer, Inc. | | | | | sell | 4/8 | K | E | |
| 26. Microsoft Corp. | | | | | sell | 4/15 | J | D | |
| 27. 3M Company | | | | | buy | 4/15 | K | | |
| 28. Cisco Corp. | | | | | sell | 4/18 | K | D | |
| 29. McKormick & Co., Inc. | | | | | buy | 4/19 | K | | |
| 30. Wm. Wrigley, Jr. Co. | | | | | buy | 4/19 | K | | |
| 31. Federal Home Loan Bank | | | | | buy | 4/26 | L | | |
| 32. Eli Lilly & Co. | | | | | sell | 5/9 | J | | |
| 33. State Street Corp. | | | | | sell | 5/12 | K | D | |
| 34. Investors Financial Service Corp. | | | | | buy | 5/12 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | P3 =$25,000,001 - $50,000,000 | R =Cost (Real Estate Only) | P4 =More than $50,000,000 | S =Assessment | |
| | Q =Appraisal | U =Book Value | V =Other | W =Estimated | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 5 of 11 | Gorton, Nathaniel M | 05/4/2006 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, merger, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 18. Boston Financial Management, Inc. IRA | | None | P1 | T | | | | | |
| 19. Gillette Co. | | | | | sell | 1/7 | K | D | |
| 20. Omnicom Group | | | | | buy | 1/7 | J | | |
| 21. Avery Dennison Corp. | | | | | buy | 1/7 | J | | |
| 22. Federal National Mortgage Association | | | | | sell | 1/25 | J | | |
| 23. Nokia Corp. | | | | | sell | 3/10 | K | | |
| 24. American International Group, Inc. | | | | | sell | 3/28 | K | E | |
| 25. Pfizer, Inc. | | | | | sell | 4/8 | K | E | |
| 26. Microsoft Corp. | | | | | sell | 4/15 | J | D | |
| 27. 3M Company | | | | | buy | 4/15 | K | | |
| 28. Cisco Corp. | | | | | sell | 4/18 | K | D | |
| 29. McCormick & Co., Inc. | | | | | buy | 4/19 | K | | |
| 30. Wm. Wrigley, Jr. Co. | | | | | buy | 4/19 | K | | |
| 31. Federal Home Loan Bank | | | | | buy | 4/26 | L | | |
| 32. Eli Lilly & Co. | | | | | sell | 5/9 | J | | |
| 33. State Street Corp. | | | | | sell | 5/12 | K | D | |
| 34. Investors Financial Service Corp. | | | | | buy | 5/12 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | P3 =$25,000,001 - $50,000,000 | R =Cost (Real Estate Only) | S =Assessment | | |
| | Q =Appraisal | V =Other | | | |
| | U =Book Value | W =Estimated | T =Cash Market | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 6 of 11 | Gorton, Nathaniel M | 05/4/2006 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset exempt from prior disclosure | B.<br>Income during reporting period | | C.<br>Gross value at end of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.<br>buy, sell,<br>merger,<br>redemption) | If not exempt from disclosure | | | |
| | | | | | | (2)<br>Date<br>Month -<br>Day | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 35. Abbott Labs | | | | | buy | 5/16 | K | | |
| 36. American International Group, Inc. | | | | | buy | 7/5 | J | | |
| 37. Vodafone Group PLC ADR | | | | | sell | 7/5 | K | | |
| 38. Anheuser Busch | | | | | buy | 7/19 | J | | |
| 39. Investors Financial Service Group | | | | | buy | 7/19 | J | | |
| 40. Fedex Corp. | | | | | buy | 7/19 | J | | |
| 41. Federal Home Loan Bank | | | | | buy | 8/12 | L | | |
| 42. Bank One Arizona N.A. | | | | | sell | 9/15 | K | B | |
| 43. Federal Farm Credit Bank | | | | | buy | 9/29 | K | | |
| 44. Chubb Corp. | | | | | sell | 10/22 | J | C | |
| 45. Investors Financial Service Group | | | | | sell | 11/11 | J | A | |
| 46. United Technologies Corp. | | | | | buy | 11/17 | J | | |
| 47. Avery Dennison Corp. | | | | | sell | 11/17 | J | | |
| 48. Torchmark Corp. | | | | | buy | 12/23 | J | | |
| 49. Wells Fargo & Co. (New) | | | | | buy | 12/23 | J | | |
| 50. United Health Group, Inc. | | | | | buy | 12/23 | J | | |
| 51. Boston Financial Management, Inc. revocable trust | C | div.&int. | N | T | | | | | See Section VIII |

| 1. Income Gain Codes:<br>(See Columns B1 and D4)<br>2. Value Codes<br>(See Columns C1 and D3)<br><br>3. Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br>T =Cash Market | E =$15,001 - $50,000 |

**FINANCIAL DISCLOSURE REPORT**
Page 7 of 11

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/4/2006 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, merger, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 52. Amgen, Inc. | | | | | buy | 1/3 | J | | |
| 53. Anheuser Busch | | | | | buy | 1/7 | J | | |
| 54. Gillette Co. | | | | | sell | 1/7 | J | C | |
| 55. Federal National Mortgage Corp. | | | | | sell | 1/25 | J | A | |
| 56. Biomet, Inc. | | | | | buy | 2/2 | J | | |
| 57. Exxon Mobil Corp. | | | | | buy | 2/17 | J | | |
| 58. American International Group, Inc. | | | | | sell | 3/28 | J | D | |
| 59. Devon Energy Corp. | | | | | buy | 4/1 | J | | |
| 60. Pfizer Corp. | | | | | sell | 4/8 | J | D | |
| 61. Anheuser Busch | | | | | buy | 5/9 | J | | |
| 62. Biomet, Inc. | | | | | buy | 5/9 | J | | |
| 63. Amgen, Inc. | | | | | buy | 5/9 | J | | |
| 64. MBNA Corp. | | | | | buy | 5/9 | J | | |
| 65. Investors Financial Service Corp. | | | | | buy | 5/12 | J | | |
| 66. Investors Financial Service Corp. | | | | | sell | 10/27 | J | | |
| 67. Fifth Third Bancorp. | | | | | buy | 10/17 | J | | |
| 68. U. S. Treasury Bills | | | | | buy | 10/24 | M | | |

| 1. Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes | P3 =$25,000,001 - $50,000,000 | Q =Appraisal | P4 =More than $50,000,000 | | |
| (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
Page 8 of 11

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/4/2006 |

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div, rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, merger, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 69. Chubb Corp. | | | | | sell | 10/28 | J | B | |
| 70. U.S. Treasury Bill | | | | | sell | 11/17 | K | | |
| 71. U.S. Treasury Bill | | | | | buy | 11/17 | M | | |
| 72. Boston Financial Management, Inc. revocable trust | C | div.&int. | M | T | | | | | See Section VIII |
| 73. Amgen, Inc. | | | | | buy | 1/3 | J | | |
| 74. Anheuser Busch | | | | | buy | 1/7 | J | | |
| 75. Gillette Co. | | | | | sell | 1/7 | J | B | |
| 76. Federal National Mortgage Corp. | | | | | sell | 1/25 | J | | |
| 77. Biomet, Inc. | | | | | buy | 2/2 | J | | |
| 78. Devon Energy Corp. | | | | | buy | 2/17 | J | | |
| 79. American International Group, Inc. | | | | | sell | 3/28 | J | C | |
| 80. Pfizer, Inc. | | | | | sell | 4/8 | J | A | |
| 81. Cisco Corp. | | | | | sell | 4/18 | J | | |
| 82. Anheuser Busch | | | | | buy | 5/9 | J | | |
| 83. Biomet, Inc. | | | | | buy | 5/9 | J | | |
| 84. Amgen, Inc. | | | | | buy | 5/9 | J | | |
| 85. MBNA Corp. | | | | | buy | 5/9 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | P3 =$25,000,001 - $50,000,000 | Q =Appraisal | R =Cost (Real Estate Only) | P4 =More than $50,000,000 | |
| | U =Book Value | | S =Assessment | T =Cash Market | |
| | | | V =Other | W =Estimated | |

**FINANCIAL DISCLOSURE REPORT**
Page 9 of 11

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/4/2006 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of the spouse and dependent children. See pp. 34-57 of filing instructions)

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, merger, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 86. Investors Financial Service Corp. | | | | | buy | 5/12 | J | | |
| 87. State Street Corp. | | | | | sell | 5/12 | J | B | |
| 88. Vodafone Group PLC ADR | | | | | sell | 7/5 | J | | |
| 89. American International Group, Inc. | | | | | buy | 7/5 | J | | |
| 90. Chubb Corp. | | | | | sell | 10/28 | J | B | |
| 91. Investors Financial Service Corp. | | | | | sell | 11/11 | J | | |
| 92. U.S. Treasury Notes | | | | | sell | 11/15 | J | A | |
| 93. Avery Dennison Corp. | | | | | sell | 11/17 | J | B | |
| 94. Federal Home Loan Bank | | | | | buy | 11/8 | J | | |
| 95. Federal Farm Credit Bank | | | | | buy | 11/17 | J | | |
| 96. United Technologies Corp. | | | | | buy | 11/17 | J | | |
| 97. Anadarko Pete Corp. | | | | | buy | 11/18 | J | | |
| 98. Bank of America (successor of Fleet) | A | Interest | J | T | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | P3 =$25,000,001 - $50,000,000 | R =Cost (Real Estate Only) | P4 =More than $50,000,000 | S =Assessment | T =Cash Market |
| | Q =Appraisal | V =Other | | | |
| | U =Book Value | | W =Estimated | | |

| **FINANCIAL DISCLOSURE REPORT**<br>Page 10 of 11 | Name of Person Reporting<br><br>Gorton, Nathaniel M | Date of Report<br><br>05/4/2006 |
|---|---|---|

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of Report.)*

Line 1 - Rocky Bay Trust, a Massachusetts Business Trust, of which the reporting party is a shareholder, owns all of the stock of Slade Gorton & Co., Inc., a Massachusetts corp. ("the Company").  Income reported in Section VII by virtue of common stock holdings of the reporting party in Rocky Bay Trust is attributable to his pro rata share of the income of the Company which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders of the Trust whether or not such income is, in fact, distributed.  The value of the stock holdings is appraised biennially by a certified financial analyst.

Line 4 - In 1997 the reporting party ▮▮▮▮▮▮▮▮▮ funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Lines 4, 18, 51 and 72 - The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston, MA and consist of stocks and bonds in publicly held companies listed in Attachment #2.

| FINANCIAL DISCLOSURE REPORT Page 11 of 11 | Name of Person Reporting Gorton, Nathaniel M | Date of Report 05/4/2006 |
| --- | --- | --- |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature _____ Date __5/4/06__

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

### FILING INSTRUCTIONS

Mail signed original and 3 additional copies to:

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

Financial Disclosure Report
Nathaniel M. Gorton
May 4, 2006
Attachment #1

I.   Positions

Position                                    Name of Organization/Entity

1.   Shareholder, Clerk/Secretary          Rocky Bay Trust, a MA Business
     and Director                          Trust, which owns all of the
                                           Stock of Slade Gorton & Co.,
                                           Inc.. Boston, MA (closely held
                                           ████ seafood business)

2.   Clerk and Director                    Cambridge Animal Aid, Inc.
                                           Floral City, FL (non-profit
                                           animal aid organization
                                           operated by reporting party's
                                           ████)

3.   Member of the Corporation            The New England Home for
                                           Little Wanderers, Boston, MA
                                           (non-profit, private child
                                           welfare agency)

**NOTE: None of the beneficiaries of the following trusts and
accounts of which the reporting party is a trustee (or holds a
power of attorney) is ████████ the reporting party and
neither the reporting party nor ████████ has any beneficial
interest in or control over the disposition of assets of such
trusts and accounts.**

4.   Power of Attorney/Trustee            Fidelity money market accounts
                                           (for all shareholders of Rocky
                                           Bay Trust, all of whom are

                                           ████████████████ of
                                           reporting party)

5.   Trustee                               Irrevocable Trust (created in
                                           connection with the estate
                                           plan of the reporting party's
                                           ████)

6.   Trustee                               1989 Irrevocable Trust and
                                           Irrevocable Sub S Trust (both
                                           created in connection with the
                                           estate plan of reporting
                                           party's ████)

Financial Disclosure Report
Nathaniel M. Gorton
May   , 2006
Attachment #2

All of the listed holdings are of common stock unless otherwise noted.

3M Company
Abbott Labs
Amgen, Inc.
American International Group, Inc.
Anadarko Pete Co.
Anheuser Busch Corp.
Automatic Data Processing, Inc.
Bank of America Corp.
Bear Stearns Co. (bond)
Biomet, Inc.
Boston Scientific Corp.
BP Amooco PLC
Brinker International, Inc.
Colgate Palmolive Co.
Costco Wholesale Corp
CVS Corp.
Dell, Inc.
Devon Energy Corp.
Diagnostic Products Corp.
Emerson Electric Co. (stocks & bonds)
Exxon-Mobil Corp.
Federal Farm Credit Bank (bond)
Federal Home Loan Bank (bond)
Fedex Corp.
Fifth Third Bancorp.
First Data Corporation

Honeywell Inc. (bond)
Intel Corporation
Johnson & Johnson
Kimberley Clark Corp.
MBIA, Inc.
MBNA Corp.
McCormick & Co., Inc.
Medtronic, Inc.
Microsoft Corp.
New York Telephone Co. (bond)
Omnicom Group
Pepsico, Inc.
Procter & Gamble Co.
Raytheon, Inc.
RPM (Ohio), Inc.
Sigma Aldrich Corp.
Staples, Inc.
State Street Corp.
Sysco Corp.
Torchmark Corp.
United Health Group, Inc.
United States Treasury Notes (bonds)
United Technologies Corp.
Wells Fargo & Co. New
William Wrigley Jr. Co.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**1 COURTHOUSE WAY**
**SUITE 3110**
**BOSTON, MASSACHUSETTS 02210**

NATHANIEL M. GORTON
DISTRICT JUDGE

July 3, 2007

RECEIVED
2007 JUL -8  A 11: 01
FINANCIAL DISCLOSURE OFFICE

Judge Ortrie D. Smith, Chair
Committee on Financial Disclosure
Judicial Conference of the United States
One Columbus Circle, N.E.
Washington, D.C. 20544

Re: Calendar Year 2006 Filing

Dear Judge Smith:

This is to respond to your letter of June 26, 2007 requesting more information concerning my 2006 Financial Disclosure Report dated May 1, 2007.

You have referred me to a listing of "Western Union Co." in Part VII, page 9, line 98. I believe you intended to refer to Part VII, page 9, line 78, which indicates that I sold Western Union Co. stock on November 3, 2006 with a gain of less than $1,000. The stock was not previously listed by me because Western Union Co. was a "spin-off" from First Data Corporation which is, and has been, listed on my "Attachment #2" for several years. The spin-off occurred on September 20, 2006 and the small amount of Western Union Co. stock received was sold shortly thereafter.

Pursuant to the request in the last paragraph of your letter, I enclose two additional copies of this letter for your use. I trust my report for calendar year 2006 is now in compliance with the instructions and your request for additional information. Please call me at 617-748-9247, if you have any questions.

Very truly yours,

Nathaniel M. Gorton

NMG/seh
Enclosures

| AG 10<br>Rev. 1/2007 | **FINANCIAL DISCLOSURE REPORT**<br>**FOR CALENDAR YEAR 2006** | *Report Required by the Ethics*<br>*in Government Act of 1978*<br>*(5 U.S.C. app. §§ 101-111)* |
|---|---|---|

| 1. Person Reporting (last name, first, middle initial)<br><br>Gorton, Nathaniel M | 2. Court or Organization<br><br>District Court - Massachusetts | 3. Date of Report<br><br>05/01/2007 |
|---|---|---|
| 4. Title (Article III judges indicate active or senior status;<br>magistrate judges indicate full- or part-time)<br><br>U.S. District Judge - Active | 5a. Report Type (check appropriate type)<br>☐ Nomination,   Date<br>☐ Initial   ☒ Annual   ☐ Final<br><br>5b. ☐ Amended Report | 6. Reporting Period<br><br>01/01/2006<br>to<br>12/31/2006 |
| 7. Chambers or Office Address<br><br>United States District Court<br>1 Courthouse Way, Suite 3110<br>Boston, MA 02210 | 8. On the basis of the information contained in this Report and any<br>modifications pertaining thereto, it is, in my opinion, in compliance<br>with applicable laws and regulations.<br><br>Reviewing Officer_____ Date_____ | |

*IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts,*
*checking the NONE box for each part where you have no reportable information. Sign on last page.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of instructions.)*

☐ **NONE** *(No reportable positions.)*

|   | **POSITION** | **NAME OF ORGANIZATION/ENTITY** |
|---|---|---|
| 1. | See Attachment #1 | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of instructions.)*

☒ **NONE** *(No reportable agreements.)*

|   | **DATE** | **PARTIES AND TERMS** |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

FINANCIAL DISCLOSURE
2007 MAY 10  A 11: 09
RECEIVED

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 2 of 13 | Gorton, Nathaniel M | 05/01/2007 |

## III. NON-INVESTMENT INCOME. *(Reporting Individual and spouse; see pp. 17-24 of Instructions.)*

### A. Filer's Non-Investment Income

☐ **NONE** *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|
| 1. June 30 | Slade Gorton & Co., Inc., (closely held ▮▮▮ seafood business) corporate clerk/secretary, director, custodian, trustee and accounting duties | $ 10,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

### B. Spouse's Non-Investment Income – *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☒ **NONE** *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

## IV. REIMBURSEMENTS – *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children. See pp. 25-27 of instructions.)*

☐ **NONE** *(No reportable reimbursements.)*

| SOURCE | DESCRIPTION |
|---|---|
| 1. New York Intellectual Property Lawyers Association | reimbursement for lodging and travel by train ▮▮▮ from Boston to NYC to attend annual N.Y.I.P.L.A. dinner 3/24/06 at Waldorf Astoria |
| 2. | |
| 3. | |
| 4. | |

**FINANCIAL DISCLOSURE REPORT**
Page 3 of 13

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2007 |

5.

| **FINANCIAL DISCLOSURE REPORT**<br>Page 4 of 13 | Name of Person Reporting<br><br>Gorton, Nathaniel M | Date of Report<br><br>05/01/2007 |
|---|---|---|

## V. GIFTS. *(Includes those to spouse and dependent children. See pp. 28-31 of instructions.)*

[X]  NONE *(No reportable gifts.)*

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children. See pp. 32-33 of instructions.)*

[X]  NONE *(No reportable liabilities.)*

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

**FINANCIAL DISCLOSURE REPORT**
Page 5 of 13

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2007 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of the spouse and dependent children. See pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end of<br>reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.<br>buy, sell,<br>redemption) | (2)<br>Date<br>Month -<br>Day | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 1.   Rocky Bay Trust (a MA business trust)<br>(common stock) | E | | O | Q | | | | | See Section VIII |
| 2.   Fidelity Cash Reserves (individual) | A | Dividend | J | T | | | | | |
| 3.   Fidelity Money Market Accounts<br>(POA, trustee)(Att#1,¶4) | D | Dividend | M | T | | | | | |
| 4.   Charitable Remainder Trust | E | div.,int. | | | | | | | See Section VIII |
| 5.   MBIA, Inc | | | | | sell | 2/13 | K | D | |
| 6.   Illinois Tool Words, Inc. | | | | | buy | 2/16 | J | | |
| 7.   United Technologies Corp | | | | | buy | 2/16 | J | | |
| 8.   Citigroup, Inc. | | | | | buy | 5/2 | J | | |
| 9.   Citigroup, Inc. | | | | | sell | 5/17 | J | | |
| 10.  Peabody Energy Corp. | | | | | buy | 11/22 | J | | |
| 11.  Newmont Mng. Corp. | | | | | buy | 12/5 | J | | |
| 12.  Illinois Tool Works, Inc. | | | | | sell | 12/27 | J | A | |
| 13.  Medtronic, Inc. | | | | | sell | 12/27 | J | C | |
| 14.  Microsoft Corp | | | | | sell | 12/27 | J | C | |
| 15.  Brinker International, Inc. | | | | | sell | 12/27 | J | B | |
| 16.  First Data Corp. | | | | | sell | 12/27 | J | D | |
| 17.  3M Co. | | | | | sell | 12/27 | J | | |

| 1. Income Gain Codes:<br>(See Columns B1 and D4)<br>2. Value Codes<br>(See Columns C1 and D3)<br>3. Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br>T =Cash Market | E =$15,001 - $50,000 |

**FINANCIAL DISCLOSURE REPORT**
Page 6 of 13

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2007 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of the spouse and dependent children. See pp. 34-60 of filing Instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 18. I Shares, Inc. MSCI PAC J IDX | | | | | buy | 12/27 | K | | |
| 19. Boston Financial Management, Inc. IRA | | None | P1 | T | | | | | |
| 20. MBIA, Inc. | | | | | sell | 2/13 | K | E | |
| 21. Anheuser Busch | | | | | sell | 2/15 | J | | |
| 22. Bank New York, Inc. | | | | | buy | 2/16 | J | | |
| 23. Illinois Tool Works, Inc. | | | | | buy | 2/16 | K | | |
| 24. United Health Group, Inc. | | | | | buy | 2/16 | J | | |
| 25. United Parcel Service, Inc. CL B | | | | | buy | 2/17 | J | | |
| 26. Apple Computer, Inc. | | | | | buy | 4/12 | K | | |
| 27. Wm. Wrigley Jr. Co. | | | | | sell | 5/9 | J | | |
| 28. Intel Corp. | | | | | sell | 8/3 | J | | |
| 29. Aflac, Inc. | | | | | buy | 8/3 | J | | |
| 30. Kimberly Clark Corp. | | | | | sell | 8/18 | K | C | |
| 31. Staples, Inc. | | | | | sell | 8/18 | J | B | |
| 32. Walgreen Company | | | | | buy | 8/18 | J | | |
| 33. Eaton Vance Corp. Non Vtg | | | | | buy | 8/18 | J | | |
| 34. Federal Home Loan Bank | | | | | buy | 9/27 | K | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | P3 =$25,000,001 - $50,000,000 | R =Cost (Real Estate Only) | P4 =More than $50,000,000 | | |
| | Q =Appraisal | S =Assessment | | | |
| | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 7 of 13 | Gorton, Nathaniel M | 05/01/2007 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of the spouse and dependent children. See pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 35.  Federal Home Loan Bank | | | | | sell | 9/28 | K | A | |
| 36.  Intel Corp. | | | | | sell | 10/18 | K | | |
| 37.  Torchmark Corp. | | | | | buy | 10/18 | J | | |
| 38.  Wells Fargo & Co. New | | | | | buy | 10/18 | J | | |
| 39.  United Parcel Service, Inc. CL B | | | | | buy | 10/18 | J | | |
| 40.  Raytheon Co. | | | | | buy | 10/18 | J | | |
| 41.  U.S. Treasury Note | | | | | sell | 11/15 | K | | |
| 42.  Federal Home Loan Mtg. | | | | | buy | 11/15 | L | | |
| 43.  Kimberly Clark Corp. | | | | | sell | 11/22 | K | D | |
| 44.  Peabody Energy Corp. | | | | | buy | 11/22 | K | | |
| 45.  Newmont Mng Corp. | | | | | buy | 12/5 | J | | |
| 46.  Colgate Palmolive Co. | | | | | sell | 12/27 | K | D | |
| 47.  Illinois Tool Works, Inc. | | | | | sell | 12/27 | K | A | |
| 48.  Medtronic, Inc. | | | | | sell | 12/27 | K | E | |
| 49.  Microsoft Corp. | | | | | sell | 12/27 | K | E | |
| 50.  Brinker International Inc. | | | | | sell | 12/27 | K | D | |
| 51.  3M Co. | | | | | sell | 12/27 | K | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 – $2,500 | C =$2,501 – $5,000 | D =$5,001 – $15,000 | E =$15,001 – $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 – $100,000 | G =$100,001 – $1,000,000 | H1 =$1,000,001 – $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes: (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 – $50,000 | L =$50,001 – $100,000 | M =$100,001 – $250,000 | |
| | N =$250,001 – $500,000 | O =$500,001 – $1,000,000 | P1 =$1,000,001 – $5,000,000 | P2 =$5,000,001 – $25,000,000 | |
| | P3 =$25,000,001 – $50,000,000 | R =Cost (Real Estate Only) | P4 =More than $50,000,000 | | |
| 3. Value Method Codes: (See Column C2) | Q =Appraisal | S =Assessment | T =Cash Market | | |
| | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 8 of 13

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2007 |

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (Includes those of the spouse and dependent children. See pp. 34-60 of filing Instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 52. I SharesTr S&P Small Cap600 | | | | | buy | 12/27 | K | | |
| 53. I Shares Inc. MSCI PAC J IDX | | | | | buy | 12/27 | K | | |
| 54. I Shares Tr MSCI Emerg Mkt | | | | | buy | 12/27 | L | | |
| 55. Boston Financial Management, Inc. revocable trust | C | div.&int. | M | T | | | | | See Section VIII |
| 56. U. S. Treasury Bill | | | | | sell | 1/26 | L | | |
| 57. U. S. Treasury Bill | | | | | buy | 2/1 | K | | |
| 58. MBIA, Inc. | | | | | sell | 2/13 | J | A | |
| 59. Anheuser Busch | | | | | sell | 2/15 | J | | |
| 60. U. S. Treasury Bill | | | | | sell | 2/16 | L | | |
| 61. U. S. Treasury Bill | | | | | buy | 2/27 | L | | |
| 62. U. S. Treasury Bill | | | | | sell | 3/28 | K | A | |
| 63. U. S. Treasury Bill | | | | | sell | 4/27 | K | | |
| 64. U. S. Treasury Bill | | | | | sell | 5/4 | K | | |
| 65. Diagnostic Products Corp. | | | | | sell | 5/15 | J | A | |
| 66. U. S. Treasury Bill | | | | | sell | 5/18 | K | | |
| 67. U. S. Treasury Bill | | | | | sell | 5/25 | L | | |
| 68. Emerson Electric Co. | | | | | sell | 8/1 | J | B | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | P3 =$25,000,001 - $50,000,000 | R =Cost (Real Estate Only) | P4 =More than $50,000,000 | | |
| | Q =Appraisal | S =Assessment | T =Cash Market | | |
| | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 9 of 13

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2007 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of the spouse and dependent children. See pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end of<br>reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.<br>buy, sell,<br>redemption) | (2)<br>Date<br>Month –<br>Day | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 69.  Kimberly Clark Corp. | | | | | sell | 8/1 | J | D | |
| 70.  Medtronic Inc. | | | | | sell | 8/1 | J | B | |
| 71.  Biomet, Inc. | | | | | sell | 8/1 | J | | |
| 72.  Automatic Data Processing | | | | | sell | 11/3 | J | C | |
| 73.  Emerson Electric Co. | | | | | sell | 11/3 | J | B | |
| 74.  Medtronic, Inc. | | | | | sell | 11/3 | J | B | |
| 75.  Procter & Gamble Company | | | | | sell | 11/3 | J | C | |
| 76.  Sysco Corp | | | | | sell | 11/3 | J | C | |
| 77.  Microsoft Corp. | | | | | sell | 11/3 | J | C | |
| 78.  Western Union Co. | | | | | sell | 11/3 | J | A | |
| 79.  First Data Corp. | | | | | sell | 11/3 | J | A | |
| 80.  Fifth Third Bancorp | | | | | sell | 11/22 | J | A | |
| 81.  Peabody Energy Corp. | | | | | buy | 11/22 | J | | |
| 82.  Newmont Mng Corp. | | | | | buy | 12/5 | J | | |
| 83.  Dell, Inc. | | | | | sell | 12/27 | J | | |
| 84.  I Shares TR S&P Small CAP600 | | | | | buy | 12/27 | J | | |
| 85.  Boston Financial Management, Inc. | D | Int./Div. | M | T | | | | | See Section VIII |

| 1. Income Gain Codes:<br>(See Columns B1 and D4)<br>2. Value Codes<br>(See Columns C1 and D3)<br>3. Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,000 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br>T =Cash Market | E =$15,001 - $50,000 |

# FINANCIAL DISCLOSURE REPORT
Page 10 of 13

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2007 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of the spouse and dependent children. See pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| revocable trust ● | | | | | | | | | |
| 86. MBIA, Inc. | | | | | sell | 2/13 | J | C | |
| 87. Anheuser Busch | | | | | sell | 2/15 | J | | |
| 88. Torchmark Corp. | | | | | buy | 2/15 | J | | |
| 89. Illinois Tool Works, Inc. | | | | | buy | 2/16 | J | | |
| 90. United Parcel Svc Inc. CL B | | | | | buy | 2/17 | J | | |
| 91. Federal Home Loan Bank | | | | | sell | 3/6 | J | | |
| 92. Federal Home Loan Bank | | | | | buy | 3/9 | J | | |
| 93. Citigroup, Inc. | | | | | buy | 5/2 | J | | |
| 94. Diagnostic Products Corp | | | | | sell | 5/15 | J | B | |
| 95. Citigroup Inc. | | | | | sell | 5/17 | J | | |
| 96. Sysco Corp. | | | | | sell | 7/27 | J | A | |
| 97. Biomet, Inc. | | | | | sell | 7/27 | J | | |
| 98. First Data Corp. | | | | | sell | 7/27 | J | B | |
| 99. Johnson & Johnson | | | | | sell | 8/1 | J | A | |
| 100. Pepsico Inc. | | | | | sell | 8/1 | J | B | |
| 101. First Data Corp. | | | | | sell | 8/1 | J | A | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 11 of 13

| Name of Person Reporting | Date of Report |
|---|---|
| Gerton, Nathaniel M | 05/01/2007 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of the spouse and dependent children. See pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 102.  Biomet Inc. | | | | | sell | 8/2 | J | | |
| 103.  Automatic Data Processing | | | | | sell | 11/3 | J | B | |
| 104.  Sysco Corp | | | | | sell | 11/3 | J | B | |
| 105.  United Technologies Corp. | | | | | sell | 11/3 | J | A | |
| 106.  Kimberly Clark Corp. | | | | | sell | 11/22 | J | B | |
| 107.  Peabody Energy Crop. | | | | | buy | 11/22 | J | | |
| 108.  Newmont Mng Corp | | | | | buy | 12/5 | J | | |
| 109.  Colgate Palmolive Co. | | | | | sell | 12/27 | J | C | |
| 110.  Illinois Tool Works Inc. | | | | | sell | 12/27 | J | A | |
| 111.  I Shares Tr S&P Small CAP600 | | | | | buy | 12/27 | J | | |
| 112.  Bank of America (successor of Fleet) | A | Interest | J | T | | | | | |

| | | | | |
|---|---|---|---|---|
| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| 2. Value Codes (See Columns C1 and D3) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | P3 =$25,000,001 - $50,000,000 | R =Cost (Real Estate Only) | P4 =More than $50,000,000 | | |
| | Q =Appraisal | S =Assessment | T =Cash Market | | |
| | U =Book Value | V =Other | W =Estimated | | |

| **FINANCIAL DISCLOSURE REPORT** | Name of Person Reporting | Date of Report |
| Page 12 of 13 | Gorton, Nathaniel M | 05/01/2007 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of Report)*

Line 1 - Rocky Bay Trust, a Massachusetts Business Trust, of which the reporting party is a shareholder, owns all of the stock of Slade Gorton & Co., Inc., a Massachusetts corp. ("the Company"). Income reported in Section VII by virtue of common stock holdings of the reporting party in Rocky Bay Trust is attributable to his pro rata share of the income of the Company which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders of the Trust whether or not such income is, in fact, distributed. The value of the stock holdings is appraised beinnially by a certified financial analyst.

Line 4 - In 1997 the reporting party and ▇▇▇▇ funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Lines 4, 19, 55 and 85 - The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston, MA and consist of stocks and bonds in publicly held companies and equity holdings based on indices listed in Attachment #2.

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 13 of 13 | Gorton, Nathaniel M | 05/01/2007 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature _____   Date _May 7, 2007_

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

```
                    FILING INSTRUCTIONS

        Mail signed original and 3 additional copies to:

        Committee on Financial Disclosure
        Administrative Office of the United States Courts
        Suite 2-301
        One Columbus Circle, N.E.
        Washington, D.C. 20544
```

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2007
Attachment #1

I.    Positions

| Position | Name of Organization/Entity |
|---|---|
| 1.    Shareholder, Clerk/Secretary and Director | Rocky Bay Trust, a MA Business Trust, which owns all of the Stock of Slade Gorton & Co., Inc.. Boston, MA (closely held ▉▉▉ seafood business) |
| 2.    Clerk and Director | Cambridge Animal Aid, Inc. Floral City, FL (non-profit animal aid organization operated by reporting party's ▉▉▉ |
| 3.    Member of the Corporation | The New England Home for Little Wanderers, Boston, MA (non-profit, private child welfare agency) |

**NOTE: None of the beneficiaries of the following trusts and accounts of which the reporting party is a trustee (or holds a power of attorney) is a dependent of the reporting party and neither the reporting party nor his spouse has any beneficial interest in or control over the disposition of assets of such trusts and accounts.**

| | |
|---|---|
| 4.    Power of Attorney/Trustee | Fidelity money market accounts (for all shareholders of Rocky Bay Trust, all of whom are ▉▉▉▉▉▉▉▉▉▉▉ of reporting party) |
| 5.    Trustee | Irrevocable Trust (created in connection with the estate plan of the reporting party's ▉▉▉ |
| 6.    Trustee | 1989 Irrevocable Trust and Irrevocable Sub S Trust (both created in connection with the estate plan of reporting party's |

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2007
Attachment #2

All of the listed holdings are of common stock unless otherwise noted.

| | |
|---|---|
| Abbott Labs | Honeywell Inc. (bond) |
| Aflac, Inc. | Johnson & Johnson |
| Amgen, Inc. | McCormick & Co., Inc. |
| American International Group, Inc. | Medtronic, Inc. |
| Anadarko Pete Co. | Microsoft Corp. |
| Apple Computer, Inc. | New York Telephone Co. (bond) |
| Automatic Data Processing, Inc. | Newmont Mining Co. |
| Bank of America Corp. | Omnicom Group |
| Bank New York, Inc. | Peabody Energy Corp. |
| Bear Stearns Co. (bond) | Pepsico, Inc. |
| Boston Scientific Corp. | Procter & Gamble Co. |
| B P Amoco PLC | Raytheon Co.. |
| Brinker International, Inc. | RPM (Ohio), Inc. |
| Costco Wholesale Corp | Sigma Aldrich Corp. |
| CVS Corp. | Staples, Inc. |
| Devon Energy Corp. | Sysco Corp. |
| Eaton Vance Corp.. | Torchmark Corp. |
| Emerson Electric Co. (stocks & bonds) | United Health Group, Inc. |
| Exxon-Mobil Corp. | United Parcel Service, Inc. |
| Federal Farm Credit Bank (bond) | United Technologies Corp. |
| Federal Home Loan Bank (bond) | Walgreen Co. |
| Fedex Corp. | Wells Fargo & Co. New |
| First Data Corporation | Western Union Co. |
| | William Wrigley Jr. Co. |

Equity holdings based on indices:
> IShares, Inc. Morgan-Stanley Capital Int'l (MSCI) Pacific Rim ex-Japan Index
> IShares, Inc. MSCI Emerging Market Index
> IShares, Inc. S&P Small Capitalization 600 Index

Please note:   State Street Corp. was listed on reporting party's Attachment #2 for 2006 by mistake; that stock had been sold during 2005.  Also, MBNA Corp. was acquired by and merged into Bank of America Corp. during 2006.

<table>
<tr><td>AO 10<br>Rev. 1/2008</td><td>**FINANCIAL DISCLOSURE REPORT**<br>**FOR CALENDAR YEAR 2007**</td><td>*Report Required by the Ethics*<br>*in Government Act of 1978*<br>*(5 U.S.C. app. §§ 101-111)*</td></tr>
</table>

| 1. Person Reporting (last name, first, middle initial)<br><br>Gorton, Nathaniel M | 2. Court or Organization<br><br>District Court - Massachusetts | 3. Date of Report<br><br>05/01/2008 |
|---|---|---|
| 4. Title (Article III judges indicate active or senior status;<br>   magistrate judges indicate full- or part-time)<br><br>U.S. District Judge - Active | 5a. Report Type (check appropriate type)<br>☐ Nomination,   Date<br>☐ Initial   ☑ Annual   ☐ Final<br>5b. ☐ Amended Report | 6. Reporting Period<br><br>01/01/2007<br>to<br>12/31/2007 |
| 7. Chambers or Office Address<br><br>United States District Court<br>1 Courthouse Way, Suite 3110<br>Boston, MA 02210 | 8. On the basis of the information contained in this Report and any<br>modifications pertaining thereto, it is, in my opinion, in compliance<br>with applicable laws and regulations.<br><br>Reviewing Officer_____ Date_____ | |

> **IMPORTANT NOTES:** *The instructions accompanying this form must be followed. Complete all parts,*
> *checking the NONE box for each part where you have no reportable information. Sign on last page.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ **NONE** *(No reportable positions.)*

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1. See Attachment #1 | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑ **NONE** *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |
| 2. | |
| 3. | |

RECEIVED 2008 MAY -6 A 10: 5?
FINANCIAL DISCLOSURE OFFICE

| FINANCIAL DISCLOSURE REPORT<br>Page 2 of 14 | **Name of Person Reporting**<br><br>Gorton, Nathaniel M | **Date of Report**<br><br>05/01/2008 |
|---|---|---|

## III. NON-INVESTMENT INCOME. *(Reporting Individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐    NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME<br>(yours, not spouse's) |
|---|---|---|
| 1. June 30 | Slade Gorton & Co., Inc., (closely held ██████ seafood business) corporate clerk/secretary, director, custodian, trustee and accounting duties | $ 10,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |

### B. Spouse's Non-Investment Income – *if you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑    NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS – *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐    NONE *(No reportable reimbursements.)*

| | SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|---|
| 1. | New York Intellectual Property Lawyers Association | | | | reimbursement for lodging and travel by train ██████ from Boston to NYC to attend annual N.Y.I.P.L.A. dinner 3/23/07 at Waldorf Astoria |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |

**FINANCIAL DISCLOSURE REPORT**
Page 3 of 14

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2008 |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| | SOURCE | DESCRIPTION | VALUE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| | CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 4 of 14 | Name of Person Reporting<br><br>Gorton, Nathaniel M | Date of Report<br><br>05/01/2008 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end of<br>reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>Month -<br>Day | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 1. Rocky Bay Trust (a MA business trust)<br>(common stock) | F | | O | Q | | | | | See Section VIII |
| 2. Fidelity Cash Reserves (individual) | A | Dividend | J | T | | | | | |
| 3. Fidelity Money Market Accounts<br>(POA, trustee)(Att#1,¶4) | D | Dividend | M | T | | | | | |
| 4. Charitable Remainder Trust | E | div., int. | | | | | | | See Section VIII . |
| 5. Brinker Intl, Inc. | | | | | sell | 1/2 | J | | |
| 6. First Data Corp. | | | | | sell | 1/2 | J | | |
| 7. Medtronic, Inc. | | | | | sell | 1/2 | J | | |
| 8. Microsoft Corp. | | | | | sell | 1/2 | J | | |
| 9. IShares MSCI PAC Ex-Japan Index Fd | | | | | buy | 1/2 | K | | |
| 10. Honeywell, Inc. (bond) | | | | | sell | 3/15 | K | | |
| 11. Broadridge Finl Solutions, Inc. (spin off<br>from AutoDataProc) | | | | | sell | 4/27 | J | B | |
| 12. IShares MSCI PAC Ex-Japan Index Fd | | | | | sell | 5/18 | K | D | |
| 13. Cameco Corp. | | | | | buy | 5/18 | J | | |
| 14. Lundin Mining Corp. | | | | | buy | 5/18 | J | | |
| 15. Stillwater Mng. Co. | | | | | buy | 5/18 | J | | |
| 16. Southern Copper Corp. | | | | | buy | 5/24 | J | | |
| 17. Teck Cominco Ltd. | | | | | buy | 5/29 | J | | |

| 1. Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 5 of 14 | Gorton, Nathaniel M | 05/01/2008 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 18. Caterpillar, Inc. | | | | | buy | 6/12 | J | | |
| 19. Google, Inc. Cl A | | | | | buy | 7/5 | J | | |
| 20. Lowes Companies, Inc. | | | | | buy | 7/11 | J | | |
| 21. American Express Co., Inc. | | | | | buy | 9/4 | J | | |
| 22. Bank of America Corp. | | | | | buy | 9/10 | J | | |
| 23. Eaton Vance Corp. | | | | | buy | 9/10 | J | | |
| 24. American Express Co., Inc. | | | | | buy | 10/30 | J | | |
| 25. Federal Home Loan Bank (bond) | | | | | sell | 11/5 | K | | |
| 26. Patriot Coal Corp.(spin off fin.Peabody Energy Corp.) | | | | | sell | 12/3 | J | A | |
| 27. Boston Financial Management, Inc. IRA | None | | P1 | T | | | | | |
| 28. William Wrigley, Jr., Co. | | | | | sell | 1/11 | K | | |
| 29. Newmont Mining Corp. | | | | | buy | 2/6 | J | | |
| 30. Fedex Corp. | | | | | buy | 2/6 | J | | |
| 31. United Technologies Corp. | | | | | buy | 2/7 | J | | |
| 32. Fedex Corp. | | | | | buy | 2/7 | J | | |
| 33. Broadridge Finl Solutions, Inc.(spin off fin Auto.DataProc) | | | | | sell | 4/19 | J | B | |
| 34. IShares MSCI PAC Ex-Japan Index Fd | | | | | sell | 5/15 | K | C | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 6 of 14

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2008 |

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐    **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 35. Stillwater Mining Co. | | | | | buy | 5/15 | J | | |
| 36. Lundin Mining Corporation | | | | | buy | 5/15 | J | | |
| 37. Cameco Corp. | | | | | buy | 5/15 | J | | |
| 38. United Parcel Service, Inc. | | | | | sell | 5/18 | J | | |
| 39. Southern Copper Corp. | | | | | buy | 5/21 | J | | |
| 40. First Data Corp | | | | | sell | 5/22 | K | E | |
| 41. Teck Cominco, Ltd. | | | | | buy | 5/23 | J | | |
| 42. Apple Computer, Inc. | | | | | sell | 6/5 | J | C | |
| 43. Cisco Systems, Inc. | | | | | buy | 6/5 | J | | |
| 44. Caterpillar, Inc. | | | | | buy | 6/7 | K | | |
| 45. BP PLC ADR (f/k/a "BP Amoco PLC") | | | | | sell | 6/7 | K | E | |
| 46. Lowes Companies, Inc. | | | | | buy | 7/6 | K | | |
| 47. Torchmark Corp. | | | | | sell | 7/18 | K | B | |
| 48. Cameco Corp. | | | | | buy | 7/25 | J | | |
| 49. Farm Home Loan Bank (bond) | | | | | sell | 8/15 | K | | |
| 50. American Express Co. | | | | | buy | 8/23 | K | | |
| 51. IShares MSCI PAC Ex-Japan Index Fd | | | | | buy | 8/30 | K | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 7 of 14 | Gorton, Nathaniel M | 05/01/2008 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing Instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 52. Walgreen Co. | | | | | buy | 8/30 | J | | |
| 53. WalMart Stores, Inc. (bond) | | | | | buy | 9/13 | K | | |
| 54. Federal Home Loan Bank (bond) | | | | | sell | 9/14 | K | | |
| 55. Farm Home Loan Bank (bond) | | | | | buy | 9/17 | K | | |
| 56. IShares S&P Smallcap 600 Index Fd | | | | | sell | 9/27 | K | B | |
| 57. IShares, Inc. Russell 2000 Index | | | | | buy | 9/27 | K | | |
| 58. Nike Inc. | | | | | buy | 10/2 | K | | |
| 59. American Int'l Group, Inc. | | | | | sell | 10/26 | K | A | |
| 60. Apple Computer, Inc. | | | | | sell | 10/31 | K | E | |
| 61. Stillwater Mining Co. | | | | | buy | 11/1 | J | | |
| 62. Federal Home Loan Bank | | | | | sell | 11/5 | K | | |
| 63. Federal Home Loan Bank | | | | | sell | 11/6 | K | | |
| 64. Stryker Corp. | | | | | buy | 11/7 | J | | |
| 65. Citrix Systems, Inc. | | | | | buy | 11/7 | J | | |
| 66. Farm Home Loan Bank (bond) | | | | | buy | 11/7 | K | | |
| 67. Citrix Systems, Inc. | | | | | buy | 11/8 | J | | |
| 68. Stryker Corp. | | | | | buy | 11/8 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 8 of 14

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2008 |

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 69.   Abbott Labs (bond) | | | | | buy | 11/9 | K | | |
| 70.   Federal Home Loan Bank | | | | | sell | 11/14 | K | | |
| 71.   IBM Int'l Group (bond) | | | | | buy | 11/20 | K | | |
| 72.   Federal Home Loan Bank | | | | | sell | 11/21 | K | | |
| 73.   Federal Home Loan Bank | | | | | sell | 11/25 | K | | |
| 74.   Patriot Coal Corporation (spin off of Peabody Energy Corp) | | | | | sell | 11/26 | J | A | |
| 75.   McCormick & Co. | | | | | sell | 11/29 | K | B | |
| 76.   Network Appliance, Inc. | | | | | buy | 11/29 | J | | |
| 77.   Federal Home Loan Bank | | | | | buy | 12/6 | K | | |
| 78.   Peabody Energy Corp. | | | | | sell | 12/7 | K | D | |
| 79.   Walgreen Co. | | | | | buy | 12/11 | J | | |
| 80.   Bear Stearns Co., Inc. (bond) | | | | | sell | 12/15 | K | | |
| 81.   Boston Financial Management, Inc. revocable trust | B | Int./Div. | M | T | | | | | See Section VIII |
| 82.   IShares Tr S&P Smallcap 600 | | | | | buy | 1/2 | J | | |
| 83.   Amgen Inc. | | | | | sell | 2/7 | J | A | |
| 84.   Anadarko Petroleum Corp. | | | | | sell | 2/7 | J | B | |
| 85.   Bank of America Corp. | | | | | sell | 2/7 | J | A | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

## FINANCIAL DISCLOSURE REPORT
### Page 9 of 14

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2008 |

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 86. Devon Energy Corp. | | | | | sell | 2/7 | J | B | |
| 87. Emerson Electric Co. | | | | | sell | 2/7 | J | B | |
| 88. First Data Corp. | | | | | sell | 2/7 | J | C | |
| 89. Microsoft Corp. | | | | | sell | 2/7 | J | C | |
| 90. Sigma Aldrich Corp. | | | | | sell | 2/7 | J | A | |
| 91. Sysco Corp. | | | | | sell | 2/7 | J | C | |
| 92. Broadridge Finl Solutions, Inc.(spin off fm.AutoDataProc) | | | | | sell | 4/27 | J | A | |
| 93. Cameco Corp. | | | | | buy | 5/18 | J | | |
| 94. Lundin Mining Corp. | | | | | buy | 5/18 | J | | |
| 95. Stillwater Mng. Co. | | | | | buy | 5/18 | J | | |
| 96. Southern Copper Corp. | | | | | buy | 5/24 | J | | |
| 97. Teck Cominco Ltd. | | | | | buy | 5/29 | J | | |
| 98. Cisco Systems, Inc. | | | | | buy | 6/8 | J | | |
| 99. Caterpillar Inc. | | | | | buy | 6/12 | J | | |
| 100. Amgen Inc. | | | | | sell | 7/3 | J | | |
| 101. Google Inc. | | | | | buy | 7/5 | J | | |
| 102. Lowes Companies, Inc. | | | | | buy | 7/11 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 10 of 14 | Gorton, Nathaniel M | 05/01/2008 |

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing Instructions).*

☐  NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 103.  Torchmark Corp. | | | | | sell | 7/23 | J | B | |
| 104.  Cameco Corp. | | | | | buy | 7/30 | J | | |
| 105.  American Express Co., Inc. | | | | | buy | 9/4 | J | | |
| 106.  IShares Tr S&P Smallcap 600 | | | | | sell | 10/2 | J | A | |
| 107.  IShares Tr Russell 2000 Index Fd | | | | | buy | 10/2 | J | | |
| 108.  Nike Inc. | | | | | buy | 10/5 | J | | |
| 109.  Automatic Data Processing, Inc. | | | | | sell | 10/18 | J | B | |
| 110.  Citrix Systems, Inc. | | | | | buy | 10/18 | J | | |
| 111.  Bank of America Corp. | | | | | sell | 10/22 | J | A | |
| 112.  Sigma Aldrich Corp. | | | | | sell | 11/15 | J | A | |
| 113.  Citrix Systems, Inc. | | | | | buy | ·11/16 | J | | |
| 114.  Patriot Coal Corp. (spin off fm. Peabody Energy Corp) | | | | | sell | 12/3 | J | A | |
| 115.  Boston Financial Management, Inc. revocable trust ● | C | Int./Div. | M | T | | | | | See Section VIII |
| 116.  IShares Tr S&P Smallcap 600 | | | | | buy | 1/2 | J | | |
| 117.  Torchmark Corp. | | | | | sell | 2/7 | J | A | |
| 118.  American International Group Inc. | | | | | sell | 2/7 | J | A | |
| 119.  Amgen Inc. | | | | | sell | 2/7 | J | A | |

| 1. Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes | Q =Appraisal | ·Ā =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 11 of 14

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M | 05/01/2008 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 120.  Anadarko Petroleum Corp. | | | | | sell | 2/7 | J | | |
| 121.  Bank of America | | | | | sell | 2/7 | J | A | |
| 122.  Emerson Electric Co. | | | | | sell | 2/7 | J | B | |
| 123.  First Data Corp. | | | | | sell | 2/7 | J | B | |
| 124.  Medtronic Inc. | | | | | sell | 2/7 | J | B | |
| 125.  Microsoft Corp. | | | | | sell | 2/7 | J | A | |
| 126.  Raytheon Co. | | | | | sell | 2/7 | J | B | |
| 127.  Anadarko Petroleum Corp. | | | | | sell | 3/5 | J | | |
| 128.  Boston Scientific Corp. Com | | | | | sell | 3/8 | J | | |
| 129.  Pepsico Inc. | | | | | sell | 3/8 | J | B | |
| 130.  Torchmark Corp. | | | | | sell | 3/8 | J | C | |
| 131.  United Parcel Service | | | | | sell | 3/8 | J | | |
| 132.  Broadridge Finl Solutions, Inc.(spin off fm.AutoDataProc) | | | | | sell | 4/27 | J | A | |
| 133.  Cameco Corp. | | | | | buy | 5/18 | J | | |
| 134.  Lundin Mining Corp. | | | | | buy | 5/18 | J | | |
| 135.  Stillwater Mng Co. | | | | | buy | 5/18 | J | | |
| 136.  Southern Copper Corp. | | | | | buy | 5/24 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 12 of 14 | Gorton, Nathaniel M | 05/01/2008 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 137. Teck Cominco Ltd. | | | | | buy | 5/29 | J | | |
| 138. Amgen Inc. | | | | | sell | 7/3 | J | | |
| 139. Google, Inc. | | | | | buy | 7/5 | J | | |
| 140. IShares Tr S&P Smallcap 600 | | | | | sell | 10/2 | J | A | |
| 141. Federal Farm Credit Bank (bond) | | | | | sell | 10/2 | J | | |
| 142. IShares Tr Russell 2000 Index Fd | | | | | buy | 10/2 | J | | |
| 143. Nike Inc. | | | | | buy | 10/5 | J | | |
| 144. Citrix Systems, Inc. | | | | | buy | 10/18 | J | | |
| 145. Federal Home Loan Bank (bond) | | | | | sell | 10/29 | J | | |
| 146. Gilead Sciences Inc. | | | | | buy | 10/30 | J | | |
| 147. Citrix Systems Inc. | | | | | buy | 11/16 | J | | |
| 148. Patriot Coal Corporation (spin off fm.Peabody Energy Corp) | | | | | sell | 12/3 | J | A | |
| 149. Bank of America | A | Interest | J | T | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| 2. Value Codes (See Columns C1 and D3) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 13 of 14 | Gorton, Nathaniel M | 05/01/2008 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of Report.)*

Line 1 - Rocky Bay Trust, a Massachusetts Business Trust, of which the reporting party is a shareholder, owns all of the stock of Slade Gorton & Co., Inc., a Massachusetts corp. ("the Company"). Income reported in Section VII by virtue of common stock holdings of the reporting party in Rocky Bay Trust is attributable to his pro rata share of the income of the Company which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders of the Trust whether or not such income is, in fact, distributed. The value of the stock holdings is appraised biennially by a certified financial analyst.

Line 4 - In 1997 the reporting party███████ funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Lines 27, 81 and 115 - The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston, MA and consist of stocks and bonds in publicly held companies and equity holdings based on indices listed in Attachment #2.

| **FINANCIAL DISCLOSURE REPORT**<br>Page 14 of 14 | Name of Person Reporting<br><br>Gorton, Nathaniel M | Date of Report<br><br>05/01/2008 |
| --- | --- | --- |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature_________

**NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)**

---

**FILING INSTRUCTIONS**

Mail signed original and 3 additional copies to:

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2008
Attachment #1

I.   Positions

| Position | Name of Organization/Entity |
|---|---|
| 1. Shareholder, Clerk/Secretary and Director | Rocky Bay Trust, a MA Business Trust, which owns all of the Stock of Slade Gorton & Co., Inc.. Boston, MA (closely held ▓▓▓▓▓ seafood business) |
| 2. Clerk and Director | Cambridge Animal Aid, Inc. Floral City, FL (non-profit animal aid organization operated by reporting party's ▓▓▓▓▓ |
| 3. Member of the Corporation | The New England Home for Little Wanderers, Boston, MA (non-profit, private child welfare agency) |

**NOTE: None of the beneficiaries of the following trusts and accounts of which the reporting party is a trustee (or holds a power of attorney) is a dependent of the reporting party and neither the reporting party nor his spouse has any beneficial interest in or control over the disposition of assets of such trusts and accounts.**

| | |
|---|---|
| 4. Power of Attorney/Trustee | Fidelity money market accounts (for all shareholders of Rocky Bay Trust, all of whom are ▓▓▓▓▓▓▓▓▓▓▓ of reporting party) |
| 5. Trustee | Irrevocable Trust (created in connection with the estate plan of the reporting party's ▓▓▓▓ |
| 6. Trustee | 1989 Irrevocable Trust and Irrevocable Sub S Trust (both created in connection with the estate plan of reporting party's ▓▓▓▓▓▓ |

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2008
Attachment #2

All of the listed holdings are of common stock unless otherwise noted.

Abbott Labs (stocks & bond)
Aflac, Inc.
American Express Co.
Anadarko Pete Co.
Apple Computer, Inc.
Automatic Data Processing, Inc.
Bank of America Corp.
Bank New York Mellon Corp. (change of name)
Brinker International, Inc.
Cameco Corp.
Caterpillar, Inc.
Cisco Corp.
Citrix Systems, Inc.
Costco Wholesale Corp
CVS Corp.
Devon Energy Corp.
Eaton Vance Corp..
Emerson Electric Co. (stocks & bond)
Exxon-Mobil Corp.
Federal Farm Credit Bank (bond)
Federal Home Loan Bank (bond)
Federal Home Loan Mortgage Corp. (bond)*
Gilead Sciences, Inc.
Google, Inc.
IBM Int'l Group (bond)
Johnson & Johnson

Lundin Mining Corp.
Lowes Companies, Inc.
Medtronic, Inc.
Microsoft Corp.
Network Appliance, Inc.
New York Telephone Co. (bond)
Newmont Mining Co.
Nike, Inc.
Omnicom Group
Peabody Energy Corp.
Pepsico, Inc.
Procter & Gamble Co.
Raytheon Co.
RPM, Inc. (Ohio)
Sigma Aldrich Corp.
Southern Copper Corp.
Staples, Inc.
Stillwater Mining Co.
Stryker Corp.
Sysco Corp.
Teck Cominco, Ltd.
United Health Group, Inc.
United Technologies Corp.
Walgreen Company
WalMart Stores, Inc. (bond)
Wells Fargo & Co. New
Western Union Co.

Equity holdings based on indices:
    IShares, Inc. Morgan-Stanley Capital Int'l (MSCI) Pacific Rim ex-Japan Index
    IShares, Inc. MSCI Emerging Market Index
    IShares, Inc. Russell 2000 Index

*this bond was not listed on reporting party's Attachment #2 for 2007, because it was erroneously included with Federal Home Loan Bank bond

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**1 COURTHOUSE WAY**
**SUITE 3110**
**BOSTON, MASSACHUSETTS 02210**

NATHANIEL M. GORTON
DISTRICT JUDGE

*SELF INITIATED AMENDMENT*

May 29, 2008

RECEIVED
2008 JUN -4  A 11: 00
FINANCIAL DISCLOSURE OFFICE

Judge Ortrie D. Smith, Chair
Committee on Financial Disclosure
Judicial Conference of the United States
One Columbus Circle, N.E.
Washington, D.C.  20544

> Re: Calendar Year 2007 Filing

Dear Judge Smith:

I have received your letter of May 23, 2008, regarding my recent financial disclosure report. I very much want to comply with your requests because, if it is easier for the staff to understand my report, it may become easier for me to draft it.

I fully understand your request in the second paragraph about reporting the date of the most recent appraisal of my stock in Rocky Bay Trust and will comply with that request on all future reports. For your information, the most recent appraisal on which I relied for the 2007 report was December 8, 2006.

However, I do not understand the request you make in the third paragraph of your letter concerning the listing of my assets in Part VII, even after rereading page 37 of the filing instructions at your recommendation. I have, for several years at the request of your Committee, listed my assets held in four separate trust accounts which ███████ I maintain with my financial management company, the identity of which I understand you no longer want me to disclose.

The summaries of those four accounts are listed in my 2007 report in the same order as they have been in previous years (see Part VII, lines 4, 27, 81 and 115). Again, at the request of your Committee, I have, in recent years, listed after the summary of each trust account all of the "buys" and "sells" in each separate account chronologically. On this year's report that consumed over 140 lines of information. In addition to the purchases and sales of stock from those accounts, I have included separately, as requested, "Attachment #2" to Part VIII, which is a list of all of our stock holdings at the end of the report year in the four accounts managed by the financial management company. The companies are listed alphabetically and include some

Judge Ortrie D. Smith, Chair
Committee on Financial Disclosure
May 29, 2008
Page Two

companies in which stocks and bonds were neither bought nor sold during the course of the
report year (and are, therefore, accounted for in Part VII only as part of the summaries of the four
accounts (see Part VII, lines 4, 27, 81 and 115)).

     If you can suggest an easier way for me to comply with my obligations under the financial
disclosure rules, I would very much like to oblige because under the current procedure the
preparation of my annual report consumes countless hours of my time which would be better
spent on my other judicial responsibilities.  Also, if it would be helpful to discuss my method of
reporting with the person at the Administrative Office who assists the Committee in reviewing
my annual reports, I would be glad to do so.  I can be reached at 617-748-9248.

     Thank you for your attention to this matter.



Very truly yours

Nathaniel M. Gorton

NMG/seh

| AO 10 Rev. 1/2008 | **FINANCIAL DISCLOSURE REPORT FOR CALENDAR YEAR 2008** | *Report Required by the Ethics in Government Act of 1978 (5 U.S.C. app. §§ 101-111)* |

| 1. Person Reporting (last name, first, middle initial) Gorton, Nathaniel M. | 2. Court or Organization District Court - Massachusetts | 3. Date of Report 05/01/2009 |

| 4. Title (Article III judges indicate active or senior status; magistrate judges indicate full- or part-time) U.S. District Judge - Active | 5a. Report Type (check appropriate type) ☐ Nomination, Date ☐ Initial ☑ Annual ☐ Final 5b. ☐ Amended Report | 6. Reporting Period 01/01/2008 to 12/31/2008 |

| 7. Chambers or Office Address United States District Court 1 Courthouse Way, Suite 3110 Boston, MA 02210 | 8. On the basis of the information contained in this Report and any modifications pertaining thereto, it is, in my opinion, in compliance with applicable laws and regulations. Reviewing Officer_____ Date_____ |

*IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part where you have no reportable information. Sign on last page.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1. See Attachment #1 | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑ NONE *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |
| 2. | |
| 3. | |

RECEIVED 2009 MAY 13 A 9 43 FINANCIAL DISCLOSURE OFFICE

Gorton_Nathaniel_M

## FINANCIAL DISCLOSURE REPORT
Page 2 of 16

| Name of Person Reporting | Date of Report |
| --- | --- |
| Gorton, Nathaniel M. | 05/01/2009 |

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
| --- | --- | --- |
| 1. June 30 | Slade Gorton & Co., Inc., (closely held ▉▉▉ seafood business) corporate clerk/secretary, director, custodian, trustee and accounting duties | $10,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |

### B. Spouse's Non-Investment Income – *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
| --- | --- |
| 1. | |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS – *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐ NONE *(No reportable reimbursements.)*

| SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
| --- | --- | --- | --- | --- |
| 1. New York Intellectual Property Lawyers Association | | | | reimbursement for lodging and travel by train ▉▉▉ from Boston to NYC to attend annual N.Y.I.P.L.A. dinner 3/28/08 at Waldorf Astoria |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

**FINANCIAL DISCLOSURE REPORT**
Page 3 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

**FINANCIAL DISCLOSURE REPORT**
Page 4 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| | A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end of<br>reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.<br>buy, sell,<br>redemption) | (2)<br>Date<br>Month –<br>Day | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 1. | Rocky Bay Trust (a MA business trust) (common stock) | G | | N | Q | | | | | See Section VIII |
| 2. | Fidelity Cash Reserves (individual) | A | Dividend | J | T | | | | | |
| 3. | Fidelity Money Market Accounts (POA,trustee)(Att#1,¶4) | C | Dividend | L | T | | | | | |
| 4. | Charitable Remainder Trust | E | Int./Div. | | | | | | | See Section VIII |
| 5. | American Intl Group, Inc. | | | | | Buy | 2/7 | J | | |
| 6. | Cisco Corp | | | | | Buy | 2/12 | J | | |
| 7. | Target Corp | | | | | Buy | 2/26 | J | | |
| 8. | Peabody Energy Corp. | | | | | Sold | 4/25 | J | A | |
| 9. | Medtronic, Inc. | | | | | Sold | 4/25 | J | D | |
| 10. | American Intl Group, Inc. | | | | | Buy | 4/29 | J | | |
| 11. | Sysco Corp | | | | | Sold | 4/30 | J | D | |
| 12. | Exxon Mobil Corporation | | | | | Sold | 5/7 | J | C | |
| 13. | Cameco Corp. | | | | | Sold | 6/5 | J | | |
| 14. | Teck Cominco Ltd CL B | | | | | Sold | 6/5 | J | A | |
| 15. | Southern Copper Corp. | | | | | Sold | 6/5 | J | A | |
| 16. | Stillwater Mng Co | | | | | Sold | 6/5 | J | A | |
| 17. | Lundin Mining Corp | | | | | Sold | 6/5 | J | | |

| 1. Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | R =Cost (Real Estate Only) | S =Assessment | |
| 3. Value Method Codes | Q =Appraisal | | P4 =More than $50,000,000 | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 5 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 18. Stillwater Mng Co | | | | | Sold | 6/6 | J | A | |
| 19. Transocean Inc. New | | | | | Buy | 8/12 | J | | |
| 20. IShares Inc. MSCI Pac J Idx | | | | | Buy | 9/17 | J | | |
| 21. IShares TR MSCI Emerg Mkt | | | | | Buy | 9/17 | J | | |
| 22. American Intl Group Inc. | | | | | Sold | 9/18 | J | | |
| 23. Microsoft Corp | | | | | Sold | 9/25 | J | C | |
| 24. Target Corp. | | | | | Buy | 9/29 | J | | |
| 25. Spdr Gold Trust | | | | | Buy | 9/30 | J | | |
| 26. Newmont Mng Corp | | | | | Sold | 9/30 | J | | |
| 27. Bank of America Corp. | | | | | Sold | 10/14 | J | | |
| 28. American Express Co. | | | | | Sold | 11/24 | J | | |
| 29. Transocean Inc. New | | | | | Sold | 12/15 | J | | |
| 30. Emerson Elec Co. | | | | | Buy | 12/15 | J | | |
| 31. Exelon Corp. | | | | | Buy | 12/18 | J | | |
| 32. Emerson Elec Co. | | | | | Buy | 12/18 | J | | |
| 33. Vodafone Group Inc. | | | | | Buy | 12/18 | J | | |
| 34. IShares Inc. MSCI PAC J Idx | | | | | Sold | 12/18 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 6 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 35. Peabody Energy Corp. | | | | | Sold | 12/18 | J | | |
| 36. Caterpillar, Inc. | | | | | Sold | 12/18 | J | | |
| 37. RPM Inc. Ohio | | | | | Sold | 12/18 | J | | |
| 38. Boston Financial Management, Inc. IRA | None | P1 | T | | | | | | |
| 39. Federal Farm Credit Bank (bond) | | | | | Sold | 1/16 | K | | |
| 40. Federal Farm Credit Bank (bond) | | | | | Sold | 1/22 | K | | |
| 41. Peabody Energy Corp | | | | | Buy | 1/24 | J | | |
| 42. Cisco Corp | | | | | Buy | 1/29 | J | | |
| 43. Citrix Sys Inc. | | | | | Buy | 1/29 | J | | |
| 44. IShares Tr Russl 2000 Indx | | | | | Buy | 1/29 | J | | |
| 45. American Intl Group Inc. | | | | | Buy | 1/29 | J | | |
| 46. American Intl Group Inc | | | | | Buy (add'l) | 2/7 | | | |
| 47. Procter & Gamble Company | | | | | Sold | 2/7 | K | D | |
| 48. Dodge & Cox Fds Intl Stk Fd | | | | | Buy | 2/12 | K | | |
| 49. Automatic Data Processing | | | | | Buy | 2/13 | J | | |
| 50. Abbott Labs | | | | | Buy | 2/13 | J | | |
| 51. American Intl Group Inc. | | | | | Buy | 2/13 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 7 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** (*No reportable income, assets, or transactions.*)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 52. Cisco Corp | | | | | Buy | 2/13 | J | | |
| 53. Eaton Vance Corp Non Vtg | | | | | Buy | 2/13 | J | | |
| 54. IShares Tr Russl 2000 Indx | | | | | Buy | 2/13 | J | | |
| 55. JPMorgan Chase & Co. | | | | | Buy | 2/13 | K | | |
| 56. Pitney Bowes Inc. | | | | | Buy | 3/13 | K | | |
| 57. Air Prods & Chems Inc. | | | | | Buy | 3/17 | K | | |
| 58. Avon Products Inc. | | | | | Buy | 3/26 | K | | |
| 59. IShares Tr Eafe Idx | | | | | Buy | 3/28 | K | | |
| 60. Royce Fd Penn Mut Inv | | | | | Buy | 3/31 | J | | |
| 61. United Health Group Inc. | | | | | Sold | 4/25 | J | | |
| 62. Medtronic Inc. | | | | | Sold | 4/25 | K | D | |
| 63. JPMorgan Chase & Co. | | | | | Buy | 4/29 | J | | |
| 64. Eaton Vance Corp Non Vtg | | | | | Buy | 4/29 | J | | |
| 65. Exxon Mobil Corporation | | | | | Sold | 4/29 | J | D | |
| 66. State Street Corp | | | | | Buy | 4/30 | K | | |
| 67. Sysco Corp | | | | | Sold | 4/30 | K | E | |
| 68. SBC Communications Inc. | | | | | Buy | 5/15 | K | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
Page 8 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐     **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 69. Bank New York Mellon Corporation | | | | | Buy | 5/19 | J | | |
| 70. American Intl Group Inc. | | | | | Buy (addl) | 5/19 | J | | |
| 71. Aflac Inc. | | | | | Buy | 5/19 | J | | |
| 72. Cameco Corp | | | | | Sold | 6/5 | J | | |
| 73. Teck Cominco Ltd Cl B | | | | | Sold | 6/5 | J | B | |
| 74. Southern Copper Corp | | | | | Sold | 6/5 | J | B | |
| 75. Stillwater Mng Co | | | | | Sold | 6/5 | J | A | |
| 76. Lundin Mining Corp | | | | | Sold | 6/5 | J | | |
| 77. Stillwater Mng Co. | | | | | Sold | 6/6 | J | A | |
| 78. Cameco Corp | | | | | Sold (part) | 6/9 | J | | |
| 79. Stillwater Mng Co | | | | | Sold (part) | 6/9 | J | A | |
| 80. Spdr Gold Trust | | | | | Buy | 6/25 | J | | |
| 81. Peabody Energy Corp | | | | | Buy | 8/20 | J | | |
| 82. Procter & Gamble Company | | | | | Sold (part) | 8/28 | J | D | |
| 83. Bank New York Mellon Corporation | | | | | Sold | 8/28 | J | | |
| 84. Google Inc Cl A | | | | | Buy | 8/29 | J | | |
| 85. Air Prods & Chems Inc. | | | | | Buy | 8/29 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 9 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 86.  Walgreen Company | | | | | Buy | 9/3 | K | | |
| 87.  CVS Corp | | | | | Sold | 9/3 | K | E | |
| 88.  Lowes Cos Inc. | | | | | Buy | 9/5 | J | | |
| 89.  Novo-Nordisk As Adr - B | | | | | Buy | 9/16 | K | | |
| 90.  Bank of America | | | | | Sold | 9/16 | K | D | |
| 91.  IShares Inc. MSCI PAC J Indx | | | | | Buy | 9/17 | J | | |
| 92.  IShares Tr Russl 2000 Indx | | | | | Buy | 9/17 | J | | |
| 93.  American Intl Group Inc. | | | | | Sold | 9/17 | J | | |
| 94.  Network Appliance, Inc. (NETAPP) | | | | | Sold | 9/26 | J | | |
| 95.  Spdr Gold Trust | | | | | Buy | 9/30 | J | | |
| 96.  Newmont Mng Corp | | | | | Sold | 9/30 | J | | |
| 97.  State Street Corp. | | | | | Sold | 10/7 | K | | |
| 98.  Aflac Inc. | | | | | Sold | 10/15 | K | | |
| 99.  Emerson Electric Co. (bond) | | | | | Sold | 10/15 | K | B | |
| 100.  Vodafone Group Inc. | | | | | Buy | 10/17 | J | | |
| 101.  Peabody Energy Corp. | | | | | Buy | 10/23 | J | | |
| 102.  Raytheon Co. | | | | | Sold | 10/28 | J | B | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 10 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 103.  Natl Rural Util | | | | | Buy | 11/16 | K | | |
| 104.  Georgia Power Co. | | | | | Buy | 11/17 | K | | |
| 105.  Boston Financial Management, Inc. revocable trust | B | Int./Div. | L | T | | | | | See Section VIII |
| 106.  Raytheon Co. | | | | | Sold | 1/18 | J | A | |
| 107.  Brinker Intl Inc. | | | | | Sold | 2/8 | J | | |
| 108.  Peabody Energy Corp | | | | | Sold | 4/25 | J | A | |
| 109.  Medtronic Inc. | | | | | Sold | 4/25 | J | B | |
| 110.  Exxon Mobile Corporation | | | | | Sold | 5/7 | J | A | |
| 111.  Cameco Corp | | | | | Sold | 6/5 | J | | |
| 112.  Teck Cominco Ltd Cl B | | | | | Sold | 6/5 | J | A | |
| 113.  Southern Copper Corp | | | | | Sold | 6/5 | J | A | |
| 114.  Stillwater Mng Co | | | | | Sold | 6/5 | J | A | |
| 115.  Lundin Mining Corp | | | | | Sold | 6/5 | J | | |
| 116.  Powershares Global Water Portfolio | | | | | Buy | 6/6 | J | | |
| 117.  Stillwater Mng Co. | | | | | Sold | 6/6 | J | A | |
| 118.  Cameco Corp | | | | | Sold | 7/10 | J | | |
| 119.  Bank of America | | | | | Sold | 9/12 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 11 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 120.  Spdr Gold Trust | | | | | Buy | 9/30 | J | | |
| 121.  Newmont Mng Corp. | | | | | Sold | 9/30 | J | | |
| 122.  Devon Energy Corp | | | | | Sold | 10/14 | J | A | |
| 123.  Bank of America Corp | | | | | Sold | 10/14 | J | | |
| 124.  Citrix Sys Inc. | | | | | Sold | 10/14 | J | | |
| 125.  Raytheon Co. | | | | | Sold | 10/28 | J | A | |
| 126.  Caterpillar Inc. | | | | | Sold | 12/10 | J | | |
| 127.  Boston Financial Management, Inc. revocable trust ● | B | Int./Div. | L | T | | | | | See Section VIII |
| 128.  Peabody Energy Corp | | | | | Sold | 2/5 | J | A | |
| 129.  Emerson Elec Co | | | | | Sold | 2/5 | J | B | |
| 130.  Johnson & Johnson | | | | | Sold | 2/5 | J | B | |
| 131.  Raytheon Co | | | | | Sold | 2/5 | J | B | |
| 132.  United Technologies Corp | | | | | Sold | 2/5 | J | A | |
| 133.  Bank of America Corp | | | | | Sold | 2/5 | J | | |
| 134.  Brinker Intl Inc. | | | | | Sold | 2/5 | J | | |
| 135.  Citrix Sys Inc. | | | | | Sold | 3/6 | J | | |
| 136.  Sysco Corp | | | | | Sold | 3/6 | J | C | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less F =$50,001 - $100,000 | B =$1,001 - $2,500 G =$100,001 - $1,000,000 | C =$2,501 - $5,000 H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000 H2 =More than $5,000,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less N =$250,001 - $500,000 P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000 O =$500,001 - $1,000,000 | L =$50,001 - $100,000 P1 =$1,000,001 - $5,000,000 P4 =More than $50,000,000 | M =$100,001 - $250,000 P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal U =Book Value | R =Cost (Real Estate Only) V =Other | S =Assessment W =Estimated | T =Cash Market | |

# FINANCIAL DISCLOSURE REPORT
## Page 12 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 137. Newmont Mng Corp | | | | | Sold | 4/14 | J | | |
| 138. Automatic Data Processing | | | | | Sold | 4/14 | J | B | |
| 139. Costco Whsl Corp | | | | | Sold | 4/14 | J | B | |
| 140. IShares Tr Russl 2000 Indx | | | | | Sold | 4/14 | J | | |
| 141. Peabody Energy Corp | | | | | Sold | 4/25 | J | A | |
| 142. Medtronic Inc. | | | | | Sold | 4/25 | J | B | |
| 143. American Intl Group Inc. | | | | | Buy | 4/29 | J | | |
| 144. Devon Energy Corp | | | | | Sold | 5/7 | | B | |
| 145. Teck Cominco Ltd Cl B | | | | | Sold | 6/5 | J | A | |
| 146. Cameco Corp | | | | | Sold | 6/5 | J | | |
| 147. Southern Copper Corp | | | | | Sold | | J | A | |
| 148. Stillwater Mng Co | | | | | Sold | 6/5 | J | A | |
| 149. Lundin Mining Corp | | | | | Sold | 6/5 | J | | |
| 150. Powershares Global Water Portfolio | | | | | Buy | 6/6 | J | | |
| 151. Stillwater Mng Co | | | | | Sold (part) | 6/6 | J | A | |
| 152. Transocean Inc. New | | | | | Buy | 8/12 | J | | |
| 153. American Intl Group Inc. | | | | | Buy | 8/29 | J | | |

1. Income Gain Codes:  A =$1,000 or less   B =$1,001 - $2,500   C =$2,501 - $5,000   D =$5,001 - $15,000   E =$15,001 - $50,000
(See Columns B1 and D4)   F =$50,000 or less   G =$100,001 - $1,000,000   H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2. Value Codes   J =$15,000 or less   K =$15,001 - $50,000   L =$50,001 - $100,000   M =$100,001 - $250,000
(See Columns C1 and D3)   N =$250,001 - $500,000   O =$500,001 - $1,000,000   P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
P3 =$25,000,001 - $50,000,000   P4 =More than $50,000,000
3. Value Method Codes   Q =Appraisal   R =Cost (Real Estate Only)   S =Assessment   T =Cash Market
(See Column C2)   U =Book Value   V =Other   W =Estimated

# FINANCIAL DISCLOSURE REPORT
## Page 13 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date Month – Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 154.  American Express Co. | | | | | Buy | 8/29 | J | | |
| 155.  American Intl Group Inc. | | | | | Sold (part) | 9/18 | J | | |
| 156.  American Intl Group Inc. | | | | | Sold (part) | 9/19 | J | | |
| 157.  Bank of America Corp | | | | | Sold | 9/19 | J | | |
| 158.  SPDR Gold Trust | | | | | Buy | 9/30 | J | | |
| 159.  Newmont Mng Corp | | | | | Sold | 9/30 | J | | |
| 160.  Raytheon Co | | | | | Sold | 10/28 | J | A | |
| 161.  Google Inc. Cl A | | | | | Sold | 11/24 | J | | |
| 162.  Bank of America Corp | | | | | Sold (part) | 11/24 | J | | |
| 163.  America Express Co | | | | | Sold | 11/24 | J | | |
| 164.  Transocean Inc. New | | | | | Sold | 12/10 | J | | |
| 165.  Peabody Energy Corp | | | | | Sold | 12/10 | J | | |
| 166.  IShares Tr Russl 2000 Indx | | | | | Sold | 12/10 | J | | |
| 167.  Exelon Corp | | | | | Buy | 12/15 | J | | |
| 168.  Vodafone Group Inc. | | | | | Buy | 12/15 | J | | |
| 169.  SPDR Gold Trust | | | | | Sold | 12/15 | J | | |
| 170.  Powershares Global Water Portfolio | | | | | Sold | 12/15 | J | | |

| 1. Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,002 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

## FINANCIAL DISCLOSURE REPORT
Page 14 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date Month - Day | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 171. Bank of America | A | Interest | J | T | | | | | |

| 1. Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 15 of 16

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2009 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of Report)*

Line 1 - Rocky Bay Trust, a Massachusetts Business Trust, of which the reporting party is a shareholder, owns all of the stock of Slade Gorton & Co., Inc., a Massachusetts corp. ("the Company"). Income reported in Section VII by virtue of common stock holdings of the reporting party in Rocky Bay Trust is attributable to his pro rata share of the income of the Company which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders of the Trust whether or not such income is, in fact, distributed. The value of the stock holdings is appraised biennially by a certified financial analyst.

Line 4 - In 1997 the reporting party ▇▇▇▇▇▇ funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Lines 38, 105 and 127 - The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston, MA and consist of stocks and bonds in publicly held companies and equity holdings based on indices listed in Attachment #2.

| FINANCIAL DISCLOSURE REPORT<br>Page 16 of 16 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>05/01/2009 |
|---|---|---|

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.



Signature_____

**NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)**

---

### FILING INSTRUCTIONS

Mail signed original and 3 additional copies to:

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2009
Attachment #1

I.   Positions

| Position | Name of Organization/Entity |
|---|---|
| 1.  Shareholder, Clerk/Secretary and Director | Rocky Bay Trust, a MA Business Trust, which owns all of the Stock of Slade Gorton & Co., Inc.. Boston, MA (closely held ▬▬ seafood business) |
| 2.  Clerk and Director | Cambridge Animal Aid, Inc. Floral City, FL (non-profit animal aid organization operated by reporting party's ▬▬ |
| 3.  Member of the Corporation | The New England Home for Little Wanderers, Boston, MA (non-profit, private child welfare agency) |

**NOTE: None of the beneficiaries of the following trusts and accounts of which the reporting party is a trustee (or holds a power of attorney) is a dependent of the reporting party and neither the reporting party nor his spouse has any beneficial interest in or control over the disposition of assets of such trusts and accounts.**

| | |
|---|---|
| 4.  Power of Attorney/Trustee | Fidelity money market accounts (for all shareholders of Rocky Bay Trust, all of whom are ▬▬, ▬▬ of reporting party) |
| 5.  Trustee | Irrevocable Trust (created in connection with the estate plan of the reporting party's ▬▬ |
| 6.  Trustee | 1989 Irrevocable Trust and Irrevocable Sub S Trust (both created in connection with the estate plan of reporting party's ▬▬ |

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2009
Attachment #2

All of the listed holdings are of common stock unless otherwise noted.

Abbott Labs (stocks & bond)
Air Products & Chemicals, Inc.
American Express Co.
Anadarko Pete Co.
Apple Computer, Inc.
Automatic Data Processing, Inc.
Avon Products, Inc.
Bank of America Corp.
Caterpillar, Inc.
Cisco Corp.
Citrix Systems, Inc.
Costco Wholesale Corp.
CVS Corp.
Devon Energy Corp.
Dodge & Cox FDS Intl Stk Fund
Eaton Vance Corp.
Emerson Electric Co.
Exelon Corp.
Exxon-Mobil Corp.
Fedex Corp.*
Federal Home Loan Bank (bond)
Federal Home Loan Mortgage Corp. (bond)
Georgia Power Co.
Gilead Sciences, Inc.
Google, Inc.
IBM Int'l Group (bond)
JPMorgan Chase & Co.
Johnson & Johnson

Lowes Companies, Inc.
National Rural Utilities
New York Telephone Co. (bond)
Nike, Inc.
Novo-Nordisk AS ADR-B
Omnicom Group
Peabody Energy Corp.
Pepsico, Inc.
Pitney Bowes, Inc.
Powershares Global Water Portfolio
Procter & Gamble Co.
RPM, Inc. (Ohio)
Royce Fund Penn Mut Inv
SBC Communications, Inc.
Sigma Aldrich Corp.
SPDR Gold Trust
Staples, Inc.
Stryker Corp.
Sysco Corp..
Target Corp.
United Technologies Corp.
Vodafone Group, Inc.
Walgreen Company
WalMart Stores, Inc. (bond)
Wells Fargo & Co. New
Western Union Co.

Equity holdings based on indices:
 IShares, Inc. Morgan-Stanley Capital Int'l (MSCI) Pacific Rim ex-Japan Index
 IShares, Inc. MSCI Emerging Market Index
 IShares, Inc. Russell 2000 Index
 IShares Tr EAFE Index

*this stock was not listed on reporting party's Attachment #2 for 2008 by mistake; purchases
were shown on lines 30 and 32 of Section VII of the "2008 report"

**AO 10**
**Rev. 1/2010**

# FINANCIAL DISCLOSURE REPORT
# FOR CALENDAR YEAR 2009

*Report Required by the Ethics*
*in Government Act of 1978*
*(5 U.S.C. app. §§ 101-111)*

| | | |
|---|---|---|
| **1. Person Reporting** (last name, first, middle initial)<br><br>Gorton, Nathaniel M. | **2. Court or Organization**<br><br>District Court - Massachusetts | **3. Date of Report**<br><br>05/01/2010 |
| **4. Title** (Article III judges indicate active or senior status;<br>magistrate judges indicate full- or part-time)<br><br>U.S. District Judge - Active | **5a. Report Type** (check appropriate type)<br>☐ Nomination,     Date<br>☐ Initial    ☑ Annual    ☐ Final<br>**5b.** ☐ Amended Report | **6. Reporting Period**<br><br>01/01/2009<br>to<br>12/31/2009 |
| **7. Chambers or Office Address**<br><br>United States District Court<br>1 Courthouse Way, Suite 3110<br>Boston, MA 02210 | **8. On the basis of the information contained in this Report and any modifications pertaining thereto, it is, in my opinion, in compliance with applicable laws and regulations.**<br><br>Reviewing Officer_____ Date_____ | |

*IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts,*
*checking the NONE box for each part where you have no reportable information. Sign on last page.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1. See Attachment #1 | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑ NONE *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |
| 2. | |
| 3. | |

Gorton, Nathaniel M.

| FINANCIAL DISCLOSURE REPORT<br>Page 2 of 8 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>05/01/2010 |
|---|---|---|

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME<br>(yours, not spouse's) |
|---|---|---|
| 1. June 30 | Slade Gorton & Co., Inc., (closely held ☐ seafood business) corporate clerk/secretary, director, custodian, trustee and accounting duties | $10,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |

### B. Spouse's Non-Investment Income – *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS — *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐ NONE *(No reportable reimbursements.)*

| SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|
| 1. New York Intellectual Property Lawyers Association | | | | reimbursement for lodging and travel by train ☐ from Boston to NYC to attend annual N.Y.I.P.L.A. dinner 3/27/09 at Waldorf Astoria |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

**FINANCIAL DISCLOSURE REPORT**
Page 3 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2010 |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ **NONE** *(No reportable gifts.)*

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ **NONE** *(No reportable liabilities.)*

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

**FINANCIAL DISCLOSURE REPORT**
Page 4 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2010 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 1.  Slade Gorton & Co., Inc (a MA corporation) (common stock) | A | | N | Q | | | | | See Section VIII |
| 2.  Fidelity Cash Reserves (individual) | A | Dividend | K | T | | | | | |
| 3.  Fidelity Money Market Accounts (POA,trustee)(Att#1,¶4) | B | Dividend | M | T | | | | | |
| 4.  Charitable Remainder Trust | E | div.,int. | | | | | | | See Section VIII |
| 5.  Coca Cola Co. | | | | | Buy | 02/24/09 | J | | |
| 6.  Sysco Corp | | | | | Sold | 02/24/09 | J | C | |
| 7.  A T & T, Inc. | | | | | Buy | 04/23/09 | J | | |
| 8.  United Technologies Corp. | | | | | Buy | 08/04/09 | J | | |
| 9.  Target Corp. | | | | | Sold | 08/04/09 | J | | |
| 10. CVS Corp. | | | | | Sold | 08/04/09 | J | B | |
| 11. Boston Financial Management, Inc. IRA | | None | P1 | T | | | | | |
| 12. Wells Fargo & Co. New | | | | | Sold | 02/25/09 | J | | |
| 13. JPMorgan Chase & Co. | | | | | Sold | 02/25/09 | J | | |
| 14. Hewlett Packard Co. | | | | | Buy | 03/02/09 | K | | |
| 15. Avon Products | | | | | Buy | 03/03/09 | K | | |
| 16. Peabody Energy Corp. | | | | | Sold | 03/06/09 | J | | |
| 17. Financial Select Sector SPDR | | | | | Buy | 04/07/09 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
Page 5 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2010 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 18.  SPDR Gold Trust | | | | | Buy | 04/21/09 | J | | |
| 19.  Avalonbay Communities, Inc. | | | | | Buy | 05/04/09 | J | | |
| 20.  FPL Group, Inc. | | | | | Buy | 06/16/09 | J | | |
| 21.  Apple Computer | | | | | Sold | 07/15/09 | J | D | |
| 22.  Walgreen Company | | | | | Sold | 08/11/09 | K | | |
| 23.  American Express Co. | | | | | Buy | 08/11/09 | J | | |
| 24.  Avalonbay Communities, Inc. | | | | | Buy<br>(add'l) | 08/11/09 | J | | |
| 25.  Teva Pharmaceutical Industries, Ltd. | | | | | Buy | 08/11/09 | K | | |
| 26.  Devon Energy Corp. | | | | | Buy | 08/11/09 | K | | |
| 27.  Caterpillar, Inc. | | | | | Sold | 08/20/09 | J | | |
| 28.  Omnicom Group | | | | | Sold | 10/07/09 | J | | |
| 29.  Apple Computer | | | | | Sold<br>(part) | 11/05/09 | K | D | |
| 30.  American Express Co. | | | | | Sold | 12/16/09 | J | | |
| 31.  Boston Financial Management, Inc.<br>revocable trust | B | Int./Div. | L | T | | | | | See Section VIII |
| 32.  Bank of America Corp. | | | | | Sold | 02/03/09 | J | | |
| 33.  Coca Cola Co. | | | | | Buy | 02/24/09 | J | | |
| 34.  Sysco Corp. | | | | | Sold | 02/24/09 | J | B | |

| 1. Income Gain Codes<br>(See Columns B1 and D4)<br>2. Value Codes<br>(See Columns C1 and D3)<br><br>3. Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br><br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br><br>T =Cash Market | E =$15,001 - $50,000 |

# FINANCIAL DISCLOSURE REPORT
## Page 6 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2010 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 35. Caterpillar, Inc. | | | | | Sold | 03/05/09 | J | | |
| 36. American Express Co. | | | | | Sold | 03/05/09 | J | | |
| 37. Peabody Energy Corp. | | | | | Sold | 03/06/09 | J | | |
| 38. Omnicom Group | | | | | Sold | 05/18/09 | J | | |
| 39. Chubb Corp. | | | | | Buy | 08/18/09 | J | | |
| 40. Boston Financial Management, Inc. revocable trust | A | Int./Div. | L | T | | | | | See Section VIII |
| 41. Gilead Sciences | | | | | Sold | 03/06/09 | J | | |
| 42. Abbott Labs | | | | | Buy | 08/04/09 | J | | |
| 43. Teva Pharmaceutical Industries | | | | | Buy (add'l) | 08/04/09 | J | | |
| 44. Financial Select Sector SPDR | | | | | Buy (add'l) | 08/18/09 | J | | |
| 45. Bank of America | A | Interest | J | T | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | P4 =More than $50,000,000 | | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 7 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/01/2010 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of Report.)*

Line 1 - During 2009 Rocky Bay Trust, a Massachusetts Business Trust, of which the reporting party was a shareholder, and which had owned all of the stock of Slade Gorton & Co., Inc., a Massachusetts corp. ("the Company") was dissolved and ownership of the Company reverted to its stockholders. The reporting party owns the same proportion of stock in the Company as he had owned shares of the Trust. Income of the reporting party reported in Section VII is attributable to his pro rata share of the income of the Company which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders whether or not such income is, in fact, distributed. The value of the stock holdings is appraised biennially by a certified financial analyst.

Line 4 - In 1997 the reporting party [          ] funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Lines 4, 11, 31 and 40 - The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston, MA and consist of stocks and bonds in publicly held companies and equity holdings based on indices listed in Attachment #2.

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 8 of 8 | Gorton, Nathaniel M. | 05/01/2010 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature 

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

### FILING INSTRUCTIONS

Mail signed original and 3 additional copies to:

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2010
Attachment #1

I.    Positions

| Position | Name of Organization/Entity |
|---|---|
| 1.  Stockholder, Clerk/Secretary and Director | Slade Gorton & Co., Inc., Boston, MA (closely held ▢ seafood business) a MA corporation and successor of Rocky Bay Trust, a MA Business Trust, which formerly owned all of the stock of the Corporation |
| 2.  Clerk and Director | Cambridge Animal Aid, Inc. Floral City, FL (non-profit animal aid organization managed by reporting party's ▢ |
| 3.  Member of the Corporation | The New England Home for Little Wanderers, Boston, MA (non-profit, private child welfare agency) |

**NOTE: None of the beneficiaries of the following trusts and accounts of which the reporting party is a trustee (or holds a power of attorney) is a ▢ of the reporting party and neither the reporting party nor ▢ has any beneficial interest in or control over the disposition of assets of such trusts and accounts.**

| | |
|---|---|
| 4.  Power of Attorney/Trustee | Fidelity money market accounts (for all stockholders of Slade Gorton & Co., Inc.,all of whom are ▢ ▢ ▢ ▢ - ▢ of reporting party) |

5.    **Trustee**                    **Irrevocable Trust (created in
                                      connection with the estate
                                      <u>plan of</u> the reporting party's**

6.    **Trustee**                    **1989 Irrevocable Trust and
                                      Irrevocable Sub S Trust (both
                                      created in connection with the
                                      estate plan of reporting
                                      party's**

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2010
Attachment #2

All of the listed holdings are of common stock unless otherwise noted.

Abbott Labs (stocks & bond)
Air Products & Chemicals, Inc.
American Express Co.
Anadarko Pete Co.
A T & T, Inc.
Automatic Data Processing, Inc.
Avalonbay Communities, Inc.
Avon Products, Inc. (bond)
Chubb Corp.
Cisco Corp.
Citrix Systems, Inc.
Coca Cola Co.
Costco Wholesale Corp.
CVS Corp.
Devon Energy Corp.
Dodge & Cox FDS Intl Stk Fund
Eaton Vance Corp.
Emerson Electric Co.
Exelon Corp.
Exxon-Mobile Corp.
F P L Group, Inc.
Fedex Corp.
Federal Home Loan Bank (bond)
Federal Home Loan Mortgage Corp. (bond)
Financial Select Sector SPDR/ETF
Georgia Power Co. (bond)
Google, Inc.
Hewlett Packard Co. (bond)

IBM Int'l Group (bond)
Johnson & Johnson
Lowes Companies, Inc.
National Rural Utilities (bond)
New York Telephone Co. (bond)
Nike, Inc.
Novo-Nordisk AS ADR-B
Pepsico, Inc.
Pitney Bowes, Inc. (bond)
Powershares Global Water Portfolio
Procter & Gamble Co.
RPM, Inc. (Ohio)
Royce Fund Penn Mut Inv
SBC Communications, Inc. (bond)
Sigma Aldrich Corp.
SPDR Gold Trust
Staples, Inc.
Stryker Corp.
Target Corp.
Teva Pharmaceutical Industries, Ltd.
United Technologies Corp.
Vodafone Group, Inc.
Walgreen Company
WalMart Stores, Inc. (bond)
Western Union Co.

Equity holdings based on indices:
    IShares, Inc. Morgan-Stanley Capital Int'l (MSCI) Pacific Rim ex-Japan Index
    IShares, Inc. MSCI Emerging Market Index
    IShares, Inc. Russell 2000 Index
    IShares Tr EAFE Index

August 1, 2011

Bobby R. Baldock, Chair
Judicial Conference of the United States
Committee on Financial Disclosure
One Columbus Circle, N.E.
Washington, D.C.  20544

        Re: My Calendar Year 2010 Filing

Dear Mr. Baldock:

        This is in response to your letter dated July 25, 2011 concerning my 2010 filing.

        With respect to the substantive changes inquired about on page 2, I notice that the four items questioned all relate to stock holdings in the charitable remainder trust of which I am only an income beneficiary.  For as many years as I can remember, I have entered information with respect to that trust in the same way.  I do not report the gross value at the end of reporting period ( Column C ) because, as stated in the Additional Information Or Explanations section, assets in that trust do not belong to me and are not properly included in my financial portfolio.

        I report income from the charitable remainder trust in Column B because my wife and I receive income from that trust but I submit it would be inappropriate to report the gross value of stocks added to that trust during the relevant calendar year because the value of those stocks is not part of my estate.  Thus, I respectfully suggest that the Form be accepted as is because otherwise it would misrepresent my financial standing.

        I have noted, as you suggest on page 1 of your letter, that in preparing future reports I am to include all reportable information in Parts I - VII rather than in part VIII.  My Judicial Assistant will help me to report the information properly in the future.

        If you or somebody at the AO would like to discuss the matter further with me, please call me at 617-748-9247.

        Very truly yours,

        Nathaniel M. Gorton

NMG/seh

**Gorton. Nathaniel M.**

| AO 10 Rev. 1/2011 | **FINANCIAL DISCLOSURE REPORT FOR CALENDAR YEAR 2010** | *Report Required by the Ethics in Government Act of 1978 (5 U.S.C. app. §§ 101-111)* |

| 1. Person Reporting (last name, first, middle initial) Gorton, Nathaniel M. | 2. Court or Organization District Court - Massachusetts | 3. Date of Report 05/09/2011 |
|---|---|---|
| 4. Title (Article III judges indicate active or senior status; magistrate judges indicate full- or part-time) U. S. District Court - Active | 5a. Report Type (check appropriate type) ☐ Nomination,   Date ☐ Initial   ☑ Annual   ☐ Final 5b. ☐ Amended Report | 6. Reporting Period 01/01/2010 to 12/31/2010 |
| 7. Chambers or Office Address United States District Court 1 Courthouse Way, Suite 3110 Boston, MA 02210 | 8. On the basis of the information contained in this Report and any modifications pertaining thereto, it is, in my opinion, in compliance with applicable laws and regulations. Reviewing Officer_____   Date_____ | |

*IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part where you have no reportable information. Sign on last page.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1.  See Attachment #1 | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑ NONE *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |
| 2. | |
| 3. | |

Gorton. Nathaniel M.  A

**FINANCIAL DISCLOSURE REPORT**
Page 2 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/09/2011 |

## III. NON-INVESTMENT INCOME.. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|
| 1. August 19 | Slade Gorton & Co., Inc. (Closely held [ ] seafood business) corporate clerk/secretary, director, custodian, trustee and accounting duties | $10,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |

### B. Spouse's Non-Investment Income – *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS – *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐ NONE *(No reportable reimbursements.)*

| SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|
| 1. New York Intellectual Property Lawyers Association | | | | reimbursement for lodging and travel by train ... ... rom Boston to NYC to attend annual N.Y.I.P.L.A. dinner 3/25/10 at Waldorf Astoria |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 3 of 8 | Gorton, Nathaniel M. | 05/09/2011 |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

# FINANCIAL DISCLOSURE REPORT
Page 4 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/09/2011 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| | A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 1. | SG Seafood Holdings, Inc. (a MA corporation) (common stock) | G | | N | Q | | | | | See Section VIII |
| 2. | Fidelity Cash Reserves (individual) | A | Dividend | J | T | | | | | |
| 3. | Fidelity Money Market Accounts (POA,trustee)(Att#1,¶4) | A | Dividend | L | T | | | | | |
| 4. | Charitable Remainder Trust | E | Int./Div. | | | | | | | See Section VIII |
| 5. | Costco Wholesale Corp. | | | | | Sold | 02/02/10 | J | B | |
| 6. | Proctor & Gamble Co. | | | | | Sold | 02/02/10 | J | C | |
| 7. | A T & T, Inc. | | | | | Buy | 02/04/10 | J | | |
| 8. | JPM Chase Cap | | | | | Buy | 02/04/10 | J | | |
| 9. | Proctor & Gamble Co. | | | | | Sold | 02/04/10 | J | C | |
| 10. | Pepsico, Inc. | | | | | Sold | 02/04/10 | J | B | |
| 11. | A T & T, Inc. | | | | | Sold | 06/21/10 | J | | |
| 12. | Eaton Vance Corp. | | | | | Sold | 07/01/10 | J | | |
| 13. | Cisco Systems Inc. | | | | | Buy | 11/12/10 | J | | |
| 14. | HCP, Inc. | | | | | Buy | 12/13/10 | J | | |
| 15. | Exelon Corp | | | | | Sold | 12/13/10 | J | | |
| 16. | Boston Financial Management, Inc. IRA | | None | P1 | T | | | | | |
| 17. | N Y Telephone | | | | | Sold | 01/15/10 | K | | |

| 1. Income Gain Codes:<br>(See Columns B1 and D4)<br>2. Value Codes<br>(See Columns C1 and D3)<br><br>3. Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br><br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br><br>T =Cash Market | E =$15,001 - $50,000 |

# FINANCIAL DISCLOSURE REPORT
Page 5 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/09/2011 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐  NONE *(No reportable income, assets, or transactions.)*

| | A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 18. | Anadarko Petroleum Corp. | | | | | Sold | 02/02/10 | J | A | |
| 19. | Emerson Electric Co. | | | | | Sold | 02/02/10 | J | B | |
| 20. | Johnson & Johnson | | | | | Sold | 02/02/10 | J | C | |
| 21. | Staples, Inc. | | | | | Sold | 02/02/10 | J | C | |
| 22. | Walgreen Co. | | | | | Sold | 02/02/10 | J | A | |
| 23. | A T & T, Inc. | | | | | Buy | 02/04/10 | J | | |
| 24. | General Electric Capital Corp. | | | | | Buy | 02/04/10 | J | | |
| 25. | JPM Chase Cap. | | | | | Buy | 02/04/10 | J | | |
| 26. | Wells Fargo Capital | | | | | Buy | 02/04/10 | J | | |
| 27. | General Electric Capital Corp. | | | | | Buy<br>(add'l) | 02/05/10 | J | | |
| 28. | Wells Fargo Capital | | | | | Buy<br>(add'l) | 02/05/10 | J | | |
| 29. | Chubb Corp. | | | | | Buy | 02/08/10 | J | | |
| 30. | Staples, Inc. | | | | | Sold<br>(part) | 02/08/10 | K | D | |
| 31. | Eaton Vance Corp. | | | | | Sold | 07/07/10 | K | | |
| 32. | Netapp, Inc. | | | | | Buy | 10/01/10 | J | | |
| 33. | Novartis Cap Corp. | | | | | Buy | 10/05/10 | K | | |
| 34. | HSBC Holdings PLC ADR | | | | | Buy | 10/08/10 | K | | |

| 1. Income Gain Codes:<br>(See Columns B1 and D4)<br>2. Value Codes<br>(See Columns C1 and D3)<br><br>3. Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br><br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br><br>P2 =$5,000,001 - $25,000,000<br><br>T =Cash Market | E =$15,001 - $50,000 |

**FINANCIAL DISCLOSURE REPORT**
Page 6 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/09/2011 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ **NONE** (No reportable income, assets, or transactions.)

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 35.  Automatic Data Processing, Inc. | | | | | Sold | 10/08/10 | K | D | |
| 36.  Amer Express Cr Mtn | | | | | Buy | 10/20/10 | K | | |
| 37.  Novo-Nordisk AS ADR-B | | | | | Sold | 11/12/10 | K | D | |
| 38.  Citrix System, Inc. | | | | | Sold | 11/12/10 | J | B | |
| 39.  Boston Financial Management, Inc. revocable trust | B | Int./Div. | L | T | | | | | See Section VIII |
| 40.  Northern Trust Corp. | | | | | Buy | 04/07/10 | J | | |
| 41.  United Parcel Service, Inc. | | | | | Buy | 04/07/10 | J | | |
| 42.  United Technologies Corp. | | | | | Buy | 04/07/10 | J | | |
| 43.  Air Products & Chemicals, Inc. | | | | | Buy | 04/07/10 | J | | |
| 44.  Peabody Energy Corp. | | | | | Buy | 06/02/10 | J | | |
| 45.  Boston Financial Mangement, Inc. revocable trust ■ | B | Int./Div. | L | T | | | | | See Section VIII |
| 46.  Peabody Energy Corp. | | | | | Buy | 06/02/10 | J | | |
| 47.  Bank of America | A | Interest | J | T | | | | | |

| 1. Income Gain Codes:<br>(See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| 2. Value Codes<br>(See Columns C1 and D3) | F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes<br>(See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

**FINANCIAL DISCLOSURE REPORT**
Page 7 of 8

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/09/2011 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

Line 1 - During 2010 Slade Gorton & Co., Inc., a Massachusetts corporation ("the Company") changed its corporate structure by creating a new holding company, SG Seafood Holdings, Inc. ("Holdings"). The reporting party owns the same proportion of stock in Holdings as he had owned shares in the Company.   Income of the reporting party reported in Section VII is attributable to his pro rata share of the income of Holdings which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders whether or not such income is, in fact, distributed.   The value of the stock holdings is appraised biennially by a certified financial analyst.

Line 4 - in 1997 the reporting party [          ] funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Lines 4, 16, 39 and 45 - The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston, MA and consist of stocks and bonds in publicly held companies and equity holdings based on indices listed in Attachment #2.

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 8 of 8 | Gorton, Nathaniel M. | 05/09/2011 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature:  s/ Nathaniel M. Gorton

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2011
Attachment #1

I.    Positions

| Position | Name of Organization/Entity |
|---|---|
| 1. Stockholder, Clerk/Secretary and Director | Slade Gorton & Co., Inc., Boston, MA (closely held ⸻ seafood business) a MA corporation and successor of Rocky Bay Trust, a MA Business Trust, which formerly owned all of the stock of the Corporation |
| 2. Clerk and Director | Cambridge Animal Aid, Inc. Floral City, FL (non-profit animal aid organization managed by reporting party's ⸻ |
| 3. Member of the Corporation | The New England Home for Little Wanderers, Boston, MA (non-profit, private child welfare agency) |

**NOTE: None of the beneficiaries of the following trusts and accounts of which the reporting party is a trustee (or holds a power of attorney) is a dependent of the reporting party and neither the reporting party nor his spouse has any beneficial interest in or control over the disposition of assets of such trusts and accounts.**

| 4. Power of Attorney/Trustee | Fidelity money market accounts (for all stockholders of Slade Gorton & Co., Inc.,all of whom ⸻ ⸻ of reporting party) |

5.    Trustee                        Irrevocable Trust (created in
                                     connection with the estate
                                     plan of the reporting party's
                                     ████████

6.    Trustee                        1989 Irrevocable Trust and
                                     Irrevocable Sub S Trust (both
                                     created in connection with the
                                     estate plan of reporting
                                     party's ████████

Financial Disclosure Report
Nathaniel M. Gorton
May 1, 2011
Attachment #2

All of the listed holdings are of common stock unless otherwise noted.

Abbott Labs (stocks & bond)
Air Products & Chemicals, Inc.
American Express Co. (stocks & bond)
Anadarko Pete Co.
A T & T, Inc.
Automatic Data Processing, Inc.
Avalonbay Communities, Inc.
Avon Products, Inc. (bond)
Chubb Corp.
Cisco Corp.
Citrix Systems, Inc.
Coca Cola Co.
Costco Wholesale Corp.
CVS Corp.
Devon Energy Corp.
Dodge & Cox FDS Intl Stk Fund
Emerson Electric Co.
Exelon Corp.
Exxon-Mobile Corp.
Fedex Corp.
Federal Home Loan Bank (bond)
Federal Home Loan Mortgage Corp. (bond)
Financial Select Sector SPDR/ETF
General Electric Capital Corp. (pfd)
Georgia Power Co. (bond)
Google Inc.
HCP, Inc.
HSBC Holdings PLC ADR
Hewlett Packard Co. (bond)

IBM Int'l Group (bond)
JPM Chase Capital (pfd)
Johnson & Johnson
Lowes Companies, Inc.
National Rural Utilities (bond)
Netapp, Inc.
Nextera Energy Corp. *
Nike, Inc.
Novartis Capital Corp. (bond)
Northern Trust Corp.
Novo-Nordisk AS ADR-B
Peabody Energy Corp.
Pepsico, Inc.
Pitney Bowes, Inc. (bond)
Powershares Global Water Portfolio
Procter & Gamble Co.
RPM, Inc. (Ohio)
Royce Fund Penn Mut Inv
SBC Communications, Inc. (bond)
Sigma Aldrich Corp.
SPDR Gold Trust
Stryker Corp.
Target Corp.
Teva Pharmaceutical Industries, Ltd.
United Parcel Service, Inc.
United Technologies Corp.
Vodafone Group, Inc.
Walgreen Company
WalMart Stores, Inc. (bond)
Wells Fargo Capital (pfd)
Western Union Co.

Equity holdings based on indices:
    IShares, Inc. Morgan-Stanley Capital Int'l (MSCI) Pacific Rim ex-Japan Index
    IShares, Inc. MSCI Emerging Market Index
    IShares, Inc. Russell 2000 Index
    IShares Tr EAFE Index

*on 6/3/10 FPL Group, Inc. changed its corporate name to Nextera Energy Corp.

| AO 10 Rev. 1/2012 | **FINANCIAL DISCLOSURE REPORT FOR CALENDAR YEAR 2011** | *Report Required by the Ethics in Government Act of 1978 (5 U.S.C. app. §§ 101-111)* |

| 1. Person Reporting (last name, first, middle initial) Gorton, Nathaniel M. | 2. Court or Organization District Court – Massachusetts | 3. Date of Report 05/08/2012 |
|---|---|---|

| 4. Title (Article III judges indicate active or senior status; magistrate judges indicate full- or part-time) U. S. District Court - Active | 5a. Report Type (check appropriate type) ☐ Nomination   Date ☐ Initial   ☑ Annual   ☐ Final 5b. ☐ Amended Report | 6. Reporting Period 01/01/2011 to 12/31/2011 |

**7. Chambers or Office Address**

United States District Court
1 Courthouse Way, Suite 3110
Boston, MA 02210

**IMPORTANT NOTES:** *The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part where you have no reportable information. Insert signature on last page.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐   NONE *(No reportable positions.)*

| | POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|---|
| 1. | Stockholder, Clerk/Secretary and Director | SG Seafood Holdings, Inc., Boston, MA (closely held       seafood business) a MA corporation. |
| 2. | Member of the Corporation | The New England Home for Little Wanderers, Boston, MA (non-profit, private child-welfare agency) |
| 3. | Power of Attorney/Trustee (see NOTE in Part VIII) | Fidelity money market accounts (for all stockholders of SG Seafood Holdings Inc. |
| 4. | | |
| 5. | Trustee | Irrevocable Trust (created in connection with the estate plan |
| 6. | Trustee | 1989 Irrevocable Trust and Irrevocable Sub S Trust (both created in connection with the estate plan |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑   NONE *(No reportable agreements.)*

| | DATE | PARTIES AND TERMS |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

| FINANCIAL DISCLOSURE REPORT Page 2 of 10 | Name of Person Reporting Gorton, Nathaniel M. | Date of Report 05/08/2012 |
|---|---|---|

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|
| 1. August 19 | SG Seafood Holdings, Inc. (Closely held · · · seafood business) corporate clerk/secretary, director, custodian, trustee and accounting duties | $10,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |

### B. Spouse's Non-Investment Income – *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS — *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐ NONE *(No reportable reimbursements.)*

| | SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|---|
| 1. | New York Intellectual Property Lawyers Association | | | | reimbursement for lodging and travel by train w/spouse from Boston to NYC to attend annual N.Y.I.P.L.A. dinner 3/24/11 at Waldorf Astoria |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |

| FINANCIAL DISCLOSURE REPORT Page 3 of 10 | Name of Person Reporting<br>Gorton, Nathaniel M. | Date of Report<br>05/08/2012 |
|---|---|---|

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

# FINANCIAL DISCLOSURE REPORT
Page 4 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/08/2012 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| | A. Description of Assets (including trust assets)<br><br>Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 1. | SG Seafood Holdings, Inc. (a MA corporation) (common stock) | G | | P1 | Q | | | | | See Section VIII |
| 2. | Fidelity Cash Reserves (individual) | A | Dividend | K | T | | | | | |
| 3. | Fidelity Money Market Accounts (POA,trustee)(Att#1.¶4) | A | Dividend | N | T | | | | | |
| 4. | Charitable Remainder Trust | E | Int./Div. | | | | | | | See Section VIII |
| 5. | Ross Stores, Inc. | | | | | Buy | 01/06/11 | J | | |
| 6. | Target Corp. | | | | | Sold | 01/06/11 | J | A | |
| 7. | Costco Whse Corp | | | | | Sold | 04/12/11 | J | B | |
| 8. | Exxon Mobil Corporation | | | | | Sold (part) | 04/12/11 | J | B | |
| 9. | Market Vectors Gold Miners | | | | | Buy | 05/23/11 | J | | |
| 10. | Costco Whse Corp | | | | | Sold | 05/19/11 | J | B | |
| 11. | SPDR Gold Trust | | | | | Sold | 05/23/11 | J | C | |
| 12. | AT&T | | | | | Sold | 05/26/11 | J | A | |
| 13. | Automatic Data Processing | | | | | Sold | 06/08/11 | J | D | |
| 14. | Cisco Corp. | | | | | Sold | 08/18/11 | J | | |
| 15. | Market Vectors Gold Miners | | | | | Buy (add'l) | 08/18/11 | J | | |
| 16. | Netapp, Inc. | | | | | Buy | 08/18/11 | J | | |
| 17. | HSBC Holdings PLC ADR | | | | | Buy | 11/11/11 | J | | |

1. Income Gain Codes:      A =$1,000 or less           B =$1,001 - $2,500          C=$2,501 - $5,000          D =$5,001 - $15,000          E =$15,001 - $50,000
   (See Columns B1 and D4)   F =$50,001 - $100,000      G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2. Value Codes                J =$15,000 or less          K =$15,001 - $50,000        L =$50,001 - $100,000        M =$100,001 - $250,000
   (See Columns C1 and D3)   N =$250,001 - $500,000     O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
                              P3 =$25,000,001 - $50,000,000                            P4 =More than $50,000,000
3. Value Method Codes         Q - Appraisal               R =Cost (Real Estate Only)  S =Assessment                T =Cash Market
   (See Column C2)            U - Book Value              V =Other                     W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 5 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/08/2012 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period<br><br>(1)<br>Amount<br>Code 1<br>(A-H) | <br><br><br>(2)<br>Type (e.g.,<br>div., rent,<br>or int.) | C.<br>Gross value at end<br>of reporting period<br><br>(1)<br>Value<br>Code 2<br>(J-P) | <br><br><br>(2)<br>Value<br>Method<br>Code 3<br>(Q-W) | D.<br>Transactions during reporting period<br><br>(1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | <br><br>(2)<br>Date<br>mm/dd/yy | <br><br>(3)<br>Value<br>Code 2<br>(J-P) | <br><br>(4)<br>Gain<br>Code 1<br>(A-H) | <br><br>(5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 18. Public Storage, Inc. | | | | | Buy | 11/11/11 | J | | |
| 19. Boston Financial Management, Inc. IRA | F | Distribution | P1 | T | | | | | See Section VIII |
| 20. Vanguard FTSE All World FX US Index | | | | | Buy | 01/20/11 | K | | |
| 21. Ishares TR EAFE INDX | | | , | | Sold | 01/20/11 | K | | |
| 22. Exxon Mobil Corporation | | | | | Sold | 04/12/11 | J | C | |
| 23. Lazard Ltd | | | | | Buy | 05/10/11 | J | | |
| 24. Public Storage Q 6.50%-CL | | | | | Buy | 05/10/11 | J | | |
| 25. Total S A ADR | | | | | Buy | 05/10/11 | J | | |
| 26. Healthcare REIT Inc. | | | | | Buy | 05/19/11 | J | | |
| 27. NETAPP Inc. | | | | | Buy | 05/19/11 | J | | |
| 28. Citrix Sys Inc. | | | | | Sold | 05/19/11 | J | C | |
| 29. Novartis Capital Corp. | | | | | Sold | 05/19/11 | K | | |
| 30. Wells Fargo Cap | | | | | Sold | 05/19/11 | J | A | |
| 31. Market Vectors Gold Miners | | | | | Buy | 05/23/11 | L | | |
| 32. SPDR Gold Trust | | | | | Sold | 05/23/11 | L | E | |
| 33. AT&T | | | | | Sold | 05/26/11 | J | A | |
| 34. Diageo PLC ADR | | | | | Buy | 07/01/11 | K | | |

1. Income Gain Codes:            A =$1,000 or less        B =$1,001 - $2,500        C =$2,501 - $5,000        D =$5,001 - $15,000        E =$15,001 - $50,000
   (See Columns B1 and D4)       F =$50,001 - $100,000    G =$100,001 - $1,000,000  H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2. Value Codes                   J =$15,000 or less       K =$15,001 - $50,000      L =$50,001 - $100,000     M =$100,001 - $250,000
   (See Columns C1 and D3)       N =$250,001 - $500,000   O =$500,001 - $1,000,000  P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
                                 P3 =$25,000,001 - $50,000,000                      P4 =More than $50,000,000
3. Value Method Codes            Q =Appraisal             R =Cost (Real Estate Only) S =Assessment            T =Cash Market
   (See Column C2)               U =Book Value            V =Other                  W =Estimated

| FINANCIAL DISCLOSURE REPORT<br>Page 6 of 10 | Name of Person Reporting<br>Gorton, Nathaniel M. | Date of Report<br>05/08/2012 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE (No reportable income, assets, or transactions.)**

| | A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 35. | Anadarko Pete Corp | | | | | Sold | 07/01/11 | J | D | |
| 36. | Citrix Sys Inc J | | | | | Sold | 07/01/11 | J | C | |
| 37. | HSBC Holdings | | | | | Buy | 07/07/11 | K | | |
| 38. | Financial Select Sector SPDR | | | | | Sold | 07/07/11 | K | D | |
| 39. | HSBC Holdings | | | | | Buy | 08/09/11 | J | | |
| 40. | Gulf Power | | | | | Buy | 08/18/11 | J | | |
| 41. | Market Vectors Gold Miners | | | | | Buy | 08/18/11 | J | | |
| 42. | NETAPP Inc | | | | | Buy | 08/18/11 | J | | |
| 43. | Cisco Corp. | | | | | Sold | 08/18/11 | J | | |
| 44. | Market Vectors Gold Miners | | | | | Buy | 09/01/11 | J | | |
| 45. | United Parcel SVC Inc. CL B | | | | | Buy | 09/01/11 | J | | |
| 46. | Fedex Corp | | | | | Sold | 09/01/11 | K | | |
| 47. | HSBC Holdings PLC ADR | | | | | Buy | 09/09/11 | J | | |
| 48. | Lazard Ltd TB-A | | | | | Sold | 09/09/11 | J | | |
| 49. | Vanguard FTSE All World EX-US Index | | | | | Sold | 10/25/11 | K | | |
| 50. | Matthews Asia Small Cos | | | | | Buy | 10/26/11 | K | | |
| 51. | Federal Home Ln Bks | | | | | Sold | 12/16/11 | K | | |

| 1. Income Gain Codes:<br>(See Columns B1 and D4)<br>2. Value Codes<br>(See Columns C1 and D3)<br><br>3. Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br><br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br><br>T =Cash Market | E =$15,001 - $50,000 |

**FINANCIAL DISCLOSURE REPORT**
Page 7 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/08/2012 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing Instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.  Description of Assets (including trust assets)   Place "(X)" after each asset exempt from prior disclosure | B.  Income during reporting period | | C.  Gross value at end of reporting period | | D.  Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 52. Boston Financial Management, Inc. revocable trust | B | Int./Div. | M | T | | | | | See Section VIII |
| 53. Anheuser Busch Corp. | | | | | Buy | 03/29/11 | J | | |
| 54. Cisco Corp. | | | | | Buy | 03/29/11 | J | | |
| 55. Diageo PLC ADR | | | . | | Buy | 03/29/11 | J | | |
| 56. HCP, Inc. | | | | | Buy | 03/29/11 | J | | |
| 57. IShares INC MSCI PAC J IDX | | | | | Buy | 03/29/11 | J | | |
| 58. IShares TR MSCI EMERG MKT | | | | | Buy | 03/29/11 | J | | |
| 59. McCormick & Co., Inc. | | | | | Buy | 03/29/11 | J | | |
| 60. Northern Trust Corp. | | | | | Sold | 04/04/11 | J | | |
| 61. Public Storage Corp. | | | | | Buy | 05/10/11 | J | | |
| 62. Total AL S A ADR | | | | | Buy | 05/10/11 | J | | |
| 63. Health Care REIT Inc.. | | | | | Buy | 05/11/11 | J | | |
| 64. Intel Corp. | | | | | Buy | 08/11/11 | J | | |
| 65. Western Union Co. | | | | | Buy | 08/11/11 | J | | |
| 66. Cisco Corp. | | | | | Sold | 08/11/11 | J | | |
| 67. PowerShares Global Water Portfolio | | | | | Sold | 09/23/11 | J | | |
| 68. Boston Financial Mangement, Inc. revocable trust | B | Int./Div. | K | T | | | | | See Section VIII |

1. Income Gain Codes:       A =$1,000 or less        B =$1,001 - $2,500        C =$2,501 - $5,000        D =$5,001 - $15,000        E =$15,001 - $50,000
   (See Columns B1 and D4)  F =$50,001 - $100,000    G =$100,001 - $1,000,000  H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2. Value Codes             J =$15,000 or less       K =$15,001 - $50,000      L =$50,001 - $100,000        M =$100,001 - $250,000
   (See Columns C1 and D3)  N =$250,001 - $500,000   O =$500,001 - $1,000,000  P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
                            P3 =$25,000,001 - $50,000,000                       P4 =More than $50,000,000
3. Value Method Codes       Q =Appraisal             R =Cost (Real Estate Only)   S =Assessment               T =Cash Market
   (See Column C2)          U =Book Value            V =Other                     W =Estimated

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 8 of 10 | Gorton, Nathaniel M. | 05/08/2012 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐   **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 69. Costco Wholesale Corp | | | | | Sold | 01/21/11 | J | B | |
| 70. Nextera Energy, Inc. | | | | | Buy | 03/24/11 | J | | |
| 71. Exelon Corp. | | | | | Sold | 03/24/11 | J | | |
| 72. Total S A ADR | | | | | Buy | 05/10/11 | J | | |
| 73. HSBC Holdings | | | | | Buy | 07/07/11 | J | | |
| 74. Financial Select Sector SPDR | | | | | Sold | 07/07/11 | J | A | |
| 75. Bank of America | A | Interest | J | T | | | | | |
| 76. | | | | | | | | | |
| 77. | | | | | | | | | |
| 78. | | | | | | | | | |
| 79. | | | | | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**

Page 9 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/08/2012 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

Part I, Line 5 - NOTE: None of the beneficiaries of the following trusts and accounts of which the reporting party is a trustee (or holds a power of attorney) is a dependent of the reporting party and neither the reporting party nor his spouse has any beneficial interest in or control over the disposition of assets of such trusts and accounts.

Part VII, Line 1 -  Income of the reporting party reported in Section VII is attributable to his pro rata share of the income of SG Seafood Holdings, Inc. (" Holdings") which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders whether or not such income is, in fact, distributed.  The value of the stock holdings is appraised biennially by a certified financial analyst.

Part VII, Line 4 - in 1997                            funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Part VII, Lines 4, 19, 52 and 68 - The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston, MA and consist of stocks and bonds in publicly held companies and equity holdings based on indices listed in Attachment #2.

Part VII, Line 19 - The reporting party is now required to withdraw a certain minimum amount from his IRA account each year.

# FINANCIAL DISCLOSURE REPORT
Page 10 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/08/2012 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: **s/ Nathaniel M. Gorton**

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

| AO 10<br>Rev. 1/2013 | **FINANCIAL DISCLOSURE REPORT**<br>**FOR CALENDAR YEAR 2012** | *Report Required by the Ethics*<br>*in Government Act of 1978*<br>*(5 U.S.C. app. §§ 101-111)* |

| 1. Person Reporting (last name, first, middle initial)<br><br>Gorton, Nathaniel M. | 2. Court or Organization<br><br>District Court - Massachusetts | 3. Date of Report<br><br>05/16/2013 |
|---|---|---|
| 4. Title (Article III judges indicate active or senior status;<br>magistrate judges indicate full- or part-time)<br><br>U. S. District Court - Active | 5a. Report Type (check appropriate type)<br><br>☐ Nomination ☐ Date<br>☐ Initial ☑ Annual ☐ Final<br>5b. ☐ Amended Report | 6. Reporting Period<br><br>01/01/2012<br>to<br>12/31/2012 |

| 7. Chambers or Office Address<br><br>United States District Court<br>1 Courthouse Way, Suite 3110<br>Boston, MA 02210 |
|---|

| ***IMPORTANT NOTES:*** *The instructions accompanying this form must be followed. Complete all parts,*<br>*checking the NONE box for each part where you have no reportable information.* |
|---|

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| | POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|---|
| 1. | Stockholder, Clerk/Secretary and Director | SG Seafood Holdings, Inc., Boston, MA (closely held ▨▨▨▨ seafood business) a MA corporation. |
| 2. | Member of the Corporation | The New England Home for Little Wanderers, Boston, MA (non-profit, private child-welfare agency) |
| 3. | Power of Attorney/Trustee (see NOTE in Part VIII) | Fidelity money market accounts (for all stockholders of SG Seafood Holdings Inc., ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨) |
| 4. | | ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ |
| 5. | Trustee | Irrevocable Trust (created in connection with the estate plan ▨▨▨▨▨▨▨▨▨▨▨) |
| 6. | Trustee | 1989 Irrevocable Trust and Irrevocable Sub S Trust (both created in connection with the estate plan ▨▨▨▨▨▨▨▨▨) |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑ NONE *(No reportable agreements.)*

| | DATE | PARTIES AND TERMS |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 2 of 10 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>05/16/2013 |
|---|---|---|

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME<br>(yours, not spouse's) |
|---|---|---|
| 1. August 19 | SG Seafood Holdings, Inc. (Closely held [illegible] seafood business)<br>corporate clerk/secretary, director, custodian, trustee and accounting<br>duties | $10,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |

### B. Spouse's Non-Investment Income – *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS – *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐ NONE *(No reportable reimbursements.)*

| SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|
| 1. New York Intellectual<br>Property Lawyers Association | | | | reimbursement for lodging and travel by<br>train w/spouse from Boston to NYC to<br>attend annual N.Y.I.P.L.A. dinner 3/23/12<br>at Waldorf Astoria |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 3 of 10 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>05/16/2013 |
|---|---|---|

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

# FINANCIAL DISCLOSURE REPORT
Page 4 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/16/2013 |

## VII. INVESTMENTS and TRUSTS -- *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE (*No reportable income, assets, or transactions.*)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 1. SG Seafood Holdings, Inc. (a MA corporation) (common stock) | A | | P1 | Q | | | | | See Section VIII |
| 2. Fidelity Cash Reserves (individual) | A | Dividend | K | T | | | | | |
| 3. Fidelity Money Market Accounts (POA/rustee) | A | Dividend | N | T | | | | | |
| 4. Charitable Remainder Trust | E | Int./Div. | | | | | | | See Section VIII |
| 5. Lowes Cos. Inc. | | | | | Sold | 1/13/12 | J | | |
| 6. Ross Stores Inc. | | | | | Sold | 1/13/12 | J | B | |
| 7. McDonalds Corp. | | | | | Buy | 1/13/12 | J | | |
| 8. Nike Inc. CL B | | | | | Buy | 1/13/12 | J | | |
| 9. Abbott Labs | | | | | Sold | 2/17/12 | J | A | |
| 10. American Express Co. | | | | | Buy | 2/17/12 | J | | |
| 11. Google Inc. CLA | | | | | Sold | 2/23/12 | J | A | |
| 12. Oracle Corp. | | | | | Buy | 2/23/12 | J | | |
| 13. Western Union Co. | | | | | Buy | 2/23/12 | J | | |
| 14. Procter & Gamble Company | | | | | Sold | 3/2/12 | J | C | |
| 15. Gilead Sciences | | | | | Buy | 3/2/12 | J | | |
| 16. UnitedHealth Group Inc. | | | | | Buy | 3/2/12 | J | | |
| 17. JPM CAP XXVIII VAR RATE 7.20% fixed 12/22/14 | | | | | Sold | 7/12/12 | J | | |

1. Income Gain Codes: (See Columns B1 and D4)
2. Value Codes (See Columns C1 and D3)
3. Value Method Codes (See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000

R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T =Cash Market

E =$15,001 - $50,000

# FINANCIAL DISCLOSURE REPORT
Page 5 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/16/2013 |

## VII. INVESTMENTS and TRUSTS -- *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 18. Netapp Inc. | | | | | Sold | 8/1/12 | J | | |
| 19. Fresenius Medical Care AG ADR | | | | | Buy | 8/1/12 | J | | |
| 20. Novo-Nordisk AS ADR-B | | | | | Buy | 8/1/12 | J | | |
| 21. Wells Fargo * Co. New | | | | | Buy | 9/7/12 | J | | |
| 22. Western Union Co. | | | | | Sold<br>(part) | 10/31/12 | J | | |
| 23. Western Union Co. | | | | | Sold<br>(part) | 11/6/12 | J | B | |
| 24. Boston Financial Management, Inc. IRA | F | Distribution | P1 | T | | | | | See Section VIII |
| 25. Dodge & Cox FDS INTL STK FD | | | | | Sold | 1/13/12 | J | | |
| 26. Lowes Cos. Inc. | | | | | Sold | 1/13/12 | J | | |
| 27. Diageo PLC ADR | | | | | Buy | 1/13/12 | J | | |
| 28. McDonalds Corp. | | | | | Buy | 1/13/12 | K | | |
| 29. HCP Inc. | | | | | Buy | 2/17/12 | J | | |
| 30. Hewlett Packard Co. | | | | | Sold | 2/24/12 | K | | |
| 31. Google Inc. CL A | | | | | Sold | 2/23/12 | K | C | |
| 32. Oracle Corp. | | | | | Buy | 2/28/12 | J | | |
| 33. Western Union Co. | | | | | Buy | 2/28/12 | J | | |
| 34. Procter & Gamble Company | | | | | Sold | 3/2/12 | J | C | |

| | | | | |
|---|---|---|---|---|
| 1. Income Gain Codes:<br>(See Columns B1 and D4)<br>2. Value Codes<br>(See Columns C1 and D3)<br><br>3. Value Method Codes<br>(See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br><br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br><br>T =Cash Market | E =$15,001 - $50,000 |

# FINANCIAL DISCLOSURE REPORT
Page 6 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/16/2013 |

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 35. Gilead Sciences | | | | | Buy | 3/7/12 | J | | |
| 36. UnitedHealth Group Inc. | | | | | Buy | 3/7/12 | J | | |
| 37. Walgreen Company | | | | | Sold | 3/14/12 | K | | |
| 38. American Express Co. | | | | | Buy | 3/14/12 | K | | |
| 39. Walmart Stores, Inc. | | | | | Sold | 4/5/12 | K | | |
| 40. DirecTV Holdings | | | | | Buy | 4/5/12 | K | | |
| 41. Nextera Energy Capital Ser | | | | | Buy | 4/17/12 | J | | |
| 42. Enbridge Corp. | | | | | Buy | 4/18/12 | J | | |
| 43. Anheuser-Busch INBEV | | | | | Buy | 4/27/12 | K | | |
| 44. Teva Pharmaceutical Inds. | | | | | Sold | 5/10/12 | J | | |
| 45. Gilead Sciences | | | | | Buy | 5/10/12 | J | | |
| 46. Total S A ADR | | | | | Buy | 5/10/12 | J | | |
| 47. UnitedHealth Group Inc. | | | | | Buy (add'l) | 5/10/12 | J | | |
| 48. JPM CAP XXVIII VAR RATE 7.20% FIXED 12/22/14 | | | | | Sold | 7/12/12 | J | | |
| 49. Federal Home Loan Mortgage Corp. | | | | | Sold | 7/16/12 | K | | |
| 50. Netapp Inc. | | | | | Sold | 8/6/12 | K | | |
| 51. Fresenius Medical Care AG ADR | | | | | Buy | 8/6/12 | J | | |

1. Income Gain Codes:    A =$1,000 or less    B =$1,001 - $2,500    C =$2,501 - $5,000    D =$5,001 - $15,000    E =$15,001 - $50,000
   (See Columns B1 and D4)    F =$50,001 - $100,000    G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000    H2 =More than $5,000,000
2. Value Codes    J =$15,000 or less    K =$15,001 - $50,000    L =$50,001 - $100,000    M =$100,001 - $250,000
   (See Columns C1 and D3)    N =$250,001 - $500,000    O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
   P3 =$25,000,001 - $50,000,000    P4 =More than $50,000,000
3. Value Method Codes    Q =Appraisal    R =Cost (Real Estate Only)    S =Assessment    T =Cash Market
   (See Column C2)    U =Book Value    V =Other    W =Estimated

# FINANCIAL DISCLOSURE REPORT
Page 7 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/16/2013 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| | A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 52. | Novo-Nordisk AS ADR-B | | | | | Buy | 8/6/12 | J | | |
| 53. | GECC PFD 6% C 4/24/12 | | | | | Sold | 8/16/12 | J | A | |
| 54. | Wells Fargo & Co. New | | | | | Buy | 9/12/12 | J | | |
| 55. | Oneok Partners LP | | | | | Buy | 10/2/12 | K | | |
| 56. | IBM Intl Group CAP | | | | | Sold | 10/22/12 | K | | |
| 57. | Western Union Co. | | | | | Sold | 11/5/12 | J | B | |
| 58. | Abbott Laboratories | | | | | Sold | 11/30/12 | K | | |
| 59. | ADT Corp. | | | | | Buy | 12/20/12 | J | | |
| 60. | Boston Financial Management, Inc. revocable trust | C | Int./Div. | M | T | | | | | See Section VIII |
| 61. | Lowes Cos. Inc. | | | | | Sold | 1/19/12 | J | | |
| 62. | American Express Co. | | | | | Buy | 2/23/12 | J | | |
| 63. | HSBC Holdings PLC ADR | | | | | Buy | 2/23/12 | J | | |
| 64. | Westwood, MA-GO | | | | | Buy | 3/8/12 | K | | |
| 65. | Peabody Energy Corp. | | | | | Sold | 5/8/12 | J | | |
| 66. | Automatic Data Processing | | | | | Sold | 7/5/12 | J | A | |
| 67. | Sigma Aldrich Corp. | | | | | Sold | 7/5/12 | J | B | |
| 68. | Western Union Co. | | | | | Sold (part) | 11/5/12 | J | | |

1. Income Gain Codes:  A=$1,000 or less    B=$1,001 - $2,500    C=$2,501 - $5,000    D=$5,001 - $15,000    E=$15,001 - $50,000
   (See Columns B1 and D4)  F=$50,001 - $100,000  G=$100,001 - $1,000,000  H1=$1,000,001 - $5,000,000  H2=More than $5,000,000
2. Value Codes  J=$15,000 or less  K=$15,001 - $50,000  L=$50,001 - $100,000  M=$100,001 - $250,000
   (See Columns C1 and D3)  N=$250,001 - $500,000  O=$500,001 - $1,000,000  P1=$1,000,001 - $5,000,000  P2=$5,000,001 - $25,000,000
   P3=$25,000,001 - $50,000,000        P4=More than $50,000,000
3. Value Method Codes  Q=Appraisal  R=Cost (Real Estate Only)  S=Assessment  T=Cash Market
   (See Column C2)  U=Book Value  V=Other  W=Estimated

# FINANCIAL DISCLOSURE REPORT
Page 8 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/16/2013 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 69. Western Union Co. | | | | | Sold (part) | 11/9/12 | J | B | |
| 70. Boston Financial Mangement, Inc. revocable trust | B | Int./Div. | K | T | | | | | See Section VIII |
| 71. Teva Pharmaceutical Inds. | | | | | Sold | 5/10/12 | J | | |
| 72. Peabody Energy Corp. | | | | | Sold | 5/18/12 | J | | |
| 73. Wells Fargo & Co. New | | | | | Buy | 9/12/12 | J | | |
| 74. Western Union Co. | | | | | Sold (part) | 11/5/12 | J | A | |
| 75. Western Union Co. | | | | | Sold | 11/9/12 | J | A | |
| 76. Bank of America | A | Interest | J | T | | | | | |
| 77. | | | | | | | | | |
| 78. | | | | | | | | | |
| 79. | | | | | | | | | |
| 80. | | | | | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 9 of 10

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 05/16/2013 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report)*

Part I, Line 3 - NOTE: None of the beneficiaries of the following trusts and accounts of which the reporting party is a trustee (or holds a power of attorney) is a dependent of the reporting party and neither the reporting party nor his spouse has any beneficial interest in or control over the disposition of assets of such trusts and accounts.

Part VII, Line 1 -  Income of the reporting party reported in Section VII is attributable to his pro rata share of the income of SG Seafood Holdings, Inc. ("Holdings") which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders whether or not such income is, in fact, distributed.  The value of the stock holdings is appraised biennially by a certified financial analyst.

Part VII, Line 4 - in 1997 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Part VII, Lines 4, 24, 60 and 70  - The assets listed on these lines (and the transactions noted in the lines that follow) are managed by Boston Financial Management, Inc., Boston, MA and consist of stocks and bonds in publicly held companies and equity holdings based on indices listed in Attachment #1.

Part VII, Line 24  - The reporting party is now required to withdraw a certain minimum amount from his IRA account each year.

| FINANCIAL DISCLOSURE REPORT<br>Page 10 of 10 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>05/16/2013 |
|---|---|---|

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: s/ **Nathaniel M. Gorton**

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

Financial Disclosure Report
Nathaniel M. Gorton
May 15, 2013
Attachment #1

All of the listed holdings as of 12/31/12 are of common stock unless otherwise noted.

ADT Corp.
Abbott Labs (stocks & bond)
Air Products & Chemicals, Inc.
American Express Co. (stocks & bond)
Anadarko Pete Corp.
Anheuser Busch Corp.
Automatic Data Processing, Inc.
Avalonbay Communities, Inc.
Avon Products, Inc. (bond)
Chubb Corp.
Citrix Systems, Inc.
Coca Cola Co.
Costco Wholesale Corp
CVS Corp.
Devon Energy Corp.
Diageo PLC-Sponsored ADR
DirecTV Holdings (bond)
Emerson Electric Co.
Enbridge Corp.
Exxon -Mobil Corp.
Fresenius Medical Care AG ADR
Georgia Power Co. (Bond)
Gilead Sciences Corp.
Google Inc.
Gulf Power Co. (pfd)
HCP, Inc.
Health Care REIT, Inc. (pfd)
HSBC Holdings (pfd-CL and stock)
Intel Corp.
Johnson & Johnson

Market Vectors Gold Miners ETF
Matthews Asia Small Cos.
McCormick & Co., Inc.
McDonalds Corp.
National Rural Utilities (bond)
Nextera Energy Corp.   .
Nike, Inc.
Novo-Nordisk AS ADR-B
Oneok Parrtners, LP (bond)
Oracle Corp.
Pepsico, Inc.
Pitney Bowes, Inc. (bond)
Procter & Gamble Co.
Public Storage, Inc. (stock & pfd)
RPM. Inc. (Ohio)
Ross Stores, Inc.
Royce Fund Penn Mut Inv.
SBC Communications, Inc. (bond)
Sigma Aldrich Corp.
SPDR Gold Trust
Stryker Corp.
Total SA ADR
UnitedHealth Group, Inc.
United Parcel Service, Inc.
United Technologies, Inc.
Vodafone Group, Inc.
Wells Fargo & Co.
Westwood, MA (Town of)
        (municipal bond)

Equity holdings based on indices:
        IShares, Inc. Morgan-Stanley Capital Int'l (MSCI) Pacific Rim ex-Japan Index
        IShares, Inc. MSCI Emerging Market Index
        IShares, Inc. Russell 2000 Index

| AO 10<br>Rev. 1/2014 | **FINANCIAL DISCLOSURE REPORT**<br>**FOR CALENDAR YEAR 2013** | *Report Required by the Ethics<br>in Government Act of 1978<br>(5 U.S.C. app. §§ 101-111)* |

| 1. Person Reporting (last name, first, middle initial)<br><br>Gorton, Nathaniel M. | 2. Court or Organization<br><br>District Court - Massachusetts | 3. Date of Report<br><br>04/16/2014 |
|---|---|---|
| 4. Title (Article III judges indicate active or senior status;<br>magistrate judges indicate full- or part-time)<br><br>U.S. District Court - Active | 5a. Report Type (check appropriate type)<br><br>☐ Nomination      Date<br>☐ Initial   ☑ Annual   ☐ Final<br><br>5b. ☐ Amended Report | 6. Reporting Period<br><br>01/01/2013<br>to<br>12/31/2013 |
| 7. Chambers or Office Address<br><br>United States District Court<br>1 Courthouse Way, Suite 3110<br>Boston, MA 02210 | | |

> ***IMPORTANT NOTES:** The instructions accompanying this form must be followed. Complete all parts,*
> *checking the NONE box for each part where you have no reportable information.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| | POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|---|
| 1. | Stockholder, Clerk/Secretary and Director | SG Seafood Holdings, Inc., Boston, MA (closely held ▨▨▨ seafood business) a MA corporation |
| 2. | Power of Attorney/Trustee (See NOTE in Part VIII) | Fidelity money market accounts (for all stockholders of SG Seafood Holdings Inc.) all of whom are ▨▨▨ of the reporting party |
| 3. | Trustee (See NOTE in Part VIII) | Irrevocable Trust (created in connection with the estate plan of reporting party's ▨▨▨) |
| 4. | Trustee (See NOTE in Part VIII) | 1989 Irrevocable Trust and Irrevocable Sub S Trust (both created in connection with the estate plan of reporting party's ▨▨▨) |
| 5. | | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑ NONE *(No reportable agreements.)*

| | DATE | PARTIES AND TERMS |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 2 of 19 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>04/16/2014 |
|---|---|---|

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐   NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME<br>(yours, not spouse's) |
|---|---|---|
| 1. 08/05/2013 | SG Seafood Holdings, Inc. (Closely held ⬛⬛⬛ seafood business)<br>corporate clerk/secretary, director, custodian, trustee and accounting<br>duties | $10,000.00 |
| 2. | | |
| 3. | | |
| 4. | | |

### B. Spouse's Non-Investment Income – *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑   NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS – *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐   NONE *(No reportable reimbursements.)*

| | SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|---|
| 1. | New York Intellectual<br>Property Lawyers Association | 03/22/2013 | New York City | Attend annual NYIPLA<br>dinner at Waldorf Astoria | reimbursement for lodging and travel by<br>train w/spouse from Boston to NYC |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 3 of 19 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>04/16/2014 |
|---|---|---|

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| | SOURCE | DESCRIPTION | VALUE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| | CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

# FINANCIAL DISCLOSURE REPORT
Page 4 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| | A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 1. | SG Seafood Holdings, Inc. (a MA corporation)(common stock) | A | None | P1 | Q | | | | | See Section VIII |
| 2. | Fidelity Cash Reserves (individual) | A | Int./Div. | K | T | | | | | |
| 3. | Fidelity Money Market Accounts (POA, Trustee)(Y) | | | | | | | | | See Section VIII |
| 4. | Charitable Remainder Trust | E | Int./Div. | | | | | | | See Section VIII |
| 5. | - Coca Cola Co. | | | | | | | | | |
| 6. | - Pepsico Inc | | . | | | Sold<br>(part) | 06/07/13 | J | A | |
| 7. | - Nike Inc | | | | | | | | | |
| 8. | - Abbvie Inc. | | | | | | | | | |
| 9. | - Abbott Laboratories | | | | | | | | | |
| 10. | - Johnson & Johnson | | | | | Sold<br>(part) | 04/23/13 | J | B | |
| 11. | - UnitedHealth Group Inc | | | | | | | | | |
| 12. | - Procter & Gamble Co | | | | | | | | | |
| 13. | - McDonalds Corp | | | | | | | | | |
| 14. | - CVS/Caremark Corp | | | | | Sold<br>(part) | 04/23/13 | J | B | |
| 15. | - Costco Wholesale Corp | | | | | | | | | |
| 16. | - Ross Stores Inc | | | | | | | | | |
| 17. | - Automatic Data Processing Inc | | | | | | | | | |

1. Income Gain Codes:
(See Columns B1 and D4)
2. Value Codes
(See Columns C1 and D3)
3. Value Method Codes
(See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000

R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T =Cash Market

E =$15,001 - $50,000

# FINANCIAL DISCLOSURE REPORT
Page 5 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 18. - 3M Co | | | | | Buy | 02/20/13 | J | | |
| 19. - Emerson Electric Co | | | | | | | | | |
| 20. - United Technologies Corp | | | | | Sold (part) | 04/23/13 | J | A | |
| 21. | | | | | Sold (part) | 06/07/13 | J | A | |
| 22. - Intel Corp | | | | | Buy (add'l) | 06/05/13 | J | | |
| 23. - Devon Energy Corp | | | | | | | | | |
| 24. - Exxon Mobil Corp | | | | | | | | | |
| 25. - RPM Corp | | | | | | | | | |
| 26. - American Express Co | | | | | | | | | |
| 27. - JP Morgan Chase & Co | | | | | Buy | 06/07/13 | J | | |
| 28. - HCP Inc | | | | | | | | | |
| 29. - Public Storage Inc | | | | | | | | | |
| 30. - IShares MSCI Pacific EX Japan ETF | | | | | | | | | |
| 31. - IShares MSCI Emerging Mkts ETF | | | | | | | | | |
| 32. - HSBC Holdings Plc ADR | | | | | Buy (add'l) | 06/05/13 | J | | |
| 33. - Novo Nordisk AS ADR-B | | | | | Buy (add'l) | 06/05/13 | J | | |
| 34. - Vodafone Group PLC ADR | | | | | | | | | |

1. Income Gain Codes:    A =$1,000 or less    B =$1,001 - $2,500    C =$2,501 - $5,000    D =$5,001 - $15,000    E =$15,001 - $50,000
   (See Columns B1 and D4)    F =$50,001 - $100,000    G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000    H2 =More than $5,000,000
2. Value Codes    J =$15,000 or less    K =$15,001 - $50,000    L =$50,001 - $100,000    M =$100,001 - $250,000
   (See Columns C1 and D3)    N =$250,001 - $500,000    O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
                           P3 =$25,000,001 - $50,000,000    P4 =More than $50,000,000
3. Value Method Codes    Q =Appraisal    R =Cost (Real Estate Only)    S =Assessment    T =Cash Market
   (See Column C2)    U =Book Value    V =Other    W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 6 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 35.  - Wells Fargo & Co | | | | | Sold | 06/05/13 | J | A | |
| 36.  - Gilead Sciences Inc | | | | | Sold | 06/05/13 | J | C | |
| 37.  - Oracle Corp | | | | | Sold | 06/05/13 | J | A | |
| 38.  - Fresenius Medical Care AG ADR | | | | | Sold | 06/05/13 | J | | |
| 39.  - Market Vectors Gold Miners ETF Fund | | | | | Sold | 06/05/13 | J | | |
| 40.  Boston Financial Management, Inc. IRA | F | Distribution | P1 | T | | | | | See Sect. VIII |
| 41.  - Anheuser-Busch Inbev (bond) | | | | | | | | | |
| 42.  - SBC Comms Inc (bond) | | | | | | | | | |
| 43.  - DirectTV Holdings (bond) | | | | | | | | | |
| 44.  - Suntrust Bks Inc (bond) | | | | | Buy | 03/26/13 | K | | |
| 45.  - Capital One FINL Co (bond) | | | | | Buy | 07/11/13 | K | | |
| 46.  - Southern Co (bond) | | | | | Buy | 07/15/13 | K | | |
| 47.  - Lochheed Martin Corp (bond) | | | | | Buy | 06/04/13 | K | | |
| 48.  - Beam Inc. (bond) | | | | | Buy | 06/04/13 | K | | |
| 49.  - Pitney Bowes Inc (bond) | | | | | | | | | |
| 50.  - Oncok Partners LP (bond) | | | | | | | | | |
| 51.  - American Express CR MTN (bond) | | | | | | | | | |

1. Income Gain Codes:     A =$1,000 or less          B =$1,001 - $2,500          C =$2,501 - $5,000          D =$5,001 - $15,000          E =$15,001 - $50,000
   (See Columns B1 and D4)  F =$50,001 - $100,000     G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000  H2 =More than $5,000,000
2. Value Codes          J =$15,000 or less        K =$15,001 - $50,000        L =$50,001 - $100,000       M =$100,001 - $250,000
   (See Columns C1 and D3) N =$250,001 - $500,000     O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000  P2 =$5,000,001 - $25,000,000
                          P3 =$25,000,001 - $50,000,000                          P4 =More than $50,000,000
3. Value Method Codes    Q =Appraisal              R =Cost (Real Estate Only)  S =Assessment              T =Cash Market
   (See Column C2)         U =Book Value             V =Other                    W =Estimated

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 7 of 19 | Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 52.   - Pepsico Inc. | | | | | | | | | |
| 53.   - Nike Inc - B | | | | | | | | | |
| 54.   - Abbvie Inc. | | | | | | | | | |
| 55.   - Abbott Laboratories | | | | | | | | | |
| 56.   - Johnson & Johnson | | | | | | | | | |
| 57.   - UnitedHealth Group Inc. | | | | | | | | | |
| 58.   - Proctor & Gamble Co | | | | | | | | | |
| 59.   - McDonalds Corp | | | | | | | | | |
| 60.   - Ralph Lauren Corp | | | | | Buy | 11/19/13 | J | | |
| 61.   - Cognizant Technology Solutions Corp | | | | | Buy | 11/12/13 | J | | |
| 62.   - Microsoft Corp | | | | | Buy | 11/12/13 | J | | |
| 63.   - Oracle Corp | | | | | Sold (part) | 06/05/13 | J | B | |
| 64. | | | | | Buy (add'l) | 11/12/13 | J | | |
| 65.   - ADT Corp | | | | | | | | | |
| 66.   - 3M Co | | | | | Buy | 02/20/13 | J | | |
| 67.   - Emerson Electric Co | | | | | | | | | |
| 68.   - United Techonologies Corp | | | | | | | | | |

| 1. Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 8 of 19 | Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | B. (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | C. (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | D. (2) Date mm/dd/yy | D. (3) Value Code 2 (J-P) | D. (4) Gain Code 1 (A-H) | D. (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 69.   - Intel Corp | | | | | Buy (add'l) | 06/05/13 | J | | |
| 70.   - Chevron Corp | | | | | Buy | 01/11/13 | K | | |
| 71.   - Devon Energy Corp | | | | | | | | | |
| 72.   - Exxon Mobil Corp | | | | | | | | | |
| 73.   - Anadarko Petroleum Corp | | | | | | | | | |
| 74.   - Air Products & Chemicals Inc | | | | | | | | | |
| 75.   - RPM Corp | | | | | | | | | |
| 76.   - United Parcel Service Inc. | | | | | | | | | |
| 77.   - Chubb Corp | | | | | | | | | |
| 78.   - American Express Co. | | | | | | | | | |
| 79.   - JP Morgan Chase & Co. | | | | | Buy | 06/07/13 | K | | |
| 80.   - American Tower Corp | | | | | Buy | 11/12/13 | J | | |
| 81.   - AvalonBay Communities Inc. | | | | | | | | | |
| 82.   - HCP Inc | | | | | | | | | |
| 83.   - Nextera Energy Inc | | | | | | | | | |
| 84.   - IShares Russell 2000 EFT | | | | | | | | | |
| 85.   - Royce Pennsylvania Mutual Fund | | | | | | | | | |

1. Income Gain Codes:     A =$1,000 or less          B =$1,001 - $2,500          C =$2,501 - $5,000          D =$5,001 - $15,000          E =$15,001 - $50,000
   (See Columns B1 and D4)  F =$50,001 - $100,000     G =$100,001 - $1,000,000     H1 =$1,000,001 - $5,000,000     H2 =More than $5,000,000
2. Value Codes              J =$15,000 or less        K =$15,001 - $50,000        L =$50,001 - $100,000          M =$100,001 - $250,000
   (See Columns C1 and D3)  N =$250,001 - $500,000     O =$500,001 - $1,000,000     P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
                           P3 =$25,000,001 - $50,000,000                           P4 =More than $50,000,000
3. Value Method Codes       Q =Appraisal              R =Cost (Real Estate Only)   S =Assessment                 T =Cash Market
   (See Column C2)          U =Book Value             V =Other                     W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 9 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 86. – IShares MSCI Pacific EX Japan ETF | | | | | | | | | |
| 87. – IShares MSCI Emerging Mkts EFT | | | | | | | | | |
| 88. – Gulf Power Co | | | | | | | | | |
| 89. – Nextera Energy Capital | | | | | | | | | |
| 90. – Public Storage | | | | | | | | | |
| 91. – HSBC Holdings PLC ADR | | | | | Buy (add'l) | 06/05/13 | J | | |
| 92. – Diageo Plc ADR | | | | | | | | | |
| 93. – Enbridge, Inc. | | | | | | | | | |
| 94. – Novo-Nordisk AS ADR | | | | | Buy (add'l) | 06/05/13 | K | | |
| 95. – Vodafone Group PLC ADR | | | | | | | | | |
| 96. – Matthews Asia Small Cos | | | | | | | | | |
| 97. – WI Treasury Sec (bond) | | | | | Buy | 01/03/13 | K | | |
| 98. | | | | | Redeemed | 05/30/13 | K | | |
| 99. – Total SA-Sponsored ADR | | | | | Sold | 01/11/13 | K | | |
| 100. – Avon Products Inc. (bond) | | | | | Redeemed | 03/01/13 | K | | |
| 101. | | | | | Redeemed | 04/15/13 | K | B | |
| 102. – Nat Rural Util Coop (bond) | | | | | Redeemed | 03/01/13 | J | A | |

1. Income Gain Codes:   A =$1,000 or less   B =$1,001 - $2,500   C =$2,501 - $5,000   D =$5,001 - $15,000   E =$15,001 - $50,000
(See Columns B1 and D4)   F =$50,001 - $100,000   G =$100,001 - $1,000,000   H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2. Value Codes   J =$15,000 or less   K =$15,001 - $50,000   L =$50,001 - $100,000   M =$100,001 - $250,000
(See Columns C1 and D3)   N =$250,001 - $500,000   O =$500,001 - $1,000,000   P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
  P3 =$25,000,001 - $50,000,000   P4 =More than $50,000,000
3. Value Method Codes   Q =Appraisal   R =Cost (Real Estate Only)   S =Assessment   T =Cash Market
(See Column C2)   U =Book Value   V =Other   W =Estimated

# FINANCIAL DISCLOSURE REPORT
Page 10 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 103. | | | | | Redeemed | 07/01/13 | K | A | |
| 104.  - Wells Fargo & Co. | | | | | Sold | 06/05/13 | J | B | |
| 105.  - Gilead Sciences Inc | | | | | Sold | 06/05/13 | K | D | |
| 106.  - Fresenius Medical Care AG ADR | | | | | Sold | 06/05/13 | J | | |
| 107.  - Market Vectors Bold Miners EFT Fund | | | | | Sold | 06/25/13 | K | | |
| 108.  - Stryker Corp | | | | | Sold | 06/26/13 | J | | |
| 109.  - Health Care Reit Inc Conv | | | | | Sold (part) | 10/01/13 | J | A | |
| 110. | | | | | Sold | 10/03/13 | J | A | |
| 111.  - Georgia Power Co (bond) | | | | | Redeemed | 11/01/13 | K | | |
| 112.  - Citrix System Inc. | | | | | Sold | 11/19/13 | J | C | |
| 113.  Boston Financial Management, Inc. Revocable Trust | C | Int./Div. | N | T | | | | | See Sect. VIII |
| 114.  - Kellogg Co (Bond) | | | | | Buy | 10/25/13 | K | | |
| 115.  - Westwood MA (munic. bond) | | | | | | | | | |
| 116.  - McCormick & Co Inc. | | | | | | | | | |
| 117.  - Colgate Palmolive Co | | | | | Buy | 10/22/13 | J | | |
| 118.  - Nike Inc | | | | | | | | | |
| 119.  - Abbvie Inc | | | | | Buy | 10/22/13 | J | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 11 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 120. - Abbott Laboratories | | | | | Buy (add'l) | 10/22/13 | J | | |
| 121. - Bristol Myers Squibb Co | | | | | Buy | 10/22/13 | J | | |
| 122. - Johnson & Johnson | | | | | Buy (add'l) | 10/22/13 | J | | |
| 123. - UnitedHealth Group, Inc | | | | | Buy (add'l) | 10/22/13 | J | | |
| 124. - Procter & Gamble Co | | | | | | | | | |
| 125. - Costco Wholesale Corp | | | | | Buy (add'l) | 10/22/13 | J | | |
| 126. - Amazon.com, Inc. | | | | | Buy | 10/22/13 | J | | |
| 127. - Automatic Data Processing, Iinc. | | | | | Sold (part) | 07/08/13 | J | B | |
| 128. - Google, Inc. | | | | | | | | | |
| 129. - Microsoft Corp | | | | | Buy | 10/22/13 | J | | |
| 130. - 3M Co. | | | | | Buy | 03/01/13 | J | | |
| 131. - Emerson Electric Co. | | | | | | | | | |
| 132. - Caterpillar, Inc. | | | | | Buy | 10/22/13 | J | | |
| 133. - United Technologies Corp | | | | | | | | | |
| 134. - Apple, Inc. | | | | | Buy | 10/22/13 | J | | |
| 135. - Citrix System, Inc. | | | | | Buy | 03/01/13 | J | | |
| 136. | | | | | Buy (add'l) | 10/22/13 | J | | |

1. Income Gain Codes:       A =$1,000 or less         B =$1,001 - $2,500         C =$2,501 - $5,000          D =$5,001 - $15,000        E =$15,001 - $50,000
   (See Columns B1 and D4)   F =$50,001 - $100,000      G =$100,001 - $1,000,000   H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2. Value Codes               J =$15,000 or less         K =$15,001 - $50,000       L =$50,001 - $100,000      M =$100,001 - $250,000
   (See Columns C1 and D3)    N =$250,001 - $500,000     O =$500,001 - $1,000,000   P1 =$1,000,001 - $5,000,000
                              P3 =$25,000,001 - $50,000,000                          P4 =More than $50,000,000    P2 =$5,000,001 - $25,000,000
3. Value Method Codes         Q =Appraisal               R =Cost (Real Estate Only)  S =Assessment              T =Cash Market
   (See Column C2)            U =Book Value              V =Other                   W =Estimated

# FINANCIAL DISCLOSURE REPORT
Page 12 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 137. - Intel Corp | | | | | Buy (add'l) | 06/05/13 | J | | |
| 138. - Chevron Corp | | | | | Buy | 01/11/13 | J | | |
| 139. - Devon Energy Corp | | | | | | | | | |
| 140. - Exxon Mobil Corp | | | | | | | | | |
| 141. - Anadarko Petroleum Corp | | | | | | | | | |
| 142. - Kinder Morgan Inc. | | | | | Buy | 03/01/13 | J | | |
| 143. | | | | | Buy (add'l) | 10/22/13 | J | | |
| 144. - Air Products & Chemicals, Inc. | | | | | | | | | |
| 145. - Praxair, Inc. | | | | | Buy | 10/22/13 | J | | |
| 146. - Sigma Aldrich Corp | | | | | | | | | |
| 147. - Union Pacific Corp | | | | | Buy | 10/22/13 | J | | |
| 148. - RPM Corp | | | | | Buy (add'l) | 10/22/13 | J | | |
| 149. - Wells Fargo Corp | | | | | Buy (add'l) | 03/01/13 | J | | |
| 150. | | | | | Sold | 06/05/13 | J | A | |
| 151. | | | | | Buy | 10/22/13 | J | | |
| 152. - United Parcel Service, Inc. | | | | | | | | | |
| 153. - Chubb Corp | | | | | | | | | |

1. Income Gain Codes: (See Columns B1 and D4)  A =$1,000 or less  B =$1,001 - $2,500  C =$2,501 - $5,000  D =$5,001 - $15,000  E =$15,001 - $50,000
F =$50,001 - $100,000  G =$100,001 - $1,000,000  H1 =$1,000,001 - $5,000,000  H2 =More than $5,000,000
2. Value Codes: (See Columns C1 and D3)  J =$15,000 or less  K =$15,001 - $50,000  L =$50,001 - $100,000  M =$100,001 - $250,000
N =$250,001 - $500,000  O =$500,001 - $1,000,000  P1 =$1,000,001 - $5,000,000  P2 =$5,000,001 - $25,000,000
P3 =$25,000,001 - $50,000,000  P4 =More than $50,000,000
3. Value Method Codes: (See Column C2)  Q =Appraisal  R =Cost (Real Estate Only)  S =Assessment  T =Cash Market
U =Book Value  V =Other  W =Estimated

# FINANCIAL DISCLOSURE REPORT
Page 13 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 154.  - American Express Co | | | | | | | | | |
| 155.  - Health Care REIT, Inc. | | | | | Sold<br>(part) | 10/01/13 | J | A | |
| 156. | | | | | Sold<br>(part) | 10/03/13 | J | A | |
| 157. | | | | | Buy | 10/22/13 | J | | |
| 158.  - JP Morgan Chase & Co | | | | | Buy | 06/07/13 | J | | |
| 159. | | | | | Buy<br>(add'l) | 10/22/13 | J | | |
| 160.  - AvalonBay Communities, Inc. | | | | | Buy<br>(add'l) | 03/01/13 | J | | |
| 161.  - HCP, Inc. | | | | | | | | | |
| 162.  - Public Storage, Inc. (common & preferred) | | | | | Buy<br>(add'l) | 10/22/13 | J | | |
| 163.  - IShares Russell 2000 ETF · | | | | | | | | | |
| 164.  - IShares MSCI Pacific | | | | | | | | | |
| 165.  - IShares MSCI Emerging | | | | | | | | | |
| 166.  - CheckPoint Sofware Tech Ltd | | | | | Buy | 02/19/13 | J | | |
| 167.  - Anheuser Busch Corp | | | | | | | | | |
| 168.  - Diago PLC ADR | | | | | | | | | |
| 169.  - Enbridge Inc | | | | | Buy<br>(add'l) | 03/01/13 | J | | |
| 170. | | | | | Buy<br>(add'l) | 10/22/13 | J | | |

| 1. Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes· | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 14 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 171. - HSBC Holdings Inc | | | | | Buy<br>(add'l) | 06/05/13 | J | | |
| 172. - Schlumberger Ltd | | | | | Buy | 02/20/13 | J | | |
| 173. - Oracle Corp | | | | | Buy<br>(add'l) | 03/01/13 | J | | |
| 174. | | | | | Sold | 06/05/13 | J | | |
| 175. - Market Vectors Gold Miners ETF | | | | | Buy<br>(add'l) | 05/21/13 | J | | |
| 176. | | | | | Sold | 06/25/13 | J | | |
| 177. - Total SA ADR | | | | | Sold | 01/11/13 | J | | |
| 178. - SPDR Gold Trust | | | | | Sold | 05/21/13 | J | B | |
| 179. Boston Financial Management Inc Revocable Trust (S) | B | Int./Div. | O | T | | | | | See Section VIII |
| 180. - Genzyme Corp (Bond) | | | | | Buy | 11/13/13 | K | | |
| 181. - Kellogg Co (Bond) | | | | | Buy | 10/25/13 | K | | |
| 182. - Burlington North (Bond) | | | | | Buy | 11/15/13 | K | | |
| 183. - Pepsico Inc | | | | | | | | | |
| 184. - Nike Inc - B | | | | | | | | | |
| 185. - Abbvie Inc | | | | | | | | | |
| 186. - Abbott Laboratories | | | | | | | | | |
| 187. - Bristol Myers Squibb Co | | | | | Buy | 10/22/13 | J | | |

1. Income Gain Codes:  A =$1,000 or less    B =$1,001 - $2,500    C =$2,501 - $5,000    D =$5,001 - $15,000    E =$15,001 - $50,000
   (See Columns B1 and D4)  F =$50,001 - $100,000    G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000    H2 =More than $5,000,000
2. Value Codes  J =$15,000 or less    K =$15,001 - $50,000    L =$50,001 - $100,000    M =$100,001 - $250,000
   (See Columns C1 and D3)  N =$250,001 - $500,000    O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
   P3 =$25,000,001 - $50,000,000    P4 =More than $50,000,000
3. Value Method Codes  Q =Appraisal    R =Cost (Real Estate Only)    S =Assessment    T =Cash Market
   (See Column C2)  U =Book Value    V =Other    W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 15 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 188.  - Johnson & Johnson | | | | | | | | | |
| 189.  - United Health Group Inc | | | | | Buy (add'l) | 10/22/13 | J | | |
| 190.  - Procter & Gamble Co | | | | | . | | | | |
| 191.  - Costco Wholesale Corp | | | | | | | | | |
| 192.  - Ralph Lauren Corp | | | | | Buy | 10/22/13 | J | | |
| 193.  - Amazon.com Inc | | | | | Buy | 10/22/13 | J | | |
| 194.  - Automatic Data Processing Inc | | | | | Buy (add'l) | 10/22/13 | J | | |
| 195.  - Cognizant Technology Solutions Corp | | | | | Buy | 11/13/13 | J | | |
| 196.  - Microsoft Corp | | | | | Buy | 10/22/13 | J | | |
| 197.  - 3M Co | | | | | Buy | 10/22/13 | J | | |
| 198.  - Emerson Electric Co | | | | | | | | | |
| 199.  - Caterpillar Inc | | | | | Buy | 09/11/13 | J | | |
| 200.  - United Technologies Corp | | | | | | | | | |
| 201.  - Apple Inc | | | | | Buy | 10/22/13 | J | | |
| 202.  - Intel Corp | | | | | Buy (add'l) | 10/22/13 | J | | |
| 203.  - Chevron Corp | | | | | Buy | 01/11/13 | J | | |
| 204.  - Devon Energy Corp | | | | | | | | | |

1. Income Gain Codes:     A =$1,000 or less          B =$1,001 - $2,500          C =$2,501 - $5,000          D =$5,001 - $15,000          E =$15,001 - $50,000
   (See Columns B1 and D4)    F =$50,001 - $100,000     G =$100,001 - $1,000,000     H1 =$1,000,001 - $5,000,000     H2 =More than $5,000,000
2. Value Codes                J =$15,000 or less        K =$15,001 - $50,000        L =$50,001 - $100,000        M =$100,001 - $250,000
   (See Columns C1 and D3)     N =$250,001 - $500,000     O =$500,001 - $1,000,000     P1 =$1,000,001 - $5,000,000     P2 =$5,000,001 - $25,000,000
                               P3 =$25,000,001 - $50,000,000                          P4 =More than $50,000,000
3. Value Method Codes         Q =Appraisal              R =Cost (Real Estate Only)   S =Assessment               T =Cash Market
   (See Column C2)             U =Book Value             V =Other                    W =Estimated

# FINANCIAL DISCLOSURE REPORT
## Page 16 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. (1) Amount Code 1 (A-H) | B. (2) Type (e.g., div., rent, or int.) | C. (1) Value Code 2 (J-P) | C. (2) Value Method Code 3 (Q-W) | D. (1) Type (e.g., buy, sell, redemption) | D. (2) Date mm/dd/yy | D. (3) Value Code 2 (J-P) | D. (4) Gain Code 1 (A-H) | D. (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 205. - Exxon Mobil Corp | | | | | | | | | |
| 206. - Oneok New | | | | | Buy | 10/22/13 | J | | |
| 207. - Kinder Morgan Inc | | | | | Buy | 10/22/13 | J | | |
| 208. - Union Pacific Corp | | | | | Buy | 10/22/13 | J | | |
| 209. - United Parcel Service Inc - B | | | | | Buy (add'l) | 10/22/13 | J | | |
| 210. - Chubb Corp | | | | | Buy (add'l) | 10/22/13 | J | | |
| 211. - American Express Co | | | | | Buy (add'l) | 10/22/13 | J | | |
| 212. - Health Care REIT Inc | | | | | Buy (add'l) | 10/22/13 | J | | |
| 213. - JP Morgan Chase & Co | | | | | Buy | 06/07/13 | J | | |
| 214. - American Tower Corp | | | | | Buy | 11/12/13 | J | | |
| 215. - Avalonbay Communities Inc | | | | | Buy (add'l) | 10/22/13 | J | | |
| 216. - HCP Inc | | | | | Buy (add'l) | 10/22/13 | J | | |
| 217. - Public Storage Inc | | | | | Buy (add'l) | 10/22/13 | J | | |
| 218. - Nexera Energy Inc | | | | | | | | | |
| 219. - Bank of Nova Scotia (bond) | | | | | Buy | 11/05/13 | K | | |
| 220. - Anheuser Busch Inbev SA/NV-SP ADR | | | | | Buy (add'l) | 10/22/13 | J | | |
| 221. - Diageo PLC ADR | | | | | Buy (add'l) | 10/22/13 | J | | |

1. Income Gain Codes:    A =$1,000 or less    B =$1,001 - $2,500    C =$2,501 - $5,000    D =$5,001 - $15,000    E =$15,001 - $50,000
(See Columns B1 and D4)    F =$50,001 - $100,000    G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000    H2 =More than $5,000,000
2. Value Codes    J =$15,000 or less    K =$15,001 - $50,000    L =$50,001 - $100,000    M =$100,001 - $250,000
(See Columns C1 and D3)    N =$250,001 - $500,000    O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
   P3 =$25,000,001 - $50,000,000    P4 =More than $50,000,000
3. Value Method Codes    Q =Appraisal    R =Cost (Real Estate Only)    S =Assessment    T =Cash Market
(See Column C2)    U =Book Value    V =Other    W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 17 of 19

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 04/16/2014 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐  **NONE** *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 222.  - Enbridge Inc | | | | | Buy (add'l) | 10/22/13 | J | | |
| 223.  - HSBC Holdings PLC ADR | | | | | Buy (add'l) | 06/05/13 | J | | |
| 224.  - Schlumberger Ltd | | | | | Buy | 02/20/13 | J | | |
| 225.  - Vodafone Group PLC ADR | | | | | | | | | |
| 226.  - Total SA-Sponsored ADR | | | | | Sold | 01/11/13 | J | | |
| 227.  - Wells Fargo & Co | | | | | Sold | 06/05/13 | J | A | |
| 228.  - Bank of America | A | Int./Div. | J | T | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 18 of 19 | Gorton, Nathaniel M. | 04/16/2014 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

Part I, Lines 2 - 4 NOTE:  None of the beneficiaries of the trusts and accounts listed in Part I of which the reporting party is a trustee is a dependent of the reporting party and neither the reporting party nor his [redacted] has any beneficial interest in or control over the disposition of assets of such trusts and accounts.

Part VII, Line 1 - Income of the reporting party reported in Section VII (of which there was none this year) is attributable to his pro rata share of the income of SG Seafood Holdings, Inc. ("Holdings") which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders whether or not such income is, in fact, distributed.  The value of the stock holdings is appraised biennially by a certified financial planner, last done in 2012.

Part VII, Line 3 - This asset, subject to a power of attorney, is no longer reportable pursuant to the revised instructions.

Part VII, Line 4 - In 1997 the reporting party and [redacted] funded a charitble remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Part VII, Lines 4, 40, 113 and 179 - The assets listed on these lines (and the dashed ("-") lines that follow) are managed by Boston Financial Management, Inc., Boston MA and consist of stocks and bonds in publicly held companies and equity holdings, based on certain indices.

Part VII, Line 40 - The reporting party is now required to withdraw a certain minimum amount from his IRA account each year.

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 19 of 19 | Gorton, Nathaniel M. | 04/16/2014 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: **s/ Nathaniel M. Gorton**

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

| AO 10<br>Rev. 1/2015 | **FINANCIAL DISCLOSURE REPORT<br>FOR CALENDAR YEAR 2014** | *Report Required by the Ethics<br>in Government Act of 1978<br>(5 U.S.C. app §§ 101-111)* |

| 1. Person Reporting (last name, first, middle initial)<br><br>Gorton, Nathaniel M. | 2. Court or Organization<br><br>District Court - Massachusetts | 3. Date of Report<br><br>07/30/2015 |
|---|---|---|
| 4. Title (Article III judges indicate active or senior status;<br>magistrate judges indicate full- or part-time)<br><br>U.S. District Court - Active | 5a. Report Type (check appropriate type)<br><br>☐ Nomination   Date<br>☐ Initial   ☑ Annual   ☐ Final<br><br>5b. ☑ Amended Report | 6. Reporting Period<br><br>01/01/2014<br>to<br>12/31/2014 |
| 7. Chambers or Office Address<br><br>United States District Court<br>1 Courthouse Way, Suite 3110<br>Boston, MA 02210 | | |

**IMPORTANT NOTES:** *The instructions accompanying this form must be followed. Complete all parts,<br>checking the NONE box for each part where you have no reportable information.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐   NONE *(No reportable positions.)*

| | POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|---|
| 1. | Stockholder, Clerk/Secretary and Director | SG Seafood Holdings, Inc., Boston, MA (closely held ▓▓▓▓ seafood business) a<br>MA corporation |
| 2. | Power of Attorney/Trustee (See NOTE in Part VIII) | Fidelity money market accounts (for all stockholders of SG Seafood Holdings<br>Inc.) all of whom are ▓▓▓▓ of the reporting party |
| 3. | Trustee (See NOTE in Part VIII) | Irrevocable Trust (created in connection with the estate plan of reporting party's<br>▓▓▓▓ |
| 4. | Trustee (See NOTE in Part VIII) | 1989 Irrevocable Trust and Irrevocable Sub S Trust (both created in connection<br>with the estate plan of reporting party's ▓▓▓▓ ) |
| 5. | | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑   NONE *(No reportable agreements.)*

| | DATE | PARTIES AND TERMS |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 2 of 22 | Gorton, Nathaniel M. | 07/30/2015 |

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐  NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|---|
| 1 | 08/04/2014 | SG Seafood Holdings, Inc. (Closely held ████ seafood business) corporate clerk/secretary, director, custodian, trustee and accounting duties | $10,000.00 |
| 2 | | | |
| 3 | | | |
| 4 | | | |

### B. Spouse's Non-Investment Income - *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑  NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE |
|---|---|---|
| 1. | | |
| 2 | | |
| 3 | | |
| 4 | | |

## IV. REIMBURSEMENTS -- *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐  NONE *(No reportable reimbursements.)*

| | SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|---|
| 1 | New York Intellectual Property Lawyers Association | 03/28/2014 | New York City | Attend annual NYIPLA dinner at Waldorf Astoria | reimbursement for lodging and travel by train w/spouse from Boston to NYC |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 3 of 22 | Gorton, Nathaniel M. | 07/30/2015 |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

# FINANCIAL DISCLOSURE REPORT
Page 4 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| | A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 1 | SG Seafood Holdings, Inc. (a MA corporation)(common stock) | | None | P1 | Q | | | | | See Section VIII |
| 2 | Fidelity Cash Reserves (individual) | A | Int./Div. | K | T | | | | | |
| 3 | Charitable Remainder Trust | E | Int./Div. | | | | | | | See Section VIII |
| 4 | - Coca Cola Co | | | | | Sold (part) | 01/17/14 | J | C | |
| 5 | - Coca Cola Co | | | | | Sold (part) | 04/17/14 | J | C | |
| 6 | - Pepsico Inc | | | | | Sold (part) | 01/17/14 | J | B | |
| 7 | - Pepsico, Inc. | | | | | Sold (part) | 02/20/14 | J | C | |
| 8 | - Abbvie Inc. (bond) | | | | | Buy | 04/28/14 | J | | |
| 9 | - Abbott Labs | | | | | Sold | 01/31/14 | J | B | |
| 10 | - Johnson & Johnson | | | | | Sold (part) | 09/29/14 | J | B | |
| 11 | - McDonalds Corp | | | | | Buy | 01/17/14 | J | | |
| 12 | - McDonalds Corp | | | | | Sold (part) | 08/12/14 | J | | |
| 13 | - CVS Health Corp | | | | | Sold (part) | 01/17/14 | J | C | |
| 14 | - CVS Health Corp | | | | | Sold (part) | 09/29/14 | J | C | |
| 15 | - CVS/Caremark Corp (bond) | | | | | Buy | 04/24/14 | J | | |
| 16 | - Ross Stores, Inc. | | | | | Sold | 02/07/14 | J | D | |
| 17 | - Automatic Data Processing Inc | | | | | Sold (part) | 09/29/14 | J | C | |

| 1. Income Gain Codes | A. =$1,000 or less | B. =$1,001 - $2,500 | C. =$2,501 - $5,000 | D. =$5,001 - $15,000 | E. =$15,001 - $50,000 |
| (See Columns B1 and D4) | F. =$50,001 - $100,000 | G. =$100,001 - $1,000,000 | H1. =$1,000,001 - $5,000,000 | H2. =More than $5,000,000 | |
| 2. Value Codes | J. =$15,000 or less | K. =$15,001 - $50,000 | L. =$50,001 - $100,000 | M. =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N. =$250,001 - $500,000 | O. =$500,001 - $1,000,000 | P1. =$1,000,001 - $5,000,000 | P2. =$5,000,001 - $25,000,000 | |
| | P3. =$25,000,001 - $50,000,000 | | P4. =More than $50,000,000 | | |
| 3. Value Method Codes | Q. =Appraisal | R. =Cost (Real Estate Only) | S. =Assessment | T. =Cash Market | |
| (See Column C2) | U. =Book Value | V. =Other | W. =Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 5 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 18   - Intel Corp | | | | | Sold | 02/13/14 | J | | |
| 19   - Devon Energy Corp | | | | | Sold | 01/30/14 | J | B | |
| 20   - Exxon Mobil Corp | | | | | Sold | 06/04/14 | J | C | |
| 21   - HSBC Holdings Plc ADR | | | | | Sold | 03/24/14 | J | A | |
| 22   - Vodafone Group PLC ADR | | | | | Sold | 03/28/14 | J | A | |
| 23   - Verizon Communications | | | | | Sold | 03/04/14 | J | A | |
| 24 | | | | | Spinoff (from line 22) | 02/24/14 | J | | |

| 25 | - TJX Companies Inc | | | | | Buy | 02/07/14 | J | | |
| 26 | - TJX Companies Inc | | | | | Sold (part) | 09/29/14 | J | | |
| 27 | - CDK Global Inc | | | | | Sold | 10/07/14 | J | A | |
| 28 | | | | | | Spinoff (from line 17) | 10/01/14 | J | | |
| 29 | - Ecolab Inc. (bond) | | | | | Buy | 05/14/14 | J | | |
| 30 | - Ryder Systems Inc (bond) | | | | | Buy | 05/09/14 | J | | |
| 31 | - Medtronic Inc (bond) | | | | | Buy | 05/06/14 | J | | |
| 32 | - Comcast Corp | | | | | Buy | 03/04/14 | J | | |
| 33 | - Whole Foods Mkt Inc | | | | | Buy | 08/12/14 | J | | |
| 34 | - Microsoft Corp | | | | | Buy | 02/13/14 | J | | |

1 Income Gain Codes        A - $1,000 or less        B - $1,001 - $2,500        C - $2,501 - $5,000        D - $5,001 - $15,000        E - $15,001 - $50,000
(See Columns B1 and D4)    F - $50,001 - $100,000    G - $100,001 - $1,000,000    H1 - $1,000,001 - $5,000,000    H2 - More than $5,000,000
2 Value Codes              J - $15,000 or less       K - $15,001 - $50,000        L - $50,001 - $100,000        M - $100,001 - $250,000
(See Columns C1 and D3)    N - $250,001 - $500,000   O - $500,001 - $1,000,000    P1 - $1,000,001 - $5,000,000    P2 - $5,000,001 - $25,000,000
                           P3 - $25,000,001 - $50,000,000                         P4 - More than $50,000,000
3 Value Method Codes       Q - Appraisal             R - Cost (Real Estate Only)   S - Assessment                T - Cash Market
(See Column C2)            U - Book Value            V - Other                     W - Estimated

---

| **FINANCIAL DISCLOSURE REPORT** | **Name of Person Reporting** | **Date of Report** |
| Page 6 of 22 | Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS – income, value, transaction (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐   NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 35 | - Kinder Morgan C Corp | | | | | Buy | 06/04/14 | J | | |
| 36 | - Abbvie, Inc | | | | | | | | | |
| 37 | - Nike Inc (bond) | | | | | | | | | |
| 38 | - Ecolab Inc. (bond) | | | | | Buy | 05/14/14 | J | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 39 | - UnitedHealth Group Inc | | | | | | | |
| 40 | - Procter & Gamble Co | | | | | | | |
| 41 | - Costco Wholesale Corp | | | | | | | |
| 42 | - 3M Co | | | | | | | |
| 43 | - Emerson Electric Co | | | | | | | |
| 44 | - United Technologies Corp | | | | | | | |
| 45 | - RPM Corp | | | | | | | |
| 46 | - American Express Co | | | | | | | |
| 47 | - JP Morgan Chase & Co | | | | | | | |
| 48 | - HCP Inc | | | | | | | |
| 49 | - Public Storage Inc | | | | | | | |
| 50 | - IShares MSCI Pacific EX Japan ETF | | | | | | | |
| 51 | - IShares MSCI Emerging Mkts ETF | | | | | | | |

1. Income Gain Codes:
(See Columns B1 and D4)
2. Value Codes
(See Columns C1 and D3)
3. Value Method Codes
(See Column C2)

A =$1,000 or less
B =$1,001 - $2,500
C =$2,501 - $5,000
D =$5,001 - $15,000
E =$15,001 - $50,000
F =$50,001 - $100,000
G =$100,001 - $1,000,000
H1 =$1,000,001 - $5,000,000
H2 =More than $5,000,000
J =$15,000 or less
K =$15,001 - $50,000
L =$50,001 - $100,000
M =$100,001 - $250,000
N =$250,001 - $500,000
O =$500,001 - $1,000,000
P1 =$1,000,001 - $5,000,000
P2 =$5,000,001 - $25,000,000
P3 =$25,000,001 - $50,000,000
P4 =More than $50,000,000
Q =Appraisal
R =Cost (Real Estate Only)
S =Assessment
T =Cash Market
U =Book Value
V =Other
W =Estimated

---

**FINANCIAL DISCLOSURE REPORT**
Page 7 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐  NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 52 | - Novo Nordisk AS ADR-B | | | | | | | | |
| 53 | Boston Financial Management, Inc. IRA | I | Distribution | P1 | T | | | | See Sect. VIII |

| 54 | - Anheuser-Busch Inbev (bond) | | | | Matured | 07/14/14 | J | | |
| 55 | - SBC Comms Inc (bond) | | | | Matured | 09/15/14 | K | | |
| 56 | - Stryker Corp (bond) | | | | Buy | 03/13/14 | K | | |
| 57 | - Ecolab Inc (bond) | | | | Buy | 03/26/14 | K | | |
| 58 | - Ford Motor Credit Co LLC (bond) | | | | Buy | 03/05/14 | K | | |
| 59 | - Royal Bank of Canada (bond) | | | | Buy | 03/06/14 | K | | |
| 60 | - CVS Caremark Corp (bond) | | | | Buy | 03/10/14 | K | | |
| 61 | - Unilever Capital Corp (bond) | | | | Buy | 04/01/14 | K | | |
| 62 | - Microsoft Corp | | | | Buy (add'l) | 02/13/14 | J | | |
| 63 | - Comcast Corp | | | | Buy | 03/04/14 | J | | |
| 64 | - Ralph Lauren Corp | | | | Buy (add'l) | 05/09/14 | J | | |
| 65 | - American Tower Corp - Cl. A | | | | Buy (add'l) | 06/04/14 | K | | |
| 66 | - IShares TR S&P Midcap 400 | | | | Buy | 06/04/14 | L | | |
| 67 | - IShares TR S&P Small Cap 600 | | | | Buy | 06/04/14 | L | | |
| 68 | - Kinder Morgan C Corp | | | | Buy | 06/04/14 | K | | |

| 1 Income Gain Codes | A: $1,000 or less | B: $1,001 - $2,500 | C: $2,501 - $5,000 | D: $5,001 - $15,000 | E: $15,001 - $50,000 |
| (See Columns B1 and D4) | F: $50,001 - $100,000 | G: $100,001 - $1,000,000 | H1: $1,000,001 - $5,000,000 | H2: More than $5,000,000 | |
| 2. Value Codes | J: $15,000 or less | K: $15,001 - $50,000 | L: $50,001 - $100,000 | M: $100,001 - $250,000 | |
| (See Columns C1 and D3) | N: $250,001 - $500,000 | O: $500,001 - $1,000,000 | P1: $1,000,001 - $5,000,000 | P2: $5,000,001 - $25,000,000 | |
| | P3: $25,000,001 - $50,000,000 | | P4: More than $50,000,000 | | |
| 3. Value Method Codes | Q: Appraisal | R: Cost (Real Estate Only) | S: Assessment | U: Book Value | V: Other |
| (See Column C2) | W: Estimated | | | | |

# FINANCIAL DISCLOSURE REPORT
## Page 8 of 22

| Name of Person Reporting | Date of Report |
| --- | --- |
| Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS – income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A | B | | C | | D | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Description of Assets (including trust assets) | Income during reporting period | | Gross value at end of reporting period | | Transactions during reporting period | | | | |
| | (1) | (2) | (1) | (2) | (1) | (2) | (3) | (4) | (5) |
| Place "(X)" after each asset exempt from prior disclosure | Amount Code 1 (A-H) | Type (e.g. div., rent, or int.) | Value Code 2 (J-P) | Value Method Code 3 (Q-W) | Type (e.g. buy, sell, redemption) | Date mm/dd/yy | Value Code 2 (J-P) | Gain Code 1 (A-H) | Identity of buyer/seller (if private transaction) |
| 69. | - Whole Foods Mkt Inc | | | | | Buy | 08/12/14 | J | | |

| 70. | - Deere & Co | | | | | Buy | 09/12/14 | J | | |
| 71. | - Emerson Elec Co | | | | | Buy (add'l) | 09/12/14 | J | | |
| 72. | - Gulf Power (bond) | | | | | Sold | 01/07/14 | J | | |
| 73. | - Pepsco Inc | | | | | Sold | 02/20/14 | K | E | |
| 74. | - ADT Corp | | | | | Sold | 01/30/14 | I | | |
| 75. | - Devon Energy Corp | | | | | Sold | 01/30/14 | K | | |
| 76. | - Abbott Labs | | | | | Sold | 01/31/14 | K | D | |
| 77. | - Royce FD Penn Mut Inv | | | | | Sold | 01/31/14 | J | C | |
| 78. | - Intel Corp | | | | | Sold | 02/13/14 | J | | |
| 79. | - Verizon Communications | | | | | Sold | 03/04/14 | J | A | |
| 80. | | | | | | Spinoff (from line 81) | 02/24/14 | J | | |
| 81. | - Vodafone Group PLC ADR | | | | | Sold | 03/20/14 | J | | |
| 82. | - HSBC Holdings PLC ADR | | | | | Sold | 03/24/14 | L | | |
| 83. | - Exxon Mobil Corp | | | | | Sold | 06/04/14 | K | D | |
| 84. | - IShares Russell 2000 EFT | | | | | Sold | 06/04/14 | M | E | |
| 85. | - Nextera Energy Inc | | | | | Sold (part) | 06/04/14 | K | D | |

| 1 Income Gain Codes:<br>   (See Columns B1 and D4)<br>2 Value Codes<br>   (See Columns C1 and D3)<br><br>3 Value Method Codes<br>   (See Column C2) | A =$1,000 or less<br>F =$50,001 - $100,000<br>J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000<br>Q =Appraisal<br>U =Book Value | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000<br>K =$15,001 - $50,000<br>O =$500,001 - $1,000,000<br><br>R =Cost (Real Estate Only)<br>V =Other | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000<br>L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000<br>S =Assessment<br>W =Estimated | D =$5,001 - $15,000<br>H2 =More than $5,000,000<br>M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000<br><br>T =Cash Market | E =$15,001 - $50,000 |

| **FINANCIAL DISCLOSURE REPORT**<br>Page 9 of 22 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>07/30/2015 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 86  - McDonalds Corp | | | | | Sold | 08/12/14 | J | | |
| 87  - United Parcel SVC Inc CL B | | | | | Sold | 04/12/14 | K | D | |
| 88  - Novo-Nordisk AS ADR-B | | | | | Sold | 12/16/14 | J | C | |
| 89  - American Express CR MTN (bond) | | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 90. - DirectTV Holdings (bond) | | | | | | | | |
| 91. - Suntrust Bks Inc (bond) | | | | | | | | |
| 92. - Capital One FINL Co (bond) | | | | | | | | |
| 93. - Southern Co (bond) | | | | | | | | |
| 94. - Lockheed Martin Corp (bond) | | | | | | | | |
| 95. - Beam Inc. (bond) | | | | | | | | |
| 96. - Pitney Bowes Inc (bond) | | | | | | | | |
| 97. - Oneok Partners LP (bond) | | | | | | | | |
| 98. - HSBC Holdings (preferred) | | | | | | | | |
| 99. - Nextera Energy (preferred) | | | | | | | | |
| 100. - Public Storage Q (preferred) | | | | | | | | |
| 101. - Nike Inc CL B | | | | | | | | |
| 102. - Diageo PLC ADR | | | | | | | | |

1. Income Gain Codes        A -$1,000 or less        B -$1,001 - $2,500        C -$2,501 - $5,000        D -$5,001 - $15,000        E -$15,001 - $50,000
   (See Columns B1 and D4)  F -$50,001 - $100,000    G -$100,001 - $1,000,000  H1 -$1,000,001 - $5,000,000  H2 -More than $5,000,000
2. Value Codes              J -$15,000 or less       K -$15,001 - $50,000      L -$50,001 - $100,000       M -$100,001 - $250,000
   (See Columns C1 and D3)  N -$250,001 - $500,000   O -$500,001 - $1,000,000  P1 -$1,000,001 - $5,000,000  P2 -$5,000,001 - $25,000,000
                            P3 -$25,000,001 - $50,000,000                      P4 -More than $50,000,000
3. Value Method Codes       Q -Appraisal             R -Cost (Real Estate Only)  S -Assessment              T -Cash Market
   (See Column C2)          U -Book Value            V -Other                  W -Estimated

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 10 of 22 | Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS — income, value, transaction (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐  NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 103. - Procter & Gamble Company | | | | | | | | | |
| 104. - Anadarko Pete Corp | | | | | | | | | |
| 105. - Chevron Corp | | | | | | | | | |
| 106. - American Express Co | | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 107   - Chubb Corp | | | | | | | | |
| 108   - JP Morgan Chase & Co | | | | | | | | |
| 109   - Abbvie Inc | | | | | | | | |
| 110   - Johnson & Johnson | | | | | | | | |
| 111   - Novo-Nordisk AS ADR-B | | | | | | | | |
| 112   - United Health Group Inc | | | | | | | | |
| 113   - 3M Co | | | | | | · | | |
| 114   - United Technologies Corp | | | | | | | | |
| 115   - Cognizant Technology Solutions Corp | | | | | | | | |
| 116   - Oracle Corp | | | | | | | | |
| 117   - Air Prods & Chems Inc | | | | | | | | |
| 118   - RPM International Inc Com | | | | | | | | |
| 119   - American Tower Corp Cl A | | | | | | | | |

1 - Income Loss Codes
(See Columns H1 and H4)
2 - Value Codes
(See Columns C1 and D3)
3 - Value Method Codes
(See Column C2)

A - $1,000 or less
F - $50,000 - $100,000
J - $25,000 or less
N - $250,001 - $500,000
P3 - $25,000,001 - $50,000,000
Q - Appraisal
U - Book Value

D - $1,001 - $2,500
G - $100,001 - $1,000,000
K - $15,001 - $50,000
O - $500,001 - $1,000,000

R - Cost (Real Estate Only)
S - Other

C - $2,501 - $5,000
H1 - $1,000,001 - $5,000,000
L - $50,001 - $200,000
P1 - $1,000,001 - $5,000,000
P4 - More than $50,000,000
V - Assessment
W - Estimated

D1 - $5,001 - $15,000
M - $100,001 - $250,000
P2 - $5,000,001 - $25,000,000

E - $15,001 - $50,000

T - Cash Market

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 11 of 22 | Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 120  - Avalon Bay Cmntys Inc | | | | | | | | | |
| 121  - HCP Inc | | | | | | | | | |
| 122  - Enbridge C Corp | | | | | | | | | |
| 123  - IShares MSCI Emerging Markets ETF | | | | | | | | | |
| 124  - IShares MSCI Pacific EX Japan ETF | | | | | | | | | |
| 125  - Matthews Asia Small Cos | | | | | | | | | |
| 126  - Bowies Financial Management, Inc. Revocable Trust | D | Int./Div | N | T | | | | | See Sect. VIII |
| 127  - CVS Caremark Corp (bond) | | | | | Buy | 03/10/14 | K | | |
| 128  - Deere & Company (bond) | | | | | Buy | 12/11/14 | K | | |
| 129  - Comcast Corp | | | | | Buy | 02/20/14 | J | | |
| 130  - DX Companies Inc | | | | | Buy | 02/20/14 | J | | |
| 131  - Costco Whsl Corp | | | | | Buy (add'l) | 06/04/14 | J | | |
| 132  - Unilever Plc ADR | | | | | Buy | 04/17/14 | J | | |
| 133  - Chubb Corp | | | | | Buy (add'l) | 02/20/14 | J | | |
| 134  - Danaher Corp | | | | | Buy | 02/20/14 | J | | |
| 135  - Deere & Co | | | | | Buy | 03/03/14 | J | | |
| 136  - Emerson Electric Co | | | | | Buy (add'l) | 09/12/14 | J | | |

1. Income Gain Codes        A = $1,000 or less          B = $1,001 - $2,500          C = $2,501 - $5,000          D = $5,001 - $15,000          E = $15,001 - $50,000
   (See Columns B1 and D4)    F = $50,001 - $100,000     G = $100,001 - $1,000,000    H1 = $1,000,001 - $5,000,000   H2 = More than $5,000,000
2. Value Codes              J = $15,000 or less        K = $15,001 - $50,000        L = $50,001 - $100,000        M = $100,001 - $250,000
   (See Columns C1 and D3)    N = $250,001 - $500,000    O = $500,001 - $1,000,000    P1 = $1,000,001 - $5,000,000   P2 = $5,000,001 - $25,000,000
                             P3 = $25,000,001 - $50,000,000   P4 = More than $50,000,000
3. Value Method Codes       Q = Appraisal              R = Cost (Real Estate Only)  S = Assessment                T = Cash Market
   (See Column C2)           U = Book Value             V = Other                    W = Estimated

| FINANCIAL DISCLOSURE REPORT<br>Page 12 of 22 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>07/30/2015 |
| --- | --- | --- |

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐  **NONE** *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 137.   - Cognizant Technology Solutions Corp | | | | | Buy<br>(add'l) | 02/20/14 | J | | |
| 138.   - Health Care Reit Inc | | | | | Buy<br>(add'l) | 02/20/14 | J | | |
| 139   - Kinder Morgan C C orp | | | | | Buy<br>(add'l) | 06/04/14 | J | | |
| 140   - Oneok C Corp | | | | | Buy | 02/20/14 | J | | |
| 141   - IShares TR S&P Midcap 400 | | | | | Buy | 06/04/14 | J | | |
| 142.   - IShares TR S&P Small Cap 600 | | | | | Buy | 06/04/14 | J | | |

| | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 143.   - IShares MSCI Emerging Markets ETF | | | | | Buy<br>(add'l) | 02/20/14 | J | | |
| 144   - United Health Group Inc | | | | | Buy | 02/20/14 | J | | |
| 145.   - Citrix Sys Inc | | | | | Sold | 01/09/14 | J | | |
| 146   - Devon Energy Corp | | | | | Sold | 01/30/14 | J | A | |
| 147   - Abbott Labs | | | | | Sold | 01/31/14 | J | | |
| 148   - Intel Corp | | | | | Sold | 03/03/14 | J | A | |
| 149.   - HSBC Hldgs PLC ADR | | | | | Sold | 03/24/14 | J | | |
| 150   - Google Inc CL A | | | | | Sold | 04/17/14 | J | B | |
| 151.   - Google Inc CL C | | | | | Sold | 04/17/14 | J | B | |
| 152   - Procter & Gamble Company | | | | | Sold | 04/17/14 | J | B | |
| 153   - Colgate Palmolive Co | | | | | Sold | 06/04/14 | J | A | |

1. Income Gain Codes:     A =$1,000 or less     B =$1,001 - $2,500     C =$2,501 - $5,000     D =$5,001 - $15,000     E =$15,201 - $50,000
(See Columns B1 and D4)   F =$50,001 - $100,000   G =$100,001 - $1,000,000   H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2. Value Codes     J =$15,000 or less   K =$15,001 - $50,000   L =$50,001 - $100,000   M =$100,001 - $250,000
(See Columns C1 and D3)   N =$250,001 - $500,000   O =$500,001 - $1,000,000   P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
                          P3 =$25,000,001 - $50,000,000                          P4 =More than $50,000,000
3. Value Method Codes     Q =Appraisal     U =Cost (Real Estate Only)     S =Assessment     T =Cash Market
(See Column C2)           R =Cost (Real Estate Only)   V =Other     W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 13 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A | B | | C | | D | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Description of Assets (including trust assets) | Income during reporting period | | Gross value at end of reporting period | | Transactions during reporting period | | | | |
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g. div, rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 154 - Exxon Mobil Corporation | | | | | Sold | 06/04/14 | J | B | |
| 155 - iShares Russell 2000 ETF | | | | | Sold | 06/04/14 | J | A | |
| 156 - Wells Fargo & Co Com | | | | | Sold | 09/09/14 | J | A | |
| 157 - United Parcel SVC Inc CL B | | | | | Sold | 09/12/14 | J | B | |
| 158 - CDK Global Inc | | | | | Sold | 10/07/14 | J | A | |
| 159. | | | | | Spinoff (from line 182) | 10/01/14 | J | | |
| 160 - Kellogg Co (bond) | | | | | | | | | |
| 161 - Westwood MA - GO (bond) | | | | | | | | | |
| 162 - Public Storage Q (preferred) | | | | | | | | | |
| 163 - Amazon Com Inc | | | | | | | | | |
| 164 - Nike Inc CL B | | | | | | | | | |
| 165 - Anheuser Busch Inbev SA/NV-SP ADR | | | | | | | | | |
| 166 - Diageo Plc ADR | | | | | | | | | |
| 167 - McCormick & Co Inc | | | | | | | | | |
| 168 - Anadarko Pete Corp | | | | | | | | | |
| 169 - Chevron Corp | | | | | | | | | |
| 170 - Schlumberger | | | | | | | | | |

1. Income Gain Codes: A = $1,000 or less; B = $1,001 - $2,500; C = $2,501 - $5,000; D = $5,001 - $15,000; E = $15,001 - $50,000
(See Columns B1 and D4)
F = $50,001 - $100,000; G = $100,001 - $1,000,000; H1 = $1,000,001 - $5,000,000; H2 = More than $5,000,000
2. Value Codes: J = $15,000 or less; K = $15,001 - $50,000; L = $50,001 - $100,000; M = $100,001 - $250,000
(See Columns C1 and D3)
N = $250,001 - $500,000; O = $500,001 - $1,000,000; P1 = $1,000,001 - $5,000,000; P2 = $5,000,001 - $25,000,000
P3 = $25,000,001 - $50,000,000; P4 = More than $50,000,000
3. Value Method Codes: Q = Appraisal; R = Cost (Real Estate Only); S = Assessment; T = Cash Market
(See Column C2) U = Book Value; V = Other; W = Estimated

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 14 of 22 | Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS – income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date (mm/dd/yy) | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 171 - American Express Co | | | | | | | | | |
| 172 - JP Morgan Chase & Co | | | | | | | | | |
| 173 - Abbvie Inc | | | | | | | | | |
| 174 - Bristol Meyers Squibb Co | | | | | | | | | |
| 175 - Johnson & Johnson | | | | | | | | | |
| 176 - United Health Group Inc | | | | | | | | | |
| 177 - 3M Co | | | | | | | | | |
| 178 - Caterpillar Inc Com | | | | | | | | | |
| 179 - Union Pac Corp | | | | | | | | | |
| 180 - United Technologies Corp | | | | | | | | | |
| 181 - Apple Computer Inc | | | | | | | | | |
| 182 - Automatic Data Processing | | | | | | | | | |
| 183 - Check Point Software Tech Ltd | | | | | | | | | |
| 184 - Microsoft Corp | | | | | | | | | |
| 185 - Air Prods & Chems Inc | | | | | | | | | |
| 186 - Praxair Inc | | | | | | | | | |
| 187 - RPM International Inc Com | | | | | | | | | |

1. Income Gain Codes: (See Columns B1 and D4) A =$1,000 or less; B =$1,001 - $2,500; C =$2,501 - $5,000; D =$5,001 - $15,000; E =$15,001 - $50,000; F =$50,001 - $100,000; G =$100,001 - $1,000,000; H1 =$1,000,001 - $5,000,000; H2 =More than $5,000,000
2. Value Codes (See Columns C1 and D3) J =$15,000 or less; K =$15,001 - $50,000; L =$50,001 - $100,000; M =$100,001 - $250,000; N =$250,001 - $500,000; O =$500,001 - $1,000,000; P1 =$1,000,001 - $5,000,000; P2 =$5,000,001 - $25,000,000; P3 =$25,000,001 - $50,000,000; P4 =More than $50,000,000
3. Value Method Codes (See Column C2) Q =Appraisal; R =Cost (Real Estate Only); S =Assessment; T =Cash Market; U =Book Value; V =Other; W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 15 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | B. (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | C. (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | D. (2) Date mm/dd/yy | D. (3) Value Code 2 (J-P) | D. (4) Gain Code 1 (A-H) | D. (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 188. - Avalonbay Cmntys Inc | | | | | | | | | |
| 189. - HCP Inc | | | | | | | | | |
| 190. - Public Storage Inc | | | | | | | | | |
| 191. - Enbridge Corp | | | | | | | | | |
| 192. - IShares MSCI Pacific EX Japan ETF | | | | | | | | | |
| 193. Boston Financial Management Inc Revocable Trust | D | Int./Div. | N | T | | | | | See Section VIII |
| 194. - Burlington North (Bond) | | | | | Sold | 06/04/14 | K | A | |
| 195. - Phillips 66 (Bond) | | | | | Buy | 06/11/14 | K | | |
| 196. - Pepsico Inc | | | | | Sold | 02/20/14 | J | A | |
| 197. - Abbott Laboratories | | | | | Sold | 01/31/14 | J | A | |
| 198. - Bristol Myers Squibb Co | | | | | Buy (add'l) | 06/06/14 | J | | |
| 199. - Johnson & Johnson | | | | | Buy (add'l) | 04/23/14 | J | | |
| 200. - | | | | | Sold (part) | 06/18/14 | J | A | |
| 201. - Procter & Gamble Co | | | | | Sold | 06/06/14 | J | A | |
| 202. - Costco Wholesale Corp | | | | | Buy (add'l) | 06/04/14 | J | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 203. - Ralph Lauren Corp | | | | | Buy (add'l) | 04/23/14 | J | | |
| 204. - Amazon.com Inc | | | | | Buy (add'l) | 04/23/14 | J | | |

1. Income Gain Codes: (See Columns B1 and D4) A =$1,000 or less; B =$1,001 - $2,500; C =$2,501 - $5,000; D =$5,001 - $15,000; E =$15,001 - $50,000; F =$50,001 - $100,000; G =$100,001 - $1,000,000; H1 =$1,000,001 - $5,000,000; H2 =More than $5,000,000
2. Value Codes (See Columns C1 and D3): J =$15,000 or less; K =$15,001 - $50,000; L =$50,001 - $100,000; M =$100,001 - $250,000; N =$250,001 - $500,000; O =$500,001 - $1,000,000; P1 =$1,000,001 - $5,000,000; P2 =$5,000,001 - $25,000,000; P3 =$25,000,001 - $50,000,000; P4 =More than $50,000,000
3. Value Method Codes (See Column C2): Q =Appraisal; R =Cost (Real Estate Only); S =Assessment; T =Cash Market; U =Book Value; V =Other; W =Estimated

| **FINANCIAL DISCLOSURE REPORT** Page 16 of 22 | Name of Person Reporting: Gorton, Nathaniel M. | Date of Report: 07/30/2015 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 205. - | | | | | Sold (part) | 06/18/14 | J | A | |
| 206. - Automatic Data Processing Inc | | | | | Buy (add'l) | 06/06/14 | J | | |
| 207. - Emerson Electric Co | | | | | Buy (add'l) | 09/12/14 | J | | |
| 208. - Caterpillar Inc | | | | | Buy (add'l) | 06/06/14 | J | | |
| 209. - | | | | | Sold (part) | 06/26/14 | J | A | |
| 210. - United Technologies Corp | | | | | Sold (part) | 06/18/14 | J | A | |
| 211. - Apple Inc | | | | | Sold (part) | 06/18/14 | J | A | |
| 212. - Intel Corp | | | | | Sold | 03/03/14 | J | A | |
| 213. - Devon Energy Corp | | | | | Sold | 01/30/14 | J | A | |
| 214. - Exxon Mobil Corp | | | | | Sold | 06/04/14 | J | B | |
| 215. - Kinder Morgan Inc | | | | | Buy (add'l) | 06/04/14 | J | | |
| 216. - Chubb Corp | | | | | Buy (add'l) | 04/23/14 | J | | |
| 217. - United Parcel Service Inc B | | | | | Buy (add'l) | 06/06/14 | J | | |
| 218. - American Express Co | | | | | Buy (add'l) | 06/06/14 | J | | |
| 219. - American Tower Corp | | | | | Buy (add'l) | 06/04/14 | J | | |
| 220. - HCP Inc | | | | | Sold | 06/18/14 | J | | |
| 221. - Nextera Energy Inc | | | | | Sold | 06/04/14 | J | A | |

| 1. Income Gain Codes | A. $1,000 or less | B. $2,501 - $2,500 | C. $2,501 - $5,000 | D. $5,001 - $15,000 | E. $15,001 - $50,000) |
| (See Columns B1 and D4) | F. $50,001 - $100,000 | G. $100,001 - $1,000,000 | H1. $1,000,001 - $5,000,000 | H2. More than $5,000,000 | |
| 2. Value Codes | J. $15,000 or less | K. $15,001 - $50,000 | L. $50,001 - $100,000 | M. $100,001 - $250,000 | |
| (See Columns C1 and D3) | N. $250,001 - $500,000 | O. $500,001 - $1,000,000 | P1. $1,000,001 - $5,000,000 | P2. $5,000,001 - $25,000,000 | |
| | P3. $25,000,001 - $50,000,000 | | P4. More than $50,000,000 | | |
| 3. Value Method Codes | Q. Appraisal | P. Cost (Real Estate Only) | S. Assessment | T. Cash Market | |
| (See Column C2) | U. Book Value | V. Other | W. Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 17 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS – income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐  NONE ( No reportable income, assets, or transactions. )

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 222   - Anheuser Busch Inbev SA/NV-SP ADR | | | | | Buy (add'l) | 04/23/14 | J | | |
| 223   - Diageo PLC ADR | | | | | Buy (add'l) | 04/23/14 | J | | |
| 224   - | | | | | Buy (add'l) | 06/06/14 | J | | |
| 225   - Enbridge C Corp | | | | | Buy (add'l) | 06/06/14 | J | | |
| 226   - HSBC Holdings PLC ADR | | | | | Sold | 03/24/14 | J | | |
| 227   - Vodafone Group PLC ADR | | | | | Sold | 03/28/14 | J | A | |
| 228   - Wells Fargo & Co | | | | | Buy | 06/06/14 | J | | |
| 229   - | | | | | Sold | 09/09/14 | J | A | |
| 230   - Comcast Corp | | | | | Buy | 03/04/14 | J | | |
| 231   - TJX Companies | | | | | Buy | 07/01/14 | J | | |
| 232   - McCormick & Co Inc | | | | | Buy | 04/23/14 | J | | |
| 233   - Unilever PLC ADR | | | | | Buy | 06/06/14 | J | | |
| 234   - Whole Foods Mkt Inc | | | | | Buy | 08/12/14 | J | | |
| 235   - Deere & Co | | | | | Buy | 03/03/14 | J | | |
| 236   - | | | | | Buy (add'l) | 09/12/14 | J | | |
| 237   - Check Point Software Tech Ltd | | | | | Buy | 04/23/14 | J | | |
| 238   - Oracle Corp | | | | | Sold (part) | 06/18/14 | J | A | |

1. Income Gain Codes
(See Columns B1 and D4)
2. Value Codes
(See Columns C1 and D3)
3. Value Method Codes
(See Column C2)

A =$1,000 or less
B =$1,001 - $2,500
F =$50,001 - $100,000
G =$100,001 - $1,000,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

H =$1,001 - $2,500
I =$50,001 - $100,000
K =$15,001 - $50,000
N =$250,001 - $500,000
R =Cost (Real Estate Only)
V =Other

G =$2,501 - $5,000
H2 =$5,000,001 - $25,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$15,001 - $50,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$25,000,001 - $50,000,000
T =Cash Market

E =$15,001 - $50,000

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
| Page 18 of 22 | Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS – income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 239.  - Praxair Inc | | | | | Buy | 06/06/14 | J | | |
| 240.  - Sigma Aldrich Corp | | | | | Buy | 04/23/14 | J | | |
| 241.  - McDonalds Corp | | | | | Buy | 04/23/14 | J | | |
| 242.  - | | | | | Sold | 08/12/14 | J | | |
| 243.  - IShares MSCI Emerging | | | | | Buy | 06/06/14 | J | | |
| 244.  - IShares MSCI Pacific EX Japan ETF | | | | | Buy | 06/06/14 | J | | |
| 245.  - One Gas Inc | | | | | Sold | 02/07/14 | J | A | |
| 246. | | | | | Spinoff<br>(from line 264) | 02/03/14 | J | | |
| 247.  - Verizon Communications | | | | | Sold | 03/04/14 | J | A | |
| 248. | | | | | Spinoff<br>(from line 227) | 02/24/14 | J | | |
| 249.  - Colgate Palmolive Co (X) | | | | | Sold | 06/04/14 | J | A | See Section VIII |
| 250.  - Ralph Lauren Corp | | | | | Sold | 06/18/14 | J | | |
| 251.  - Ross Stores, Inc (X) | | | | | Sold | 07/01/14 | J | | See Section VIII |
| 252.  - United Parcel SVC Inc CL B | | | | | Sold | 09/12/14 | J | A | |
| 253.  - CDK Global Inc | | | | | Sold | 10/07/14 | J | | |
| 254.  - Genzyme Corp (Bond) | | | | | | | | | |
| 255.  - Kellogg Co (Bond) | | | | | | | | | |

1. Income Gain Codes
   (See Columns B1 and D4)
   A = $1,000 or less
   B = $50,001 - $100,000
2. Value Codes
   (See Columns C1 and D3)
   F = $15,000 or less
   N = $250,001 - $500,000
3. Value Method Codes
   (See Column C2)
   Q = Appraisal
   U = Book Value

   C = $1,001 - $2,500
   D = $50,001 - $100,000
   K = $15,001 - $50,000
   O = $500,001 - $1,000,000
   P1 = $25,000,001 - $50,000,000
   R = Cost (Real Estate Only)
   W = Cash

   C = $2,501 - $5,000
   H1 = $1,000,001 - $5,000,000
   L = $50,001 - $100,000
   P1 = $1,000,001 - $5,000,000
   P4 = More than $50,000,000
   S = Assessment
   W = Estimated

   D = $5,001 - $15,000
   H2 = More than $5,000,000
   M = $100,001 - $250,000
   P2 = $5,000,001 - $25,000,000
   T = Cash Market

   E = $15,001 - $50,000

---

## FINANCIAL DISCLOSURE REPORT
## Page 19 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (3) Value Code 2 (J-P) | (4) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 256   - Bank of Nova Scotia (bond) | | | | | | | | | |
| 257   - Nike Inc - B | | | | | | | | | |
| 258   - Abbvie Inc | | | | | | | | | |
| 259   - United Health Group Inc | | | | | | | | | |
| 260   - Cognizant Technology Solutions Corp | | | | | | | | | |
| 261   - Microsoft Corp | | | | | | | | | |
| 262   - 3M Co | | | | | | | | | |
| 263   - Chevron Corp | | | | | | | | | |
| 264   - Oneok C Corp (reported on '13 FDR as "Oneok New ") | | | | | | | | | |
| 265   - Union Pacific Corp | | | | | | | | | |
| 266   - Health Care REIT Inc | | | | | | | | | |
| 267   - JP Morgan Chase & Co | | | | | | | | | |
| 268   - Avalonbay Communities Inc | | | | | | | | | |
| 269   - Public Storage Inc | | | | | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 270 – Schlumberger Ltd | | | | | | | | | |
| 271 – Gilead Sciences (X) | | | | | Buy | 01/01/14 | J | | See Section VIII |
| 272 – Novo-Nordisk AS ADR-B (X) | | | | | Buy | 01/01/14 | J | | See Section VIII |

1 Income Gain Codes ... (illegible code legend)
2 Value Codes ...
3 Value Method Codes ...

---

**FINANCIAL DISCLOSURE REPORT**
Page 20 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | C Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D Transactions during reporting period (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 273 – Air Prods & Chems Inc | | | | | | | | | |
| 274 – RPM International Inc Com | | | | | | | | | |
| 275 – iShares TR S&P Midcap 400 | | | | | | | | | |
| 276 – iShares TR S&P Small Cap 600 | | | | | | | | | |
| 277 – Bank of America | A | Int./Div | J | T | | | | | |

1 Income Gain Codes ...
2 Value Codes ...
3 Value Method Codes ...

# FINANCIAL DISCLOSURE REPORT
## Page 21 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

Part I, Lines 2 - 4 NOTE:  Some of the beneficiaries of the trusts and accounts listed in Part I of which the reporting party is a trustee is a dependent of the reporting party and neither the reporting party nor ▓▓▓▓▓ has any beneficial interest in or control over the disposition of assets of such trusts and accounts.

Part VII, Line 1 - Income of the reporting party reported in Section VII (of which there was none this year) is attributable to his pro rata share of the income of  SG Seafood Holdings, Inc. ("Holdings") which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual  stockholders whether or not such income is, in fact, distributed.  The value of the stock holdings is appraised biennially by a certified financial planner, last done  in 2012

Part VII, Line 3 - In 1997 the reporting party and ▓▓▓▓▓ funded a charitble remainder trust of which they are the income beneficiaries for life but in which they  retain no right to principal

Part VII, Lines 3, 53, 126 and 193 - The assets listed on these lines (and on the dashed ("-") lines that follow) are managed by Boston Financial Management, Inc.,  Boston MA and consist of stocks and bonds in publicly held companies and equity holdings based on certain indices

Part VII, Line 53 - The reporting party is now required to withdraw a certain minimum amount from his IRA account each year

Part VII, Lines 249, 251, 271 and 272 - These stocks were purchased on 12/27/2013 but not registered until the following year and not reported on the Calendar  Year 2013 Financial Disclosure  They all had value codes of "J"

# FINANCIAL DISCLOSURE REPORT
## Page 22 of 22

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 07/30/2015 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: **s/ Nathaniel M. Gorton**

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C  20544

| AO 10 Rev. 1/2015 | **FINANCIAL DISCLOSURE REPORT FOR CALENDAR YEAR 2015** | *Report Required by the Ethics in Government Act o 1978 (5 U.S.C. app. §§ 101-111)* |
|---|---|---|

| 1. Person Reporting (last name, first, middle initial) Gorton, Nathaniel M | 2. Court or Organization District Court - Massachusetts | 3. Date of Report 08/19/2016 |
|---|---|---|
| 4. Title (Article III judges indicate active or senior status; magistrate judges indicate full- or part-time) U.S. District Court - Active | 5a. Report Type (check appropriate type) ☐ Nomination  Date ☐ Initial  ☑ Annual  ☐ Final 5b. ☑ Amended Report | 6. Reporting Period 01/01/2015 to 12/31/2015 |

7. Chambers or Office Address

United States District Court
1 Courthouse Way, Suite 3110
Boston, MA 02210

*IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part where you have no reportable information.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| | POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|---|
| 1. | Stockholder, Clerk/Secretary and Director | SG Seafood Holdings, Inc., Boston, MA (closely held family seafood business) a MA corporation |
| 2. | Power of Attorney/Trustee (See NOTE in Part VIII) | Fidelity money market accounts (for all stockholders of SG Seafood Holdings Inc.) all of whom are relatives of the reporting party |
| 3. | Trustee (See NOTE in Part VIII) | Irrevocable Trust (created in connection with the estate plan of reporting party's sister) |
| 4. | Trustee (See NOTE in Part VIII) | 1989 Irrevocable Trust and Irrevocable Sub S Trust (both created in connection with the estate plan of reporting party's brother) |
| 5. | | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑ NONE *(No reportable agreements.)*

| | DATE | PARTIES AND TERMS |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 2 of 18 | Gorton, Nathaniel M. | 08/19/2016 |

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐ NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|---|
| 1. | 08/04/2015 | SG Seafood Holdings, Inc. (Closely held family seafood business) corporate clerk/secretary, director, custodian, trustee and accounting duties | $10,000.00 |
| 2. | | | |
| 3. | | | |
| 4. | | | |

### B. Spouse's Non-Investment Income - *If you were married during any portion of the reporting year, complete this section.* *(Dollar amount not required except for honoraria.)*

☑ NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

## IV. REIMBURSEMENTS *-- transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐ NONE *(No reportable reimbursements.)*

| | SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|---|
| 1. | New York Intellectual Property Lawyers Association | 03/27/2015 | New York City | Attend annual NYIPLA dinner at Waldorf Astoria | reimbursement for lodging and travel by train w/spouse from Boston to NYC |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 3 of 18 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>08/19/2016 |
|---|---|---|

## V. GIFTS. (Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)

[✔] **NONE** (No reportable gifts.)

| SOURCE | DESCRIPTION | VALUE |
|---|---|---|
| 1 | | |
| 2 | | |
| 3. | | |
| 4 | | |
| 5 | | |

## VI. LIABILITIES. (Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)

[✔] **NONE** (No reportable liabilities.)

| CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|
| 1 | | |
| 2. | | |
| 3. | | |
| 4 | | |
| 5 | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 4 of 18 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>08/19/2016 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

[ ] NONE (No reportable income, assets, or transactions.)

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>(mm/dd/yy) | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |

| 1. | SG Seafood Holdings, Inc. (a MA corporation)(common stock) | E | Dividend | P1 | Q | | | | | See Section VIII |
| 2. | Fidelity Cash Reserves (individual) | A | Int./Div. | K | T | | | | | |
| 3. | Charitable Remainder Trust | E | Int./Div. | | | | | | | See Section VIII |
| 4. | - Abbvie Inc (bond) | | | | | | | | | |
| 5. | - Johnson & Johnson | | | | | | | | | |
| 6. | - Jack Henry & Associates | | | | | | Buy | 09/09/15 | J | |
| 7. | - CVS Health Corp (formerly CVS Caremark Corp) | | | | | | | | | |
| 8. | - CVS/Health Corp (bond) (formerly CVS Caremark Corp) | | | | | | | | | |
| 9. | - Automatic Data Processing Inc | | | | | | | | | |
| 10. | - TJX Companies Inc | | | | | | | | | |
| 11. | - Ecolab Inc (bond) | | | | | | | | | |
| 12. | - Ryder Systems Inc (bond) | | | | | | | | | |
| 13. | - Medtronic Inc (bond) | | | | | | | | | |
| 14. | - Comcast Corp | | | | | | | | | |
| 15. | - Whole Foods Mkt Inc | | | | | | Sold | 07/30/15 | J | |
| 16. | - Microsoft Corp | | | | | | | | | |
| 17. | - Kinder Morgan C Corp | | | | | | Sold | 09/09/15 | J | |

1. Income Gain Codes
(See Columns B1 and D4)
2. Value Codes
(See Columns C1 and D3)
3. Value Method Codes
(See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P1 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

D =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000
R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000
T =Cash Market

E =$15,001 - $50,000

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
| Page 5 of 18 | Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐  NONE (No reportable income, assets, or transactions.)

| A. | B. | | C. | | D. | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Description of Assets (including trust assets) | Income during reporting period | | Gross value at end of reporting period | | Transactions during reporting period | | | | |
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |

| 18. | - Abbvie, Inc. | | | | | | | | |
| 19. | - Nike Inc | | | | | | | | |
| 20. | - UnitedHealth Group Inc | | | | | | | | |
| 21. | - Procter & Gamble Co | | | | | | | | |
| 22. | - Costco Wholesale Corp | | | | | | | | |
| 23. | - 3M Co | | | | | | | | |
| 24. | - Emerson Electric Co | | | | | | | | |
| 25. | - United Technologies Corp | | | | | | | | |
| 26. | - RPM Corp | | | | | | | | |
| 27. | - American Express Co | | | | | | | | |
| 28. | - JP Morgan Chase & Co | | | | | | | | |
| 29. | - HCP Inc | | | | Sold | 01/07/15 | J | B | |
| 30. | - Public Storage Inc | | | | | | | | |
| 31. | - IShares MSCI Pacific EX Japan ETF | | | | Sold | 09/10/15 | J | | |
| 32. | - IShares MSCI Emerging Mkts ETF | | | | Sold | 09/10/15 | J | | |
| 33. | - Novo Nordisk AS ADR-B | | | | | | | | |
| 34. | Boston Financial Management, Inc. IRA | F | Distribution | P1 | T | | | | See Sect. VIII |

| 1 Income Gain Codes | A -$1,000 or less | B -$1,001 - $2,500 | C -$2,501 - $5,000 | D -$5,001 - $15,000 | E -$15,001 - $50,000 |
| (See Columns B1 and D4) | F -$50,001 - $100,000 | G -$100,001 - $1,000,000 | H1 -$1,000,001 - $5,000,000 | H2 -More than $5,000,000 | |
| 2 Value Codes | J -$15,000 or less | K -$15,001 - $50,000 | L -$50,001 - $100,000 | M -$100,001 - $250,000 | |
| (See Columns C1 and D3) | N -$250,001 - $500,000 | O -$500,001 - $1,000,000 | P1 -$1,000,001 - $5,000,000 | P2 -$5,000,001 - $25,000,000 | |
| | P3 -$25,000,001 - $50,000,000 | | P4 -More than $50,000,000 | | |
| 3 Value Method Codes | Q -Appraisal | R -Cost (Real Estate Only) | S -Assessment | T -Cash Market | |
| (See Column C2) | U -Book Value | V -Other | W -Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
| Page 6 of 18 | Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐   NONE (No reportable income, assets, or transactions.)

| A. | B. | | C. | | D. | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Description of Assets | Income during | | Gross value at end | | Transactions during reporting period | | | | |
| (including trust assets) | reporting period | | of reporting period | | | | | | |
| | (1) | (2) | (1) | (2) | (1) | (2) | (3) | (4) | (5) |
| Place "(X)" after each asset | Amount | Type (e.g., | Value | Value | Type (e.g., | Date | Value | Gain | Identity of |
| exempt from prior disclosure | Code 1 | div., rent, | Code 2 | Method | buy, sell, | mm/dd/yy | Code 2 | Code 1 | buyer/seller |
| | (A-H) | or int.) | (J-P) | Code 3 | redemption) | | (J-P) | (A-H) | (if private |
| | | | | (Q-W) | | | | | transaction) |

| 35 | - Copart Inc. | | | | | Buy | 07/08/15 | L | | |
| 36 | - Patterson Cos Inc | | | | | Buy | 07/08/15 | K | | |
| 37 | - Jack Henry & Associates, Inc | | | | | Buy | 04/09/15 | K | | |
| 38 | - Check Point Software Tech Ltd | | | | | Buy | 11/05/15 | J | | |
| 39 | - Praxair, Inc (bond) | | | | | Buy | 02/05/15 | K | | |
| 40 | - Stryker Corp (bond) | | | | | | | | | |
| 41 | - Ecolab Inc (bond) | | | | | | | | | |
| 42 | - Ford Motor Credit Co LLC (bond) | | | | | | | | | |
| 43 | - Royal Bank of Canada (bond) | | | | | | | | | |
| 44 | - CVS Health Corp (bond) (formerly CVS Caremark Corp) | | | | | | | | | |
| 45 | - Unilever Capital Corp (bond) | | | | | | | | | |
| 46 | - Microsoft Corp | . | | | | Buy (add'l) | 11/05/15 | J | | |
| 47 | - Comcast Corp | | | | | | | | | |
| 48 | - Ralph Lauren Corp | | | | | Sold | 01/02/15 | K | B | |
| 49 | - American Tower Corp - CL A | | | | | | | | | |
| 50 | - IShares TR S&P Midcap 400 | | | | | | | | | |
| 51 | - IShares TR S&P Small Cap 600 | | | | | | | | | |

| 1 Income Gain Codes: | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | P4 =More than $50,000,000 | | | |
| 3 Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 7 of 18

| Name of Person Reporting | Date of Report |
| --- | --- |
| Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐  NONE *(No reportable income, assets, or transactions.)*

| A. | B. | | C. | | D. | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Description of Assets (including trust assets) | Income during reporting period | | Gross value at end of reporting period | | Transactions during reporting period | | | | |
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 52. | - Kinder Morgan C Corp | | | | | Sold | 04/09/15 | K | |
| 53. | - Whole Foods Mkt Inc | | | | | Sold | 07/30/15 | J | |
| 54. | - Deere & Co | | | | | Sold | 12/04/15 | J | |
| 55. | - Emerson Elec Co | | | | | | | | |
| 56. | - Verizon Communications (bond) | | | | | Buy | 07/15/15 | K | |
| 57. | - American Express CR MTN (bond) | | | | | Matured | 09/15/15 | K | |
| 58. | - DirectTV Holdings (bond) | | | | | Sold | 09/14/15 | K | |
| 59. | - Suntrust Bks Inc (bond) | | | | | | | | |
| 60. | - Capital One FINL Co (bond) | | | | | | | | |
| 61. | - Southern Co (bond) | | | | | | | | |
| 62. | - Lockheed Martin Corp (bond) | | | | | | | | |
| 63. | - Beam Inc. (bond) | | | | | | | | |
| 64. | - Pitney Bowes Inc (bond) | | | | | | | | |
| 65. | - Oneok Partners LP (bond) | | | | | | | | |
| 66. | - HSBC Holdings (preferred) | | | | | Sold | 03/12/15 | J | A |
| 67. | - Nextera Energy (preferred) | | | | | Sold | 03/12/15 | J | |
| 68. | - Public Storage Q (preferred) | | | | | Sold | 10/29/15 | J | A |

1 Income Gain Codes   A -$1,000 or less   B -$1,001 - $2,500   C -$2,501 - $5,000   D -$5,001 - $15,000   E -$15,001 - $50,000
(See Columns B1 and D4)   F -$50,001 - $100,000   G -$100,001 - $1,000,000   H1 -$1,000,001 - $5,000,000   H2 -More than $5,000,000
2 Value Codes   J -$15,000 or less   K -$15,001 - $50,000   L -$50,001 - $100,000   M -$100,001 - $250,000
(See Columns C1 and D3)   N -$250,001 - $500,000   O -$500,001 - $1,000,000   P1 -$1,000,001 - $5,000,000   P2 -$5,000,001 - $25,000,000
  P1 -$25,000,001 - $50,000,000   P4 -More than $50,000,000
3 Value Method Codes   Q -Appraisal   R -Cost (Real Estate Only)   S -Assessment   T -Cash Market
(See Column C2)   U -Book Value   V -Other   W -Estimated

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 8 of 18 | Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

[ ] NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent. or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 69. - Nike Inc CL B | | | | | | | | | |
| 70. - Diageo PLC ADR | | | | | | | | | |
| 71. - Procter & Gamble Company | | | | | | | | | |
| 72. - Anadarko Pete Corp | | | | | | | | | |
| 73. - Chevron Corp | | | | | Buy (add'l) | 07/10/15 | K | | |
| 74. - American Express Co | | | | | | | | | |
| 75. - Chubb Corp | | | | | | | | | |
| 76. - JP Morgan Chase & Co | | | | | | | | | |
| 77. - Abbvie Inc | | | | | | | | | |
| 78. - Johnson & Johnson | | | | | | | | | |
| 79. - Novo-Nordisk AS ADR-B | | | | | Sold (part) | 07/13/15 | K | D | |
| 80. - United Health Group Inc | | | | | | | | | |
| 81. - 3M Co | | | | | | | | | |
| 82. - United Technologies Corp | | | | | | | | | |
| 83. - Cognizant Technology Solutions Corp | | | | | Buy (add'l) | 11/05/15 | J | | |
| 84. - Oracle Corp | | | | | Sold | 11/05/15 | J | B | |
| 85. - Air Prods & Chems Inc | | | | | | | | | |

| 1. Income Gain Codes | A = $1,000 or less | B = $1,001 - $2,500 | C = $2,501 - $5,000 | D = $5,001 - $15,000 | E = $15,001 - $50,000 |
| (See Columns B1 and D4) | F = $50,001 - $100,000 | G = $100,001 - $1,000,000 | H1 = $1,000,001 - $5,000,000 | H2 = More than $5,000,000 | |
| 2. Value Codes | J = $15,000 or less | K = $15,001 - $50,000 | L = $50,001 - $100,000 | M = $100,001 - $250,000 | |
| (See Columns C1 and D3) | N = $250,001 - $500,000 | O = $500,001 - $1,000,000 | P1 = $1,000,001 - $5,000,000 | P2 = $5,000,001 - $25,000,000 | |
| | P3 = $25,000,001 - $50,000,000 | P4 = More than $50,000,000 | | | |
| 3. Value Method Codes | Q = Appraisal | R = Cost (Real Estate Only) | S = Assessment | T = Cash Market | |
| (See Column C2) | U = Book Value | V = Other | W = Estimated | | |

## FINANCIAL DISCLOSURE REPORT
### Page 9 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐  NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 86. - RPM International Inc Com | | | | | | | | | |
| 87. - Avalon Bay Cmntys Inc | | | | | | | | | |
| 88. - HCP Inc | | | | | Sold | 01/07/15 | J | A | |
| 89. - Enbridge C Corp | | | | | Sold | 09/23/15 | J | | |
| 90. - IShares MSCI Emerging Markets ETF | | | | | Sold | 07/08/15 | L | | |
| 91. - IShares MSCI Pacific EX Japan ETF | | | | | Sold | 07/08/15 | K | | |
| 92. - Matthews Asia Small Cos | | | | | | | | | |
| 93. Boston Financial Management, Inc. Revocable Trust | D | Int./Div. | N | T | | | | | See Sect. VIII |
| 94. - CVS Health Corp (bond) (formerly CVS Caremark Corp) | | | | | | | | | |
| 95. - Deere & Company (bond) | | | | | | | | | |
| 96. - Comcast Corp | | | | | Buy (add'l) | 10/22/15 | J | | |
| 97. - TJX Companies Inc | | | | | | | | | |
| 98. - Costco Whsl Corp | | | | | | | | | |
| 99. - Unilever Plc ADR | | | | | Buy (add'l) | 10/22/15 | J | | |
| 100. - Chubb Corp | | | | | | | | | |
| 101. - Danaher Corp | | | | | | | | | |
| 102. - Deere & Co | | | | | Sold | 12/04/15 | J | | |

| 1  Income Gain Codes | A +$1,000 or less | B +$1,001 - $2,500 | C +$2,501 - $5,000 | D +$5,001 - $15,000 | E +$15,001 - $50,000 |
| (See Columns B1 and D4) | F +$50,001 - $100,000 | G +$100,001 - $1,000,000 | H1 +$1,000,001 - $5,000,000 | H2 +More than $5,000,000 | |
| 2  Value Codes | J +$15,000 or less | K +$15,001 - $50,000 | L +$50,001 - $100,000 | M +$100,001 - $250,000 | |
| (See Columns C1 and D3) | N +$250,001 - $500,000 | O +$500,001 - $1,000,000 | P1 +$1,000,001 - $5,000,000 | P2 +$5,000,001 - $25,000,000 | |
| | P3 +$25,000,001 - $50,000,000 | | P4 +More than $50,000,000 | | |
| 3  Value Method Codes | Q +Appraisal | R +Cost (Real Estate Only) | S +Assessment | T +Cash/Market | |
| (See Column C2) | U +Book Value | V +Other | W +Estimated | | |

# FINANCIAL DISCLOSURE REPORT
## Page 10 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A  Description of Assets (including trust assets)  Place "(X)" after each asset exempt from prior disclosure | B  Income during reporting period | | C  Gross value at end of reporting period | | D  Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 103.  - Emerson Electric Co | | | | | | | | | |
| 104.  - Cognizant Technology Solutions Corp | | | | | Buy (add'l) | 11/05/15 | J | | |
| 105.  - Welltower Inc (formerly Health Care Reit Inc) | | | | | | | | | |
| 106.  - Kinder Morgan C Corp | | | | | Sold | 10/16/15 | J | | |
| 107.  - Oneok C Corp | | | | | Buy (add'l) | 06/15/15 | J | | |
| 108. | | | | | Sold | 09/24/15 | J | | |
| 109.  - Ishares TR S&P Midcap 400 | | | | | Buy (add'l) | 03/11/15 | J | | |
| 110.  - Ishares TR S&P Small Cap 600 | | | | | Buy (add'l) | 03/11/15 | J | | |
| 111.  - Ishares MSCI Emerging Markets ETF | | | | | Sold | 07/08/15 | J | | |
| 112.  - United Health Group Inc | | | | | | | | | |
| 113.  - Kellogg Co (bond) | | | | | | | | | |
| 114.  - Westwood MA - GO (bond) | | | | | Matured | 06/01/15 | K | | |
| 115.  - Public Storage Q (preferred) | | | | | Sold | 11/04/15 | J | A | |
| 116.  - Amazon Com Inc | | | | | | | | | |
| 117.  - Nike Inc CL B | | | | | Sold (part) | 10/22/15 | J | C | |
| 118.  - Anheuser Busch Inbev SA-NV-SP ADR | | | | | | | | | |
| 119.  - Diago Plc ADR | | | | | Buy (add'l) | 03/11/15 | J | | |

| 1 Income Gain Codes | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

---

### FINANCIAL DISCLOSURE REPORT
Page 11 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent. or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 120.  - McCormick & Co Inc | | | | | | | | | |
| 121.  - Anadarko Pete Corp | | | | | | | | | |
| 122.  - Chevron Corp | | | | | Buy (add'l) | 07/10/15 | J | | |
| 123. | | | | | Buy (add'l) | 10/22/15 | J | | |
| 124.  - Schlumberger | | | | | | | | | |
| 125.  - American Express Co | | | | | Buy (add'l) | 06/15/15 | J | | |
| 126. | | | | | Sold (part) | 10/27/15 | J | | |
| 127.  - JP Morgan Chase & Co | | | | | | | | | |
| 128.  - Abbvie Inc | | | | | Buy (add'l) | 10/22/15 | J | | |
| 129.  - Bristol Meyers Squibb Co | | | | | | | | | |
| 130.  - Johnson & Johnson | | | | | Buy (add'l) | 03/11/15 | J | | |
| 131. | | | | | Buy (add'l) | 06/15/15 | J | | |
| 132. | | | | | Sold (part) | 10/22/15 | J | A | |
| 133.  - United Health Group Inc | | | | | | | | | |
| 134.  - 3M Co | | | | | | | | | |
| 135.  - Caterpillar Inc Com | | | | | Buy (add'l) | 03/11/15 | J | | |
| 136. | | | | | Sold | 09/24/15 | J | | |

| 1. Income Gain Codes | A = $1,000 or less | B = $1,001 - $2,500 | C = $2,501 - $5,000 | D = $5,001 - $15,000 | E = $15,001 - $50,000 |
| (See Columns B1 and D4) | F = $50,001 - $100,000 | G = $100,001 - $1,000,000 | H1 = $1,000,001 - $5,000,000 | H2 = More than $5,000,000 | |
| 2. Value Codes | J = $15,000 or less | K = $15,001 - $50,000 | L = $50,001 - $100,000 | M = $100,001 - $250,000 | |
| (See Columns C1 and D3) | N = $250,001 - $500,000 | O = $500,001 - $1,000,000 | P1 = $1,000,001 - $5,000,000 | P2 = $5,000,001 - $25,000,000 | |
| | P3 = $25,000,001 - $50,000,000 | | | P4 = More than $50,000,000 | |
| 3. Value Method Codes | Q = Appraisal | R = Cost (Real Estate Only) | S = Assessment | T = Cash Market | |
| (See Column C2) | U = Book Value | V = Other | W = Estimated | | |

## FINANCIAL DISCLOSURE REPORT
Page 12 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A | B | | C | | D | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Description of Assets (including trust assets) | Income during reporting period | | Gross value at end of reporting period | | Transactions during reporting period | | | | |
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 137. - Union Pac Corp | | | | | Sold | 12/04/15 | J | A | |
| 138. - United Technologies Corp | | | | | | | | | |
| 139. - Apple Computer Inc | | | | | | | | | |
| 140. - Automatic Data Processing | | | | | | | | | |
| 141. - Check Point Software Tech Ltd | | | | | Buy (add'l) | 03/11/15 | J | | |
| 142. | | | | | Buy (add'l) | 11/05/15 | J | | |
| 143. - Microsoft Corp | | | | | Buy (add'l) | 11/05/15 | J | | |
| 144. - Air Prods & Chems Inc | | | | | | | | | |
| 145. - Praxair Inc | | | | | Buy (add'l) | 06/15/15 | J | | |
| 146. - RPM International Inc Com | | | | | | | | | |
| 147. - Avalonbay Cmntys Inc | | | | | | | | | |
| 148. - HCP Inc | | | | | Sold | 01/07/15 | J | B | |
| 149. - Public Storage Inc | | | | | | | | | |
| 150. - Enbridge C Corp | | | | | Sold | 09/24/15 | J | | |
| 151. - IShares MSCI Pacific EX Japan ETF | | | | | Sold | 07/08/15 | J | | |
| 152. - General Elec Cap Corp (Bond) | | | | | Buy | 03/12/15 | K | | |
| 153. | | | | | Sold | 05/20/15 | K | | |

| 1. Income Gain Codes | A - $1,000 or less | B - $1,001 - $2,500 | C - $2,501 - $5,000 | D - $5,001 - $15,000 | E - $15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F - $50,001 - $100,000 | G - $100,001 - $1,000,000 | H1 - $1,000,001 - $5,000,000 | H2 - More than $5,000,000 | |
| 2. Value Codes | J - $15,000 or less | K - $15,001 - $50,000 | L - $50,001 - $100,000 | M - $100,001 - $250,000 | |
| (See Columns C1 and D3) | N - $250,001 - $500,000 | O - $500,001 - $1,000,000 | P1 - $1,000,001 - $5,000,000 | P2 - $5,000,001 - $25,000,000 | |
| | P3 - $25,000,001 - $50,000,000 | P4 - More than $50,000,000 | | | |
| 3. Value Method Codes | Q - Appraisal | R - Cost (Real Estate Only) | S - Assessment | T - Cash Market | |
| (See Column C2) | U - Book Value | V - Other | W - Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 13 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 154 - Oracle Corp (Bond) | | | | | Buy | 05/22/15 | K | | |
| 155 - Oracle Corp | | | | | Buy | 03/11/15 | J | | |
| 156 | | | | | Sold | 11/05/15 | J | | |
| 157 - Welltower Inc (formerly Health Care Reit Inc) | | | | | Buy (add'l) | 06/15/15 | J | | |
| 158 - Copart Inc | | | | | Buy | 07/08/15 | J | | |
| 159 - Patterson Cos Inc | | | | | Buy | 07/08/15 | J | | |
| 160 Boston Financial Management Inc Revocable Trust | D | Int./Div. | N | T | | | | | See Section VIII |
| 161 - Phillips 66 (Bond) | | | | | | | | | |
| 162 - Bristol Myers Squibb Co | | | | | | | | | |
| 163 - Johnson & Johnson | | | | | | | | | |
| 164 - Costco Wholesale Corp | | | | | | | | | |
| 165 - Ralph Lauren Corp | | | | | Sold | 01/02/15 | J | B | |
| 166 - Amazon.com Inc. | | | | | | | | | |
| 167 - Automatic Data Processing Inc | | | | | | | | | |
| 168 - Automatic Data Processing Inc. (Bond) | | | | | Buy | 09/25/15 | K | | |
| 169 - Emerson Electric Co | | | | | | | | | |
| 170 - Caterpillar Inc | | | | | Sold | 09/24/15 | J | | |

1 Income Gain Codes          A -$1,000 or less          B -$1,001 - $2,500          C -$2,501 - $5,000          D -$5,001 - $15,000          E -$15,001 - $50,000
  (See Columns B1 and D4)   2 Value Codes              F -$50,001 - $100,000     G -$100,001 - $1,000,000   H1 -$1,000,001 - $5,000,000   H2 -More than $5,000,000
  (See Columns C1 and D3)   3 Value Method Codes       N -$250,000 - $500,000     O -$500,001 - $1,000,000   P1 -$1,000,001 - $5,000,000   P2 -$5,000,001 - $25,000,000
  (See Column C2)           P3 -$25,000,001 - $50,000,000                         P4 -More than $50,000,000
                            Q -Appraisal              R -Cost (Real Estate Only)  S -Assessment               T -Cash Market
                            U -Book Value             V -Other                    W -Estimated

## FINANCIAL DISCLOSURE REPORT
### Page 14 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div, rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 171. - United Technologies Corp | | | | | | | | | |
| 172. - Apple Inc | | | | | | | | | |
| 173. - Kinder Morgan Inc | | | | | Sold | 09/09/15 | J | | |
| 174. - Chubb Corp | | | | | | | | | |
| 175. - American Express Co | | | | | Buy (add'l) | 07/15/15 | J | | |
| 176. - American Tower Corp | | | | | | | | | |
| 177. - Anheuser Busch Inbev SA/NV-SP ADR | | | | | | | | | |
| 178. - Diageo PLC ADR | | | | | | | | | |
| 179. - Enbridge C Corp | | | | | Sold | 09/23/15 | J | | |
| 180. - Wells Fargo & Co | | | | | Buy (add'l) | 07/15/15 | J | | |
| 181. - Comcast Corp | | | | | | | | | |
| 182. - TJX Companies | | | | | Buy (add'l) | 07/15/15 | J | | |
| 183. - McCormick & Co Inc | | | | | | | | | |
| 184. - Unilever PLC ADR | | | | | | | | | |
| 185. - Whole Foods Mkt Inc | | | | | Sold | 08/31/15 | J | | |
| 186. - Deere & Co | | | | | Buy (add'l) | 07/15/15 | J | | |
| 187. - | | | | | Sold | 12/04/15 | J | | |

| 1 Income Gain Codes | A -$1,000 or less | B -$1,001 - $2,500 | C -$2,501 - $5,000 | D -$5,001 - $15,000 | E -$15,001 - $50,000 |
| (See Columns B1 and D4) | F -$50,001 - $100,000 | G -$100,001 - $1,000,000 | H1 -$1,000,001 - $5,000,000 | H2 -More than $5,000,000 | |
| 2 Value Codes | J -$15,000 or less | K -$15,001 - $50,000 | L -$50,001 - $100,000 | M -$100,001 - $250,000 | |
| (See Columns C1 and D3) | N -$250,001 - $500,000 | O -$500,001 - $1,000,000 | P1 -$1,000,001 - $5,000,000 | P2 -$5,000,001 - $25,000,000 | |
| | P3 -$25,000,001 - $50,000,000 | | P4 -More than $50,000,000 | | |
| 3 Value Method Codes | Q -Appraisal | R -Cost (Real Estate Only) | S -Assessment | T -Cash Market | |
| (See Column C2) | U -Book Value | V -Other | W -Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 15 of 18 | Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

[ ] **NONE** (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 188. - Check Point Software Tech Ltd | | | | | Buy (add'l) | 11/05/15 | J | | |
| 189. - Oracle Corp | | | | | Sold | 11/05/15 | J | A | |
| 190. - Praxair Inc | | | | | | | | | |
| 191. - Sigma Aldrich Corp | | | | | Donated | | | | |
| 192. - IShares MSCI Emerging | | | | | Sold | 07/15/15 | J | | |
| 193. - IShares MSCI Pacific EX Japan ETF | | | | | Sold | 07/15/15 | J | | |
| 194. - Genzyme Corp (Bond) | | | | | Matured | 06/15/15 | K | | |
| 195. - Kellogg Co (Bond) | | | | | | | | | |
| 196. - Bank of Nova Scotia (bond) | | | | | | | | | |
| 197. - Nike Inc - B | | | | | | | | | |
| 198. - Abbvie Inc | | | | | | | | | |
| 199. - United Health Group Inc | | | | | | | | | |
| 200. - Cognizant Technology Solutions Corp | | | | | Buy (add'l) | 11/05/15 | J | | |
| 201. - Microsoft Corp | | | | | Buy (add'l) | 11/05/15 | J | | |
| 202. - 3M Co | | | | | Buy (add'l) | 07/15/15 | J | | |
| 203. - Chevron Corp | | | | | Buy (add'l) | 07/15/15 | J | | |
| 204. - Oneok C Corp | | | | | Sold | 09/24/15 | J | | |

| 1 Income Gain Codes | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 08/19/2016 |

## VII. INVESTMENTS and TRUSTS  — income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A | B | | C | | D | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Description of Assets (including trust assets) | Income during reporting period | | Gross value at end of reporting period | | Transactions during reporting period | | | | |
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 205. - Union Pacific Corp | | | | | Buy (add'l) | 07/15/15 | J | | |
| 206. | | | | | Sold | 12/04/15 | J | | |
| 207. - Welltower Inc (formerly Health Care REIT Inc) | | | | | | | | | |
| 208. - JP Morgan Chase & Co | | | | | | | | | |
| 209. - Avalonbay Communities Inc | | | | | | | | | |
| 210. - Public Storage Inc | | | | | | | | | |
| 211. - Schlumberger Ltd | | | | | Buy (add'l) | 07/15/15 | J | | |
| 212. - Gilead Sciences | | | | | | | | | |
| 213. - Novo-Nordisk AS ADR-B | | | | | | | | | |
| 214. - Air Prods & Chems Inc | | | | | | | | | |
| 215. - RPM International Inc Com | | | | | | | | | |
| 216. - IShares TR S&P Midcap 400 | | | | | | | | | |
| 217. - IShares TR S&P Small Cap 600 | | | | | | | | | |
| 218. - Copart Inc | | | | | Buy | 07/15/15 | J | | |
| 219. - Patterson Cos Inc | | | | | Buy | 07/15/15 | J | | |
| 220. - Jack Henry & Associates Inc | | | | | Buy | 09/04/15 | J | | |
| 221. - Bank of America | A | Int./Div. | J | T | | | | | |

| 1 Income Gain Codes | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 17 of 18 | Gorton, Nathaniel M. | 08/19/2016 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

Part I, Lines 2 - 4 NOTE: None of the beneficiaries of the trusts and accounts listed in Part I of which the reporting party is a trustee is a dependent of the reporting party and neither the reporting party nor his spouse has any beneficial interest in or control over the disposition of assets of such trusts and accounts.

Part VII, Line 1 - Income of the reporting party reported in Section VII is attributable to his pro rata share of the income of SG Seafood Holdings, Inc. ("Holdings") which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders whether or not such income is, in fact, distributed. The value of the stock holdings is appraised biennially by a certified financial planner, last done in 2012.

Part VII, Line 3 - In 1997 the reporting party and spouse funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal.

Part VII, Lines 3, 34, 93 and 159 - The assets listed on these lines (and on the dashed ("-") lines that follow) are managed by Boston Financial Management, Inc., Boston MA and consist of stocks and bonds in publicly held companies and equity holdings based on certain indices.

Part VII, Line 34 - The reporting party is now required to withdraw a certain minimum amount from his IRA account each year.

Part VII, Lines 4, 6, and 12 (not 11), erroneously reported in 2014 as sold "part" when, in fact, it should have been reported "sold".

Part VII, Line 85, sold in its entirety, erroneously reported in 2014 as sold "part" when, in fact, it should have been reported "sold".

Part VII, Line 156 I have amended this entry to reflect the name change.

Part VII, Line 176 should have been reported in 2015 and has been added to this Amended Report (see line 133).

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 18 of 18 | Gorton, Nathaniel M. | 08/19/2016 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: **s/ Nathaniel M. Gorton**

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

| AO 10<br>Rev. 1/2017 | FINANCIAL DISCLOSURE REPORT<br>FOR CALENDAR YEAR 2016 | Report Required by the Ethics<br>in Government Act of 1978<br>(5 U.S.C. app §§ 101-111) |

| 1. Person Reporting (last name, first, middle initial)<br><br>Gorton, Nathaniel M. | 2. Court or Organization<br><br>District Court - Massachusetts | 3. Date of Report<br><br>09/26/2017 |
|---|---|---|
| 4. Title (Article III judges indicate active or senior status;<br>magistrate judges indicate full- or part-time)<br><br>U. S. District Court - Active | 5a. Report Type (check appropriate type)<br><br>☐ Nomination    Date<br>☐ Initial  ☑ Annual  ☐ Final<br><br>5b. ☑ Amended Report | 6. Reporting Period<br><br>01/01/2016<br>to<br>12/31/2016 |

**7. Chambers or Office Address**

United States District Court
1 Courthouse Way, Suite 3110
Boston, MA 02210

*IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts,*
*checking the NONE box for each part where you have no reportable information.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1. Stockholder, Clerk Secretary and Director | Slade Gorton Seafood Holdings, Inc., Boston, MA (closely held family seafood business) a MA corporation |
| 2. Power of Attorney/Trustee (See NOTE in Part VIII) | Fidelity money market accounts (for all stockholders of Slade Gorton Seafood Holdings, Inc.) all of whom are relatives of the reporting pa |
| 3. Trustee (See NOTE in Part VIII) | Irrevocable Trust (created in connection with the estate plan of reporting party's sister) |
| 4. Trustee (See NOTE in Part VIII) | 1989 Irrevocable Trust and Irrevocable Sub S Trust (both created in connection with the estate plan of reporting party's brother) |
| 5. | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑ NONE *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. | |
| 2. | |
| 3. | |

**FINANCIAL DISCLOSURE REPORT**
Page 2 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 09/28/2017 |

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐ NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|---|
| 1. | 08/05/2016 | Slade Gorton Holdings, Inc. (closely held family seafood business) corporate clerk/secretary, director, custodian, trustee and accounting duties | $10,000.00 |
| 2 | | | |
| 3 | | | |
| 4 | | | |

### B. Spouse's Non-Investment Income - *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑ NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE |
|---|---|---|
| 1. | | |
| 2 | | |
| 3 | | |
| 4 | | |

## IV. REIMBURSEMENTS -- *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐ NONE *(No reportable reimbursements.)*

| | SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|---|
| 1. | New York Intellectual Property Lawyers Association | 04/01/2016 | New York City | Attend annual NYIPLA dinner at Waldorf Astoria | reimbursement for lodging and travel by train w/spouse from Boston to NYC |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 3 of 18 | Gorton, Nathaniel M. | 09/28/2017 |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| | SOURCE | DESCRIPTION | VALUE |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| | CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 4 of 18 | Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| | A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 1 | Slade Gorton Seafood Holdings, Inc. (a MA corporation)(common stock) | L. | Dividend | P1 | Q | | | | | See Section VIII |
| 2 | Fidelity Cash Reserves (individual) | A | Int./Div | K | T | | | | | |
| 3 | Charitable Remainder Trust | | | | | | | | | See Section VIII |
| 4 | - Abbvie Inc. (bond) | | None | | | Matured | 12/17/16 | J | A | |
| 5 | - Johnson & Johnson | A | Dividend | J | T | | | | | |
| 6 | - Jack Henry & Associates | A | Dividend | J | T | | | | | |
| 7 | - CVS Health Corp | A | Dividend | | | Sold | 11/11/16 | J | D | |
| 8 | - CVS Caremark Corp (bond) | A | Interest | J | T | | | | | |
| 9 | - Automatic Data Processing Inc | A | Dividend | J | T | | | | | |
| 10 | - TJX Companies Inc | A | Dividend | J | T | | | | | |
| 11 | - Ecolab Inc. (bond) | | None | | | Matured | 12/08/16 | J | | |
| 12 | - Ryder Systems Inc (bond) | A | Interest | J | T | | | | | |
| 13 | - Medtronic Inc (bond) | A | Interest | J | T | | | | | |
| 14 | - Comcast Corp | A | Dividend | J | T | | | | | |
| 15 | - Microsoft Corp | A | Dividend | J | T | | | | | |
| 16 | - Abbvie, Inc. | A | Dividend | | | Sold | 05/25/16 | J | D | |
| 17 | - Nike Inc | A | Dividend | J | T | | | | | |

1. Income Gain Codes          A ~$1,000 or less          H ~$7,501 - $2,500          C ~$2,501 - $5,000          D ~$5,001 - $15,000          E ~$15,001 - $50,000
(See Columns B1 and D4)      F ~$50,001 - $100,000      G ~$100,001 - $1,000,000     K ~$15,001 - $50,000        L ~$50,000 or less
2. Value Codes               N ~$250,001 - $500,000     O ~$500,001 - $1,000,000    P1 ~$1,000,001 - $5,000,000  P4 ~More than $50,000,000
(See Columns C1 and D3)      P1 ~$25,000,001 - $50,000,000
3. Value Method Codes        Q ~Appraisal               R ~Cost (Real Estate Only)   S ~Assessment               T ~Cash Market
(See Column C2)              U ~Book Value              V ~Other                     W ~Estimated

| FINANCIAL DISCLOSURE REPORT<br>Page 5 of 18 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>09/28/2017 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE (*No reportable income, assets, or transactions.*)

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 18   - UnitedHealth Group Inc | A | Dividend | J | T | | | | | |
| 19   - Procter & Gamble Co | A | Dividend | J | T | | | | | |
| 20   - Costco Wholesale Corp | A | Dividend | K | T | | | | | |
| 21   - 3M Co | A | Dividend | J | T | | | | | |
| 22   - Emerson Electric Co | A | Dividend | | | Sold | 08/12/16 | J | C | |
| 23   - United Technologies Corp | A | Dividend | K | T | | | | | |
| 24   - RPM Corp | A | Dividend | K | T | | | | | |
| 25   - American Express Co | A | Dividend | | | Sold | 01/11/16 | J | B | |
| 26   - JP Morgan Chase & Co | A | Dividend | J | T | | | | | |

| 27   - Public Storage Inc | A | Dividend | | | Sold | 10/05/16 | J | B | |
| 28   - Novo Nordisk AS ADR-B | A | Dividend | J | T | Sold<br>(part) | 04/26/16 | J | B | |
| 29   - Merck & Co. Inc | A | Dividend | J | T | Buy | 05/20/16 | J | | |
| 30   - Patterson Cos Inc | A | Dividend | J | T | Buy | 05/20/16 | J | | |
| 31   - Waters Corporation | | None | J | T | Buy | 05/20/16 | J | | |
| 32   - Stericycle | | None | | | Buy | 08/12/16 | J | | |
| 33   | | | | | Sold | 10/13/16 | J | | |
| 34   - Astrazeneca Group PLC ADR | A | Dividend | J | T | Buy | 11/11/16 | J | | |

1. Income Gain Codes         A = $1,000 or less         B = $1,001 - $2,500         C = $2,501 - $5,000         D = $5,001 - $15,000         E = $15,001 - $50,000
   (See Columns B1 and D4)  F = $50,001 - $100,000     G = $100,001 - $1,000,000  H1 = $1,000,001 - $5,000,000  H2 = More than $5,000,000
2. Value Codes               J = $15,000 or less        K = $15,001 - $50,000      L = $50,001 - $100,000       M = $100,001 - $250,000
   (See Columns C1 and D3)  N = $250,001 - $500,000    O = $500,001 - $1,000,000  P1 = $1,000,001 - $5,000,000  P2 = $5,000,001 - $25,000,000
                             P3 = $25,000,001 - $50,000,000                        P4 = More than $50,000,000
3. Value Method Codes        Q = Appraisal              R = Cost (Real Estate Only)  S = Assessment              T = Cash Market
   (See Column C2)           U = Book Value             V = Other                  W = Estimated

| FINANCIAL DISCLOSURE REPORT<br>Page 6 of 18 | Name of Person Reporting<br><br>Gorton, Nathaniel M. | Date of Report<br><br>09/28/2017 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐  **NONE** *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 35    Boston Financial Management, Inc IRA | | | | | | | | | See Section VIII |
| 36    - Copart Inc | | None | L | T | | | | | |
| 37    - Patterson Cos Inc | B | Dividend | L | T | Buy<br>(add'l) | 05/20/16 | J | | |
| 38    - Jack Henry & Associates, Inc | A | Dividend | K | T | | | | | |
| 39    - Check Point Software Tech Ltd | | None | | | Sold | 08/16/16 | J | | |
| 40    - Praxair, Inc (bond) | B | Interest | K | T | | | | | |
| 41    - Stryker Corp (bond) | | None | | | Matured | 09/30/16 | K | | |
| 42    - Ecolab Inc (bond) | | None | | | Matured | 12/08/16 | K | | |
| 43    - Ford Motor Credit Co LLC (bond) | B | Interest | K | T | | | | | |
| 44    - Royal Bank of Canada (bond) | A | Interest | K | T | | | | | |
| 45    - CVS Caremark Corp (bond) | A | Interest | K | T | | | | | |
| 46    - Unilever Capital Corp (bond) | A | Interest | K | T | | | | | |
| 47    - Microsoft Corp | A | Dividend | K | T | | | | | |
| 48    - Comcast Corp | A | Dividend | J | T | | | | | |
| 49    - American Tower Corp - CL A | A | Dividend | K | T | | | | | |
| 50    - IShares TR S&P Midcap 400 | A | Dividend | L | T | | | | | |
| 51    - IShares TR S&P Small Cap 600 | A | Dividend | L | T | | | | | |

1. Income Gain Codes:          A = $1,000 or less          B = $1,001 - $2,500          C = $2,501 - $5,000          D = $5,001 - $15,000          E = $15,001 - $50,000
   (See Columns B1 and D4)     F = $50,001 - $100,000     G = $100,001 - $1,000,000     H1 = $1,000,001 - $5,000,000     H2 = More than $5,000,000
2. Value Codes                 J = $15,000 or less        K = $15,001 - $50,000        L = $50,001 - $100,000        M = $100,001 - $250,000
   (See Columns C1 and D3)     N = $250,001 - $500,000    O = $500,001 - $1,000,000    P1 = $1,000,001 - $5,000,000     P2 = $5,000,001 - $25,000,000
                               P3 = $25,000,001 - $50,000,000     P4 = More than $50,000,000
3. Value Method Codes          Q = Appraisal              R = Cost (Real Estate Only)    S = Assessment                   T = Cash Market
   (See Column C2)             U = Book Value             V = Other                      W = Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 7 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS — *income, value, transaction (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 52. - Emerson Elec Co | A | Dividend | | | Sold | 08/12/16 | L | L | |
| 53. - Verizon Communications (bond) | A | Interest | K | T | | | | | |
| 54. - Suntrust Bks Inc (bond) | | None | | | Matured | 03/15/16 | K | | |
| 55. - Capital One Finl Co (bond) | | None | | | Matured | 07/15/16 | K | | |
| 56. - Southern Co (bond) | | None | | | Matured | 09/10/16 | K | | |
| 57. - Lockheed Martin Corp (bond) | | None | | | Matured | 09/15/16 | K | | |
| 58. - Beam Inc (bond) | A | Interest | K | T | | | | | |
| 59. - Pitney Bowes Inc (bond) | B | Interest | K | T | | | | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 60. - Oneok Partners LP (bond) | A | Interest | K | T | | | | | |
| 61. - Nike Inc Cl B | A | Dividend | L | T | | | | | |
| 62. - Diageo PLC ADR | A | Dividend | K | T | | | | | |
| 63. - Procter & Gamble Company | A | Dividend | J | T | | | | | |
| 64. - Anadarko Pete Corp | A | Dividend | | | Sold | 01/18/16 | K | D | |
| 65. - Chevron Corp | B | Dividend | L | T | | | | | |
| 66. - American Express Co | A | Dividend | | | Sold | 01/06/16 | L | D | |
| 67. - Chubb Corp | A | Dividend | | | Sold | 01/20/16 | K | B | |
| 68. - JP Morgan Chase & Co | A | Dividend | K | T | | | | | |

| 1. Income Gain Codes<br>(See Columns B1 and D4) | A = $1,000 or less | H = $1,001 - $2,500 | C = $2,501 - $5,000 | D = $5,001 - $15,000 | E = $15,001 - $50,000 |
|---|---|---|---|---|---|
| 2. Value Codes<br>(See Columns C1 and D3) | F = $50,001 - $100,000 | G = $100,001 - $1,000,000 | H1 = $1,000,001 - $5,000,000 | H2 = More than $5,000,000 | |
| | J = $15,000 or less | K = $15,001 - $50,000 | L = $50,001 - $100,000 | M = $100,001 - $250,000 | |
| | N = $250,001 - $500,000 | O = $500,001 - $1,000,000 | P1 = $1,000,001 - $5,000,000 | P2 = $5,000,001 - $25,000,000 | |
| | | | P3 = $25,000,001 - $50,000,000 | P4 = More than $50,000,000 | |
| 3. Value Method Codes<br>(See Column C2) | Q = Appraisal | R = Cost (Real Estate Only) | S = Assessment | T = Cash Market | |
| | U = Book Value | V = Other | W = Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 8 of 18 | Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS – income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent. or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 69   - Abbvie Inc | A | Dividend | | | Sold | 05/20/16 | K | E | |
| 70   - Johnson & Johnson | B | Dividend | L | T | | | | | |
| 71   - Novo-Nordisk AS ADR-B | B | Dividend | L | F | | | | | |
| 72   - United Health Group Inc | A | Dividend | K | T | | | | | |
| 73   - 3M Co | A | Dividend | K | T | | | | | |
| 74   - United Technologies Corp | A | Dividend | K | T | | | | | |
| 75   - Cognizant Technology Solutions Corp | | None | | | Sold | 10/13/16 | J | | |
| 76   - Air Prods & Chems Inc | A | Dividend | K | T | | | | | |
| 77   - Versum Materials Inc (spinoff of Air Prods & Chems Inc | A | Dividend | | | Sold | 10/21/16 | J | A | |
| 78   - RPM International Inc Com | B | Dividend | M | T | | | | | |
| 79   - Avalon Bay Cmntys Inc | A | Dividend | | | Sold | 11/01/16 | K | E | |
| 80   - Matthews Asia Small Cos | A | Dividend | K | F | | | | | |
| 81   - Merck & Co Inc. (bond) | A | Interest | K | T | Buy | 02/24/16 | K | | |
| 82   - Autozone Inc. (bond) | A | Interest | K | T | Buy | 09/29/16 | K | | |
| 83   - Berkshire Hathaway Fin Corp (bond) | B | Interest | K | F | Buy | 10/31/16 | K | | |
| 84   - Apple Inc (bond) | A | Interest | K | T | Buy | 11/01/16 | K | | |
| 85   - NBC Universal Media LLC (bond) | B | Interest | K | F | Buy | 11/02/16 | K | | |

| 1 Income Gain Codes | A = $1,000 or less | B = $1,001 - $2,500 | C = $2,501 - $5,000 | D = $5,001 - $15,000 | E = $15,001 - $50,000 |
| (See Columns D1 and D4) | | | | | |
| 2 Value Codes | F = $50,001 - $100,000 | G = $100,001 - $1,000,000 | K = $15,001 - $50,000 | L = $50,001 - $100,000 | H2 = More than $5,000,000 |
| (See Columns C1 and D3) | N = $250,001 - $500,000 | S = $500,001 - $1,000,000 | P1 = $1,000,001 - $5,000,000 | P2 = $5,000,001 - $25,000,000 | |
| 3 Value Method Codes | Q = Appraisal | R = Cost (Real Estate Only) | S = Assessment | T = Cash Market | |
| (See Column C2) | U = Book Value | V = Other | W = Estimated | | |

## FINANCIAL DISCLOSURE REPORT
Page 9 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 86  - Moodys Corp | B | Dividend | L | T | Buy | 01/06/16 | L | | |
| 87  - Waters Corporation | | None | K | T | Buy | 01/08/16 | K | | |
| 88 | | | | | Buy (add'l) | 05/20/16 | J | | |
| 89  - Chubb Limited | | None | | | Buy | 01/15/16 | J | | |
| 90 | | | | | Sold | 09/09/16 | K | B | |
| 91  - Merck & Co. Inc. | A | Dividend | K | T | Buy | 05/20/16 | J | | |
| 92  - Stericycle | | None | | | Buy | 08/12/16 | L | | |
| 93 | | | | | Sold | 10/13/16 | K | | |
| 94  - Easterline Technologies Corporation | | None | J | T | Buy | 08/19/16 | J | | |
| 95  - CME Group Inc | A | Dividend | J | T | Buy | 09/09/16 | K | | |
| 96  - Astrazeneca Group PLC ADR | A | Dividend | J | T | Buy | 11/11/16 | K | | |
| 97  Boston Financial Management, Inc. Revocable Trust | | | | | | | | | See Section VIII |
| 98  - CVS Caremark Corp (bond) | A | Interest | K | T | | | | | |
| 99  - Deere & Company (bond) | B | Interest | K | T | | | | | |
| 100  - Comcast Corp | A | Dividend | J | T | Buy (add'l) | 02/22/16 | J | | |
| 101  - TJX Companies Inc | A | Dividend | J | T | | | | | |
| 102  - Costco Whsl Corp | A | Dividend | J | T | | | | | |

1. Income Gain Codes    A - $1,000 or less    H - $15,001 - $2,500    C - $2,501 - $5,000    D - $5,001 - $15,000    E - $15,001 - $50,000
(See Columns B1 and D4)
2. Value Codes    F - $15,000 or less    K - $15,001 - $50,000    L - $50,001 - $100,000    M - $100,001 - $250,000
(See Columns C1 and D3)    N - $250,001 - $500,000    O - $500,001 - $1,000,000    P1 - $1,000,001 - $5,000,000    P2 - $5,000,001 - $25,000,000
   P3 - $25,000,001 - $50,000,000    P4 - More than $50,000,000
3. Value Method Codes    Q - Appraisal    R - Cost (Real Estate Only)    S - Assessment    T - Cash Market
(See Column C2)    U - Book Value    V - Other    W - Estimated

## FINANCIAL DISCLOSURE REPORT
Page 10 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | A. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 103. - Unilever Plc ADR | A | Dividend | | | Sold | 08/23/16 | J | A | |
| 104. - Chubb Corp | A | Dividend | | | Sold | 01/15/16 | J | D | |
| 105. - Danaher Corp | A | Dividend | J | T | | | | | |
| 106. - Fortive Corp (spinoff of Danaher Corp) | A | Dividend | | | Sold | 08/15/16 | J | A | |
| 107. - Emerson Electric Co | A | Dividend | | | Sold | 08/12/16 | J | B | |
| 108. - Cognizant Technology Solutions Corp | A | Dividend | | | Sold | 10/13/16 | J | | |
| 109. - Welltower Inc | B | Dividend | K | T | | | | | |
| 110. - IShares TR S&P Midcap 400 | A | Dividend | J | T | | | | | |
| 111. - IShares TR S&P Small Cap 600 | A | Dividend | J | T | | | | | |
| 112. - United Health Group Inc | A | Dividend | K | T | | | | | |
| 113. - Kellogg Co (bond) | | None | | | Matured | 05/30/16 | K | | |
| 114. - Amazon Com Inc | | None | K | T | Buy (add'l) | 02/22/16 | J | | |
| 115. - Nike Inc CL B | A | Dividend | J | T | | | | | |
| 116. - Anheuser Busch Inbev SA/NV-SP ADR | A | Dividend | J | T | | | | | |
| 117. - Diago Plc ADR | A | Dividend | K | T | Buy (add'l) | 02/22/16 | J | | |
| 118. - McCormick & Co Inc | A | Dividend | J | T | | | | | |
| 119. - Anadarko Pete Corp | A | Dividend | | | Sold | 01/08/16 | J | B | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 11 of 18 | Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS – income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 120. - Chevron Corp | A | Dividend | J | T | | | | | |
| 121. - Schlumberger | A | Dividend | | | Sold | 04/29/16 | J | | |
| 122. - American Express Co | A | Dividend | | | Sold | 01/06/16 | J | A | |
| 123. - JP Morgan Chase & Co | A | Dividend | J | T | | | | | |
| 124. - Abbvie Inc | A | Dividend | | | Sold | 06/03/16 | J | C | |
| 125. - Bristol Meyers Squibb Co | A | Dividend | J | F | | | | | |
| 126. - Johnson & Johnson | A | Dividend | K | T | | | | | |
| 127. - United Health Group Inc | A | Dividend | K | F | | | | | |
| 128. - 3M Co | A | Dividend | J | T | Buy (add'l) | 02/22/16 | J | | |
| 129. - United Technologies Corp | A | Dividend | J | T | | | | | |
| 130. - Apple Computer Inc | A | Dividend | J | F | | | | | |
| 131. - Automatic Data Processing | A | Dividend | J | T | | | | | |
| 132. - Check Point Software Tech Ltd | A | Dividend | | | Sold | 08/16/16 | J | A | |
| 133. - Microsoft Corp | A | Dividend | J | T | | | | | |
| 134. - Air Prods & Chems | A | Dividend | J | F | | | | | |
| 135. - Versum Materials (spinoff of Air Prods & Chems) | A | Dividend | | | Sold | 10/21/16 | J | A | |
| 136. - Praxair Inc | A | Dividend | J | T | | | | | |

1 Income Gain Codes
 (See Columns B1 and D4)
2 Value Codes
 (See Columns C1 and D3)
3 Value Method Codes
 (See Column C2)

A =$1,000 or less
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

H =$5,000 - $12,500
K =$15,001 - $50,000
O =$500,001 - $1,000,000
P4 =More than $50,000,000
R =Cost (Real Estate Only)
V =Other

L =$2,501 - $5,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
S =Assessment
W =Estimated

D =$15,001 - $50,000
M2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000
T =Cash Market

L =$15,001 - $50,000

# FINANCIAL DISCLOSURE REPORT
## Page 12 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g. div., rent, or int.) | C Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D Transactions during reporting period (1) Type (e.g. buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 137 - RPM International Inc Com | A | Dividend | J | T | | | | | |
| 138 - Avalonbay Countrys Inc | A | Dividend | J | T | | | | | |
| 139 - Public Storage Inc | A | Dividend | | | Sold | 10/05/16 | J | A | |
| 140 - Oracle Corp (Bond) | A | Interest | K | T | | | | | |
| 141 - Copart Inc | | None | J | T | Buy (add'l) | 02/22/16 | J | | |
| 142 - Patterson Cos Inc | A | Dividend | J | T | Buy (add'l) | 02/22/16 | J | | |
| 143 - Norwood, MA - GO (Bond) | A | Interest | K | T | Buy | 07/20/16 | K | | |
| 144 - Shrewsbury, MA - GO (Bond) | A | Interest | K | T | Buy | 07/21/16 | K | | |
| 145 - Moodys Corp | A | Dividend | J | T | Buy | 01/06/16 | J | | |
| 146 - Waters Corporation | | None | J | T | Buy | 01/08/16 | J | | |
| 147 - Chubb Limited | A | Dividend | | | Buy | 01/15/16 | J | | |
| 148 | | | | | Buy (add'l) | 02/22/16 | J | | |
| 149 | | | | | Sold | 09/09/16 | J | B | |
| 150 - Alphabet Inc-CL C | | None | J | T | Buy | 02/22/16 | J | | |
| 151 - Stericycle | | None | | | Buy | 08/12/16 | J | | |
| 152 | | | | | Sold | 10/13/16 | J | | |
| 153 - Esterline Technologies Corporation | | None | J | T | Buy | 08/16/16 | J | | |

| 1 Income Gain Codes | A - $1,000 or less | B - $1,001 - $2,500 | C - $2,501 - $5,000 | D - $5,001 - $15,000 | E - $15,001 - $50,000 |
| (See Columns B1 and D4) | F - $50,001 - $100,000 | G - $100,001 - $1,000,000 | H1 - $1,000,001 - $5,000,000 | H2 - More than $5,000,000 | |
| 2 Value Codes | J - $15,000 or less | K - $15,001 - $50,000 | L - $50,001 - $100,000 | M - $100,001 - $250,000 | |
| (See Columns C1 and D3) | N - $250,001 - $500,000 | O - $500,001 - $1,000,000 | P1 - $1,000,001 - $5,000,000 | P2 - $5,000,001 - $25,000,000 | |
| | P3 - $25,000,001 - $50,000,000 | | P4 - More than $50,000,000 | | |
| 3 Value Method Codes | Q - Appraisal | R - Cost (Real Estate Only) | S - Assessment | T - Cash Market | |
| (See Column C2) | U - Book Value | V - Other | W - Estimated | | |

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 13 of 18 | Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS — income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

[ ] NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period | | C Gross value at end of reporting period | | D Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 154 - Carter Inc Com | A | Dividend | J | T | Buy | 08/23/16 | J | | |
| 155 - CME Group Inc | A | Dividend | J | T | Buy | 09/09/16 | K | | |
| 156 - Mastercard Inc - Class A | A | Dividend | J | T | Buy | 11/15/16 | J | | |
| 157 - Sun Life Finl Inc | A | Dividend | J | T | Buy | 11/15/16 | J | | |
| 158 Boston Financial Management Inc Revocable Trust | | | | | | | | | See Section VIII |
| 159 - Phillips 66 (Bond) | A | Interest | K | T | | | | | |
| 160 - Bristol Myers Squibb Co | A | Dividend | J | T | | | | | |
| 161 - Johnson & Johnson | A | Dividend | J | T | Buy (add'l) | 02/23/16 | J | | |
| 162 - Costco Wholesale Corp | A | Dividend | J | T | | | | | |
| 163 - Amazon.com Inc. | | None | J | T | Buy (add'l) | 02/23/16 | J | | |
| 164 - Automatic Data Processing Inc | A | Dividend | J | T | | | | | |
| 165 - Automatic Data Processing Inc (Bond) | A | Interest | K | T | | | | | |
| 166 - Emerson Electric Co | A | Dividend | | | Sold | 08/12/16 | J | A | |
| 167 - United Technologies Corp | A | Dividend | J | T | | | | | |
| 168 - Apple Inc | A | Dividend | J | T | | | | | |
| 169 - Chubb Corp | A | Dividend | | | Sold | 01/15/16 | J | B | |
| 170 - American Express Co | | None | | | Sold | 01/06/16 | J | | |

1 Income Gain Codes
(See Columns B1 and B4)

2 Value Codes
(See Columns C1 and D3)

3 Value Method Codes
(See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q = Appraisal
U = Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000

R = Cost (Real Estate Only)
V = Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S = Assessment
W = Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T = Cash Market

E =$15,001 - $50,000

# FINANCIAL DISCLOSURE REPORT
Page 14 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS — income, value, transaction (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 171 - American Tower Corp | A | Dividend | J | T | | | | | |
| 172 - Anheuser Busch Inbev SA/NV-SP ADR | A | Dividend | J | T | | | | | |
| 173 - Diageo PLC ADR | A | Dividend | J | T | Buy (add'l) | 02/23/16 | J | | |
| 174 - Wells Fargo & Co | | None | | | Sold | 06/17/16 | J | | |
| 175 - Comcast Corp | A | Dividend | J | T | | | | | |
| 176 - TJX Companies | A | Dividend | J | T | | | | | |
| 177 - McCormick & Co Inc | A | Dividend | J | T | | | | | |
| 178 - Unilever PLC ADR | A | Dividend | | | Sold | 08/23/16 | J | A | |
| 179 - Check Point Software Tech Ltd | A | Dividend | | | Sold | 08/16/16 | J | A | |
| 180 - Praxair Inc | A | Dividend | J | T | | | | | |
| 181 - Kellogg Co (Bond) | | None | | | Matured | 05/30/16 | K | | |
| 182 - Bank of Nova Scotia (bond) | | None | | | Matured | 03/29/16 | K | | |
| 183 - Nike Inc - B | A | Dividend | J | T | | | | | |
| 184 - Abbvie Inc | | None | | | Sold | 06/08/16 | J | B | |
| 185 - United Health Group Inc | A | Dividend | J | T | | | | | |
| 186 - Cognizant Technology Solutions Corp | A | Dividend | | | Sold | 10/13/16 | J | A | |
| 187 - Microsoft Corp | A | Dividend | J | T | | | | | |

| 1. Income Gain Codes | A - $1,000 or less | B - $1,001 - $2,500 | C - $2,501 - $5,000 | D - $5,001 - $15,000 | E - $15,001 - $50,000 |
| (See Columns B1 and D4) | F - $50,001 - $100,000 | G - $100,001 - $1,000,000 | H1 - $1,000,001 - $5,000,000 | H2 - More than $5,000,000 | |
| 2. Value Codes | J - $15,000 or less | K - $15,001 - $50,000 | L - $50,001 - $100,000 | M - $100,001 - $250,000 | |
| (See Columns C1 and D3) | N - $250,001 - $500,000 | O - $500,001 - $1,000,000 | P1 - $1,000,001 - $5,000,000 | P2 - $5,000,001 - $25,000,000 | |
| | P3 - $25,000,001 - $50,000,000 | Q - Appraisal | R - Cost (Real Estate Only) | S - Assessment | T - Cash Market |
| 3. Value Method Codes | | U - Book Value | V - Other | W - Estimated | |
| (See Column C2) | | | | | |

# FINANCIAL DISCLOSURE REPORT
## Page 15 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B<br>Income during<br>reporting period | | C<br>Gross value at end<br>of reporting period | | D<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 188 - 3M Co | A | Dividend | J | T | | | | | |
| 189 - Chevron Corp | A | Dividend | J | T | Donated<br>(part) | | | | |
| 190 - Welltower Inc | A | Dividend | J | T | Buy<br>(add'l) | 02/23/16 | J | | |
| 191 - JP Morgan Chase & Co | A | Dividend | J | T | | | | | |
| 192 - Avalonbay Communities Inc | A | Dividend | | | Donated | | | | |
| 193 - Public Storage Inc | A | Dividend | | | Sold | 10/05/16 | J | A | |
| 194 - Schlumberger Ltd | | None | | | Sold | 04/29/16 | J | | |
| 195 - Gilead Sciences | | None | | | Sold | 12/16/16 | J | | |
| 196 - Novo-Nordisk AS ADR-B | A | Dividend | J | T | | | | | |
| 197 - Air Prods & Chems Inc | A | Dividend | J | T | | | | | |
| 198 - Versum Materials Inc (spinoff of Air<br>Prods & Chems Inc ) | A | Dividend | | | Sold | 10/21/16 | J | A | |
| 199 - RPM International Inc Com | A | Dividend | J | T | | | | | |
| 200 - iShares TR S&P Midcap 400 | A | Dividend | J | T | | | | | |
| 201 - iShares TR S&P Small Cap 600 | A | Dividend | J | T | | | | | |
| 202 - Copart Inc | | None | J | T | | | | | |
| 203 - Patterson Cos Inc | A | Dividend | J | T | | | | | |
| 204 - Jack Henry & Associates Inc | A | Dividend | J | T | | | | | |

1. Income Gain Codes          A = $1,000 or less          H = $2,001 - $2,500          C = $2,501 - $5,000          D = $5,001 - $15,000          E = $15,001 - $50,000
   (See Columns B1 and D4)    B = $50,001 - $100,000     G = $100,001 - $1,000,000   H2 = More than $5,000,000
2. Value Codes                J = $15,000 or less        K = $15,001 - $50,000       L = $50,001 - $100,000       M = $100,001 - $250,000
   (See Columns C1 and D3)     N = $250,001 - $500,000    O = $500,001 - $1,000,000   P1 = $1,000,001 - $5,000,000  P2 = $5,000,001 - $25,000,000
                               P3 = $25,000,001 - $50,000,000                          P4 = More than $50,000,000
3. Value Method Codes          Q = Appraisal              R = Cost (Real Estate Only)  S = Assessment              T = Cash Market
   (See Column C2)             U = Book Value             V = Other                    W = Estimated

## FINANCIAL DISCLOSURE REPORT
### Page 16 of 18

| Name of Person Reporting | Date of Report |
|---|---|
| Gorton, Nathaniel M. | 09/28/2017 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐  NONE (*No reportable income, assets, or transactions.*)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 205 - Apple Inc SR GLBL NT (Bond) | A | Interest | J | T | Buy | 05/27/16 | K | | |
| 206 - US Treasury Note (Bond) | A | Interest | J | T | Buy | 08/29/16 | K | | |
| 207 - Amgen, Inc. (Bond) | A | Interest | J | T | Buy | 09/01/16 | K | | |
| 208 - Moodys Corp | A | Dividend | J | T | Buy | 01/06/16 | J | | |
| 209 - Chubb Limited | A | Dividend | | | Buy | 01/15/16 | J | | |
| 210 - | | | | | Buy (add'l) | 02/23/16 | J | | |
| 211 - | | | | | Sold | 09/09/16 | J | A | |
| 212 - Watsco Inc | A | Dividend | J | T | Buy | 02/23/16 | J | | |
| 213 - Qualcomm Inc | A | Dividend | J | T | Buy | 07/21/16 | J | | |
| 214 - Stericycle | | None | | | Buy | 08/12/16 | J | | |
| 215 - | | | | | Sold | 10/13/16 | J | | |
| 216 - Esterline Technologies Corporation | | None | J | T | Buy | 08/16/16 | J | | |
| 217 - Carter Inc Com | A | Dividend | J | T | Buy | 08/23/16 | J | | |
| 218 - CME Group Inc | A | Dividend | J | T | Buy | 09/09/16 | J | | |
| 219 - Bank of America | A | Int./Div | J | T | | | | | |

| 1 Income Gain Codes. | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| (See Columns B1 and D4) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2 Value Codes | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| (See Columns C1 and D3) | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3 Value Method Codes | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| (See Column C2) | U =Book Value | V =Other | W =Estimated | | |

## FINANCIAL DISCLOSURE REPORT
Page 17 of 18

| Name of Person Reporting | Date of Report |
| --- | --- |
| Gorton, Nathaniel M. | 09/28/2017 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. (Indicate part of report.)

Part I, Lines 2 - 4 NOTE: Some of the beneficiaries of the trusts and accounts listed in Part I of which the reporting party is a trustee is a dependent of the reporting party and neither the reporting party nor his spouse has any beneficial interest in or control over the disposition of assets of such trusts and accounts.

Part VII, Line 1 - Income of the reporting party reported in Section VII is attributable to his pro rata share of the income of Slade Gorton Seafood Holdings, Inc. formerly SG Seafood Holdings, Inc. which is taxed as an S corporation whereby all corporate income is deemed passed through and taxable to the individual stockholders whether or not such income is, in fact, distributed. The value of the stock holdings is appraised from time to time by a certified financial planner, last done in 2012

Part VII, Line 3 - In 1997 the reporting party and spouse funded a charitable remainder trust of which they are the income beneficiaries for life but in which they retain no right to principal

Part VII, Lines 3, 35, 97 and 158 - The assets listed on these lines (and on the dashed ("-") lines that follow) are managed by Boston Financial Management, Inc., Boston MA and consist of stocks and bonds in publicly held companies and equity holdings on certain indices.

Part VII, Line 35 - The reporting party is now required to withdraw a certain minimum amount from his IRA account each year

## FINANCIAL DISCLOSURE REPORT
Page 18 of 18

| Name of Person Reporting | Date of Report |
| --- | --- |
| Gorton, Nathaniel M. | 09/28/2017 |

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: s/ Nathaniel M. Gorton

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

Exhibit E

[Missing]

*Exhibit F*

## Declaration of Martin S. Gottesfeld

I declare as follows pursuant to 28 U.S.C. § 1746(1):

1.   I am Martin Stephen Gottesfeld, Defendant, *pro se*, in *United States v. Gottesfeld*, 16-cr-10305-NMG (D. Mass.) (hereinafter the "case").

2.   I am unafraid of the case and unafraid of prison.

3.   Prior to my arrest I was an effective though obscure advocate for institutionalized American kids, particularly those abused in the so-called *troubled-teen industry*.

4.   Mr. Greg Kutz, Managing Director, Forensic Audits and Special Investigations for The U.S. Government Accountability Office (GAO) reported on the industry multiple times before Congress, e.g.:

A 17-year-old male jumped off a building in a suicide attempt and severely broke his left arm, with the bone exposed. Despite this severe wound, the boy was punched, slammed against walls and rolled in the dirt. He was beaten so severely that he forgot who he was and he became unconscious. The beatings continued for two weeks before he was finally given medical treatment.

A 16-year-old boy having trouble breathing and walking was tortured and humiliated for days. One staff member told the boy that he deserved an Academy Award for faking it. He died later that day. An autopsy report for this boy showed 71 contusions and abrasions from head to toe.

Another 16-year-old boy with asthma was placed in a face-down restraint by three staff members before he died. Another boy was restrained more than 250 times, including two times for more than 12 hours each. A 12-year-old boy, weighing 87 pounds, was placed in a face-down restraint with a staff member lying on top of him until he died.

And a staffer referred to as the "drill instructor" trained his pit bull to bite people in the crotch on command. A 17-year-old boy experienced this painful abuse.

Other kids in these and other programs also experienced disturbing abuse. For example, boys at one boot camp were required to stand with bags over their head[s] and a hangman's noose around their neck[*sic*]. The rope on this noose was tightened to simulate a hanging. The individual responsible for this told officers that this was an appropriate form of discipline.

Another boy was forced to lie face-down on a red-ant hill and was not allowed to brush the ants off of his face or his body.

*Child Abuse and Deceptive Marketing by Residential Programs for Teens, Hearing Before the Committee on Education and Labor* (Apr. 24, 2008) (hereinafter the "2008 hearing") at 15:30, *video entered into evidence in the case* Jan. 10, 2019, *and available at* https://www.youtube.com/watch?v=fRWEh-qIiUM&feature=youtu.be&t=15m30s (retrieved Jan. 9, 2019), *official record available at* https://www.gpo.gov/fdsys/pkg/CHRG-110hhrg41839/html/CHRG-110hhrg41839.htm (last visited July 29, 2021).

5.   "Despite egregious abuses, these facilities continue to grow in number and size. The industry is booming and reportedly worth over a billion dollars," wrote The American Bar Association in the record of another Congressional hearing. *See Cases of Child Neglect and Abuse at Private Residential Treatment Facilities, Hearing before the Committee on Education and Labor* (Oct. 10, 2007) (hereinafter the "2007 hearing"), *official record available at* https://www.govinfo.gov/content/pkg/CHRG-110hhrg38055/html/CHRG-110hhrg38055.htm (last visited July 29, 2021), *hearing video entered into evidence in the case* Jan. 10, 2019, *and available at* https://youtu.be/hgJPhfBYctRI (retrieved Jan. 9, 2019). *See also* Chen, M., *At Some Youth "Treatment" Facilities, "Tough Love" Takes Brutal Forms*, The New Standard (Nov. 2005).

6.   Long-time California Congressman George Miller (since retired) summed up the industry for public television: "God, it's like almost every abusive thing you think could happen to a child has happened in one of these settings somewhere at one time or another." Anna Rau, *Who's Watching The Kids?* at 00:03, PBS Montana (Sept. 14, 2006), available at https://youtu.be/XZcUqK0727I (last

visited July 26, 2021).

7.    Like many others I asked the Federal Bureau of Investigation (FBI) to enforce federal law in protection of the tens of thousands of children trafficked across state lines and U.S. borders into the industry.

8.    Congressman Miller's prepared opening remarks from the 2007 hearing are illuminating:

We have heard stories where program staff members forced children to remain in seclusion for days at a time; to remain in so-called "stress" positions for hours at a time; or to undergo extreme physical exertion without sufficient food and water.

Today, we will hear even more horrifying stories, of children denied access to bathrooms and forced to defecate on themselves. Of children forced to eat dirt or their own vomit. Of children paired with older children—their so-called "buddies"—whose job it is, essentially, to abuse them.

There is only one word for these behaviors: Inhuman.

This nightmare has remained an open secret for years. Sporadic news accounts of specific incidents have built a record that should never have been ignored, but shamefully [it] was.

The federal government has completely failed to grasp the urgency of this situation.

In 2003, I urged then-Attorney General John Ashcroft to begin an immediate investigation into reports of child abuse at private residential treatment programs. The Attorney General refused, as did his successor, Alberto Gonzales.

I also wrote to then-Secretary of State Colin Powell asking him to investigate the treatment of children in facilities located overseas but serving American children and operated by U.S. companies. Secretary Powell's response was insufficient.

We will learn today that a number of these programs actually operate on federal land. Yet no federal agency—not the Bureau of Land Management, not the Department of the Interior, no one—has thought to review problems associated with these federal tenants, despite repeated incidents ending in the injury or death of a child.

No federal agency keeps official data about the number of children enrolled in private residential treatment programs, despite that[sic] fact that children are typically transported across state lines—sometimes even by force—in order to be enrolled in the programs.

This is an outrage.

9.    Money usually crosses state lines when these kids do; often this funding originates at the U.S. Education Department and is channeled through local public-school districts via individualized education plans (IEPs) that send away kids whom local schools find problematic; other times for-profit industry programs receive funding from families or courts order placements at public cost.

10.    In a set of 5,000 cases: "Between 2003 and 2008, approximately 50% of juvenile offenders in Luzerne County[, Pennsylvania] appeared in court without the benefit of counsel—about ten times the state average. Virtually all were adjudicated delinquent. Eventually federal investigators uncovered a scheme in which [Luzerne County Common Pleas judges Mark Ciavarella and Michael Conahan] had been accepting kickbacks from for-profit juvenile detention facilities in exchange for sending unrepresented juvenile defendants to those facilities." *Flora v. County of Luzerne*, 776 F.3d 169, 173 (3d Cir. 2015). *See also*: "Mark Ciavarella, a former state judge, was convicted by a jury in the Middle District of Pennsylvania of racketeering, honest services mail fraud, money laundering conspiracy, filing false tax returns, and several other related crimes. The charges resulted from the so-called 'Kids for Cash' scandal ..." *United States v. Ciavarella*, 716 F.3d 705 (3d Cir. 2013); "We paraphrase what has been written about judges, that, above all things, integrity is their lot and proper virtue, the landmark, and he that removes it, corrupts the fountain. In this case, the fountain from which the public drinks is confidence in the judicial system—a fountain which may be corrupted for a time well after this case." *United States v. Conahan*, 2009 U.S. Dist. LEXIS 126148, 3:09-cr-28 (M.D. Pa. July 31, 2009) at *7 (Kosik, J., rejecting 87-month Rule 11(c)(1)(C) plea).

11.    The government was tipped off to *Kids for Cash*; federal investigators did not "uncover" it.



12. The government, in fact, pursued charges against Ciavarella and Conahan only belatedly and under duress of public scrutiny; multiple affected children committed suicide. *See, e.g.,* Martin Gottesfeld, *Corrupt Judge Convicted of Selling Children Seeks Early Release,* The Liberty Sentinel (July 18, 2020).

13. The government in fact offered Ciavarella and Conahan such lenient plea agreements under Rule 11(e)(1)(C) that District Judge Kosik rejected the deals. *Conahan, supra.*

14. The government then defied the spirit of Judge Kosik's order rejecting the pleas by letting Conahan out of prison early in 2020 while denying release to thousands of other inmates more vulnerable to SARS-CoV-2—but less well-connected politically—who never trafficked American kids into bondage for personal profit.

15. Schemes like *Kids for Cash* continue unabated in juvenile and divorce courts across The United States.

16. Elsewhere, after executives running an industry artifice masquerading as a *therapeutic boarding school* donated to the local sheriff's department and the sheriff's reelection campaign, teenager Karlye Newman (given name pronounced *Karr-lee*) died while law enforcement protected the facility and its staff. *See Who's Watching The Kids?, supra.* Earlier the sheriff's department had stonewalled an out-of-state court order requiring the return of a child from the program. *Id.*

17. The Mexican government twice shutdown industry programs abusing American kids within its borders, *e.g.,* Federales raided and shutdown the World-Wide Association of Schools and Programs (WWASP) facility *Casa by the Sea,* full of American kids, for dispensing drugs from an illegal pharmacy.

18. The industry and its atrocities go back decades, *e.g., Milonas v. Williams,* 691 F.2d 931, 940–43 (10th Cir. 1982) (affirming permanent injunction against industry program *Provo Canyon School's* illegal practices against children).

19. At Congressman Miller's behest the GAO compiled reports on the industry. *See, e.g.,* 1) *7 Residential Treatment Programs: Concerns Regarding Abuse and Death in Certain Programs for Troubled Youth,* Statement of Gregory D. Kutz, Managing Director, Forensic Audits and Special Investigations, Andy O'Connell, Assistant Director, Forensic Audits and Special Investigations (Oct. 10, 2007), *available at* https://www.gao.gov/assets/gao-08-146t.pdf (retrieved July 29, 2021); 2) *Residential Facilities: State and Federal Oversight Gaps May Increase Risk to Youth Well-Being,* Statement of Kay E. Brown, Director, Education, Workforce, and Income Security Issues (Apr. 24, 2008), *available at* https://www.gao.gov/assets/gao-08-696t.pdf (retrieved same); and 3) *Residential Facilities: Improved Data and Enhanced Oversight Would Help Safeguard the Well-Being of Youth with Behavioral and Emotional Challenges,* Testimony Before the Committee on Education and Labor, House of Representatives (May 2008), *available at* https://www.gao.gov/assets/gao-08-346.pdf (retrieved same).

20. The Federal Trade Commission (FTC) warned that industry "programs are not regulated by the federal government, and many are not subject to state licensing or monitoring." Consumer Advisory, *Residential Treatment Programs for Teens, available at* https://web.archive.org/web/20121219044525/http://www.consumer.ftc.gov/articles/0185-residential-treatment-programs-teens (retrieved July 29, 2021).

21. Under scrutiny from, *inter alia,* health and science journalists, survivors, parents, legislators, the ABA, the Bazelon Center, other NGOs, the GAO, and licensed, board-certified physicians, the so-called *treatment* perpetuated by the industry has been exposed as indoctrinational abuse driven principally by the avarice of industry executives. *See, in toto,* House Hrg. records, *supra.*

22. Yet absent law-enforcement action the abuse continues, largely unabated; as Congressman Miller lamented: "I asked the Treasury Department to take a look at them. I asked the State Department to take a look at them. I asked the Justice Department to take a look at them." *Who's Watching The Kids?* at 50:36.

23. The government's express refusals to protect American kids and families from these widespread, obvious, and heinous federal crimes, i.e. human trafficking, mail fraud, health-care fraud, education fraud, etc., led Congressman Miller to worry publicly, "that this industry's kinda, you know, infiltrating the political system at the highest levels to keep action from being taken to protect the kids." *Who's Watching The Kids?* at 50:36 (interview with Rep. Miller).

24. Against this backdrop I sought political asylum in Cuba when, instead of busting child abusers, the FBI used its powers on behalf of The United States to persecute me for protecting these same kids,—as FBI Special Agent Jeffrey Williams admitted to This Court under cross examination:

```
4 Q   And, and your[sic], are you aware of the allegations of
5      abuse against Justina Pelleter at the Wayside[ Youth and Family Support Network]?
6 A   Yes.
7 Q   And, but the FBI never investigated Wayside, did
8      they?
9 A   Not that I'm aware of.
```

Det. Hrg. Tr. at 48, Apr. 27, 2016, dkt. 19.

```
1 Q   And as far as you're aware, the FBI never
2      investigated Boston Children's Hospital for any alleged
3      abuse of Justina Pelletier, correct?
4 A   Yes.
```

*Id.* at 53.

25. My concerns re political persecution are vindicated by Magistrate Judge Bowler's and Judge Gorton's refusals to disclose and disqualify themselves from this case despite a growing, stark list of known conflicts of interest enumerated in the accompanying memorandum and its exhibits.

26. As stated *supra*, before my arrest I was an effective though obscure advocate for institutionalized American kids; that is to say, I was only able to force reform through grass-roots campaigns and digital sit-ins.

27. That all changed because of the case, or, specifically, the mishandling thereof.

28. Prior to my arrest I offered my help *pro bono* to Boston Children's Hospital (hereinafter "BCH") to harden its network, not against peaceful demonstrations like the one in controversy in this case, but against vicious state-sponsored cyberattacks aiming for maximum carnage against the very most vulnerable.

29. I am qualified for such work; in addition to my experience enumerated in the other declarations accompanying this motion and memorandum, for 15 years from age 18 until my arrest less than a month before my thirty-fourth birthday, private-sector information-technology (IT) consultancies charged top dollar for my professional services, *e.g.*, designing and hardening networks.

30. Had I wished to take human life at BCH I easily could have done so; the hospital's next opponent may not share my scruples; BCH and the U.S. attorney's office nonetheless declined my help and today BCH and its sister Harvard hospitals—more specifically their patients—remain vulnerable.

31. Before my instant arrest I also offered my help *pro bono* to secure vital U.S. cyberinfrastructure from foreign state-sponsored hackers, specifically from Russia and China— this was before the claims of 2016 and 2020 election interference, the "Solar Winds hack," the Microsoft Exchange compromise, the Colonial Pipeline shutdown, etc.—and again the U.S. attorney's office declined my help.

32. BCH and the U.S. attorney's office did, however, ask me for a ways-and-means proffer to learn how I knocked BCH off the Internet and whether backdoors had been installed inside its demarc.

33.  I agreed to disclose the requested information without implicating anyone else, i.e. the U.S. attorney's office had strongly indicated it wanted me to compromise other activists and I refused U.S.S.G. § 5K1.1; no one else was charged for the events in controversy when it was possible to do so prior to the expiration of the relevant statute of limitations.

34.  At the ways-and-means proffer, however, BCH made clear it never wants another Pelletier scandal; its personnel asked me questions aimed to preclude another such public-relations blunder.

35.  I did not issue the first press release, sensationalizing the case; that was the U.S. attorney's office. *See* The United States Attorney's Office, District of Massachusetts, *Somerville Man Arrested in Miami After Fleeing Massachusetts and being Found on Boat off the Coast of Cuba* (Feb. 17, 2016), *available at* https://www.justice.gov/usao-ma/pr/somerville-man-arrested-miami-after-fleeing-massachusetts-and-being-found-boat-coast-cuba (visited July 29, 2021). *See also* Trisha Thadani, *First a high-seas rescue by a Disney ship, then an arrest*, USA Today (Feb. 17, 2016) (visted July 20, 2021).

36.  I did not sensationalize the case further by claiming—falsely—that my digital sit-in endangered children, fail to prove that allegation at trial, and then continue repeating the false narrative thereafter; that was, again, the U.S. attorney's office. *See, e.g.*, 1): (responding to the U.S. attorney's office's statement to *Newsweek*) The Huffington Post, *The Wrong Ortiz Retired From Boston* (Oct. 26, 2016); 2) Verdict Form, dkt. 301 (Aug. 1, 2018); 3) Sent. Tr. 26:4, Jan. 10, 2019, dkt. 399; and 4) Nate Raymond (quoting AUSA David D'Addio), *Massachusetts man gets 10 years in prison for hospital cyberattack*, Reuters (Jan. 10, 2019).

37.  Thereupon I did not yet further sensationalize the case by designating myself, a Jew, to a federal-prison *communications-management unit* (CMU) known as *Little Guantanamo*, full of anti-Israeli Jihadi terrorists. Again, that was the government. *See* Christie Thompson, *Federal Prisons Throw Inmates In 'Little Guantanamo' And Don't Have To Say Why*, Think Progress (Apr. 25, 2014).

38.  Unrestricted by common sense the U.S. attorney's office simultaneously calls me "a self-aggrandizing menace," Sent. Tr. 32:13, and a member of a group literally named *Anonymous, e.g.*, Sent. Tr. 25:25.

39.  By way of contrast, between my arrest and indictment I offered the U.S. attorney's office a plea to unlimited misdemeanors in order to return to my quiet life as an engineer and advocate; the U.S. attorney's office, hell bent on securing a felony Computer Fraud and Abuse Act (CFAA) conviction against an activist after *United States v. Aaron Swartz*, declined.

40.  Although I did not choose to sensationalize the case I am not displeased by the result; I now catalyze more public scrutiny and deeper changes with a single article written in a day's time than I ever could have done as a hacktivist dedicating weeks of 'round-the-clock elbow grease.

41.  Over the past 65 months I've been locked-up at five (5) Federal Bureau of Prisons (BOP) facilities, including the 9-South special-housing unit (SHU) at the Metropolitan Correctional Center (MCC) New York, where Jeffrey Epstein may or may not have hanged himself, the Metropolitan Detention Center (MDC) Brooklyn SHU after the infamous 2019 blackout, the gang-dominated Federal Detention Center (FDC) Miami, and the Federal Correctional Institution (FCI) Terre Haute, Indiana CMU, aka "the terrorist unit" inside the old death-row building where Timothy McVeigh awaited lethal injection.

42.  By sensationalizing the case the U.S. attorney's office stirred sufficient interest about me to make me a successful national-news journalist; my articles from prison about the industry and Justice Department misconduct appear at HuffPost, *WorldNetDaily* (WND), Red State, *Info Wars*, The *Western Journal*, The Intercept, The Liberty Sentinel, and RT.

43.  I appeared telephonically live from custody to discuss human-rights violations against mentally ill pretrial detainees on RT's TV news available in over 700 million homes in over 100 countries worldwide.

44.  In addition to my direct reportage, the story of the case has now brought the atrocities

- PAGE 5 OF 6 -

against Justina and other institutionalized American kids to the attention of the large audiences of *Boston 25 News*, *Newsweek*, *ShadowProof Press*, *Mint Press News*, *The New American*, *Rolling Stone*, *The Daily Caller*, Lee Camp's *Redacted Tonight*, Sirius/XM's *The Wilkow Majority*, *Real News with David Knight*, *Michelle Malkin Investigates*, *Reader-Supported News*, TheBlaze's *America This Week* with Eric Bolling, and others.

45.  Having fought this hard for this platform I shan't ever run from it; this case shall not perturb my mission to safeguard institutionalized children and apply political pressure to expose and prosecute their abusers. *Cf. Morrison v. Olson*, 487 U.S. 654, 728 (1988) (Scalia, J., dissenting) ("Under our system of government, the primary check against prosecutorial abuse is a political one. The prosecutors who exercise this awesome discretion are selected and can be removed by a President whom the people have trusted enough to elect. Moreover, when crimes are not investigated and prosecuted fairly, nonselectively, with a reasonable sense of proportion, the President pays the cost in political damage to his administration").

46.  Neither shall I sully my platform playing into the U.S. attorney's office's deceitful sideshow meant to protect itself and its allies from the natural consequences of their abuse of Justina, failure to protect thousands of other institutionalized kids, and coverups thereof.

47.  I shall never give the U.S. attorney's office what it needs to discredit me: dishonesty, cowardice, or criminality.

48.  When I sought political asylum in Cuba in January—February 2016 I was uncharged and my travel unrestricted; I signed no plea agreement (and now never shall) and had never promised to remain in the U.S. or to forsake my right under customary international law to seek asylum elsewhere; I broke no law and violated no court order; neither This Court nor the government had sought or received any assurance I'd remain in the district. This Court later ruled my asylum claim was not obstruction of justice. Sent. Tr. 14:17.

49.  Moreover, I understand my appeal is meritorious and I'd never forfeit it through the fugitive-disentitlement doctrine: "It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993).

50.  On the eve of my total exoneration I would never subject myself to a freestanding charge of bail jumping under 18 U.S.C. § 3146; indeed, when I sought asylum I did so lawfully, knowing I was uncharged, unrestricted, and under no promise to appear; otherwise I would not have done so.

51.  Indeed, I was not he who fled before the trial of this case. *See seriatim* FreeMartyG, post re "federal prosecutor Adam Bookbinder," Facebook (Nov. 18, 2017), Attachm. A (retrieved Aug. 23, 2020); Notice of Withdrawal of Appearance of Attorney Adam Bookbinder, dkt. 99 (Nov. 29, 2017); FreeMartyG, post re "federal prosecutor Adam Bookbinder," Facebook (Dec. 5, 2017); Attachm. B. (retrieved Aug. 23, 2020); Email from Martin Gottesfeld to AUSA Adam Bookbinder, *Are you fleeing justice?* (Jan. 18, 2018), Attachm. C (retrieved Aug. 24, 2020); Holland & Knight Press Release, *Assistant U.S. Attorney and Chief of Cybercrime Unit Adam Bookbinder Joins Holland & Knight in Boston* (Jan. 31, 2018).

52.  My tendency is fight not flight; if released on bail I shall, of course, comply with all court-ordered release conditions.

I declare the foregoing is true and correct under the penalty of perjury under the laws of The United States of America. Executed Wednesday, August 4, 2021.


by:
Martin Stephen Gottesfeld

Bxh, F, Attachm. A

Sign Up

Forgot account?


**FreeMartyG**
November 18, 2017 ·

Were you sexually abused by federal prosecutor Adam Bookbinder?
If so, there is hope and journalists may wish to speak to you. You can
message this page or contact WCVB channel 5 at 781-433-4560.





**FreeMartyG**
Community

30

Send Message

2 Comments

Share

**Related Pages**


**Below Deck**
TV Show


**INTP master cockroach**
Educational Research Center


**Greg Hunter's USAWatchdog.co…**
Interest

*DSCC
**Senate Democrats**
Political Organization


**Vet Action Network**
News & Media Website


**Pancreatic Cancer Action Ne…**
Nonprofit Organization


**International Association of Chie…**
IACP    Law Enforcement Agency


**Anonmedic and Street Medics**
Medical Company


**The Code Green Campaign**
Nonprofit Organization


**CPS/Family Court Corruption Shhh**
Educational Consultant


**PKD Foundation**
Charity Organization


**American Academy of PAs**
AAPA    Nonprofit Organization

**Pages Liked by This Page**


**Mad Angels Army**

### See more of FreeMartyG on Facebook

Log In    or    Create New Account

8/23/2020

Exh. F; Attachm. B

FreeMartyG - Were you sexually abused by federal... | Facebook

Sign Up

Log In

Forgot account?

 **FreeMartyG**
December 5, 2017 ·

Were you sexually abused by federal prosecutor Adam Bookbinder? If so, there is hope and journalists may wish to speak to you. You can message this page or contact WCVB channel 5 at 781-433-4560.



**FreeMartyG**
Community

3

Send Message

2 Shares

Share

**Related Pages**

 **Below Deck**
TV Show

 **INTP master cockroach**
Educational Research Center

 **Greg Hunter's USAWatchdog.co...**
Interest

 **Senate Democrats**
Political Organization

 **Vet Action Network**
News & Media Website

 **Pancreatic Cancer Action Ne...**
Nonprofit Organization

 **International Association of Chie...**
Law Enforcement Agency

 **Anonmedic and Street Medics**
Medical Company

 **The Code Green Campaign**
Nonprofit Organization

 **CPS/Family Court Corruption Shhh**
Educational Consultant

 **PKD Foundation**
Charity Organization

 **American Academy of PAs**
Nonprofit Organization

**Pages Liked by This Page**

 **Mad Angels Army**

See more of FreeMartyG on Facebook

Log In       or       Create New Account

Exh. F, Attachm. C

M Gmail

**Marty Gottesfeld <mgottesfeld@gmail.com>**

## Are you fleeing justice?
1 message

**Marty Gottesfeld** <mgottesfeld@gmail.com>
To: Adam Bookbinder <adam.bookbinder@usdoj.gov>

Thu, Jan 18, 2018 at 3:56 PM

Mr. Bookbinder,

I heard that you withdrew from the case and updated your LinkedIn profile after my wife and I confronted you in court with these pictures of Justina:



They were taken before and after she was left in a wheelchair by your alma mater's $2 billion pediatric research hospital.

So, after filing untrue statements on sworn affidavits, choosing a magistrate judge with serious conflicts of interest and then lying about it, putting out a misleading press release, threatening my wife for exposing your corruption, stopping me from attending my father's funeral, refusing to look at photos of Justina in court and so much more, does it turn out that it's you whose fleeing from the only small semblance of justice which you'll likely ever face for years of reprehensible behavior?

Or is there more that you are trying to avoid?

You see, I know from your actions and inactions that you have been doing more than merely following orders, as you may try to claim now that a larger portion of this travesty has been exposed. There's obviously something very wrong with anyone who could devalue the life of a human child the way that you have devalued Justina's.

Indeed, in stark contrast to you, Mr. Barry Pollack, who at one point was a federal prosecutor in your same office, penned an open letter to the Department of Public Health in which he said the psych ward where Justina was being held against her will "appears virtually synonymous with abuse for many children." He also mentioned potential federal civil rights violations perpetrated by the hospital which you refused to investigate.

So, why the difference Mr. Bookbinder? What *else* aren't you telling us?

With great interest,

Martin "MartyG" Gottesfeld

Exh. F, Attachm. D

**PRESS RELEASE**

JANUARY 31, 2018

# Assistant U.S. Attorney and Chief of Cybercrime Unit Adam Bookbinder Joins Holland & Knight in Boston

PDF ✉ in 𝕏 𝑓

**BOSTON (January 31, 2018)** – Adam Bookbinder, assistant U.S. attorney and chief of the Cybercrime Unit for the District of Massachusetts, has joined Holland & Knight as a partner in the firm's Boston office. His practice will focus on cybersecurity, data privacy and cyber incident response, as well as white collar defense and investigations and criminal and civil trials.

Mr. Bookbinder served as assistant U.S. attorney for 18 years, first in the Economic Crimes Unit, then, since 2004, in the Cybercrime Unit, which he was selected to lead in 2014. During his tenure in the Cybercrime Unit, he handled and supervised prosecutions stemming from computer intrusions, data breaches, network attacks, theft of trade secrets, trafficking in counterfeit goods and online fraud. In 2012, he was named the office's national security cyber specialist to investigate cybercrime committed by nation-states and hackers affiliated with foreign terrorist organizations and to serve as the liaison to the U.S. Department of Justice's National Security Division for cyber matters. While cybercrime has been Mr. Bookbinder's focus for the past 13 years, he has continued to handle financial fraud, securities fraud and healthcare fraud investigations, prosecutions and trials.

"Adam is an exciting hire for the Boston office and the firm. He is an excellent lawyer with a stellar reputation," said John Hogan, head of Holland & Knight's Litigation Section. "With more than 13 years of experience investigating cybercrime, he is well-

8/23/2020

Case 1:16-cr-10305-NMG   Document 445   Filed 10/22/21   Page 305 of 398

Assistant U.S. Attorney and Chief of Cybercrime Unit Adam Bookbinder Joins Holland & Knight in Boston | News | Holland & Knight

positioned to work with our growing Cybersecurity and Privacy Team and will further heighten its profile and prestige."

"I intend to put my many years of cybercrime prosecution experience to work for Holland & Knight clients, helping them to strengthen their companies' cybersecurity and data privacy posture," said Mr. Bookbinder. "I have observed first-hand the dramatic increase in the number of serious threats. Concern about these threats is particularly pronounced in the Boston area, home to so many biotech, high-tech and financial services companies, not to mention small businesses, universities and hospitals.

"I also look forward to contributing to the firm's white collar defense and investigations practice, serving as a resource for firm clients in their dealings with federal law enforcement agencies, state regulators and the Securities and Exchange Commission, as well as contributing to or leading criminal or civil trial teams," he added.

---

**RELATED PROFESSIONAL**

Adam J. Bookbinder

**RELATED PRACTICES**

Data Strategy, Security & Privacy

White Collar Defense and Investigations

Litigation and Dispute Resolution

Intellectual Property

**RELATED OFFICE**

Boston

## Related News and Headlines

As Final Calif. Privacy Regs Drop, Enforcement Fights Loom

*LAW360* / IN THE HEADLINES / JUNE 15, 2020

## After Capital One Ruling, How Will Companies Protect Forensic Reports?

*CYBERSECURITY LAW REPORT* / IN THE HEADLINES / JUNE 10, 2020

## Am I Entitled to Know if I Was with Someone Infected by COVID-19?

*ASUNTOS LEGALES* / IN THE HEADLINES / MAY 27, 2020

## Colombian Watchdog to Probe Zoom's Data Privacy

*GLOBAL DATA REVIEW* / IN THE HEADLINES / APRIL 29, 2020

## Corporate Attorney Jay Bettinger Joins Holland & Knight

PRESS RELEASE / APRIL 1, 2020

## Top Lawyer for Intelligence Community Jason Klitenic Returns to Holland & Knight to Launch National Security, Defense and Intelligence Team

PRESS RELEASE / MARCH 10, 2020

View More >



## AFFIDAVIT OF BENJAMIN BROWN

STATE OF NEW YORK
COUNTY OF WESTCHESTER            ss:

I, Benjamin Brown, do state that the following is true to the best of my knowledge.

1.  I reside at 155 Ferris Ave, Apt 9A, White Plains, NY 10603.

2.  I am Martin Gottesfeld's nephew and have known him for my entire life (approximately 33 years).

3.  I know Mr. Gottesfeld very well and, in my experience, he has always proven to be an upstanding and reliable individual.  I have no doubt that he will abide by any release conditions imposed by this Court.

4.  I am able and willing to pledge up to $ 20,000 to secure the release of Martin Gottesfeld.

_____
Benjamin Brown

SWORN TO BEFORE ME THIS _____ DAY OF _____, 2021

ATUL N MODI
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01MO6234649
Qualified in Westchester County
My Commission Expires:

Exhibit H

## AFFIDAVIT OF GREG BROWN

I, Greg Brown, do state that the following is true to the best of my knowledge.

1.  I reside at 2562 N Nugent Rd, Lummi Island, WA 98262.

2.  I am Martin Gottesfeld's nephew and have known him for my entire life (approximately 30 years).

3.  I know Mr. Gottesfeld very well and, in my experience, he has always proven to be an upstanding and reliable individual. I have no doubt that he will abide by any release conditions imposed by this Court.

4.  In the event that Mr. Gottesfeld is released pending his appeal, I would be willing and able to contribute up to $20,000.00 to secure his release.

Signed under the penalties of perjury this 7th of April, 2021.

Greg Brown



## AFFIDAVIT OF RYAN GRIM

I, Ryan Grim, do state that the following is true to the best of my knowledge.

1. I reside at 28 Dover Green Rd, West Dover VT 05356.

2. I am a co-founder of publishing house Strong Arm Press, as well as the Washington, DC Bureau Chief for The Intercept.

3. I have known Martin Gottesfeld since 2016.  In my interactions with him, Mr. Gottesfeld has always proven to be a responsible and truthful person.

4. In the event that Mr. Gottesfeld is released pending his appeal, I would be willing to offer him a position as a web developer at Strong Arm Press.


Signed under the penalties of perjury this ___4th day___ of May, 2021.


_____*Ryan Grim*_____
Ryan Grim

Exhibit J

Gloria Gottesfeld
651 Village Drive
Apt 202
Pompano Beach FL
33060

To Whom It May Concern;

My name is Gloria Gottesfeld. I am Martin Gottesfeld's adoptive mother and natural grandmother. I have a very close relationship with Marty. He has always been kind, trustworthy and honest. I am willing to pledge 1,000 dollars if he is released on bail. I am 91 years old so this is a very sad situation for me. I don't know if I'll live to see my dear Marty again.

Very truly yours,

Gloria Gottesfeld



## AFFIDAVIT OF DAMIAN MUSELLO

I, Damian Musello, do state that the following is true to the best of my knowledge.

1   I reside at 1101 Tech Valley Drive, Westford, MA 01886.

2.   I am the property manager at Green Home Realty and I manage Mr. Gottesfeld's residence at 28 Albion St.

3.   I have known Martin Gottesfeld for 8 years. I have lived in my home two doors away from he and his wife Dana from 1985 – 2020. While I now rent it out, I still come into town almost every day

4.   From my experience interacting with Mr. Gottesfeld, he has always proven to be a responsible and truthful person.

5.   In the event that Mr. Gottesfeld is released pending his appeal, I would be willing and able to check-in with him on a daily basis, or whatever other frequency that the Court may Order.

6.   If I find that Mr. Gottesfeld is not present in the apartment, I will immediately report that fact to probation.

Signed under the penalties of perjury this 2nd of April, 2021.

Damian Musello



## AFFIDAVIT OF BARBARA GREENE

I, Barbara W. Greene, do state that the following is true to the best of my knowledge.

1.    I reside at 34 Albion St., Apt 2, Somerville, MA 02143.

2.    I have known Martin Gottesfeld for 8 years.  I have lived in the apartment next door to he and his wife Dana since 2003.

3.    From my experience interacting with Mr. Gottesfeld, he has always proven to be a responsible and truthful person.

4.    In the event that Mr. Gottesfeld is released pending his appeal, I would be willing and able to check-in with him on a daily basis, or whatever other frequency that the Court may Order.

5.    If I find that Mr. Gottesfeld is not present in the apartment, I will immediately report that fact to probation.

Signed under the penalties of perjury this 26th of March, 2021.

BARBARA GREENE

Exhibit M

No. 18-1669, 19-1042. 19-1043 and 19-1107

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

---

UNITED STATES OF AMERICA,
Appellee,

v.

MARTIN GOTTESFELD,
Appellant.

---

On Appeal from U.S. District Court for the District of Massachusetts
Honorable Judge Nathaniel M. Gorton
District Court No. 1:16-cr-10305-NMG-1

---

## BRIEF OF APPELLANT MARTIN GOTTESFELD

---

Brandon Sample
**Brandon Sample PLC**
P.O. Box 250
Rutland, Vermont 05702
Phone: (802) 444-4357
Fax:   (802) 779-9590
Vermont Bar: 5573
Email: brandon@brandonsample.com
https://brandonsample.com

*Attorney for Martin Gottesfeld*

Dated: July 31, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ iii

REASONS WHY ORAL ARGUMENT SHOULD BE GRANTED......... vii

STATEMENT OF JURISDICTION ............................................... 1

STATEMENT OF THE ISSUES .................................................. 3

STATEMENT OF THE CASE....................................................... 5
   (a)  Justina Pelletier's Treatment Raises Public Concern .................... 5
   (b)  The DDoS Attacks And Their Impact.................................... 6
   (c)  The Government Obtains A PRTT And Search Warrant ............... 8
   (d)  The Speedy Trial Act Continuances ................................... 9
   (e)  The District Court Denies Gottesfeld's Speedy Trial Act Dismissal
       Motion, Motion To Suppress, And Precludes Gottesfeld From
       Introducing Evidence Of Affirmative Defense Of Defense Of
       Others. ............................................................... 13
   (f)  The District Court Denies Grimaldi's Motions To Withdraw,
       Threatens Gottesfeld With Obstruction Charges, And Closes The
       Courtroom ........................................................... 15
   (g)  The Jury Found Gottesfeld Guilty.................................... 22
   (h)  Gottesfeld Seeks Recusal Of Judge Gorton Pro Se ................... 22
   (i)  Sentencing............................................................ 23

SUMMARY OF ARGUMENT ................................................... 23

STANDARDS OF REVIEW...................................................... 26

ARGUMENT ..................................................................... 29

   (a)  The District Court Erred By Refusing To Dismiss Gottesfeld's
       Indictment on Speedy Trial Act Grounds.......................... 29

i

(1) The Motions To Exclude Time Were Not "Pretrial Motions" Under 18 U.S.C. § 3161(h)(1)(D) ...............................................29

(2) The District Court Did An End Run Around The 30-Day Limitation For Proceedings "Under Advisement"....................31

(3) The District Plan Conflicts With The STA................................36

(4) Judicial Estoppel Is Inapplicable..............................................40

(b) The Search Warrant Should Have Been Suppressed Because Judge Bowler Was Neither Neutral Nor Detached And Subject To Recusal ...............................................................................42

(c) The District Court Abused Its Discretion In Denying Grimaldi's Withdrawal Motions ....................................................................49

(d) The District Court Violated Gottesfeld's Public Trial Rights By Closing The Courtroom Five Times ..............................................54

(e) The District Court Erred In Denying Gottesfeld's Defense Of Others. ..........................................................................................57

(f) The Record Is Insufficient To Permit Appellate Review Of The District Court's Denial Of Gottesfeld's *Pro Se* Recusal Motions ...60

CONCLUSION.....................................................................................62

CERTIFICATE OF COMPLIANCE.....................................................63

CERTIFICATE OF SERVICE..............................................................63

# TABLE OF AUTHORITIES

## CASES

*Bloate v. United States*, 559 U.S 196 (2010) ........................................33, 37

*El Fenix de P.R. v. The M/Y Johanny,* 36 F.3d 136 (1st Cir. 1994).......61

*Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550 (5th Cir. 2014) ........40

*Gannett Co. v. DePasquale*, 443 U.S. 368 (1979)......................................55

*Gottesfeld v. McDonald*, No. 18-10376-NMG,
2018 U.S. Dist. LEXIS 40022 (D. Mass. Mar. 12, 2018) .........................38

*Hawaii v. Marley*, 509 P.2d 1095 (Haw. 1973) .........................................58

*In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001) ...................48

*In re Oliver*, 333 U.S. 257 (1948) .............................................................. 55

*Mawson v. United States*, 463 F.2d 29 (1st Cir. 1972) ............................28

*Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995) .........................................47

*Press-Enterprise Co. v. Superior Ct. of Cal.*, 464 U.S. 501 (1984) ....55, 56

*Smith, Jr. v. McDonald*, 458 Mass. 540 (2010) ........................................59

*United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994) ...............................56

*United States v. Barnes*, 159 F.3d 4 (1st Cir. 1998) .................................29

*United States v. Bello*, 194 F.3d 18 (1st Cir. 1999) .................................57

*United States v. Blackledge*, 751 F.3d 188 (4th Cir. 2014) .....................49

*United States v. Brodhead*, 714 F. Supp. 593 (D. Mass. 1989)...............58

*United States v. Brown*, 510 F.3d 57 (1st Cir. 2007) ................................27

*United States v. Gottesfeld*, 319 F. Supp. 3d 548 (D. Mass. 2018)..*passim*

*United States v. Irizarry-Colón*, 848 F.3d 61 (1st Cir. 2017) .................26

*United States v. Jorge*, 865 F.2d 6 (1st Cir. 1989)....................................30

*United States v. Laureano-Pérez*, 797 F.3d 45 (1st Cir. 2015)................28

*United States v. Maxwell*, 254 F.3d 21 (1st Cir. 2001)............................28

*United States v. Moody*, 977 F. 2d 1425 (11th Cir. 1992) .......................46

*United States v. Moody*, 977 F.2d 1420 (11th Cir. 1992) ........................46

*United States v. Pakala*, 568 F.3d 47 (1st Cir. 2009) ..................34, 35, 41

*United States v. Rasberry*, 882 F.3d 241 (1st Cir. 2018).........................27

*United States v. Reyes*, 352 F.3d 511 (1st Cir. 2003)...................27, 49, 53

*United States v. Richardson*, 421 F.3d 17 (1st Cir. 2005).......................30

*United States v. Rojo-Alvarez*, 944 F.2d 959 (1st Cir. 1991)...................30

*United States v. Rush*, 738 F.2d 497 (1st Cir. 1984) ..........................30, 34

*United States v. Santiago-Becerril*, 130 F.3d 11 (1st Cir. 1997).............29

*United States v. Souza*, 749 F.3d 74 (1st Cir. 2014)................................35

*United States v. Torres-Estrada*, 817 F.3d 376 (1st Cir. 2016).........28, 61

*Waller v. Georgia*, 467 U.S. 39 (1984) .................................................55, 56

*Weaver v. Massachusetts*, 582 U.S. __, 137 S.Ct. 1899 (2017) ...............55

*Zedner v. United States*, 547 U.S. 489 (2006) ................................ 33, 37, 40

## STATUTES

18 U.S.C. § 3161(b) ................................................................................ 10

18 U.S.C. § 3161(h)(1)(D) .................................................................... 29

18 U.S.C. § 3161(h)(1)(H) .................................................................... 31

18 U.S.C. § 3161(h)(7)(A) .............................................................. 32, 37, 38

18 U.S.C. § 3161(h)(7)(C) .................................................................... 35

## RULES

D. Mass. LR 40.1(k)(2) ......................................................................... 28

D.N.H. Supp. R. for Electronic Case Filing 3.1(d) ..................................... 11

Fed. R. App. P. 32(a)(5) ........................................................................ 63

Fed. R. App. P. 32(a)(6) ........................................................................ 63

Fed. R. App. P. 32(a)(7)(B) .................................................................... 63

Fed. R. App. P. 32(a)(7)(B)(iii) .............................................................. 63

Fed. R. Crim. P. 59(a) .......................................................................... 35

Maine Dist. Ct. Speedy Trial Plan ......................................................... 11

Plan for the Prompt Disposition of Criminal Cases § 5(c) ...................... 10

Plan for the Prompt Dispositoin of Criminal Cases § 5(c)(1)(A) ....... 30, 37

USDC-PR LR Cr. 106.................................................................................11

USDC-RI LR Cr. 6(c)................................................................................11

## OTHER AUTHORITIES

*Justina Pelletier Heading Home After 16-Month Medical Custody*
    Battle. ABCNews, June 18, 2014,
    https://abcnews.go.com/Health/justina-pelletier-heading-home-16-
    month-medical-custody/story?id=24191396 .........................................59

## REASONS WHY ORAL ARGUMENT SHOULD BE GRANTED

This appeal presents issues of first impression concerning the interpretation and application of the Speedy Trial Act ("STA") to defendants in this Circuit. In addition, this appeal raises important questions of law about a district court's obligation to permit withdrawal of court appointed counsel when an attorney asserts an actual conflict of interest between himself and his client. This appeal also raises an issue of first impression about the right to a public trial during pre-trial and post-trial hearings. Gottesfeld asserts that the Court's decisional process would be significantly aided by oral argument. Accordingly, Gottesfeld requests 20 minutes of argument.

# STATEMENT OF JURISDICTION

(a)    <u>Appeal No. 19-1107</u>

This is an appeal from a final judgment entered by the U.S. District Court for the District of Massachusetts. The district court exercised jurisdiction under 18 U.S.C. § 3231. The district court entered judgment on January 11, 2019. A timely notice of appeal was filed on January 22, 2019. This Court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

(b)    <u>Appeal No. 18-1669</u>

This is an interlocutory appeal by Gottesfeld's counsel from the denial of counsel's motion to withdraw. The district court ultimately permitted counsel to withdraw on December 13, 2018, but the propriety of the district court's earlier order is at issue in Appeal No. 19-1107.

(c)    <u>Appeal No. 19-1042</u>

This is an interlocutory *pro se* appeal by Gottesfeld from the district court's December 27, 2018 and January 3, 2019, orders denying Gottesfeld's motions for recusal.

(d)    <u>Appeal No. 19-1043</u>

This is a *pro se* interlocutory appeal from the district court's

December 13, 2018, order denying appointment of substitute counsel.

## STATEMENT OF THE ISSUES

1.      Whether a motion to exclude time is a "pretrial motion" under 18 U.S.C. § 3161(h)(1)(D) if the motion is not filed in the defendant's criminal case.

2.      Whether an order that does an end run around the 30-day limit for a proceeding "under advisement by the court" properly excludes time under the Speedy Trial Act.

3.      Whether the District of Massachusetts's Plan for the Prompt Disposition of Criminal Cases conflicts with 18 U.S.C. § 3161(h)(7)(A) by requiring the filing and adjudication of pre-indictment continuance motions on the miscellaneous business docket instead of "in the record of the case."

4.      Whether Gottesfeld's suppression motion should have been granted because the magistrate judge who issued the search warrant was neither neutral nor detached and was required to recuse herself.

5.      Whether the district court erred in denying David Grimaldi's motions to withdraw as Gottesfeld's counsel.

6.     Whether the district court violated Gottesfeld's right to a public trial by closing the courtroom, over Gottesfeld's objection, during five hearings.

7.     Whether the district court's orders denying Gottesfeld's *pro se* motions for recusal under 28 U.S.C. §§ 144 and 455(a) are sufficiently detailed to permit appellate review.

8.     Whether the district court erred in allowing the Government's motion *in limine* precluding Gottesfeld's "torture defense" based on defense of others.

4

## STATEMENT OF THE CASE

### (a)   Justina Pelletier's Treatment Raises Public Concern

Justina Pelletier ("Justina") was fourteen years old in February
2013 when her parents took her to Boston Children's Hospital ("BCH")
for care. Tufts Medical Center ("Tufts") had previously diagnosed
Justina with mitochondrial disease, but a BCH psychologist disagreed
concluding instead that Justin was suffering from a psychological
disorder. Justina's parents sought Justina's return to Tufts for
treatment, but BCH asked a juvenile court to place Justina in the care
of the Massachusetts Department of Children and Families ("DCF").
DCF, with BCH's support, then placed Justina in a BCH psychiatric
ward. [Gov't Ex. 35, JA4 1569–70; Search Warrant & Appl. ¶ 9, SJA 23–
24].

Justina's treatment by BCH and DCF received local and national
media attention. [Det. Hr'g Tr. 43, JA1 86]. Many in the public,
including Justina's family ("the Pelletiers"), felt BCH and DCF
unlawfully interfered with their parental rights. Concern was also
raised that Justina was being tortured. [Trial Tr. 3, 29, JA2 659].

In January 2014, BCH transferred Justina to Wayside Youth and Family Support Network ("Wayside"). Wayside is a non-profit that claims to provide services like clinical psychological support to at-risk youth, and students who are unable to attend public school. [Trial Tr. 2, 45–46, 191, JA2 434–35, 580]. Protests erupted following Justina's placement at Wayside and endured throughout February, March, and April 2014 regarding Justina's treatment and interference with the Pelletiers' parental rights. [Trial Tr. 2, 119–20, 124, 131, 150, 223, 228, JA2 508–09, 513, 520, 539, 612, 617; Detention Order 17, JA1 124]. These protests intensified after DCF was granted permanent custody of Justina on March 25, 2014, which prompted both the governor of Massachusetts and former presidential candidate and Fox News commentator Mike Huckabee to get involved. [Trial Tr. 2, 123–24, 192–93, JA2 512–13, 581–82; Det. Hr'g Tr. 52, JA1 95].

**(b)   The DDoS Attacks And Their Impact**

After permanent custody of Justina was assigned to DCF, problems plagued Wayside's email and computer networks. [Trial Tr. 2, 193, JA2 582]. Wayside consulted with Patrick Keaton of KDSA Consulting ("KDSA"), who concluded that Wayside was the target of a

6

Distributed Denial of Service ("DDoS") attack. Keaton testified at trial

about DDoS attacks:

> A denial-of-service attack is a cyber attack that targets a
> device such as a firewall or a server that's directly connected
> to the internet, and what that attack does is it sends a high
> amount of traffic to that particular device in attempts to
> disable its capabilities in terms of allowing it to function as
> it's designed to do.

[Trial Tr. 2, 69, JA2 458].

A March 25, 2014, tweet from Twitter user AnonMercurial2 to

Wayside also confirmed the DDoS:

> We need more people attacking 184.154.224.18. Fire up your
> VPN and Torshammer! #opjustina, #anonymous, #target.

[Trial Tr. 2, 72, JA2 461; Ex. 96, JA4 1583]. The attack on Wayside

lasted three to four weeks, until mid to late April 2014. *Id.* Justina was

released from Wayside in early May 2014. [Trial Tr. 2, 190, JA2 579].

A DDoS also ultimately disconnected BCH from the internet.

[Trial Tr. 4, 67, 70–71, 108, JA3 942, 945–46, 983]. On April 19, 2014,

BCH received a tweet from AnonMercurial:

> Website Troubles? We are #Anonymous. #FreeJustinaNOW
> or d0xes of your staff are next. HIPAA breach thereafter.
> Test us.

[Govt. Ex. 97E, JA4 1584].

In 2014, Harvard University provided internet access to BCH.
Indeed, Harvard provided internet connectivity to all of the hospitals in
the Longwood Medical Area network, each of which was affected by the
DDoS.  [Trial Tr. 4, 199, JA3 1074; Trial Tr. 5, 50–67, JA3 1136–53].
The Chief Information Security Officer at Beth Israel testified about the
severity and the scope of the attack; "So, it wasn't just Children's that
was down in this attack; it was Children's, it was Joslin, it was Dana-
Farber, Mass. General, Brigham and Women's, Beth Israel, and
Harvard Med School." [Trial Tr. 4, 195–96, JA3 1070–71].

### (c)  The Government Obtains A PRTT And Search Warrant

In the summer of 2014, the Government obtained authorization to
install a pen register and trap and trace ("PRTT") device on Gottesfeld's
internet account. [PRTT Order, DE 3, SJA 9–11]. The purpose of the
PRTT was to capture address and routing information relevant to the
DDoS attack against BCH. The Government noted in its application
that the DDoS disrupted the communications network used by BCH
and other "Harvard University affiliated hospitals." [PRTT Appl., SJA
4–5]. As part of the PRTT Application, the Government applied for

8

authority to record the "source and destination IP address and port of all electronic communications" of Gottesfeld's internet traffic. [PRTT Appl., SJA 5]. The lower court authorized the PRTT for 60 days. [PRTT Order, SJA 9–11].

The Government later sought a search warrant for Gottesfeld's residence. [Appl. Search Warrant, SJA 42; Search & Seizure Warrant, SJA 61]. The affidavit of Special Agent Tunick filed in support of the application for a search warrant reiterated the bases for the PRTT, including that the DDoS had affected the network used by "BCH and other Harvard University-affiliated hospitals." [Tunick Aff. ¶ 8, SJA 23]. Magistrate Judge Marianne B. Bowler authorized the warrant. Judge Bowler's husband is a cardiologist at Brigham and Women's Hospital and a professor at Harvard Medical School. *See* [Order DE 209 at 27, Addendum].

### (d)   **The Speedy Trial Act Continuances**

The Government filed a criminal complaint against Gottesfeld on February 16, 2016. [Compl., DE 3]. Gottesfeld was arrested in Florida the next day. [Det. Hr'g Tr. 6–34, JA1 49–77]. Over the next several months, the Government filed a total of six "assented to" continuance

9

motions in a miscellaneous case on the district court's "miscellaneous business docket" ("MBD"). Each sought to extend time for the Government to obtain an indictment. [DE 164-3 at 5, 11, 14, 17, 20, 25; JA1 177, 183, 186, 189, 192, 197]. Absent a continuance, the Government was required to indict Gottesfeld within 30 days of his arrest. 18 U.S.C. § 3161(b).

The continuance motions were filed in the district court's MBD, rather than Gottesfeld's criminal case, consistent with the district court's Plan for the Prompt Disposition of Criminal Cases ("District Plan").[1] According to the District Plan, pre-indictment continuance motions may only be filed by the United States Attorney in the MBD. *See* The Plan § 5(c), Addendum.

In contrast, every other district in this Circuit permits the filing of non-public continuance motions in the criminal docket. *See* Maine Dist.

---

[1]    The District Plan is accessible at http://www.mad.uscourts.gov/caseinfo/pdf/122008GenOrd08-5.pdf

10

Ct. Speedy Trial Plan at 2-3[2]; USDC-PR LR Cr. 106 at 105[3]; USDC-RI LR Cr. 6(c)[4]; D.N.H. Supp. R. for Electronic Case Filing 3.1(d).[5]

The Government filed the first continuance motion on March 1, 2016, seeking to exclude time under 18 U.S.C. §§ 3161(h)(1)(E), (h)(1)(F), and (h)(7)(A). [DE 164-3 at 5, JA1 177]. Therein, it asserted the desires of the parties to explore further plea negotiations as the basis to exclude time under § (h)(7)(A). [DE 164-3 at 5, JA1 177]. The court granted the motion the same day, March 1, 2016, excluding time from March 18, 2016 to April 22, 2016. [DE 164-3 at 8, JA1 180]. The court provided no detailed findings for its order. *Id.*

The Government filed the second continuance motion on April 11, 2016. [DE 164-3 at 11, JA1 183]. It again sought to exclude time under § 3161(h)(7)(A) so the parties could continue plea discussions. The court granted the second continuance motion on May 5, 2016, by electronic

---

[2] https://www.med.uscourts.gov/pdf/SpeedyTrialPlan.pdf
[3]
https://www.prd.uscourts.gov/sites/default/files/documents/94/Local_Rul
es_amended_as_of_Sept_2_2010_with_TOC%2015_0.pdf
[4] https://www.rid.uscourts.gov/sites/rid/files/documents/12-01-2018-
Rules.pdf
[5] http://www.nhd.uscourts.gov/pdf/Combined%20Local%20Rules%20-
%202019.pdf

order, without explanation. [DE 164-3 at 3, JA1 175]. The motion

sought to exclude time from April 22, 2016, through May 27, 2016.

The Government filed the third, fourth, and fifth continuance

motions respectively on May 20, 2016, June 30, 2016, and July 22, 2016.

[DE 164-3 at 3, 13–21, JA1 175, 185–93]. Each time the Government

sought to exclude time under § 3161(h)(7)(A) for the same reason: the

parties were waiting on Magistrate Judge Bowler's detention decision

before continuing plea negotiations, and when Judge Bowler, "issues

her decision, the parties will resume their [plea agreement]

discussions." [DE 164-3 at 14, 17, 20, JA1 186, 189, 192]. Judge Bowler

conducted Gottesfeld's detention hearing on April 27, 2016. The district

court granted the third and fourth continuance motions by electronic

order respectively on May 25 and June 30, 2016, without explanation.

[DE 164-3 at 3, JA1 175]. The Government sought to exclude time from

May 27, 2016, until July 1, 2016, and from July 1, 2016, until August 1,

2016. The fifth continuance motion was granted by electronic order, and

a separate form order was entered August 2, 2016, excluding time from

August 1 through September 9, 2016. [DE 164-3 at 22, JA1 194].

12

The Government filed the sixth and final continuance motion on August 26, 2016, and again sought to exclude time under § 3161(h)(7)(A) for plea negotiations. [DE 164-3 at 23–25, JA1 195–97]. The court granted this motion on August 29, 2016, by electronic order with no explanation. [DE 164-3 at 3, JA1 175]. The Government sought to exclude time from September 9, 2016, until October 10, 2016.

Gottesfeld was indicted on October 19, 2016. [Indictment, DE 28, JA1 130–43].

### (e)   The District Court Denies Gottesfeld's Speedy Trial Act Dismissal Motion, Motion To Suppress, And Precludes Gottesfeld From Introducing Evidence Of Affirmative Defense Of Defense Of Others.

The district court denied Gottesfeld's motion to dismiss the indictment on STA grounds in a published order. *United States v. Gottesfeld*, 319 F. Supp. 3d 548 (D. Mass. 2018). The district court rejected Gottesfeld's challenge to the court's use of the miscellaneous business docket, finding:

> Pursuant to 18 U.S.C. § 3165, each district is required to prepare a plan for the disposition of criminal cases consistent with the time standards of the Speedy Trial Act. Under the plan for the District of Massachusetts, pre-indictment motions for a continuance are properly filed with the judge assigned to "the miscellaneous business docket".

> Plan for the Prompt Disposition of Criminal Cases, District
> of Massachusetts, ¶ 5(c)(1)(A).
>
> Defendant contends that the District Plan violates the
> provision of the Speedy Trial Act that any ends-of-justice
> continuance include oral or written findings "in the record of
> the case". 18 U.S.C. § 3161(h)(7(A). The cases relied upon by
> defendant concern challenges to the Speedy Trial Act's post-
> indictment provision, 18 U.S.C. § 3161(c)(1), requiring that
> the trial of a defendant shall commence within 70 days from
> the filing of the information or indictment. *See Zedner*, 547
> U.S. at 492 ("In this case, petitioner's trial did not begin
> within 70 days of indictment."); *Bloate v. United States*, 559
> U.S. 196, 199, 130 S. Ct. 1345, 176 L. Ed. 2d 54 (2010). This
> Court declines to second guess the District Plan and its
> recognition of the importance of the secrecy of grand jury
> proceedings. Accordingly, the Court finds that pre-
> indictment continuances were made properly here on the
> miscellaneous business docket.

*Gottesfeld*, 319 F. Supp. 3d at 557–58. The district court also found that

the court's continuance orders necessarily adopted the party's proffered

rationale for the continuance motions as the court's STA findings. *Id.* at

559. The district court further concluded that Gottesfeld was judicially

estopped from challenging the court's STA rulings. *Id.* at 559–60.

    In that same order, the district court also denied Gottesfeld's

motion to suppress, finding that there was no basis to disqualify

Magistrate Judge Bowler from deciding whether to issue the search

warrant. *Id.* at 561–62.

Finally, the district court allowed the Government's motion *in limine* preventing Gottesfeld from introducing evidence on the affirmative defenses of necessity and defense of another. *Id.* at 552–53.

### (f)   The District Court Denies Grimaldi's Motions To Withdraw, Threatens Gottesfeld With Obstruction Charges, And Closes The Courtroom

Grimaldi first moved to withdraw as Gottesfeld's counsel on June 1, 2018, citing Gottesfeld's instruction to Grimaldi not to file anything further in the case except for a motion to withdraw. [DE 195, Supp. App. 105–08]. The district court denied this motion for lack of good cause. [DE 197 at 4, Addendum 53]. Grimaldi filed his second motion to withdraw on June 28, 2018. [DE 214, Supp. App. 109]. On July 6, 2018, during a hearing on the motion to withdraw, the district court closed the courtroom—over Gottesfeld's objection—to only Gottesfeld, his wife, and his counsel. [July 6, 2018 Hr'g Tr., DE 435 at 4–5, Supp. App. 121–22]. This resulted in the removal of a journalist from the proceeding who was present with Gottesfeld's wife. *Id.*

With the proceeding closed, Grimaldi explained to the district court that Gottesfeld had posted negative online attorney reviews about him and was "attempting to smear" him. [DE 435 at 11, Supp. App.

15

128]. This led Grimaldi to advise the district court that he could not

continue:

> But I do not believe I can effectively represent him anymore.
> It's not something I want to do. I've represented clients
> where we haven't always agreed. I've represented clients
> who were of their own opinions. I've represented clients who
> – where there's been challenges, but this is too much. This is
> too much. I can't tell you that, after what's happened, not
> before, but now, that I can adequately represent him.

[DE 435 at 12:6–14, Supp. App. 129]. Gottesfeld told the district court

that he did not want a new attorney and characterized the negative

online reviews about Grimaldi as "all protected speech." [DE 435 at

13:16, Supp. App. 130]. Gottesfeld further explained to the district court

that he did not want to represent himself and that he was not waiving

his "right to effective assistance of counsel." [DE 435 at 13:19–20, Supp.

App. 130].

The district court denied Grimaldi's second withdrawal motion,

*ore tenus*, finding that "an irreparable breakdown" between Gottesfeld

and Grimaldi did not exist. [DE 435 at 14, Supp. App. 131]. The district

court then reopened the proceedings to the public and told Gottesfeld

and his wife:

16

the Court warns Mr. Gottesfeld that, if you and/or those
acting on your behalf -- and I refer specifically to your wife,
Dana Gottesfeld -- persist in the internet or telephonic
conduct recently displayed, you and/or she may find
yourselves subject to an independent prosecution for
obstruction of justice under Title 18 of the United States
Code, Section 1503, and if you don't know what that says, I
commend it to your reading. This case is going to be resolved
one way or the other within the next month, so I would urge
you to avoid any similar activities in the meantime.

[DE 435 at 15:5–16, Supp. App. 132].

On July 12, 2018, Grimaldi filed an emergency motion to

withdraw as Gottesfeld's counsel arguing, "an actual conflict of interest

exists between counsel and the defendant; further, the attorney-client

relationship is irretrievably broken." [DE 241, Supp. App. 110–11]. The

motion was heard by U.S. District Judge Richard G. Stearns on July 16,

2018. [DE 248, Addendum 71–72]. At the hearing on the motion,

Grimaldi reiterated he could not continue:

> *I know that the actual conflict of interest that persists, exists*
> *and persists, in this case will prevent me from zealously*
> *representing him* now in light of recent events in the last
> days and weeks.
>
> I can't say that for another lawyer. I know many, as I'm sure
> the Court does, defense lawyers who will defend anybody,
> and I consider myself among those people, except when
> presented in circumstances like these.

17

I think that this case is deserving, and Mr. Gottesfeld is deserving, of zealous representation by a lawyer without an actual conflict of interest.

I'm not that lawyer. I was. I was. But in light of events in the last days and weeks, I'm not anymore.

*I no longer wish for his success in this case. I no longer wish for it. I can no longer represent him, consistent with my duties under the Rules of Professional Conduct.* I'm asking the Court for leave to withdraw because I have an actual conflict of interest.

...

Again, I wish to be very careful here. The Rules of Professional Conduct, in particular 1.16(a)(1), stating, "A lawyer shall withdraw from representation of a client if the representation will result in a violation of the Rules of Professional Conduct or other law" requires my withdrawal in this case.

Rule of Professional Conduct 1.7(a)(2), which states in pertinent part, "A lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if there is a significant risk that the representation of one or more clients will be materially limited by a personal interest of the lawyer."

Rule 1.3 states, "The lawyer should represent a client zealously."

*I cannot abide by these rules. I cannot represent Mr. Gottesfeld in light of what's happened in the last days and weeks. I cannot represent Mr. Gottesfeld zealously. There is a significant risk that the representation of Mr. Gottesfeld will be materially limited by a personal interest of me.*

18

There's cases, of course, that discuss these ethical obligations of counsel. One of many is Commonwealth v. *Croken*, C-R-O-K-E-N, 432 Mass. 266, a 2000 case, which at page 272 says that "An actual or genuine conflict of interest arises when the, quote, independent professional judgment of trial counsel is impaired either by its own interests or the interest of another client."

*Commonwealth v. Shraiar*, I'll spell the last name, S-H-R-A-I-A-R, 397 Mass. 16, a 1986 case, at page 20, speaks to "The defendant's right to the full and undivided loyalty of his client."

*Mr. Gottesfeld does not have my full and undivided loyalty* based on events of the last days and weeks.

I'm in a very difficult position here. I understand that. Mr. Gottesfeld's in a very difficult position here.

I am circumscribing my comments here in this courtroom and in my filings in a very significant way to reduce — to hopefully absolute *de minimis* what I must say in order to have the Court be assured of the genuine and actual conflict of interest. And, on top of that, of course, are the more discretionary factors, including my belief -- well, let me go right to the rule, your Honor.

Rule of Professional Conduct 1.16(b)(2), (4), (6), and (7), all of which justify my withdrawal in this case.

In that rule the rule writers allow the Court some discretion, saying that a lawyer may withdraw in those circumstances. But in no uncertain terms do the rules say that a lawyer shall not represent, in Rule 1.7(a)(2), and a lawyer shall withdraw under 1.16(a)(1).

19

You've read the submissions. I ask you to allow me to withdraw. What you do with the case thereafter, sending it back to Judge Gorton or whatever happens to this case, I wish that Mr. Gottesfeld gets counsel, zealous counsel, and he litigates his case. *But I cannot, and I can't imagine that I'll be able to, represent him at this trial and move him forward, as required under the ethical rules.*

[Case No. 1:18-mc-91297-RGS, July 16, 2018 Hr'g Tr., DE 10 at 7–8, 14–16, Supp. App. 141–42, 148–50] (emphasis added). Judge Stearns asked Gottesfeld if he still wanted to proceed with Grimaldi as his counsel despite Grimaldi's complaints. In response, Gottesfeld told Judge Stearns that he, "wouldn't put -- wouldn't use the word 'want,' but I would rather do that than any of my alternatives. I think it is the least undesirable of the alternatives that are before me at the moment." [DE 10 at 20–21, Supp. App. 154–55]. Further, when told by Judge Stearns that denial of Grimaldi's motion to withdraw would be construed as "waiving whatever conflict that has arisen between" Gottesfeld and Grimaldi, Gottesfeld took exception to any such waiver. [DE 10 at 18, Supp. App. 152 According to Gottesfeld, he was unable to waive any conflict based on the attachments to Grimaldi's motion because he had not seen the attachments and was therefore, "not in a

20

position to make a knowing waiver of their contents." [DE 10 at 18, Supp. App. 152].

Judge Stearns denied Grimaldi's motion to withdraw on July 16, 2018. [DE 248, Addendum 71–72].

Following the trial in the case, Grimaldi again moved to withdraw as Gottesfeld's counsel. [DE 307, Supp. App. 114–15]. Gottesfeld assented to this motion provided the court appoint new counsel and his sentencing hearing remained as scheduled. [DE 307 at 2, Supp. App. 115]. Grimaldi asserted the same basis for this motion: the continuing actual conflict of interest that existed between himself and Gottesfeld.

The district court conducted a hearing on Grimaldi's motion on September 24, 2018. [DE 319].

[6] [Sept. 24, 2018 Hr'g Tr., DE 422 at 14, Sealed Supp. App. 66]. The Court denied Grimaldi's motion. [DE 319].

On December 7, 2018, Grimaldi filed another emergency motion to withdraw as Gottesfeld's counsel

---

Redactions concern information and materials filed under seal and referenced in the Sealed Supplemental Appendix ("SSA").

21



██████████████████████████. [DE 335, Supp. App. 116–17;

Dec. 13, 2018 Hr'g Tr., DE 423 at 3–14, SSA 90–101]. The district court

conducted a hearing on the motion and granted Grimaldi leave to

withdraw over Gottesfeld's objection, ████████████████████

████████████████████████. [Order, DE 338; DE

339; DE 423 at 11–12, SSA 98–99].

[DE 423 at 11, SSA 98]. ████████████████████

████████████████████████████████ [DE 423 at

11, SSA 98].

## (g)    The Jury Found Gottesfeld Guilty

The jury found Gottesfeld guilty of conspiracy and intentionally

damaging a protected computer causing a loss over $5,000. [Verdict, DE

301, JA4 1661–62].

## (h)    Gottesfeld Seeks Recusal Of Judge Gorton Pro Se

Gottesfeld, as promised, moved for Judge Gorton's recusal under

28 U.S.C. §§ 144 and 455 after Grimaldi was allowed to withdraw,

22

accompanying the motions with a detailed affidavit. [DE 344, 345, 346, 347]. Similarly, as promised, the district court denied Gottesfeld's motions without explanation. [DE 350, 351, 352, Addendum 122–124].

**(i)   Sentencing**

The district court sentenced Gottesfeld to 121 months' imprisonment, three years of supervised release, and ordered him to pay $442,930 in restitution in addition to a $200 special assessment.

This timely appeal follows.

## SUMMARY OF ARGUMENT

It took 246 days from the date of Gottesfeld's arrest for Gottesfeld to be indicted. It took 50 days to bring Gottesfeld from the Southern District of Florida to the District of Massachusetts and 71 days from the time of his arrest for Gottesfeld to receive a detention hearing. By the time the detention order was issued on July 27, 2016, Gottesfeld had been in custody for 162 days.

After properly accounting for excludable days, the delay Gottesfeld endured was well outside the 30-day limit permitted under the STA. He moved to dismiss the indictment based on violations of the STA, but the district court denied Gottesfeld's motion concluding it would not second-

23

guess the District Plan and that judicial estoppel precluded Gottesfeld from arguing against previously sought continuances. The district court erred in denying the motion.

First, the continuance motions filed on the MBD are not "pretrial motions" under the STA. Second, the STA was violated when Magistrate Judge Bowler held Gottesfeld's detention "under advisement" for 92 days, far exceeding the 30-day limit permitted by the STA. Furthermore, the additional 60 days were not excludable because plea negotiations were not ongoing. Third, the District Plan's requirement to adjudicate pre-indictment continuance motions on the MBD conflicts with the STA's requirement that the court set forth its findings "in the record of the case." Finally, the district court was wrong to employ judicial estoppel because Gottesfeld filed a timely motion to dismiss for violations of the STA. Courts cannot abrogate the unambiguous requirements of statutes, Gottesfeld had no ability to object to the process required by the District Plan other than by a motion to dismiss, and he had no ability prospectively to object to the lack of findings by the district judge.

Gottesfeld moved to suppress the evidence obtained from the PRTT order, arguing, in part, that the magistrate judge who issued the warrant was not a neutral judicial officer as her husband was a victim of the offense and she should have withdrawn. The district court determined that Dr. Pfeffer's work was not seriously implicated; however, there is sufficient evidence to conclude the DDoS attacks had a significant impact on Dr. Pfeffer and his colleagues such that Magistrate Judge Bowler's impartiality might reasonably be called into question and she should have disqualified herself.

Gottesfeld's trial attorney filed five motions for leave to withdraw between June and August 2018 before the court granted Grimaldi's request to withdraw in December 2018. Gottesfeld and Grimaldi repeatedly demonstrated a significant conflict of interest that resulted in a total lack of communication and the court erred in denying Grimaldi's earlier motions to withdraw.

The district court closed the courtroom during five separate hearings over the objection of Gottesfeld. When closing the courtroom during the hearings on motions to withdraw by Attorneys Gillespie and Grimaldi, the court failed to make any findings that an overriding

25

interest made closure essential or that there were no other suitable alternatives to closure. These closures violated Gottesfeld's right to a public trial.

The district court erred in denying Gottesfeld the opportunity to present the affirmative defense of others because evidence establishes that Gottesfeld acted in the defense of Justina Pelletier against the immediate use of unlawful force.

Finally, Gottesfeld filed motions *pro se* seeking the disqualification and recusal of Judge Gorton pursuant to 28 U.S.C. §§ 144 and 455. Prior to the actual filing of the motions, Judge Gorton informed Gottesfeld that his motions would be denied. Ultimately, the motions were denied by endorsed order and the record is insufficient to permit appellate review of the district court's denials.

## STANDARDS OF REVIEW

**(a)** **Speedy Trial Act**

This Court reviews a district court's legal conclusions *de novo* and its factual findings for clear error when deciding whether the Speedy Trial Act was violated. *United States v. Irizarry-Colón*, 848 F.3d 61, 65 (1st Cir. 2017).

26

**(b)**   **Suppression Motion**

This Court, when considering whether a motion to suppress should have been granted, reviews a district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Rasberry*, 882 F.3d 241, 246 (1st Cir. 2018). Further, this Court considers the entirety of the record when reviewing the denial of a motion to suppress. *United States v. Brown*, 510 F.3d 57, 64 n.6 (1st Cir. 2007).

**(c)**   **Denial of Attorney Withdrawal Motions**

This Court reviews the denial of an attorney withdrawal motion for abuse of discretion. *United States v. Reyes*, 352 F.3d 511, 515 (1st Cir. 2003). This Court considers, "the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." *Id.*

**(d)**   **Violation of Public Trial Right**

This Court reviews *de novo* whether a district court's partial or total closure of a courtroom violated a defendant's Sixth Amendment

27

right to a public trial. *United States v. Laureano-Pérez*, 797 F.3d 45, 76 (1st Cir. 2015).

**(e)** **Affirmative Defense of Another**

This Court reviews *de novo* the denial of the right to present an affirmative defense. *United States v. Maxwell*, 254 F.3d 21, 26 (1st Cir. 2001).

**(f)** **Recusal For Judicial Bias**

The denial of a motion for recusal is reviewed for abuse of discretion. *United States v. Torres-Estrada*, 817 F.3d 376, 380 (1st Cir. 2016).

**(g)** **Reassignment to a Different Judge on Remand**

Reassignment to a different district judge on remand is appropriate if doing so is for the "judge's sake, and the appearance of justice." *Mawson v. United States*, 463 F.2d 29, 31 (1st Cir. 1972). District of Massachusetts's Local Rule 40.1(k)(2) requires that further proceedings conducted by the district court, "shall not be conducted before the district judge before whom the prior proceedings were conducted," except under circumstances further prescribed by D. Mass. LR 40.1(k)(2).

28

# ARGUMENT

## (a)   The District Court Erred By Refusing To Dismiss Gottesfeld's Indictment on Speedy Trial Act Grounds

### (1)   The Motions To Exclude Time Were Not "Pretrial Motions" Under 18 U.S.C. § 3161(h)(1)(D)

The STA automatically excludes time tied to "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). The STA does not define "pretrial motion." Gottesfeld now argues that the six continuance motions filed in the MBD were not "pretrial motions" under 18 U.S.C. § 3161(h)(1)(D); therefore, the 13 days spent considering those motions are non-excludable and the indictment was untimely filed.

This Court has "read the term 'pretrial motion' broadly to encompass all manner of motions, ranging from informal requests for laboratory reports to 'implied' requests for a new trial date." *United States v. Barnes*, 159 F.3d 4, 11 (1st Cir. 1998); *see also United States v. Santiago-Becerril*, 130 F.3d 11, 17 (1st Cir. 1997) (notification by counsel of availability after a continuance treated as an implied motion for a new trial date); *United States v. Jorge*, 865 F.2d 6, 11 (1st Cir.

1989) ("request for discovery" close enough to a motion to be considered at least an "other proceeding" subject to exclusion); *United States v. Richardson*, 421 F.3d 17, 27–29 (1st Cir. 2005).

But not everything is a "pretrial motion." For example, in *United States v. Rush*, 738 F.2d 497, 505 (1st Cir. 1984), this Court held that an offer of proof is not a "pretrial motion." *Id*. Similarly, this Court has refused to treat a motion *in limine* as a "pretrial motion" from the point after a district court states its intention not to rule on the motion until trial. *United States v. Rojo-Alvarez*, 944 F.2d 959 (1st Cir. 1991).

This Court should similarly conclude that the six continuance motions were not "pretrial motions" because they were never filed in the actual criminal case, but instead in the MBD. Only the Government may move for a "pre-indictment" continuance in the MBD. *See* District Plan § 5(c)(1)(A). A one-sided proceeding in a non-criminal, sealed case where only one party may participate is not "pretrial" in any sense of the word. Moreover, allowing motions filed on other sealed dockets to automatically exclude time in a separate criminal case undermines the purpose of the STA, as it did in the instant case. Never before has this Court treated a motion filed outside the criminal case in a sealed, one-

30

sided proceeding as a "pretrial motion." The Court should decline to do so now.

The court's misclassification of the continuance motions as pre-trial motions is material because the court originally (and improperly) excluded the 13 pre-indictment days it spent considering the continuance motions. *United States v. Gottesfeld*, 319 F. Supp. 3d 548, 558–59 (D. Mass. 2018). There is no dispute that 26 pre-indictment days are non-excludable. *Id.* at 557. Thus, when the 13 days are added to the 26 non-excludable days, the 30-day limitation is exceeded and the indictment is untimely filed. Accordingly, the district court erroneously denied Gottesfeld's STA motion and the judgment must be reversed.

    (2)   <u>The District Court Did An End Run Around The 30-Day Limitation For Proceedings "Under Advisement"</u>

Pursuant to the STA, up to 30 days may be excluded during a period when a proceeding is "under advisement by the court." 18 U.S.C. § 3161(h)(1)(H). In this case, Gottesfeld's detention hearing was held on April 27, 2016, and it took 92 days for Magistrate Judge Bowler to issue her detention decision on July 27, 2016. [Detention Hr'g Tr. DE 19, JA1

44–107; DE 25]. Due to the 30-day arrest to indictment requirement, the time after May 27, 2016, was not excludable under § 3161(h)(1)(H).

Between May and July 2016, the Government filed the third, fourth, and fifth continuance motions seeking to exclude time under § 3161(h)(7)(A) because the parties were waiting on Magistrate Judge Bowler to issue her detention decision so plea negotiations could "resume." [DE 164-3 at 13–21, JA1 185–93]. The third, fourth, and fifth continuance motions collectively sought to exclude time from May 27, 2016, until September 9, 2016; however, the maximum period of time that could be excluded for Judge Bowler to consider Gottesfeld's detention was 30 days, or until May 27, 2016.

The district court cannot circumvent the 30-day limitation for proceedings "under advisement" by treating the continuances as arising under § 3161(h)(7)(A) because even if the particular circumstances of the plea negotiations during that time are within *"the ends of justice"* exclusion, the court failed to set forth its findings "in the record of the case." 18 U.S.C. § 3161(h)(7)(A).

The "third, fourth and fifth motions make clear that the parties agreed to wait for the detention decision of the magistrate judge *before*

32

*resuming plea negotiations.*" [DE 209 Order at 22, Addendum 33 (emphasis added)]. The language of those three motions suggests that plea negotiations were not active while the magistrate judge considered the detention order, calling into question the legitimate bases to exclude time under the STA. Conversely, if plea negotiations were active and ongoing while the parties waited for a detention decision, the court failed to make findings in the record of the case that support further continuance and exclusion of time under § 3161(h)(7)(A).

First, the motions to exclude time and related orders granting continuances were filed in the MBD, not "the record of the case." All motions and orders were in a sealed civil docket, while the case at issue is an unsealed criminal docket—they are not the same case. *See Bloate v. United States*, 559 U.S 196, 209 (2010); *Zedner v. United States*, 547 U.S. 489, 506–07 (2006) (discussion requirement to set forth reasons in record of case).

Second, the orders to exclude time lacked the requisite oral or written statement of reasons supporting the court's findings. In the docket for 16-mc-91064-ADB, there were five "Electronic Order" notations in response to motions filed April 11, May 20, June 30, July

33

22, and August 26, 2016. [DE 164-3 at 3, JA1 175]. Yet, the Electronic Order was not accompanied by an oral or written statement of reasons on the record. The July 22, 2016, motion was the only motion accompanied by a written "Order of Excludable Delay," which also failed to state why the ends of justice were served by the requested continuance. [DE 164-3 at 22, JA1 194].

This Court has acknowledged that "a court need not 'articulate the basic facts when they are obvious and set forth in a motion for a continuance." *Gottesfeld*, 319 F. Supp. 3d at 559 (citing *United States v. Pakala*, 568 F.3d 47, 60 (1st Cir. 2009) (quoting *United States v. Rush*, 738 F.2d 497, 507 (1st Cir. 1984)). However, a court cannot adopt the contents of motions where the facts and law in the motion do not correspond to operative facts and law—30 days after the detention hearing, exclusion based on Magistrate Judge Bowler's continued consideration was no longer a legal basis to exclude days. Since the third, fourth, and fifth motions to exclude time expressly acknowledge that plea negotiations will not resume until a detention decision is issued, a continuance under § 3161(h)(7)(A) is also not supported by the law or facts and the court cannot rely on its "stock electronic order" in

34

lieu of making findings on the record justifying a continuance. *Pakala*, 568 F.3d at 60.

Finally, "general congestion of the court's calendar" cannot serve as a basis for a § 3161(h)(7)(A) continuance. 18 U.S.C. § 3161(h)(7)(C). Yet, the Court's order effectively rested on this basis since the third, fourth, and fifth motions expressly acknowledge, "the parties agreed to wait for the detention decision of the magistrate judge." Indeed, the additional 60 days past May 27, 2016, it took for the court to enter the detention order violated the STA.

As this Court has held, "neither counsel nor district courts may employ measures for excluding time from the speedy trial clock that impermissibly frustrate the STA's purpose of protecting the shared interest of criminal defendants and the public in bringing criminal charges to the bar of justice as promptly as practicable." *United States v. Souza*, 749 F.3d 74, 80 (1st Cir. 2014) (internal quotations omitted).

Prompt adjudication of detention as required explicitly by Fed. R. Crim. P. 59(a) is a core part of "bringing criminal charges to the bar of justice as promptly as practicable." Instead, through no fault of his own, Gottesfeld languished for 50 days in custody before his initial

35

appearance and 162 days without a detention order. The court and the Government illegitimately and prejudicially forced Gottesfeld to choose between his right to a speedy trial and his right to make decisions informed by the court's prompt detention decision. By the time of Gottesfeld's eventual indictment 246 days after his arrest, he had run out of money to pay his attorney of choice and was forced to accept appointed counsel. [Letter Regarding Counsel, DE 44].

With time after May 27, 2016, deemed non-excludable, the Government far exceeded the 30-day limit for bringing an indictment against Gottesfeld. The district court erred in denying Gottesfeld's motion to dismiss the indictment on STA grounds and its judgment must now be reversed.

### (3)   The District Plan Conflicts With The STA

The STA provides as follows:

> No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, *in the record of the case*, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A) (emphasis added). In this matter, "the case" refers to Gottesfeld's criminal case, and if his case were pending in any other district in this Circuit (other than Massachusetts), consideration of continuance motions would be reflected in the criminal docket. *See supra*, Statement of the Case. The District Plan, however, requires the adjudication of pre-indictment continuance motions in the MBD and directly conflicts with the STA's mandate to make findings, "in the record of the case." *Compare* District Plan § 5(c)(1)(A), *with* 18 U.S.C. § 3161(h)(7)(A).

While the district is entitled to create its own plan, its operating procedures cannot violate the STA. *See Zedner v. United States*, 547 U.S. 489 (2006) (finding procedure of requiring defendant to sign pre-printed form created by district court to prospectively waive application of the Act violated the STA). Well-accepted principles of statutory construction require "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Bloate*, 559 U.S. at 209 (internal quotations omitted). Thus, the District Plan cannot render "superfluous, void or insignificant" the STA's explicit requirement that the court place

its findings "in the record of the case." Likewise, the STA requires the same judge that granted the continuance motion to make the findings: "[a]ny period of delay resulting from a continuance granted by a judge . . . if the judge granted such continuance on the basis of *his* findings." § 3161(h)(7)(A). The STA clearly envisions that continuance motions must be filed in the criminal case so that motions can be disposed of by the same judge that sets forth the reasons for their findings in the record of the criminal case.

The conflict between the MBD and criminal docket is not the only instance where the district court distinguished between Gottesfeld's criminal case and other motions brought by the Defendant in a collateral civil case:

> [T]he remedies sought by petitioner are more appropriately sought, if at all, from the judge handling the criminal case.
> . . .
> For almost one hundred years, courts have consistently held that a federal criminal defendant who seeks to challenge some aspect of an ongoing federal criminal prosecution must bring his claims in the criminal case itself.

*Gottesfeld v. McDonald*, No. 18-10376-NMG, 2018 U.S. Dist. LEXIS 40022, *2–3 (D. Mass. Mar. 12, 2018) (citations omitted).

The Government also advanced this view:

38



[Mar. 9, 2018 Hr'g Tr., DE 432 at 3:18–4:9, SSA 3–4]. The Government,
having admitted that Case Numbers 16-cr-10305 and 18-cv-10376 are
separate cases, should now be estopped from arguing that Case
Numbers 16-cr-10305 and 16-mc-91064 are the same case.

The district court dismissed Gottesfeld's STA challenge on the
basis that it would not "second guess the District Plan and its
recognition of the importance of the secrecy of grand jury proceedings."
*Gottesfeld*, 319 F. Supp. 3d at 557–58. But "the secrecy of grand jury
proceedings" is easily protected "in the record of the case" by sealing
pre-indictment continuance motions, as opposed to violating the STA by
requiring pre-indictment continuances to be adjudicated in the MBD.
Moreover, district courts cannot have the power to adopt STA plans,
like the District Plan, that conflict with the STA. *See Zedner*, 547 U.S.

39

at 506–508 (noting that the "provisions of the Act are unequivocal" and discussing the requirement that findings be put on the record). The district court's order denying Gottesfeld's STA motion must be reversed.

### (4)   Judicial Estoppel Is Inapplicable

The district court held, "the orders excluding time were appropriate under the ends-of-justice provision of the Speedy Trial Act and that defendant is judicially estopped from advancing a position contrary to his earlier assent." *Gottesfeld*, 319 F. Supp. 3d at 560. Gottesfeld cannot waive the application of the STA and the Court must reject the district court's application of judicial estoppel.

First, judicial estoppel is inapplicable, "when the court requires the party to adopt the position it later seeks to contradict." *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 555–56 (5th Cir. 2014) (citing *Zedner*). That is what happened to Gottesfeld. Through its District Plan, the district court required the continuance motions to be litigated in the MBD. Gottesfeld filed a timely motion to dismiss for violations of the STA and he was unable make the type of prospective waiver rejected in *Zedner* because he could not object to the filings on the MBD as required by the District Plan, nor could he waive the STA violations

for failing to make findings on the record in his case. Thus, the Court cannot judicially estop Gottesfeld from arguing that the District Plan violates the STA or that pre-indictment continuance motions filed in the MBD do not qualify as "pretrial motions."

Second, judicial estoppel does not apply to Gottesfeld's argument that the third, fourth, and fifth continuance motions were granted in violation of § 3161(h)(7)(A). This Court in *Pakala* found that judicial estoppel precluded a defendant from asserting, "statutorily authorized exclusions of delay" and later arguing, "the district court failed to credit its grounds." 568 F.3d at 59. This case is easily distinguished because Magistrate Judge Bowler's failure to decide Gottesfeld's detention motion within 30 days is the opposite of a "statutorily authorized exclusion[] of delay." The court exceeded the 30-day limit permitted under the STA by at least 60 days and Gottesfeld cannot be judicially estopped from arguing such a delay was in violation of the STA. Accordingly, the Court must hold that judicial estoppel does not bar Gottesfeld's STA challenges.

**(b)**   **The Search Warrant Should Have Been Suppressed Because Judge Bowler Was Neither Neutral Nor Detached And Subject To Recusal**

In his motion to suppress and its supplements, Gottesfeld argued that Magistrate Judge Bowler was neither neutral nor detached when she issued the search warrant because of her spousal relationship and her husband's ties to institutions affected by the DDoS. Her husband, Dr. Marc A. Pfeffer, is a professor at Harvard Medical School and a senior cardiologist at Brigham and Women's Hospital. The DDoS, as discussed in the Statement of the Case, affected the Harvard communications network used by Dr. Pfeffer and his colleagues at Harvard Medical School, Brigham and Women's, and other affiliated hospitals.

In ruling on the motion, the district court agreed that:

A magistrate judge issuing a search warrant must be a "neutral, detached officer capable of determining whether probable cause existed". *United States v. Soule*, 908 F.2d 1032 (1st Cir. 1990) (internal citation omitted). Where a magistrate judge does not have the requisite neutrality and detachment she "cannot provide valid authorization for an otherwise unconstitutional search". *United States v. Leon*, 468 U.S. 897, 914 (1984).

42

*Gottesfeld*, 319 F. Supp. 3d at 561. The district court nevertheless found that an organizational victim is not a party to a proceeding so as to require recusal and that Dr. Pfeffer lacked a financial interest that required the recusal of Judge Bower. *Id.* The district court concluded there was "no evidence that a cyber attack on a computer network seriously implicate[d] Dr. Pfeffer's work in any way." *Id.*

As set forth in the Statement of the Case, however, the Government elicited from its witnesses overwhelming testimonial evidence regarding the reference in the Warrant Affidavit that the DDoS affected the communications lines between Harvard Medical School and Brigham and Women's Hospital as much as it did BCH's. During the detention hearing in front of Magistrate Judge Bowler, the Government discussed the massive disruptions experienced by BCH and other hospitals affiliated with Harvard University: physicians could not access electronic patient records, place orders with pharmacies, or communicate with patients through the hospital portal, and fundraising was disrupted. [Detention Hr'g Tr. 55–56, JA1 98–99]. This disruption was severe and implicated all levels of the hospital's operations.

43

Testimony presented at sentencing further illuminated the personal

trauma the DDoS effected on doctors working in those institutions.

Dr. Nigren testified at Gottesfeld's sentencing. Although Nigren's

testimony pertained mostly to BCH, some of it clearly applied to other

Harvard hospitals affected by the DDoS:

> We had to shut down our email system to make sure none of
> that malware made it through. That's an incredibly
> disruptive set of steps. So from the prospective of our patient
> care providers, we weren't able to route prescriptions
> electronically, our pharmacists had to consult paper books to
> go look up formulary information to make sure that
> medications were being administered properly, we weren't
> able to have care-coordination conversations that normally
> happen electronically occurring between teams caring for
> real patients in the Hospital, and we weren't even able to do
> some mundane things like schedule patients for visits
> because they rely on email in many instances.
>
> ***
>
> It wasn't just confined to the four walls of our organization
> as well. As I mentioned before, we have referring physician
> portals, we have providers from all over the Commonwealth
> who refer patients to us for care, whether it's for a simple
> testing, radiological testing, lab testing or for some specialty
> evaluation. And all of those things are checked in on by
> those referring providers out in the community via our
> provider portals. Those things were all disrupted during this
>
> event. So that the impact was far more than just the
> patients and providers within our four walls; they extended
> much broader than that.

44

> And then, finally the impact on our research is not
> something I should forget. Research is a huge component of
> what we do at Boston Children's, and we had many clinical
> research studies that depend on internet access for data
> acquisition, and those needed to be interrupted during this
> time. And in some instances, it potentially jeopardized their
> research studies because of that interruption in the data-
> acquisition steps.

[Sentencing Tr., 48–50, JA4 1642–44]. Another witness confirmed the

extent of the attack, noting "it wasn't just Children's that was down in

this attack; it was Children's it was Joslin, it was Dana-Farber, Mass.

General, Brigham and Women's, Beth Israel, and Harvard Med School."

[Trial Tr. 4, at 196; JA3 1071].

The Government also acknowledged the wide-ranging effects in its

closing argument:

> A DDoS attack that hit not only Children's Hospital but each
> of the 65,000 IP addresses that institutions in the Longwood
> Medical Area counted on for their internet connections, the
> Brigham and Women's Hospital, the Beth Israel, the Dana-
> Farber Cancer Institute, the Harvard Medical School.
>
> This wasn't some inconvenience . . . .

[Trial Tr. 7, at 6, JA4 1455]. This was not a financial crime that affects

an institution but does not ruffle the feathers of those who work within

it. The personnel that experienced the DDoS first-hand were directly

45

and profoundly affected. Magistrate Judge Bowler's husband was one of those people.

Personal contact with victims of an attack by a particular perpetrator is a well-recognized basis for recusal. For example, in *United States v. Moody*, U.S. Circuit Court Judge Robert S. Vance and civil rights attorney Robert E. Robinson were killed by homemade package bombs sent by Walter Leroy Moody, Jr. *United States v. Moody*, 977 F.2d 1425, 1428 (11th Cir. 1992). Thereafter, the entire Northern District of Georgia as well as all judges then sitting in the Eleventh Circuit withdrew from this case. The appeal, although processed through the Eleventh Circuit, was heard by a panel of Fourth Circuit judges. *See id.* (as to district court); *United States v. Moody*, 977 F.2d 1420, 1423 (11th Cir. 1992) (as to appellate judges). No one questioned the propriety of recusal given the personal and professional connection between Judge Vance and the other judges of the courts in which he presided.

Conversely, when Timothy McVeigh and Terry Nichols were charged in a federal district court in Oklahoma City with blowing up the Murrah Federal Building, which was only a few blocks away from

the federal courthouse, the Tenth Circuit reversed a district court's

refusal to withdraw. *See Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995).

In doing so, it noted the following:

> 28 U.S.C. § 455(a) ... states that a judge "shall disqualify
> himself in any proceeding in which his impartiality might
> reasonably be questioned." In order to "promote public
> confidence in the integrity of the judicial process," the
> statute was broadened in 1974 by replacing the subjective
> standard with an objective test. *Liljeberg v. Health Sers.
> Acquisition Corp.*, 486 U.S. 847, 858 n. 7, 108 S.Ct. 2194,
> 2202 n.7, 100 L.Ed.2d 855 (1988). "[W]hat matters is not the
> reality of bias or prejudice but its appearance." *Liteky v.
> United States*, __ U.S. __, __, 114 S.Ct. 1147, 1154, 127
> L.Ed.2d 474 (1994).

*Nichols,* 71 F.3d at 350. Judge Alley had staff, associates, and family

members of staff and associates impacted by the alleged crime and his

impartiality was drawn into question. *Id.*

Similarly, the facts presented by the Government at trial and

sentencing in this case irrefutably establish that the "disruption to the

network on which BCH and other Harvard University-affiliated

hospitals communicate" referenced in the Warrant Affidavit was

devastating to the individual doctors and other personnel who worked

in those hospitals, including Magistrate Judge Bowler's husband.

[Warrant Aff. ¶ 8, SJA 23]. The magnitude of the interruption could not

have been lost on either Dr. Pfeffer or his wife. Anyone who knew of the effect of the DDoS on the workings of the hospitals involved would reasonably question the impartiality of a judicial officer whose spouse was directly impacted. Indeed, Chief District Judge Saris recused herself *sua sponte* from the case when she became aware that Anonymous was alleged to be involved in the crime; in 2013, the United States Sentencing Commission was attacked by a group that called itself Anonymous and she was the Chair of the Sentencing Commission. On that basis alone, she rightly noted her impartiality could reasonably be questioned. *See* [Order of Recusal DE 33, Addendum 49].

Where the question concerning recusal is a close one, "the balance tips in favor of recusal." *In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001). Magistrate Judge Bowler was neither neutral nor detached and the law required she recuse herself consistent with 28 U.S.C. § 455. Accordingly, the district court's order denying Gottesfeld's motion to suppress must be reversed.

48

**(c)  The District Court Abused Its Discretion In Denying Grimaldi's Withdrawal Motions**

The district court erred in denying attorney David Grimaldi's motions to withdraw as Gottesfeld's counsel. In deciding whether withdrawal must be granted, this Court considers "the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." *Reyes*, 352 F.3d at 515. Further, although Grimaldi filed the motions instead of Gottesfeld, the district court was still required to "thoroughly inquire into the factual basis of any conflicts asserted by counsel." *United States v. Blackledge*, 751 F.3d 188, 194 (4th Cir. 2014).

Here the district court was confronted with multiple motions to withdraw wherein Grimaldi argued, *inter alia*, that he could not proceed:

> But I do not believe I can effectively represent him anymore.
> It's not something I want to do. I've represented clients
> where we haven't always agreed. I've represented clients
> who were of their own opinions. I've represented clients who
> — where there's been challenges, but this is too much. This is

49

> too much. I can't tell you that, after what's happened, not
> before, but now, that I can adequately represent him.

[DE 435 at 12:6–14, Supp. App. 129]. The district court denied the

motion finding there was not an "irreparable" breakdown in

communication. [DE 435 at 14:1–5, Supp. App. 131].

Grimaldi then filed an emergency motion to withdraw on July 12,

2018. He argued, "an actual conflict of interest exists between counsel

and the defendant; further, the attorney-client relationship is

irretrievably broken." [DE 241 at 1, Supp. App. 111]. Judge Richard G.

Stearns heard the motion. During the motion hearing, Grimaldi

described the problem at length:

> *I know that the actual conflict of interest that persists, exists
> and persists, in this case will prevent me from zealously
> representing him* now in light of recent events in the last
> days and weeks.
>
>
> I think that this case is deserving, and Mr. Gottesfeld is
> deserving, of zealous representation by a lawyer without an
> actual conflict of interest.
>
> I'm not that lawyer. I was. I was. But in light of events in the
> last days and weeks, I'm not anymore.
>
> *I no longer wish for his success in this case. I no longer wish
> for it. I can no longer represent him, consistent with my*

*duties under the Rules of Professional Conduct.* I'm asking the Court for leave to withdraw because I have an actual conflict of interest.

...

*I cannot abide by these rules. I cannot represent Mr. Gottesfeld in light of what's happened in the last days and weeks. I cannot represent Mr. Gottesfeld zealously. There is a significant risk that the representation of Mr. Gottesfeld will be materially limited by a personal interest of me.*

*Mr. Gottesfeld does not have my full and undivided loyalty* based on events of the last days and weeks.

I'm in a very difficult position here. I understand that. Mr. Gottesfeld's in a very difficult position here.

I am circumscribing my comments here in this courtroom and in my filings in a very significant way to reduce – to hopefully absolute de minimis what I must say in order to have the Court be assured of the genuine and actual conflict of interest. And, on top of that, of course, are the more discretionary factors, including my belief -- well, let me go right to the rule, your Honor.

*But I cannot, and I can't imagine that I'll be able to, represent him at this trial and move him forward, as required under the ethical rules.*

[DE 10 at 7–8, 15–16, Supp. App. 141–42, 149–50] (emphasis added).
Judge Stearns denied Grimaldi's motion to withdraw on July 16, 2018.
[DE 248, Addendum 71–72].

Following the trial in the case, Grimaldi again moved to
withdraw. [DE 307, Supp. App. 114–15]. Gottesfeld assented to this
motion provided the Court appoint new counsel and Gottesfeld's
sentencing hearing remain as scheduled. [DE 307 at 2, Supp. App. 115].
Grimaldi asserted the same basis from his second and third motions to
withdraw: the continuing actual conflict of interest that existed between
himself and Gottesfeld.

On September 24, 2018, the district court held a hearing on
Grimaldi's motion and closed the courtroom over Gottesfeld's objection
to everyone except for Gottesfeld, his counsel, and Gottesfeld's wife, and
again denied Grimaldi's motion to withdraw. [DE 319; Sept. 24, 2018
Hr'g Tr., DE 422 at 14, SSA 66].

Turning to the *Reyes* factors, it is clear the district court abused
its discretion in denying Grimaldi's motions to withdraw. Grimaldi's
June 28 [DE 214, Supp. App. 109], July 12 [De 241, Supp. App. 110–11],
and July 17 [DE 254, Supp. App. 112–13] motions to withdraw may be

considered untimely because of their close proximity to the July 2018 trial date; however, the August 2018 motion to withdraw [DE 307, Supp. App. 114–15] was timely filed after trial and months before sentencing took place in January 2019.

The representations by Grimaldi about the nature of the conflict showed the "total breakdown in communication" between Grimaldi and Gottesfeld. *Reyes*, 352 F.3d at 515. In fact, Grimaldi and Gottesfeld admitted that they had no direct communication between the July 6, 2018, hearing and the emergency hearing on July 16, 2018, to discuss Gottesfeld's upcoming trial testimony—which was three days before trial began with jury selection on July 19, 2018. [DE 10 at 9–11, 18, Supp. App. 143–45, 152]. Their conflict was more than a mere disagreement. *Reyes*, 352 F.3d at 516. Accordingly, the Court should hold that the district court abused its discretion in denying Grimaldi's June 2018 and July 2018 motions to withdraw.

The Court should also find that the district court erred in denying Grimaldi's August 2018 motion to withdraw. Grimaldi's August 2018 withdrawal motion was months away from sentencing and therefore timely. There was a clear, actual conflict of interest between Grimaldi

and Gottesfeld, discussed repeatedly in the four motions and hearings
that preceded the August 2018 motion and at length during the
September 2018 hearing. [DE 422 at 14–31, SSA 66–83]. In addition,
the factual basis for Grimaldi's requested withdrawal remained
unchanged from his prior two motions. [DE 214, Supp. App. 104; DE
241, Supp. App. 110–11; DE 254, Supp. App. 112–13; DE 442 at 15:8–9,
15:25–16:3, SSA 67–68]. Finally, based on the nature of the conflict,
there was a complete breakdown in the attorney-client relationship.
Grimaldi and Gottesfeld had no direct communications between July 6
and 16, just days before trial began. [DE 10 at 9–11, 18, Supp. App.
143–45, 152]. The motion to withdraw was erroneously denied. The
judgment of the district court must be reversed.

**(d)** **The District Court Violated Gottesfeld's Public Trial Rights
By Closing The Courtroom Five Times**

The district court closed the courtroom five times over Gottesfeld's
objection during hearings on withdrawal motions by Attorneys Gillespie
and Grimaldi: March 9, 2018 [DE 432 at 9, SSA 9]; March 22, 2018 [DE
419 at 5, SSA 37]; July 6, 2018 [DE 434 at 4, Supp. App. 121];
September 24, 2018 [DE 422 at 14, SSA 66]; December 13, 2018 [DE

54

423 at 3, SSA 90]. These courtroom closures violated Gottesfeld's right to a public trial, Gottesfeld objected to the closures, and the closures were therefore presumptively prejudicial. *See Weaver v. Massachusetts*, 582 U.S. __, 137 S.Ct. 1899, 1908–09 (2017) (noting that a violation of the right to a public trial is a structural error and can occur where the court fails to make proper findings before closing the courtroom).

A defendant has a right to a trial that is open to members of the public. *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The guarantee of a public trial is for the benefit of the defendant; a trial is far more likely to be fair when the watchful eye of the public is present. *In re Oliver*, 333 U.S. 257, 270 (1948) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power."); *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979). As such, it is clear that trial closures are to be "rare and only for cause shown that outweighs the value of openness." *See Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 509 (1984); *Waller*, 467 U.S. at 47 ("[U]nder the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in *Press-Enterprise* and its

55

predecessors."). A closure may be justified only by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise*, 464 U.S. at 510; *United States v. Antar*, 38 F.3d 1348, 1361 (3d Cir. 1994). In particular, a court must consider (and reject) alternatives to closure before barring public access. *Press-Enterprise*, 464 U.S. at 511.

Here, the district court violated Gottesfeld's right to a public trial by closing the courtroom during hearings on Gillespie and Grimaldi's withdrawal motions to everyone except for Gottesfeld, his wife, and his counsel. The district court's errors are especially clear when juxtaposed against Judge Stearns' decision to keep the courtroom open during a hearing on Grimaldi's emergency motion to withdraw. *See* [DE 10, Supp. App. 135–56]. Judge Stearns recognized that Gottesfeld owned the privilege and was therefore free to speak publicly about his counsel if he so wished.

"One of the reasons often advanced for closing a trial—avoiding tainting of the jury by pretrial publicity . . . is largely absent when a defendant makes an informed decision to object to the closing of the proceeding." *Waller*, 467 U.S. at 47 n.6. Gottesfeld has consistently

56

objected when the court closed the courtroom during five pre-trial proceedings. Yet, when faced with Gottesfeld's objections, the court never had significant discussions or made any findings justifying the need for closure, and it never made any attempts to consider alternatives to closure. In addition, Judge Gorton failed to make any of the necessary findings to support the closure of the courtroom. Accordingly, the case should be remanded for further proceedings consistent with the findings of this Court.

**(e)** <u>**The District Court Erred In Denying Gottesfeld's Defense Of Others.**</u>

To establish the affirmative defense of another, Gottesfeld was required to show "he reasonably believed that the use of force was necessary 'for the defense of oneself or another against the immediate use of unlawful force.'" *Gottesfeld*, 319 F. Supp. 3d at 554 (quoting *United States v. Bello*, 194 F.3d 18, 26 (1st Cir. 1999)). Despite ample evidence to the contrary, the district court concluded that Gottesfeld's "proffer of evidence does not demonstrate that Ms. Pelletier was threatened by the immediate use of unlawful force" since the force

against Ms. Pelletier was done pursuant to an order by the Massachusetts Juvenile Court judge to the DCF and, therefore, lawful. *Id.* at 554. For the foregoing reasons, that decision was in error.

First, the personal presence requirement is antiquated and inapplicable in today's digital era. In its motion *in limine*, the Government argued that "Gottesfeld was never in [Ms. Pelletier's] presence. [DE 116 at 10–11]. In support, it cited decades old or non-precedential cases concerning minor physical trespasses on property. [DE 116 at 10–11]. *See Hawaii v. Marley*, 509 P.2d 1095 (Haw. 1973); *United States v. Brodhead*, 714 F. Supp. 593 (D. Mass. 1989). Given the remarkable changes in technology, it is foreseeable that someone outside the presence of a victim should be able to act in justification and in their defense without physically being in the presence of the victim. For instance, a computer-literate person could use a laptop to aid a victim by preventing identity theft, preventing an abuser's dissemination of child pornography, or stopping financial crimes. [DE 198 at 21]. Gottesfeld should not be forced to satisfy the presence requirement based on nonbinding, antiquated decisions.

58

Second, Gottesfeld acted to prevent imminent harm. In opposition to the Government's attempt to preclude the affirmative defense, Gottesfeld cited numerous statements demonstrating "imminent harm." [Opp. to Motion *In Limine*, DE 198 at 21–25]. His statement in the Huffington Post concerning BCH and Wayside's gross mistreatment and abuse of Ms. Pelletier corresponds with many local and national media reports and interviews by Justina's father where he details the suffering and pain his daughter was forced to endure. [DE 198 at 22–23]. The harm against Ms. Pelletier was beyond "imminent," it was already occurring, and it was significant—the ongoing alleged kidnapping, abuse, and torture of a teenage girl was imminent harm. [DE 198 at 24–26].

Finally, Gottesfeld established that the force against Justina was "unlawful." A state court order concerning the custody of a child may ultimately be deemed unlawful. *See, e.g., Smith, Jr. v. McDonald*, 458 Mass. 540, 547–50 (2010) (probate judge exceeded her statutory authority in "unlawful order"). Indeed, after a 16-month custody battle, Justina was finally (and rightfully) returned to the custody of her parents. *Justina Pelletier Heading Home After 16-Month Medical*

59

*Custody* Battle, ABCNews, June 18, 2014,

https://abcnews.go.com/Health/justina-pelletier-heading-home-16-

month-medical-custody/story?id=24191396. The unlawful nature of the

order to remove Justina from her parents' care, DCF's handling of Ms.

Pelletier's medical care, and the ensuing custody battle were the

ultimate acts of overreach. *See* [DE 198 at 28–29].

Ultimately, Gottesfeld was deprived of his right to present a full

and complete defense, which should have included the affirmative

defense of another. His alleged response to the widely-reported alleged

abuse of Justina Pelletier was necessary to prevent the immediate (and

ongoing) use of unlawful force against Justina.

**(f)** **The Record Is Insufficient To Permit Appellate Review Of The District Court's Denial Of Gottesfeld's *Pro Se* Recusal Motions**

When Judge Gorton denied Gottesfeld's motions to disqualify, he

did not issue orders discussing his findings verbally or in writing.

Rather, Judge Gorton issued "endorsed orders," which provided no

discussion of facts underlying his decisions. [DE 350, Addendum 122;

DE 351, Addendum 123; DE 352, Addendum 124].

When deciding a motion for disqualification, "[t]he proper approach under subsection 455(e) requires the trial judge to place on the record all the facts relating to any alleged appearance of lack of impartiality and then leave entirely to the parties whether to waive disqualification under section 455(a)." *El Fenix de P.R. v. The M/Y Johanny,* 36 F.3d 136, 141 (1st Cir. 1994). On appeal, this Court may sustain the district court's ruling "unless we find that it cannot be defended as a rational conclusion supported by [a] reasonable reading of the record." *Torres-Estrada*, 817 F.3d at 380 (citations omitted).

In this case, the judge failed to place any facts on the record related to the alleged lack of impartiality discussed in Gottesfeld's motions and affidavit. The only discussion on these motions took place before Gottesfeld filed them; ▊▊▊▊▊▊▊▊▊▊▊▊

▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

▊. [DE 423 at 11:12–18, SSA 98]. ▊▊▊▊▊▊▊▊

▊▊▊▊▊▊▊▊▊▊ [DE 423 at 11:19–20, SSA 98].

Ultimately, Judge Gorton did not issue findings in support of the endorsed orders denying Gottesfeld's motions, leaving this Court with

no findings to conduct a meaningful examination of those motions on appeal. *See Torres-Estrada*, 817 F.3d at 380 ("an abuse of discretion will be found only if a reasonable reading of the record fails to support the conclusion that the judge's impartiality was not subject to question"). Thus, the Court should remand the disqualification issue to the district court for further explanation of its decision to deny the motions.

## CONCLUSION

Based on the foregoing, the judgment of the district court should be reversed.

Dated: July 31, 2020.

Respectfully submitted,

*s/ Brandon Sample*
Brandon Sample
**Brandon Sample PLC**
P.O. Box 250
Rutland, Vermont 05702
Phone: (802) 444-4357
Fax:    (802) 779-9590
Vermont Bar: 5573
Email: brandon@brandonsample.com
https://brandonsample.com

*Attorney for Martin Gottesfeld*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App.

P. 32(a)(7)(B) because this brief contains 11,961 words, excluding

exempted portions listed in Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a proportionally spaced typeface

using Microsoft Word for Mac, Version 16.33 in Century Schoolbook 14-

point font.

Dated: July 31, 2020.

<div style="text-align: right">/s/ Brandon Sample</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was

served on all counsel of record by filing same electronically via the

Court's CM/ECF system this 31st day of July, 2020.

<div style="text-align: right">/s/ Brandon Sample</div>

Exhibit N

Nos. 18-1669, 19-1042, 19-1043, 19-1107

# In the United States Court of Appeals for the First Circuit

**UNITED STATES OF AMERICA,**
*Appellee,*

*v.*

**MARTIN GOTTESFELD,**
*Defendant-Appellant.*

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (CRIM. NO. 16-10305)
(THE HONORABLE NATHANIEL M. GORTON, J.)*

**REPLY BRIEF OF MARTIN GOTTESFELD**

MICHAEL PABIAN
*pabianlaw38@gmail.com*
MICHAEL PABIAN LAW OFFICE, LLC
*20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700*

*Counsel for Martin Gottesfeld*

# TABLE OF CONTENTS

I.    **Gottesfeld's Preserved Speedy Trial Arguments Require Dismissal**......1

    A.   Gottesfeld Challenged the Relevant Exclusions in District Court and Provided That Court a Fair Opportunity to Address His Arguments...1

    B.   The Magistrate Judge's Failure to Timely Issue a Detention Ruling Was Not Grounds for an Ends of Justice Continuance...................4

    C.   The Supreme Court's Decision in *Bloate* Forecloses the Government's Argument that the Motions to Exclude Tolled the Speedy Trial Clock under the Act's General Prefatory Language...........................14

II.   **The District Court Wrongly Precluded Gottesfeld from Introducing Evidence that He Reasonably Believed His Actions Were Taken in Defense of Justina Pelletier**......................................................16

III.  **The Preserved Violations of Gottesfeld's Public-Trial Right Require Reversal**.................................................................................21

IV.   **Gottesfeld's Recusal Arguments Were Properly Raised and Preserved**......................................................................................26

V.    **Conclusion**...................................................................................28

i

# TABLE OF AUTHORITIES

**Cases**

*AER Advisors, Inc. v. Fid. Brokerage Servs., LLC*, 921 F.3d 282 (1st Cir. 2019)..12

*Beltowski v. Brewer*, 766 F. App'x 218 (6th Cir. 2019) (unpublished)............. 17-18

*Bloate v. United States*, 559 U.S. 196 (2010) .................................................. 4, 9, 15

*Gideon v. Wainwright*, 372 U.S. 335 (1963) .........................................................23

*In re Oliver*, 333 U.S. 257 (1948)................................................................... 22, 26

*In re United States*, 441 F.3d 44 (1st Cir. 2006)........................................................27

*Knox v. Roper Pump Co.*, 957 F.3d 1237 (11th Cir. 2020) ....................................26

*United States v. Amparo*, 961 F.2d 288 (1st Cir. 1992)...........................................16

*United States v. Andrews*, 790 F.2d 803 (10th Cir. 1986) ......................................10

*United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994)..............................................22

*United States v. Barnes*, 159 F.3d 4 (1st Cir. 1998) ..............................................4, 5

*United States v. Barnes*, 251 F.3d 251 (1st Cir. 2001) ..............................................5

*United States v. Bello*, 194 F.3d 18 (1st Cir. 1999) ...............................................16

*United States v. Brodhead*, 714 F. Supp. 593 (D. Mass. 1989)................................17

*United States v. Brown*, 669 F.3d 10 (1st Cir. 2012)...............................................25

*United States v. Bryant*, 523 F.3d 349 (D.C. Cir. 2008)............................................6

*United States v. Bucci*, 525 F.3d 116 (1st Cir. 2008) ..............................................25

*United States v. Candelario-Santana*, 834 F.3d 8 (1st Cir. 2016)...........................21

*United States v. Castillo*, 981 F.3d 94 (1st Cir. 2020)................................3

*United States v. Crane*, 776 F.2d 600 (6th Cir. 1985)..............................10

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006)...........................23

*United States v. Harris*, 642 F. App'x 713 (9th Cir. 2016) (unpublished)..........27

*United States v. Huete-Sandoval*, 668 F.3d 1 (1st Cir. 2011)............................7

*United States v. Maxwell*, 254 F.3d 21 (1st Cir. 2001)..............................16

*United States v. Pakala*, 568 F.3d 47 (1st Cir. 2009) ..............................14

*United States v. Ramirez*, 788 F.3d 732 (7th Cir. 2015)...........................10

*United States v. Ramirez-Cortez*, 213 F.3d 1149 (9th Cir. 2000)..............................8

*United States v. Richardson*, 421 F.3d 17 (1st Cir. 2005) .......................15

*United States v. Rivera-Berrios*, 968 F.3d 130 (1st Cir. 2020) ..................3

*United States v. Rodriguez*, 858 F.2d 809 (1st Cir. 1988) ................. 16, 20

*United States v. Scott*, 180 F. Supp. 3d 88 (D. Mass. 2015)....................11

*United States v. Souza*, 749 F.3d 74 (1st Cir. 2014) ................................8

*United States v. Stoudenmire*, 74 F.3d 60 (4th Cir. 1996).......................10

*United States v. Tigano*, 880 F.3d 602 (2d Cir. 2018)..............................8

*United States v. Toledo*, 739 F.3d 562 (10th Cir. 2014)...........................20

*United States v. Tunley*, 664 F.3d 1260 (8th Cir. 2012) ...........................18

*United States v. Valdivia*, 680 F.3d 33 (1st Cir. 2012) .............................3

*United States v. Vazquez-Botet*, 532 F.3d 37 (1st Cir. 2008) ...................25

iii

*United States v. White*, 920 F.3d 1109 (6th Cir. 2019)................................9

*Waller v. Georgia*, 467 U.S. 39 (1984)...................................22-23, 25-26

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) ...................................21

*Zedner v. United States*, 547 U.S. 489 (2006) ................................. *passim*

## Statutes

18 U.S.C. § 3161 ....................................................................... *passim*

18 U.S.C. § 3142(f)............................................................….....12

18 U.S.C. § 3145(b)...........................................................…....13

28 U.S.C. § 455 ................................................................................27

iv

I.    **Gottesfeld's Preserved Speedy Trial Arguments Require Dismissal**

    A.    Gottesfeld Challenged the Relevant Exclusions in District Court and Provided That Court a Fair Opportunity to Address His Arguments

Gottesfeld's opening brief made clear that the district court violated the Speedy Trial Act by improperly excluding two categories of time. Either category, added to the 26 days that the government agrees are unexcludable, brings the total elapsed time between Gottesfeld's arrest and his October 19, 2016 indictment beyond the 30-day statutory limit. *See* 18 U.S.C. § 3161(b). The two principal time periods are: (1) 62 days between Gottesfeld's detention hearing and the subsequent detention ruling, during which time the court purported to order three "ends of justice" exclusions, *see* § 3161(h)(7)(A);[1] and (2) 13 days during which

---

[1] While the government suggests that Gottesfeld has waived any argument based on the three additional ends of justice exclusions, the Court need not decide the issue. The delay occasioned by the three challenged exclusions is easily sufficient to surpass the 30-day limit. Additionally, Gottesfeld's argument that the exclusions were not supported by findings "in the record of the case," as required by statute, implicates all six ends of justice exclusions. *See* Def. Br. 36-40. The detention motion was pending for 92 days, reduced to 62 by the statute's 30-day exclusion for matters under advisement. *See* § 3161(h)(1)(H). Had the third, fourth, and fifth ends of justice exclusions not been improperly granted, the speedy trial clock would have expired on June 8, 2016 (counting the days agreed upon by the government, Govt. Br. 14, and resuming the count on May 28, 2016). Gottesfeld's consent to "temporary pretrial detention," Govt. Br. 20 n.3, did not encompass consent to indictment more than four months later than required by the Speedy Trial Act.

1

the government's motions to exclude time were pending on the miscellaneous business docket ("MBD").[2]

In district court, Gottesfeld challenged, *inter alia*, both of the foregoing time periods. He expressly argued, citing several of the same authorities relied on in this appeal, that the statutory prerequisites for an ends of justice continuance had not been met. *See* Dkt. 164 at 11-14; Dkt. 176 at 6-8.[3] Gottesfeld's reply specifically noted the excessiveness of the exclusions in comparison to the statutory 30-day exclusion for matters under advisement. *See* Dkt. 176 at 7. Gottesfeld similarly challenged exclusion of the days during which the government's motions were pending. *See* Dkt. 164 at 14. He also argued that the exclusion motions should not have been filed and granted in the MBD, as opposed to the criminal docket. *See id.* at 12. In his reply, Gottesfeld expressly opposed the government's suggestion that this period was excludable due to the pendency of a "pretrial motion" under § 3161(h)(1)(D). *See* Dkt. 176 at 5-6; *see also* Dkt.

---

[2] Including these days (March 1 and April 23 through May 4, 2016) minus days during which the detention issue was pending (April 27, 2016 on), the 30-day clock expired on October 17, 2016.

[3] "Dkt." refers to docket entries in district court case no. 16-CR-10305, unless otherwise noted. "Add." refers to the addendum to Gottesfeld's opening brief. "JA" refers to the Joint Appendix. "SSA" refers to the Sealed Supplemental Appendix.

2

167 (Govt. Opp'n) at 6, 11-12. The district court considered and decided this specific issue. *See* Add. 31 ("The time between the filing of the motions and the resolution of those motions is properly excluded under [the applicable] subsection . . . ."). Gottesfeld also argued that the exclusions should not have been ordered by a different judge than the one presiding over his criminal case. *See* Dkt. 164 at 12; Dkt. 176 at 1-4.

"[S]uccessful preservation of a claim of error for . . . consideration on appeal requires that a party object with sufficient specificity such that the district court is aware of the claimed error." *United States v. Castillo*, 981 F.3d 94, 101 (1st Cir. 2020). "[E]xquisite precision" is not required. *United States v. Rivera-Berrios*, 968 F.3d 130, 134 (1st Cir. 2020). Here, Gottesfeld's district court arguments provided both the government and the judge ample opportunity to address the very issues he now raises on appeal. There was, accordingly, no forfeiture. The situation is a far cry from *United States v. Valdivia*, the only case cited by the government on this issue, where the defendant utterly failed to "identify the periods of time" that he sought to challenge on appeal "as non-excludable" before the district court. 680 F.3d 33, 41 (1st Cir. 2012). Counsel is aware of no decision by this Court finding forfeiture of a speedy trial argument in circumstances remotely analogous to those at issue here.

3

**B.**  **The Magistrate Judge's Failure to Timely Issue a Detention Ruling Was Not Grounds for an Ends of Justice Continuance**

Turning to the merits of the Speedy Trial Act issues, the law is clear that "[t]he purposes of the Act . . . cut against exclusion on the grounds of mere consent or waiver." *Zedner v. United States*, 547 U.S. 489, 500 (2006). This is because the statute was designed not only for the protection of defendants' rights, but also "with the public interest firmly in mind." *Id.* at 501; *see also Bloate v. United States*, 559 U.S. 196, 211 (2010) (explaining that Act was intended "to vindicate the public interest in the swift administration of justice"). Thus, "[t]he fact that the defendant has requested the continuance or consents to it is not in itself sufficient to toll the operation of the time limits." *United States v. Barnes*, 159 F.3d 4, 13 (1st Cir. 1998) (citation omitted). Rather, "[w]hether time resulting from a continuance may toll the Act depends on whether the court abused its discretion by granting the continuance." *Id.*

The statute sets out a number of specified categories of time that are automatically excluded in calculating applicable deadlines. *See generally* § 3161(h)(1). Section 3161(h)(7)(A) contemplates potential unenumerated bases for exclusion, permitting courts to grant a continuance based on "findings that the ends of justice served by taking such action outweigh the best interest of the public

4

and the defendant in a speedy trial." *Id.* But that subsection thereafter dictates that "[n]o such period of delay . . . shall be excludable . . . unless the court sets forth, in the record of the case, . . . its reasons for finding that the ends of justice" support the continuance. *Id.* The statute sets out a specific list of factors that the court "shall consider" in reaching a decision. *See* § 3161(h)(7)(B). "[G]eneral congestion of the court's calendar" is specifically impermissible grounds for a continuance. § 3161(h)(7)(C).

The discretion to order an ends of justice continuance is "exceedingly narrow." *Barnes*, 159 F.3d at 13 (citation omitted). Such continuances, accordingly, "should not be granted cavalierly." *United States v. Barnes*, 251 F.3d 251, 256 (1st Cir. 2001). The Supreme Court has described the "strategy" of this subsection as "to counteract substantive openendedness with procedural strictness." *Zedner*, 547 U.S. at 509. Congress perceived "a danger that [ends of justice] continuances could get out of hand and subvert the Act's detailed scheme." *Id.* at 508-09. This concern explains the inclusion of a "demand[]" for "on-the-record findings," as well as the mandatory list of factors to consider. *Id.* at 509. "A straightforward reading of" the statute makes clear "that if a judge fails to make the requisite findings . . . , the delay resulting from the continuance must be counted, and if as a result the trial does not begin on time. the indictment or

5

information must be dismissed." *Id.* at 508.  Implicit findings are insufficient.  *See*
*United States v. Bryant*, 523 F.3d 349, 360 (D.C. Cir. 2008).

In this case, while the district court purported to order ends of justice
exclusions, the record fails to provide the support required under § 3161(h)(7)(A).
All three motions relevant here were filed between Gottesfeld's detention hearing
and the decision issued 92 days later on July 27, 2016.  All three motions contained
nearly identical language regarding the proffered "grounds" for exclusion: "while
the defendant had his detention hearing in this district on April 27, 2016,
Magistrate Judge Bowler has not yet issued a detention decision.  While that
decision is pending, the parties have not been able to conclude their discussions of
a possible plea agreement and information." JA186; *see also* JA189, 192.  As the
government concedes, District Court Judge Burroughs made no "specific findings"
with respect to these motions. Govt. Br. 17-18.  The first two motions were
granted with no explanation whatsoever. *See* JA175 (docket entries 7 and 9).  The
third order included the formulaic recitation that "the ends of justice outweigh the
usual interest in a speedy trial." *Id.* (docket entry 11).

To the extent that, as the government argues, the district court's orders
granting the motions incorporated the grounds set forth by the government, the
exclusions were precipitated by the magistrate judge's delay in issuing a detention

6

ruling. This is precisely the type of consideration that the statute expressly provides is impermissible under § 3161(h)(7)(C). Based on the government motions and ensuing orders, nothing was especially "unusual" or "complex" about the detention motion or any other relevant aspect of the case. § 3161(h)(7)(B)(ii). Certainly, there was no indication that failure to grant an extension was "likely to make a continuation of [the] proceeding impossible, or result in a miscarriage of justice." § 3161(h)(7)(B)(i). In fact, neither the government motions nor the court's orders so much as mentioned the mandatory considerations listed in § 3161(h)(7)(B). The government's contention that the subsequent order (issued by a different district court judge) denying Gottesfeld's motion to dismiss provided the missing explanation is unavailing. That order simply repeated the insufficient justification that "the parties agreed to wait for the detention decision of the magistrate judge before resuming plea negotiations." Add. 33.[4]

---

[4] As argued in Gottesfeld's opening brief, the district court also failed to comply with the statutory requirement that the requisite findings be set forth "in the record of the case." § 3161(h)(7)(A). The MBD proceedings were not part of this criminal case. *See* Def. Br. 33, 37-39. And Judge Gorton's subsequent order could not cure the violation. *See* § 3161(h)(7)(A) (providing for exclusion "if the judge granted [a] continuance on the basis of *his findings* . . . ." (emphasis added)); *United States v. Huete-Sandoval*, 668 F.3d 1, 5 (1st Cir. 2011) ("[W]hether or not the district court's order drew support from § 3161(h)(7) is of no moment, as the ends-of-justice finding must be recorded 'by the time [the] district court rules' on the motion to dismiss." (quoting *Zedner*, 547 U.S. at 506-07)).

The motions to exclude did not say that additional time was necessary to pursue ongoing plea negotiations. To the contrary, they expressly stated that the parties had "not been able to conclude" such negotiations during the pendency of the detention issue and intended to "resume their discussions" upon issuance of a decision. JA186. Thus, regardless of whether or not "periods of plea negotiation can be properly excluded" under the ends of justice provision, an issue which this Court has expressly left open, *see United States v. Souza*, 749 F.3d 74, 80 (1st Cir. 2014), that is not the situation that occurred here. And at least one circuit has held that the parties' "desire to engage in . . . plea negotiations" cannot support an ends of justice continuance, even when such negotiations are ongoing. *See United States v. Ramirez-Cortez*, 213 F.3d 1149, 1155 (9th Cir. 2000); *cf. United States v. Tigano*, 880 F.3d 602, 615 (2d Cir. 2018) ("We have held that the time spent in plea bargaining is a gamble taken by the government regarding the defendant's speedy trial rights and is properly counted against the government.").

Although the government is correct that an ends of justice continuance may cover types of delay not automatically excludable under § 3161(h)(1), it cites no authority whatsoever for the proposition that such a continuance may be used as an end-run around the statutory limit of 30 days for excludable delay when a matter is under advisement. *See* § 3161(h)(1)(H). Instead, the cases cited by the

8

government involved delay necessary to the preparation of pretrial motions and active plea negotiations.  *See* Govt. Br. 18-19 (citing *Bloate*, 559 U.S. at 214 and *United States v. White*, 920 F.3d 1109, 1115 (6th Cir. 2019)).  Neither situation implicates the statutory prohibition on continuances for general court congestion, which factors significantly in the present case.

Although it is possible that an ends of justice continuance could properly issue where a matter was taken under advisement for more than 30 days in light of the various factors set forth in § 3161(h)(7)(B) (*e.g.*, complexity), the court made no such findings here.  Instead, it merely endorsed (without comment) the government's citation to the pendency of the detention motion and the parties' preference for that motion to be decided prior to progressing further in plea negotiations.  This desire is not unique or even unusual.  As the government itself acknowledges, "[t]hat a pending pretrial detention decision would be an important factor in [plea] negotiations is hardly surprising: it is highly relevant to a defendant's decision on a proposed plea whether he will remain in custody pending trial or could argue for immediate release in connection with a plea."  Govt. Br. 19.  Respectfully, the court's inability to decide a routine motion within the 30-day statutory exclusion does not constitute grounds for an ends of justice continuance.  If it did, Congress's specific and express limitation on excludable time for matters

9

under advisement would be rendered essentially meaningless.  The excessiveness of the exclusions in this case relative to the 30-day limit set by Congress only reinforces the need for specific findings, which again were not provided.

Federal courts of appeals have repeatedly found Speedy Trial Act violations where the proffered reasons for a purported ends of justice continuance, coupled with the absence of other permissible explanations in the record, implicated the statutory prohibition on exclusions for court congestion.  *See United States v. Ramirez*, 788 F.3d 732, 736 (7th Cir. 2015) ("[T]he record only reveals that the district court repeatedly blamed its crowded calendar for its inability to schedule a sooner trial date, a factor relied upon in error."); *United States v. Stoudenmire*, 74 F.3d 60, 64 n.4 (4th Cir. 1996) ("Although purporting to exclude this period as an ends of justice continuance, the district court granted the continuance for reasons that amounted to docket congestion."); *United States v. Andrews*, 790 F.2d 803, 808 (10th Cir. 1986) ("Neither a congested court calendar nor the press of a judge's other business can excuse delay under the Act."); *United States v. Crane*, 776 F.2d 600, 605 (6th Cir. 1985) ("The trial judge's unavailability was caused at least partially by his presiding over another case and was therefore attributable to 'general congestion of the court's calendar.'  Thus, the judge's absence is not a proper reason for an ends of justice continuance.").  The present case fits within

10