# United States Court of Appeals
## For the First Circuit

---

Nos. 18-1669, 19-1042, 19-1043, 19-1107

UNITED STATES OF AMERICA,

Appellee,

v.

MARTIN GOTTESFELD,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Howard, Chief Judge,
Lynch and Kayatta, Circuit Judges.

---

Michael Pabian, with whom Brandon Sample was on brief, for appellant.

Javier A. Sinha, Attorney, Criminal Division, Appellate Section, with whom Andrew E. Lelling, United States Attorney, District of Massachusetts, Donald C. Lockhart, Assistant United States Attorney, Seth B. Kosto, Assistant United States Attorney, Brian C. Rabbitt, Acting Assistant Attorney General, and Robert A. Zink, Acting Deputy Assistant Attorney General, were on brief, for appellee.

---

November 5, 2021

---

KAYATTA, Circuit Judge.    In  March  2014,  Martin
Gottesfeld and others committed a "Distributed Denial of Service"
cyberattack against Boston Children's Hospital and Wayside Youth
and Family Support Network, causing both to lose their internet
capabilities for three to four weeks.  Gottesfeld targeted Boston
Children's and Wayside because of their role in caring for Justina
Pelletier, a child whose medical condition and treatment were at
the center of a custody dispute that received national attention.
Gottesfeld publicly admitted responsibility for the attacks.  He
was subsequently charged with intentionally causing damage to a
protected computer, 18 U.S.C. § 1030(a)(5)(A), and conspiring to
do the same, id. § 371.  After an eight-day trial, Gottesfeld was
convicted  on  both  counts  and  sentenced  to  121 months'
imprisonment, to be followed by three years of supervised release.

## I.

## A.

We begin with Gottesfeld's argument that his indictment
should be dismissed under the Speedy Trial Act, 18 U.S.C. §§ 3161–
3174.  In pertinent part, the Speedy Trial Act provides that "[a]ny
information  or  indictment  charging  an  individual  with  the
commission of an offense shall be filed within thirty days from
the date [of his arrest]."  Id. § 3161(b).  An indictment filed
after the thirty-day period has expired must be dismissed.  Id.
§ 3162(a)(1).  But certain periods of delay are not counted toward

the thirty-day limit.  See id. § 3161(h).  Two such exclusions are relevant here.

First, the Act excludes delay resulting from so-called "ends-of-justice continuances."  Zedner v. United States, 547 U.S. 489, 498-99 (2006) (describing what is now 18 U.S.C. § 3161(h)(7)(A)).  These are "continuance[s] granted by any judge . . . on the basis of his findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial," as long as the reasons supporting such findings are "set forth[] in the record of the case, either orally or in writing."  18 U.S.C. § 3161(h)(7)(A). Second, the Act also does not count time "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  Id. § 3161(h)(1)(D).

In this case, Gottesfeld was arrested on February 17, 2016 and indicted 246 days later, on October 19, 2016.  It is undisputed that twenty-six of these days were not excludable under the Speedy Trial Act.  The remainder of the delay was initially excluded by the district court as resulting from six ends-of-justice continuances granted by the district court without any contemporaneous objection by Gottesfeld.  When Gottesfeld subsequently moved to dismiss the indictment under the Speedy Trial Act, the district court clarified that the same periods of delay

were also excludable in part as resulting from the district court's consideration of each of the six predicate motions to continue. See id. § 3161(h)(1)(D).

On appeal, Gottesfeld challenges the exclusion of the time during which six motions to continue were pending and the time covered by three of the ends-of-justice continuances. We address each in turn.

**1.**

Gottesfeld focuses first on the time during which the six motions to continue were pending before the district court. Gottesfeld argues that the time during which these motions were pending was not properly excludable because the motions were not "pretrial motions" within the meaning of section 3161(h)(1)(D). The parties dispute whether Gottesfeld has preserved this argument. While a defendant cannot prospectively waive the application of the Speedy Trial Act, Zedner, 547 U.S. at 503, a defendant can waive or forfeit a claim of error in the application of the Act by failing to timely raise the claim in the district court, United States v. Valdivia, 680 F.3d 33, 41 (1st Cir. 2012). And a defendant's request for a continuance or his acquiescence in a request can be considered in weighing the propriety of the continuance. United States v. Balsam, 203 F.3d 72, 79-80 (1st Cir. 2000).

In this instance, we need not decide what standard of review applies because we see no error, plain or otherwise, in the district court's decision to exclude time under section 3161(h)(1)(D). Indeed, we have previously treated motions to continue as "pretrial motions" under that statutory provision. See United States v. Richardson, 421 F.3d 17, 27-31 (1st Cir. 2005) (excluding time between the filing of the government's motion to continue and the district court's effective denial of that motion).

Gottesfeld insists that this case is distinguishable, pointing to a provision of the district court's Plan for the Prompt Disposition of Criminal Cases that requires all pre-indictment motions to continue to be filed in what is known as the "miscellaneous business docket." Because any such motion is not filed directly in the docket for a defendant's criminal case, Gottesfeld argues, it cannot be considered a "pretrial motion" within the meaning of section 3161(h)(1)(D). We reject this formalistic argument. We have historically adopted a functional rather than formalistic approach to determining what constitutes a "pretrial motion." See Richardson, 421 F.3d at 28-29 ("'We have read the term "pretrial motion" broadly to encompass all manner of motions' for purposes of tolling the speedy trial clock, 'ranging from informal requests for laboratory reports to "implied" requests for a new trial date.'" (quoting United States v. Barnes, 159 F.3d 4, 11 (1st Cir. 1998))); see, e.g., United States v.

- 5 -

*Santiago-Becerril*, 130 F.3d 11, 17 (1st Cir. 1997) (construing counsel's notification of availability as an implied motion for a new trial date and therefore treating it as a "pretrial motion" for speedy-trial purposes). And we do not see how continuances granted by way of the miscellaneous business docket would "affect[] the course of trial" any differently than they would if granted on a criminal docket. *Barnes*, 159 F.3d at 11.[1]

### 2.

Gottesfeld separately advances three arguments challenging the exclusion of sixty-two days resulting from three of the six ends-of-justice continuances. He contends that: (1) the judge who granted the continuances did not make "findings that the ends of justice served by taking such action outweigh[ed] the best interest of the public and the defendant in a speedy trial," as required by section 3161(h)(7)(A); (2) the court's reasons for making such findings were never "set[] forth[] in the record of the case," as required by the same provision; and (3) the continuances were granted on an impermissible basis.

The first two of these arguments largely hinge on our construction of the law, and were raised in the district court, so

---

[1] We need not address Gottesfeld's suggestion that the miscellaneous business docket is unfair because it only allows for "one-sided" government participation. The fact that Gottesfeld assented to every motion to continue filed below belies any notion that he was unable to participate in or was otherwise prejudiced by the procedures for adjudicating those motions.

we will consider them de novo.  See United States v. Irizarry-
Colón, 848 F.3d 61, 65 (1st Cir. 2017).  Gottesfeld's third
argument, however, appears for the first time on appeal.  Although
we have held that "exclusions of time not specifically challenged
in the district court are waived on appeal," United States v.
Laureano-Pérez, 797 F.3d 45, 57 (1st Cir. 2015), we have never
definitively decided the applicable standard of review where the
defendant challenges the same exclusions under a new theory.
Without adequate briefing by the parties as to the standard of
review, we assume favorably to Gottesfeld that plain-error review
applies to the specific arguments he failed to raise below.  See
Valdivia, 680 F.3d at 41–42 (noting that "there [was] a strong
basis for finding [an] argument waived" where the defendant did
not present it to the district court in his motion to dismiss under
the Speedy Trial Act, but assuming that plain error review applied
in any event).

**a.**

Delay resulting from a continuance is excluded only if
the judge before granting the continuance finds (even if only in
his or her mind) that the ends of justice served by the continuance
outweigh the best interests of the defendant and the public in
speed.  Zedner, 547 U.S. at 506.  Additionally, specific facts
supporting that determination need be apparent from the order
itself or the record.  Id. at 495, 505–07.  On the other hand, "it

is not necessary for the court to articulate the basic facts" underlying its decision to grant an ends-of-justice continuance "when they are obvious and set forth in" the motion to continue. United States v. Pakala, 568 F.3d 47, 60 (1st Cir. 2009) (quoting United States v. Rush, 738 F.2d 497, 507 (1st Cir. 1984)).

Here, the relevant motions asserted that the ends of justice supported the continuances under section 3161(h)(7)(A) because the parties were awaiting a detention decision by the magistrate judge and could not "conclude their discussions of a possible plea agreement and information" without it. By granting each motion, the judge presiding over the miscellaneous business docket "necessarily adopted" these grounds, Pakala, 568 F.3d at 60, which supports the conclusion that she was "persuad[ed] . . . that the factual predicate for a statutorily authorized exclusion of delay could be established," id. (quoting Zedner, 547 U.S. at 505). No more was required at the time the challenged continuances were granted.[2]

**b.**

Turning to Gottesfeld's second procedural argument challenging the excludability of delays resulting from the

---

[2] Gottesfeld argues that the court could not have adopted the contents of the relevant motions to continue because stalled plea negotiations could not justify an exclusion of time. We consider this argument later, when addressing the substance of the district court's ends-of-justice determinations.

continuances, we are satisfied that the requisite findings were adequately "set[] forth[] in the record of the case" as required by 18 U.S.C. § 3161(h)(7)(A). In denying Gottesfeld's motion to dismiss the indictment under the Speedy Trial Act, the trial judge explained that Gottesfeld, through counsel, sought the continuance because he was "seriously considering" a plea agreement that had been drafted. The court further stated that it found the continuance to be in Gottesfeld's interest. These statements qualify as a statement of reasons set forth "in the record of the case" under section 3161(h)(7)(A). See Valdivia, 680 F.3d at 39 ("Such findings must be entered into the record by the time a district court rules on a defendant's motion to dismiss under the [Speedy Trial Act]."); Rush, 738 F.2d at 507 ("Both purposes [of the findings requirement] are served if the text of the order [granting the continuance], taken together with more detailed subsequent statements, adequately explains the factual basis for the continuance under the relevant criteria.").

Gottesfeld nevertheless argues that the trial judge's elaboration of reasons supporting the ends-of-justice continuances cannot satisfy section 3161(h)(7)(A) because a different judge actually granted the continuances on the miscellaneous business docket. However, the statute does not require that the judge who grants the continuance must be the same judge who sets forth in the record the reasons for the ultimate decision to exclude time.

Indeed, the statute suggests the opposite by using different words to allocate responsibility for these distinct requirements. While it requires the "<u>judge</u>" who grants an ends-of-justice continuance to do so only "on the basis of" the requisite findings, it permits the "reasons" supporting such findings to be "set[] forth[] in the record of the case" by the "<u>court</u>." 18 U.S.C. § 3161(h)(7)(A) (emphases added). Given the plain language of the statute -- and absent any reason to believe that following it would contravene the intent of the Speedy Trial Act in this case in which the motions themselves made obvious the reasons for granting them -- we conclude that the trial judge's order denying Gottesfeld's motion to dismiss sufficiently set forth the reasons supporting the challenged ends-of-justice determinations.[3]

**c.**

Gottesfeld's third speedy trial argument, that the district court granted the challenged continuances for improper reasons, fares no better. As we have already explained, we review this argument under the plain error standard.

The district court excluded the time resulting from the challenged continuances under section 3161(h)(7)(A) because it agreed with Gottesfeld that serious plea negotiations warranted

---

[3] Having so concluded, we need not address Gottesfeld's separate argument that the judge who granted the challenged continuances on the miscellaneous business docket failed to adequately set forth such findings.

the continuance. "[W]e have expressly left open the issue whether periods of plea negotiations can properly be excluded," United States v. Souza, 749 F.3d 74, 80 (1st Cir. 2014), and at least two circuit courts have indicated that they can be so excluded under the ends-of-justice provision, see United States v. White, 920 F.3d 1109, 1116 (6th Cir. 2019); United States v. Fields, 39 F.3d 439, 445 (3d Cir. 1994). Thus, the district court did not commit clear or obvious error in finding that the parties' plea negotiations justified an ends-of-justice continuance. Hence, there was no plain error. Valdivia, 680 F.3d at 42; see also United States v. Gonzalez, 949 F.3d 30, 39 (1st Cir. 2020) (finding no plain error where there was no binding authority on point).

Even accepting the notion that plea negotiations can support an ends-of-justice determination, Gottesfeld argues that the challenged continuances could not have been granted on that basis because the parties' plea discussions were "on hold" and "stalled" rather than "active" and "ongoing" during the relevant periods. However, he cites no authority that would support distinguishing between "active" and "stalled" phases of a negotiation that the parties still view as open. And such a distinction is not obvious. The utility of plea discussions necessarily depends on the information available to the parties at the time. As such, temporary pauses in genuinely open negotiations

might well be expected while the parties wait to receive information that might affect their ongoing negotiation strategy.

Gottesfeld emphasizes that the information on which the parties were waiting was the magistrate judge's decision on detention.  As such, Gottesfeld argues, granting the challenged continuances under the guise of plea negotiations effectively extended the amount of excludable time during which the detention decision could be kept "under advisement" from thirty days to ninety-two days, working an end-run around section 3161(h)(1)(H) and frustrating the purposes of the Speedy Trial Act.  But this argument merely begs the question of whether the ends-of-justice continuances were properly granted.  And it also overlooks that an "ends of justice" continuance can serve as an independent source of excludable time.  See Rush, 738 F.2d at 505 (suggesting that time beyond the thirty-day under-advisement period can be excluded if there is some other "source of excludable time such as an 'ends of justice' continuance").

Still, Gottesfeld asserts, the need for additional time for plea negotiations undisputedly depended on the delay in the detention decision.  Because that delay was not explained by the district court, Gottesfeld asserts that it must have been caused by "general congestion of the court's calendar," which cannot be used to justify an ends-of-justice continuance.  18 U.S.C. § 3161(h)(7)(C).  But it is not obvious that congestion is the

only available explanation for the delay.  And a district court is not generally required to explain the reasons underlying any delay in issuing an opinion on a contested issue after a hearing. Moreover, Gottesfeld specifically consented to each of the challenged continuances at the time they were proposed and granted. See United States v. Gates, 709 F.3d 58, 67–68 (1st Cir. 2013) (relying in part on defense counsel's consent in affirming the denial of a motion to dismiss under the Speedy Trial Act).  For all these reasons, and absent caselaw directly on point, see Gonzalez, 949 F.3d at 39, we find no plain error.[4]

**B.**

Gottesfeld also contends that the district court erroneously denied his motion to suppress evidence collected from his apartment during the execution of a search warrant because the magistrate judge who signed the warrant "was neither neutral nor detached" and because she was "subject to recusal."[5]  We review the district court's findings of fact for clear error and legal

---

[4] Because we find that Gottesfeld's contentions under the Speedy Trial Act do not support vacating or reversing his conviction, we need not address the government's arguments that those contentions were barred by the doctrine of judicial estoppel.

[5] Below, Gottesfeld also moved to suppress evidence obtained pursuant to a trap-and-trace order, which was signed by a different magistrate judge, on other grounds.  On appeal, Gottesfeld does not challenge the district court's denial of his motion to suppress as to that issue, so we do not address it.

rulings de novo.  See United States v. Tom, 988 F.3d 95, 98 (1st Cir. 2021).

Gottesfeld contends that the magistrate judge was not neutral, detached, or sufficiently impartial because her spouse was a victim of the cyberattack on Boston Children's.  In making this argument below, Gottesfeld pointed to: (1) a statement in the affidavit attached to the search warrant application that the cyberattack had also caused disruption to the "network on which [Boston Children's] and other Harvard University-affiliated hospitals communicate," and (2) evidence that the magistrate judge's spouse was employed as a doctor by Brigham and Women's Hospital, which is affiliated with Harvard University, and as a professor by Harvard Medical School.  But Gottesfeld identified no evidence to suggest that the magistrate judge's spouse was actually affected by the cyberattack in any substantial manner.  For this and other reasons, the district court denied his motion to suppress.

On appeal, Gottesfeld highlights evidence in the trial record that Brigham and Women's was one of the Harvard-affiliated hospitals that lost its internet connection as a result of the cyberattack.  He also points to a statement made by the government during his detention hearing that "Harvard hospitals" were unable to complete routine patient-care tasks in the aftermath of the cyberattack.  From this evidence, Gottesfeld asserts, it is "clear"

that the magistrate judge's spouse was "directly and profoundly affected" by the cyberattack.

Gottesfeld's hyperbole to one side, we agree that one can reasonably infer that the shutdown of 65,000 IP addresses in a network that included the husband's two employers likely had some adverse effect on him. Armed with this inference that the magistrate judge's husband likely experienced some adverse effect, Gottesfeld argues that: (1) recusal was mandatory under both 28 U.S.C. § 455(a) and the Fourth Amendment, see generally United States v. Leon, 468 U.S. 897, 914 (1984); and (2) that evidence gathered pursuant to the warrant issued by the magistrate judge must be suppressed. For the following reasons, we disagree.

First, the inferred harm here is both indirect and, as to its extent, speculative. See United States v. Bayless, 201 F.3d 116, 127 (2d Cir. 2000) ("[D]isqualification [under section 455] is not required on the basis of remote, contingent, indirect or speculative interests."). There is also nothing in the record to compel a finding that the magistrate judge suspected that her husband was a target of the disruption. And while the aggregate effect of the denial-of-service attack was serious and undoubtedly created a substantial risk of significant harm to many persons, especially patients, there is no suggestion in the record that the magistrate judge's husband experienced any untoward effects beyond inconvenience, delay, and likely annoyance.

Gottesfeld points to no precedent at all holding that an effect on a spouse of this type would preclude a magistrate judge from issuing a search warrant. He points only to cases in which a judge's colleagues had been murdered by the defendant or injured by a bomb blast one block away from the judge's courtroom. <u>See, e.g.</u>, <u>United States</u> v. <u>Moody</u>, 977 F.2d 1425, 1428 (11th Cir. 1992) (judicial colleague murdered); <u>Nichols</u> v. <u>Alley</u>, 71 F.3d 347, 350 (10th Cir. 1995) (member of judge's staff injured in Oklahoma City bombing). These cases simply highlight how different and uncertain the indirect effect on the magistrate judge is in this case.

Second, Gottesfeld offers no support for the second part of his argument -- that an issuance by a magistrate with this type of a personal interest would call for application of the exclusionary rule as a remedy. Would harmless error apply? Would good faith affect the calculus? On these and other points Gottesfeld is completely silent. So, the second part of his two-part argument is waived. <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner . . . are deemed waived.").

For these reasons, we reject Gottesfeld's mandatory recusal argument. Given that he offers no other challenges to the warrant or to the search, we also reject his challenge to the government's use at trial of evidence gathered pursuant to the warrant.

## C.

Gottesfeld's next argument revolves around four motions to withdraw that were filed by his trial counsel and denied by the district court.  We begin by setting forth the relevant factual background before addressing Gottesfeld's claims on appeal.

### 1.

At his initial appearance in the District of Massachusetts in April 2016, Gottesfeld was represented by hired counsel.  Approximately eight months later, that counsel moved to withdraw due to Gottesfeld's indigency.  An Assistant Federal Defender was appointed as a replacement.  In March of the following year, another Assistant Federal Defender joined in Gottesfeld's representation.  But by November 2017, Gottesfeld claimed that he had "lost faith and trust in the [Federal Public Defender Office] to effectively and zealously represent his best interests," and moved for substitute counsel.  The district court granted the motion and appointed yet a fourth attorney to represent Gottesfeld.  That attorney later moved, with Gottesfeld's consent, to withdraw as counsel on two separate occasions in March 2018.  At the hearing on that attorney's second motion to withdraw, the district court advised Gottesfeld as follows:

> [I]f I allow his motion and appoint new
> counsel, this will be the last counsel you
> will get, . . . and there will be no further
> attorneys.  The alternative of course is that

>     you agree to represent yourself pro se, which
>     you've told me . . . you don't want to pursue.

Gottesfeld indicated that he understood the judge's advice and did
not retract his assent to his attorney's motion to withdraw as
counsel. The district court granted the motion and appointed David
Grimaldi as Gottesfeld's fifth attorney.

Attorney Grimaldi worked on Gottesfeld's case for less
than three months before moving to withdraw as counsel at
Gottesfeld's request on June 1, 2018, citing Gottesfeld's
disagreement with Attorney Grimaldi over trial strategy and his
consequent lack of trust in Attorney Grimaldi. The court found
that the evidence provided in support of this motion did not
constitute good cause for excusing Attorney Grimaldi and did not
justify the delay that would inevitably result if the motion were
granted. Gottesfeld does not appear to challenge that decision on
appeal.

On June 28, 2018, with trial less than three weeks away,
Attorney Grimaldi filed a second motion to withdraw on his own
behalf, asserting "an irreparable breakdown in the attorney-client
relationship." At a hearing on the second motion to withdraw,
Attorney Grimaldi explained that Gottesfeld had made a number of
disparaging online posts about him and his legal practice. Because
Gottesfeld was "attacking [his] livelihood," Attorney Grimaldi
represented that he did not believe he could effectively represent

Gottesfeld any longer.  Gottesfeld opposed Attorney Grimaldi's motion, stating that he "did not want a new lawyer" and "[did] not want more delay."  The district court denied the motion, finding that "no irreparable breakdown in communication had occurred."  The district court also noted that "trial [was] quickly approaching," and that Attorney Grimaldi had been able to diligently and zealously represent Gottesfeld up to that point.

The parties continued preparing for trial until July 12, 2018, when Attorney Grimaldi filed a third motion to withdraw as counsel on an emergency basis, given that jury selection was only seven days away.  The motion was referred by the trial judge to another judge who was responsible for handling emergencies in the district court.  The emergency judge held a hearing, at which Attorney Grimaldi indicated that Gottesfeld had continued to make disparaging public statements about him and his law firm bearing the same name.  Based on these events, Attorney Grimaldi represented that he could not "represent Mr. Gottesfeld zealously" and that "Mr. Gottesfeld [did] not have [his] full and undivided loyalty."  Gottesfeld nevertheless stated:  "I want this trial date. . . .  I don't want to delay it.  I don't want new counsel. I don't want to waive my right to counsel.  I want Mr. Grimaldi to do his job."  Based on Gottesfeld's statements and the fact that the motion was filed "on the eve of trial," the emergency judge denied the motion on July 16, 2018.

The next day, just two days before jury selection was scheduled to commence, Attorney Grimaldi filed a fourth motion to withdraw, asking that the trial judge (rather than the emergency judge) consider the grounds asserted in the third motion to withdraw.  The trial judge denied the motion that afternoon for substantially the same reasons as the emergency judge.  The trial judge also reiterated his earlier warning to Gottesfeld that Attorney Grimaldi was his "last court-appointed attorney" and that further public attacks on Attorney Grimaldi or any other misconduct could be treated as "an implied waiver of counsel."

Trial proceeded as scheduled, and the jury returned a guilty verdict on August 1, 2018.  On August 31, one week before post-trial motions were due and seven weeks before sentencing, Attorney Grimaldi filed a fifth motion to withdraw as counsel for the same reasons as before.  Gottesfeld assented to the motion, but only "so long as he [would be] provided new counsel (and not ordered to represent himself pro se) and the change of attorneys does not delay future proceedings, including but not limited to his sentencing hearing."  The district court held a hearing on the motion and engaged in the following colloquy with Gottesfeld:

> THE COURT:    You understand that, if I allow his motion, you are going to represent yourself pro se?
>
> THE DEFENDANT: That would be over my objection, Your Honor.  I don't plan on waiving my right to the

> effective   assistance   of
> counsel. . . . I would object
> to having to represent myself.
> I assent to --

THE COURT:      You remember when I appointed
                him, I told you this was your
                last lawyer.

THE DEFENDANT: Yep, yep. . . . [Y]ou know, if
                I would not be appointed new
                counsel, that I do not assent
                to Mr. Grimaldi leaving.

The district court again denied Attorney Grimaldi's motion,
finding that he had done "a very creditable and professional job"
even as Gottesfeld was "attacking him online . . . with frivolous
and cockamamy charges" and that appointing substitute counsel
would likely delay Gottesfeld's sentencing hearing. Attorney
Grimaldi was subsequently permitted to withdraw as counsel at a
later date, prior to sentencing, after Gottesfeld initiated a
separate legal proceeding against him.

### 2.

      With full knowledge of these facts, and after asking the
district court to deny each of Attorney Grimaldi's second, third,
and fourth motions to withdraw, Gottesfeld now takes the position
that the district court should have granted those motions.
Although he expressly and repeatedly assured the district court
that he wanted to proceed with Attorney Grimaldi as counsel, he
now asserts that Attorney Grimaldi should not have been permitted
to continue representing him because Attorney Grimaldi's

statements at the hearings on the relevant motions to withdraw demonstrated an actual conflict of interest and a "total breakdown in communication" in the attorney-client relationship.

In advancing this argument, Gottesfeld offers no view as to the proper standard of review. The government in its brief makes the case for waiver, to which Gottesfeld offers no opposition in his reply. Waiver of some type would seem to be implicated here. A defendant usually cannot "properly challenge on appeal a proposal he himself offered to the trial court." United States v. Amaro-Santiago, 824 F.3d 154, 160 (1st Cir. 2016) (quoting United States v. Angiulo, 897 F.2d 1169, 1216 (1st Cir. 1990)). The reasons for this rule are clear: Without it, defendants would be able to "sandbag" the district court by taking one position and "gambling on a favorable verdict, knowing [that] if [the] verdict went against them[,] they could seek a new trial." United States v. Hallock, 941 F.2d 36, 45 (1st Cir. 1991) (citing United States v. Costa, 890 F.2d 480, 482 (1st Cir. 1989)); see also United States v. Ocean, 904 F.3d 25, 39 (1st Cir. 2018) (stating that a defendant may not "plant[] an error and nurtur[e] the seed as insurance against an infelicitous result" (quoting United States v. Taylor, 54 F.3d 967, 972 (1st Cir. 1995))).

In any event, even if we were to find Gottesfeld's challenge to the denial of the second, third and fourth motions to withdraw reviewable, we would still reject it. When reviewing a

- 22 -

district court's denial of a motion to withdraw, we consider "the
timeliness of the motion, the adequacy of the court's inquiry into
the defendant's complaint, and whether the conflict between the
defendant and his counsel was so great that it resulted in a total
lack of communication preventing an adequate defense."  United
States v. Reyes, 352 F.3d 511, 515 (1st Cir. 2003) (quoting United
States v. Woodward, 291 F.3d 95, 107 (1st Cir. 2002)).  "We accord
'extraordinary deference' to the district court's decision when
'allowance of the motion would necessitate a last-minute
continuance.'"  United States v. Theodore, 354 F.3d 1, 5 (1st Cir.
2003) (quoting Woodward, 291 F.3d at 107).  We review preserved
objections to decisions on motions to withdraw for abuse of
discretion, see Reyes, 352 F.3d at 515, and forfeited objections
for plain error, see United States v. Brake, 904 F.3d 97, 99 (1st
Cir. 2018).

        The second, third, and fourth motions to withdraw were
filed a very short time before trial.  Given the complexity of
Gottesfeld's case, granting any of the challenged motions to
withdraw would have almost certainly required a "last-minute
continuance."  Theodore, 354 F.3d at 5 (quoting Woodward, 291 F.3d
at 107).  Nevertheless, the district court gave due consideration
to all those motions at issue, exhaustively exploring the grounds
for each of them through a hearing.  The district court also found
that Attorney Grimaldi was capable of effectively representing

Gottesfeld despite the difficulties of their relationship and that Attorney Grimaldi in fact did "a very creditable and professional job" defending Gottesfeld at trial.  Based on our review of the trial record, we see no reason to doubt these findings.  For all these reasons, Gottesfeld is not entitled to a new trial, under any standard of review, based on the district court's denials of Attorney Grimaldi's second, third, and fourth motions to withdraw. To rule otherwise would be to rule that a defendant in a criminal case need simply attack his own lawyer online in order to force the court's hand in making rulings that could then themselves be attacked on appeal.

This leaves, to some extent, Gottesfeld's challenge to the district court's denial of the fifth motion to withdraw.  It is true that Gottesfeld initially claimed not to oppose Attorney Grimaldi's fifth motion to withdraw, on the condition that he would not have to proceed pro se if the motion were granted.  But given the district court's prior admonitions on this score, Gottesfeld was well aware that this condition would not be satisfied.  He had been repeatedly advised that he would have to proceed pro se if Attorney Grimaldi withdrew.  And when the district court reminded him of this during the hearing on the fifth motion to withdraw, Gottesfeld indicated that he understood and that he wanted Attorney

Grimaldi to continue as counsel.[6]  In any event, Attorney Grimaldi eventually was allowed to withdraw, and Gottesfeld offers no claim at all that he suffered any prejudice during the period between the post-trial denial of the fifth motion and the presentencing withdrawal of his attorney.

**D.**

Still training his attention on Attorney Grimaldi's motions to withdraw, Gottesfeld contends that the district court violated his Sixth Amendment right to a public trial by not allowing the press or the public attend the hearings conducted on five of the motions.  Gottesfeld in at least four of these instances objected to the exclusion, so we review the challenged decisions to exclude de novo.  See United States v. Brown, 669 F.3d 10, 32 (1st Cir. 2012)

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.  That right to a public trial applies at "any stage of a criminal trial," including jury selection.  Presley v. Georgia, 558 U.S. 209, 213 (2010).  And the Supreme Court has concluded that the right extends

---

[6]  Gottesfeld does not assert on appeal that the district court erred in issuing these warnings, and we can find no fault with them.  See United States v. Jones, 778 F.3d 375, 388 (1st Cir. 2015) ("In some circumstances, a district court may force a defendant to choose between proceeding with unwanted counsel or no counsel at all.").

to at least one pretrial context: hearings aimed at suppressing evidence proffered for trial. <u>Waller</u> v. <u>Georgia</u>, 467 U.S. 39, 47 (1984). Gottesfeld asks that we further extend the public-trial right to pretrial hearings on motions to withdraw by counsel. Neither party points to any case deciding whether such an extension is warranted. We think it is not, at least absent factors not present here.

As justification for its holding that a defendant has a constitutional right to public suppression hearings, the Supreme Court explained that suppression hearings "often resemble[] a bench trial" where "witnesses are sworn and testify," "counsel argue their positions," and the "outcome frequently depends on a resolution of factual matters." <u>Id.</u> at 47. Notably, the Court cited the fact that suppression hearings often challenge police conduct, which creates a strong interest in public scrutiny. <u>Id.</u>

These withdrawal hearings, by contrast, involved only a dispute between the defendant and his counsel. Public hearings on such motions will not "encourage[] witnesses to come forward" or "discourage[] perjury" because they do not involve the presentation of evidence relevant to the defendant's guilt or innocence. <u>Brown</u>, 669 F.3d at 33 (quoting <u>Waller</u>, 467 U.S. at 46). Indeed, government counsel was also barred from the hearing. The issue -- should defense counsel be allowed to withdraw -- was entirely collateral to the trial or to any issues of guilt or

innocence. And the nature of the issue -- antagonism between counsel and the defendant -- raised a serious possibility that public disclosure of the hearing would create publicity that might find its way into the jury box and would certainly become known to the prosecution. The primary purpose of the Sixth Amendment right, after all, is to "benefit . . . the accused." Brown, 669 F.3d at 33 (quoting United States v. Scott, 564 F.3d 34, 38 (1st Cir. 2009)). As to this last point -- benefiting the accused -- Gottesfeld argues that he waived any objection to closing the hearings. But that waiver was itself uncounseled, illustrating how different these hearings are from the adversarial proceedings known as a trial.

All in all, we decline the invitation to hold that the Sixth Amendment public-trial right applied to the pretrial and post-trial hearings on counsel's motions to withdraw in this case.[7] Gottesfeld's trial was held in public; the withdrawal hearings were not part of that trial.

**E.**

Turning from procedure to substance, Gottesfeld challenges the district court's order precluding him from raising

---

[7] It is arguable that members of the public have a First Amendment right to attend hearings distinct from Gottesfeld's right to a public trial under the Sixth Amendment. See generally Press-Enter. Co. v. Superior Ct., 464 U.S. 501 (1984). But we need not address that issue, as Gottesfeld does not raise it (nor is it clear he would have standing to do so).

at trial the affirmative defense known as "defense of another."  A
district court "may preclude the presentation of [a] defense
entirely" if the defendant does not produce sufficient evidence
"to create a triable issue."  United States v. Lebreault-Feliz,
807 F.3d 1, 4 (1st Cir. 2015) (quoting United States v. Maxwell,
254 F.3d 21, 26 (1st Cir. 2001)).  We review decisions precluding
affirmative defenses de novo.  Id.

   "Use of force is justified when a person reasonably
believes that it is necessary for the defense of . . . another
against the immediate use of unlawful force," so long as the person
"use[s] no more force than appears reasonably necessary in the
circumstances."  United States v. Bello, 194 F.3d 18, 26 (1st Cir.
1999) (quoting First Circuit Pattern Crim. Jury Instr. § 5.04);
see also 2 Paul H. Robinson et al., Crim. L. Def. § 133 ("Conduct
constituting an offense is justified if: (1) an aggressor
unjustifiably threatens harm to another person; and (2) the
[defendant] engages in conduct harmful to the aggressor (a) when
and to the extent necessary to protect the other person, (b) that
is reasonable in relation to the harm threatened."); Model Penal
Code § 3.05 (similar).

   Gottesfeld sought to argue at trial that his cyberattack
on Boston Children's and Wayside was justified because it was
necessary to protect Pelletier from remaining under the care of
those institutions.  In support of this theory, he primarily

pointed to news and television reports stating that Pelletier was being "abused" and "tortured" under the care of Boston Children's and Wayside; that Pelletier's custody proceeding might be "compromised"; and that Pelletier's parents had contacted the Federal Bureau of Investigation and other law enforcement agencies regarding Pelletier's plight to no avail.

This evidence would perhaps support a finding that Gottesfeld subjectively believed Pelletier was at some risk of harm. But he marshals no case to support a finding that he reasonably believed that she faced the threat of immediate unlawful force. To the contrary, he knew that her custody was authorized by a court order.[8] Furthermore, even if he thought that some individual or group of individuals were using or threatening to use unlawful force, that would have provided no justification for Gottesfeld to take hostage thousands of other persons' internet connections.

_____

[8] To the extent Gottesfeld contends that he reasonably believed that Pelletier's treatment during her custody was unlawful, that argument is waived multiple times over: Gottesfeld did not clearly assert it before the district court and only now tries to develop it in his reply brief. Even were we to consider this argument, public commentary and opinion comparing Pelletier's treatment to torture -- which is all he cites to support this claim -- does not alone support a finding that he reasonably believed that she was in fact being subjected to torture. To rule otherwise would be to empower every citizen with the ability to simultaneously incite and immunize criminal conduct by another even as a judicial tribunal is available to hear the claims of harm.

Nor could a jury have found Gottesfeld's chosen methods reasonably necessary.  The issue of Pelletier's custody and treatment were before a court, and all allegations known to Gottesfeld were known to law enforcement authorities.  To the extent that Gottesfeld viewed these alternative courses of action as unlikely to succeed, we have previously explained that a defendant's likely inability "to effect the changes he desires through legal alternatives does not mean, ipso facto, that those alternatives are nonexistent."  Maxwell, 254 F.3d at 29 (considering a defendant's assertion of the necessity defense); see also Bello, 194 F.3d at 27 (stating that, under federal law, the "absence of lawful alternatives is an element of all lesser-evil defenses" (quoting United States v. Haynes, 143 F.3d 1089, 1090-91 (7th Cir. 1998))).  But see United States v. Perez-Jimenez, 219 F. App'x 644, 646-47 (9th Cir. 2007) (availability of alternatives is relevant, albeit not an element).  Gottesfeld's opening brief on appeal does not even attempt to argue otherwise; he addresses the issue of necessity only in his reply brief, and even then does so cursorily.  This provides yet another independent basis for affirming the district court's decision precluding Gottesfeld from presenting his defense-of-others argument at trial:  "[A]n appellant waives any argument not made in his 'opening brief but raised only in [his] reply brief.'"  United States v. Pedró-Vidal, 991 F.3d 1, 4 n.3 (1st Cir. 2021)

(alterations in original) (quoting United States v. Rivera-Carrasquillo, 933 F.3d 33, 40 n.7 (1st Cir. 2019)).[9]

**F.**

Finally, we address Gottesfeld's argument that the trial judge improperly denied three recusal motions he made pro se after the verdict but before sentencing. As we explained above, under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Additionally, a judge must recuse himself if he "has a personal bias or prejudice" concerning a party, 28 U.S.C. §§ 144, 455(b)(1); if he "knows that he, individually or as a fiduciary, . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding," id. § 455(b)(4); or if he knows that a person "within the third degree of relationship" to him has "an interest that could be substantially affected by the outcome of the proceeding," id. § 455(b)(5). "We review a ruling on a motion to recuse for abuse of discretion." United States v. Torres-Estrada, 817 F.3d 376, 380 (1st Cir. 2016) (quoting United States v. Pulido, 566 F.3d 52, 62 (1st Cir. 2009)). We will uphold the district court's

---

[9] We accordingly need not review the district court's other rationales for precluding Gottesfeld from raising a defense-of-others defense at trial.

denial of such a motion "unless we find that it cannot be defended as a rational conclusion supported by a reasonable reading of the record." Id. (quoting Pulido, 566 F.3d at 62).

In his motions to disqualify the trial judge below, Gottesfeld alleged that: (1) the trial judge had a financial and personal interest in maintaining the reputation of Boston Children's, which was a target of Gottesfeld's cyberattack; (2) the trial judge was "emotionally compromised" from having presided over the trial of another hacker who committed suicide after being convicted and sentenced on charges similar to those brought against Gottesfeld; and (3) the judge ruled against him on a number of motions. Having reviewed Gottesfeld's allegations concerning the trial judge's financial disclosures, prior judicial service, and legal rulings in this case, we see nothing to suggest that the trial judge had any bias, prejudice, personal interest, or financial interest that would have required his disqualification from this case. To start, as we mentioned above, section 455 does not require recusal "on the basis of remote, contingent, indirect or speculative interests." Bayless, 201 F.3d at 127. Gottesfeld's allegations of the judge's financial interests in the reputation of Boston Children's -- based on an attenuated series of connections involving non-profits to which the judge had donated -- are far too remote and indirect to suggest even an appearance of partiality, and his allegations concerning

the judge's emotional response to the events following a prior case are similarly too speculative to require disqualification. Finally, his third basis for recusal, which boils down to a bare disagreement with the judge's rulings in this case, runs afoul of the "extrajudicial source" doctrine. See Liteky v. United States, 510 U.S. 540, 544-51 (1994) (explaining that any claim of bias or prejudice -- with limited exceptions -- must "stem from an extrajudicial source" (quoting United States v. Grinnell Corp., 384 U.S. 563, 583 (1966))).

Gottesfeld does not attempt to argue otherwise on appeal. Indeed, he does not even repeat the allegations of judicial bias and impropriety that he asserted in his recusal motions below. Rather, he asserts that the district court exceeded the scope of its discretion by denying his recusal motions without making factual findings on the record to support those decisions. But given our conclusion that Gottesfeld's allegations do not raise any doubt about the trial judge's impartiality, we necessarily hold that each of the district court's orders denying Gottesfeld's recusal motions was "a rational conclusion supported by a reasonable reading of the record." Torres-Estrada, 817 F.3d at 380. No further findings were required.[10]

---

[10]    Insofar as Gottesfeld seeks to challenge the district court's denial of the recusal motion made by his trial counsel after the jury began deliberations, we reject that challenge for the same reasons.

**II.**

For the foregoing reasons, we <u>affirm</u> Gottesfeld's conviction.